**Fill in this information to identify the case:**

Debtor: Highland Capital Management, L.P.

United States Bankruptcy Court for the: Northern District of Texas (State)

Case number: 19-34054

Official Form 410

# Proof of Claim

**04/19**

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies or any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

NexPoint Advisors, L.P.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor ______

**2. Has this claim been acquired from someone else?**

☑ No

☐ Yes. From whom? ______

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| NexPoint Advisors, L.P.<br>300 Crescent Court, Ste. 700<br>Dallas, TX 75201 | |
| Contact phone 9726284100 | Contact phone ______ |
| Contact email See summary page | Contact email ______ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one): ______

**4. Does this claim amend one already filed?**

☑ No

☐ Yes. Claim number on court claims registry (if known) ______ Filed on ______ (MM / DD / YYYY)

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No

☐ Yes. Who made the earlier filing? ______

EXHIBIT "3"

1934054200408000000000024

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?**

$ See attached Exhibit "A" . **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

See attached Exhibit "A"

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature or property:**

☐ Real estate: If the claim is secured by the debtor's principle residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: ____________________

**Basis for perfection:** ____________________

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $__________

**Amount of the claim that is secured:** $__________

**Amount of the claim that is unsecured:** $__________(The sum of the secured and unsecured amount should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $__________

**Annual Interest Rate** (when case was filed)________%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $__________

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: ____________________

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check all that apply:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $____________ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $____________ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $____________ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $____________ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $____________ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $____________ |

* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

**13. Is all or part of the claim pursuant to 11 U.S.C. § 503(b)(9)?**

☑ No

☐ Yes. Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.

$____________

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgement that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 04/08/2020
MM / DD / YYYY

/s/Frank George Waterhouse
Signature

**Print the name of the person who is completing and signing this claim:**

Name: Frank George Waterhouse
First name / Middle name / Last name

Title: Authorized Agent

Company: NexPoint Advisors, L.P.
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address

Contact phone ____________ Email ____________

1934054200408000000000024

# KCC ePOC Electronic Claim Filing Summary

For phone assistance: Domestic (877) 573-3984 | International (310) 751-1829

**Debtor:**
19-34054 - Highland Capital Management, L.P.

**District:**
Northern District of Texas, Dallas Division

| | |
|---|---|
| **Creditor:**<br>NexPoint Advisors, L.P.<br>300 Crescent Court, Ste. 700<br>Dallas, TX, 75201<br>**Phone:**<br>9726284100<br>**Phone 2:**<br>**Fax:**<br>**Email:**<br>fwaterhouse@highlandcapital.com | **Has Supporting Documentation:**<br>Yes, supporting documentation successfully uploaded<br>**Related Document Statement:**<br>**Has Related Claim:**<br>No<br>**Related Claim Filed By:**<br>**Filing Party:** |
| **Other Names Used with Debtor:** | **Amends Claim:**<br>No<br>**Acquired Claim:**<br>No |
| **Basis of Claim:**<br>See attached Exhibit "A" | **Last 4 Digits:**<br>No<br>**Uniform Claim Identifier:** |
| **Total Amount of Claim:**<br>See attached Exhibit "A" | **Includes Interest or Charges:**<br>No |
| **Has Priority Claim:**<br>No | **Priority Under:** |
| **Has Secured Claim:**<br>No<br>**Amount of 503(b)(9):**<br>No<br>**Based on Lease:**<br>No<br>**Subject to Right of Setoff:**<br>No | **Nature of Secured Amount:**<br>**Value of Property:**<br>**Annual Interest Rate:**<br>**Arrearage Amount:**<br>**Basis for Perfection:**<br>**Amount Unsecured:** |

**Submitted By:**
Frank George Waterhouse on 08-Apr-2020 3:10:15 p.m. Eastern Time

**Title:**
Authorized Agent

**Company:**
NexPoint Advisors, L.P.

# Exhibit A

This Exhibit "A" is being filed by NexPoint Advisors, L.P. ("Claimant") pursuant to a Payroll Reimbursement Agreement dated to be effective as of January 1, 2018 and Amendment Number One to the Payroll Reimbursement Agreement entered into on December 14, 2018. Pursuant to these agreements, Claimant has previously made payments for the Debtor and under the Expense Reimbursement Agreement is entitled to reimbursement from the Debtor. Claimant has requested information from the Debtor to ascertain the exact amount of the claim. This process is on-going. Additionally, this process has been delayed due to the outbreak of the Coronavirus. Claimant is continuing to work to ascertain the exact amount of its claim and will update its claim in the next ninety days. A true and correct copy of these reimbursement agreements is attached hereto.

# PAYROLL REIMBURSEMENT AGREEMENT

THIS PAYROLL REIMBURSEMENT AGREEMENT (this "***Agreement***") entered into on this 1st day of May, 2018 by and among Highland Capital Management, L.P., a Delaware limited partnership ("***HCMLP***"), and NexPoint Advisors, L.P., a Delaware limited partnership ("***NexPoint***"), and any affiliate of NexPoint that becomes a party hereto, is effective as of January 1, 2018 (the "***Effective Date***"). Each of the signatories hereto is individually a "***Party***" and collectively the "***Parties***".

## RECITALS

A. During the Term, HCMLP will seek reimbursement from NexPoint for the cost of certain employees who are dual employees of HCMLP and NexPoint and who provide advice to registered investment companies advised by NexPoint under the direction and supervision of NexPoint as more fully described in this Agreement.

## AGREEMENT

In consideration of the foregoing recitals and the mutual covenants and conditions contained herein, the Parties agree, intending to be legally bound, as follows:

## ARTICLE I
## DEFINITIONS

"***Actual Cost***" means, with respect to any period hereunder, the actual costs and expenses caused by, incurred or otherwise arising from or relating to each Dual Employee, in each case during such period. Absent any changes to employee reimbursement, as set forth in Section 2.02, such costs and expenses are equal to $252,000 per month.

"***Affiliate***" means a Person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, a specified Person. The term "***control***" (including, with correlative meanings, the terms "***controlled by***" and "***under common control with***") means the possession of the power to direct the management and policies of the referenced Person, whether through ownership interests, by contract or otherwise.

"***Agreement***" has the meaning set forth in the preamble.

"***Allocation Percentage***" has the meaning set forth in Section 3.01.

"***Dual Employee***" has the meaning set forth in Section 2.01.

"***Effective Date***" has the meaning set forth in the preamble.

"***Party***" or "***Parties***" has the meaning set forth in the preamble.

"***Person***" means an association, a corporation, an individual, a partnership, a limited liability company, a trust or any other entity or organization.

"***Tax***" or "***Taxes***" means: (i) all state and local sales, use, value-added, gross receipts, foreign, privilege, utility, infrastructure maintenance, property, federal excise and similar levies, duties and other similar tax-like charges lawfully levied by a duly constituted taxing authority against or upon the Shared Services and the Shared Assets; and (ii) tax-related surcharges or fees that are related to the Shared Services

and the Shared Assets identified and authorized by applicable tariffs.

ARTICLE II
EMPLOYEE REIMBURSEMENT

Section 2.01 Employee Reimbursement. During the Term, NexPoint shall reimburse HCMLP for the Actual Cost to HCMLP of certain employees who (i) are dual employees of HCMLP and NexPoint and (ii) provide advice to any investment company registered under the Investment Company Act of 1940, as amended (the "***1940 Act***") pursuant to an investment advisory agreement between NexPoint and such investment company (each, a "***Fund***") under the direction and supervision of NexPoint (each, a "***Dual Employee***").

Section 2.02 Changes to Employee Reimbursement. During the Term, the Parties may agree to modify the terms and conditions of NexPoint's reimbursement in order to reflect new procedures or processes, including modifying the Allocation Percentage (defined below) applicable to such Dual Employee to reflect the then current fair market value of such Dual Employee's employment. The Parties will negotiate in good faith the terms of such modification.

ARTICLE III
COST ALLOCATION

Section 3.01 Actual Cost Allocation Formula. The Actual Cost of any Dual Employee relating to the investment advisory services provided to a Fund shall be allocated based on the Allocation Percentage. For purposes of this Agreement, "***Allocation Percentage***" means the Parties' good faith determination of the percentage of each Dual Employee's aggregate hours worked during a quarter that were spent on NexPoint matters, as listed on Exhibit A.

ARTICLE IV
PAYMENT OF COST AND REVENUE SHARE; TAXES

Section 4.01 Settlement Payments. At any time during the Term, NexPoint may make payment of the amounts that are allocable to it.

Section 4.02 Determination and Payment of Cost. NexPoint shall promptly make payment of the Actual Cost within ten (10) days of the end of each calendar month. Should either Party determine that a change to employee reimbursement is appropriate, as set forth in Section 2.02, the Party requesting the modification shall notify the other Party on or before the last business day of the calendar month.

Section 4.03 Taxes.

(a) NexPoint is responsible for and will pay all Taxes applicable to it, provided, that such payments by NexPoint to HCMLP will be made in the most tax-efficient manner and provided further, that HCMLP will not be subject to any liability for Taxes applicable to the cost of a Dual Employee of NexPointas a result of such payment by NexPoint. HCMLP will collect such Tax from NexPoint in the same manner it collects such Taxes from other customers in the ordinary course of its business, but in no event prior to the time it invoices NexPoint for costs for which such Taxes are levied. NexPoint may provide HCMLP with a certificate evidencing its exemption from payment of or liability for such Taxes.

(b) NexPoint will reimburse HCMLP for any Taxes collected from HCMLP and refunded to NexPoint. In the event a Tax is assessed against NexPoint that is solely the responsibility of HCMLP and HCMLP desires to protest such assessment, HCMLP will submit to NexPoint a statement of

the issues and arguments requesting that NexPoint grant HCMLP the authority to prosecute the protest in NexPoint's name. NexPoint's authorization will not be unreasonably withheld. HCMLP will finance, manage, control and determine the strategy for such protest while keeping NexPoint reasonably informed of the proceedings. However, the authorization will be periodically reviewed by NexPoint to determine any adverse impact on NexPoint, and NexPoint will have the right to reasonably withdraw such authority at any time. Upon notice by NexPoint that it is so withdrawing such authority, HCMLP will expeditiously terminate all proceedings. Any adverse consequences suffered by HCMLP as a result of the withdrawal will be submitted to litigation pursuant to Section 6.14. Any contest for Taxes brought by HCMLP may not result in any lien attaching to any property or rights of NexPoint or otherwise jeopardize NexPoint's interests or rights in any of its property.

(c) The provisions of this Section 4.03 will govern the treatment of all Taxes arising as a result of or in connection with this Agreement notwithstanding any other Article of this Agreement to the contrary.

ARTICLE V
TERM AND TERMINATION

Section 5.01 Term. The term of this Agreement will commence as of the Effective Date and will continue in full force and effect until the first anniversary of the Effective Date (the "***Term***"), unless terminated earlier in accordance with Section 5.02. The Term shall automatically renew for successive one year periods unless sooner terminated under Section 5.02.

Section 5.02 Termination. Either Party may terminate this Agreement, with or without cause, upon at least 60 days advance written notice at any time prior to the expiration of the Term.

ARTICLE VI
MISCELLANEOUS

Section 6.01 No Partnership or Joint Venture; Independent Contractor. Nothing contained in this Agreement will constitute or be construed to be or create a partnership or joint venture between or among HCMLP or NexPoint or their respective successors or assigns. The Parties understand and agree that this Agreement does not make any of them an agent or legal representative of the other for any purpose whatsoever. Neither Party is granted, by this Agreement or otherwise, any right or authority to assume or create any obligation or responsibilities, express or implied, on behalf of or in the name of any other Party, or to bind any other Party in any manner whatsoever.

Section 6.02 Amendments; Waivers. Except as expressly provided herein, this Agreement may be amended only by agreement in writing of all Parties. No waiver of any provision nor consent to any exception to the terms of this Agreement or any agreement contemplated hereby will be effective unless in writing and signed by all of the Parties affected and then only to the specific purpose, extent and instance so provided. No failure on the part of any Party to exercise or delay in exercising any right hereunder will be deemed a waiver thereof, nor will any single or partial exercise preclude any further or other exercise of such or any other right.

Section 6.03 Schedules and Exhibits; Integration. Each Schedule and Exhibit delivered pursuant to the terms of this Agreement must be in writing and will constitute a part of this Agreement, although schedules need not be attached to each copy of this Agreement. This Agreement, together with such Schedules and Exhibits constitutes the entire agreement among the Parties pertaining to the subject matter hereof and supersedes all prior agreements and understandings of the Parties in connection therewith.

Section 6.04 Further Assurances. Each Party will take such actions as any other Party may reasonably request or as may be necessary or appropriate to consummate or implement the transactions contemplated by this Agreement or to evidence such events or matters.

Section 6.05 Governing Law. This Agreement and the legal relations between the Parties will be governed by and construed in accordance with the laws of the State of Texas applicable to contracts made and performed in such State and without regard to conflicts of law doctrines unless certain matters are preempted by federal law.

Section 6.06 Assignment. Except as otherwise provided hereunder, neither this Agreement nor any rights or obligations hereunder are assignable by one Party without the express prior written consent of the other Parties.

Section 6.07 Headings. The descriptive headings of the Articles, Sections and subsections of this Agreement are for convenience only and do not constitute a part of this Agreement.

Section 6.08 Counterparts. This Agreement and any amendment hereto or any other agreement delivered pursuant hereto may be executed in one or more counterparts and by different Parties in separate counterparts. All counterparts will constitute one and the same agreement and will become effective when one or more counterparts have been signed by each Party and delivered to the other Parties.

Section 6.09 Successors and Assigns; No Third Party Beneficiaries. This Agreement is binding upon and will inure to the benefit of each Party and its successors or assigns, and nothing in this Agreement, express or implied, is intended to confer upon any other Person any rights or remedies of any nature whatsoever under or by reason of this Agreement.

Section 6.10 Notices. All notices, demands and other communications to be given or delivered under or by reason of the provisions of this Agreement will be in writing and will be deemed to have been given: (i)immediately when personally delivered; (ii) when received by first class mail, return receipt requested; (iii) one day after being sent for overnight delivery by Federal Express or other overnight delivery service; or (iv) when receipt is acknowledged, either electronically or otherwise, if sent by facsimile, telecopy or other electronic transmission device. Notices, demands and communications to the other Parties will, unless another address is specified by such Parties in writing, be sent to the addresses indicated below:

**If to HCMLP, addressed to:**

Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention: General Counsel
Fax: (972) 628-4147

**If to NexPoint, addressed to:**

NexPoint Advisors, L.P.
200 Crescent Court, Suite 700
Dallas, Texas 75201
Attention: General Counsel
Fax: (972) 628-4147

Section 6.11 Expenses. Except as otherwise provided herein, the Parties will each pay their own expenses incident to the negotiation, preparation and performance of this Agreement, including the fees, expenses and disbursements of their respective investment bankers, accountants and counsel.

Section 6.12 Waiver. No failure on the part of any Party to exercise or delay in exercising any right hereunder will be deemed a waiver thereof, nor will any single or partial exercise preclude any further or other exercise of such or any other right.

Section 6.13 Severability. If any provision of this Agreement is held to be unenforceable for any reason, it will be adjusted rather than voided, if possible, to achieve the intent of the Parties. All other provisions of this Agreement will be deemed valid and enforceable to the extent possible.

Section 6.14 Dispute Resolution; Jurisdiction. The Parties hereby agree that any action, claim, litigation, or proceeding of any kind whatsoever against any other Party in any way arising from or relating to this Agreement, including, but not limited to, claims sounding in contract, equity, tort, fraud and statute ("Dispute") shall be submitted exclusively to the the courts located in Dallas County, Texas, and any appellate court thereof ("Enforcement Court"). Each party irrevocably and unconditionally submits to the exclusive personal and subject matter jurisdiction of the Enforcement Court for any Dispute and agrees to bring any Dispute only in the Enforcement Court. Each Party further agrees it shall not commence any Dispute in any forum, including, but not limited to, administrative, arbitration, or litigation, other than the Enforcement Court.

Section 6.15 General Rules of Construction. For all purposes of this Agreement and the Exhibits and Schedules delivered pursuant to this Agreement: (i) the terms defined in Article I have the meanings assigned to them in Article I and include the plural as well as the singular; (ii) all accounting terms not otherwise defined herein have the meanings assigned under GAAP; (iii) all references in this Agreement to designated "Articles," "Sections" and other subdivisions are to the designated Articles, Sections and other subdivisions of the body of this Agreement; (iv) pronouns of either gender or neuter will include, as appropriate, the other pronoun forms; (v) the words "herein,""hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Article, Section or other subdivision; (vi) "or" is not exclusive; (vii) "including" and "includes" will be deemed to be followed by "but not limited to" and "but is not limited to, "respectively; (viii) any definition of or reference to any law, agreement, instrument or other document herein will be construed as referring to such law, agreement, instrument or other document as from time to time amended, supplemented or otherwise modified; and (ix) any definition of or reference to any statute will be construed as referring also to any rules and regulations promulgated thereunder.

IN WITNESS HEREOF, each of the Parties has caused this Agreement to be executed by its duly authorized officers as of the day and year first above written.

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By: Strand Advisors, Inc., its general partner

By:____________________________
Name:__________________________
Title:___________________________

**NEXPOINT ADVISORS, L.P.**

By: NexPoint Advisors GP, LLC, its general partner

By:______________________________
Name:____________________________
Title:_____________________________

**EXHIBIT A**

EMPLOYEE ALLOCATIONS
(AS OF JANUARY 1, 2018)

| EMPLOYEE NAME | PERCENTAGE (%) ALLOCATION TO NEXPOINT ADVISORS, L.P. |
|---|---|
| Abayarathna, Sahan | 9% |
| Baynard, Cameron | 9% |
| Burns, Nathan | 70% |
| Covitz, Hunter | 25% |
| Desai, Neil | 25% |
| Fedoryshyn, Eric | 9% |
| Gray, Matthew | 9% |
| Hayes, Christopher | 9% |
| Hill, Robert | 5% |
| McFarling, Brandon | 9% |
| Moore, Carl | 10% |
| Nikolayev, Yegor | 9% |
| Okada, Mark | 20% |
| Owens, David | 9% |
| Parker, Trey | 15% |
| Parmentier, Andrew | 40% |
| Phillips, Michael | 9% |
| Poglitsch, Jon | 10% |
| Ryder, Phillip | 5% |
| Sachdev, Kunal | 9% |
| Smallwood, Allan | 9% |
| Staltari, Mauro | 9% |
| Tomlin, Jake | 9% |
| Vira, Sagar | 9% |
| Wilson, Scott | 5% |

**AMENDMENT NUMBER ONE
TO
PAYROLL REIMBURSEMENT AGREEMENT**

This Amendment Number One (this "***Amendment***") to the Payroll Reimbursement Agreement (the "***Agreement***") is entered into on December 14, 2018 by and among Highland Capital Management, L.P., a Delaware limited partnership ("***HCMLP***") and NexPoint Advisors, L.P., a Delaware limited partnership ("***NexPoint***"). Each of the signatories hereto is individually a "***Party***" and collectively the "***Parties***". Capitalized terms not defined herein shall have the meaning seet forth in the Agreement.

**WHEREAS,** HCMLP and NexPoint entered into the Agreement on May 1, 2018 to facilitate NexPoint's reimbursement to HCMLP for the cost of certain employees who are dual employees of HCMLP and NexPoint; and

**WHEREAS,** HCMLP and NexPoint now desire to amend the Agreement to capture a one time payment of estimated additional Actual Costs owed to HCMLP for additional resources used by NexPoint during the Term of the Agreement.

In consideration of the foregoing recitals and the mutual covenants and conditions contained herein, the Parties agree, intending to be legally bound, as follows:

1. Payment of Additional Cost. In accordance with Section 2.02 of the Agreement (Changes to Employee Reimbursement), NexPoint hereby agrees to pay $1,300,000.00 to HCMLP, representing an estimate of additional Actual Costs owed under the Agreement for additional resources used by NexPoint (the "***Additional Actual Cost***"). NexPoint shall make payment of the Additional Actual Cost within ten (10) days of the date of this Agreement.

2. Ratification of Agreement. Except as expressly amended and provided herein, all of the terms, conditions and provisions of the Agreement are hereby ratified and confirmed to be of full force and effect, and shall continue in full force and effect.

3. Counterparts. This Agreement and any amendment hereto or any other agreement delivered pursuant hereto may be executed in one or more counterparts and by different Parties in separate counterparts. All counterparts will constitute one and the same agreement and will become effective when one or more counterparts have been signed by each Party and delivered to the other Parties.

4. Governing Law. This Agreement and the legal relations between the Parties will be governed by and construed in accordance with the laws of the State of Texas applicable to contracts made and performed in such State and without regard to conflicts of law doctrines unless certain matters are preempted by federal law.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS HEREOF, each of the Parties has caused this Amendment to be executed by its duly authorized officers as of the day and year first above written.

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By: Strand Advisors, Inc., its general partner

By:______________________________
Name:____________________________
Title:_____________________________

**NEXPOINT ADVISORS, L.P.**

By: NexPoint Advisors GP, LLC, its general partner

By:______________________________
Name:____________________________
Title:_____________________________