PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward, Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable, Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § § | Case No. 19-34054-sgj11 |
| Debtor. | § § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § | |
| Plaintiff, | § § | Adversary Proceeding No. |
| vs. | § § | 21-03005-sgj |
| NEXPOINT ADVISORS, L.P., | § § | |
| Defendant. | § | |

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

## DEBTOR'S AMENDED WITNESS AND EXHIBIT LIST
## WITH RESPECT TO HEARING TO BE HELD ON MAY 25, 2021

Highland Capital Management, L.P. (the "Debtor") submits the following amended witness and exhibit list with respect to *Defendant's Motion to Withdraw the Reference* [Docket No. 19] (status conference) which the Court has set for hearing at 1:30 p.m. (Central Time) on May 25, 2021 (the "Hearing") in the above-styled adversary proceeding (the "Adversary Proceeding")

A.    **Witnesses:**

    1.    Any witness identified by or called by any other party; and

    2.    Any witness necessary for rebuttal.

B.    **Exhibits:**

| Letter | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 1. | NexPoint Advisors, L.P. Note ($30.7 Million) | | |
| 2. | Highland Capital Management Fund Advisors, L.P. Note (2.4 Million) | | |
| 3. | Highland Capital Management Fund Advisors, L.P. Note ($5 Million) | | |
| 4. | Dondero First Note ($3.825 Million) | | |
| 5. | Dondero Second Note ($2.5 Million) | | |
| 6. | Dondero Third Note ($2.5 Million) | | |
| 7. | NexPoint Advisors, L.P. Demand Letter | | |
| 8. | Response Letter to NexPoint Advisors, L.P. re Partial Payment | | |
| 9. | Highland Capital Management Fund Advisors, L.P. Demand Letter | | |

| Letter | Exhibit | Offered | Admitted |
|---|---|---|---|
| 10. | James Dondero Demand Letter | | |
| 11. | NexPoint Advisors, L.P.'s Original Answer [Docket No. 6] | | |
| 12. | Highland Capital Management Fund Advisors, L.P.'s Original Answer [Docket No. 6] | | |
| 13. | Defendant James Dondero's Original Answer [Docket No. 6] | | |
| 14. | Defendant James Dondero's Amended Answer [Docket No. 16] | | |
| 15. | NexPoint Advisors, L.P's Objections and Responses to Plaintiff's Requests for Admissions, Interrogatories, and Requests for Production | | |
| 16. | Defendant James Dondero's Objections and Responses to Highland Capital Management, L.P.'s Second Request for Production of Documents | | |
| 17. | Defendant James Dondero's Objections and Responses to Highland Capital Management, L.P.'s First Request for Admissions | | |
| 18. | Defendant James Dondero's Objections and Responses to Highland Capital Management, L.P.'s Second Request for Admissions | | |
| 19. | Defendant James Dondero's Objections and Responses to Highland Capital Management, L.P.'s First Set of Interrogatories | | |
| 20. | Defendant James Dondero's Objections and Responses to Highland Capital Management, L.P.'s Second Set of Interrogatories | | |
| 21. | Email chain dated February 2, 2018 re $3.825 million loan to Dondero | | |
| 22. | Wire transfer confirmation dared February 2, 2018 **[REDACTED]** | | |
| 23. | Email chain dated August 1, 2018 re $2.5 million loan to Dondero | | |

| Letter | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 24. | Bank statement confirming August 1, 2018 and August 13, 2018 wire transfers to James Dondero **[REDACTED]** | | |
| 25. | Email chain dated August 13, 2018 re $2.5 million loan to Dondero | | |
| 26. | Complaint for (I) Breach of Contract and (II) Turnover of Property of the Debtor's Estate [Docket No. 1] | | |
| 27. | Order Regarding Adversary Proceedings Trial Setting and Alternative Scheduling Order [Docket No. 3] | | |
| 28. | Excerpts from Debtor's Schedules of Assets and Liabilities [Docket No. 247, Case No. 19-34054] | | |
| 29. | Debtor's Amended Schedules of Assets and Liabilities [Docket No. 1082, Case No. 19-34054] | | |
| 30. | Debtor's Statement of Financial Affairs [Docket No. 248, Case No. 19-34054] | | |
| 31. | Highland Capital Management Fund Advisors, LP Incumbency Certificate | | |
| 32. | Highland Capital Management Fund Advisors, LP Consolidated Financial Statements dated December 31, 2018 | | |
| 33. | SEC Deficiency Letter to Highland Capital Management Fund Advisors, LP dated February 27, 2019 | | |
| 34. | Response to SEC Deficiency Letter dated March 29, 2019 | | |
| 35. | Supplemental Response to SEC Deficiency Letter dated May 3, 2019 | | |

| Letter | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 36. | SEC Closeout Letter dated May 22, 2019 | | |
| 37. | Memo dated May 28, 2019 from HCMFA to Highland Global Allocation Fund re: Resolution of the Fund's Net Asset Value Error | | |
| 38. | Letter dated June 3, 2019 to PricewaterhouseCoopers LLP re audit of Highland Capital Management Fund Advisors, LP | | |
| 39. | Form N-CSR of Highland Global Allocation Fund | | |
| 40. | NexPoint Advisors, L.P. Amended and Restated Shared Services Agreement | | |
| 41. | Order on Debtor's Emergency Motion for a Mandatory Injunction Requiring the Advisors to Adopt and Implement a Plan for the Transition of Services by February 28, 2021 [Docket No. 25, Adv. Pro. No. 21-03010] | | |
| 42. | Debtor's February 2018 internal monthly close package **[REDACTED]** | | |
| 43. | Debtor's August 2018 internal monthly close package **[REDACTED]** | | |
| 44. | Initial Monthly Operating Report [Docket No. 82] | | |
| 45. | October 2019 Monthly Operating Report [Docket No. 405] | | |
| 46. | November 2019 Monthly Operating Report [Docket No. 289] | | |
| 47. | December 2019 Monthly Operating Report [Docket 418] | | |

| Letter | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 48. | Debtor's back-up for December Monthly Operating Report | | |
| 49. | January 2020 Monthly Operating Report [Docket 497] | | |
| 50. | February 2020 Monthly Operating Report [Docket 558] | | |
| 51. | March 2020 Monthly Operating Report [Docket 634] | | |
| 52. | April 2020 Monthly Operating Report [Docket 686] | | |
| 53. | May 2020 Monthly Operating Report [Docket 800] | | |
| 54. | Amended May 2020 Monthly Operating Report [Docket 905] | | |
| 55. | June 2020 Monthly Operating Report [Docket 913] | | |
| 56. | July 2020 Monthly Operating Report [Docket 1014] | | |
| 57. | August 2020 Monthly Operating Report [Docket 1115] | | |
| 58. | September 2020 Monthly Operating Report [Docket 1329] | | |
| 59. | Debtor's back-up for September Monthly Operating Report | | |

| Letter | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 60. | October 2020 Monthly Operating Report [Docket 1493] | | |
| 61. | November 2020 Monthly Operating Report [Docket 1710] | | |
| 62. | December 2020 Monthly Operating Report [Docket 1949] | | |
| 63. | Debtor's January 2021 Monthly Operating Report | | |
| 64. | Debtor's back-up for the January 2021 Monthly Operating Report | | |
| 65. | Debtor's January 2021 Affiliates Loan Receivables Summary | | |
| 66. | Any document entered or filed in the Adversary Proceeding, including any exhibits thereto | | |
| 67. | Any document entered or filed in the Debtor's chapter 11 bankruptcy case, including any exhibits thereto | | |
| 68. | All exhibits necessary for impeachment and/or rebuttal purposes | | |
| 69. | All exhibits identified by or offered by any other party at the Hearing | | |

Dated: May 25, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:    jpomerantz@pszjlaw.com
           ikharasch@pszjlaw.com
           jmorris@pszjlaw.com
           gdemo@pszjlaw.com


-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

# EXHIBIT 21

**From:** David Klos <DKlos@HighlandCapital.com>
**Sent:** Friday, February 02, 2018 2:16 PM
**To:** Corporate Accounting
**Cc:** Melissa Schroth
**Subject:** $3.825mm to Jim

Blair,
Please set up $3.825mm to go to Jim this afternoon. Frank has approved.

Drew, this is a new loan.

**DAVID KLOS** | CONTROLLER



300 Crescent Court | Suite 700 | Dallas, Texas 75201
C: 214.674.2926 | O: 972.419.4478 | F: 972.628.4147
dklos@highlandcapital.com | www.highlandcapital.com

# EXHIBIT 22

From: wiremail@bbvacompass.com <wiremail@bbvacompass.com>
Sent: Friday, February 2, 2018 1:35 PM
To: Corporate Accounting <CorporateAccounting@hcmlp.com>
Subject: Compass Bank [Texas Bank Outgoing] Message ID:180202133456H400 Advice Code:TxBkOut

Compass Bank Wire Transfer Dept.
701 S 32nd Street
Birmingham, AL  35233

Outgoing Wire - Advice of Debit

Date: 2018-02-02 00:00:00          Wire Create Time 13:34:57

    Account #      :
    Account Name    : HIGHLAND CAPITAL MANAGEMENT LP
    Amount          : $3,825,000.00
    GFX Reference     : 180202133456H400
    Receiving Bank  : 311973208
    Recv BK Name      : NEXBANK SSB

    Originator      : HIGHLAND CAPITAL MANAGEMENT LP

    Beneficiary      : James Dondero
    Bene Acct #      :  ███884

Beneficiary Info (OBI):
2/2/2018 Loan

Reference for Beneficiary (RFB):


FED Reference Number (IMAD):
20180202F2QCZ60C002532

1

# EXHIBIT 23

**From:** Blair Hillis <BHillis@HighlandCapital.com>
**Sent:** Wednesday, August 01, 2018 1:12 PM
**To:** David Klos; Corporate Accounting
**Cc:** Melissa Schroth
**Subject:** RE: $2.5mm loan to Dondero

Funds have been transferred to Jim's account. Thanks!

Kind Regards,
Blair Roeber

---

**From:** David Klos
**Sent:** Wednesday, August 1, 2018 10:47 AM
**To:** Corporate Accounting
**Cc:** Melissa Schroth
**Subject:** $2.5mm loan to Dondero

Jim has authorized a $2.5mm loan from HCMLP to Dondero.

Blair, can you please set up this wire today?
Drew, can you please draw up loan docs for execution?

**DAVID KLOS** | CONTROLLER



300 Crescent Court | Suite 700 | Dallas, Texas 75201
C: 214.674.2926 | O: 972.419.4478 | F: 972.628.4147
dklos@highlandcapital.com | www.highlandcapital.com

# EXHIBIT 24



2515 McKinney Avenue, 11th Floor
Dallas, Texas 75201
972.934.4700
www.NexBank.com





```
                                        Date  8/31/18        Page     1
                                        Primary Account      ███████
                                        Enclosures
```

```
            Highland Capital Management LP
            300 Crescent Court Suite 700
            Dallas TX 75201
```

NexBank's Privacy Notice, which has not changed, is available on our website
at www.NexBank.com/files/privacynotice.pdf.  If you would like a copy of our
Privacy Notice mailed to you, please call us at 972-934-4700.

Checking Account/s

            Account Type:  Highland Capital Management LP

Analysis Checking w/ Interest
Account Number            ███████    Statement Dates  8/01/18 thru  9/03/18
Last Statement Balance    4,354,207.26    Days in the statement period       34
     6 Deposits/Credits   1,108,935.70    Average Ledger          1,205,562.01
     3 Checks/Debits      5,144,963.28    Average Collected       1,205,562.01
Service Charge                   .00    Interest Earned               617.68
Interest Paid                 603.26    Annual Percentage Yield Earned    0.55%
This Statement Balance     318,782.94    2018 Interest Paid          8,245.45

--------------------------------------------------------------------------------

Deposits and Additions
Date      Description                          Amount
 8/01     IB Transfer from D ****415 to        416,000.00
          D ****130
 8/01     IB Transfer from D ****171 to        420,000.00
          D ****130
 8/01     Misc Credit                          130,000.00
 8/02     IB Transfer from D ****672 to          2,935.70
          D ****130
 8/27     IB Transfer from D ****672 to         10,000.00
          D ****130
 8/30     Misc Credit                          130,000.00
 8/31     Interest Deposit                         603.26

--------------------------------------------------------------------------------

MEMBER FDIC              NOTICE: SEE LAST PAGE FOR IMPORTANT INFORMATION
              Payments received at the address indicated on this statement by 3:00 pm. Central Standard Time
                        each banking day will be credited as of that date.
```



2515 McKinney Avenue, 11th Floor
Dallas, Texas 75201
972.934.4700
www.NexBank.com





```
                                           Date  8/31/18          Page      2
                                           Primary Account
                                           Enclosures        ████████


        Analysis Checking w/ Interest      ██████     (Continued)

        Checks and Withdrawals
        Date     Description                        Amount
        8/01     IB Transfer from D ****130 to      2,500,000.00-
                 D ****884

        8/13     IB Transfer from D ****130 to      2,500,000.00-
                 D ****884

        8/30     IB Transfer from D ****130 to        144,963.28-
                 D ****513


--------------------------------------------------------------------------------

        Daily Balance Information
        Date        Balance      Date      Balance      Date     Balance
        8/01      2,820,207.26    8/13    323,142.96     8/30    318,179.68
        8/02      2,823,142.96    8/27    333,142.96     8/31    318,782.94


--------------------------------------------------------------------------------

                            Interest Rate Summary
                            Date          Rate
                            7/31          0.550000%

        End of Statement
```

MEMBER FDIC                    NOTICE: SEE LAST PAGE FOR IMPORTANT INFORMATION
                   Payments received at the address indicated on this statement by 3:00 pm. Central Standard Time
                   each banking day will be credited as of that date.

| OUTSTANDING CHECKS | RECONCILIATION INSTRUCTIONS |
|---|---|

**Reconciliation of Account**

Date _____

| CHECKS WRITTEN BUT NOT PAID | | |
|---|---|---|
| NUMBER | AMOUNT | |

Please examine this statement and items at once and refer any exceptions immediately.

Sort your checks numerically or by date issued.

Mark off in your checkbook each of your checks paid by the bank and list the numbers and amounts of those not paid in the space provided at the left. Include any checks still not paid from previous statements.

Subtract from your checkbook balance any SERVICE CHARGE (S.C.) or bank charge appearing on this statement.

Reconcile your statement in the space provided below.

| | Enter bank balance from statement | | |
|---|---|---|---|
| | Add deposits not credited by bank (if any) | | |
| | TOTAL | | |
| Total of Checks not paid | Subtract total of checks not paid | | |
| **THIS AMOUNT SHOULD EQUAL YOUR CHECKBOOK BALANCE->** | | | |

**Any Charge for Imprinted Checks Includes State Sales Tax Computed at the Current Rate, When Applicable
Notice: The Annual Percentage Rate and Daily Periodic Rate may vary.**

## EXPLANATION OF BALANCE ON WHICH THE INTEREST CHARGE IS COMPUTED

We figure the interest charge on your account by applying the periodic rate to the "daily balance" of your account for each day in the billing cycle. To get the "daily balance" we take the beginning balance of your account each day, add any new advances/fees, and subtract any unpaid interest or other finance charges and any payments or credits. This gives us the daily balance.

## WHAT TO DO IF YOU THINK YOU FIND A MISTAKE ON YOUR STATEMENT

If you think there is an error on your statement, write to us at:
**NexBank**
2515 McKinney Avenue, 11th Floor
Dallas, Texas 75201
You may also contact us on the Web: www.nexbank.com
In your letter, give us the following information:
- Account Information: Your name and account number.
- Dollar Amount: The dollar amount of the suspected error.
- Description of Problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.
You must contact us within 60 days after the error appeared on your statement.
You must notify us of any potential errors in writing or electronically. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.
While we investigate whether or not there has been an error, the following are true:
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

## IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS

In Case of Errors or Questions About Your Electronic Transfers, Telephone us at 972.934.4700 or Write us at NexBank, 2515 McKinney Avenue, 11th Floor, Dallas, Texas 75201 as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.
(1) Tell us your name and account number (if any).
(2) Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
(3) Tell us the dollar amount of the suspected error.
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

# EXHIBIT 25

| | |
|---|---|
| **From:** | Blair Hillis <BHillis@HighlandCapital.com> |
| **Sent:** | Monday, August 13, 2018 11:44 AM |
| **To:** | Drew Wilson; David Klos; Corporate Accounting |
| **Cc:** | Melissa Schroth |
| **Subject:** | RE: $2.5mm loan to Dondero |

Funds have been transferred to Jim's account ending in *884.

Thanks!

Kind Regards,
Blair Roeber

---

**From:** Drew Wilson
**Sent:** Monday, August 13, 2018 9:52 AM
**To:** Blair Roeber ; David Klos ; Corporate Accounting
**Cc:** Melissa Schroth
**Subject:** $2.5mm loan to Dondero

Jim has authorized a $2.5mm loan from HCMLP to Dondero.

Blair, can you please set up this wire today? We should receive the funds from Select shortly. Loan docs are attached.

**Drew Wilson** | Senior Corporate Accountant



300 Crescent Court | Suite 700 | Dallas, Texas 75201
C: 314.369.7116 | O: 972.419.4465 | F: 972.628.4147
dwilson@hcmlp.com | www.hcmlp.com

# EXHIBIT 26

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff, | § | Adversary Proceeding No. |
| | § | |
| vs. | § | _____ |
| | § | |
| JAMES DONDERO, | § | |
| | § | |
| Defendant. | § | |

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.


1934054210127000000000007

**COMPLAINT FOR (I) BREACH OF CONTRACT
AND (II) TURNOVER OF PROPERTY OF THE DEBTOR'S ESTATE**

Plaintiff, Highland Capital Management, L.P., the above-captioned debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case and the plaintiff in the above-captioned adversary proceeding (the "Adversary Proceeding"), by its undersigned counsel, as and for its complaint (the "Complaint") against defendant, Mr. James Dondero ("Mr. Dondero" or "Defendant"), alleges upon knowledge of its own actions and upon information and belief as to other matters as follows:

**PRELIMINARY STATEMENT**

1.     The Debtor brings this action against Mr. Dondero as a result of Mr. Dondero's defaults under three promissory notes executed by Mr. Dondero in favor of the Debtor in the aggregate original principal amount of $8,825,000 and payable upon the Debtor's demand. Despite due demand, Mr. Dondero has failed to pay amounts due and owing under the notes and the accrued but unpaid interest thereon.

2.     Through this Complaint, the Debtor seeks (a) damages from Mr. Dondero in an amount equal to (i) the aggregate outstanding principal due under the Notes (as defined below), plus (ii) all accrued and unpaid interest thereon until the date of payment, plus (iii) an amount equal to the Debtor's costs of collection (including all court costs and reasonable attorneys' fees and expenses, as provided for in the notes) for Mr. Dondero's breach of his obligations under the Notes, and (b) turnover by Mr. Dondero to the Debtor of the foregoing amounts.

2

## JURISDICTION AND VENUE

3.      This adversary proceeding arises in and relates to the Debtor's case pending before the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court") under chapter 11 of the Bankruptcy Code.

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

5.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b), and, pursuant to Rule 7008 of the Bankruptcy Rules, the Debtor consents to the entry of a final order by the Court in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

6.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

7.      The Debtor is a limited liability partnership formed under the laws of Delaware with a business address at 300 Crescent Court, Suite 700, Dallas, Texas 75201.

8.      Upon information and belief, Mr. Dondero is an individual residing in Dallas, Texas.  He is the co-founder of the Debtor and was the Debtor's President and Chief Executive Officer until his resignation on January 9, 2020.

## CASE BACKGROUND

9.      On October 16, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Court"), Case No. 19-12239 (CSS) (the "Highland Bankruptcy Case").

10.      On October 29, 2019, the U.S. Trustee in the Delaware Court appointed an Official Committee of Unsecured Creditors (the "Committee") with the following members:  (a)

3

Redeemer Committee of Highland Crusader Fund, (b) Meta-e Discovery, (c) UBS Securities LLC and UBS AG London Branch, and (d) Acis LP and Acis GP.

11.     On December 4, 2019, the Delaware Court entered an order transferring venue of the Highland Bankruptcy Case to this Court [Docket No. 186].[2]

12.     The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this chapter 11 case.

## STATEMENT OF FACTS

### A.     The Dondero Notes

13.     Mr. Dondero, in his personal capacity, is the maker under a series of promissory notes in favor of the Debtor.

14.     Specifically, on February 2, 2018, Mr. Dondero executed a promissory note in favor of the Debtor, as payee, in the original principal amount of $3,825,000 ("Dondero's First Note").  A true and correct copy of Dondero's First Note is attached hereto as **Exhibit 1**.

15.     On August 1, 2018, Mr. Dondero executed a promissory note in favor of the Debtor, as payee, in the original principal amount of $2,500,000 ("Dondero's Second Note").  A true and correct copy of Dondero's Second Note is attached hereto as **Exhibit 2.**

16.     On August 13, 2018, Mr. Dondero executed a promissory note in favor of the Debtor, as payee, in the original principal amount of $2,500,000 ("Dondero's Third Note" and collectively, with Dondero's First Note and Dondero's Second Note, the "Notes").  A true and correct copy of Dondero's Third Note is attached hereto as **Exhibit 3.**

17.     Section 2 of each Note provides: "**Payment of Principal and Interest**.  The accrued interest and principal of this Note shall be due and payable on demand of the Payee."

---

[2] All docket numbers refer to the main docket for the Highland Bankruptcy Case maintained by this Court.

4

18.     Section 4 of each Note provides:

**Acceleration Upon Default**.     Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof.  No failure or delay on the part of the Payee in exercising any right, power, or privilege hereunder shall operate as a waiver hereof.

19.     Section 6 of each Note provides:

**Attorneys' Fees**.     If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

## B.     Mr. Dondero Defaults under Each Note

20.     By letter dated December 3, 2020, the Debtor made demand on Mr. Dondero for payment under the Notes by December 11, 2020 (the "Demand Letter").  A true and correct copy of the Demand Letter is attached hereto as **Exhibit 4**.  The Demand Letter provided:

By this letter, Payee is demanding payment of the accrued interest and principal due and payable on the Notes in the aggregate amount of $9,004,013.07, which represents all accrued interest and principal through and including December 11, 2020.

**Payment is due on December 11, 2020, and failure to make payment in full on such date will constitute an event of default under the Notes.**

Demand Letter (emphasis in the original).

21.     Despite the Debtor's demand, Mr. Dondero did not pay all or any portion of the amounts demanded by the Debtor on December 11, 2020, or at any time thereafter.

22.     As of December 11, 2020, there was an outstanding principal amount of $3,687,269.71 on Dondero's First Note and accrued but unpaid interest in the amount of $21,003.70, resulting in a total outstanding amount as of that date of $3,708,273.41.

23. As of December 11, 2020, there was an outstanding principal balance of $2,619,929.42 on Dondero's Second Note and accrued but unpaid interest in the amount of $27,950.70, resulting in a total outstanding amount as of that date of $2,647,880.12.

24. As of December 11, 2020, there was an outstanding principal balance of $2,622,425.61 on Dondero's Third Note and accrued but unpaid interest in the amount of $25,433.94, resulting in a total outstanding amount as of that date of $2,647,859.55.

25. Thus, as of December 11, 2020, the total outstanding principal and accrued but unpaid interest due under the Notes was $9,004,013.07.

26. Pursuant to Section 4 of each Note, each Note is in default and is currently due and payable.

## FIRST CLAIM FOR RELIEF
### (For Breach of Contract)

27. The Debtor repeats and re-alleges the allegations in each of the foregoing paragraphs as though fully set forth herein.

28. Each Note is a binding and enforceable contract.

29. Mr. Dondero breached each Note by failing to pay all amounts due to the Debtor upon the Debtor's demand.

30. Pursuant to each Note, the Debtor is entitled to damages from Mr. Dondero in an amount equal to (i) the aggregate outstanding principal due under each Note, plus (ii) all accrued and unpaid interest thereon until the date of payment, plus (iii) an amount equal to the Debtor's costs of collection (including all court costs and reasonable attorneys' fees and expenses) for Mr. Dondero's breach of his obligations under each of the Notes.

31. As a direct and proximate cause of Mr. Dondero's breach of each Note, the Debtor has suffered damages in the total amount of at least $9,004,013.07 as of December 11,

2020, plus an amount equal to all accrued but unpaid interest from that date plus the Debtor's cost of collection.

## SECOND CLAIM FOR RELIEF
### (Turnover by Mr. Dondero Pursuant to 11 U.S.C. § 542(b))

32.     The Debtor repeats and re-alleges the allegations in each of the foregoing paragraphs as though fully set forth herein.

33.     Mr. Dondero owes the Debtor an amount equal to (i) the aggregate outstanding principal due under each Note, plus (ii) all accrued and unpaid interest thereon until the date of payment, plus (iii) an amount equal to the Debtor's costs of collection (including all court costs and reasonable attorneys' fees and expenses) for Mr. Dondero's breach of his obligations under each of the Notes.

34.     Each Note is property of the Debtor's estate, and the amounts due under each Note are matured and payable upon demand.

35.     Mr. Dondero has not paid the amounts dues under each Note to the Debtor.

36.     The Debtor has made demand for the turnover of the amounts due under each Note.

37.     As of the date of filing of this Complaint, Mr. Dondero has not turned over to the Debtor all or any of the amounts due under each of the Notes.

38.     The Debtor is entitled to the turnover of all amounts due under each of the Notes.

WHEREFORE, the Debtor prays for judgment as follows:

(i)      On its First Claim for Relief, damages in an amount to be determined at trial, including, among other things, (a) the aggregate outstanding principal due under each Note, plus (b) all accrued and unpaid interest thereon until the date of

7

payment, plus (c) an amount equal to the Debtor's costs of collection (including all court costs and reasonable attorneys' fees and expenses);

(ii)     On its Second Claim for Relief, ordering turnover by Mr. Dondero to the Debtor of an amount equal to (a) the aggregate outstanding principal due under each Note, plus (b) all accrued and unpaid interest thereon until the date of payment, plus (c) an amount equal to the Debtor's costs of collection (including all court costs and reasonable attorneys' fees and expenses); and

(iii)    Such other and further relief as this Court deems just and proper.

Dated: January 22, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:      jpomerantz@pszjlaw.com
             ikharasch@pszjlaw.com
             jmorris@pszjlaw.com
             gdemo@pszjlaw.com
             hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

9

# EXHIBIT 1

EXHIBIT 1

# PROMISSORY NOTE

$3,825,000                                                                                    February 2, 2018

FOR VALUE RECEIVED, JAMES DONDERO ("*Maker*") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT LP ("*Payee*"), in legal and lawful tender of the United States of America, the principal sum of THREE MILLION, EIGHT HUNDRED AND TWENTY-FIVE THOUSAND and 00/100 Dollars ($3,825,000.00), together with interest, on the terms set forth below (the "*Note*"). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

1.     Interest Rate.   The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to the long-term "*applicable federal rate*" (2.66%) in effect on the date hereof for loans of such maturity as determined by Section 1274(d) of the Internal Revenue Code, per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note.  Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

2.     Payment of Principal and Interest.   The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

3.     Prepayment Allowed; Renegotiation Discretionary.   Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note.  Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

4.     Tax Loan.   This Note is paid to the Maker to help satisfy any current tax obligations of a former partner or current partner.

5.     Acceleration Upon Default.   Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof.  No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

6.     Waiver.   Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

7.     Attorneys' Fees.   If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other

amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

8.    Limitation on Agreements.  All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law.    The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

9.    Governing Law.  This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

MAKER:

_____

JAMES DONDERO

2

# EXHIBIT 2

EXHIBIT 2

# PROMISSORY NOTE

$2,500,000                                                                                    August 1, 2018

      FOR VALUE RECEIVED, JAMES DONDERO ("*Maker*") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT LP ("*Payee*"), in legal and lawful tender of the United States of America, the principal sum of TWO MILLION, FIVE HUNDRED THOUSAND and 00/100 Dollars ($2,500,000.00), together with interest, on the terms set forth below (the "*Note*"). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

      1.    <u>Interest Rate</u>.  The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to the long-term "*applicable federal rate*" (2.95%) in effect on the date hereof for loans of such maturity as determined by Section 1274(d) of the Internal Revenue Code, per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note.  Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

      2.    <u>Payment of Principal and Interest</u>.  The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

      3.    <u>Prepayment Allowed; Renegotiation Discretionary</u>.  Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note.  Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

      4.    <u>Acceleration Upon Default</u>.  Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof.  No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

      5.    <u>Waiver</u>.  Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

      6.    <u>Attorneys' Fees</u>.  If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

7.  <u>Limitation on Agreements</u>.  All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law.  The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

8.  <u>Governing Law</u>.  This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

_____

JAMES DONDERO

# EXHIBIT 3

EXHIBIT 3

# PROMISSORY NOTE

$2,500,000                                                            August 13, 2018

FOR VALUE RECEIVED, JAMES DONDERO ("*Maker*") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT LP ("*Payee*"), in legal and lawful tender of the United States of America, the principal sum of TWO MILLION, FIVE HUNDRED THOUSAND and 00/100 Dollars ($2,500,000.00), together with interest, on the terms set forth below (the "*Note*"). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

1.     Interest Rate.  The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to the long-term "*applicable federal rate*" (2.95%) in effect on the date hereof for loans of such maturity as determined by Section 1274(d) of the Internal Revenue Code, per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note.  Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

2.     Payment of Principal and Interest.  The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

3.     Prepayment Allowed; Renegotiation Discretionary.  Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note.  Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

4.     Acceleration Upon Default.  Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof.  No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

5.     Waiver.  Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

6.     Attorneys' Fees.  If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

7. <u>Limitation on Agreements</u>. All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law. The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

8. <u>Governing Law</u>. This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

JAMES DONDERO

# EXHIBIT 4

EXHIBIT 4

## HIGHLAND CAPITAL MANAGEMENT, L.P.

December 3, 2020

James Dondero
c/o Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201

      Re:  Demand on Promissory Notes:

Dear Mr. Dondero,

You entered into the following promissory notes (collectively, the "Notes") in favor of Highland Capital Management, L.P. ("Payee"):

| Date Issued | Original Principal Amount | Outstanding Principal Amount (12/11/20) | Accrued But Unpaid Interest (12/11/20) | Total Amount Outstanding (12/11/20) |
|---|---|---|---|---|
| 2/2/18 | $3,825,000 | $3,687,269.71 | $21,003.70 | $3,708,273.41 |
| 8/1/18 | $2,500,000 | $2,619,929.42 | $27,950.70 | $2,647,880.12 |
| 8/13/18 | $2,500,000 | $2,622,425.61 | $25,433.94 | $2,647,859.55 |
| **TOTALS** | **$16,725,000** | **$8,929,624.74** | **$74,388.33** | **$9,004,013.07** |

As set forth in Section 2 of each of the Notes, accrued interest and principal is due and payable upon the demand of Payee.  By this letter, Payee is demanding payment of the accrued interest and principal due and payable on the Notes in the aggregate amount of $9,004,013.07, which represents all accrued and unpaid interest and principal through and including December 11, 2020.

**Payment is due on December 11, 2020, and failure to make payment in full on such date will constitute an event of default under the Notes.**

Payments on the Notes must be made in immediately available funds.  Payee's wire information is attached hereto as **Appendix A**.

Nothing contained herein constitutes a waiver of any rights or remedies of Payee under the Notes or otherwise and all such rights and remedies, whether at law, equity, contract, or otherwise, are expressly reserved.  Interest, including default interest if applicable, on the Notes will continue to accrue until the Notes are paid in full.  Any such interest will remain your obligation.

Sincerely,

/s/ James P. Seery, Jr.

James P. Seery, Jr.
Highland Capital Management, L.P.
Chief Executive Officer/Chief Restructuring Officer

cc:    Fred Caruso
       James Romey
       Jeffrey Pomerantz
       Ira Kharasch
       Gregory Demo
       D. Michael Lynn

DOCS_NY:41660.1 36027/002

**Appendix A**

ABA #:              322070381
Bank Name:          East West Bank
Account Name:  Highland Capital Management, LP
Account #:          5500014686

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS Highland Capital Management, L.P. | DEFENDANTS James Dondero |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.) Hayward PLLC 10501 N. Central Expressway, Suite 106 Dallas, Texas 75231  Tel.: (972) 755-7100 | ATTORNEYS (If Known) Bonds Ellis Eppich Schafer Jones LLP 420 Throckmorton Street, Suite 1000 Fort Worth, Texas 76102  Tel.: (817) 405-6900 |
|---|---|

| PARTY (Check One Box Only) ✓ Debtor    □ U.S. Trustee/Bankruptcy Admin □ Creditor    □ Other □ Trustee | PARTY (Check One Box Only) □ Debtor    □ U.S. Trustee/Bankruptcy Admin ✓ Creditor    □ Other □ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Count 1:  Breach of contract; Count 2: Turnover of estate property pursuant to 11 U.S.C. 542

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
[2] 11-Recovery of money/property - §542 turnover of property
□ 12-Recovery of money/property - §547 preference
□ 13-Recovery of money/property - §548 fraudulent transfer
□ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
□ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
□ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
□ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
□ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
□ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
□ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
□ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
□ 61-Dischargeability - §523(a)(5), domestic support
□ 68-Dischargeability - §523(a)(6), willful and malicious injury
□ 63-Dischargeability - §523(a)(8), student loan
□ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
□ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
□ 71-Injunctive relief – imposition of stay
□ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
□ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
□ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
□ 01-Determination of removed claim or cause

**Other**
□ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
□ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ✓ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand  $ 9,004,013.07 plus interest, fees, and expenses |
| Other Relief Sought | |

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Highland Capital Management, L.P. | BANKRUPTCY CASE NO.<br>19-34054-sgj11 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of Texas | DIVISION OFFICE<br>Dallas | NAME OF JUDGE<br>Stacey G. C. Jernigan |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br><br>January 22, 2021 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Zachery Z. Annable | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# EXHIBIT 27

BTXN 090 (rev. 12/09)

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In Re: | § |
| Highland Capital Management, L.P. | § |
| | §  Case No.:    19−34054−sgj11 |
| Debtor(s) | §  Chapter No.:  11 |
| | § |
| Highland Capital Management, L.P. | § |
| Plaintiff(s) | §  Adversary No.:  21−03003−sgj |
| | § |
| vs. | § |
| James Dondero | § |
| Defendant(s) | § |

## ORDER REGARDING ADVERSARY PROCEEDINGS TRIAL SETTING AND ALTERNATIVE SCHEDULING ORDER

An adversary complaint is set for trial routinely at the time of its filing. Special settings or pretrial conferences may be scheduled by contacting the appropriate Courtroom Deputy.

**TRIAL** is set before the **Honorable Stacey G. Jernigan** at **1100 Commerce Street, 14th Floor, Courtroom #1, Dallas, Texas 75242** the week of **June 21, 2021**. Docket call for this trial will be held on **June 14, 2021 at 01:30 pm** at **1100 Commerce Street, 14th Floor, Courtroom #1, Dallas, Texas 75242**. A pretrial conference shall be scheduled by the parties at least seven (7) calendar days prior to trial docket call in a complex adversary proceeding if the parties anticipate that trial will exceed one day or if there are preliminary matters that should be addressed by the Court prior to the commencement of trial.

### PART I: INSTRUCTIONS

1. Plaintiff is responsible for ensuring that proper service is provided to each defendant. The Clerk shall issue one original summons, which shall be conformed by the plaintiff for service on multiple defendants. Federal Bankruptcy Rule 7004(e) requires you to serve the fully completed **SUMMONS** form and a copy of the **COMPLAINT** on each defendant within seven (7) days of issuance. In addition, the Court also directs that this **ORDER** *be served with the* **SUMMONS and COMPLAINT.**

2. Plaintiff shall file a **RETURN** on the **SUMMONS** with a **CERTIFICATE OF SERVICE** that provides the name and address of each party served and the manner of service.

3. If a trial setting is passed for settlement at trial docket call and no written request is filed to retain the case on the Court's docket, an automatic Dismissal Without Prejudice shall be entered on or after four (4) weeks. The Court's Trial Calendar is available on the court's web site at www.txnb.uscourts.gov.

### PART II: GENERAL PROVISIONS GOVERNING DISCOVERY

1. Unless otherwise ordered by the Court, the disclosures required by Federal Bankruptcy Rule 7026(a) shall be made within fourteen (14) days of the entry of a scheduling order, including the Alternative Scheduling Order contained in Part III below (which shall become effective on the forty−sixth day following the entry of this Order).

2. Unless the parties agree or the Court orders otherwise, Federal Bankruptcy Rule 7026(f) requires that parties shall confer to consider the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case, to make or arrange for the disclosures required by Federal Bankruptcy Rule 7026(a)(1), to develop a proposed discovery plan, and to submit a proposed scheduling order. The parties shall confer with each other regarding these matters within thirty (30) days of the service of the Summons unless the Court orders otherwise.

3. During such conference, the parties may agree to waive the requirement of submitting their own proposed scheduling order and may follow the terms and deadlines contained in the Alternative Scheduling Order set forth in Part III below (the "Alternative Scheduling Order"). If the parties do not submit a proposed scheduling order or do not schedule a status conference with the Court to discuss the provisions and deadlines of a scheduling order within forty−five (45) days of the filing of this adversary proceeding, then the parties are deemed to have consented to the terms of the Alternative Scheduling Order.

### PART III: ALTERNATIVE SCHEDULING ORDER

The Court directs compliance with the following schedule:



1934054210127000000000009

1. Discovery must be completed forty−five (45) days prior to Docket Call. The names and addresses of experts must be exchanged sixty (60) days prior to Docket Call.

2. A Joint Pretrial Order in compliance with Local District Court Rule 16.4 shall be filed, served, and uploaded for Court entry seven (7) days prior to Docket Call. All counsel (or a pro se party) are responsible for preparing the Joint Pretrial Order, which shall contain the following: (a) a summary of the claims and defenses of each party; (b) a statement of stipulated facts; (c) a list of the contested issues of fact; (d) a list of contested issues of law; (e) an estimate of the length of trial; (f) a list of additional matters which would aid in the disposition of the case; and (g) the signature of each attorney (or pro se party).

3. Each exhibit shall be marked with an exhibit label. Except for impeachment documents, all exhibits, along with a list of witnesses to be called, shall be exchanged with opposing counsel (or pro se party) fourteen (14) days prior to Docket Call. Each party shall also file a list of exhibits and witnesses fourteen (14) days prior to Docket Call. All exhibits not objected to in writing by Docket Call shall be admitted into evidence at trial without further proof, except for objections to relevance. Written objections to exhibits will be taken up either at the beginning or during the course of the actual trial or at any pretrial conference.

4. Written Proposed Findings of Fact and Conclusions of Law shall be filed seven (7) days prior to Docket Call. Trial briefs shall be filed addressing contested issues of law seven (7) days prior to Docket Call.

5. Unless otherwise directed by the Presiding Judge, all dispositive motions must be heard no later than fourteen (14) days prior to Docket Call. Accordingly, all dispositive motions must be filed no later than forty−five (45) days prior to Docket Call, unless the Court modifies this deadline.

6. All parties and counsel must certify to full compliance with this Order at Docket Call. If a resetting is allowed by the Court, the plaintiff or plaintiff's attorney shall notify all other parties and shall file with the Clerk a certificate of service indicating the manner, date, and to whom notice was given.

7. If the case is reset, all the deadlines in Part III nos. 1 through 5 will be shifted to the newly scheduled Docket Call date in the absence of a contrary Court order.

8. Sanctions may be imposed for failure to comply with this Order.


DATED:  1/25/21                    FOR THE COURT:
                                   Robert P. Colwell, Clerk of Court

                                   by: /s/Michael Edmond, Deputy Clerk

# EXHIBIT 28

**Fill in this information to identify the case:**

Debtor name    **Highland Capital Management, L.P.**

United States Bankruptcy Court for the:    NORTHERN DISTRICT OF TEXAS

Case number (if known)    **19-34054-SGJ**

☐ Check if this is an amended filing

## Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals     12/15

---

### Part 1:   Summary of Assets

1.   *Schedule A/B: Assets-Real and Personal Property* (Official Form 206A/B)

   1a. **Real property:**
      Copy line 88 from *Schedule A/B*...................................................................   $    **523,970.00**

   1b. **Total personal property:**
      Copy line 91A from *Schedule A/B*................................................................   $    **409,580,813.30**

   1c. **Total of all property:**
      Copy line 92 from *Schedule A/B*.................................................................   $    **410,104,783.30**

---

### Part 2:   Summary of Liabilities

2.   *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*...................   $    **34,862,225.94**

3.   *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**
      Copy the total claims from Part 1 from line 5a of *Schedule E/F*.............................................   $    **Unknown**

   3b. **Total amount of claims of nonpriority amount of unsecured claims:**
      Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*..............................   +$    **244,455,350.78**

4.   **Total liabilities** ...................................................................................................
   Lines 2 + 3a + 3b    $    **279,317,576.72**

---

| Debtor | **Highland Capital Management, L.P.** | Case number *(If known)* **19-34054-SGJ** |
|---|---|---|
| | Name | |

| | General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 60. | **Patents, copyrights, trademarks, and trade secrets** | | | |
| 61. | **Internet domain names and websites**<br>**139 Domain Names** | $0.00 | N/A | Unknown |
| 62. | **Licenses, franchises, and royalties**<br>**3rd Party Private Equity Management Company** | $0.00 | N/A | Unknown |
| 63. | **Customer lists, mailing lists, or other compilations** | | | |
| 64. | **Other intangibles, or intellectual property** | | | |
| 65. | **Goodwill** | | | |

66. **Total of Part 10.**

Add lines 60 through 65. Copy the total to line 89.

| | **Unknown** |
|---|---|

67. **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C.§§ 101(41A) and 107?
- ☐ No
- ☑ Yes

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**
- ☑ No
- ☐ Yes

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**
- ☑ No
- ☐ Yes

| Part 11: | All other assets |
|---|---|

70. **Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

- ☐ No.  Go to Part 12.
- ☑ Yes Fill in the information below.

| | | | Current value of debtor's interest |
|---|---|---|---|
| 71. | **Notes receivable**<br>Description (include name of obligor)<br>**Notes Receivable (Exhibit D)** | **150,331,222.61** - Total face amount    **Unknown** doubtful or uncollectible amount = | **Unknown** |
| 72. | **Tax refunds and unused net operating losses (NOLs)**<br>Description (for example, federal, state, local) | | |
| 73. | **Interests in insurance policies or annuities** | | |
| 74. | **Causes of action against third parties (whether or not a lawsuit has been filed)** | | |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit D - Schedule 71A**

| Notes Receivable | Total Face Amount [1] |
|---|---:|
| Hunter Mountain Investment Trust | $ 56,873,209.22 |
| Affiliate Note Receivable - A | 24,534,644.03 |
| The Dugaboy Investment Trust | 18,286,268.16 |
| Affiliate Note Receivable - B | 10,413,539.53 |
| Affiliate Note Receivable - C | 10,394,680.47 |
| James Dondero | 9,334,012.00 |
| Highland Capital Management Services, Inc. | 7,482,480.88 |
| Siepe | 2,019,256.35 |
| Highland Mult Strategy Credit Fund, LP | 3,269,000.00 |
| Highland Capital Management Korea Ltd. [2] | 3,132,278.05 |
| Private Portfolio Company - A | 2,198,610.05 |
| Mark Okada | 1,336,287.84 |
| Private Portfolio Company - B | 1,056,956.03 |
| **Total** | **$ 150,331,222.61** |

*[1]Doubtful or Uncollectible accounts are evaluated at year end.*
*[2] Includes $72,278.05 of intercompany receivable.*

# EXHIBIT 29

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
Maxim B. Litvak (Texas Bar No. 24002482)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
|  | ) |  |
| Debtor. | ) | **Re: Docket No. 247** |
|  | ) |  |

## NOTICE OF FILING OF DEBTOR'S AMENDED SCHEDULES

**PLEASE TAKE NOTICE** that the above-captioned debtor and debtor-in-possession

(the "Debtor") hereby files its *Amended Schedules of Assets and Liabilities – Schedule E-F* (the

"Amended Schedules").

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.



1934054200922000000000001

**PLEASE TAKE FURTHER NOTICE** that the following changes were made to the Amended Schedules attached hereto as <u>**Exhibit 1**</u>:

- Schedule E/F – add claims of Andrew Parmentier (E-2.2; F-3.15)

- Schedule E/F – Change name from Highland CLO Holdco (previously F-3.64 & F-3.65) to Highland CLO Management, Ltd. (F-3.65 & F-3.66).

**PLEASE TAKE FURTHER NOTICE** that, other than the changes listed above, there are no other changes to the Debtor's Schedules.

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to the *Order (I) Establishing Bar Dates for Filing Claims and (II) Approving the Form and Manner of Notice Thereof* [Docket No. 488], any creditor affected by this notice may file a proof of claim no later than thirty (30) days after the date that the notice of the Amended Schedules is served on the entity.

**PLEASE TAKE FURTHER NOTICE** that, notwithstanding the filing of the Amended Schedules, the Debtor reserves the right to further amend, in any way and at any time, the schedules of assets and liabilities filed in this chapter 11 case, consistent with the provisions of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and the Federal Rules of Bankruptcy Procedure.

*[Remainder of Page Intentionally Left Blank]*

Dated:   September 22, 2020.                    **PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Maxim B. Litvak (TX Bar No. 24002482)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email:       jpomerantz@pszjlaw.com
             ikharasch@pcszjlaw.com
             mlitvak@pszjlaw.com
             gdemo@pszjlaw.com

-and-

**HAYWARD & ASSOCIATES PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

**Exhibit 1**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
|  | § |  |
| Debtor. | § |  |
|  | § |  |

## GLOBAL NOTES AND STATEMENT OF LIMITATIONS,
## METHODS, AND DISCLAIMER REGARDING DEBTOR'S AMENDED SCHEDULES
## OF ASSETS AND LIABILITIES

Highland Capital Management, L.P. (the "Debtor") submits its Amended Schedules of Assets and Liabilities (the "Schedules") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"). The Debtor, with the assistance of its advisors and management, prepared the Schedules in accordance with section 521 title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

These Global Notes and Statement of Limitations, Methods, and Disclaimer Regarding the Debtor's Schedules (collectively, the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of the Schedules. These Global Notes should be referred to, and reviewed in connection with any review of the Schedules.[2] These Global Notes are intended to supplement the Global Notes filed at Docket No. 247 which remain applicable to the Schedules and Statement of Financial Affairs ("SoFA") filed at Docket No. 247 and 248, respectively and, to the extent not revised, shall be applicable to the attached Schedules.

The Schedules have been prepared by the Debtor with the assistance of its professionals and are unaudited and subject to further review and potential adjustment and amendment. In preparing the Schedules, the Debtor and its professionals relied on financial data derived from the Debtor's books and records that was available at the time of preparation. The Debtor and its professionals have made reasonable efforts to ensure the accuracy and completeness of such financial information, however, subsequent information or discovery of other relevant facts may result in material changes to the Schedules and inadvertent errors, omissions, or inaccuracies may exist. The Debtor reserves all rights to amend or supplement its Schedules and SoFA.

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

[2] These Global Notes are in addition to any specific notes contained in the Debtor's Schedules or SoFA. The fact that the Debtor has prepared a "general note" with respect to any of the Schedules and SoFA and not to others should not be interpreted as a decision by the Debtor to exclude the applicability of such general note to any of the Debtor's remaining Schedules and SoFA, as appropriate.

1

**Reservation of Rights.**  The Debtor reserves all rights to amend the SoFA and Schedules in all respects, as may be necessary or appropriate, including, but not limited to, the right to dispute or to assert offsets or defenses to any claim reflected on the SoFA and Schedules as to amount, liability or classification of the claim, or to otherwise subsequently designate any claim as "disputed," "contingent" or "unliquidated."  Furthermore, nothing contained in the SoFA and Schedules shall constitute a waiver of rights by the Debtor involving any present or future causes of action, contested matters or other issues under the provisions of the Bankruptcy Code or other applicable non-bankruptcy laws.

**Description of the Case and "As Is" Information Date.**  On October 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief with the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court") under Chapter 11 of the Bankruptcy Code.  The Debtor is managing its assets as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On December 4, 2019, the Delaware Bankruptcy Court entered an Order transferring this case to the Bankruptcy Court [Docket No. 1].

Asset information in the Schedules reflects the Debtor's best estimate of asset values as of the Petition Date, unless otherwise noted.  No independent valuation has been obtained.

**Basis of Presentation.**  The Schedules and SoFA do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles ("GAAP"), nor are they intended to fully reconcile to any financial statements otherwise prepared and/or distributed by the Debtor.

Although these Schedules and SoFA may, at times, incorporate information prepared in accordance with GAAP, the Schedules and SoFA neither purport to represent nor reconcile to financial statements prepared and/or distributed by the Debtor in accordance with GAAP or otherwise.  Moreover, given, among other things, the valuation and nature of certain liabilities, to the extent that the Debtor shows more assets than liabilities, this is not a conclusion that the Debtor was solvent at the Petition Date.  Likewise, to the extent that the Debtor shows more liabilities than assets, this is not a conclusion that the Debtor was insolvent at the Petition Date or any time prior to the Petition Date.

**Estimates.**  To timely close the books and records of the Debtor, the Debtor and its professionals must make certain estimates and assumptions that affect the reported amounts of assets and liabilities and reported revenue and expenses.  The Debtor reserves all rights to amend the reported amounts of assets, liabilities, revenue, and expenses to reflect changes in those estimates and assumptions.

**Confidentiality**.  There may be instances within the Schedules and SoFA where names, addresses, or amounts have been left blank.  Due to the nature of an agreement between the Debtor and the third party, concerns of confidentiality, or concerns for the privacy of an individual, the Debtor may have deemed it appropriate and necessary to avoid listing such names, addresses, and amounts.

**Intercompany Claims.** Any receivables and payables between the Debtor and affiliated or related entities in this case (each an "Intercompany Receivable" or "Intercompany Payable" and, collectively, the "Intercompany Claims") are reported as assets on Schedule B or liabilities on Schedule E and Schedule F. These Intercompany Claims include the following components, among others: 1) loans to affiliates or related entities, 2) accounts payable and payroll disbursements made out of an affiliate's or related entity's bank accounts on behalf of the Debtor, 3) centrally billed expenses, 4) corporate expense allocations, and 5) accounting for trade and other intercompany transactions. These Intercompany Claims may or may not result in allowed or enforceable claims by or against the Debtor, and by listing these claims the Debtor is not indicating a conclusion that the Intercompany Claims are enforceable. Intercompany Claims may also be subject to set off, recoupment, and netting not reflected in the Schedules. In situations where there is not an enforceable claim, the assets and/or liabilities of the Debtor may be greater or lesser than the amounts stated herein. All rights to amend intercompany Claims in the Schedules and SoFA are reserved.

The Debtor has listed the intercompany payables as unsecured claims on Schedule F. The Debtor reserves its rights to later change the characterization, classification, categorization, or designation of such items.

**Insiders.** For purposes of the Schedules and SoFA, the Debtor defines "insider" pursuant to section 101(31) of the Bankruptcy Code. Payments to insiders are set forth on Question 3.c. of the SoFA.

Persons listed as "insiders" have been included for informational purposes only. The Debtor did not take any position with respect to whether such individual could successfully argue that he or she is not an "insider" under applicable law, including without limitation, the federal securities laws, or with respect to any theories of liability or for any other purpose. Inclusion of any party in the Schedules and SoFA as an insider does not constitute an admission that such party is an insider or a waiver of such party's right to dispute insider status.

**Excluded Accruals and GAAP Entries.** The Debtor's balance sheet reflects liabilities recognized in accordance with GAAP; however, not all such liabilities would result in a claim against the Debtor. Certain liabilities (including but not limited to certain reserves, deferred charges, and future contractual obligations) have not been included in the Debtor's Schedules. Other immaterial assets and liabilities may also have been excluded.

**Classification and Claim Descriptions**. Any failure to designate a claim on the Schedules as "disputed," "contingent" or "unliquidated" does not constitute an admission by the Debtor that such amount is not "disputed," "contingent" or "unliquidated." The Debtor reserves the right to dispute, or to assert offsets or defenses to, any claim reflected on its Schedules as to amount, liability or classification or to otherwise subsequently designate any claim as "disputed," "contingent" or "unliquidated."

Listing a claim (i) in Schedule D as "secured," (ii) in Schedule E as "priority" or (iii) in Schedule F as "unsecured nonpriority," or listing a contract in Schedule G as "executory" or "unexpired," does not constitute an admission by the Debtor of the legal rights of the claimant or a waiver of the Debtor's right to recharacterize or reclassify such claim or contract.

Moreover, the Debtor reserves all rights to amend the SoFA and Schedules, in all respects, as may be necessary or appropriate, including, but not limited to, the right to dispute or to assert offsets or defenses to any claim reflected on the SoFA and Schedules as to amount, liability or classification of the claim, or to otherwise subsequently designate any claim as "disputed," "contingent" or "unliquidated." Furthermore, nothing contained in the SoFA and Schedules shall constitute a waiver of rights by the Debtor involving any present or future causes of action, contested matters or other issues under the provisions of the Bankruptcy Code or other relevant non-bankruptcy laws.

**Credits and Adjustments.** The claims of individual creditors for, among other things, goods, products, services or taxes are listed as the amounts entered on the Debtor's books and records and may not reflect credits, allowances or other adjustments due from such creditors to the Debtor. The Debtor reserves all of its rights respecting such credits, allowances or other adjustments.

**Setoffs.** The Debtor may incur setoffs from third parties in its business. Setoffs in the ordinary course can result from various routine transactions, including intercompany transactions, pricing discrepancies, warranty claims and other disputes between the Debtor and third parties. Certain of these constitute normal setoffs consistent with the ordinary course of business in the Debtor's industry. In such instances, such ordinary course setoffs are excluded from the Debtor's responses to Question 13 of the SoFA. The Debtor reserves all rights to enforce or challenge, as the case may be, any setoffs that have been or may be asserted.

**Specific Notes.** These general notes are in addition to the specific notes set forth below or in the related Statement and Schedules hereinafter.

## General Disclaimer

The Debtor has prepared the Schedules and the SoFA based on the information reflected in the Debtor's books and records. However, inasmuch as the Debtor's books and records have not been audited or formally closed and evaluated for proper cut-off on the Petition Date, the Debtor cannot warrant the absolute accuracy of these documents. The Debtor has made a diligent effort to complete these documents accurately and completely. To the extent additional information becomes available, the Debtor will amend and supplement the Schedules and SoFA.

## Specific Schedules Disclosures

a.     **Schedule E/F - Creditors Who Have Unsecured Claims.**

*Part 1 - Creditors with Priority Unsecured Claims*.  Pursuant to the *Order (I) Authorizing the Debtor to (A) Pay and Honor Prepetition Compensation, Reimbursable Business Expenses, and Employee Benefit Obligations, and (B) Maintain and Continue Certain Compensation and Benefit Programs Postpetition; and (11) Granting Related Relief* [Docket No. 39] (the "Wage Order"), the Debtor received authority to pay certain prepetition obligations,

including to pay employee wages and other employee benefits, in the ordinary course of business. The Debtor believes that any non-insider employee claims for prepetition amounts related to ongoing payroll and benefits, whether allowable as a priority or nonpriority claim, which were due and payable at the time of the Petition Date have been or will be satisfied as permitted pursuant to the Wage Order. The Debtor filed the *Motion of the Debtor for Entry of an Order Authorizing the Debtor to Pay and Honor Ordinary Course Obligations under Employee Bonus Plans and Granting Related Relief* [Docket No. 177] pursuant to which the Debtor sought authority to pay and honor certain prepetition bonus programs. The Court granted certain relief with respect to this motion at Docket No. 380. Employee claims related to these programs are shown in the aggregate amounts in Schedule E/F for privacy reasons. Additional information is available by appropriate request to the Debtor. The listing of a claim on Schedule E/F, Part 1, does not constitute an admission by the Debtor that such claim or any portion thereof is entitled to priority status.

***Part 2 - Creditors with Nonpriority Unsecured Claims***. The liabilities identified in Schedule E/F, Part 2, are derived from the Debtor's books and records. The Debtor made a reasonable attempt to set forth its unsecured obligations, although the actual amount of claims against the Debtor may vary from those liabilities represented on Schedule E/F, Part 2. The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed claims or the correct amount of all unsecured claims.

Schedule E/F, Part 2 reflects liabilities based on the Debtor's books and records.

Schedule E/F, Part 2, contains information regarding threatened or pending litigation involving the Debtor. The amounts for these potential claims are listed as "unknown" and are marked as contingent, unliquidated, and disputed in the Schedules and Statements. Additionally, the amounts of certain litigation claims may be estimates based on the allegations asserted by the litigation counterparty, and do not constitute an admission by the Debtor with respect to either liability for, or the amount of, such claims.

Schedule E/F, Part 2, reflects certain prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption or assumption and assignment of an executory contract or unexpired lease. In addition, Schedule E/F, Part 2, does not include claims that may arise in connection with the rejection of any executory contracts and unexpired leases, if any, that may be or have been rejected.

As of the time of filing of the Schedules and Statements, the Debtor had not received all invoices for payables, expenses, and other liabilities that may have accrued prior to the Petition Date. Accordingly, the information contained in Schedules D and E/F may be incomplete. The Debtor reserves its rights to amend Schedules D and E/F if and as it receive such invoices.

5

**Fill in this information to identify the case:**

Debtor name   **Highland Capital Management, L.P.**

United States Bankruptcy Court for the:   NORTHERN DISTRICT OF TEXAS

Case number (if known)   **19-34054-SGJ**

☑ Check if this is an amended filing

Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals
**12/15**

| Part 1: | Summary of Assets |
| --- | --- |

1. **Schedule A/B: Assets-Real and Personal Property** (Official Form 206A/B)

   1a. **Real property:**
   Copy line 88 from *Schedule A/B*..................................................................................................... $    **523,970.00**

   1b. **Total personal property:**
   Copy line 91A from *Schedule A/B*................................................................................................. $    **409,580,813.30**

   1c. **Total of all property:**
   Copy line 92 from *Schedule A/B*................................................................................................... $    **410,104,783.30**

| Part 2: | Summary of Liabilities |
| --- | --- |

2. **Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*.................... $    **34,862,225.94**

3. **Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F*............................................................ $    **13,650.00**

   3b. **Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*................................... +$    **244,753,977.33**

4. **Total liabilities** ......................................................................................................................
   Lines 2 + 3a + 3b

   $    **279,629,853.27**

**Fill in this information to identify the case:**

Debtor name  **Highland Capital Management, L.P.**

United States Bankruptcy Court for the:  NORTHERN DISTRICT OF TEXAS

Case number (if known)  **19-34054-SGJ**

�■ Check if this is an
amended filing

# Official Form 206E/F
# Schedule E/F: Creditors Who Have Unsecured Claims
**12/15**

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and
Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and
2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

| **Part 1:** | **List All Creditors with PRIORITY Unsecured Claims** |
| --- | --- |

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

   ☐ No. Go to Part 2.

   ■ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors
   with priority unsecured claims, fill out and attach the Additional Page of Part 1.

| | | | **Total claim** | **Priority amount** |
| --- | --- | --- | --- | --- |
| 2.1 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |
| | **All Employees**<br>**300 Crescent Ct.**<br>**Suite 700**<br>**Dallas, TX 75201** | ■ Contingent<br>■ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**2019** | Basis for the claim:<br>**Employee Wages & Bonuses** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No<br>☐ Yes | | |

| 2.2 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $13,650.00 | $13,650.00 |
| --- | --- | --- | --- | --- |
| | **Andrew Parmentier**<br>**1821 Redwood Ave.**<br>**Boulder, CO 80304** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**5/31/2019** | Basis for the claim:<br>**Separation and Release Agreement** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No<br>☐ Yes | | |

| **Part 2:** | **List All Creditors with NONPRIORITY Unsecured Claims** |
| --- | --- |

3. **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill
   out and attach the Additional Page of Part 2.

**Amount of claim**

---

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com      10795      Best Case Bankruptcy

| Debtor | Highland Capital Management, L.P. | Case number (if known) | 19-34054-SGJ |
|---|---|---|---|
| | Name | | |

| 3.1 | Nonpriority creditor's name and mailing address<br>**45 Employees**<br>**300 Crescent Ct.**<br>**Suite 700**<br>**Dallas, TX 75201** | As of the petition filing date, the claim is: *Check all that apply.*<br>■ Contingent<br>■ Unliquidated<br>☐ Disputed | **Unknown** |
|---|---|---|---|
| | Date(s) debt was incurred **2017, 2018 & 2019** | Basis for the claim: **Deferred Awards** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.2 | Nonpriority creditor's name and mailing address<br>**46 Employees**<br>**300 Crescent Ct.**<br>**Suite 700**<br>**Dallas, TX 75201** | As of the petition filing date, the claim is: *Check all that apply.*<br>■ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$5,758,166.67** |
|---|---|---|---|
| | Date(s) debt was incurred **2018** | Basis for the claim: **Prior year employee bonuses** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.3 | Nonpriority creditor's name and mailing address<br>**Abrams & Bayliss**<br>**20 Montchanin Road, Suite 200**<br>**Wilmington, DE 19807** | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$108,399.83** |
|---|---|---|---|
| | Date(s) debt was incurred __ | Basis for the claim: **See Exhibit A** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.4 | Nonpriority creditor's name and mailing address<br>**ACA Compliance Group**<br>**8403 Colesville Road**<br>**Suite 870**<br>**Silver Spring, MD 20910** | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$26,324.25** |
|---|---|---|---|
| | Date(s) debt was incurred __ | Basis for the claim: **See Exhibit A** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.5 | Nonpriority creditor's name and mailing address<br>**Acis Capital Management**<br>**c/o Brian P. Shaw**<br>**Rogge Dunn Group PC**<br>**500 N. Akard Street Ste 1900**<br>**Dallas, TX 75201** | As of the petition filing date, the claim is: *Check all that apply.*<br>■ Contingent<br>■ Unliquidated<br>■ Disputed | **Unknown** |
|---|---|---|---|
| | Date(s) debt was incurred __ | Basis for the claim: **Litigation Claim** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.6 | Nonpriority creditor's name and mailing address<br>**Acis Capital Management, L.P.**<br>**c/o Brian P. Shaw**<br>**Rogge Dunn Group, PC**<br>**500 N. Akard Street Ste 1900**<br>**Dallas, TX 75201** | As of the petition filing date, the claim is: *Check all that apply.*<br>■ Contingent<br>■ Unliquidated<br>■ Disputed | **Unknown** |
|---|---|---|---|
| | Date(s) debt was incurred __ | Basis for the claim: **Litigation Claim** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.7 | Nonpriority creditor's name and mailing address<br>**Action Shred of Texas**<br>**1420 S. Barry Ave**<br>**Dallas, TX 75223** | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$3,825.00** |
|---|---|---|---|
| | Date(s) debt was incurred __ | Basis for the claim: **Trade Payable** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| Debtor | **Highland Capital Management, L.P.** | Case number *(if known)* | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

| 3.8 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$113,947.86** |
|---|---|---|---|
| | **Akin Gump Strauss Hauer & Feld LLP**<br>**1700 Pacific Avenue**<br>**Suite 4100**<br>**Dallas, TX 75201** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim:  **See Exhibit A** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.9 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |
|---|---|---|---|
| | **All Employees**<br>**300 Crescent Ct.**<br>**Suite 700**<br>**Dallas, TX 75201** | ■ Contingent<br>■ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred  **2019** | Basis for the claim:  **Employee Bonuses** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ☐ No ☐ Yes | |

| 3.10 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$1,522.33** |
|---|---|---|---|
| | **Allen ISD**<br>**Attn: Elizabeth Weller**<br>**2777 N. Stemmons Freeway**<br>**Suite 1000**<br>**Dallas, TX 75207** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred  **2019** | Basis for the claim:  **Ad Valorem Taxes** | |
| | Last 4 digits of account number  **2301** | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.11 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$2,188.30** |
|---|---|---|---|
| | **Allen ISD**<br>**Attn: Elizabeth Weller**<br>**2777 N. Stemmons Freeway**<br>**Suite 1000**<br>**Dallas, TX 75207** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred  **2019** | Basis for the claim:  **Ad Valorem Taxes** | |
| | Last 4 digits of account number  **9351** | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.12 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$2,234.00** |
|---|---|---|---|
| | **Alston & Bird LLP**<br>**1201 W. Peachtree Street**<br>**Atlanta, GA 30309-3424** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim:  **See Exhibit A** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.13 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$55,511.80** |
|---|---|---|---|
| | **American Arbitration Association**<br>**120 Broadway. 21st Floor**<br>**New York, NY 10271** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim:  **See Exhibit A** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.14 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$7,470.04** |
|---|---|---|---|
| | **American Solutions for Business**<br>**NW#7794**<br>**PO Box 1450**<br>**Minneapolis, MN 55485-7794** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim:  **Trade Payable** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com  Best Case Bankruptcy

| Debtor | **Highland Capital Management, L.P.** | Case number (*if known*) | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

| 3.15 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$136,350.00** |
|---|---|---|---|

**Andrew Parmentier**
**1821 Redwood Ave.**
**Boulder, CO 80304**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred **5/31/2019**

Basis for the claim: **Seperation and Release Agreement**

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.16 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$137,637.81** |
|---|---|---|---|

**Andrews Kurth**
**111 Congress Ave**
**Suite 1700**
**Attn: Scott Brister**
**Austin, TX 78701**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: **See Exhibit A**

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.17 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$647.59** |
|---|---|---|---|

**Arkadin, Inc.**
**Lockbox #32726**
**Collection Center Dr**
**Chicago, IL 60693-0726**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: **Trade Payable**

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.18 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$77,044.60** |
|---|---|---|---|

**ASW Law Limited**
**Crawford House**
**50 Cedar Avenue**
**Hamilton HM11 Bermuda**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: **See Exhibit A**

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.19 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$927.16** |
|---|---|---|---|

**AT&T**
**PO BOX 5001**
**Carol Stream, IL 60197-5001**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: **Trade Payable**

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.20 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$6,728.59** |
|---|---|---|---|

**AT&T Mobilty**
**PO Box 6444**
**Carol Stream, IL 60197-6444**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: **Trade Payable**

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.21 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$90,855.79** |
|---|---|---|---|

**Bates White, LLC**
**2001 K Street, NW**
**North Building, Suite 500**
**Washington, DC 20006**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: **See Exhibit A**

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Highland Capital Management, L.P.** | | Case number *(if known)* | **19-34054-SGJ** |
| --- | --- | --- | --- | --- |
| | Name | | | |

| 3.22 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$6,934.79** |
| --- | --- | --- | --- |
| | **Bell Nunnally & Martin LLP**<br>**3232 MCKINNEY AVE**<br>**STE 1400**<br>**DALLAS, TX 75204** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | **Basis for the claim:** __See Exhibit A__ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.23 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$25,384.89** |
| --- | --- | --- | --- |
| | **Bloomberg Finance LP**<br>**731 Lexington Ave.**<br>**New York, NY 10022** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | **Basis for the claim:** __Trade Payable__ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.24 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$115,714.80** |
| --- | --- | --- | --- |
| | **Boies, Schiller & Flexner LLP**<br>**5301 Wisconsin Ave NW**<br>**Washington, DC 20015-2015** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | **Basis for the claim:** __See Exhibit A__ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.25 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$69.00** |
| --- | --- | --- | --- |
| | **Brandywine Process Servers, Ltd.**<br>**PO Box 1360**<br>**Wilmington, DE 19899** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | **Basis for the claim:** __Trade Payable__ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.26 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$325.00** |
| --- | --- | --- | --- |
| | **Caledonian Directors Limited**<br>**PO Box 1043**<br>**George Town**<br>**Grand Cayman KY1-1002** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | **Basis for the claim:** __See Exhibit A__ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.27 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$4,233.60** |
| --- | --- | --- | --- |
| | **Canteen Vending Services**<br>**PO Box 417632**<br>**Boston, MA 02241-7632** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | **Basis for the claim:** __Trade Payable__ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.28 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$2,059,337.01** |
| --- | --- | --- | --- |
| | **Carey International, Inc.**<br>**7445 New Technology Way**<br>**Frederick, MD 21703** | ■ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | **Basis for the claim:** __Uncompleted Transaction__ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| Debtor | **Highland Capital Management, L.P.** | Case number (if known) | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

| 3.29 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$38,930.00** |
|---|---|---|---|
| | **Carey Olsen** | ☐ Contingent | |
| | **PO Box 10008** | ☐ Unliquidated | |
| | **Willow House, Cricket Square** | ☐ Disputed | |
| | **Grand Cayman KY1-1001** | | |
| | Date(s) debt was incurred _ | Basis for the claim: **See Exhibit A** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.30 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$417.20** |
|---|---|---|---|
| | **Case Anywhere LLC** | ☐ Contingent | |
| | **21860 Burbank Blvd.** | ☐ Unliquidated | |
| | **Ste 125** | ☐ Disputed | |
| | **Woodland Hills, CA 91367** | | |
| | Date(s) debt was incurred _ | Basis for the claim: **See Exhibit A** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.31 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$545.77** |
|---|---|---|---|
| | **CBIZ Valuation Group, LLC** | ☐ Contingent | |
| | **ATTN: ACCOUNTS RECEIVABLE** | ☐ Unliquidated | |
| | **PO BOX 849846** | ☐ Disputed | |
| | **DALLAS, TX 75284-9846** | | |
| | Date(s) debt was incurred _ | Basis for the claim: **See Exhibit A** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.32 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$4,998.70** |
|---|---|---|---|
| | **CDW Direct** | ☐ Contingent | |
| | **PO Box 75723** | ☐ Unliquidated | |
| | **Chicago, IL 60675-5723** | ☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Payable** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.33 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,155.00** |
|---|---|---|---|
| | **Centroid** | ☐ Contingent | |
| | **1050 Wilshire Dr.** | ☐ Unliquidated | |
| | **Ste #170** | ☐ Disputed | |
| | **Troy, MI 48084** | | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Payable** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.34 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$155.81** |
|---|---|---|---|
| | **Chase Couriers, Inc** | ☐ Contingent | |
| | **1220 Champion Circle** | ☐ Unliquidated | |
| | **#114** | ☐ Disputed | |
| | **Carrollton, TX 75006** | | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Payable** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.35 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$11,340,751.26** |
|---|---|---|---|
| | **CLO Holdco, Ltd.** | ■ Contingent | |
| | **c/o Grant Scott, Esq** | ■ Unliquidated | |
| | **Myers Bigel Sibley & Sajovec, P.A.** | ☐ Disputed | |
| | **4140 Park Lake Ave, Ste 600** | | |
| | **Raleigh, NC 27612** | | |
| | Date(s) debt was incurred _ | Basis for the claim: **Contractual Obligation** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

| Debtor | **Highland Capital Management, L.P.** | | Case number (if known) | **19-34054-SGJ** |
|---|---|---|---|---|
| | Name | | | |

| 3.36 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $198,760.29 |
|---|---|---|---|
| | **Cole Schotz**<br>**Court Plaza North**<br>**25 Main Street**<br>**P.O. Box 800**<br>**Hackensack, NJ 07602-0800** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred | Basis for the claim: __See Exhibit A__ | |
| | Last 4 digits of account number | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.37 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $52,500.00 |
|---|---|---|---|
| | **Coleman Research Group, Inc.**<br>**120 West 45th St**<br>**25th Floor**<br>**New York, NY 10036** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred | Basis for the claim: __Trade Payable__ | |
| | Last 4 digits of account number | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.38 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $4,090.46 |
|---|---|---|---|
| | **Concur Technologies, Inc.**<br>**18400 NE Union Hill Road**<br>**Redmond, WA 98052** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred | Basis for the claim: __Trade Payable__ | |
| | Last 4 digits of account number | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.39 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $118,831.25 |
|---|---|---|---|
| | **Connolly Gallagher LLP**<br>**1201 North Market Street**<br>**20th Floor**<br>**Wilmington, DE 19801** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred | Basis for the claim: __See Exhibit A__ | |
| | Last 4 digits of account number | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.40 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $1,200.00 |
|---|---|---|---|
| | **Crescent Research**<br>**PO Box 64-3622**<br>**Vero Beach, FL 32964** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred | Basis for the claim: __Trade Payable__ | |
| | Last 4 digits of account number | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.41 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $826.01 |
|---|---|---|---|
| | **CSI Global Deposition Services**<br>**Accounting Dept-972-719-5000**<br>**4950 N. O'Connor Rd, 1 st Fl**<br>**Irving, TX 75062-2778** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred | Basis for the claim: __See Exhibit A__ | |
| | Last 4 digits of account number | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.42 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $515.25 |
|---|---|---|---|
| | **CT Corp**<br>**PO Box 4349**<br>**Carol Stream, IL 60197-4349** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred | Basis for the claim: __Trade Payable__ | |
| | Last 4 digits of account number | Is the claim subject to offset? ■ No ☐ Yes | |

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com

| Debtor | **Highland Capital Management, L.P.** | Case number (if known) | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

| 3.43 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$1,500.00** |
|---|---|---|---|

**CVE Technologies Group Inc.**
**1414 S. Gustin Rd.**
**Salt Lake City, UT 84104**

Date(s) debt was incurred _
Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Trade Payable**

Is the claim subject to offset? ☐ No ☐ Yes

---

| 3.44 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$47,809.87** |
|---|---|---|---|

**Dallas County**
**Attn: Elizabeth Weller**
**2777 N. Stemmons Freeway**
**Suite 1000**
**Dallas, TX 75207**

Date(s) debt was incurred **2019**
Last 4 digits of account number **3150**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Ad Valorem Taxes**

Is the claim subject to offset? ☐ No ☐ Yes

---

| 3.45 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$21,226.25** |
|---|---|---|---|

**Daniel Sheehan & Associates, PLLC**
**8150 N. Central Expressway**
**Suite 100**
**Dallas, TX 75206**

Date(s) debt was incurred _
Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **See Exhibit A**

Is the claim subject to offset? ☐ No ☐ Yes

---

| 3.46 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$20,658.79** |
|---|---|---|---|

**Debevoise & Plimpton LLP**
**c/o Accounting Dept. 28th Floor**
**909 Third Ave**
**New York, NY 10022**

Date(s) debt was incurred _
Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **See Exhibit A**

Is the claim subject to offset? ☐ No ☐ Yes

---

| 3.47 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$553.46** |
|---|---|---|---|

**Denton County**
**PO Box 90223**
**Denton, TX 76202**

Date(s) debt was incurred **2019**
Last 4 digits of account number **0DEN**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Ad Valorem Taxes**

Is the claim subject to offset? ☐ No ☐ Yes

---

| 3.48 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$3.68** |
|---|---|---|---|

**Denton County**
**PO Box 90223**
**Denton, TX 76202**

Date(s) debt was incurred **2019**
Last 4 digits of account number **5DEN**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Ad Valorem Taxes**

Is the claim subject to offset? ☐ No ☐ Yes

---

| 3.49 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$1,318,730.36** |
|---|---|---|---|

**DLA Piper LLP (US)**
**1900 N Pearl St, Suite 2200**
**Dallas, TX 75201**

Date(s) debt was incurred _
Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **See Exhibit A**

Is the claim subject to offset? ☐ No ☐ Yes

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com | Best Case Bankruptcy

| Debtor | **Highland Capital Management, L.P.** | | Case number (if known) | **19-34054-SGJ** |
|---|---|---|---|---|
| | Name | | | |

---

**3.50** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | | **$1,038.26**
---|---|---|---|---

**Dow Jones & Company, Inc.**
**1211 Avenue of the Americas**
**New York, NY 10036**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred ___

Basis for the claim: __Trade Payable__

Last 4 digits of account number ___

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.51** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$3.30**

**DTCC ITP LLC**
**PO Box 27590**
**New York, NY 10087-7590**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred ___

Basis for the claim: __Trade Payable__

Last 4 digits of account number ___

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.52** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$350,000.00**

**Duff & Phelps, LLC**
**c/o David Landman**
**Benesch, Friedlander, Coplan & Aronoff**
**200 Public Sq. Suite 2300**
**Cleveland, OH 44114-4000**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred ___

Basis for the claim: __See Exhibit A__

Last 4 digits of account number ___

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.53** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$5,837.30**

**Elite Document Technology**
**403 North Stemmons Freeway Suite 100**
**Dallas, TX 75207**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred ___

Basis for the claim: __See Exhibit A__

Last 4 digits of account number ___

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.54** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$9,972.65**

**Epiq eDiscovery Solutions**
**Dept 2651**
**PO Box 122651**
**Dallas, TX 75312-2651**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred ___

Basis for the claim: __See Exhibit A__

Last 4 digits of account number ___

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.55** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$11,430.14**

**Eric Girard**
**312 Polo Trl**
**Colleyville, TX 76034**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __10/14/2019__

Basis for the claim: __Consulting fee__

Last 4 digits of account number ___

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.56** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$1,546.65**

**Felicity Toube QC**
**3-4 South Square**
**Gray's Inn**
**London, WC1R 5HP**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred ___

Basis for the claim: __See Exhibit A__

Last 4 digits of account number ___

Is the claim subject to offset? ☑ No ☐ Yes

---

| Debtor | **Highland Capital Management, L.P.** | Case number (if known) | **19-34054-SGJ** |
| --- | --- | --- | --- |
| | Name | | |

| 3.57 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$1,446,136.66** |
| --- | --- | --- | --- |

**Foley Gardere**
**2021 McKinney Ave**
**Suite 1600**
**Dallas, TX 75201**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: **See Exhibit A**

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

| 3.58 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$108.95** |
| --- | --- | --- | --- |

**Four Seasons Plantscaping, LLC**
**139 Turtle Creek Blvd.**
**Dallas, TX 75207-6807**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: **Trade Payable**

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

| 3.59 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$522.72** |
| --- | --- | --- | --- |

**Gardner Haas PLLC**
**2501 N. Harwood Street**
**Suite 1250**
**Dallas, TX 75201**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: **See Exhibit A**

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

| 3.60 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$561.75** |
| --- | --- | --- | --- |

**Gold's Gym International**
**Attn: Corporate Billing**
**125 E John Carpenter Frwy**
**Suite 1300**
**Irving, TX 75062**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: **Trade Payable**

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

| 3.61 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$2,371.07** |
| --- | --- | --- | --- |

**Greenwood Office Outfitters**
**2951 Suffolk Drive**
**Suite 640**
**Fort Worth, TX 76133-1149**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: **Trade Payable**

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

| 3.62 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$11,250.00** |
| --- | --- | --- | --- |

**Greyline Solutions**
**PO Box 733976**
**Dallas, TX 75373-3976**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: **See Exhibit A**

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

| 3.63 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$5,464.13** |
| --- | --- | --- | --- |

**Harder LLP**
**132 S. RODEO DRIVE**
**FOURTH FLOOR**
**BEVERLY HILLS, CA 90212**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: **See Exhibit A**

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

| Debtor | **Highland Capital Management, L.P.** | | Case number (if known) | **19-34054-SGJ** |
|---|---|---|---|---|
| | Name | | | |

| 3.64 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$248,745.28** |
|---|---|---|---|
| | **Highland Capital Management (Singapore)**<br>**300 Crescent Ct.**<br>**Suite 700**<br>**Dallas, TX 75201** | ☐ Contingent<br>■ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred **Prior to 12/31/2018** | Basis for the claim: **The balance shown is updated annually for service fees and has not been updated since 12/31/2018** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.65 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$599,187.26** |
|---|---|---|---|
| | **Highland CLO Management Ltd.**<br>**PO Box 309**<br>**Ugland House**<br>**Grand Cayman KY1-1104**<br>**Cayman Island** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Interest payable** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.66 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$9,541,446.00** |
|---|---|---|---|
| | **Highland CLO Management Ltd.**<br>**PO Box 309**<br>**Ugland House**<br>**Grand Cayman KY1-1104**<br>**Cayman Island** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Note payable** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.67 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$2,447,870.00** |
|---|---|---|---|
| | **Highland RCP Offshore, LP**<br>**300 Crescent Ct.**<br>**Suite 700**<br>**Dallas, TX 75201** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Unearned Revenue** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.68 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$1,945,067.00** |
|---|---|---|---|
| | **Highland RCP, LP**<br>**300 Crescent Ct.**<br>**Suite 700**<br>**Dallas, TX 75201** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Unearned Revenue** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.69 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$107,221.92** |
|---|---|---|---|
| | **Hunton Andrews Kurth LLP**<br>**1445 Ross Avenue**<br>**Suite 3700**<br>**Dallas, TX 75202-2799** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **See Exhibit A** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.70 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$1,565.23** |
|---|---|---|---|
| | **ICE Data Pricing & Reference Data, LLC**<br>**PO Box 98616**<br>**Chicago, IL 60693** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Payable** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

Debtor  **Highland Capital Management, L.P.**                          Case number *(if known)*  **19-34054-SGJ**
Name

| | |
|---|---|
| 3.71 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$7,995.00** |

| 3.71 | |
|---|---|
| **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* |
| **Intralinks** | ☐ Contingent |
| **P.O. Box 10259** | ☐ Unliquidated |
| **New York, NY 10259** | ☐ Disputed |
| Date(s) debt was incurred __ | **Basis for the claim:** __Trade Payable__ |
| Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes |

**$7,995.00**

| 3.72 | |
|---|---|
| **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* |
| **JAMS, Inc** | ☐ Contingent |
| **PO Box 512850** | ☐ Unliquidated |
| **Los Angelos, CA 90051-0850** | ☐ Disputed |
| Date(s) debt was incurred __ | **Basis for the claim:** __See Exhibit A__ |
| Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes |

**$1,352.27**

| 3.73 | |
|---|---|
| **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* |
| **Joshua & Jennifer Terry** | ■ Contingent |
| **c/o Brian P. Shaw, Esq.** | |
| **Rogge Dunn Group, PC** | ■ Unliquidated |
| **500 N. Akard Street, Suite 1900** | |
| **Dallas, TX 75201** | ■ Disputed |
| Date(s) debt was incurred __ | **Basis for the claim:** __Litigation Claim__ |
| Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes |

**$425,000.00**

| 3.74 | |
|---|---|
| **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* |
| **Katten Muchin Rosenman LLP** | ☐ Contingent |
| **525 W Monroe St** | ☐ Unliquidated |
| **Chicago, IL 60661-3693** | ☐ Disputed |
| Date(s) debt was incurred __ | **Basis for the claim:** __See Exhibit A__ |
| Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes |

**$16,695.00**

| 3.75 | |
|---|---|
| **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* |
| **Kaufman County** | |
| **Attn: Elizabeth Weller** | ☐ Contingent |
| **2777 N. Stemmons Freeway** | ☐ Unliquidated |
| **Suite 1000** | ☐ Disputed |
| **Dallas, TX 75207** | |
| Date(s) debt was incurred __2019__ | **Basis for the claim:** __Ad Valorem Taxes__ |
| Last 4 digits of account number __0606__ | Is the claim subject to offset? ■ No ☐ Yes |

**$585.09**

| 3.76 | |
|---|---|
| **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* |
| **Kaufman County** | |
| **Attn: Elizabeth Weller** | ☐ Contingent |
| **2777 N. Stemmons Freeway** | ☐ Unliquidated |
| **Suite 1000** | ☐ Disputed |
| **Dallas, TX 75207** | |
| Date(s) debt was incurred __2019__ | **Basis for the claim:** __Ad Valorem Taxes__ |
| Last 4 digits of account number __0600__ | Is the claim subject to offset? ■ No ☐ Yes |

**$3,090.25**

| 3.77 | |
|---|---|
| **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* |
| **Kaufman County** | |
| **Attn: Elizabeth Weller** | ☐ Contingent |
| **2777 N. Stemmons Freeway** | ☐ Unliquidated |
| **Suite 1000** | ☐ Disputed |
| **Dallas, TX 75207** | |
| Date(s) debt was incurred __2019__ | **Basis for the claim:** __Ad Valorem Taxes__ |
| Last 4 digits of account number __0600__ | Is the claim subject to offset? ■ No ☐ Yes |

**$125.05**

| Debtor | **Highland Capital Management, L.P.** | Case number (*if known*) | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

| 3.78 | Nonpriority creditor's name and mailing address | As at the petition filing date, the claim is: *Check all that apply.* | **$5,732.15** |
|---|---|---|---|

**Kaufman County**
**Attn: Elizabeth Weller**
**2777 N. Stemmons Freeway**
**Suite 1000**
**Dallas, TX 75207**

Date(s) debt was incurred  **2019**
Last 4 digits of account number  **0600**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Ad Valorem Taxes**

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.79 | Nonpriority creditor's name and mailing address | As at the petition filing date, the claim is: *Check all that apply.* | **$34,425.72** |
|---|---|---|---|

**Legalpeople LLC**
**134 N LaSalle Street**
**Suite 800**
**Chicago, IL 60602**

Date(s) debt was incurred  __
Last 4 digits of account number  __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **See Exhibit A**

Is the claim subject to offset? ☐ No ☐ Yes

---

| 3.80 | Nonpriority creditor's name and mailing address | As at the petition filing date, the claim is: *Check all that apply.* | **$3,778.01** |
|---|---|---|---|

**Levinger PC**
**1445 Ross Avenue**
**Suite 2500**
**Dallas, TX 75202**

Date(s) debt was incurred  __
Last 4 digits of account number  __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **See Exhibit A**

Is the claim subject to offset? ☐ No ☐ Yes

---

| 3.81 | Nonpriority creditor's name and mailing address | As at the petition filing date, the claim is: *Check all that apply.* | **$2,583.66** |
|---|---|---|---|

**Lexitas**
**PO Box 734298**
**Dept. 2012**
**Dallas, TX 75373-4298**

Date(s) debt was incurred  __
Last 4 digits of account number  __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **See Exhibit A**

Is the claim subject to offset? ☐ No ☐ Yes

---

| 3.82 | Nonpriority creditor's name and mailing address | As at the petition filing date, the claim is: *Check all that apply.* | **$57,628.65** |
|---|---|---|---|

**Loews Coronado Bay Resort**
**4000 Coronado Bay Road**
**Coronado, CA 92118**

Date(s) debt was incurred  __
Last 4 digits of account number  __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Payable**

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.83 | Nonpriority creditor's name and mailing address | As at the petition filing date, the claim is: *Check all that apply.* | **$436,538.06** |
|---|---|---|---|

**Lynn Pinker Cox & Hurst, LLP**
**2100 Ross Ave**
**Suite 2700**
**Dallas, TX 75201**

Date(s) debt was incurred  __
Last 4 digits of account number  __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **See Exhibit A**

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.84 | Nonpriority creditor's name and mailing address | As at the petition filing date, the claim is: *Check all that apply.* | **$25,800.11** |
|---|---|---|---|

**Maples and Calder**
**UGLAND HOUSE**
**PO BOX 309GT; S CHURCH ST**
**George Town Grand Cayman**

Date(s) debt was incurred  __
Last 4 digits of account number  __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **See Exhibit A**

Is the claim subject to offset? ☒ No ☐ Yes

---

| Debtor | **Highland Capital Management, L.P.** | Case number (if known) | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

| 3.85 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $12,015.91 |
|---|---|---|---|

**MarkitWSO Corporation**
**Three Lincoln Centre**
**5430 LBJ Frwy; Ste 800**
**Dallas, TX 75240**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: **Trade Payable**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.86 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $2,163,976.00 |
|---|---|---|---|

**McKool Smith**
**300 Crescent Court**
**Suite 1500**
**Dallas, TX 75201**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: **See Exhibit A**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.87 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $780,645.36 |
|---|---|---|---|

**Meta-e Discovery LLC**
**Six Landmark Square**
**Fourth Floor**
**Stamford, CT 06901**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: **See Exhibit A**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.88 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $300.00 |
|---|---|---|---|

**Nick Meserve**
**11835 Brandywine Ln**
**Houston, TX 77024**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: **Trade Payable**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.89 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $375,000.00 |
|---|---|---|---|

**NWCC, LLC**
**c/o of Michael A. Battle**
**Barnes & Thornburg, LLP**
**1717 Pennsylvania Ave N.W. Ste 500**
**Washington, DC 20006**

☑ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: **Litigation Claim**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.90 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $15,669.86 |
|---|---|---|---|

**Opus 2 International, Inc.**
**100 Pine Street**
**Suite 560**
**San Francisco, CA 94111**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: **See Exhibit A**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.91 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $435.30 |
|---|---|---|---|

**PACER Service Center**
**P.O. Box 5208**
**Portland, OR 97208-5208**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: **Trade Payable**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

| Debtor | **Highland Capital Management, L.P.** | | Case number *(if known)* | **19-34054-SGJ** |
|---|---|---|---|---|
| | Name | | | |

| 3.92 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$11,700,000.00** |
|---|---|---|---|

**Patrick Daugherty**
c/o Thomas A. Uebler
McCollom D'Emilio Smith
2751 Centerville Rd #401
Wilmington, DE 19808

Date(s) debt was incurred __
Last 4 digits of account number __

■ Contingent
■ Unliquidated
■ Disputed

Basis for the claim:  **Litigation Claim**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.93 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$1,611.00** |
|---|---|---|---|

**Pitney Bowes- Purchase Power**
PO Box 371874
Pittsburgh, PA 15250-2648

Date(s) debt was incurred __
Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Payable**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.94 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$1,064.58** |
|---|---|---|---|

**ProStar Services, Inc**
PO Box 110209
Carrollton, TX 75011

Date(s) debt was incurred __
Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Payable**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.95 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$8,608.17** |
|---|---|---|---|

**Quintairos, Prieto Wood & Boyer**
865 S. Figueroa St
10th FL
Los Angeles, CA 90017

Date(s) debt was incurred __
Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **See Exhibit A**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.96 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$189,314,946.00** |
|---|---|---|---|

**Redeemer Committee - Highland Crusader**
Attn: Eric Felton
731 Pleasant Ave.
Glen Ellyn, IL 60137

Date(s) debt was incurred __
Last 4 digits of account number __

■ Contingent
■ Unliquidated
■ Disputed

Basis for the claim:  **Litigation Claim**

Is the claim subject to offset? ☐ No ■ Yes

---

| 3.97 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$258,526.25** |
|---|---|---|---|

**Reid Collins & Tsai**
810 Seventh Ave Ste 410
New York, NY 10019

Date(s) debt was incurred __
Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **See Exhibit A**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.98 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$1,478.59** |
|---|---|---|---|

**Scott Douglass & McConnico LLP**
303 Colorado St
Ste 2400
Austin, TX 78701

Date(s) debt was incurred __
Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **See Exhibit A**

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Highland Capital Management, L.P.** | Case number *(if known)* | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

| 3.99 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$24.37** |
|---|---|---|---|

**Secured Access Systems, LLC**
**1913 Walden Court**
**Flower Mound, TX 75022**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred ___

Basis for the claim:  **Trade Payable**

Last 4 digits of account number ___

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.100 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$80,183.88** |
|---|---|---|---|

**Siepe Services, LLC**
**5440 Harvest Hill Road**
**Suite 100**
**Dallas, TX 75230**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred ___

Basis for the claim:  **Trade Payable**

Last 4 digits of account number ___

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.101 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$309.11** |
|---|---|---|---|

**Southland Property Tax Consultants, Inc**
**421 W. 3rd Street**
**Ste 920**
**Fort Worth, TX 76102**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred ___

Basis for the claim:  **Trade Payable**

Last 4 digits of account number ___

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.102 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$5,208.40** |
|---|---|---|---|

**Squire Patton Boggs (US) LLP**
**PO Box 643051**
**Cincinnati, OH 45264**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred ___

Basis for the claim:  **See Exhibit A**

Last 4 digits of account number ___

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.103 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$10,000.00** |
|---|---|---|---|

**Stanton Advisors LLC**
**300 Coles Street**
**Apt. 802**
**Jersey City, NJ 07310**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred ___

Basis for the claim:  **See Exhibit A**

Last 4 digits of account number ___

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.104 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$90,712.65** |
|---|---|---|---|

**Stanton LLP**
**9400 N Central Expwy**
**Ste 1304**
**Dallas, TX 75231**

■ Contingent
■ Unliquidated
■ Disputed

Date(s) debt was incurred ___

Basis for the claim:  **See Exhibit A**

Last 4 digits of account number ___

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.105 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$2,500.00** |
|---|---|---|---|

**State Street Global Exchange**
**Elkins/McSherry, LLC**
**One Lincoln Street**
**Boston, MA 02111**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred ___

Basis for the claim:  **See Exhibit A**

Last 4 digits of account number ___

Is the claim subject to offset? ■ No ☐ Yes

| Debtor | **Highland Capital Management, L.P.** | Case number (if known) | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

| 3.106 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$246,802.54** |
|---|---|---|---|

**Stinson Leonard Street LLP**
**PO Box 843052**
**Kansas City, MO 64184**

- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

Date(s) debt was incurred ___

Last 4 digits of account number ___

Basis for the claim: __See Exhibit A__

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.107 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,158.52** |
|---|---|---|---|

**Thomson West**
**PO Box 64833**
**St. Paul, MN 55164-0833**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred ___

Last 4 digits of account number ___

Basis for the claim: __Trade Payable__

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.108 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |
|---|---|---|---|

**UBS AG, London Branch**
**c/o Andrew Clubock, Esq.**
**Latham & Watkins LLP**
**555 11th Street NW #1000**
**Washington, DC 20004**

- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

Date(s) debt was incurred ___

Last 4 digits of account number ___

Basis for the claim: __Litigation Claim__

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.109 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |
|---|---|---|---|

**UBS Securities LLC**
**c/o Andrew Clubock**
**Latham & Watkins LLP**
**555 11th Street NW #1000**
**Washington, DC 20004**

- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

Date(s) debt was incurred ___

Last 4 digits of account number ___

Basis for the claim: __Litigation Claim__

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.110 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$90.45** |
|---|---|---|---|

**UPS Supply Chain Solutions**
**28013 Network Place**
**Chicago, IL 60673-1280**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred ___

Last 4 digits of account number ___

Basis for the claim: __Trade Payable__

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.111 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$2,334.80** |
|---|---|---|---|

**Wakefield Quin**
**Victoria Place**
**31 Victoria St**
**Hamilton, HM10 Bermuda**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred ___

Last 4 digits of account number ___

Basis for the claim: __See Exhibit A__

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.112 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$3,411.87** |
|---|---|---|---|

**Wilks, Lukoff & Bracegirdle, LLC**
**4250 Lancaster Pike**
**#200**
**Wilmington, DE 19805**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred ___

Last 4 digits of account number ___

Basis for the claim: __Trade Payable__

Is the claim subject to offset? ☑ No ☐ Yes

---

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com

| Debtor | **Highland Capital Management, L.P.** | Case number (if known) | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

| 3.113 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$2,348.31** |
|---|---|---|---|

**Xerox Corporation**
**PO Box 650361**
**Dallas, TX 75265**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** __

**Last 4 digits of account number** __

**Basis for the claim:** _Trade Payable_

Is the claim subject to offset? ■ No ☐ Yes

---

| Part 3: | **List Others to Be Notified About Unsecured Claims** |
|---|---|

4. **List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|

| Part 4: | **Total Amounts of the Priority and Nonpriority Unsecured Claims** |
|---|---|

5. **Add the amounts of priority and nonpriority unsecured claims.**

| | | | Total of claim amounts |
|---|---|---|---|
| **5a. Total claims from Part 1** | 5a. | $ | 13,650.00 |
| **5b. Total claims from Part 2** | 5b. + | $ | 244,753,977.33 |
| **5c. Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c. | $ | 244,767,627.33 |

---

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com

**Fill in this information to identify the case:**

Debtor name   **Highland Capital Management, L.P.**

United States Bankruptcy Court for the:   NORTHERN DISTRICT OF TEXAS

Case number (if known)   **19-34054-SGJ**

■ Check if this is an
amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors   12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

**Declaration and signature**

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐   *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☐   *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
■   *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☐   *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☐   *Schedule H: Codebtors* (Official Form 206H)
■   *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
■   Amended *Schedule*   **Amended Schedule E/F and Summary of assets and liabilities for non-individuals**
☐   *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
☐   Other document that requires a declaration

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   September 22, 2020          x _____
                                          Signature of individual signing on behalf of debtor

                                          James P. Seery, Jr.
                                          Printed name

                                          CEO/CRO
                                          Position or relationship to debtor

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

# EXHIBIT 30

**Fill in this information to identify the case:**

Debtor name    **Highland Capital Management, L.P.**

United States Bankruptcy Court for the:    NORTHERN DISTRICT OF TEXAS

Case number (if known)    **19-34054-SGJ**

☐ Check if this is an amended filing

## Official Form 207
## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy    04/19

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

| Part 1: | Income |
| --- | --- |

1. **Gross revenue from business**

   ☐ None.

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
| --- | --- | --- |
| **From the beginning of the fiscal year to filing date:**<br>From  **1/01/2019** to **Filing Date** | ☑ Operating a business<br>☑ Other    **Exhibit A** | **$28,431,156.97** |
| **From the beginning of the fiscal year to filing date:**<br>From  **1/01/2019** to **Filing Date** | ☐ Operating a business    **Exhibit A - Other**<br>☑ Other    **Gain/(Loss)** | **$125,310,540.63** |
| **For prior year:**<br>From  **1/01/2018** to **12/31/2018** | ☑ Operating a business<br>☑ Other    **Exhibit A** | **$50,365,069.40** |
| **For prior year:**<br>From  **1/01/2018** to **12/31/2018** | ☐ Operating a business    **Exhibit A - Other**<br>☑ Other    **Gain/(Loss)** | **$-52,929,268.33** |
| **For year before that:**<br>From  **1/01/2017** to **12/31/2017** | ☑ Operating a business<br>☑ Other    **Exhibit A** | **$67,911,079.00** |
| **For year before that:**<br>From  **1/01/2017** to **12/31/2017** | ☐ Operating a business    **Exhibit A - Other**<br>☑ Other    **Gain/(Loss)** | **$47,701,590.21** |

1934054191213000000000007

| Debtor | **Highland Capital Management, L.P.** | Case number *(if known)* | **19-34054-SGJ** |

**2. Non-business revenue**

Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☑ None.

| | Description of sources of revenue | Gross revenue from each source (before deductions and exclusions) |
|---|---|---|

**3. Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☐ None.

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer Check all that apply |
|---|---|---|---|
| 3.1. **Exhibit B** | | **$23,255,006.86** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

**4. Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☐ None.

| Insider's name and address Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
|---|---|---|---|
| 4.1. **Exhibit C** | | **$36,608,252.91** | |

**5. Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☑ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|

**6. Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

Debtor **Highland Capital Management, L.P.**  Case number *(if known)* **19-34054-SGJ**

☐ None.

| | Case title Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.1. | **Exhibit D** | | | ☐ Pending ☐ On appeal ☐ Concluded |
| 7.2. | **Internal dispute resolution department within the IRS** | **IRS Appeal** | **Department of the Treasury 4050 Alpha Road Suite 517, MC: 8000NDAL Dallas, TX 75201-7849** | ☐ Pending ☑ On appeal ☐ Concluded |

**8. Assignments and receivership**
List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

## Part 4: Certain Gifts and Charitable Contributions

9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000

☐ None

| | Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|---|
| 9.1. | **Exhibit E** | **Debtor does not track recipient of gift or contribution.** | | **$445,725.61** |
| | Recipients relationship to debtor | | | |

## Part 5: Certain Losses

10. All losses from fire, theft, or other casualty within 1 year before filing this case.

☑ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss | Dates of loss | Value of property lost |
|---|---|---|---|
| | If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received. List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets – Real and Personal Property)*. | | |

## Part 6: Certain Payments or Transfers

**11. Payments related to bankruptcy**
List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None.

| Who was paid or who received the transfer? Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|

Case 19-34054-sgj11 Doc 247 Filed 12/23/19 Entered 12/23/19 10:22:34 Page 4 of 94

| Debtor | **Highland Capital Management, L.P.** | Case number *(if known)* **19-34054-SGJ** |

| | Who was paid or who received the transfer?<br>Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| 11.1. | **Development Specialists, Inc.**<br>**10 South LaSalle**<br>**Suite 3300**<br>**Chicago, IL 60603** | | **10/07/2019** | **$250,000.00** |
| | Email or website address<br>**dsiconsulting.com** | | | |
| | Who made the payment, if not debtor? | | | |
| 11.2. | **Pachulski Stang Ziehl &**<br>**Jones LLP**<br>**10100 Santa Monica Blvd.**<br>**13th Floor**<br>**Los Angeles, CA 90067** | | **10/02/2019** | **$500,000.00** |
| | Email or website address<br>**http://www.pszjlaw.com/** | | | |
| | Who made the payment, if not debtor? | | | |
| 11.3. | **Kurtzman Carson**<br>**Consultants LLC**<br>**Dept CH 16639**<br>**Palatine, IL 60055** | | **10/07/2019** | **$50,000.00** |
| | Email or website address<br>**https://www.kccllc.com/** | | | |
| | Who made the payment, if not debtor? | | | |

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.

Do not include transfers already listed on this statement.

☑ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

**13. Transfers not already listed on this statement**

List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☐ None.

| Debtor | **Highland Capital Management, L.P.** | | | Case number *(if known)* | **19-34054-SGJ** |
|---|---|---|---|---|---|

| | **Who received transfer?**<br>**Address** | **Description of property transferred or**<br>**payments received or debts paid in exchange** | **Date transfer**<br>**was made** | **Total amount or**<br>**value** |
|---|---|---|---|---|
| 13.1<br>. | **Highland Select Equity Fund,**<br>**L.P.**<br>**300 Crescent Ct.**<br>**Dallas, TX 75201** | **Transfer of 888,731 shares of public**<br>**security in exchange for LP interest.** | **12/26/2018** | **$19,632,067.79** |
| | **Relationship to debtor**<br>**Fund managed by the debtor.** | | | |
| 13.2<br>. | **Highland Select Equity Fund,**<br>**L.P.**<br>**300 Crescent Ct.**<br>**Dallas, TX 75201** | **Transfer of 214,000 shares of public**<br>**security in exchange for LP interest.** | **3/12/2018** | **$6,385,760.00** |
| | **Relationship to debtor**<br>**Fund managed by the debtor** | | | |
| 13.3<br>. | **Highland Select Equity Fund,**<br>**L.P.**<br>**300 Crescent Ct.**<br>**Suite 700**<br>**Dallas, TX 75201** | **Transfer of 250,000 shares of public**<br>**security for LP interest** | **7/23/2019** | **$10,297,500.00** |
| | **Relationship to debtor**<br>**Fund managed by the debtor** | | | |

**Part 7:** Previous Locations

14. **Previous addresses**
List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☐ Does not apply

| | **Address** | **Dates of occupancy**<br>**From-To** |
|---|---|---|
| 14.1. | **Parkway Bent Tree**<br>**17130 Dallas Parkway**<br>**Suite 230**<br>**Dallas, TX 75248** | **10/16/2016 – 8/30/2018** |
| 14.2. | **2200 Ross Avenue**<br>**Suite 4700E**<br>**Storage Site**<br>**Dallas, TX 75201** | **10/16/2016 – 12/31/2018** |

**Part 8:** Health Care Bankruptcies

15. **Health Care bankruptcies**
Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.
☐ Yes. Fill in the information below.

| **Facility name and address** | **Nature of the business operation, including type of services**<br>**the debtor provides** | **If debtor provides meals**<br>**and housing, number of**<br>**patients in debtor's care** |
|---|---|---|

| Debtor | Highland Capital Management, L.P. | Case number *(if known)* | 19-34054-SGJ |

---

**Part 9:**    Personally Identifiable Information

16. **Does the debtor collect and retain personally identifiable information of customers?**

☐ No.
☑ Yes. State the nature of the information collected and retained.

> **Debtor has information including SS#, tax ID, mailing address, email address, and limited KYC for fund investors.**
>
> Does the debtor have a privacy policy about that information?
> ☐ No
> ☑ Yes

17. **Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☐ No. Go to Part 10.
☑ Yes. Does the debtor serve as plan administrator?

     ☐ No Go to Part 10.
     ☑ Yes. Fill in below:

| Name of plan | Employer identification number of the plan |
|---|---|
| **Highland 401(K) Plan** | EIN: **75-2716725** |

     Has the plan been terminated?
     ☑ No
     ☐ Yes

     ☐ No Go to Part 10.
     ☑ Yes. Fill in below:

| Name of plan | Employer identification number of the plan |
|---|---|
| **Highland Capital Management, L.P. Retirement Plan and Trust (Defined Benefit Plan)** | EIN: **75-2716725** |

     Has the plan been terminated?
     ☑ No
     ☐ Yes

---

**Part 10:**    Certain Financial Accounts, Safe Deposit Boxes, and Storage Units

18. **Closed financial accounts**
Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

19. **Safe deposit boxes**
List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository institution name and address | Names of anyone with access to it Address | Description of the contents | Do you still have it? |
|---|---|---|---|

20. **Off-premises storage**
List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

---

| Debtor | Highland Capital Management, L.P. | Case number (if known) | 19-34054-SGJ |
|---|---|---|---|

☐ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Do you still have it? |
|---|---|---|---|
| **Iron Mountain**<br>**PO BOX 915004**<br>**Dallas, TX 75391** | **Employee has login access to request documents.** | **Firm-wide documents sent off-site to retain documents per the firm's retention policy.** | ☐ No<br>☑ Yes |
| **Natural Disasters Site**<br>**900 Venture Dr.**<br>**Allen, TX 75013** | **Highland Capital Management IT Department** | **Primary Data Center - Storage** | ☐ No<br>☑ Yes |
| **Natural Disasters Site**<br>**3010 Waterview Parkway**<br>**Richardson, TX 75080** | **Highland Capital Management IT Department** | **Natural Disasters Site - Storage** | ☐ No<br>☑ Yes |

**Part 11:    Property the Debtor Holds or Controls That the Debtor Does Not Own**

21. **Property held for another**
    List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☐ None

| Owner's name and address | Location of the property | Describe the property | Value |
|---|---|---|---|
| James Dondero | **300 Crescent Court Suite 700 Dallas, TX 75201** | Artwork | Unknown |

**Part 12:    Details About Environment Information**

For the purpose of Part 12, the following definitions apply:
*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

22.    **Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☑ No.
☐ Yes. Provide details below.

| Case title<br>Case number | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|

23.    **Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

24.    **Has the debtor notified any governmental unit of any release of hazardous material?**

| Debtor | **Highland Capital Management, L.P.** | Case number _(if known)_ | **19-34054-SGJ** |
|---|---|---|---|

☑ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

**Part 13:  Details About the Debtor's Business or Connections to Any Business**

**25. Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☐ None

| Business name address | Describe the nature of the business | Employer Identification number Do not include Social Security number or ITIN. |
|---|---|---|
| | | **Dates business existed** |
| 25.1.   **Exhibit F** | | **EIN:** |
| | | **From-To** |

**26. Books, records, and financial statements**
26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and address | Date of service From-To |
|---|---|
| 26a.1.   **Frank Waterhouse** **300 Crescent Court** **Suite 700** **Dallas, TX 75201** | **10/23/06 - Current** |
| 26a.2.   **David Klos** **300 Crescent Court** **Suite 700** **Dallas, TX 75201** | **03/30/09 - Current** |
| 26a.3.   **Kristin Hendrix** **300 Crescent Court** **Suite 700** **Dallas, TX 75201** | **12/16/04 - Current** |
| 26a.4.   **Sean Fox** **300 Crescent Court** **Suite 700** **Dallas, TX 75201** | **06/25/13 - Current** |
| 26a.5.   **Drew Wilson** **300 Crescent Court** **Suite 700** **Dallas, TX 75201** | **02/06/12 - 09/14/18** |
| 26a.6.   **Hayley Eliason** **300 Crescent Court** **Suite 700** **Dallas, TX 75201** | **11/26/18 - Current** |
| 26a.7.   **Blair Roeber** **300 Crescent Court** **Suite 700** **Dallas, TX 75201** | **09/01/15 - Current** |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com

| Debtor | Highland Capital Management, L.P. | Case number *(if known)* | **19-34054-SGJ** |
|---|---|---|---|

☐ None

| Name and address | Date of service From-To |
|---|---|
| 26b.1.    **PricewaterhouseCoopers LLP** <br> 2121 N Pearl St <br> Dallas, TX 75201 | **2003 - Current** |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| 26c.1.    **Boyd Gosserand** <br> 300 Crescent Ct. <br> St 700 <br> Dallas, TX 75201 | |
| 26c.2.    **Deloitte - Tax** <br> PO Box 844736 <br> Dallas, TX 75284 | |
| 26c.3.    **Centroid -Accounting Software Consultant** <br> 6860 Dallas Pkwy Suite 560 <br> Dallas, TX 75204 | |
| 26c.4.    **Oracle - Accounting Software** <br> PO Box 203448 <br> Dallas, TX 75320 | |
| 26c.5.    **Wolters Kluwer - Tax** <br> PO Box 71882 <br> Chicago, IL 60694 | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

| Name and address |
|---|
| 26d.1.    **AgeeFisherBarrett, LLC** <br> 750 Hammond Dr BLDG 17 <br> Atlanta, GA 30328 |
| 26d.2.    **Bowman Law LLC** <br> 840 Tom Wheeler Lane <br> Mc Ewen, TN 37101 |
| 26d.3.    **CBIZ Valuation Group, Inc.** <br> 3030 LBJ Freeway, Ste 1650 <br> Dallas, TX 75234 |
| 26d.4.    **Cole Schotz** <br> Court Plaza North <br> 25 Main Street, PO Box 800 <br> Hackensack, NJ 07602 |
| 26d.5.    **Colorado FSC** <br> 188 Inverness Drive West <br> Ste. 100 <br> Centennial, CO 80112 |

| Debtor | **Highland Capital Management, L.P.** | Case number *(if known)* **19-34054-SGJ** |
|---|---|---|

| | **Name and address** |
|---|---|
| 26d.6. | **Concordeis**<br>**1120 East Long Lake Road**<br>**Ste 207**<br>**Troy, MI 48085** |
| 26d.7. | **Courtland T Group**<br>**PO Box 11929**<br>**Newport Beach, CA 92658** |
| 26d.8. | **Crown Capital Securities**<br>**725 Town & Country Rd**<br>**Ste 530**<br>**Orange, CA 92868** |
| 26d.9. | **Deloitte Tax LLP**<br>**PO Box 844736**<br>**Dallas, TX 75284** |
| 26d.10. | **DFPG Investments, Inc.**<br>**9017 S. Riverside Dr.**<br>**Ste 210**<br>**Sandy, UT 84070** |
| 26d.11. | **Discipline Advisors**<br>**14135 G-100 Midway Rd.**<br>**Dallas, TX 75244** |
| 26d.12. | **Development Specialists, Inc.**<br>**10 S. LaSalle St.**<br>**Chicago, IL 60603** |
| 26d.13. | **Emerson Equity**<br>**155 Bovet Rd. #725**<br>**San Mateo, CA 94402** |
| 26d.14. | **Frontier Bank**<br>**5100 S I-35 Service Rd.**<br>**Oklahoma City, OK 73129** |
| 26d.15. | **Grant Thornton LLP**<br>**33570 Treasury Center**<br>**Chicago, IL 60694** |
| 26d.16. | **Great Southern Bank**<br>**8201 Preston Road**<br>**Suite 305**<br>**Dallas, TX 75225** |
| 26d.17. | **Key Bank**<br>**ATTN: KREC Loan Services**<br>**4910 Tiedman Road**<br>**3rd Floor**<br>**Cleveland, OH 44144** |
| 26d.18. | **KPMG**<br>**3 Chesnut Ridge Rd**<br>**Montvale, NJ 07645** |
| 26d.19. | **Maples & Calder**<br>**Ugland House PO Box 309**<br>**S. Church Street George Town**<br>**Grand Cayman, Cayman Island** |

| Debtor | **Highland Capital Management, L.P.** | Case number *(if known)* | **19-34054-SGJ** |
|---|---|---|---|

| **Name and address** |
|---|
| 26d.20. | **Payne and Smith**<br>**5952 Royal Lane**<br>**Suite 158**<br>**Dallas, TX 75230** |
| 26d.21. | **PWC**<br>**PO Box 952282**<br>**Dallas, TX 75395** |
| 26d.22. | **Squire Patton Boggs**<br>**PO Box 643051**<br>**Cincinnati, OH 45264** |
| 26d.23. | **WC Capital Partners** |
| 26d.24. | **Western International Securities, Inc.**<br>**70 S. Lake Ave**<br>**Ste 700**<br>**Pasadena, CA 91101** |
| 26d.25. | **Jean Francois Lemay**<br>**52 Harold Street**<br>**Etobicoke M8Z 3R3** |

**27. Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No

☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|

**28.** List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Strand Advisors, Inc. | 300 Crescent Ct, Ste 700<br>Dallas, TX 75201 | General Partner | 0.2508% |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| The Dugaboy Investment Trust | 300 Crescent Ct, Ste 700<br>Dallas, TX 75201 | Voting Limited Partner | 0.1866% |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Mark Okada | 300 Crescent Ct, Ste 700<br>Dallas, TX 75201 | Voting Limited Partner | 0.0487% |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Mark and Pamela Okada Family Trust | 300 Crescent Ct, Ste 700<br>Dallas, TX 75201 | Voting Limited Partner | 0.0098% |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Mark and Pamela Okada Family Trust - #2 | 300 Crescent Ct, Ste 700<br>Dallas, TX 75201 | Voting Limited Partner | 0.0042% |

Debtor   **Highland Capital Management, L.P.**                    Case number *(if known)*   **19-34054-SGJ**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Hunter Mountain Investment Trust** | **1100 N Market St Wilmington, DE 19890** | **Non-voting Limited Partner** | **99.50%** |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **James Dondero** | **300 Crescent Ct, Ste 700 Dallas, TX 75201** | **Sole Shareholder of General Partner** | **100%** |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **James Dondero** | **300 Crescent Ct, Ste 700 Dallas, TX 75201** | **President of General Partner** | **100% of the General Partner** |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Scott Ellington** | **300 Crescent Ct, Ste 700 Dallas, TX 75201** | **Secretary of General Partner** | **0.00%** |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Frank Waterhouse** | **300 Crescent Ct, Ste 700 Dallas, TX 75201** | **Treasurer of General Partner** | **0.00%** |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No
☑ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Mark Okada** | **300 Crescent Ct, Ste 700 Dallas, TX 75201** | **Executive Vice President** | **Since inception to 9/30/2019** |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Trey Parker** | **300 Crescent Ct, Ste 700 Dallas, TX 75201** | **Assistant Secretary** | **8/21/2015 - 4/15/2019** |

30. **Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No
☑ Yes. Identify below.

| | Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|---|
| 30.1. | **Exhibit G** | **8,722,414.86** | | |
| | **Relationship to debtor** | | | |

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

Debtor   **Highland Capital Management, L.P.**                                Case number *(if known)*   **19-34054-SGJ**

---

☑ No
☐ Yes. Identify below.

**Name of the parent corporation**                                           **Employer Identification number of the parent corporation**

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No
☐ Yes. Identify below.

**Name of the pension fund**                                                 **Employer Identification number of the parent corporation**

---

**Part 14:   Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **December 13, 2019**

_____                    Bradley Sharp
Signature of individual signing on behalf of the debtor          Printed name

Position or relationship to debtor        Chief Restructuring Officer

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**
☐ No
☑ Yes

---

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit A - SOFA 1**

| Revenue Account | Year 2019 [1] | Year 2018 | Year 2017 |
|---|---|---|---|
| **Operating Revenue** | | | |
| Management fees | $ 18,776,701.38 | $ 35,264,426.88 | $ 37,098,010.50 |
| Shared services fees | 6,002,769.24 | 9,187,200.55 | 9,445,221.98 |
| Incentive fees | 150,925.36 | 18,465.92 | 10,042,499.76 |
| Interest and Investment Income | 2,625,221.26 | 4,857,157.03 | 4,478,946.34 |
| Miscellaneous Income | 875,539.73 | 1,037,819.02 | 6,846,400.42 |
| **Total Operating Revenue** | $ 28,431,156.97 | $ 50,365,069.40 | $ 67,911,079.00 |
| | | | |
| **Other Gain/(Loss)** | | | |
| Interest income | $ 5,765,215.32 | $ 7,503,164.74 | $ 7,049,038.53 |
| Other income/expense | 838,191.46 | 658,514.02 | 3,723,833.60 |
| Net realized gains on sales of investment transactions | 3,959,534.93 | 13,396,884.40 | 6,494,555.20 |
| Net change in unrealized gains/(losses) of investments | (6,692,741.56) | (56,529,224.39) | 27,322,977.50 |
| Net earnings/(losses) from equity method investees | 121,440,340.48 | (17,958,607.10) | 3,111,185.38 |
| **Total Other Gain/(Loss)** | $ 125,310,540.63 | $ (52,929,268.33) | $ 47,701,590.21 |

*[1] Date ranges from 12/31/2018 to end of business 10/15/2019.*

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit B - SOFA 3 [1]**

| Trading Partner Name | Trading Partner Address | Payment Date | Payment Amount | Reason for Transfer |
|---|---|---|---|---|
| Wilmer Cutler Pickering Hale and Dorr LLP | PO Box 7247-8760 Philadelphia PA 19170-8760 | 7/18/2019 | $ 20,275.50 | Professional Services |
| Canteen Vending Services | PO Box 417632 Boston MA 02241-7632 | 7/18/2019 | 1,285.16 | Suppliers/Vendors |
| Platinum Parking | 300 Crescent Court Level G1, L8#102 Dallas TX 75201 | 7/18/2019 | 990.00 | Professional Services |
| AT&T MOBILITY | PO BOX 6463 CAROL STREAM IL 60197-6463 | 7/19/2019 | 8,789.14 | Professional Services |
| Highland Capital Management Korea Limited | (Seoul Finance Center, Taepyeongro-1-ga) 21F, 136, Sejong-daero, Jung-gu, Seoul, Korea | 7/19/2019 | 630,000.00 | Intercompany Funding |
| American Airlines | 4255 Amon Carter Blvd MD 4106 Fort Worth TX 76155 | 7/22/2019 | 30,000.00 | Professional Services |
| TRICOR BUSINESS OUTSOURCING | 80 Robinson Rd, Singapore 068898 | 7/22/2019 | 28,122.16 | Intercompany Funding |
| Meister Seelig & Fein LLP | 125 Park Avenue 7th Floor New York NY 10017 | 7/22/2019 | 24,228.30 | Professional Services |
| Flagship Cruises & Events | PO Box 120751 San Diego CA 92112 | 7/22/2019 | 16,103.26 | Suppliers/Vendors |
| Blue Cross Blue Shield of Texas | PO Box 731428 Dallas TX 75373-1428 | 7/23/2019 | 146,190.02 | Employee Benefits |
| Abrams & Bayliss LLP | 20 Montchanin Road, Suite 200 Wilmington DE 19807 | 7/24/2019 | 53,237.45 | Professional Services |
| Pricewaterhouse Coopers, LLP | 8 Cross St. #17-00 PWC Singapore Building Singapore 048424 | 7/24/2019 | 14,461.66 | Professional Services |
| Siepe Software, LLC | 5440 Harvest Hill Rd Suite 100, Dallas, TX 75230 | 7/25/2019 | 36,084.06 | Professional Services |
| Consultant | 2620 White Rock Rd. Dallas TX 75214 | 7/25/2019 | 6,754.00 | Professional Services |
| Reid Collins & Tsai LLP | 4301 Westbank Drive Building B Suite 230 Austin TX 78746 | 7/30/2019 | 82,831.45 | Professional Services |
| Paxstone Capital LLP | 483 Green Lanes, London, Greater London, N13 4BS | 7/30/2019 | 46,063.81 | Professional Services |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 7/31/2019 | 41,053.47 | Employee Benefits |
| HIGHLAND CREDIT OPPORTUNITIES FUND | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/31/2019 | 628,000.00 | Intercompany Funding |
| Arris Western Corp. | 718 N Buckner #316 Dallas TX 75218 | 7/31/2019 | 11,000.00 | Professional Services |
| Professional Speaker | Koa Kai, LLC PO Box 232307 Leucadia CA 92023 | 7/31/2019 | 15,000.00 | Suppliers/Vendors |
| Pershing LLC | One Pershing Plaza Attn: IBD - 15th Floor Jersey City NJ 07399 | 8/1/2019 | 500,000.00 | Investing |
| Consultant | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/1/2019 | 39,586.07 | Professional Services |
| Crescent TC Investors LP | 200 Crescent Ct Suite 250 Dallas TX 75201 | 8/1/2019 | 155,361.38 | Rent Payment |
| Brasilinvest Empreendimentos e Participac?es S/A | Brazil | 8/1/2019 | 10,000.00 | Intercompany Funding |
| Frontier State Bank | 5100 S I-35 Service Rd, Oklahoma City, OK 73129 | 8/1/2019 | 68,002.70 | Secured Loan Payment |
| Massand Capital, LLC | 8140 Walnut Hill Lane, Suite 310 Dallas, TX 75231 | 8/1/2019 | 54,979.21 | Professional Services |
| Pershing LLC | One Pershing Plaza Attn: IBD - 15th Floor Jersey City NJ 07399 | 8/2/2019 | 11,959.71 | Investing |
| Bloomberg Finance LP | PO Box 416604 Boston MA 02241-6604 | 8/2/2019 | 252,041.98 | Professional Services |
| AT&T | PO BOX 5019 CAROL STREAM IL 60197 | 8/2/2019 | 259.05 | Professional Services |
| Blue Cross Blue Shield of Texas | PO Box 731428 Dallas TX 75373-1428 | 8/2/2019 | 86,126.71 | Employee Benefits |
| Abrams & Bayliss LLP | 20 Montchanin Road, Suite 200 Wilmington DE 19807 | 8/7/2019 | 17,133.03 | Professional Services |
| HIGHLAND CREDIT OPPORTUNITIES FUND | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/7/2019 | 441,000.00 | Intercompany Funding |
| Status Labs.com | 151 South 1st Suite 100 Austin TX 78704 | 8/7/2019 | 9,500.00 | Professional Services |
| PetroCap Partners III, L.P. | 3333 Lee Parkway Suite 750 Dallas TX 75219 | 8/7/2019 | 510,350.41 | Investing |
| HIGHLAND CAPITAL MANAGEMENT, LP | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/8/2019 | 115,843.80 | Professional Services |
| AT&T | PO BOX 5019 CAROL STREAM IL 60197 | 8/8/2019 | 3,573.58 | Professional Services |
| Flexential Colorado Corp. | PO Box 732368 Dallas TX 75373-2368 | 8/8/2019 | 12,056.49 | Professional Services |
| Canteen Vending Services | PO Box 417632 Boston MA 02241-7632 | 8/8/2019 | 3,267.49 | Suppliers/Vendors |
| Blue Cross Blue Shield of Texas | PO Box 731428 Dallas TX 75373-1428 | 8/9/2019 | 157,850.27 | Employee Benefits |
| Liberty Life Assurance Company of Boston - Group Benefits | PO Box 2658 Carol Stream IL 60132-2658 | 8/9/2019 | 5,283.26 | Employee Benefits |
| ICBI | London | 8/13/2019 | 12,420.78 | Professional Services |
| Eagle Equity Advisors, LLC | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/13/2019 | 155,000.00 | Intercompany Funding |
| Connolly Gallagher LLP | 1201 North Market Street 20th Floor Wilmington DE 19801 | 8/13/2019 | 18,295.70 | Professional Services |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 8/14/2019 | 41,300.58 | Employee Benefits |
| CBIZ Valuation Group, Inc. | 3030 LBJ Freeway, Ste 1650 Dallas TX 75234 | 8/14/2019 | 15,000.00 | Professional Services |
| Consultant | 2620 White Rock Rd. Dallas TX 75214 | 8/14/2019 | 5,357.00 | Professional Services |
| Siepe Services, LLC | 5440 Harvest Hill Road Suite 100 Dallas TX 75230 | 8/14/2019 | 174,256.34 | Professional Services |
| Intex Solutions, Inc. | Accounts Receivable 110 A St Needham MA 02494-2807 | 8/15/2019 | 35,200.00 | Professional Services |
| AT&T | PO Box 9005 Carol Stream IL 60197-9005 | 8/15/2019 | 927.16 | Professional Services |
| ABM | PO Box 419860 Boston MA 02241-9860 | 8/15/2019 | 5,884.76 | Suppliers/Vendors |
| LinkedIn Corporation | 62228 Collections Center Drive Chicago IL 60693-0622 | 8/15/2019 | 19,719.93 | Professional Services |
| PetroCap Partners II, LP | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/15/2019 | 1,244,586.77 | Investing |
| Houlihan Lokey | 10250 Constellation Blvd, 5th Floor Attn: Accounts Receivable Los Angeles CA 90067-6802 | 8/15/2019 | 55,601.49 | Professional Services |
| Deloitte Tax LLP | PO Box 844736 Dallas TX 75284-4736 | 8/15/2019 | 137,396.00 | Professional Services |
| MacroMavens, LLC | 180 W. 20th Street Suite 1700 New York NY 10011 | 8/15/2019 | 18,816.84 | Professional Services |
| GRUBHUB for Work | PO Box 748570 Los Angeles CA 90074-8570 | 8/15/2019 | 13,823.98 | Suppliers/Vendors |
| Arris Western Corp. | 718 N Buckner #316 Dallas TX 75218 | 8/15/2019 | 1,420.63 | Professional Services |
| TRICOR BUSINESS OUTSOURCING | 80 Robinson Rd, Singapore 068898 | 8/16/2019 | 36,135.64 | Intercompany Funding |
| ROWLETT HILL, LLP | 25 Highland Park Village, Suite 100-448 Dallas TX 75205 | 8/16/2019 | 30,187.50 | Professional Services |
| CDW Direct | PO BOX 75723 CHICAGO IL 60675-5723 | 8/16/2019 | 634.00 | Suppliers/Vendors |
| Bloomberg Finance LP | PO Box 416604 Boston MA 02241-6604 | 8/16/2019 | 6,750.00 | Professional Services |
| BCA Research Inc | 1002 Sherbrooke St. W Suite 1600 Montreal Quebec H3A 3L6 | 8/16/2019 | 19,996.94 | Professional Services |
| Willis of Texas, Inc. | PO Box 731739 Dallas TX 75373-1739 | 8/16/2019 | 5,754.18 | Insurance |
| Blue Cross Blue Shield of Texas | PO Box 731428 Dallas TX 75373-1428 | 8/16/2019 | 89,965.15 | Employee Benefits |
| Thomson West | PO Box 6292 Carol Stream IL 60197-6292 | 8/22/2019 | 21,339.33 | Suppliers/Vendors |
| Duff & Phelps, LLC | DUFF & PHELPS, LLC 12595 Collection Center Drive Chicago IL 60693 | 8/23/2019 | 100,000.00 | Professional Services |
| TRICOR BUSINESS OUTSOURCING | 80 Robinson Rd, Singapore 068898 | 8/23/2019 | 50,934.56 | Intercompany Funding |
| CDW Direct | PO BOX 75723 CHICAGO IL 60675-5723 | 8/23/2019 | 97.96 | Suppliers/Vendors |
| Concur Technologies, Inc. | 62157 Collections Center Drive Chicago IL 60693 | 8/23/2019 | 4,104.85 | Professional Services |
| Blue Cross Blue Shield of Texas | PO Box 731428 Dallas TX 75373-1428 | 8/23/2019 | 91,020.22 | Employee Benefits |
| Thomson West | PO Box 6292 Carol Stream IL 60197-6292 | 8/23/2019 | 3,153.32 | Suppliers/Vendors |
| GRUBHUB for Work | PO Box 748570 Los Angeles CA 90074-8570 | 8/23/2019 | 2,150.47 | Suppliers/Vendors |
| Highland Capital Management New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/26/2019 | 150,000.00 | Intercompany Funding |
| TW Telecom Holdings, llc | PO Box 910182 Denver CO 80291-0182 | 8/26/2019 | 8,657.28 | Professional Services |

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit B - SOFA 3 [1]**

| Trading Partner Name | Trading Partner Address | Payment Date | Payment Amount | Reason for Transfer |
|---|---|---|---|---|
| TW Telecom Holdings, llc | PO Box 910182  Denver CO 80291-0182 | 8/26/2019 | 9,065.13 | Professional Services |
| HIGHLAND CREDIT OPPORTUNITIES FUND | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/27/2019 | 300,000.00 | Intercompany Funding |
| Acis Capital Management | Attn: Rakhee V. Patel, Winstead PC 500 Winstead Building Dallas TX 75201 | 8/27/2019 | 12,249.65 | Professional Services |
| Canteen Vending Services | PO Box 417632  Boston MA 02241-7632 | 8/27/2019 | 2,608.49 | Suppliers/Vendors |
| Greenwood Office Outfitters | 2951 Suffolk Drive Suite 640 Fort Worth TX 76133-1149 | 8/28/2019 | 12,877.82 | Suppliers/Vendors |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 8/29/2019 | 95,443.51 | Employee Benefits |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 8/29/2019 | 118,192.57 | Employee Benefits |
| Eagle Equity Advisors, LLC | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/29/2019 | 75,000.00 | Intercompany Funding |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/29/2019 | 55,000.00 | Intercompany Funding |
| Canteen Vending Services | PO Box 417632  Boston MA 02241-7632 | 8/29/2019 | 697.89 | Suppliers/Vendors |
| Platinum Parking | 300 Crescent Court Level G1, L8#102 Dallas TX 75201 | 8/29/2019 | 14,857.95 | Professional Services |
| Consultant | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/30/2019 | 111,212.19 | Professional Services |
| Arris Western Corp. | 718 N Buckner #316  Dallas TX 75218 | 8/30/2019 | 11,000.00 | Professional Services |
| Brasilinvest Empreendimentos e Participac?es S/A | Brazil | 9/3/2019 | 10,000.00 | Intercompany Funding |
| Crescent TC Investors LP | PO Box 841772  Dallas TX 75284-1772 | 9/3/2019 | 156,958.51 | Rent Payment |
| AT&T | PO Box 9005  Carol Stream IL 60197-9005 | 9/3/2019 | 5,690.12 | Professional Services |
| Frontier State Bank | 5100 S I-35 Service Rd, Oklahoma City, OK 73129 | 9/3/2019 | 404,238.30 | Secured Loan Payment |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 9/3/2019 | 259.77 | Professional Services |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 9/3/2019 | 295.76 | Professional Services |
| Willis of Texas, Inc. | Dallas/Ft. Worth Division PO Box 730310 Dallas TX 75373-0310 | 9/3/2019 | 21,133.38 | Insurance |
| Pershing LLC | One Pershing Plaza Attn: IBD - 15th Floor Jersey City NJ 07399 | 9/4/2019 | 500,000.00 | Investing |
| HIGHLAND CREDIT OPPORTUNITIES FUND | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/4/2019 | 500,000.00 | Intercompany Funding |
| Consultant | 2620 White Rock Rd.  Dallas TX 75214 | 9/4/2019 | 6,451.50 | Professional Services |
| Siepe Software, LLC | 5440 Harvest Hill Rd Suite 100, Dallas, TX 75230 | 9/5/2019 | 18,042.03 | Professional Services |
| HIGHLAND CAPITAL MANAGEMENT, LP | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/5/2019 | 113,788.36 | Employee Benefits |
| Pershing LLC | One Pershing Plaza Attn: IBD - 15th Floor Jersey City NJ 07399 | 9/5/2019 | 11,286.83 | Investing |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 9/5/2019 | 858,220.29 | Employee Benefits |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 9/5/2019 | 854,278.60 | Employee Benefits |
| Dow Jones & Company, Inc. | WALL ST JRNL OR BARRONS PO Box 4137 New York NY 10261-4137 | 9/5/2019 | 16,621.23 | Professional Services |
| CDW Direct | PO BOX 75723  CHICAGO IL 60675-5723 | 9/5/2019 | 3,374.19 | Suppliers/Vendors |
| Intex Solutions, Inc. | Accounts Receivable 110 A St Needham MA 02494-2807 | 9/5/2019 | 35,200.00 | Professional Services |
| Las Vegas Flamingo Holdco, LLC | Collections Account   TEXAS | 9/5/2019 | 46,536.83 | Intercompany Funding |
| GRUBHUB for Work | PO Box 748570  Los Angeles CA 90074-8570 | 9/5/2019 | 15,518.67 | Suppliers/Vendors |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 9/6/2019 | 3,573.58 | Professional Services |
| TW Telecom Holdings, llc | PO Box 910182  Denver CO 80291-0182 | 9/9/2019 | 9,138.32 | Professional Services |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 9/9/2019 | 142,884.07 | Employee Benefits |
| Eagle Equity Advisors, LLC | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/11/2019 | 40,000.00 | Intercompany Funding |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 9/12/2019 | 37,839.05 | Employee Benefits |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 9/12/2019 | 59,111.49 | Employee Benefits |
| Loews Coronado Bay Resort | 4000 Coronado Bay Road  Coronado CA 92118 | 9/12/2019 | 77,340.18 | Suppliers/Vendors |
| Harbor Yacht Clubs, LLC | 1880 Harbor Island Drive  San Diego CA 92101 | 9/12/2019 | 6,440.00 | Suppliers/Vendors |
| NYSE MARKET, INC | Box #223695  Pittsburgh PA 15251-2695 | 9/13/2019 | 8,857.74 | Professional Services |
| TRICOR BUSINESS OUTSOURCING | 80 Robinson Rd, Singapore 068898 | 9/13/2019 | 35,221.80 | Intercompany Funding |
| Markit North America Inc. | 620 8th Ave 35th floor New York NY 10018 | 9/13/2019 | 91,676.00 | Professional Services |
| CDW Direct | PO BOX 75723  CHICAGO IL 60675-5723 | 9/13/2019 | 7,387.23 | Suppliers/Vendors |
| BDO USA, LLP | 700 North Pearl Suite 2000 Dallas TX 75201 | 9/13/2019 | 8,700.00 | Professional Services |
| ABM | PO Box 419860  Boston MA 02241-9860 | 9/13/2019 | 5,884.76 | Suppliers/Vendors |
| Concur Technologies, Inc. | 62157 Collections Center Drive  Chicago IL 60693 | 9/13/2019 | 8,187.05 | Professional Services |
| Willis of Texas, Inc. | PO Box 731739  Dallas TX 75373-1739 | 9/13/2019 | 5,754.18 | Insurance |
| Reorg Research, Inc. | 1140 Broadway Ste 201 New York NY 10001 | 9/13/2019 | 93,123.35 | Professional Services |
| Sage Search Partners | 3811 Turtle Creek Blvd Suite 850 Dallas TX 75219 | 9/13/2019 | 20,000.00 | Professional Services |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 9/16/2019 | 927.16 | Professional Services |
| DLA Piper LLP US | 6225 Smith Avenue  Baltimore MD 21209 | 9/16/2019 | 200,000.00 | Professional Services |
| Lynn Pinker Cox & Hurst, L.L.P. | 2100 Ross Ave Suite 2700 Dallas TX 75201 | 9/17/2019 | 185,576.00 | Professional Services |
| Flexential Colorado Corp. | PO Box 732368  Dallas TX 75373-2368 | 9/17/2019 | 12,056.49 | Professional Services |
| Canteen Vending Services | PO Box 417632  Boston MA 02241-7632 | 9/17/2019 | 327.61 | Suppliers/Vendors |
| Platinum Parking | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/17/2019 | 15,210.80 | Professional Services |
| AT&T MOBILITY | PO BOX 6463  CAROL STREAM IL 60197-6463 | 9/19/2019 | 1,769.17 | Professional Services |
| ROWLETT HILL, LLP | 25 HIGHLAND PARK VILLAGE STE 100-448 DALLAS TX 75205 | 9/19/2019 | 23,718.75 | Professional Services |
| Affiliate Loan | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/19/2019 | 500,000.00 | Affiliate Loan |
| Siepe Services, LLC | 5440 Harvest Hill Road Suite 100 Dallas, TX 75230 | 9/19/2019 | 185,063.83 | Professional Services |
| Greyline Partners, LLC | P.O. Box 733976  Dallas TX 75373-3976 | 9/19/2019 | 11,250.00 | Professional Services |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 9/20/2019 | 77,274.56 | Employee Benefits |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 9/20/2019 | 67,658.40 | Employee Benefits |
| Affiliate Loan | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/23/2019 | 1,000,000.00 | Affiliate Loan |
| Attia Medical, PC | 5820 Oberlin Dr. Suite 205  San Diego CA 92121 | 9/23/2019 | 12,500.00 | Professional Services |
| DLA Piper LLP US | 6225 Smith Avenue  Baltimore MD 21209 | 9/23/2019 | 200,000.00 | Professional Services |
| CDW Direct | PO BOX 75723  CHICAGO IL 60675-5723 | 9/24/2019 | 3,059.50 | Suppliers/Vendors |
| HIGHLAND CREDIT OPPORTUNITIES FUND | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/25/2019 | 300,000.00 | Intercompany Funding |
| Consultant | 2620 White Rock Rd.  Dallas TX 75214 | 9/25/2019 | 8,109.75 | Professional Services |
| Cole Schotz | Court Plaza North 25 Main Street Hackensack NJ 07602-0800 | 9/25/2019 | 100,000.00 | Professional Services |
| Affiliate Loan | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/25/2019 | 900,000.00 | Affiliate Loan |
| S&P Global Market Intelligence | 33356 Collection Center Drive  Chicago IL 60693-0333 | 9/25/2019 | 368,894.61 | Professional Services |

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit B - SOFA 3 [1]**

| Trading Partner Name | Trading Partner Address | Payment Date | Payment Amount | Reason for Transfer |
|---|---|---|---|---|
| Arris Western Corp. | 718 N Buckner #316  Dallas TX 75218 | 9/25/2019 | 1,325.29 | Professional Services |
| Harbor Yacht Clubs, LLC | 1880 Harbor Island Drive  San Diego CA 92101 | 9/25/2019 | 538.75 | Suppliers/Vendors |
| ICE Data Pricing & Reference Data, LLC | PO Box 98616  Chicago IL 60693 | 9/25/2019 | 8,819.61 | Professional Services |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 9/26/2019 | 35,354.55 | Employee Benefits |
| Duff & Phelps, LLC | 2397 Paysphere Circle  Chicago IL 60674 | 9/30/2019 | 100,000.00 | Professional Services |
| HIGHLAND CREDIT OPPORTUNITIES FUND | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 200,000.00 | Intercompany Funding |
| Frontier State Bank | 5100 S I-35 Service Rd, Oklahoma City, OK 73129 | 9/30/2019 | 98,707.96 | Secured Loan Payment |
| Arris Western Corp. | 718 N Buckner #316  Dallas TX 75218 | 9/30/2019 | 11,000.00 | Professional Services |
| Professional Speaker | Koa Kai, LLC PO Box 232307 Leucadia CA 92023 | 9/30/2019 | 15,000.00 | Suppliers/Vendors |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 105,000.00 | Intercompany Funding |
| Attia Medical, PC | 5820 Oberlin Dr. Suite 205  San Diego CA 92121 | 9/30/2019 | 12,500.00 | Professional Services |
| DLA Piper LLP US | 6225 Smith Avenue  Baltimore MD 21209 | 9/30/2019 | 200,000.00 | Professional Services |
| AT&T MOBILITY | PO BOX 6463  CAROL STREAM IL 60197-6463 | 10/1/2019 | - | Professional Services |
| Employee | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/1/2019 | 13,059.43 | Bonus |
| Crescent TC Investors LP | 200 Crescent Ct Suite 250 Dallas TX 75201 | 10/1/2019 | 192,588.09 | Rent Payment |
| Frontier State Bank | 5100 S I-35 Service Rd, Oklahoma City, OK 73129 | 10/1/2019 | 128,793.00 | Secured Loan Payment |
| Bloomberg Finance LP | PO Box 416604  Boston MA 02241-6604 | 10/2/2019 | 113,095.54 | Professional Services |
| Consultant | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/2/2019 | 28,821.81 | Professional Services |
| Pachulski Stang Ziehl & Jones LLP | 10100 Santa Monica Blvd. 13th Floor Los Angeles CA 90067 | 10/2/2019 | 500,000.00 | Professional Services |
| HIGHLAND CAPITAL MANAGEMENT, LP | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/3/2019 | 114,381.18 | Employee Benefits |
| OKADA INSURANCE RABBI TRUST | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/3/2019 | 14,875.00 | Insurance |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 10/3/2019 | 309.51 | Professional Services |
| Employee | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/4/2019 | 113,104.52 | Employee Reimbursement |
| Siepe Software, LLC | 5440 Harvest Hill Rd Suite 100, Dallas, TX 75230 | 10/4/2019 | 18,042.03 | Professional Services |
| Siepe Software, LLC | 5440 Harvest Hill Rd Suite 100, Dallas, TX 75230 | 10/4/2019 | 18,042.03 | Professional Services |
| TW Telecom Holdings, llc | PO Box 910182  Denver CO 80291-0182 | 10/4/2019 | 7,710.33 | Professional Services |
| CDW Direct | PO BOX 75723  CHICAGO IL 60675-5723 | 10/4/2019 | 23,277.86 | Suppliers/Vendors |
| CDW Direct | PO BOX 75723  CHICAGO IL 60675-5723 | 10/4/2019 | 23,788.47 | Suppliers/Vendors |
| HIGHLAND CREDIT OPPORTUNITIES FUND | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/4/2019 | 500,000.00 | Intercompany Funding |
| AT&T | PO Box 9005  Carol Stream IL 60197-9005 | 10/4/2019 | 2,845.06 | Professional Services |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 10/4/2019 | 3,573.58 | Professional Services |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 10/4/2019 | 146.78 | Professional Services |
| Willis of Texas, Inc. | Dallas/Ft. Worth Division PO Box 730310 Dallas TX 75373-0310 | 10/4/2019 | 5,754.18 | Insurance |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 10/4/2019 | 109,241.27 | Employee Benefits |
| Houlihan Lokey | 10250 Constellation Blvd, 5th Floor Attn: Accounts Receivable Los Angeles CA 90067-6802 | 10/4/2019 | 55,667.91 | Professional Services |
| Ipreo Data Inc. | 421 Fayetteville Street Suite 900 Raleigh NC 27601 | 10/4/2019 | 9,500.00 | Professional Services |
| Siepe Services, LLC | 5440 Harvest Hill Road Suite 100 Dallas TX 75230 | 10/4/2019 | 182,790.68 | Professional Services |
| Hedgeye Risk Mgmt, LLC | 1 High Ridge Park 3rd Floor Stamford CT 06905 | 10/4/2019 | 25,265.10 | Professional Services |
| Spin-Off Advisors, LLC | 1327 W. Washington Blvd Ste 4-G Chicago IL 60607 | 10/4/2019 | 15,000.00 | Professional Services |
| GRUBHUB for Work | PO Box 748570  Los Angeles CA 90074-8570 | 10/4/2019 | 14,343.81 | Suppliers/Vendors |
| Flexential Colorado Corp. | PO Box 732368  Dallas TX 75373-2368 | 10/4/2019 | 24,031.79 | Professional Services |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/4/2019 | 75,000.00 | Intercompany Funding |
| DLA Piper LLP US | 6225 Smith Avenue  Baltimore MD 21209 | 10/4/2019 | 200,000.00 | Professional Services |
| Siepe Software, LLC | 5440 Harvest Hill Rd Suite 100, Dallas, TX 75230 | 10/7/2019 | 18,042.03 | Professional Services |
| Pricewaterhouse Coopers, LLP | PO BOX 952282  DALLAS TX 75395-2282 | 10/7/2019 | 24,000.00 | Professional Services |
| LAFFER ASSOCIATES | 103 Murphy Court  NASHVILLE TN 37203 | 10/7/2019 | 28,188.37 | Professional Services |
| MARKIT WSO CORPORATION | Three Lincoln Centre 5430 LBJ Frwy; STe 800 DALLAS TX 75240 | 10/7/2019 | 27,213.92 | Professional Services |
| Strategas Securities LLC | 52 Vanderbilt Ave 8th Fl New York NY 10017 | 10/7/2019 | 27,195.87 | Professional Services |
| Bloomberg Finance LP | PO Box 416604  Boston MA 02241-6604 | 10/7/2019 | 100,000.00 | Professional Services |
| Intex Solutions, Inc. | Accounts Receivable 110 A St Needham MA 02494-2807 | 10/7/2019 | 35,200.00 | Professional Services |
| BCA Research Inc | 1002 Sherbrooke St. W Suite 1600 Montreal Quebec H3A 3L6 | 10/7/2019 | 18,294.21 | Professional Services |
| Consultant | 2620 White Rock Rd.  Dallas TX 75214 | 10/7/2019 | 5,274.50 | Professional Services |
| Employee | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/7/2019 | 43,910.97 | Employee Reimbursement |
| Verity Group | PO Box 940361  Plano TX 75094-0361 | 10/7/2019 | 8,940.84 | Suppliers/Vendors |
| Canteen Vending Services | PO Box 417632  Boston MA 02241-7632 | 10/7/2019 | 30,017.35 | Suppliers/Vendors |
| ABM | PO Box 419860  Boston MA 02241-9860 | 10/7/2019 | 5,884.76 | Suppliers/Vendors |
| Greenwood Office Outfitters | 2951 Suffolk Drive Suite 640 Fort Worth TX 76133-1149 | 10/7/2019 | 4,628.62 | Suppliers/Vendors |
| Houlihan Lokey | 10250 Constellation Blvd, 5th Floor Attn: Accounts Receivable Los Angeles CA 90067-6802 | 10/7/2019 | 113,092.79 | Professional Services |
| Houlihan Lokey | 10250 Constellation Blvd, 5th Floor Attn: Accounts Receivable Los Angeles CA 90067-6802 | 10/7/2019 | 112,000.00 | Professional Services |
| Deloitte Tax LLP | PO Box 844736  Dallas TX 75284-4736 | 10/7/2019 | 142,205.00 | Professional Services |
| Deloitte Tax LLP | PO Box 844736  Dallas TX 75284-4736 | 10/7/2019 | 104,905.00 | Professional Services |
| Siepe Services, LLC | 5440 Harvest Hill Road Suite 100 Dallas TX 75230 | 10/7/2019 | 185,000.00 | Professional Services |
| GRUBHUB for Work | PO Box 748570  Los Angeles CA 90074-8570 | 10/7/2019 | 5,556.50 | Suppliers/Vendors |
| ValueScope, Inc. | 1400 Thetford Ct.  Southlake TX 76092 | 10/7/2019 | 25,000.00 | Professional Services |
| Development Specialists, Inc. | 333 South Grand Avenue Suite 4070 Los Angeles CA 90071-1544 | 10/7/2019 | 250,000.00 | Professional Services |
| Bragalone Conroy PC | Chase Tower 2200 Ross Avenue Dallas TX 75201-7924 | 10/7/2019 | 10,000.00 | Professional Services |
| Kurtzman Carson Consultants LLC | Dept CH 16639  Palatine IL 60055-6639 | 10/7/2019 | 50,000.00 | Professional Services |
| Hunton Andrews Kurth, LLP | 1445 Ross Avenue Suite 3700 Dallas TX 75202-2799 | 10/7/2019 | 156,996.86 | Professional Services |
| Liberty Life Assurance Company of Boston - Group Benefits | PO Box 2658  Carol Stream IL 60132-2658 | 10/7/2019 | 15,928.25 | Employee Benefits |
| ICE Data Pricing & Reference Data, LLC | PO Box 98616  Chicago IL 60693 | 10/7/2019 | 5,879.74 | Professional Services |
| Refinitiv US LLC | 3 Times Square  New York NY 10036 | 10/7/2019 | 12,823.98 | Professional Services |
| Deloitte Tax LLP | PO Box 844736  Dallas TX 75284-4736 | 10/8/2019 | 128,557.00 | Professional Services |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 10/10/2019 | 3,573.58 | Professional Services |

Case 19-34054-sgj11 Doc 2288 Filed 05/12/21 Entered 05/12/21 10:22:17 Page 1 of 4

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit B - SOFA 3 [1]**

| Trading Partner Name | Trading Partner Address | Payment Date | Payment Amount | Reason for Transfer |
|---|---|---|---|---|
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 10/10/2019 | 161,497.04 | Employee Benefits |
| Cole Schotz | Court Plaza North 25 Main Street Hackensack NJ 07602-0800 | 10/10/2019 | 34,894.42 | Professional Services |
| Houlihan Lokey | 10250 Constellation Blvd, 5th Floor Attn: Accounts Receivable Los Angeles CA 90067-6802 | 10/10/2019 | 1,092.79 | Professional Services |
| Snell & Wilmer LLP | One Arizona Center 400 E. Van Buren, Suite 1900 Phoenix AZ 85004-2202 | 10/10/2019 | 19,119.65 | Professional Services |
| DLA Piper LLP US | 6225 Smith Avenue  Baltimore MD 21209 | 10/10/2019 | 1,115,000.00 | Professional Services |
| ASW Law Limited | Crawford House 50 Cedar Avenue Hamilton  HM11 | 10/10/2019 | 10,845.00 | Professional Services |
| Carey Olsen | PO Box 10008 Willow House Grand Cayman  KY1-1001 | 10/10/2019 | 48,595.00 | Professional Services |
| Canteen Vending Services | PO Box 417632  Boston MA 02241-7632 | 10/10/2019 | 8,656.51 | Suppliers/Vendors |
| Platinum Parking | 300 Crescent Court Level G1, L8#102 Dallas TX 75201 | 10/10/2019 | 33,007.19 | Professional Services |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 10/11/2019 | 34,454.43 | Employee Benefits |
| Cole Schotz | Court Plaza North 25 Main Street, PO Box 800 Hackensack NJ 07602-0800 | 10/11/2019 | 25,000.00 | Professional Services |
| Pershing LLC | One Pershing Plaza Attn: IBD - 15th Floor Jersey City NJ 07399 | 10/15/2019 | 17,745.66 | Investing |
| CBIZ Valuation Group, Inc. | 3030 LBJ Freeway, Ste 1650  Dallas TX 75234 | 10/15/2019 | 12,400.00 | Professional Services |
| Status Labs.com | 151 South 1st Suite 100 Austin TX 78704 | 10/15/2019 | 18,000.00 | Professional Services |
| Discovery Benefits [2] | 4321 20th Ave. S. Fargo, ND 58103 | Various | 36,473.83 | FSA Transfers |
| Expense Reimbursements [3] | 300 Crescent Court, Suite 700 Dallas, TX 75201 | Various | 557,471.14 | Expense reimbursements |
| **Total** | | | $  23,255,006.86 | |

*[1] Does not include activity in Jefferies Prime Broker account.*
*[2] Discovery benefits are the daily FSA amounts paid for healthcare related charges*
*[3] Expense reimbursements are not tracked in The Debtor's accounting software at detail requested*

Case 19-34054-sgj11 Doc 2284 Filed 12/23/19 Entered 12/23/19 10:22:17 Page 1 of 94

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit C - SOFA #4**

| Trading Partner | Trading Partner Address | Payment Date | Payment Amount |
|---|---|---|---|
| Acis Capital Management | Attn: Rakhee V. Patel, Winstead PC 500 Winstead Building Dallas TX 75201 | 8/27/2019 | 12,249.65 |
| Brasilinvest Empreendimentos e Participacoes S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/26/2018 | 10,000.00 |
| Brasilinvest Empreendimentos e Participacoes S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/1/2018 | 10,000.00 |
| Brasilinvest Empreendimentos e Participacoes S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/3/2018 | 10,000.00 |
| Brasilinvest Empreendimentos e Participacoes S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/2/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participacoes S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/25/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participacoes S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/1/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participacoes S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/1/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participacoes S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/3/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participacoes S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/1/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participacoes S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/3/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participacoes S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/1/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participacoes S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/1/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participacoes S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/3/2019 | 10,000.00 |
| Dondero Insurance Rabbi Trust | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/2/2019 | 36,580.00 |
| Dugaboy Investment Trust | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/19/2018 | 9,246.96 |
| Dugaboy Investment Trust | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/28/2019 | 6,960.38 |
| Eagle Equity Advisors, LLC | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/13/2019 | 155,000.00 |
| Eagle Equity Advisors, LLC | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/29/2019 | 75,000.00 |
| Eagle Equity Advisors, LLC | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/11/2019 | 40,000.00 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/31/2018 | 41.76 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/15/2018 | 70.73 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/30/2018 | 13.96 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/14/2018 | 50.74 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/31/2018 | 26.84 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/15/2019 | 56.68 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/31/2019 | 58.06 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/15/2019 | 183.46 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/28/2019 | 18.89 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/15/2019 | 28.88 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/29/2019 | 105.11 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/15/2019 | 23.70 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/30/2019 | 34.79 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/15/2019 | 110.76 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/31/2019 | 31.76 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/14/2019 | 43.23 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/28/2019 | 20.56 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/15/2019 | 87.13 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/31/2019 | 38.96 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/15/2019 | 19.48 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/30/2019 | 45.08 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/13/2019 | 66.22 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 10.82 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/15/2019 | 115.75 |
| Governance Re Ltd | Wellesley House; 2nd Floor 90 Pitts Bay Road Pembroke HM 08 | 6/14/2019 | 300,000.00 |
| HCRE Partners, LLC | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/25/2019 | 900,000.00 |
| Highland Capital Management Fund Advisors | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/2/2019 | 2,400,000.00 |
| Highland Capital Management Fund Advisors | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/3/2019 | 5,000,000.00 |
| Highland Capital Management Korea | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/6/2018 | 1,200,000.00 |
| Highland Capital Management Korea | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/17/2019 | 1,100,000.00 |
| Highland Capital Management Korea | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/8/2019 | 630,000.00 |
| Highland Capital Management Korea | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/19/2019 | 630,000.00 |
| Highland Capital Management Latin America | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/3/2019 | 1,350,000.00 |
| Highland Capital Management Latin America | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/28/2019 | 10,000.00 |

Case 19-34054-sgj11 Doc 2284 Filed 05/24/21 Entered 05/24/21 10:22:17 Page 2 of 194

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit C - SOFA #4**

| Trading Partner | Trading Partner Address | Payment Date | Payment Amount |
|---|---|---|---|
| Highland Capital Management Services | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/29/2019 | 400,000.00 |
| Highland Capital Management Services | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/26/2019 | 150,000.00 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/26/2018 | 65,000.00 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/30/2018 | 5,864.10 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/13/2018 | 3,942.72 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/28/2018 | 3,848.70 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/12/2018 | 3,744.31 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/27/2018 | 4,176.47 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/11/2019 | 3,954.93 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/29/2019 | 4,703.71 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/5/2019 | 50,000.00 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/5/2019 | 150,000.00 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/26/2019 | 50,000.00 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/11/2019 | 55,000.00 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/1/2019 | 25,000.00 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/26/2019 | 150,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/27/2019 | 100,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/29/2019 | 25,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/3/2019 | 15,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/15/2019 | 50,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/28/2019 | 90,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/29/2019 | 55,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 105,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/4/2019 | 75,000.00 |
| Highland Select Equity Fund | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/5/2018 | 171,000.00 |
| Highland Select Equity Fund | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/18/2019 | 3,000,000.00 |
| Highland Select Equity Fund | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/2/2019 | 100,000.00 |
| Highland Select Equity Fund | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/14/2019 | 255,000.00 |
| Highland Select Equity Fund | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/22/2019 | 1,500,000.00 |
| Highland Select Equity Fund | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/30/2019 | 350,000.00 |
| Hunter Mountain Investment Trust | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/19/2018 | 4,930,722.50 |
| Hunter Mountain Investment Trust | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/28/2019 | 3,711,456.47 |
| James Dondero | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/28/2019 | 3,750,000.00 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/31/2018 | 8,986.25 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/15/2018 | 65,078.25 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/14/2018 | 115,481.36 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/31/2018 | 548.19 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/15/2019 | 96,786.37 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/31/2019 | 38,628.04 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/15/2019 | 42,434.77 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/28/2019 | 19,062.59 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/15/2019 | 50,771.13 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/29/2019 | 21,934.60 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/15/2019 | 60,190.72 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/30/2019 | 7,164.24 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/15/2019 | 89,256.54 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/31/2019 | 38,804.42 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/14/2019 | 82,710.42 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/28/2019 | 7,604.98 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/15/2019 | 47,005.97 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/31/2019 | 748.07 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/15/2019 | 85,058.51 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/30/2019 | 12,713.97 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/13/2019 | 56,762.57 |

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit C - SOFA #4**

| Trading Partner | Trading Partner Address | Payment Date | Payment Amount |
|---|---|---|---|
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 24,497.96 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/15/2019 | 32,977.48 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/31/2018 | 1,341.26 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/15/2018 | 164.01 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/30/2018 | 61.54 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/31/2018 | 2,378.81 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/31/2019 | 285.54 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/28/2019 | 876.87 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/15/2019 | 267.99 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/29/2019 | 112.22 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/30/2019 | 160.50 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/15/2019 | 144.02 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/14/2019 | 688.48 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/28/2019 | 48.54 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/15/2019 | 74.95 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/31/2019 | 153.81 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/30/2019 | 217.72 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 3,615.11 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/15/2019 | 5,644.08 |
| Maples & Calder | Ugland House Po Box 309Gt; S Church St George Town Grand Cayman | 12/7/2018 | 6,780.65 |
| Maples & Calder | Ugland House Po Box 309Gt; S Church St George Town Grand Cayman | 12/12/2018 | 17,215.19 |
| Maples & Calder | Ugland House Po Box 309Gt; S Church St George Town Grand Cayman | 1/4/2019 | 95,798.38 |
| Maples & Calder | Ugland House Po Box 309Gt; S Church St George Town Grand Cayman | 1/10/2019 | 2,600.00 |
| Maples & Calder | Ugland House Po Box 309Gt; S Church St George Town Grand Cayman | 3/7/2019 | 2,453.66 |
| Maples & Calder | Ugland House Po Box 309Gt; S Church St George Town Grand Cayman | 9/16/2019 | 5,218.40 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,600.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,500.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,500.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,600.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,600.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,500.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,500.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,500.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,500.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 8,876.22 |

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit C - SOFA #4**

| Trading Partner | Trading Partner Address | Payment Date | Payment Amount |
|---|---|---|---|
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 8,876.22 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/01 | 1,300.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/04 | 3,450.68 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/04 | 3,450.68 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/05 | 1,777.77 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/05 | 1,777.77 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/05 | 1,777.77 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/05 | 1,777.77 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/05 | 1,777.77 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/05 | 1,777.77 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/31/2018 | 68.12 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/31/2018 | 2,793.63 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/15/2019 | 28,862.62 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/15/2019 | 1,174.32 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/15/2019 | 740.40 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/29/2019 | 10,809.37 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/15/2019 | 4,485.01 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/15/2019 | 3,584.31 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/14/2019 | 6,121.00 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/15/2019 | 2,008.15 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/15/2019 | 139.27 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/30/2019 | 675.80 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/13/2019 | 10,961.53 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/15/2019 | 7,312.69 |
| NexPoint Advisors, LP | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/19/2019 | 500,000.00 |
| NexPoint Advisors, LP | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/23/2019 | 1,000,000.00 |
| Okada Insurance Rabbi Trust | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/3/2019 | 14,875.00 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/15/2018 | 1,295.64 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/31/2018 | 5,149.90 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/15/2019 | 59.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/15/2019 | 102.32 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/29/2019 | 59.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/30/2019 | 59.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/15/2019 | 364.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/28/2019 | 59.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/15/2019 | 59.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/30/2019 | 205,787.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 59.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/15/2019 | 59.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/15/2019 | 113,104.52 |
| Strand Advisors | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/19/2018 | 12,423.44 |
| Strand Advisors | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/28/2019 | 9,351.38 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/31/2018 | 419.21 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/14/2018 | 5,024.00 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/31/2019 | 355.30 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/15/2019 | 529.77 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/30/2019 | 4,185.33 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/15/2019 | 589.52 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/31/2019 | 480.00 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/28/2019 | 1,591.54 |

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit C - SOFA #4**

| Trading Partner | Trading Partner Address | Payment Date | Payment Amount |
|---|---|---|---|
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/15/2019 | 125.00 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 28.00 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/15/2019 | 2,232.89 |
| **Total** | | | **36,608,252.91** |

Refer to SOFA 30 and Exhibit G for other transfers.

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit D - SOFA 7**

| Case Title | Case Number | Nature of Case | Court Name | Court Address | Status of case |
|---|---|---|---|---|---|
| Duff & Phelps, LLC v. Highland Capital Management, L.P. | Index No. 653813/2019 | Claim for breach of contract and unjust enrichment for failure to pay pursuant to a Letter of Engagement and accompanying Terms and Conditions. | Supreme Court of the State of New York, County of New York | 60 Centre St, New York, NY 10007 | Concluded |
| Hamilton Partners, L.P. v. Highland Capital Management, L.P. and Joseph Furlong | Cause No. 6547 | Allegedly improper restructuring of American Home Patient | Court of Chancery of the State of Delaware | 34 The Circle Georgetown, DE 19947 | Concluded |
| In re: Acis Capital Management, L.P. (Case No. 18-30264-SGJ-11), Acis Capital Management GP, LLC (Case No. 18-30265-SGJ-11) as Debtors. Robin Phelan, Chapter 11 Trustee v. Highland Capital Management, L.P., Highland CLO Funding, Ltd. f/k/a Acis Loan Funding, Ltd., CLO Holdco, Ltd., Neutra, Ltd., Acis CLO 2014-3 Ltd., Acis CLO 2014-4 Ltd., Acis CLO 2014-5 Ltd., Acis CLO 2015-6 Ltd., Acis CLO 2014-3 LLC, Acis CLO 2014-4 LLC, Acis CLO 2014-5 LLC, and Acis CLO 2015-6 LLC | Case No. 18-03212-SGJ | Chapter 11 Trustee, on behalf of Debtors, claimed violation of TRO, preliminary injunction, and fraudulent conveyance. | United State Bankruptcy Court for the Northern District of Texas, Dallas Division | George Mahon Federal Building 1205 Texas Ave, Rm 306 Lubbock, TX 79401-4002 | Pending |
| McKool Smith P.C. vs. Highland Capital Management, L.P. | JAMS No.: 1310024517 | Claim for breach of contract pursuant to Crusader Retention Agreement, Terry Retention Agreement, UBS Retention Agreement, and payment plan. | N/A | N/A | Pending |
| NWCC, LLC v. Highland CLO Management, LLC; Highland Capital Management, L.P.; Acis CLO 2014-3 Ltd.; Highland CLO 2014-3R Ltd.; Highland CLO 2014-3R LLC; Highland HCF Advisor, Ltd., as Trustee for Highland CLO Trust; Highland CLO Management Holdings, L.P.; Highland CLO Management GP, LLC; and Highland HCF Advisor, Ltd. | Case No. 654195/2018 | Claim for breach of contract for failure to pay pursuant to Master Repurchase Agreement. | Supreme Court of the State of New York, County of New York | 60 Centre St, New York, NY 10007 | Pending |
| Patrick Daugherty v. Highland Capital Management, L.P., Highland Employee Retention Assets, LLC, Highland ERA Management, LLC, and James Dondero | No. 2017-0488-SG | Claim for collection of judgment against Highland Employee Retention Assets, LLC ("HERA")and allegation of improper transfer of assets from HERA to other Defendants | Court of Chancery of the State of Delaware | 34 The Circle Georgetown, DE 19947 | Pending |
| Redeemer Committee of the Highland Crusader Fund (acting through its members, (1) Grosvenor Capital Management, L.P., (2) FRM Investment Management Limited, (3) Concord Management, LLC, (4) Baylor University, (5) FIX Asset Management, (6) The United States Army Air Force Exchange Services) vs. Highland Capital Management, L.P. | Cause 2019 No. 332 | Motion to enforce Crusader Arbitration Award | Supreme Court of Bermuda | 2nd floor, Government Administration Building 30 Parliament Street Hamilton HM12 Bermuda | Pending |
| Redeemer Committee of the Highland Crusader Fund (acting through its members, (1) Grosvenor Capital Management, L.P., (2) FRM Investment Management Limited, (3) Concord Management, LLC, (4) Baylor University, (5) FIX Asset Management, (6) The United States Army Air Force Exchange Services) vs. Highland Capital Management, L.P. | Cause 153 of 2019 | Motion to enforce Crusader Arbitration Award | Grant Court of the Cayman Islands Financial Services Division | P.O. Box 495 Grand Cayman KY1-1106 Cayman Islands | Pending |
| Redeemer Committee of the Highland Crusader Fund v. Highland Capital Management, L.P. | No. 01-16-002-6927 | Injunctive relief and damages sought related to wind down of legacy hedge fund from the 2008 financial crisis. | N/A | N/A | Concluded |
| Redeemer Committee of the Highland Crusader Fund v. Highland Capital Management, L.P. | No. 12533-VCG | Injunctive relief and declaratory judgment related to wind down of legacy hedge fund from the 2008 financial crisis. | Court of Chancery of the State of Delaware | 34 The Circle Georgetown, DE 19947 | Pending |
| UBS Securities LLC and UBS AG, London Branch v. Highland Capital Management, L.P., Highland Special Opportunities Holding Company, Highland CDO Opportunity Master Fund, L.P. Highland Financial Partners, L.P., Highland Credit Strategies Fund, Highland Crusader Offshore Partners, L.P., Highland Credit Opportunities CDO, L.P. and Strand Advisors, Inc. | Case No. 650097/2009 | Plaintiff alleges that HCMLP engaged in fraudulent transfers and breached its duty of good faith in fair dealing in managing the obligations of its funds. | Supreme Court of the State of New York, County of New York | 60 Centre St, New York, NY 10007 | Pending |
| Highland Capital Management, L.P. v. Joshua Terry | Case No. DC-16-11396 | Employee Terry was terminated for cause. Highland filed suit for return of Highland's confidential information and other counterclaims. Terry has filed counterclaims for conversion and defamation. | 162nd District Court of Dallas County, Texas | 00 Commerce Street, 7th Floor New Tower, Dallas, TX 75202 | Pending |

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit E - SOFA #9**

| Vendor | Amount | Expense Type | Date |
|--------|-------:|--------------|------|
| B&H Photo | $ 7,000.00 | Business Gifts | Feb 22, 2019 |
| Competitive Cyclist | 5,000.00 | Business Gifts | Feb 22, 2019 |
| REI | 3,009.95 | Business Gifts | Feb 22, 2019 |
| The Family Place | 4,500.00 | Business Gifts | Jan 11, 2019 |
| Neiman Marcus | 10,000.00 | Business Gifts | Jan 29, 2019 |
| Nordstrom | 9,000.00 | Business Gifts | Jan 29, 2019 |
| Neiman Marcus | 2,800.00 | Business Gifts | Aug 10, 2018 |
| Barney's New York | 3,015.00 | Business Gifts | Dec 27, 2017 |
| Etro Store | 1,710.35 | Business Gifts | Dec 27, 2017 |
| Sutterfly | 1,627.64 | Business Gifts | Jun 26, 2019 |
| B&H Video | 5,015.00 | Business Gifts | Oct 25, 2017 |
| Competitive Cyclist | 5,000.00 | Business Gifts | Oct 25, 2017 |
| Nordstrom | 5,000.00 | Business Gifts | Oct 25, 2017 |
| REI | 5,000.00 | Business Gifts | Oct 25, 2017 |
| JD | 5,000.00 | Business Gifts | Jan 29, 2019 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | 7,508.95 | Business Gifts | Dec 12, 2018 |
| Dallas Childrens Advocacy | 17,500.00 | Charitable Contributions | Jan 11, 2019 |
| Political Contribution | 20,000.00 | Charitable Contributions | May 13, 2019 |
| Political Contribution | 30,000.00 | Charitable Contributions | May 29, 2019 |
| NORTHPARK CENTER | 1,230.00 | Gift/Awards | Apr 26, 2019 |
| Kroger | 1,483.30 | Gift/Awards | Apr 26, 2019 |
| Total Wine | 1,125.76 | Gift/Awards | Feb 13, 2018 |
| Costco | 2,168.86 | Gift/Awards | Feb 13, 2019 |
| Apple | 4,000.00 | Gift/Awards | Feb 26, 2018 |
| B&H Photo | 3,000.00 | Gift/Awards | Feb 26, 2018 |
| Competetive Cyclist | 5,000.00 | Gift/Awards | Feb 26, 2018 |
| Nordstrom | 1,350.00 | Gift/Awards | Feb 26, 2018 |
| Nordstrom | 4,650.00 | Gift/Awards | Feb 26, 2018 |
| Nordstrom | 1,250.00 | Gift/Awards | Feb 26, 2018 |
| Nordstrom | 3,750.00 | Gift/Awards | Mar 13, 2019 |
| Nordstrom | 7,010.00 | Gift/Awards | Mar 13, 2019 |
| REI | 4,009.95 | Gift/Awards | Mar 13, 2019 |
| Neiman Marcus | 2,075.00 | Gift/Awards | Mar 27, 2018 |
| AMAZON.COM*MB5OG1ZC1AMZN.COM/BI 1T5SDTP0V6I MERCHA | 1,000.00 | Gift/Awards | Feb 13, 2019 |
| AMERICAN AIRLINES XXXXX-XXX-XXX XXXX0103 AA.COM | 1,000.00 | Gift/Awards | Feb 13, 2019 |
| BABY.COM EGIFT CRD XXX-XXX-1977 9XXX9375PRC GIFT C | 1,000.00 | Gift/Awards | Feb 13, 2019 |
| WALMART.COM XXX-XXX-6546 AR WMZVYLNO0YU RETAIL | 1,000.00 | Gift/Awards | Feb 13, 2019 |
| AMAZON.COM*M01N33JX2AMZN.COM/BI 43WY9S9CUK8 MERCHA | 1,000.00 | Gift/Awards | Dec 12, 2018 |
| AMAZON.COM*MX1474TL1AMZN.COM/BI 594WNOFOQ54 MERCHA | 1,000.00 | Gift/Awards | Dec 12, 2018 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | 68,280.95 | Gift/Awards | Dec 12, 2018 |
| WLLMS-SONMA CSTR GFTXXX-XXX-197 9XXX3699QOK GIFT C | 1,000.00 | Gift/Awards | Dec 12, 2018 |
| AAA INNOVATIONS AAA NORWOOD NJ XXXXXXX8353 NON-DUR | 4,558.75 | Gift/Awards | Jan 11, 2019 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | 3,508.95 | Gift/Awards | Jan 11, 2019 |
| HOTELS.COM GIFT CARDXXX-XXX-197 9XXX8780BOK GIFT C | 1,000.00 | Gift/Awards | Jan 11, 2019 |
| WLLMS-SONMA CSTR GFTXXX-XXX-197 9XXX6040GOK GIFT C | 1,000.00 | Gift/Awards | Jan 11, 2019 |
| AMEX HILTON GIFT CARXXX-XXX-058 XXXX4162 BOL X0285 | 5,008.95 | Gift/Awards | Feb 13, 2018 |
| WLLMS-SONMA CSTR GFTXXX-XXX-197 4XXX2954P90 GIFT C | 1,000.00 | Gift/Awards | Nov 10, 2017 |
| CS_*BABIESRUSGIFTCARXXX-XXX-197 4XXX6083G9J GIFT C | 1,000.00 | Gift/Awards | Dec 13, 2018 |
| Four Seasons 8XX7828WILMINGTON XXXXXXXXXX XXXXX3 | 5,014.19 | Gift/Awards | Dec 13, 2017 |
| RITZ CARLTON GIFT CAMIDVALE UT XXXXXXXX XXX-XXX-8 | 1,001.00 | Gift/Awards | Dec 13, 2017 |
| AMAZON.COM AMZN.COM/BILL WA 4HQ4J0AKNMQ MERCHANDIS | 1,000.00 | Gift/Awards | Jan 10, 2018 |
| AMEX GIFT CARDS XXX-XXX-0582 NY OPWBXXX0386BOL XX2 | 7,008.95 | Gift/Awards | Mar 13, 2018 |
| Four Seasons 8XX7828WILMINGTON XXXXXXXXXX XXXXX3 | 1,014.93 | Gift/Awards | Mar 13, 2018 |

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit E - SOFA #9**

| Vendor | Amount | Expense Type | Date |
|---|---|---|---|
| AMEX GIFT CARDS XXX-XXX-0582 NY OPWBXXX3116BOL XX2 | 3,520.80 | Gift/Awards | Apr 11, 2018 |
| Four Seasons 8XX7828WILMINGTON XXXXXXXXXX XXXXX3 | 1,014.93 | Gift/Awards | Apr 11, 2018 |
| MARRIOTT GIFT CARDS MIDVALE UT XXXXXXXXX XXX-XXX-4 | 5,010.95 | Gift/Awards | May 10, 2018 |
| AMAZON.COM AMZN.COM/BILL WA 16B3JYYTOHX MERCHANDIS | 1,000.00 | Gift/Awards | Jun 12, 2018 |
| Four Seasons 8XX7828WILMINGTON XXXXXXXXXX XXXXX3 | 1,014.93 | Gift/Awards | Jun 12, 2018 |
| Four Seasons 8XX7828WILMINGTON XXXXXXXXXX XXXXX3 | 5,014.93 | Gift/Awards | Jun 12, 2018 |
| Four Seasons 8XX7828WILMINGTON XXXXXXXXXX XXXXX3 | 1,000.00 | Gift/Awards | Jun 12, 2018 |
| HOTELS.COM GIFT CARDXXX-XXX-197 4XXX5955KHG GIFT C | 1,000.00 | Gift/Awards | Jun 12, 2018 |
| AMAZON.COM AMZN.COM/BILL WA 4C5DKHDW6TK MERCHANDIS | 1,000.00 | Gift/Awards | Jul 11, 2018 |
| AMAZON.COM AMZN.COM/BILL WA 5AK74J5T9LC MERCHANDIS | 1,000.00 | Gift/Awards | Jul 11, 2018 |
| HOTELS.COM GIFT CARDXXX-XXX-197 4XXX5284CIM GIFT C | 1,000.00 | Gift/Awards | Jul 11, 2018 |
| MARRIOTT GIFT CARDS MIDVALE UT XXXXXXXXX XXX-XXX-4 | 1,001.00 | Gift/Awards | Jul 11, 2018 |
| WLLMS-SONMA CSTR GFTXXX-XXX-197 4XXX6255NHS GIFT C | 1,000.00 | Gift/Awards | Jul 11, 2018 |
| AMAZON.COM AMZN.COM/BILL WA 3NRIPESL5H2 MERCHANDIS | 1,000.00 | Gift/Awards | Aug 10, 2018 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | 3,522.85 | Gift/Awards | Aug 10, 2018 |
| HOTELS.COM GIFT CARDXXX-XXX-197 4XXXX8611J4 GIFT C | 1,000.00 | Gift/Awards | Aug 10, 2018 |
| HOTELS.COM GIFT CARDXXX-XXX-197 8XXX5959YIW GIFT C | 1,000.00 | Gift/Awards | Aug 10, 2018 |
| MARRIOTT GIFT CARDS MIDVALE UT XXXXXXXXX XXX-XXX-4 | 5,001.00 | Gift/Awards | Aug 10, 2018 |
| AMAZON.COM*MT7OW87B1AMZN.COM/BI 1XJ571A2WYA MERCHA | 1,000.00 | Gift/Awards | Nov 13, 2018 |
| WLLMS-SONMA CSTR GFTXXX-XXX-197 9XXX5657XMX GIFT C | 1,000.00 | Gift/Awards | Nov 13, 2018 |
| CS *HOTELS.COM GC XXX-XXX-1977 4XXX3604JRQ GIFT CA | 1,000.00 | Gift/Awards | Mar 13, 2019 |
| HILTON GC XXX XXX-XXXXX-XXX-XXX XX0847 GIFTCARDS F | 1,008.95 | Gift/Awards | Mar 13, 2019 |
| HOTELS.COM GIFT CARDXXX-XXX-197 4XXX1517JRH GIFT C | 1,000.00 | Gift/Awards | Mar 13, 2019 |
| AMAZON.COM*MW2NP75Y2AMZN.COM/BI 1ZRLAH1KV0Q MERCHA | 1,000.00 | Gift/Awards | May 13, 2019 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | 3,515.95 | Gift/Awards | May 13, 2019 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | 3,520.85 | Gift/Awards | Jun 12, 2019 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | 3,515.95 | Gift/Awards | Jul 11, 2019 |
| ANSE CHASTANET - RESSOUFRIERE LC XXXXXXXXX XXX-XX | 5,000.00 | Gift/Awards | Sep 11, 2018 |
| Four Seasons 8XX7828WILMINGTON XXXXXXXXXX XXXXX3 | 5,014.93 | Gift/Awards | Sep 11, 2018 |
| MARRIOTT GIFT CARDS MIDVALE UT XXXXXXXXX XXX-XXX-4 | 1,010.95 | Gift/Awards | Sep 11, 2018 |
| RITZ CARLTON GIFT CAMIDVALE UT XXXXXXXXX XXX-XXX-8 | 1,010.95 | Gift/Awards | Sep 11, 2018 |
| WLLMS-SONMA CSTR GFTXXX-XXX-197 4XXXX6218KG GIFT C | 1,000.00 | Gift/Awards | Sep 11, 2018 |
| AMAZON.COM*MT5FG6LG0AMZN.COM/BI 2CWA16B0JP6 MERCHA | 2,000.00 | Gift/Awards | Oct 11, 2018 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | 7,529.80 | Gift/Awards | Oct 11, 2018 |
| MARRIOTT GIFT CARDS MIDVALE UT XXXXXXXXX XXX-XXX-4 | 5,000.00 | Gift/Awards | Oct 4, 2019 |
| Hotels.com | 1,000.00 | Gift/Awards | Jul 11, 2019 |
| Buy Buy Baby | 1,000.00 | Gift/Awards | Aug 13, 2019 |
| William Sonoma | 1,000.00 | Gift/Awards | Aug 13, 2019 |
| Amazon.com | 1,000.00 | Gift/Awards | Sep 10, 2019 |
| AMAZON.COM*MA02T1UW2AMZN.COM/BI 59I475TIIR3 MERCHA | 1,000.00 | Gift/Awards | Sep 10, 2019 |
| CS *BUYBUYBABY EGTFCXXX-XXX-197 4XXX9435NZ1 GIFT C | 1,000.00 | Gift/Awards | Sep 10, 2019 |
| CS *HOTELS.COM GC XXX-XXX-1977 4XXX4055UYZ GIFT CA | 1,000.00 | Gift/Awards | Sep 10, 2019 |
| MARRIOTT GIFT CARDS MIDVALE UT XXXXXXXXX XXX-XXX-4 | 1,000.00 | Gift/Awards | Sep 10, 2019 |
| MARRIOTT GIFT CARDS MIDVALE UT XXXXXXXXX XXX-XXX-4 | 1,000.00 | Gift/Awards | Sep 10, 2019 |
| CS *HOTELS.COM GC XXX-XXX-1977 9XXX0073VU5 GIFT CA | 2,000.00 | Gift/Awards | May 13, 2019 |
| CS *HOTELS.COM GC XXX-XXX-1977 9XXX9190AU5 GIFT CA | 1,000.00 | Gift/Awards | May 13, 2019 |
| CS *HOTELS.COM GC XXX-XXX-1977 9XXXX7723U5 GIFT CA | 2,000.00 | Gift/Awards | May 13, 2019 |
| CS *HOTELS.COM GC XXX-XXX-1977 4XXXX2756TI GIFT CA | 1,000.00 | Gift/Awards | Apr 11, 2019 |
| Beard Supply | 1,623.75 | Gift/Awards | Jan 10, 2018 |
| Patagonia | 2,685.71 | Gift/Awards | Jan 26, 2018 |
| Political Contribution | 25,000.00 | Gift/Charity | Jun 30, 2018 |
| Political Contribution | 25,000.00 | Gift/Charity | Jun 30, 2019 |
| **Total** | **$ 445,725.61** | | |

Highland Capital Management LP
Case # 19-34054-SGJ
Exhibit F - SOFA 25

| Name | Relationship | Address | EIN | Description of Business | Date of Creation | Date of Termination (if applicable) |
|---|---|---|---|---|---|---|
| Aberdeen Loan Funding, Ltd. | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | N/A | CLO Fund | 12/14/2006 | |
| Brentwood CLO, Ltd. | IMA | MaplesFS - PO Box 1093, Grand Cayman, KY1-1102, Cayman Islands | 98-0524481 | CLO Fund | 5/21/2006 | |
| Bristol Bay Funding Ltd. | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0418113 | CLO Fund | 11/18/2003 | |
| Eastland CLO, Ltd. | IMA | Elian Fiduciary Services (Cayman) Limted - 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0550088 | CLO Fund | 3/31/2006 | |
| Gleneagles CLO, Ltd. | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 2/15/2005 | |
| Grayson CLO, Ltd. | IMA | Elian Fiduciary Services (Cayman) Limted - 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0522566 | CLO Fund | 2/7/2006 | |
| Greenbriar CLO, Ltd. | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 10/24/2007 | |
| Highland CDO Holding Company | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0527935 | HFP sub | 1/24/2006 | |
| Highland CDO Opportunity Fund, L.P. | IMA | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-3899941 | Hedge fund | 11/3/2005 | Terminated |
| Highland CDO Opportunity Fund, Ltd. | IMA | MQ Services Ltd, Victoria House, 31 Victoria Street, Hamilton HM10, Bermuda | N/A | Hedge fund | 5/8/2002 | Terminated |
| Highland CDO Opportunity Master Fund, L.P. | IMA | MQ Services Ltd, Victoria House, 31 Victoria Street, Hamilton HM10, Bermuda | 98-0520689 | Hedge fund | 10/31/2005 | Terminated |
| Highland Credit Opportunities CDO, Ltd. | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0512429 | Hedge fund | 11/1/2005 | |
| Highland Credit Opportunities Japanese Feeder Sub-Trust | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | N/A | Hedge fund | 8/22/2007 | |
| Highland Credit Strategies Fund, L.P. | IMA | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 86-1147211 | Hedge fund | 8/2/2005 | |
| Highland Credit Strategies Fund, Ltd. | IMA | MQ Services Ltd, Victoria House, 31 Victoria Street, Hamilton HM10, Bermuda | 98-0466202 | Hedge fund | 8/8/2005 | |
| Highland Credit Strategies Master Fund, L.P. | IMA | MQ Services Ltd, Victoria House, 31 Victoria Street, Hamilton HM10, Bermuda | 98-0466203 | Hedge fund | 8/19/2005 | |
| Highland Dynamic Income Fund, L.P. (fka Highland Capital Loan Fund, L.P.) | IMA | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 46-2123634 | Hedge fund | 2/25/2013 | |
| Highland Dynamic Income Fund, Ltd. (fka Highland Loan Fund, Ltd.) | IMA | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | N/A | Hedge fund | 2/26/2013 | |
| Highland Dynamic Income Master Fund, L.P. (fka Highland Loan Master Fund, L.P.) | IMA | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1169838 | Hedge fund | 2/26/2013 | |
| Highland Financial Corp. | IMA - terminated | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-4392555 | HFP sub | 2/28/2006 | |
| Highland Flexible Income UCITS Fund | IMA | 23 St. Stephen's Green, Dblin 2, Ireland | N/A | Separate account | 6/7/2018 | |
| Highland Legacy Limited | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 7/6/1999 | |
| Highland Loan Funding V, Ltd. | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 2/5/2001 | |
| Highland Multi Strategy Credit Fund, L.P. (fka Highland Credit Opportunities Fund, L.P., fka Highland Credit Opportunities CDO, L.P.) | IMA | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-3874256 | Hedge fund | 12/1/2005 | |
| Highland Multi Strategy Credit Fund, Ltd. (fka Highland Credit Opportunities Fund, Ltd.) | IMA | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-0587370 | Hedge fund | 12/29/2005 | |
| Highland Park CDO 1, Ltd. | IMA | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-0515982 | CLO Fund | 7/12/2006 | |
| Highland Prometheus Feeder Fund I, L.P. | IMA | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1334547 | Hedge fund | 11/7/2016 | |
| Highland Prometheus Feeder Fund II, L.P. | IMA | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1353013 | Hedge fund | 2/17/2017 | |
| Highland Prometheus Master Fund, L.P. | IMA | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1334763 | Hedge fund | 11/7/2016 | |
| Highland Restoration Capital Partners Master, L.P. | IMA | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-1458205 | Private equity fund | 11/14/2007 | |
| Highland Restoration Capital Partners Offshore, L.P. | IMA | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-0558962 | Private equity fund | 11/13/2007 | |
| Highland Restoration Capital Partners, L.P. | IMA | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-1456033 | Private equity fund | 11/14/2007 | |
| Highland Select Equity Fund, L.P. | IMA | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 75-2970177 | Hedge fund | 12/5/2001 | |
| Highland Select Equity Master Fund, L.P. | IMA | MQ Services Ltd, Victoria House, 31 Victoria Street, Hamilton HM10, Bermuda | 98-0520466 | Hedge fund | 4/12/2007 | |
| Highland Special Opportunities Holding Company | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0532735 | HFP sub | 1/24/2006 | Terminated |
| Jasper CLO, Ltd. | IMA | Elian Fiduciary Services (Cayman) Limted - 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0595492 | CLO Fund | 3/9/2005 | |
| Liberty CLO, Ltd. | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0595490 | CLO Fund | 6/30/2005 | |
| Longhorn Credit Funding, LLC | IMA | United Corporate Services, Inc., 874 Walker Rd, Ste C, Dover, DE 19904 | N/A | Separate account | 10/15/2007 | |
| ML CLO XIX Sterling (Cayman), Ltd. | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 4/27/1998 | |
| Pam Capital Funding, L.P. | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | 20-3010953 | CLO Fund | 5/8/1998 | |
| PamCo Cayman, Ltd. | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 1/18/1997 | |
| PensionDanmark Pensionsforsikringsaktieselskab | IMA | Langelinie Allé 43, DK-2100 Copenhagen Ø | N/A | Separate account | 6/24/1992 | |
| Red River CLO, Ltd. | IMA | Elian Fiduciary Services (Cayman) Limted - 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0527219 | CLO Fund | 1/24/2006 | |
| Rockwall CDO II Ltd. | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 4/12/2006 | |
| Rockwall CDO, Ltd. | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | 98-0461407 | CLO Fund | 6/7/2005 | |
| Southfork CLO, Ltd. | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 10/21/2004 | |
| Stratford CLO, Ltd. | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | 98-0540945 | CLO Fund | 10/17/2006 | |
| Valhalla CLO, Ltd. | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0595491 | CLO Fund | 6/9/2004 | |
| Westchester CLO, Ltd. | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | 98-0546784 | CLO Fund | 11/10/2006 | |
| Highland Latin America GP, Ltd. | Highland Capital Management, L.P., as trustee of Highland Latin America Trust and nominee for and on behalf of Highland Latin America LP, Ltd. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1362190 | GP of the relying advisor to the Argentina fund | 3/6/2017 | |

Highland Capital Management LP
Case # 19-34054-SGJ
Exhibit F - SOFA 25

| Name | Relationship | Address | EIN | Description of Business | Date of Creation | Date of Termination (if applicable) |
|---|---|---|---|---|---|---|
| Highland Capital Management Latin America, L.P. | Highland Capital Management, L.P., as trustee of Highland Latin America Trust and nominee for and on behalf of Highland Latin America LP, Ltd. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1362202 | Relying advisor to the Argentina fund | 4/13/2017 | |
| Neutra, Ltd. | Highland Capital Management, L.P., as trustee of Acis CMOA Trust and nominee for and on behalf of Highland CLO Assets Holdings Limited | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1090422 | | 12/12/2012 | |
| Asbury Holdings, LLC (fka HCSLR Camelback Investors (Delaware), LLC) | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | Holds HCMLP's Haygood interest | 2/14/2017 | |
| De Kooning, Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1090348 | Formed to hold Select's interest in Barclays' assignment | 12/12/2012 | |
| HCREF-I Holding Corp. | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 46-1998057 | Holds HCMLP interest in HCREF | 12/13/2012 | |
| HCREF-XI Holding Corp. | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 46-2030348 | Holds HCMLP's interest in HE Mezz KR, LLC | 12/13/2012 | |
| HCREF-XII Holding Corp. | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 46-2032401 | Holds HCMLP's interest in 2006 Milam East Partners LP | 12/13/2012 | |
| HFP GP, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 16-1746972 | HFP GP | 1/20/2006 | |
| Highland Brasil, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 46-4691319 | Managing member of BB Votorantim Highland In | 1/28/2014 | |
| Highland Capital Management (Singapore) Pte Ltd | Highland Capital Management, L.P. | Tricor, 80 Robinson Road #02-00, Singapore 068898 | 98-0580590 | HCMLP's wholly owned in Singapore | 4/2/2008 | |
| Highland Capital Management Korea Limited | Highland Capital Management, L.P. | Seoul Finance Center, Taepyeongro-1-ga) 21F, 136, Sejong-daero, Jung-gu, Seoul, Korea | 98-1120007 | Relying advisor to the Korea PEF | 8/2/2012 | |
| Highland Capital Multi-Strategy Fund, LP | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-5237025 | Private fund | 7/6/2006 | |
| Highland Capital Special Allocation, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-1175318 | Entity received the incentive allocation from HFP. | 12/21/2006 | |
| Highland CDO Opportunity Fund GP, L.P. | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-3899907 | Hedge fund | 10/20/2005 | |
| Highland CDO Opportunity GP, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-3899870 | Hedge fund GP | 10/20/2005 | |
| Highland CLO Assets Holdings Limited | Highland Capital Management, L.P. | Maples Corporate Services (BVI) Limited Kingston Chambers, PO Box 173, Road Town Tortola, British Virgin Islands | 98-1417806 | | 12/19/2017 | |
| Highland CLO Management Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1432973 | | 10/27/2017 | |
| Highland Dynamic Income Fund GP, LLC (fka Highland Capital Loan GP, LLC) | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 80-0898281 | Hedge fund GP | 2/25/2013 | |
| Highland Employee Retention Assets LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 27-1596306 | HERA | 6/23/2009 | |
| Highland ERA Management, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | HERA manager | 2/1/2013 | |
| Highland Financial Partners, L.P. | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 83-0446391 | HFP | 1/20/2006 | Terminated |
| Highland Fund Holdings, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | | 5/24/2016 | |
| Highland General Partner, LP | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 86-1147210 | Hedge fund GP | 7/26/2005 | |
| Highland GP Holdings, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 86-1147208 | Hedge fund GP | 7/26/2005 | |
| Highland HCF Advisor Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1401127 | Advisor to Highland CLO Funding, Ltd. | 10/27/2017 | |
| Highland Latin America LP, Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1362186 | Argentina fund structure | 3/6/2017 | |
| Highland Multi Strategy Credit Fund GP, L.P. (fka Highland Credit Opportunities CDO GP, L.P.) | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | Hedge fund GP | 12/29/2005 | |
| Highland Multi Strategy Credit GP, LLC (fka Highland Credit Opportunities CDO GP, LLC) | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | Hedge fund GP | 12/29/2005 | |
| Highland Multi-Strategy Fund GP, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-5236824 | Private fund GP | 7/6/2006 | |
| Highland Multi-Strategy Fund GP, LP | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-5236931 | Private fund GP | 7/6/2006 | |
| Highland Receivables Finance I, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-8123634 | Entity created in 2006 that purchased all of HCMLP's receivables 100% owned by HCMLP. | 12/28/2006 | |
| Highland Restoration Capital Partners GP, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-1455912 | Private equity fund GP | 11/6/2007 | |
| Highland Select Equity Fund GP, L.P. | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-3899917 | Hedge fund GP | 10/20/2005 | |
| Highland Select Equity GP, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-3899886 | Hedge fund GP | 10/20/2005 | |
| Highland SunBridge GP, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | Hedge fund GP | 12/15/2015 | |
| Hirst, Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1090361 | Formed to hold CDO Ltd's interest in Barclays assignment | 12/12/2012 | |
| Hockney, Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1090388 | Formed to hold Crusader's interest in Barclays assignment | 12/12/2012 | |
| Maple Avenue Holdings, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 81-3600687 | Holds Uchi loan | 8/17/2016 | |
| NexPoint Hospitality Trust | Highland Capital Management, L.P. | 333 Bay Street, Suite 3400, Toronto, Ontario M5H 2S7, Canada | 83-6637675 | Hospitality REIT | 12/12/2018 | |
| NexPoint Insurance Distributors, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 84-2921534 | Insurance broker | 7/25/2019 | |
| NexPoint Insurance Solutions GP, LLC (fka Highland Capital Insurance Solutions GP, LLC) | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 84-2571487 | Insurance advisor GP | 4/4/2019 | |
| NexPoint Insurance Solutions, L.P. (fka Highland Capital Insurance Solutions, L.P.) | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 84-2584142 | Insurance advisor | 4/4/2019 | |
| NexPoint Multifamily Capital Trust, Inc. | Highland Capital Management, L.P. | The Corporation Trust Company, 2405 York Rd, Ste 201, Lutherville Timonium, MD 21093 | 46-4106316 | NMCT REIT | 11/12/2013 | |
| NexPoint Real Estate Strategies Fund | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 81-1061590 | Retail fund | 3/10/2006 | |
| NexPoint Residential Trust Inc. | Highland Capital Management, L.P. | The Corporation Trust, 2405 York Rd, Ste 201, Lutherville Timonium, MD 21093 | 47-1881359 | NXRT REIT | 9/19/2014 | |
| NexPoint Strategic Opportunities Fund (fka NexPoint Credit Strategies Fund) | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 80-0139090 | Retail fund | 3/10/2006 | |
| NHT Holdco, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 83-3011801 | Hospitality REIT structure | 1/2/2019 | |
| Oldenburg, Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1090453 | Formed to hold CDO LP's interest in Barclays assignment | 12/12/2012 | |
| Penant Management LP | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 46-1614710 | Holds HCREF's interest in Barclays assignment | 12/12/2012 | |
| PetroCap Incentive Partners III, LP | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | ? | Petrocap fund | 11/16/2017 | |
| PetroCap Partners II, LP | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 46-4691213 | Petrocap fund | 10/7/2013 | |
| PetroCap Partners III, L.P. | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | ? | Petrocap fund | 11/16/2017 | |
| Pollack, Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1090519 | | 12/12/2012 | |
| SE Multifamily Holdings LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 32-0576655 | RE investment holding | 8/23/2018 | |

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit F - SOFA 25**

| Name | Relationship | Address | EIN | Description of Business | Date of Creation | Date of Termination (if applicable) |
|---|---|---|---|---|---|---|
| The Dondero Insurance Rabbi Trust | Highland Capital Management, L.P. | 300 Crescent Ct, Ste 700, Dallas, TX 75201 | 75-2716725 | Holds Dondero's life insurance policies and the proceeds to be used to fund HCM's obligation to purchase Dondero Interests from the Trust Beneficiaries per Buy-Sell Agreement | 5/27/2004 | |
| The Okada Insurance Rabbi Trust | Highland Capital Management, L.P. | 300 Crescent Ct, Ste 700, Dallas, TX 75201 | 75-2716725 | Holds Okada's life insurance policies and the proceeds to be used to fund HCM's obligation to purchase Okada Interests from the Trust Beneficiaries per Buy-Sell Agreement | 5/27/2004 | |
| US Gaming SPV, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 84-1769285 | SPV of esports investment in Korea | 5/14/2019 | |
| Warhol, Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1090362 | Formed to hold Ops' interest in Barclays assignment | 12/12/2012 | |
| HE Capital 232 Phase I, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-1616599 | Underlying property is a 71.73 acre site consisting of 232 finished single family lots in the NW Phoenix development of Asante. | 12/20/2007 | |
| HE Capital Asante, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-0525645 | Underlying project is a 843 acre multi-phase residential development in NW Phoenix, AZ | 7/5/2007 | |
| HE Capital Fox Trails, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | Underlying project is a 889.58 acre vacant parcel in NW Phoenix with PAD approval for 2,320 single family units. | 3/10/2008 | |
| HE Capital KR, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | Underlying project is a 1,829.67 acre vacant parcel in SW Phoenix proposed for 4,250 single family lots of which 1,431 have final plat approval (Phase I) and 50.94 acres of commercial land. | 7/5/2007 | |
| HE Capital, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-8711786 | Parent entity for joint venture between Ellman and Highland. | 3/22/2007 | |
| HE CLO Holdco, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 37-1666849 | Blockers that used to hold Ellman interest | 2/3/2011 | |
| HE Mezz Fox Trails, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-2151278 | Underlying project is a 889.58 acre vacant parcel in NW Phoenix with PAD approval for 2,320 single family units. | 3/10/2008 | |
| HE Mezz KR, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-0611280 | Underlying project is a 1,829.67 acre vacant parcel in SW Phoenix proposed for 4,250 single family lots of which 1,431 have final plat approval (Phase I) and 50.94 acres of commercial land. | 7/27/2007 | |
| HE Peoria Place Property, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-1600012 | Underlying project is a 127.39 acre vacant parcel in NW Phoenix being improved with interior roadways for ultimate development or sale under the PAD approving 11 acres of office, 23 acres of retail, 50 acres of single family an d43 acres of multi family. | 12/10/2007 | |
| HE Peoria Place, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-1599959 | Underlying project is a 127.39 acre vacant parcel in NW Phoenix being improved with interior roadways for ultimate development or sale under the PAD approving 11 acres of office, 23 acres of retail, 50 acres of single family an d43 acres of multi family. | 11/14/2007 | |
| Hibiscus HoldCo, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 27-1824370 | Blocker to hold Turtle Bay assets | 2/2/2010 | |
| Highland CLO Gaming Holdings, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 27-3995018 | CLO blocker that used to hold Affinity Gaming int | 11/18/2010 | |
| Highland TCI Holding Company, LLC | HCMLP-Manager | CT Corporation, 1999 Bryan St, Ste 900, Dallas, TX 75201 | 45-2620554 | CLO blocker to hold TCI/Park West assets | 6/21/2011 | |
| Highland's Roads Land Holding Company, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-4572095 | CLO blocker to hold LLV reorg equity | 3/30/2009 | |
| Kuilima Montalban Holdings, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 27-1942638 | CLO blocker to hold Turtle Bay equity | 2/19/2010 | |
| Kuilima Resort Holdco, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-4572180 | CLO blocker to hold Turtle Bay equity | 3/18/2009 | |
| Park West Holdco, LLC | HCMLP-Manager | CT Corporation, 1999 Bryan St, Ste 900, Dallas, TX 75201 | 37-1641409 | Holds TCI assets | 4/4/2011 | |
| Park West Portfolio Holdco, LLC | HCMLP-Manager | CT Corporation, 1999 Bryan St, Ste 900, Dallas, TX 75201 | 90-0737248 | Holds TCI assets | 4/14/2011 | |
| PDK Toys Holdco, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 83-3591646 | PDK blocker to hold Toys R'Us loan | 2/14/2019 | |
| Acis CMOA Trust | HCMLP - Trustee | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | N/A | | 3/30/2018 | |
| Highland Latin America Trust | HCMLP - Trustee | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | N/A | | 3/30/2018 | |

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit G - SOFA 30**

| Name | Amounts | Date | Reason |
|------|--------:|------|--------|
| Dondero, James | 161.25 | 01/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 01/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 01/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 01/31/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 02/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 02/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 02/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 02/28/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 03/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 03/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 03/29/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 03/29/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 04/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 04/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 04/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 04/30/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 05/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 05/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 05/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 05/31/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 06/14/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 06/14/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 06/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 06/28/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 07/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 07/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 07/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 07/31/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 08/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 08/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 08/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 08/30/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 09/13/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 09/13/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 09/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 09/30/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 10/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 10/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 10/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 10/31/2018 | Regular Base Pay |
| Dondero, James | 161.25 | 11/15/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 11/15/2018 | Regular Base Pay |
| Dondero, James | 161.25 | 11/30/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 11/30/2018 | Regular Base Pay |
| Dondero, James | 161.25 | 12/14/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 12/14/2018 | Regular Base Pay |
| Dondero, James | 161.25 | 12/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 12/31/2018 | Regular Base Pay |
| Ellington, Scott | 71.25 | 01/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 01/15/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 01/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 01/31/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 02/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 02/15/2019 | Regular Base Pay |
| Ellington, Scott | 300,000.00 | 02/28/2019 | Bonus |
| Ellington, Scott | 71.25 | 02/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 02/28/2019 | Regular Base Pay |
| Ellington, Scott | 350,000.00 | 03/15/2019 | Bonus |
| Ellington, Scott | 71.25 | 03/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 03/15/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 03/29/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 03/29/2019 | Regular Base Pay |

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit G - SOFA 30**

| Name | Amounts | Date | Reason |
|------|--------:|------|--------|
| Ellington, Scott | 71.25 | 04/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 04/15/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 04/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 04/30/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 05/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 05/15/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 05/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 05/31/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 06/14/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 06/14/2019 | Regular Base Pay |
| Ellington, Scott | 350,629.00 | 06/28/2019 | Bonus and/or Deferred Compensation |
| Ellington, Scott | 71.25 | 06/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 06/28/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 07/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 07/15/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 07/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 07/31/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 08/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 08/15/2019 | Regular Base Pay |
| Ellington, Scott | 650,000.00 | 08/30/2019 | Bonus |
| Ellington, Scott | 71.25 | 08/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 08/30/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 09/13/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 09/13/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 09/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 09/30/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 10/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 10/15/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 10/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 10/31/2018 | Regular Base Pay |
| Ellington, Scott | 71.25 | 11/15/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 11/15/2018 | Regular Base Pay |
| Ellington, Scott | 71.25 | 11/30/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 11/30/2018 | Regular Base Pay |
| Ellington, Scott | 71.25 | 12/14/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 12/14/2018 | Regular Base Pay |
| Ellington, Scott | 604.78 | 12/31/2018 | Gross up value from Dividend Reinvestment Plan |
| Ellington, Scott | 71.25 | 12/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 12/31/2018 | Regular Base Pay |
| Okada, Mark | 204.25 | 01/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 01/15/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 01/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 01/31/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 02/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 02/15/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 02/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 02/28/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 03/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 03/15/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 03/29/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 03/29/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 04/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 04/15/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 04/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 04/30/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 05/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 05/15/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 05/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 05/31/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 06/14/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 06/14/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 06/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit G - SOFA 30**

| Name | Amounts | Date | Reason |
|------|--------:|------|--------|
| Okada, Mark | 32,552.09 | 06/28/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 07/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 07/15/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 07/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 07/31/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 08/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 08/15/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 08/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 08/30/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 09/13/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 09/13/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 09/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 09/30/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 10/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 10/31/2018 | Regular Base Pay |
| Okada, Mark | 204.25 | 11/15/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 11/15/2018 | Regular Base Pay |
| Okada, Mark | 204.25 | 11/30/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 11/30/2018 | Regular Base Pay |
| Okada, Mark | 204.25 | 12/14/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 12/14/2018 | Regular Base Pay |
| Okada, Mark | 272.64 | 12/31/2018 | Gross up value from Dividend Reinvestment Plan |
| Okada, Mark | 204.25 | 12/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 12/31/2018 | Regular Base Pay |
| Parker, Lee | 47.50 | 01/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 01/15/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 01/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 01/31/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 02/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 02/15/2019 | Regular Base Pay |
| Parker, Lee | 231,250.00 | 02/28/2019 | Bonus |
| Parker, Lee | 47.50 | 02/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 02/28/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 03/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 03/15/2019 | Regular Base Pay |
| Parker, Lee | 150,000.00 | 03/29/2019 | Bonus |
| Parker, Lee | 47.50 | 03/29/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 03/29/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 04/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 04/15/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 04/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 04/30/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 05/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 05/15/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 05/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 05/31/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 06/14/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 06/14/2019 | Regular Base Pay |
| Parker, Lee | 362,935.00 | 06/28/2019 | Bonus and/or Deferred Compensation |
| Parker, Lee | 47.50 | 06/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 06/28/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 07/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 07/15/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 07/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 07/31/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 08/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 08/15/2019 | Regular Base Pay |
| Parker, Lee | 381,250.00 | 08/30/2019 | Bonus |
| Parker, Lee | 47.50 | 08/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 08/30/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 09/13/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 09/13/2019 | Regular Base Pay |

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit G - SOFA 30**

| Name | Amounts | Date | Reason |
|------|---------|------|--------|
| Parker, Lee | 47.50 | 09/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 09/30/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 10/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 10/15/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 10/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 10/31/2018 | Regular Base Pay |
| Parker, Lee | 47.50 | 11/15/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 11/15/2018 | Regular Base Pay |
| Parker, Lee | 47.50 | 11/30/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 11/30/2018 | Regular Base Pay |
| Parker, Lee | 47.50 | 12/14/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 12/14/2018 | Regular Base Pay |
| Parker, Lee | 483.56 | 12/31/2018 | Gross up value from Dividend Reinvestment Plan |
| Parker, Lee | 47.50 | 12/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 12/31/2018 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 01/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 01/15/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 01/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 01/31/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 02/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 02/15/2019 | Regular Base Pay |
| Surgent, Thomas | 300,000.00 | 02/28/2019 | Bonus |
| Surgent, Thomas | 56.25 | 02/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 02/28/2019 | Regular Base Pay |
| Surgent, Thomas | 325,000.00 | 03/15/2019 | Bonus |
| Surgent, Thomas | 56.25 | 03/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 03/15/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 03/29/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 03/29/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 04/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 04/15/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 04/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 04/30/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 05/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 05/15/2019 | Regular Base Pay |
| Surgent, Thomas | 100,000.00 | 05/31/2019 | Bonus and/or Deferred Compensation |
| Surgent, Thomas | 56.25 | 05/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 05/31/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 06/14/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 06/14/2019 | Regular Base Pay |
| Surgent, Thomas | 482,115.00 | 06/28/2019 | Bonus and/or Deferred Compensation |
| Surgent, Thomas | 56.25 | 06/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 06/28/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 07/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 07/15/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 07/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 07/31/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 08/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 08/15/2019 | Regular Base Pay |
| Surgent, Thomas | 625,000.00 | 08/30/2019 | Bonus |
| Surgent, Thomas | 56.25 | 08/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 08/30/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 09/13/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 09/13/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 09/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 09/30/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 10/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 10/15/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 10/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 10/31/2018 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 11/15/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 11/15/2018 | Regular Base Pay |

Case 19-34054-sgj11 Doc 2184 Filed 04/23/19 Entered 04/23/19 10:22:17 Page 34 of 94

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit G - SOFA 30**

| Name | Amounts | Date | Reason |
|------|--------:|------|--------|
| Surgent, Thomas | 56.25 | 11/30/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 11/30/2018 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 12/14/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 12/14/2018 | Regular Base Pay |
| Surgent, Thomas | 2,344.18 | 12/31/2018 | Gross up value from Dividend Reinvestment Plan |
| Surgent, Thomas | 56.25 | 12/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 12/31/2018 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 01/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 01/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 01/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 01/31/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 02/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 02/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 206,250.00 | 02/28/2019 | Bonus |
| Waterhouse, Frank | 71.25 | 02/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 02/28/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 03/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 03/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 03/29/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 03/29/2019 | Regular Base Pay |
| Waterhouse, Frank | 212,500.00 | 04/15/2019 | Bonus |
| Waterhouse, Frank | 71.25 | 04/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 04/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 04/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 04/30/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 05/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 05/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 100,000.00 | 05/31/2019 | Bonus and/or Deferred Compensation |
| Waterhouse, Frank | 71.25 | 05/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 05/31/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 06/14/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 06/14/2019 | Regular Base Pay |
| Waterhouse, Frank | 306,801.00 | 06/28/2019 | Bonus and/or Deferred Compensation |
| Waterhouse, Frank | 71.25 | 06/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 06/28/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 07/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 07/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 07/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 07/31/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 08/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 08/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 418,750.00 | 08/30/2019 | Bonus |
| Waterhouse, Frank | 14,583.33 | 08/30/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 09/13/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 09/13/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 09/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 09/30/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 10/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 10/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 10/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 10/31/2018 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 11/15/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 11/15/2018 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 11/30/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 11/30/2018 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 12/14/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 12/14/2018 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 12/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 12/31/2018 | Regular Base Pay |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |

**GLOBAL NOTES AND STATEMENT OF LIMITATIONS, METHODS, AND
DISCLAIMER REGARDING DEBTOR'S SCHEDULES OF ASSETS AND
LIABILITIES AND STATEMENT OF FINANCIAL AFFAIRS**

Highland Capital Management, L.P. (the "Debtor") submits its Schedules of
Assets and Liabilities (the "Schedules") and Statement of Financial Affairs (the "SoFA") in the
United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the
"Bankruptcy Court"). The Debtor, with the assistance of its advisors and management, prepared
the Schedules and SoFA in accordance with section 521 title 11 of the United States Code, 11
U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy
Procedure (the "Bankruptcy Rules").

These Global Notes and Statement of Limitations, Methods, and Disclaimer
Regarding the Debtor's Schedules and SoFA (collectively, the "Global Notes") pertain to, are
incorporated by reference in, and comprise an integral part of the Schedules and SoFA. These
Global Notes should be referred to, and reviewed in connection with any review of the Schedules
and SoFA.[2]

The Schedules and SoFA have been prepared by the Debtor with the assistance
and under the direction of the Debtor's proposed Chief Restructuring Officer and additional
personnel at Development Specialists, Inc. (collectively, the "CRO") and are unaudited and
subject to further review and potential adjustment and amendment. In preparing the Schedules
and SoFA, the CRO relied on financial data derived from the Debtor's books and records that
was available at the time of preparation. The CRO has made reasonable efforts to ensure the
accuracy and completeness of such financial information, however, subsequent information or
discovery of other relevant facts may result in material changes to the Schedules and SoFA and
inadvertent errors, omissions, or inaccuracies may exist. The Debtor reserves all rights to amend
or supplement its Schedules and SoFA.

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service
address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.
[2] These Global Notes are in addition to any specific notes contained in the Debtor's Schedules or SoFA. The fact
that the Debtor has prepared a "general note" with respect to any of the Schedules and SoFA and not to others
should not be interpreted as a decision by the Debtor to exclude the applicability of such general note to any of the
Debtor's remaining Schedules and SoFA, as appropriate.

**Reservation of Rights.** The Debtor reserves all rights to amend the SoFA and Schedules in all respects, as may be necessary or appropriate, including, but not limited to, the right to dispute or to assert offsets or defenses to any claim reflected on the SoFA and Schedules as to amount, liability or classification of the claim, or to otherwise subsequently designate any claim as "disputed," "contingent" or "unliquidated." Furthermore, nothing contained in the SoFA and Schedules shall constitute a waiver of rights by the Debtor involving any present or future causes of action, contested matters or other issues under the provisions of the Bankruptcy Code or other applicable non-bankruptcy laws.

**Description of the Case and "As Is" Information Date.** On October 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief with the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court") under Chapter 11 of the Bankruptcy Code. The Debtor is managing its assets as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On December 4, 2019, the Delaware Bankruptcy Court entered an Order transferring this case to the Bankruptcy Court [Docket No. 1].

Asset information in the Schedules reflects the Debtor's best estimate of asset values as of the Petition Date, unless otherwise noted. No independent valuation has been obtained.

**Basis of Presentation.** The Schedules and SoFA do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles ("GAAP"), nor are they intended to fully reconcile to any financial statements otherwise prepared and/or distributed by the Debtor.

Although these Schedules and SoFA may, at times, incorporate information prepared in accordance with GAAP, the Schedules and SoFA neither purport to represent nor reconcile to financial statements prepared and/or distributed by the Debtor in accordance with GAAP or otherwise. Moreover, given, among other things, the valuation and nature of certain liabilities, to the extent that the Debtor shows more assets than liabilities, this is not a conclusion that the Debtor was solvent at the Petition Date. Likewise, to the extent that the Debtor shows more liabilities than assets, this is not a conclusion that the Debtor was insolvent at the Petition Date or any time prior to the Petition Date.

**Estimates.** To timely close the books and records of the Debtor, the CRO must make certain estimates and assumptions that affect the reported amounts of assets and liabilities and reported revenue and expenses. The Debtor reserves all rights to amend the reported amounts of assets, liabilities, revenue, and expenses to reflect changes in those estimates and assumptions.

**Confidentiality**. There may be instances within the Schedules and SoFA where names, addresses, or amounts have been left blank. Due to the nature of an agreement between the Debtor and the third party, concerns of confidentiality, or concerns for the privacy of an individual, the Debtor may have deemed it appropriate and necessary to avoid listing such names, addresses, and amounts.

2

**Intercompany Claims.** Any receivables and payables between the Debtor and affiliated or related entities in this case (each an "Intercompany Receivable" or "Intercompany Payable" and, collectively, the "Intercompany Claims") are reported as assets on Schedule B or liabilities on Schedule E and Schedule F. These Intercompany Claims include the following components, among others: 1) loans to affiliates or related entities, 2) accounts payable and payroll disbursements made out of an affiliate's or related entity's bank accounts on behalf of the Debtor, 3) centrally billed expenses, 4) corporate expense allocations, and 5) accounting for trade and other intercompany transactions. These Intercompany Claims may or may not result in allowed or enforceable claims by or against the Debtor, and by listing these claims the Debtor is not indicating a conclusion that the Intercompany Claims are enforceable. Intercompany Claims may also be subject to set off, recoupment, and netting not reflected in the Schedules. In situations where there is not an enforceable claim, the assets and/or liabilities of the Debtor may be greater or lesser than the amounts stated herein. All rights to amend intercompany Claims in the Schedules and SoFA are reserved.

The Debtor has listed the intercompany payables as unsecured claims on Schedule F. The Debtor reserves its rights to later change the characterization, classification, categorization, or designation of such items.

**Insiders.** For purposes of the Schedules and SoFA, the Debtor defines "insider" pursuant to section 101(31) of the Bankruptcy Code. Payments to insiders are set forth on Question 3.c. of the SoFA.

Persons listed as "insiders" have been included for informational purposes only. The Debtor did not take any position with respect to whether such individual could successfully argue that he or she is not an "insider" under applicable law, including without limitation, the federal securities laws, or with respect to any theories of liability or for any other purpose. Inclusion of any party in the Schedules and SoFA as an insider does not constitute an admission that such party is an insider or a waiver of such party's right to dispute insider status.

**Excluded Accruals and GAAP Entries.** The Debtor's balance sheet reflects liabilities recognized in accordance with GAAP; however, not all such liabilities would result in a claim against the Debtor. Certain liabilities (including but not limited to certain reserves, deferred charges, and future contractual obligations) have not been included in the Debtor's Schedules. Other immaterial assets and liabilities may also have been excluded.

**Classification and Claim Descriptions**. Any failure to designate a claim on the Schedules as "disputed," "contingent" or "unliquidated" does not constitute an admission by the Debtor that such amount is not "disputed," "contingent" or "unliquidated." The Debtor reserves the right to dispute, or to assert offsets or defenses to, any claim reflected on its Schedules as to amount, liability or classification or to otherwise subsequently designate any claim as "disputed," "contingent" or "unliquidated."

Listing a claim (i) in Schedule D as "secured," (ii) in Schedule E as "priority" or (iii) in Schedule F as "unsecured nonpriority," or listing a contract in Schedule G as "executory" or "unexpired," does not constitute an admission by the Debtor of the legal rights of the claimant or a waiver of the Debtor's right to recharacterize or reclassify such claim or contract.

3

Moreover, the Debtor reserves all rights to amend the SoFA and Schedules, in all respects, as may be necessary or appropriate, including, but not limited to, the right to dispute or to assert offsets or defenses to any claim reflected on the SoFA and Schedules as to amount, liability or classification of the claim, or to otherwise subsequently designate any claim as "disputed," "contingent" or "unliquidated." Furthermore, nothing contained in the SoFA and Schedules shall constitute a waiver of rights by the Debtor involving any present or future causes of action, contested matters or other issues under the provisions of the Bankruptcy Code or other relevant non-bankruptcy laws.

**Credits and Adjustments.** The claims of individual creditors for, among other things, goods, products, services or taxes are listed as the amounts entered on the Debtor's books and records and may not reflect credits, allowances or other adjustments due from such creditors to the Debtor. The Debtor reserves all of its rights respecting such credits, allowances or other adjustments.

**Setoffs.** The Debtor may incur setoffs from third parties in its business. Setoffs in the ordinary course can result from various routine transactions, including intercompany transactions, pricing discrepancies, warranty claims and other disputes between the Debtor and third parties. Certain of these constitute normal setoffs consistent with the ordinary course of business in the Debtor's industry. In such instances, such ordinary course setoffs are excluded from the Debtor's responses to Question 13 of the SoFA. The Debtor reserves all rights to enforce or challenge, as the case may be, any setoffs that have been or may be asserted.

**Specific Notes.** These general notes are in addition to the specific notes set forth below or in the related Statement and Schedules hereinafter.

## General Disclaimer

The Debtor has prepared the Schedules and the SoFA based on the information reflected in the Debtor's books and records. However, inasmuch as the Debtor's books and records have not been audited or formally closed and evaluated for proper cut-off on the Petition Date, the Debtor cannot warrant the absolute accuracy of these documents. The Debtor has made a diligent effort to complete these documents accurately and completely. To the extent additional information becomes available, the Debtor will amend and supplement the Schedules and SoFA.

## Specific Schedules Disclosures

a. **Schedule A/B, Part 4 - Investments; Non-Publicly Traded Stock and Interests in Incorporated and Unincorporated Businesses, including any Interest in an LLC, Partnership, or Joint Venture.** Certain ownership interests in subsidiaries have been listed in Schedule A/B, Part 4, at their book value on account of the fact that the fair market value of such ownership is dependent on numerous variables and factors. Fair value of such interests may differ significantly from their net book value. Further, for investments listed at fair value, many of the Debtor's assets are not exchange traded and are fair valued utilizing unobservable

inputs, historical information, and significant and/or subjective estimates. As a result the liquidity and ultimately realized value of such investments may differ materially from the fair value listed on the schedule.

b. **Schedule A/B, Part 7 - Office Furniture, Fixtures, and Equipment; and Collectibles**. Dollar amounts are presented net of accumulated depreciation and other adjustments.

c. **Schedule A/B, Part 11 - All Other Assets**. Dollar amounts are presented net of impairments and other adjustments. Debtor has reflected "unknown" for value of its interests in various other assets. While the face value of the notes receivable is included, the current value of these as well as the other assets has not been determined and may differ materially.

Additionally, the Debtor may receive refunds, income tax refunds or other sales tax refunds at various times throughout its fiscal year. As of the Petition Date, however, certain of these amounts are unknown to the Debtor, and accordingly, may not be listed in Schedule A/B.

*Other Contingent and Unliquidated Claims or Causes of Action of Every Nature, including Counterclaims of the Debtor and Rights to Setoff Claims.* In the ordinary course of its business, the Debtor may have accrued, or may subsequently accrue, certain rights to counter-claims, cross-claims, setoffs, or refunds with its customers and suppliers. Additionally, the Debtor may be party to pending litigation in which the Debtor has asserted, or may assert, claims as a plaintiff or counter-claims and/or cross-claims as a defendant. Because certain of these claims are unknown to the Debtor and not quantifiable as of the Petition Date, they may not be listed on Schedule A/B, Part 11.

d. **Schedule D - Creditors Who Have Claims Secured by Property**. The Debtor reserves its rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D. Moreover, although the Debtor has scheduled claims of various creditors as secured claims, the Debtor reserves all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's claim.

The descriptions provided in Schedule D are intended only to be a summary. Reference to the applicable agreements and other related relevant documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.

The Debtor has not included on Schedule D parties that may believe their claims are secured through setoff rights or inchoate statutory lien rights. Although there are multiple parties that hold a portion of the debt included in the secured

facilities, only the administrative agents have been listed for purposes of Schedule D.

e.  **Schedule E/F - Creditors Who Have Unsecured Claims.**

*Part 1 - Creditors with Priority Unsecured Claims*.  Pursuant to the *Order (I) Authorizing the Debtor to (A) Pay and Honor Prepetition Compensation, Reimbursable Business Expenses, and Employee Benefit Obligations, and (B) Maintain and Continue Certain Compensation and Benefit Programs Postpetition; and (11) Granting Related Relief* [Docket No. 39] (the "<u>Wage Order</u>"), the Debtor received authority to pay certain prepetition obligations, including to pay employee wages and other employee benefits, in the ordinary course of business. The Debtor believes that any non-insider employee claims for prepetition amounts related to ongoing payroll and benefits, whether allowable as a priority or nonpriority claim, which were due and payable at the time of the Petition Date have been or will be satisfied as permitted pursuant to the Wage Order.  The Debtor filed the *Motion of the Debtor for Entry of an Order Authorizing the Debtor to Pay and Honor Ordinary Course Obligations under Employee Bonus Plans and Granting Related Relief* [Docket No. 177] pursuant to which the Debtor seeks authority to pay and honor certain prepetition bonus programs.  Employee claims related to these programs are shown in the aggregate amounts in Schedule E/F for privacy reasons.  Additional information is available by appropriate request to the Debtor.  The listing of a claim on Schedule E/F, Part 1, does not constitute an admission by the Debtor that such claim or any portion thereof is entitled to priority status.

*Part 2 - Creditors with Nonpriority Unsecured Claims*.  The liabilities identified in Schedule E/F, Part 2, are derived from the Debtor's books and records.  The Debtor made a reasonable attempt to set forth its unsecured obligations, although the actual amount of claims against the Debtor may vary from those liabilities represented on Schedule E/F, Part 2.  The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed claims or the correct amount of all unsecured claims.

Schedule E/F, Part 2 reflects liabilities based on the Debtor's books and records.

Schedule E/F, Part 2, contains information regarding threatened or pending litigation involving the Debtor.  The amounts for these potential claims are listed as "unknown" and are marked as contingent, unliquidated, and disputed in the Schedules and Statements.  Additionally, the amounts of certain litigation claims may be estimates based on the allegations asserted by the litigation counterparty, and do not constitute an admission by the Debtor with respect to either liability for, or the amount of, such claims.

Schedule E/F, Part 2, reflects certain prepetition amounts owing to counterparties to executory contracts and unexpired leases.  Such prepetition amounts, however,

6

may be paid in connection with the assumption or assumption and assignment of an executory contract or unexpired lease. In addition, Schedule E/F, Part 2, does not include claims that may arise in connection with the rejection of any executory contracts and unexpired leases, if any, that may be or have been rejected.

As of the time of filing of the Schedules and Statements, the Debtor had not received all invoices for payables, expenses, and other liabilities that may have accrued prior to the Petition Date. Accordingly, the information contained in Schedules D and E/F may be incomplete. The Debtor reserves its rights to amend Schedules D and E/F if and as it receive such invoices.

    f.    **Schedule G - Executory Contracts and Unexpired Leases**. While reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors or omissions may have occurred.

Listing a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease or that such contract or agreement was in effect on the Petition Date or is valid or enforceable. The Debtor hereby reserves all of its rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth in Schedule G and to amend or supplement such Schedule as necessary. Certain of the leases and contracts listed on Schedule G may contain renewal options, guarantees of payment, indemnifications, options to purchase, rights of first refusal and other miscellaneous rights. Such rights, powers, duties and obligations are not set forth separately on Schedule G. In addition, the Debtor may have entered into various other types of agreements in the ordinary course of its business, such as supplemental agreements, amendments, and letter agreement, which documents may not be set forth in Schedule G.

Certain of the agreements listed on Schedule G may have expired or terminated pursuant to their terms, but are listed on Schedule G in an abundance of caution.

The Debtor reserves all rights to dispute or challenge the characterization of any transaction or any document or instrument related to a creditor's claim.

In some cases, the same supplier or provider may appear multiple times in Schedule G. Multiple listings, if any, reflect distinct agreements between the Debtor and such supplier or provider.

The listing of any contract on Schedule G does not constitute an admission by the Debtor as to the validity of any such contract. The Debtor reserves the right to dispute the effectiveness of any such contract listed on Schedule G or to amend Schedule G at any time to remove any contract.

Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or

unexpired lease.  The Debtor's rights under the Bankruptcy Code with respect to any such omitted contracts or agreements are not impaired by the omission.

# EXHIBIT 31

## HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.

### INCUMBENCY CERTIFICATE

I am the sole Director of STRAND ADVISORS XVI, INC., a Delaware corporation (the "*General Partner*"), the general partner of **HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.**, a Delaware limited partnership (the "*Partnership*"). In that capacity, I certify that the persons listed below have been duly appointed and qualified as, and currently are, officers of the General Partner of the Partnership. I also certify that each person listed below holds the position that is listed opposite his or her name in the General Partner, and that the signatures attached are the genuine signatures of the persons indicated. I also certify that in their capacity as officers of the General Partner, the persons listed below are authorized to execute any and all agreements on behalf of the General Partner in its capacity as the general partner of the Partnership. I further certify that in their capacity as officers of the General Partner, the persons listed below are authorized to give any party on behalf of the Partnership all notices, orders, directions, or instructions (including but not limited to written, facsimile, or oral funds transfer instructions) in connection with any transaction to which the Partnership is or in the future may be a party to in any capacity.

| Name of Officer | Title | Signature |
|---|---|---|
| Dustin Norris | Executive Vice President | |
| Frank Waterhouse | Treasurer | |
| Lauren Thedford | Secretary | |

WITNESS my hand to be effective as of the 11th day of April, 2019.

HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.

By: Strand Advisors XVI, Inc., its general partner

By: _____

James D. Dondero, Sole Director

# EXHIBIT 32

# Highland Capital Management Fund Advisors, L.P.

**(A Delaware Limited Partnership)**

**Consolidated Financial Statements and Supplemental Information**

**December 31, 2018**

# Highland Capital Management Fund Advisors, L.P.
**(A Delaware Limited Partnership)**
**Index**
**December 31, 2018**

**Page(s)**

**Report of Independent Auditors**........................................................................................................1

**Consolidated Financial Statements**

Consolidated Balance Sheet............................................................................................................2

Consolidated Statement of Income...................................................................................................3

Consolidated Statement of Changes in Partners' Deficit...............................................................4

Consolidated Statement of Cash Flows............................................................................................5

Notes to Consolidated Financial Statements ........................................................... …...   6–17

Supplemental Information…………………………………………………………………………..18-22



**Report of Independent Auditors**

To the General Partner of Highland Capital Management Fund Advisors, L.P.

We have audited the accompanying consolidated financial statements of Highland Capital Management Fund Advisors, L.P. and its subsidiary (collectively, the "Partnership"), which comprise the consolidated balance sheet as of December 31, 2018, and the related consolidated statements of income, of changes in partners' deficit and of cash flows for the year then ended.

### *Management's Responsibility for the Consolidated Financial Statements*

Management is responsible for the preparation and fair presentation of the consolidated financial statements in accordance with accounting principles generally accepted in the United States of America; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of consolidated financial statements that are free from material misstatement, whether due to fraud or error.

### *Auditors' Responsibility*

Our responsibility is to express an opinion on the consolidated financial statements based on our audit. We conducted our audit in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the consolidated financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the consolidated financial statements. The procedures selected depend on our judgment, including the assessment of the risks of material misstatement of the consolidated financial statements, whether due to fraud or error. In making those risk assessments, we consider internal control relevant to the Partnership's preparation and fair presentation of the consolidated financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Partnership's internal control. Accordingly, we express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the consolidated financial statements. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

### *Opinion*

In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of Highland Capital Management Fund Advisors, L.P. and its subsidiary as of December 31. 2018, and the results of their operations, changes in their partners' deficit and their cash flows for the year then ended in accordance with accounting principles generally accepted in the United States of America.

### *Other Matter*

Our audit was conducted for the purpose of forming an opinion on the consolidated financial statements taken as a whole. The Supplemental Consolidating Balance Sheet, the Supplemental Consolidating Statement of Income, the Supplemental Unconsolidated Balance Sheet and the Supplemental Unconsolidated Statement of Income are presented for purposes of additional analysis and are not a required part of the consolidated financial statements. The information is the responsibility of management and was derived from and relates directly to the underlying accounting and other records used to prepare the consolidated financial statements. The information has been subjected to the auditing procedures applied in the audit of the consolidated financial statements and certain additional procedures, including comparing and reconciling such information directly to the underlying accounting and other records used to prepare the consolidated financial statements or to the consolidated financial statements themselves and other additional procedures, in accordance with auditing standards generally accepted in the United States of America. In our opinion, the information is fairly stated, in all material respects, in relation to the consolidated financial statements taken as a whole.

*PricewaterhouseCoopers LLP*

June 3, 2019

---

*PricewaterhouseCoopers LLP, 2121 N Pearl Street, Suite 2000, Dallas, Texas 75201*
*T: (214) 999 1400, F: (214) 754 7991, www.pwc.com/us*

# Highland Capital Management Fund Advisors, L.P.
**(A Delaware Limited Partnership)**
**Consolidated Balance Sheet**
**December 31, 2018**

*(in thousands)*

**Assets**

| | | |
|---|---|---:|
| Cash and cash equivalents | $ | 1,722 |
| Segregated cash | | 116 |
| Investments in marketable securities, at fair value (cost $888) | | 707 |
| Advisory and administrative fees receivable | | 2,404 |
| Insurance proceeds receivable | | 5,000 |
| Receivables from affiilates | | 1,830 |
| Prepaid expenses | | 381 |
| Income tax receivable | | 105 |
| Deferred tax asset | | 60 |
| Other assets | | 51 |
| Purchased investment management contracts | | 4,275 |
| Fixed assets and leasehold improvements, net of accumulated depreciation ($79) | | 8 |
| **Total assets** | $ | **16,659** |

**Liabilities and Partners' Deficit**

**Liabilities**

| | | |
|---|---|---:|
| Accounts payable | $ | 655 |
| Amounts payable on behalf of 12b-1 plan | | 116 |
| Accrued and other liabilities | | 3,588 |
| Due to affiliates | | 8,865 |
| Notes payable to affiliate | | 4,895 |
| Total liabilities | | 18,119 |
| Partners' deficit | | (1,460) |
| **Total liabilities and partners' deficit** | $ | **16,659** |

The accompanying notes are an integral part of these consolidated financial statements.

# Highland Capital Management Fund Advisors, L.P.
**(A Delaware Limited Partnership)**
**Consolidated Statement of Income**
**Year Ended December 31, 2018**

*(in thousands)*

| | | |
|---|---|---:|
| **Revenue:** | | |
| Advisory fees | $ | 19,365 |
| Administrative fees | | 3,692 |
| Managing broker-dealer fees | | 1,407 |
| Marketing and administrative services | | 1,125 |
| Underwriter commissions | | 47 |
| Miscellaneous income | | 22 |
| Total revenue | $ | 25,658 |
| **Operating expenses:** | | |
| Compensation and benefits | | 9,582 |
| Subadvisory fees | | 6,686 |
| Shared services expense | | 2,742 |
| Advanced commissions and 12b-1 expense, net | | 722 |
| Professional fees | | 957 |
| Other operating expenses | | 516 |
| Research expense | | 683 |
| Marketing and advertising expense | | 279 |
| Interest expense | | 104 |
| Total operating expenses | | 22,271 |
| Income before unrealized losses on investments in marketable securities, other losses, and taxes | | 3,387 |
| Change in unrealized losses on investments in marketable securities | | (14) |
| **Other income/(losses):** | | |
| Proceeds from insurance recovery | | 5,000 |
| Losses reimbursable to managed funds | | (7,509) |
| Total other losses | | (2,509) |
| Income before income tax expense | | 864 |
| Income tax expense | | (30) |
| **Net income** | $ | 834 |

The accompanying notes are an integral part of these consolidated financial statements.

# Highland Capital Management Fund Advisors, L.P.
**(A Delaware Limited Partnership)**
**Consolidated Statement of Changes in Partners' Deficit**
**Year Ended December 31, 2018**

*(in thousands)*

|  | General Partner | Limited Partners | Total |
|---|---|---|---|
| Partners' deficit, December 31, 2017 | $ (2,294) | $ - | $ (2,294) |
| Net income | 8 | 826 | 834 |
| Allocation of prior years' deficit | 826 | (826) | - |
| Partners' deficit, December 31, 2018 | $ (1,460) | $ - | $ (1,460) |

The accompanying notes are an integral part of these consolidated financial statements.

# Highland Capital Management Fund Advisors, L.P.
**(A Delaware Limited Partnership)**
**Consolidated Statement of Cash Flows**
**Year Ended December 31, 2018**

*(in thousands)*

| | | |
|---|---:|---:|
| **Cash flows from operating activities** | | |
| Net income | $ | 834 |
| Adjustments to reconcile net income to net cash used in operating activities: | | |
| Depreciation and amortization | | 12 |
| Net change in unrealized losses on investments in marketable securities | | 14 |
| Dividend income received in-kind | | (23) |
| Changes in assets and liabilities: | | |
| Advisory and administrative fees receivable | | (590) |
| Insurance proceeds receivable | | (5,000) |
| Receivables from affiliates | | (3) |
| Deferred tax asset | | 20 |
| Income tax receivable | | 19 |
| Other assets | | (42) |
| Accounts payable | | (260) |
| Amounts payable on behalf of the 12b-1 Plan | | 89 |
| Accrued and other liabilities | | (2,014) |
| Due to affiliates | | 6,543 |
| **Net cash used in operating activities** | | (401) |
| **Net decrease in cash, cash equivalents and segregated cash** | | (401) |
| **Cash, cash equivalents and segregated cash** | | |
| Beginning of year | | 2,239 |
| End of year | $ | 1,838 |
| **Reconciliation of cash, cash equivalents and segregated cash to balance sheet** | | |
| Cash and cash equivalents | $ | 1,722 |
| Segregated cash | | 116 |
| Total cash, cash equivalents and segregated cash | $ | 1,838 |
| **Supplemental disclosure of cash flow information:** | | |
| Tax refunds received during the year | $ | 8 |
| Interest paid during the year | $ | - |

The accompanying notes are an integral part of these consolidated financial statements.

# Highland Capital Management Fund Advisors, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

1. **Description of Business**

Pyxis Capital, L.P. was formed on February 9, 2009 as a limited partnership in the state of Delaware. On February 8, 2013, the Partnership changed its name to Highland Capital Management Fund Advisors, L.P. (the "Partnership"). The Partnership's general partner is Strand Advisors XVI, Inc. (the "General Partner"). The Partnership is 99% owned by affiliates and senior management of the Partnership.

As of December 31, 2018, the Partnership provided investment advisory services for eleven open-ended mutual funds, one closed-end mutual fund, and one ETF, with total fee-earning assets under management of approximately $3.4 billion.

2. **Summary of Significant Accounting Policies**

The following is a summary of the significant accounting policies followed by the Partnership in preparation of its consolidated financial statements.

**Basis of Accounting**
The Partnership's consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles in the United States of America ("U.S. GAAP") as set forth in the Financial Accounting Standards Board's Accounting Standards Codification and are stated in United States Dollar.

**Use of Estimates**
The preparation of the consolidated financial statements in conformity with U.S. GAAP requires management to make estimates and assumptions that affect the amounts and disclosures in the consolidated financial statements. Actual results could differ from those estimates and those differences could be material.

**Principles of Consolidation**
The consolidated financial statements include the accounts of the Partnership and the Partnership's consolidated subsidiary, which comprise of (i) those entities in which it has controlling investment and has control over significant operating, financial and investing decisions of the entity, (ii) those entities in which it, as the general partner, has control over significant operating, financial and investing decisions of the entity, and (iii) variable interest entities ("VIEs") in which it is the primary beneficiary as described below.

The Partnership determines whether an entity has equity investors who lack the characteristics of a controlling financial interest or does not have sufficient equity at risk to finance its expected activities without additional subordinated financial support from other parties. If an entity has either of these characteristics, it is considered a VIE and must be consolidated by its primary beneficiary, which is the party that, along with its affiliates and de facto agents, absorbs a majority of the VIEs' expected losses or receives a majority of the expected residual returns as a result of holding variable interests.

# Highland Capital Management Fund Advisors, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

**Consolidation of Wholly Owned Entity**
The Partnership consolidates the following entity as it has a controlling interest:

- 100% interest in Highland Capital Funds Distributor, Inc. ("HCFD"), a Delaware Corporation incorporated on June 14, 2012 as Pyxis Distributors, Inc. Effective March 19, 2013, the Pyxis Distributors changed its name to Highland Capital Funds Distributor, Inc. For the period from June 14, 2012 through November 19, 2013, HCFD was in the development stage, engaging in preparation of applications for regulatory approvals, raising of capital, financial planning, systems development, procurement of equipment and facilities and recruiting activities. On November 20, 2013, HCFD, upon receiving all the necessary regulatory approvals, officially began operations as a registered broker dealer. HCFD is the distributor and underwriter of the mutual funds advised by the Partnership and closed-end funds advised by another affiliate. HCFD does not engage in direct transactions with investors. The primary business activities of HCFD are underwriting, wholesale fund marketing and distribution activities.

All inter-partnership and intercompany accounts and transactions have been eliminated in consolidation of the aforementioned consolidated entity. No other entities meet the criteria for consolidation.

**Recognition of Revenue**
The Partnership recognizes revenue as earned in connection with services provided under investment advisory agreements. Under these agreements, the Partnership earns advisory and administrative fees calculated as a percentage of assets under management. During the year ended December 31, 2018, the Partnership recognized advisory and administrative fees of approximately $19,365,000, and $3,692,000, respectively.

Marketing and administrative services revenues, as well as managing broker-dealer fees and underwriter commissions, are recognized as revenue at the time the services are provided.

**Income Taxes**
For U.S. income tax purposes, the Partnership is treated as a pass-through-entity, which means it is not subject to income taxes under current Internal Revenue Service or state and local guidelines, and therefore, no provision has been made for such taxes in the accompanying consolidated financial statements. Each partner is individually liable for income taxes, if any, on their share of the Partnership's net taxable income. HCFD is subject to state and federal income taxes.

The Partnership files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, the Partnership is subject to examination by state, federal and foreign jurisdictions, where applicable. As of December 31, 2018, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2015 forward (with limited exceptions).

# Highland Capital Management Fund Advisors, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

Authoritative guidance on accounting for and disclosure of uncertainty in tax positions requires the General Partner to determine whether a tax position of the Partnership is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position.  For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that as a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority.  The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2018.

HCFD accounts for income taxes under the liability method. Deferred tax assets and liabilities are recognized for the future tax consequences attributable to differences between the balance sheet carrying amounts of existing assets and liabilities and their respective tax bases. Deferred tax assets and liabilities are measured using the enacted tax rates in the years in which those temporary differences are expected to be recovered or settled. When applicable, a valuation allowance is established to reduce any deferred tax asset when it is determined that it is more-likely-than-not that some portion of the deferred tax asset will not be realized.

As of December 31, 2018 HCFD had a deferred tax asset of $60,000.

**Cash and Cash Equivalents**
Cash and cash equivalents consist of cash held at U.S. and foreign banks, deposits with original maturities of less than 90 days, and money market funds.  Cash equivalents are carried at cost, which approximates market value. At December 31, 2018, the Partnership held cash balances at certain financial institutions in excess of the federally insured limit of $250,000. The Partnership regularly monitors the credit quality of these institutions.

**Segregated Cash**
HCFD serves as administrator to a 12b-1 Plan (the "Plan") adopted by the mutual funds advised by the Partnership. HCFD collects 12b-1 fees from the mutual funds to be disbursed for future eligible marketing and distribution costs of the Plan. These amounts are reported as Segregated cash and Amounts payable on behalf of the 12b-1 Plan on the accompanying Consolidated Balance Sheet.

**Investments in Marketable Securities**
Investments in marketable securities are classified as trading and carried at fair value. Unrealized gains or losses related to trading securities are reported within the Consolidated Statement of Income in the period they occur.

**Insurance Proceeds Receivable**
The Partnership maintains insurance coverage under a Directors & Officers and Errors and Omissions policy (the "Policy").  Under the Policy, $5,000,000 of the total amounts due to funds advised by the Partnership, as further discussed in Footnote 7, were covered under the Policy and a receivable of the Partnership was accrued as of December 31, 2018.  This amount is included within Insurance proceeds receivable on the Consolidated Balance Sheet.
.

# Highland Capital Management Fund Advisors, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

**Fixed Assets**

Fixed assets are carried at cost, less accumulated depreciation. Depreciation is provided using the straight-line method over the shorter of the estimated useful life of the assets or the lease term.

The Partnership's policy for depreciating fixed assets is as follows:

|  | Useful life |
|---|---|
| Leasehold improvements | Lease term |
| Buildings | 29 - 40 years |
| Furniture and fixtures | 7 years |
| Computer and equipment | 5 years |
| Computer software | 3 years |

**Intangible Assets**

In 2011, the Partnership obtained the rights to the management contracts of certain Registered Investment Companies by acquiring the underlying contracts from the predecessor investment manager. The current carrying values of the purchased investment contracts are approximately $4,275,000 which consists of the initial purchase payment and the year one and year two anniversary payments. The Partnership performs an impairment test on the purchased investment contracts on an annual basis. Any impairment in the value of the purchased investment management contracts are accounted for in the year when it occurs. The carrying values of the purchased investment contracts are not adjusted for appreciation, are indefinite-lived assets and are not amortized.

**Partners' Deficit**

The Partnership agreement requires that income or loss of the Partnership be allocated to the partners in accordance with their respective partnership interests. In the event the Limited Partners incur a loss, it will be allocated to the General Partner. As subsequent income is earned, the General Partner will recoup all prior year allocated losses.

3. **Investments in Marketable Securities**

Detailed below is a summary of HCFD's held for trading investments at December 31, 2018:

| *(in thousands)* | Cost | Fair Value |
|---|---|---|
| Mutual funds | $ 888 | $ 707 |
| Total investments | $ 888 | $ 707 |

# Highland Capital Management Fund Advisors, L.P.
**(A Delaware Limited Partnership)**
## Notes to Consolidated Financial Statements
## December 31, 2018

4.    **Fair Value of Financial Instruments**

**Fair Value Measurement**

U.S. GAAP defines fair value as the price an entity would receive to sell an asset or pay to transfer a liability in an orderly transaction between market participants as of the measurement date. The standard requires fair value measurement techniques to reflect the assumptions market participants would use in pricing an asset or liability and, where possible, to maximize the use of observable inputs and minimize the use of unobservable inputs. It also establishes the following hierarchy that prioritizes the valuation inputs into three broad levels:

- Level 1 – Valuation based on unadjusted quoted prices in active markets for identical assets and liabilities that the Partnership and the Consolidated Investment Funds have the ability to access as of the measurement date.  Valuations utilizing Level 1 inputs do not require any degree of judgment.

- Level 2 – Valuations based on (a) quoted prices for similar instruments in active markets; (b) quoted prices for identical or similar instruments in markets that are not active that are reflective of recent market transactions; or (c) models in which all significant inputs are observable, either directly or indirectly.

- Level 3 – Valuations based on indicative quotes that do not reflect recent market transactions and models or other valuation techniques in which the inputs are unobservable and significant to the fair value measurement, which includes situations where there is little, if any, market activity for the asset or liability.

As of December 31, 2018, HCFD's investments consisted entirely of mutual funds which are valued based off of unadjusted quoted prices.

HCFD categorizes investments recorded at fair value in accordance with the hierarchy established under U.S. GAAP.  All of HCFD's investments at December 31, 2018 are classified as Level 1 positions.

5.    **Fixed Assets**

Fixed assets are comprised of the following as of December 31, 2018:

*(in thousands)*

| | | |
|---|---|---|
| Computer and equipment | $ | 81 |
| Furniture and fixtures | | 6 |
| Less: accumulated depreciation | | (79) |
| | $ | 8 |

**Highland Capital Management Fund Advisors, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

6.    **Income Taxes**

At December 31, 2018, HCFD had state and federal tax liabilities of approximately $30,000, which are included in the "Income tax expense" line item on the consolidated statement of income.

Components of the income taxes for the year ended December 31, 2018 are as follows:

*(in thousands)*

| | | |
|---|---:|---:|
| **Current:** | | |
| Federal | $ | 3 |
| State | | 8 |
| Total current | | 11 |
| **Deferred:** | | |
| Federal | | 16 |
| State | | 3 |
| Total deferred | | 19 |
| Total provision for incomes taxes | $ | 30 |

A reconciliation between HCFD's amount of the reported provision for income taxes and expected income tax (computed by multiplying the statutory federal income tax rate (21%) times income before provision for income taxes) is as follows:

*(in thousands)*

| | | |
|---|---:|---:|
| Expected provision for income taxes | $ | 20 |
| Other | | 3 |
| Nondeductible expenses | | 1 |
| State income taxes | | (5) |
| Provision for income taxes | $ | 19 |

# Highland Capital Management Fund Advisors, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

The components of deferred tax assets and liabilities are as follows:

*(in thousands)*

| | |
|---|---:|
| **Deferred Tax Assets** | |
| Net operating loss | 12 |
| Capital assets | 42 |
| Accrued expenses | 49 |
| Depreciation and amortization | 1 |
| Total deferred tax assets | 104 |
| Valuation allowance | (42) |
| Deferred tax assets, net of valuation allowance | $   62 |
| **Deferred Tax Liabilities** | |
| Accrued expenses | (2) |
| Depreciation and amortization | - |
| Total deferred tax liabilities | (2) |
| Net deferred tax asset | $   60 |

Deferred tax assets are primarily the result of tax deductions for HCFD's deferred compensation plans. HCFD has awarded bonuses to eligible employees which will not be deducted for tax purposes until payment is made. This temporary timing difference generates deferred taxes. HCFD's accrued expenses also generate deferred taxes because HCFD's tax deductions are lower than the expense recorded for financial statement purposes.

The Partnership and HCFD are subject to U.S. state and federal income tax examinations by tax authorities for 2015 forward.

7. **Related Party Transactions**

**Expenses Reimbursable by Funds Managed**
In the normal course of business, the Partnership and HCFD typically pay invoices they receive from vendors for various services provided to various managed funds.  Additionally, due to certain expense caps for various funds, the Partnership will pay expenses incurred on behalf of the funds, which exceed their expense limits. A summary of these eligible reimbursable expenses are then submitted to the trustee/administrator for each respective fund, and the Partnership receives payment as reimbursement for the payments on behalf of the respective funds. As of December 31, 2018, approximately $1,830,000 in reimbursable expenses, net of reserves, were due from various affiliated funds and entities for these eligible expenses, and is included in Receivables from affiliates in the accompanying Consolidated Balance Sheet.

**Accounts Held with Related Affiliates**
During the year the Partnership maintained bank accounts at NexBank, SSB ("NexBank"), an affiliate by way of common control.  As of December 31, 2018, balances in the accounts were approximately $354,000.

# Highland Capital Management Fund Advisors, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

**Services Performed by or on Behalf of an Affiliate**

Effective December 15, 2011, Highland Capital Management, LP ("Highland") commenced performing services on behalf of the Partnership. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership is charged a fee for the services provided. For the year ended December 31, 2018, the total fee charged to the Partnership by Highland was approximately $2,742,000 included as Shared services expense on the accompanying Consolidated Statement of Income and as of December 31, 2018, $236,000 was owed to Highland by the Partnership which is included in Due to affiliates on the accompanying Consolidated Balance Sheet.

Effective January 1, 2018, Highland entered in to a Payroll Reimbursement Agreement (the "Agreement") with the Partnership. Under the Agreement, the Partnership reimburses Highland for the cost of any dual employees of Highland and the Partnership and who provide advice to registered investment companies advised by the Partnership. For the year ended December 31, 2018, the total fees charged to the Partnership by Highland was approximately $6,192,000 included as Subadvisory fees on the accompanying Consolidated Statement of Income. No amounts were owed to Highland by the Partnership as of December 31, 2018.

HCFD derives a portion of its income on marketing and administrative services it performs for and on behalf of Nexpoint Advisors, L.P. ("NPA"), a related party. The actual cost of such services will be allocated, plus an applicable margin, and will be billed monthly. During the year ended December 31, 2018, HCFD derived approximately $1,125,000 in income, which is included in the Marketing and administrative services line item on the accompanying Consolidated Statement of Income.

HCFD serves as the principal underwriter for, and offers for sale on a continuous basis, each of NPA's Delaware statutory trusts and other registered products. A portion of the HCFD's income is derived from managing broker dealer fees collected in relation to serving as the principal underwriter. During the year ended December 31, 2018, HCFD derived approximately $1,407,000 in income, which is included in the Managing broker-dealer fees line item on the accompanying Consolidated Statement of Income.

HCFD serves as the principal underwriter for, and offers for sale on a continuous basis, each of HCMFA's and NPA's advised funds. A portion of the HCFD's income is derived from underwriter commissions collected in relation to serving as the principal underwriter. During the year ended December 31, 2018, HCFD derived approximately $47,000 in income, which is included in the Underwriter commissions line item on the accompanying Consolidated Statement of Income.

HCFD's held for trading investment is held in a mutual fund managed by the Partnership.

**Notes Payable to an Affiliate**

Effective February 26, 2014, the Partnership issued a promissory note to Highland in the amount of $4,000,000. The note accrued interest at a rate of 1.97%, the mid-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2018 total interest due on the promissory note was approximately $382,000, is payable on demand, and is included in Due to affiliates in the accompanying Consolidated Balance Sheet. The fair value of the Partnership's outstanding notes payable approximates the carrying value of the notes payable.

# Highland Capital Management Fund Advisors, L.P.
**(A Delaware Limited Partnership)**
## Notes to Consolidated Financial Statements
### December 31, 2018

Effective February 26, 2016, the Partnership issued a promissory note to Highland in the amount of $2,300,000. The note accrued interest at a rate of 2.62%, the long-term applicable federal rate as promulgated by the Internal Revenue Service. During prior years, the Partnership partially paid down on principal, leaving an outstanding principal balance of $895,000 at year end, which is payable on demand. As of December 31, 2018 total interest due on the promissory note was approximately $40,000 and is included in Due to affiliates in the accompanying Consolidated Balance Sheet. The fair value of the Partnership's outstanding notes payable approximates the carrying value of the notes payable.

Management assessed the ability of the Partnership to continue operating as a going concern for the foreseeable future. Taking into account current and projected cash and cash equivalent resources, the Partnership may not be able to repay the above promissory notes payable to Highland if Highland were to demand payment of such promissory notes within the next twelve months. The Partnership has reduced on-going operating costs  which will provide an increase in profitability as well as future cash resources. Highland has entered into a written agreement with the Partnership that Highland will not demand payment on the notes payable discussed above prior to May 31, 2021.

**Due to Affiliates**
For the year ended December 31, 2018, it was determined that the valuation of certain advised funds' investments was incorrect during a period beginning in March 2018 through at least December 31, 2018. The funds have recognized receivables due from the Partnership in the amount of approximately $7,509,000 in the aggregate for overpayments made on redemption payments to certain investors resulting from the incorrect valuation. This amount is included within Due to affiliates on the Consolidated Balance Sheet.

In addition to the amounts included above, the Due to affiliates financial statement line item includes amounts of approximately $934,000 and $422,000 payable to related parties primarily related to employee expense reimbursements and accrued interest on the notes payable to Highland, respectively.

8. **Commitments**

**Contracts in the Normal Course of Business**
In the normal course of business the Partnership may enter into contracts which provide general indemnifications and contain a variety of presentations and warranties that may expose the Partnership and its subsidiaries to some risk of loss.  In addition to the other financial commitments discussed in the consolidated financial statements, the amount of future losses arising from such undertakings, while not quantifiable, is not expected to be significant.

**Employment Agreements**
All employees of the Partnership are subject to an employment agreement. Certain of these agreements prescribe employee compensation based on explicitly defined calculations. The amount of payments arising from such agreements is not expected to significantly deviate from discretionary compensation that would be awarded by the Partnership in the normal course of business.

# Highland Capital Management Fund Advisors, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

**Employee Benefits**

The Partnership, and its other affiliates, has a noncontributory profit sharing plan integrated with a contributory 401(k) employee benefit plan (Benefit Plan) covering substantially all employees. Employees generally become eligible in the Benefit Plan upon attainment of the age of 21, with entry dates of January 1 and July 1 of each year.  Under the Benefit Plan, the Partnership may contribute, at their discretion and subject to annual limitations, certain amounts in the form of matching, profit sharing and/or qualified non-elective contributions. Benefit Plan expense for the year ended December 31, 2018 was $305,000 and is included in the Compensation and benefits line item on the accompanying Consolidated Statement of Income.

9.   **Other Intangible Assets**

On February 18, 2011, the Partnership purchased 16 management contracts from GE Asset Management Inc., collectively the "Purchased Funds."  The combined purchase price for the above agreements was approximately $4,275,000 which consists of the initial purchase payment of approximately $2,207,000 and the year one and year two anniversary payments of approximately $1,111,000 and $957,000 respectively.

The Partnership performs an impairment test as required by U.S. GAAP on a yearly basis.  The Partnership's management analyzes market multiples on retail asset managers within the industry as of December 31, 2018 to determine fair value of these assets.  The Partnership has determined that no impairment charge is necessary for the current year.

10.   **Risk**

**Custody Risk**

All of the Partnership's cash is held with banks, which have worldwide custody facilities and are members of all major securities exchanges.  The Partnership may lose all or a portion of the assets held by these banks if they become insolvent or fail to perform pursuant to the terms of their obligations.  While both the U.S. Bankruptcy Code and the Securities Investor Protection Act of 1970 seek to protect customer property in the event of a broker-dealer's failure, insolvency or liquidation, the Partnership might be unable to recover the full value of their assets or incur losses due to their assets being unavailable for a period of time.

**Market Risk**

Market risk represents the potential loss that may be incurred by the due to a change in the market value of its investments.  The Partnership's exposure to market risk is affected by a number of macroeconomic factors, such as interest rates, availability of credit, inflation rates, economic uncertainty and changes in laws and regulations.  These factors may affect the level and volatility of securities prices and the liquidity of the Partnership's investments. Volatility or illiquidity could impair the Partnership's performance or result in losses.  The Partnership may maintain substantial trading positions that can be adversely affected by the level of volatility in the financial markets.

# Highland Capital Management Fund Advisors, L.P.
**(A Delaware Limited Partnership)**
## Notes to Consolidated Financial Statements
## December 31, 2018

**Credit Risk**

Credit risk is the potential loss the Partnership may incur as a result of the failure of a counterparty or an issuer to make payments according to the terms of a contract. To limit the credit risk associated with such transactions, the Partnership executes transactions with financial institutions that the Partnership believes to be financially viable.

**Business Risk**

The Partnership provides marketing and administrative services to HCFD. HCFD could be materially affected by the liquidity, credit and other events of the Partnership.

11.  **Legal Proceedings**

The Highland Global Allocation Fund ("Fund") received a shareholder demand letter dated March 1, 2018, from an individual purporting to be a shareholder of the Fund (the "Demand Letter"). The Demand Letter alleges that the current and former Board of Highland Funds II breached their fiduciary duties, and the Adviser breached its advisory agreement, in relation to the Fund's investment in shares of an affiliated mutual fund, the Highland Energy MLP Fund (also a series of Highland Funds II). Upon receipt of the Demand Letter, the Board formed a Demand Review Committee ("DRC") comprised entirely of independent trustees to investigate these claims and to make a recommendation to the Board regarding whether pursuit of these claims is in the best interests of the Fund. Aided by independent counsel to the committee, the DRC engaged in a thorough and detailed review of the allegations contained in the Demand Letter. Upon completion of its evaluation, the DRC recommended that the Fund's independent trustees, who represent a majority of the Board, reject the demand specified in the shareholder Demand Letter. After considering the report of the DRC, the independent trustees unanimously agreed and rejected the demand, noting that the Demand Letter contained material factual errors and incorrect assumptions, and the proposed suit was meritless and should not be pursued. A copy of the report was provided to the purported shareholder and her counsel.

Notwithstanding the foregoing, the purported shareholder (the "Plaintiff") filed a shareholder derivative suit against the Fund, certain members of the Board and the Partnership on September 5, 2018 (the "Shareholder Litigation). Pursuant to applicable federal rules of procedure, the Plaintiff was required to include the DRC's independent report as an attachment to its complaint, but failed to do so. The Partnership believes the Plaintiff failed to attach the DRC report as required because it is entirely exculpatory. Based on the extensive pre-suit investigation and the resulting report, The Fund, Board and the Partnership believe the claims made in the Shareholder Litigation are without merit and have filed a motion to dismiss.

**Highland Capital Management Fund Advisors, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

12.  **Subsequent Events**

On February 13, 2019, Highland Global Allocation Fund, one of the open-ended funds advised by the Partnership, converted to a closed-end fund. Pursuant to the conversion, shareholders who had voted for the conversion and held their shares through the conversion earned a 3% consent fee. This fee was partially paid by the Partnership on 5/3/2019 in the amount of $5,019,000.

Over the course of 2019, through the report date, the Partnership issued promissory notes to Highland in the aggregate amount of $7,400,000. The notes accrue interest at a rate of 2.39%, the mid-term applicable federal rate as promulgated by the Internal Revenue Service.

On March 15, 2019, HCFD changed it's name to NexPoint Securities, Inc.

The Partnership has performed an evaluation of subsequent events through June 3, 2019, which is the date the financial statements were available to be issued.

**Highland Capital Management Fund Advisors, L.P.**

**Supplemental Information**

**As of and year ended December 31, 2018**

# Highland Capital Management Fund Advisors, L.P.
**(A Delaware Limited Partnership)**
**Supplemental Consolidating Balance Sheet**
**December 31, 2018**

*(in thousands)*

| | Highland Capital Management Fund Advisors, L.P. | Highland Capital Funds Distributor, Inc. | Eliminations | Consolidated |
|---|---|---|---|---|
| **Assets** | | | | |
| Cash and cash equivalents | $ 354 | $ 1,368 | $ - | $ 1,722 |
| Segregated cash | - | 116 | - | 116 |
| Equity method investees | 2,717 | - | (2,717) | - |
| Investments in marketable securities, at fair value (cost $888) | - | 707 | - | 707 |
| Advisory and administrative fees receivable | 2,404 | - | - | 2,404 |
| Insurance proceeds receivable | 5,000 | - | - | 5,000 |
| Receivables from affiliates | 969 | 1,138 | (277) | 1,830 |
| Prepaid expenses | 381 | - | - | 381 |
| Income tax receivable | - | 105 | - | 105 |
| Deferred tax asset | - | 60 | - | 60 |
| Other assets | - | 51 | - | 51 |
| Purchased investment management contracts | 4,275 | - | - | 4,275 |
| Fixed assets and leasehold improvements, net of accumulated depreciation ($79) | 8 | - | - | 8 |
| **Total assets** | $ 16,108 | $ 3,545 | $ (2,994) | $ 16,659 |
| **Liabilities and Partners' Capital/(Deficit)** | | | | |
| **Liabilities** | | | | |
| Accounts payable | $ 588 | $ 67 | $ - | $ 655 |
| Amounts payable on behalf of 12b-1 plan | - | 116 | - | 116 |
| Accrued and other liabilities | 3,114 | 474 | - | 3,588 |
| Other due to affiliates | 8,971 | 171 | (277) | 8,865 |
| Notes payable to affiliates | 4,895 | - | - | 4,895 |
| **Total liabilities** | 17,568 | 828 | (277) | 18,119 |
| Partners' capital/(deficit) | (1,460) | 2,717 | (2,717) | (1,460) |
| **Total liabilities and partners' capital/(deficit)** | $ 16,108 | $ 3,545 | $ (2,994) | $ 16,659 |

# Highland Capital Management Fund Advisors, L.P.
**(A Delaware Limited Partnership)**
## Supplemental Consolidating Statement of Income
## Year Ended December 31, 2018

*(in thousands)*

| | Highland Capital Management Fund Advisors, L.P. | Highland Capital Funds Distributor, Inc. | Eliminations | Consolidated |
|---|---|---|---|---|
| **Revenue:** | | | | |
| Advisory fees | $ 19,365 | $ - | $ - | $ 19,365 |
| Administrative fees | 3,692 | - | - | 3,692 |
| Managing broker-dealer fees | - | 1,407 | - | 1,407 |
| Marketing and administrative services | - | 3,025 | (1,900) | 1,125 |
| Underwriter commissions | - | 47 | - | 47 |
| Miscellaneous income | 579 | 22 | (579) | 22 |
| Total revenue | $ 23,636 | $ 4,501 | $ (2,479) | $ 25,658 |
| **Operating expenses:** | | | | |
| Compensation and benefits | 6,370 | 3,212 | - | 9,582 |
| Subadvisory fees | 6,686 | - | - | 6,686 |
| Shared services expense | 2,742 | 579 | (579) | 2,742 |
| Broker dealer expenses | 1,900 | - | (1,900) | - |
| Advanced commissions and 12b-1 expense, net | 722 | - | - | 722 |
| Professional fees | 709 | 248 | - | 957 |
| Other operating expenses | 342 | 174 | - | 516 |
| Research expense | 683 | - | - | 683 |
| Marketing and advertising expense | 98 | 181 | - | 279 |
| Interest expense | 104 | - | - | 104 |
| Total operating expenses | 20,356 | 4,394 | (2,479) | 22,271 |
| Income before unrealized losses on investments in marketable securities, other losses, and taxes | 3,280 | 107 | - | 3,387 |
| **Unrealized gains/(losses) on investments in marketable securities and equity method investees:** | | | | |
| Unrealized losses on investments in marketable securities | - | (14) | - | (14) |
| Net unrealized gain from equity method investees | 63 | - | (63) | - |
| Total unrealized losses on investments in marketable securities | 63 | (14) | (63) | (14) |
| **Other income/(losses):** | | | | |
| Proceeds from insurance recovery | 5,000 | - | - | 5,000 |
| Losses reimbursable to managed funds | (7,509) | - | - | (7,509) |
| Total other losses | (2,509) | - | - | (2,509) |
| Income before income tax expense | 834 | 93 | (63) | 864 |
| Income tax expense | - | (30) | - | (30) |
| **Net income** | $ 834 | $ 63 | $ (63) | $ 834 |

# Highland Capital Management Fund Advisors, L.P.
**(A Delaware Limited Partnership)**
## Supplemental Unconsolidated Balance Sheet
## December 31, 2018

*(in thousands)*

**Assets**

| | | |
|---|---|---:|
| Cash and cash equivalents | $ | 354 |
| Equity method investees | | 2,717 |
| Advisory and administrative fees receivable | | 2,404 |
| Insurance proceeds receivable | | 5,000 |
| Receivables from affiliates | | 969 |
| Prepaid expenses | | 381 |
| Purchased investment management contracts | | 4,275 |
| Fixed assets and leasehold improvements, net of accumulated depreciation ($64) | | 8 |
| **Total assets** | $ | 16,108 |

**Liabilities and Partners' Deficit**

**Liabilities**

| | | |
|---|---|---:|
| Accounts payable | $ | 588 |
| Accrued and other liabilities | | 3,114 |
| Due to affiliates | | 8,971 |
| Notes payable to affiliates | | 4,895 |
| Total liabilities | | 17,568 |
| Partners' deficit | | (1,460) |
| **Total liabilities and partners' deficit** | $ | 16,108 |

# Highland Capital Management Fund Advisors, L.P.
**(A Delaware Limited Partnership)**
**Supplemental Unconsolidated Statement of Income**
**Year Ended December 31, 2018**

*(in thousands)*

| | | |
|---|---|---:|
| **Revenue:** | | |
| Advisory fees | $ | 19,365 |
| Administrative fees | | 3,692 |
| Miscellaneous income | | 579 |
| Total revenue | $ | 23,636 |
| **Operating expenses:** | | |
| Subadvisory fees | | 6,686 |
| Compensation and benefits | | 6,370 |
| Shared services expense | | 2,742 |
| Broker dealer expenses | | 1,900 |
| Advanced commissions and 12b-1 expense, net | | 722 |
| Research expense | | 683 |
| Professional fees | | 709 |
| Other operating expenses | | 342 |
| Interest expense | | 104 |
| Markting and advertising expense | | 98 |
| Total operating expenses | | 20,356 |
| Income before investment activities and other losses | | 3,280 |
| Net unrealized gain from equity method investees | | 63 |
| **Other income/(losses):** | | |
| Proceeds from insurance recovery | | 5,000 |
| Losses reimbursable to managed funds | | (7,509) |
| Total other losses | | (2,509) |
| **Net income** | $ | 834 |

# EXHIBIT 33



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
FORT WORTH REGIONAL OFFICE
BURNETT PLAZA, 19TH FLOOR
801 CHERRY STREET, UNIT 18
FORT WORTH, TEXAS 76102
817-978-3821

<u>DELIVERY VIA SECURE EMAIL</u>
jpost@highlandcapital.com

February 27, 2019

Mr. Jason Post
Chief Compliance Officer
Highland Capital Management Fund Advisors, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201

Re:   <u>Examination of Highland Capital Management Fund Advisors, L.P. (File No. 801-69968)</u>

Dear Mr. Post:

The staff conducted an examination of Highland Capital Management Fund Advisors, L.P. (the "Adviser" or "Highland"), which evaluated compliance with certain provisions of the federal securities laws or other applicable rules and regulations (together, "federal securities laws"). The examination identified the deficiencies and weaknesses in controls (together, "findings") that are described in <u>Exhibit A</u>, and which the Staff discussed during an exit interview with you on February 26, 2019.

The staff is bringing these findings to your attention for immediate corrective action, without regard to any other action(s) that may result from the examination. The findings are based on the staff's examination and are not findings or conclusions of, or binding on, the Commission or any of its divisions or offices. You should not conclude that any of the firm's activities not discussed in <u>Exhibit A</u> are in full compliance with the federal securities laws. Nor should you conclude that <u>Exhibit A</u> sets forth an exhaustive list of the ways in which the firm's activities do not comply with the federal securities laws. Neither the staff's findings or its communications during the course of the examination nor any remedial actions undertaken in response to such findings or communications foreclose the Commission from taking any action, including but not limited to an enforcement action, with respect to the firm.

The descriptions of the federal securities laws and related interpretations in Exhibit A may be paraphrased or abbreviated. Please visit our website at https://www.sec.gov/divisions.shtml for complete information related to these regulatory requirements.

Please respond in writing to each of the matters described in Exhibit A by March 29, 2019 describing any steps you have taken or intend to take with respect to each deficiency identified.

You should respond directly to this office as follows:

> Marshall Gandy, Associate Regional Director
> U.S. Securities and Exchange Commission
> Fort Worth Regional Office
> 801 Cherry Street, Suite 1900, Unit 18
> Fort Worth, TX 76102

Thank you for your cooperation. If you have any questions, please contact me at (817) 900-2622 or Linda Hoffman at (817) 978-6436.

Sincerely,

Marshall Gandy
Associate Regional Director

Attachment: Exhibit A

EXHIBIT A
Examination Findings
Highland Capital Management Fund Advisors, L.P

## I.      Fair Valuation of Portfolio Securities

Relevant Law

Rule 22c-1 under the Investment Company Act ("IC Act") prohibits the sale or redemption of shares in a registered investment company "except at a price based on the current net asset value of such security which is next computed after receipt of a tender of such security for redemption or of an order to purchase or sell such security."  For a net asset value ("NAV") to be current, Section 2(a)(41) of the IC Act and Rule 2a-4 thereunder require portfolio securities for which market quotations are not readily available to be fair valued as determined by the fund's board of directors.

Exam Observations

Highland Global Allocation Fund ("Global Allocation Fund" or the "Fund"), a series of Highland Funds II, holds a significant position in illiquid and restricted shares of TerreStar Corporation ("TerreStar").  As of April 30, 2018, the Fund held 29.5% of its net assets in illiquid securities, including 16.8% and 9.9% of its net assets in restricted stock and debt, respectively, of one issuer, TerreStar.

The Fund's "Policy Regarding Valuation" provides that when fair valuation is appropriate for a security, the Funds' investment adviser, Highland Capital Management Fund Advisors, LP (the "Adviser"), may determine that the security's fair value is the value provided by a third-party valuation provider ("independent pricing service"). The Adviser is responsible for "providing or making available to the independent pricing service any information that would be material for the service to consider in determining the proper valuation."  The Adviser has engaged Houlihan Lokey ("Houlihan") since 2015 as the independent pricing service to fair value the shares of TerreStar.

Houlihan's fair valuation for TerreStar relies on inputs provided by Highland.  Key inputs for Houlihan's fair valuation of TerreStar have included: (i) Highland's estimated 75% probability that TerreStar would be successful in its appeal of the FCC's  order dated October 10, 2017 denying TerreStar's waiver request and terminating its 1.4GHz license as of April 23, 2017, and (ii) Highland's determination that the Crusader and Off-Ziff transactions in TerreStar equity at $114 per share in March 2018 (the "March Transactions") were not orderly transactions for purposes of ASC 820 and to place no weight on these transaction prices when fair valuing TerreStar.[1]

---

[1]  Certain registered funds managed by the Adviser and its affiliates purchased 191,000 equity shares of TerreStar from Highland Crusader Offshore Partners, L.P. ("Crusader") for $21.774 million on March 14, 2018  at $114 per share.  Additionally, TerreStar negotiated a purchase and sale agreement to repurchase and retire 96,106 of its own equity shares from Och-Ziff Capital Management ("Och-Ziff") for $10.956 million on March 16, 2018 at $114 per share.

3

In its valuations, Houlihan evaluated the FCC's order and potential impact, and also evaluated the Crusader and Och-Ziff transactions in March 2018. Houlihan valued the TerreStar position at month-end during the 12 months ended June 30, 2018 as follows:

| Month-End | TerreStar equity per share |
|---|---|
| 6/30/2017 | $315.96 |
| 7/31/2017 | $316.36 |
| 8/31/2017 | $315.47 |
| 9/30/2017 | $315.81 |
| 10/31/2017 | $313.00 |
| 11/30/2017 | $313.29 |
| 12/31/2017 | $312.18 |
| 1/31/2018 | $312.04 |
| 2/28/2018 | $303.52 |
| 3/31/2018 | $278.74 |
| 4/30/2018 | $274.61 |
| 5/31/2018 | $241.44 |
| 6/30/2018 | $261.83 |

The Fund sold 71,428 shares of TerreStar to Solus Opportunities Fund LP ("Solus") on July 3, 2018 at a price of $350 per share (the "Solus Sale").

At a meeting held July 23, 2018, the Fund's board of trustees (the "Board") approved converting the Fund to a closed-end fund, subject to shareholder approval at a meeting to be held November 8, 2018.[2] The Fund filed a preliminary proxy statement on August 6, 2018 and filed a definitive proxy statement ("proxy statement") on October 11, 2018. The proxy statement disclosed that illiquid assets currently constituted approximately 33% of the Fund's assets, substantially all of which is TerreStar equity and debt, due to historical fund outflows, related sales of liquid assets and, to a lesser extent, illiquid asset appreciation.

The proxy statement also disclosed that the Fund's former independent auditor reviewed the TerreStar valuation during its recent audit of affiliated funds and, in September 2018, estimated the likelihood of TerreStar successfully appealing the FCC order to be in a significantly lower range than Highland's estimate.[3] The proxy statement further disclosed that the Fund's former independent auditor concluded that the Crusader and Och-Ziff transactions were orderly under

---

[2] The Fund's shareholders approved converting the Fund to a closed-end fund at the shareholders meeting held November 8, 2018. As disclosed in the supplement dated November 15, 2018 to the Fund's prospectus, the conversion "is in process and is expected to close later in the fourth quarter of 2018." The Fund's registration as a closed-end fund on Form N-2 was declared effective by the Commission on February 13, 2019. The New York Stock Exchange approved the listing and registration of the Fund's common shares under the Securities Exchange Act of 1934 on February 14, 2019.

[3] The Fund's former independent auditor is KPMG.

4

the relevant accounting standards and that these transactions should be given weight in the valuation.[4]

The Fund's former independent auditor, KPMG, was terminated prior to completion of the Fund's audit of its financial statements for fiscal year-end September 30, 2018. Highland Funds II signed an engagement letter dated November 6, 2018 with PwC for the audit of the financial statements of Highland Funds II, including the Fund, at September 30, 2018.

PwC completed its audit of Global Allocation Fund on February 11, 2019.[5] In connection with the Fund's audit, the Adviser submitted consultation materials dated January 18, 2019 and February 9, 2019 (collectively, the "Consultation Materials") to the Commission's Office of Chief Accountant ("OCA"). The Consultation Materials disclosed that the Adviser had further evaluated the March Transactions, and had now determined that both the Crusader and Och-Ziff transactions should be classified as orderly for purposes of ASC 820.

The Consultation Materials included a proposed fair value methodology for TerreStar that reflected classification of the March Transactions as orderly and weightings for March Transactions, the Houlihan model, the Solus Sale and the Family Office Sale.[6] As disclosed in the Consultation Materials, PwC had informed Highland that in connection with its September 30, 2018 audit of the Fund, PwC had concluded that the Fund's proposed accounting for and valuation of the TerreStar investment is reasonable in all material respects. The Fund's Audit Committee, by letter dated February 6, 2019 to OCA, indicated it agreed with the proposed fair value methodology of TerreStar set forth in the Consultation Materials.

The Adviser disclosed in the Consultation Materials that the proposed fair value methodology for TerreStar would result in Fund net asset value ("NAV") errors (i.e., the Fund's NAV would have been overstated) commencing from the date of the Crusader transaction on March 14, 2018. The Adviser provided a summary in the Consultation Materials with estimates of the Fund's loss and shareholders' losses through the date of the Fund's financial statements (i.e., September 30, 2018).

The staff requests that you provide the following information:

1) A table with the following information for _each_ business day from March 14, 2018 through the date on which the Adviser implemented its updated fair value methodology for TerreStar set forth in the Consultation Materials (the period from March 14, 2018 through the date on which the Adviser implemented its updated fair value methodology for TerreStar is referred to herein as the "NAV error period"):

---

[4] Separately, in the letter dated August 20, 2018 from the staff of the Division of Investment Management to the Fund's counsel, the staff stated that it did not find persuasive – for the reasons set forth in the staff's letter – the Fund's assertion that the Crusader and Och-Ziff transactions were not orderly.

[5] The Fund filed its Form N-CSR with the Commission on February 11, 2019 for the Fund's fiscal year ended September 30, 2018.

[6] The Fund sold 65,591 shares of TerreStar to L-Band Fund II, LP (the "Family Office") on December 7, 2018 at a price of $350 per share (the "Family Office Sale").

      a) Original valuation of TerreStar
      b) Revised valuation of TerreStar
      c) Fund's NAV
      d) Fund's restated NAV
      e) Amount of NAV adjustment (expressed in dollars and cents)
      f) Amount of NAV adjustment  (expressed as a percentage of the original NAV)
      g) Fund's total net assets
      h) Fund's restated total net assets

2) The dollar amount of the Fund's net redemptions over the NAV error period.

3) Whether there was a loss to the Fund from net redemptions over the NAV error period, and the amount of such loss.  Provide documentation of whether the Fund was made whole for the loss and the entity that made the Fund whole.

4) A gain/loss report by individual shareholder account as a result of NAV adjustments over the NAV error period (i.e., for an NAV adjustment downward, shareholders that purchased shares of the Fund on that date should receive either a refund of excess subscription monies paid or a credit to their account for additional shares of the Fund).

5) For those shareholder accounts listed in the report with losses:
      a) documentation of whether the account was re-processed to make the shareholder (or former shareholder) whole for all losses;
      b) documentation regarding the entity that made the shareholder whole; and
      c) documentation demonstrating that the intermediary and/or sub-intermediary responsible for re-processing the shareholder's account ensured that the account had been correctly re-processed and the shareholder made whole.

6) For those shareholder accounts listed in the report with gains ("benefits")(i.e., for an NAV adjustment downward, shareholders that redeemed shares of the Fund received a benefit and the Fund experienced a loss):
      a) documentation of whether the Fund was made whole for such losses; and
      b) documentation regarding the entity that made the Fund whole.

7) The management fee earned by the Adviser on the Fund's total net assets during the NAV error period, and the management fee that would have been payable to the Adviser on the Fund's restated total net assets during the NAV error period.

8) Documentation of whether the Fund was made whole for the amount of management fees paid by the Fund during the NAV error period in excess of management fees that would have been payable by the Fund on the Fund's restated total net assets during the NAV error period.

Should you have any questions as you gather this information, please contact the staff.

## II. Disclosure to the Fund's Board – Section 206 of the Advisers Act and Section 15(c) of the IC Act

Section 206(1) and 206(2) of the Advisers Act impose a federal fiduciary duty on an investment adviser with respect to its clients.[7] The Adviser manages the Fund under an investment advisory agreement with the Fund dated February 13, 2018.[8] A fund's board of directors has a fiduciary duty to represent the interests of the fund's shareholders. The IC Act specifically requires the board to oversee various fund matters, including fair valuation determinations for portfolio securities. Additionally, under Section 15(c) of the IC Act, it is the duty of the investment adviser to furnish such information as may reasonably be necessary for the fund's board to evaluate the terms of the investment advisory contract.

The staff has concerns whether the Board was fully apprised of matters that may impact the viability of TerreStar as a going concern, and whether the Board was fully informed regarding liquidity and marketability issues regarding TerreStar, including with respect to information provided to the Board in connection with renewal of the Fund's investment advisory agreement.

For example, the materials provided by the Adviser to the Fund's Board for its meeting on September 14, 2017, at which the Board considered the annual renewal of the investment advisory agreement under Section 15(c) of the IC Act, included the Adviser's response to the Section 15(c) questionnaire. In response to inquiry #12 in the Section 15(c) questionnaire to discuss the Fund's liquidity status and any actual or potential problems in meeting shareholder redemptions, the Adviser responded:

> "The Funds are currently positioned to meet any redemptions with a cash bucket, liquid securities and/or drawing upon credit facilities entered into by certain funds and/or a fund specific expedited loan settlement program entered into by certain funds with Bank of America. Global Allocation Fund is the only fund in excess of its 15% illiquid security limit as of June 30, 2017. The illiquidity level increased above 15% because of market value movement and a decrease in net assets, and was not caused by purchase of illiquid investments. We do not believe Global Allocation Fund or any other funds will have problems in meeting shareholder redemptions."[9]

There is no disclosure that Global Allocation Fund's illiquid securities holdings far exceeded 15% of net assets, that the illiquid securities position was due primarily to the investment in TerreStar, and that the Fund's daily redemptions were averaging $1.0 million.[10] There is no indication whether the Adviser had stressed tested the Fund's portfolio under various redemption scenarios. There is no discussion of the likelihood that the Fund would need to draw upon the credit facility to satisfy redemptions, and no discussion whether the credit facility would be sufficient to satisfy the Fund's redemptions if multiple funds drew upon it at the same time. There is no disclosure of the risk to shareholders from the Fund's continuing sales of liquid

---

[7] *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 189-92 (1963).

[8] Amended and Restated Investment Advisory Agreement between the Adviser (formerly "Highland Capital Management Fund Advisors, L.P.") and Highland Global Allocation Fund filed as Exhibit (d)(4) to the Fund's Post-Effective Amendment No. 127 filed January 29, 2014.

[9] *See* Response to IR9, materials for Sept. 14, 2017 Board meeting at pg. 171.

[10] *See* response to IR7 for listing of daily redemptions.

holdings to satisfy redemptions and leaving the Fund with an increasing percentage of assets in illiquid securities, thereby likely harming remaining shareholders and potentially overpaying shareholders that redeemed their shares.

Additionally, the materials provided by the Adviser for the Fund's Board meeting on September 14, 2017 included a copy of the Fund's quarterly fund fact sheet for the quarter ended June 30, 2017.[11]   As discussed below, the staff finds the disclosures in the Fund's quarterly fund fact sheets to be inaccurate, incomplete and potentially misleading in violation of Rule 34b-1.

The staff believes that in light of the Adviser's fiduciary duty to the Fund, the Adviser was obligated to alert the Fund's Board to these important matters to: (i) ensure that the Board would have the information that it would need to evaluate the implication of the Fund's investment in TerreStar and other illiquid securities, such as whether the investments would cause the Fund to violate any federal securities laws, and (ii) ensure that the Board would have information as reasonably necessary for the Board to evaluate the annual renewal of the investment advisory agreement.

Accordingly, it appears the Adviser did not provide the Fund's Board with all material information regarding the Fund's investment in TerreStar and other illiquid securities, as required under: (i) Section 206 of the Advisers Act, and (ii) Section 15(c) of the IC Act in connection with the annual renewal of the investment advisory agreement.

### III.   Portfolio Management – Compliance with Investment Policies and Investment Guidelines – Section 206 of the Advisers Act

As noted above, Section 206(1) and 206(2) of the Advisers Act impose a federal fiduciary duty on an investment adviser with respect to its clients.  The Adviser manages the Fund under an investment advisory agreement with the Fund dated February 13, 2018.  The staff has concerns that the Adviser failed to manage the Fund in accordance with the Fund's investment policies, restrictions and guidelines, which is not consistent with Section 206(1) and 206(2) of the Advisers Act and potentially a breach of the Adviser's fiduciary duty.

#### A.  Failure to Adhere to Non-Fundamental Investment Policy

As a matter of non-fundamental investment policy that is disclosed in the Fund's SAI, the Fund may not invest in companies for the purpose of exercising control or management.  As of March 19, 2018, the Fund owned more than 15% of TerreStar's common stock and, together with four other registered funds managed by the Adviser, owned more than 25% of TerreStar's outstanding common stock.[12]

The Fund's ownership of more than 15% of TerreStar's common stock permitted it to select a candidate for nomination to TerreStar's board.  Under TerreStar's Stockholder Agreement, "So

---

[11]  *See* Response to IR9, materials for Sept. 14, 2017 Board  meeting at pgs 497 -498.

[12]  *See* Response to SR5-1.  As of March 19, 2018, the Fund owned 18.65% of TerreStar's common stock and, together with four other registered funds managed by the Adviser, owned 29.55% of TerreStar's outstanding common stock.

long as any Designated Holder, together with any of its Affiliates, Beneficially Owns more than 15% of the Outstanding Company Common Stock, the Company shall (i) nominate one candidate selected by such Designated Holder (any individual selected to the Board, a "Candidate") for election to the Board effective on the Effective Date…" Trey Parker, the Adviser's Chief Investment Officer, was selected for nomination to TerreStar's board and is a member of TerreStar's board.

The Fund's ownership in TerreStar allowed it to select a candidate for nomination to TerreStar's board. Additionally, the Fund and affiliated funds held a controlling position in TerreStar.[13]  It appears that the Fund invested in TerreStar for the purpose of exercising control or management, contrary to the Fund's non-fundamental investment policy.

B.  Failure to Adhere to **Fund's Liquidity Guidelines**

The Fund's "Guidelines for Liquidity Determinations for Securities" contained in the Fund's Compliance Manual provide that:

> If at any time the Adviser determines that a Fund's illiquid holdings exceed 15% of its net assets, the Adviser will, on a weekly basis, ask its traders to identify any significant "presumptively illiquid" securities held by the Fund that have previously been determined to be liquid that are no longer liquid, and the Adviser will take steps to bring the Fund's illiquid holdings back within the 15% limit as soon as reasonably practicable.

The Fund's illiquid holdings have exceeded 15% of net assets since October 31, 2016, if not earlier.  The Fund did not take steps "as soon as reasonably practicable" to reduce the Fund's holdings of illiquid securities to less than 15% of net assets, which is inconsistent with the Fund's liquidity guidelines.

C.  Failure to Maintain Appropriate Level of Liquidity

The Commission historically has taken the position that open-end funds should maintain a high degree of portfolio liquidity to ensure that their portfolio securities and other assets can be sold and the proceeds used to satisfy redemptions in a timely manner in order to comply with Section 22(e) of the IC Act.  In addition to a fund's "general responsibility to maintain a level of portfolio liquidity that is appropriate under the circumstances," the Commission has stated that open-end funds must engage in ongoing portfolio liquidity monitoring to determine whether an adequate level of portfolio liquidity is being maintained in light of their redemption obligations.[14] As noted in the Commission's guidance, a fund experiencing net outflows due to shifts in market sentiment should consider reducing its illiquid asset holdings to maintain adequate liquidity.

---

[13]  Under Section 2(a)(9) of the IC Act, any person who beneficially owns, either directly or indirectly or through one or more controlled companies, more than 25% of the voting securities of a company shall be presumed to control the company.  The five registered Highland funds, including the Fund, together owned more than 25% of the common stock of TerreStar.

[14]  *See* "Revisions of Guidelines to Form N-1A," Release No. IC-18612 (Mar. 12, 1992).

Global Allocation Fund has experienced poor performance, and net outflows averaging $1.0 million daily since at least January 1, 2017.[15] As of April 30, 2018, the Fund held 29.5% of its net assets in illiquid securities, including 16.8% and 9.9% of its net assets in restricted stock and debt, respectively, of one issuer, TerreStar. The Fund's net assets totaled $521.2 million as of March 31, 2018.

At the outset of the examination, the staff expressed concerned that the Fund would continue to sell liquid holdings to satisfy redemptions, leaving the Fund with an ever increasing percentage of illiquid assets that are difficult to sell to meet redemptions, thereby likely harming remaining shareholders. The Adviser had not conducted any type of redemption scenario analysis to determine the Fund's ability to meet redemptions, given the level of illiquid securities.[16] The Adviser failed to take into consideration the Fund's long-term trend of redemptions and to adjust its illiquid positions accordingly. This caused an increased risk to remaining shareholders, and potentially resulted in overpaying shareholders that redeemed their shares.

Notwithstanding the nature of the TerreStar holding and the ongoing issues related to TerreStar's viability, the Adviser did not reduce its position in TerreStar until July 2018. As disclosed in the proxy statement dated October 11, 2018 requesting shareholder approval to convert the Fund to a closed-end fund, "A closed-end fund structure is better positioned for such [illiquid] investments because it eliminates the need to buy and sell investments based on investor flows."

The staff believes the Fund and the Adviser failed to appropriately monitor the Fund's liquidity and failed to maintain an appropriate level of portfolio liquidity prior to the Fund's conversion to a closed-end fund, which is currently in process. The staff observes that the compliance date for open-end funds, including ETFs but not money market funds, to adopt and implement a liquidity risk management program under Rule 22e-4 of the IC Act is December 1, 2018 for larger fund groups.[17] The Adviser should ensure that open-end funds advised by the Adviser, including the Fund prior to having converted to a closed-end fund, have adopted and implemented a written liquidity risk management program reasonably designed to assess and manage the respective fund's liquidity risk as required under Rule 22e-4.

## IV. Sales Literature and Filings - Disclosures

Among the specific obligations that flow from an investment adviser's fiduciary duty is to provide full and fair disclosure of all material facts and employ reasonable care to avoid misleading clients and prospective clients.[18]

### A. Sales Literature – Rule 34b-1

---

[15] *See* response to IR7 for listing of daily redemptions.

[16] *See* response to IR#5. In response to the staff's request for an assessment of the Fund's ability to meet potential redemptions over a number of periods, the Adviser provided daily available cash reports.

[17] Interim Final Rule, "*Investment Company Risk Management Programs; Commission Guidance for In-Kind ETFs*," Feb. 22, 2018, Rel. No. IC-33010. A larger fund group or smaller fund group refers to funds in the same "group of related investment companies" with net assets of $1 billion or more, or less than $1 billion, respectively.

[18] *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. at 194.

Rule 34b-1 prohibits dissemination of sales literature that contains material misstatements or omissions. The Fund's quarterly fund fact sheets published during 2017 (1Q2017, 2Q2017, 3Q2017 and 4Q2017) on the Fund's website disclose TerreStar Corp and TerreStar Term Loan as Top 5 Holdings, but do not disclose that TerreStar is an illiquid investment. There is no disclosure regarding risks of illiquid investments. There is no disclosure of additional liquidity risks as the percentage of the Fund's assets invested in TerreStar increased during 2017 and the Fund's total assets declined. There is no disclosure that the 31% decrease in the Fund's total assets between March 31, 2017 and December 31, 2017 occurred during periods of significant shareholder redemptions. There is no disclosure of the risk that the Fund will continue to sell liquid holdings to satisfy redemptions, leaving the Fund with an ever increasing percentage of illiquid assets that are difficult to sell.

The disclosures regarding TerreStar and the failure to disclose risks of illiquid investments were inaccurate and incomplete, and the staff believes the disclosures were misleading in violation of Rule 34b-1.

B.  Prospectus and SAI Filings – Section 34(b)

1.  Investments in Illiquid Securities

The prospectus disclosure requirements in Form N-1A are intended to elicit information that will help investors evaluate the risks of an investment in the fund and to decide whether to invest in a fund by providing balanced disclosure of positive and negative factors.

The SEC's Division of Investment Management issued *Guidance Update No. 2016-02*, "Fund Disclosure Reflecting Risks Related to Current Market Conditions," to foster investor protection by reminding mutual funds, exchange traded funds, and other registered investment companies of the importance to investors of full and accurate information about fund risks, including risks that arise as a result of changing market conditions. In particular, the staff believes that funds should review their risk disclosures on an ongoing basis and consider whether these disclosures remain adequate in light of current conditions.

The staff reviewed the liquidity of Global Allocation Fund and found that since 2016, the illiquid investments held by Global Allocation Fund had grown significantly beyond the 15% of net assets limitation, primarily due to shareholder redemptions and poor performance. Given the trend of redemptions and poor performance, the percentage of the Fund's assets invested in illiquid securities continued to grow, and the additional liquidity risks continued to grow because liquid assets must be sold to meet redemptions. However, the Fund had not disclosed this risk to shareholders in its prospectus or SAI.

Section 34(b) of the IC Act makes it unlawful to make a material misstatement or omission in a registration statement filed pursuant to the IC Act. The lack of disclosure in the Fund's prospectus or SAI regarding the increasing percentage of the Fund's investments in illiquid securities, and the associated risks to shareholders, was incomplete, inaccurate and potentially misleading under Section 34(b) of the IC Act.

2. Business Relationships and Conflicts

The Fund's SAI discloses that John Honis, an Independent Trustee of the Fund, is President of Rand Advisors since August 2013, and Partner of Highland Capital Management, L.P. from February 2007 until his resignation in November 2014. Form ADV Part 2A filed by Rand Advisors, LLC discloses that, "We have entered into a shared services agreement with Highland Capital Management, L.P., a Delaware limited partnership." [19]

The Fund's SAI does not disclose that Rand Advisors, Inc., of which Mr. Honis is the President, has a shared services agreement with Highland Capital Management, L.P. ("HCM"). HCM is under common control with Highland Capital Management Fund Advisors, L.P., the Adviser to the Fund. Neither the Fund's prospectus nor its SAI disclose: (i) the business or professional relationships between Rand Advisors and HCM, or (ii) the conflicts among Rand Advisors, HCM, the Adviser and the Fund resulting from the shared services agreement between Rand Advisors and HCM.

The staff requests the Adviser review whether disclosure should be made concerning these business and/or professional relationships and potential conflicts, consistent with Section 34(b) of the IC Act, and inform the staff of steps the Adviser will take with respect to this issue.

## VI. Written Compliance Policies and Procedures – Rule 206(4)-7 under the Advisers Act

Rule 206(4)-7 under the Investment Advisers Act of 1940 ("Advisers Act") requires each investment adviser to adopt and implement written policies and procedures reasonably designed to prevent the adviser from violating the Advisers Act.[20] The existence of a weakness in the design or implementation of policies and procedures for portfolio management may result in the failure to prevent violations of the Advisers Act, including among other things, breaches of fiduciary duty under Section 206 thereunder.

### A. Policies and Procedures for Fair Valuing Portfolio Securities

A weakness in the design or implementation of policies and procedures for valuing portfolio securities may fail to prevent, among other things, incorrect valuation of portfolio securities, sales or redemptions of fund shares at other than current net asset value, and dissemination of misleading information under Rule 2a-4, Rule 22c-1 and Rule 34b-1 of the IC Act, respectively.

The Adviser failed to implement and/or adopt adequate policies and procedures concerning fair valuation of the Fund's portfolio securities. Based on changes in value for TerreStar derived from changing the classification of the March Transactions to orderly and changes in underlying

---

[19] The Form ADV Part 2A filed by Highland Capital Management, L.P. ("HCM") discloses that HCM is controlled by James Dondero through his ownership of Strand Advisors, Inc., HCM's general partner. The Form ADV filed by the Fund's investment adviser, Highland Capital Management Fund Advisors, L.P. ("HCMFA"), discloses that HCMFA is controlled by Highland Capital Management Services, Inc., a Delaware corporation, and its general partner, Strand Advisors XVI, Inc., of which James Dondero is the sole stockholder.

[20] *See* Compliance Programs of Investment Companies and Investment Advisers, Advisers Act Release No. 2204 (December 17, 2003)

12

assumptions concerning weightings of the March Transactions, the Houlihan model, the Solus Sale and the Family Office Sale, there were NAV errors in the Fund.

PwC observed in its "Report on Internal Controls" filed as an exhibit to Form N-CEN for Highland Funds II on February 13, 2019 that, in connection with the audit of the Fund's financial statements for the fiscal year ended September 30, 2018, "The application of ASC 820 and reasonableness and reliability of assumptions used in the fair value model are monitored by the Valuation Committee through the operation of a review control. This control was not designed at an appropriate level of precision to ensure the accurate valuation of Level 3 securities."

The Adviser should inform the staff of the corrective action it is taking to adopt and implement policies, procedures and controls to address the compliance program deficiency and the control deficiency with respect to fair valuation of the Fund's portfolio securities.

B.  Other Policies and Procedures

The staff found instances where the Fund may not have complied with a non-fundamental investment policy, failed to adhere to investment guidelines, and failed to maintain an appropriate level of liquidity. These instances indicate weaknesses in the Adviser's policies and procedures for ensuring compliance with the Fund's investment policies and investment guidelines.

o  The Adviser should inform the staff of the corrective action it is taking to adopt and implement policies and procedures in response to this compliance program deficiency.

Additionally, the staff found sales literature published by the Fund that was inaccurate, incomplete and potentially misleading under Rule 34b-1. The staff also found certain disclosures in the Fund's prospectus and SAI to be inaccurate, incomplete and potentially misleading under Section 34(b). These findings indicate weaknesses in the Adviser's policies and procedures for ensuring accurate, complete and not misleading disclosures in the Fund's sales materials, prospectus and SAI.

o  The Adviser should inform the staff of the corrective action it is taking to adopt and implement policies and procedures in response to this compliance program deficiency.

[END OF LETTER]

# EXHIBIT 34



March 29, 2019

<u>**VIA E-MAIL AND UPS**</u>

Marshall Gandy, Associate Regional Director
U.S. Securities and Exchange Commission
Fort Worth Regional Office
801 Cherry Street, Suite 1900, Unit 18
Fort Worth, Texas 76102

> Re: Examination of Highland Capital Management Fund Advisors, L.P. (File No. 801-69968) ("**Adviser**") and Examination of Highland Funds II (File No. 811-07141) ("**Company**")

Dear Mr. Gandy:

This letter provides the responses of the Adviser and the Company to the letters of the staff of the Securities and Exchange Commission (the "**Staff**") dated February 27, 2019 regarding the above-referenced examinations. For convenience of reference, the Staff's comments have been summarized before each response. For additional convenience of reference, the Adviser and Company respond jointly to Comments I and III-VI with responses read as coming from both parties, whereas the response to Comment II is solely applicable to the Adviser. Any capitalized terms not otherwise defined herein have the meanings ascribed to them in the Staff's letter.

I.1. <u>Comment</u>: The Staff requests that the Adviser provide a table with the following information for each business day from March 14, 2018 through the date on which the Adviser implemented its updated fair value methodology for TerreStar set forth in the Consultation Materials (the period from March 14, 2018 through the date on which the Adviser implemented its updated fair value methodology for TerreStar is referred to herein as the "NAV error period"):

(a) Original valuation of TerreStar
(b) Revised valuation of TerreStar
(c) Fund's NAV
(d) Fund's restated NAV
(e) Amount of NAV adjustment (expressed in dollars and cents)
(f) Amount of NAV adjustment (expressed as a percentage of the original NAV)
(g) Fund's total net assets
(h) Fund's restated total net assets

Response:

Highland to provide upon conclusion of review/no further comments received on the March 18, 2019 memorandum sent to the Staff (Exhibit A), which is still under further review and discussion with the Staff.

I.2    Comment:  The Staff request that the Adviser provide the dollar amount of the Fund's net redemptions over the NAV error period.

Response:

Based on the information provided by the Fund's open-end Transfer Agent, DST, there were approximately $253,000,000 of redemptions during the NAV error period.  As the Adviser and Transfer Agent have not yet obtained the detailed omnibus account information, the Adviser would like to remind the Staff this number is an estimate that could change when the Fund's Transfer Agent does obtain the complete omnibus account information during the share reprocessing exercise.

I.3    Comment:  The Staff requests that the Adviser provide whether there was a loss to the Fund from net redemptions over the NAV error period, and the amount of such loss. Provide documentation of whether the Fund was made whole for the loss and the entity that made the Fund whole.

Response:

Please see the analysis set forth in the March 18, 2019 memorandum to the Staff (Exhibit A), which is still under further review and discussion with the Staff.

I.4    Comment:  The Staff requests that the Adviser provide a gain/loss report by individual shareholder account as a result of NAV adjustments over the NAV error period (i.e., for an NAV adjustment downward, shareholders that purchased shares of the Fund on that date should receive either a refund of excess subscription monies paid or a credit to their account for additional shares of the Fund).

Response:

As the Transfer Agent has not yet obtained the detailed omnibus account information, the complete set of this information is not yet available.  The Adviser has engaged the Event Center team (the "EC") with DST Asset Manager Solutions, which is a subsidiary of the Fund's Transfer Agent, DST, to take the lead in the reprocessing exercise.  Based on its experience with similar engagements, the EC has estimated the broker outreach portion of this engagement could take 6 – 8 months to complete and a final calculation by shareholder will be available shortly thereafter.  At the completion of the broker outreach, both direct and omnibus shareholders will be reprocessed.

I.5    Comment:  For those shareholder accounts listed in the report with losses, the Staff requests that the Adviser provide:

(a) documentation of whether the account was re-processed to make the shareholder (or former shareholder) whole for all losses;

(b) documentation regarding the entity that made the shareholder whole; and

(c) documentation demonstrating that the intermediary and/or sub-intermediary responsible for re-processing the shareholder's account ensured that the account had been correctly re-processed and the shareholder made whole.

Response:

Please see the response as set for in I.4 above

I.6   Comment:   For those shareholder accounts listed in the report with gains ("benefits")(i.e., for an NAV adjustment downward, shareholders that redeemed shares of the Fund received a benefit and the Fund experienced a loss), the Staff requests that the Adviser provide:

(a) documentation of whether the Fund was made whole for such losses; and

(b) documentation regarding the entity that made the Fund whole.

Response:

Please see the analysis set forth in the March 18, 2019 memorandum to the Staff (Exhibit A), which is still under further review and discussion with the Staff.

I.7   Comment:  The Staff requests that the Adviser provide the management fee earned by the Adviser on the Fund's total net assets during the NAV error period, and the management fee that would have been payable to the Adviser on the Fund's restated total net assets during the NAV error period.

Response:

The management fee earned by the Adviser on the Fund's total net assets during the NAV error period was $1,435,320.

The management fee that would have been payable to the Adviser on the Fund's restated total net assets during the NAV error period was $1,388,254.

I.8   Comment:  The Staff requests that the Adviser provide documentation of whether the Fund was made whole for the amount of management fees paid by the Fund during the NAV error period in excess of management fees that would have been payable by the Fund on the Fund's restated total net assets during the NAV error period.

Response:

The Fund was made whole for the amount of management fees paid by the Fund during the NAV error period in excess of management fees that would have been payable by

the Fund on the Fund's restated total net assets during the NAV error period. The Adviser would like to direct the Staff to the "Highland GAF Calculation" attachment to Adviser's OCA submission made on January 19, 2019 (Exhibit B), which included an estimate of the management fee rebate of approximately $34,000. The Adviser estimated approximately $13,000 of additional management fee rebate was owed subsequent to 9/30 and through the end of the NAV error period (total = approximately $47,000), which was recorded as a benefit to the NAV of the Fund in January 2019. To the extent this amount changes during the reprocessing exercise, any adjustments will be reflected in the NAV of the Fund at the end of broker outreach portion of the reprocessing exercise, when the final calculation of the amounts will be made.

II.1     Comment: The Staff noted its concern whether the Board was fully apprised of matters that may impact the viability of TerreStar as a going concern, and whether the Board was fully informed regarding liquidity and marketability issues regarding TerreStar, including with respect to information provided to the Board in connection with renewal of the Fund's investment advisory agreement.

For example, in the response to inquiry #12 of the Section 15(c) questionnaire, the Staff noted that (a) there is no disclosure that Global Allocation Fund's illiquid securities holdings far exceeded 15% of net assets, that the illiquid securities position was due primarily to the investment in TerreStar, and that the Fund's daily redemptions were averaging $1.0 million; (b) there is no indication whether the Adviser had stressed tested the Fund's portfolio under various redemption scenarios; (c) there is no discussion of the likelihood that the Fund would need to draw upon the credit facility to satisfy redemptions, and no discussion whether the credit facility would be sufficient to satisfy the Fund's redemptions if multiple funds drew upon it at the same time; and (d) there is no disclosure of the risk to shareholders from the Fund's continuing sales of liquid holdings to satisfy redemptions and leaving the Fund with an increasing percentage of assets in illiquid securities, thereby likely harming remaining shareholders and potentially overpaying shareholders that redeemed their shares.

Response:

a. The Adviser believes its responses in the Section 15(c) questionnaire included all required information and adequately answered all questions presented by the Fund's Board through this process. The Adviser's response to the annual Section 15(c) questionnaire provides information responsive to the Board's requests and is in addition to the ongoing and detailed communications between the Adviser and the Board throughout the year, which is also taken into account in connection with the annual 15(c) review.

For example, the Board was initially informed of the Fund's illiquid holdings in excess of 15%, primarily due to capital activity, by way of quarterly Board reporting at the February 2016 Board meeting. At this meeting, the Adviser presented the Fund's overall illiquid holdings for the Fund as of the most recent quarter end as it does at every quarterly Board meeting.

Thereafter and pursuant to the Fund's policy for Guidelines for Liquidity Determination, the Adviser provided notifications on a continuous basis for each 3% increase in illiquid holdings above 15% along with the rationale for the increase to illiquid holdings as percentage of the overall fund (for example due to redemption activity, performance, etc.). A full list of illiquid holdings for the Fund was also provided in connection with each notification. The date of these email notifications and the Fund's applicable illiquid holdings are set forth below:

- November 2, 2016: 18.10%
- May 31, 2017: 21.06%
- October 18, 2017: 24.00%
- December 14, 2017: 27.20%
- March 20, 2018: 30.32%
- July 2, 2018: 33.70%

During each quarterly in-person Board meeting:

- The Board received detailed quarterly reports about the status and amount of the Fund's illiquid holdings and capital flow report:
  - Summary schedule of the Fund's illiquid holdings along with corresponding detail from the most recent quarter end and a supplemental summary schedule, which reflected the Fund's illiquid holdings closer to the date of the corresponding in-person Board meeting
  - Capital flow activity for the Fund which reflected year to date Fund sales and year to date net capital activity
  - To note, though not formally documented, during each Board meeting there were continuous and informal updates as to the illiquid assets held by the Fund

- Fair Valuation documentation for securities held by the Fund, which included TerreStar

- Given the increase of the TerreStar position as an overall illiquid holding of the Fund and the Adviser's conviction in the issuer, Trey Parker, Co-Chief Investment Officer and Partner of Highland Capital Management, L.P. ("HCMLP") provided an update on TerreStar during the June 2017 quarterly in-person Board meeting. An excerpt of the meeting minutes are provided below for reference:

**Quarterly HCMFA Portfolio Manager Discussion**

Mr. Parker then joined the Board Meeting and discussed TerreStar Corporation ("TerreStar"), a security held by each of the Highland Global Allocation Fund (the "Global Allocation Fund"), Opportunistic Credit Fund and NHF. Mr. Parker noted that TerreStar is a privately held, nationwide licensee of wireless spectrum. He explained that all wireless communication signals travel over the air via radio frequency, also known as "spectrum," and that he believes that the market for wireless spectrum remains intriguing, with rational and attractive supply/demand dynamics. He reported that there are close to 380 million wireless subscriptions in the U.S., with over 230 million of them related to smartphones. He noted that, by 2019, projections show that mobile data traffic, caused in no small part by smartphones, will have increased 7x compared to 2014 volumes and that, as a result, the U.S. will need more than 50% more licensed broadband spectrum than what is currently available to keep wireless networks working smoothly. Mr. Parker noted that access to spectrum is strictly controlled by the Federal Communications Commission (the "FCC") and that the FCC has released only 20% of the amount of "usable" spectrum that they set out to deliver in 2010. He added that, with the government still holding approximately 60% of the spectrum that is best suited for mobile broadband services, HCMFA believes that demand is clearly going to continue to exceed government-constricted supply. Mr. Parker stated that, given this dynamic, HCMFA believes that the market for wireless spectrum will continue to become more valuable and important, thus providing significant upside to the Funds' high conviction credit and equity investments over the long-term. He noted that these dynamics make TerreStar, in HCMFA's view, a very attractive, unique long-term investment with an eventual strategic partnership or exit from the position over the next 2-4 years. Mr. Parker then responded to questions from the Board regarding, among other matters, the valuation of TerreStar. Mr. Parker reported that HCMFA historically engaged Houlihan Lokey, Inc., an independent pricing firm with valuation expertise, to assist it in fair valuing securities, including the TerreStar securities. Mr. Parker then left the Board Meeting.

- During the November 2017 telephonic Board meeting an update was given to the Board outlining the Federal Communications Commission's denial of extension on 1.4GHz license and potential valuation impact (see <u>Exhibit C</u>), with TerreStar constituting one of the larger illiquid holdings of the Fund.
- Estimated daily flows for the Fund were sent after the announcement of the conversion to a closed-end fund by email to the Board. This email contained Fund assets, net capital activity (since conversion announcement and daily activity), and if the capital activity was concentrated to a specific intermediary. These updates continued through the finalization of the conversion to a closed-end fund.

b. Although not formally required until June 1, 2019, the compliance date for the liquidity risk management program rule, routine practice for the Fund involved daily oversight of Fund liquidity, a key portion which involved Portfolio manager assessment of the composition of the Fund. In this regard, the Portfolio Manager for the Fund would receive a daily report, showing the capital activity was within a manageable range even assuming a material increase in redemptions and was aware that the portfolio was generally liquid aside from its holdings in TerreStar. In addition to capital activity which includes subscription and redemption requests, this daily report also factored in unsettled trades, funding obligations, margin activity, and if needed, reporting to identify assets that could be liquidated to generate proceeds. Cash projections are also

discussed during a weekly meeting with the Portfolio Manager and on an ad hoc basis, when necessary. Based on this information provided, market outlook, and outlook on issuers held within the portfolio, the Portfolio Manager was equipped to make necessary adjustments and/or liquidate assets within the portfolio without the need of utilization of various stress tests.

c. The Fund's registration statement, as approved by the Board, includes disclosure that the Fund may borrow "to meet redemption requests and for temporary, extraordinary or emergency purposes. To the extent the Fund borrows more money than it has cash or short-term cash equivalents and invests the proceeds, the Fund will create financial leverage. As discussed in response to II.1.b. above, the Portfolio Manager was aware that the portfolio offered sufficient liquidity to satisfy reasonably anticipated redemption requests and an assessment regarding utilization of a credit facility. Lastly, the Fund did not have a shared credit facility as the arrangement terminated in March 2017.

d. The comment appears to conflate increased illiquidity with an increased risk of overpayment, whereas illiquidity and asset valuation are separate concepts. We do not believe that increased illiquidity due to investor redemptions is correlated to the later-recognized valuation weakness. With regard to illiquidity, which primarily arose from redemptions and not purchases of illiquid assets, the Adviser managed the Fund taking into account the appropriate need for liquidity. Investor purchases and redemptions constantly influence management and although illiquidity increased, the Adviser did not permit the Fund to purchase additional illiquid holdings once illiquids exceeded 15% of its net assets. The Adviser monitored both investor inflow and outflow, with a resulting impact on asset sales. Although illiquidity increased, the Adviser did not see such illiquidity as producing the harm to investors that the comment suggests. With respect to valuation, the Adviser implemented significant controls and steps in the valuation of TerreStar. It was not until later, following significant review and analysis, was there determined to be a weakness in the valuation for TerreStar. The increased illiquidity at any given time did not affect the proper valuation at the time shareholders redeemed nor the ability of the Fund to meet redemption requests as they arose.

In any event these disclosures have evolved over the course of the Fund operating previously as an open-end fund and currently as a closed-end fund. The Adviser reviews the Fund's disclosure prior to the filing of any registration statement or annual or semiannual report to shareholders or the posting of any fact sheet to the Fund's website. As a part of this review, the Adviser updates the Fund's disclosure as needed to reflect necessary changes or clarifications. Certain items of the current risk disclosure relating to illiquid, restricted and other applicable security types of the Fund are cited below.

**Current Disclosure in the Fund's Prospectus:**

**Illiquid and Restricted Securities Risk** is the risk that the Adviser may not be able to sell illiquid or restricted securities, such as securities issued pursuant to Rule 144A of the Securities Act of 1933, at the price it would like or may have to sell them at a loss. Securities of non-U.S.

issuers, and emerging or developing markets securities in particular, are subject to greater liquidity risk.

**Senior Loans Risk**: Senior Loans may not be rated by a rating agency, registered with the Securities and Exchange Commission or any state securities commission or listed on any national securities exchange. Therefore, there may be less publicly available information about them than for registered or exchange listed securities. The risks associated with Senior Loans are similar to the risks of below investment grade securities. Moreover, any specific collateral used to secure a loan may decline in value or lose all its value or become illiquid, which would adversely affect the loan's value. Economic and other events, whether real or perceived, can reduce the demand for certain Senior Loans or Senior Loans generally, which may reduce market prices and cause the Fund's NAV per share to fall. The frequency and magnitude of such changes cannot be predicted. **The secondary market in which these investments are traded is generally less liquid than the market for higher-grade debt. Less liquidity in the secondary trading market could adversely affect the price at which the Fund could sell a high yield Senior Loan, and could adversely affect the NAV of the Fund's shares.** At times of less liquidity, it may be more difficult to value high yield Senior Loans because this valuation may require more research, and elements of judgment may play a greater role in the valuation since there is less reliable, objective data available. Investments in Senior Loans and other securities may result in greater NAV fluctuation than if the Fund did not make such investments. See "Taxation" below for a discussion of special tax consequences associated with any investment by the Fund in below investment grade securities.

**Illiquid and Restricted Securities**. The Fund may invest in illiquid and restricted securities. Restricted securities generally may not be resold without registration under the Securities Act of 1933, as amended (the "Securities Act"), except in transactions exempt from the registration requirements of the Securities Act. A security that may be restricted as to resale under federal securities laws or otherwise will not be subject to this percentage limitation if the Adviser determines that the security is, at the time of acquisition, readily marketable. Illiquid securities are those that cannot be disposed of within seven days in the ordinary course of business at approximately the amount at which the Fund has valued the securities. Illiquid and restricted securities may offer higher returns and yields than comparable publicly-traded securities. However, the Fund may not be able to sell these securities when the Adviser considers it desirable to do so or, to the extent they are sold privately, may have to sell them at less than the price of otherwise comparable securities. Restricted securities may be illiquid; however, some restricted securities such as those eligible for resale under Rule 144A under the Securities Act may be treated as liquid.

**Illiquid and Restricted Securities Risk:** Illiquid investments may be difficult to resell at approximately the price they are valued in the ordinary course of business within seven days. When investments cannot be sold readily at the desired time or price, the Fund may have to accept a much lower price, may not be able to sell the investment at all or may be forced to forego other investment opportunities, all of which may adversely impact the Fund's returns. Illiquid investments also may be subject to valuation risk. Restricted securities (including Rule 144A securities) may be subject to legal restraints on resale and, therefore, are typically less liquid than other securities. The prices received from selling restricted securities in privately negotiated transactions may be less than those originally paid by the Fund. Investors in restricted securities may not benefit from the same investor protections as publicly traded securities.

**Focused Investment Risk**: Funds whose investments are focused in particular countries, regions, sectors, companies, or industries with high positive correlations to one another (e.g., different industries within broad sectors, such as technology or financial services), or in securities from issuers with high positive correlations to one another, are subject to greater overall risk than funds whose investments are more diversified. The Fund that focuses its investments in a particular type of security or sector, or in securities of companies in a particular industry, is vulnerable to events affecting those securities, sectors, or companies. Securities, sectors, or companies that share common characteristics are often subject to similar business

risks and regulatory burdens, and often react similarly to specific economic, market, political or other developments.

**Current Disclosure in the Fund's Annual Report to Shareholders:**

**Illiquid and Restricted Securities Risk**

Certain investments made by the Fund are, and others may be, illiquid, and consequently the Fund may not be able to sell such investments at prices that reflect the Investment Adviser's assessment of their value or the amount originally paid for such investments by the Fund. Illiquidity may result from the absence of an established market for the investments as well as legal, contractual or other restrictions on their resale and other factors. Furthermore, the nature of the Fund's investments, especially those in financially distressed companies, may require a long holding period prior to profitability.

Restricted securities (i.e., securities acquired in private placement transactions) and illiquid securities may offer higher yields than comparable publicly traded securities. The Fund, however, may not be able to sell these securities when the Investment Adviser considers it desirable to do so or, to the extent they are sold privately, may have to sell them at less than the price of otherwise comparable securities. Restricted securities are subject to limitations on resale which can have an adverse effect on the price obtainable for such securities. Also, if in order to permit resale the securities are registered under the Securities Act at a Fund's expense, the Fund's expenses would be increased. A high percentage of illiquid securities in a Fund creates a risk that such a Fund may not be able to redeem its shares without causing significant dilution to remaining shareholders.

**Valuation Risk**

Certain of the Fund's assets are fair valued, including the Fund's primary illiquid asset, TerreStar. TerreStar is a non-operating company that does not currently generate revenue and which primarily derives its value from two spectrum frequencies, the license with respect to one of which was terminated by the FCC and is being contested by TerreStar on technical and public policy grounds. TerreStar currently anticipates such contest may take between 12 to 30 months and expects deployment of its other spectrum asset to require a similar period of time. If TerreStar is ultimately unsuccessful in its efforts, the terminated license would not be reinstated and the value of the TerreStar equity would likely be materially negatively impacted. The fair valuation of TerreStar involves uncertainty as it is materially dependent on these estimates. With regard to the likelihood of TerreStar regaining the terminated license, the Investment Adviser assigned a high probability of success, based in part in consultation with outside experts.

**Senior Loans Risk**

The risk that the issuer of a senior loan may fail to pay interest or principal when due, and changes in market interest rates may reduce the value of the senior loan or reduce the Fund's returns. The risks associated with senior loans are similar to the risks of high yield debt securities. Senior loans and other debt securities are also subject to the risk of price declines and to increases in interest rates, particularly long-term rates. Senior loans are also subject to the risk that, as interest rates rise, the cost of borrowing increases, which may increase the risk of default. In addition, the interest rates of floating rate loans typically only adjust to changes in short-term interest rates; long-term interest rates can vary dramatically from short-term interest rates. Therefore, senior loans may not mitigate price declines in a long-term interest rate environment. The Fund's investments in senior loans are typically below investment grade and are considered speculative because of the credit risk of their issuers.

**Current Fact Sheet on the Fund's Website:**

**Illiquid and Restricted Securities Risk** Certain investments made by the Funds are, and others may be, illiquid, and consequently the Funds may not be able to sell such investments at prices that reflect the Investment Adviser's assessment of their value or the amount originally paid for

such investments by the Funds. Illiquidity may result from the absence of an established market for the investments as well as legal, contractual or other restrictions on their resale and other factors. Furthermore, the nature of the Funds' investments, especially those in financially distressed companies, may require a long holding period prior to profitability. Restricted securities (i.e., securities acquired in private placement transactions) and illiquid securities may offer higher yields than comparable publicly traded securities. The Funds, however, may not be able to sell these securities when the Investment Adviser considers it desirable to do so or, to the extent they are sold privately, may have to sell them at less than the price of otherwise comparable securities. Restricted securities are subject to limitations on resale which can have an adverse effect on the price obtainable for such securities. Also, if in order to permit resale the securities are registered under the Securities Act at a Fund's expense, the Fund's expenses would be increased. A high percentage of illiquid securities in a Fund creates risk that such a Fund may not be able to redeem its shares without causing significant dilution to remaining shareholders.

**Focused Investment Risk** is the risk that although the Fund is a diversified fund, it may invest in securities of a limited number of issuers in an effort to achieve a potentially greater investment return than a fund that invests in a larger number of issuers. As a result, price movements of a single issuer's securities will have a greater impact on the Fund's net asset value, causing it to fluctuate more than that of a more widely diversified fund

II.2    <u>Comment</u>:  The Staff found that the disclosures in the Fund's quarterly fund fact sheet for the quarter ended June 30, 2017 provided by the Adviser for the Fund's Board meeting on September 14, 2017 to be inaccurate, incomplete and potentially misleading in violation of Rule 34b-1 as the Adviser did not provide the Fund's Board with all material information regarding the Fund's investment in TerreStar and other illiquid securities, as required under: (i) Section 206 of the Advisers Act, and (ii) Section 15(c) of the Investment Company Act of 1940, as amended (the "1940 Act"), in connection with the annual renewal of the investment advisory agreement.

<u>Response</u>:

As noted in more detail in the response to comment II.1.a. above, the Adviser's response to the annual Section 15(c) questionnaire  includes and provides information responsive to the Board's requests and is in addition to the ongoing and detailed communications between the Adviser and the Board throughout the year, which is also taken into account in connection with the annual 15(c) review. For example, the Board is provided quarterly reports on the illiquid investments of the Fund and receives additional information on a continuous and ongoing basis between quarterly meetings when incremental 3% thresholds are exceeded if the Fund holds in excess of 15% illiquid securities. The Adviser believes this information presented to and discussed with the Board provided the material information needed for the Board to assess the investment opportunity and risk associated with illiquid investments held by the Fund.

The Adviser believes the Fund's quarterly fact sheets included all disclosure required of such documents and were not misleading. These documents are neither intended nor required to serve as a report on illiquid investments to the Board, as such information is specifically addressed in separate reports to the Board at each quarterly meeting or in between meetings as noted above in II.1.a.

The quarterly fact sheets on the Fund's website are designed as client facing reports and not as materials specifically for the Board. Such reports typically do not discuss liquidity, nor are required to do so. As noted in more detail in the response to Comment II.1.d above, detailed discussions regarding restricted securities and valuation policies (including fair valuation) are discussed in the Fund's annual and semi-annual shareholder reports in addition to supplemental disclosures of significant risks by investing in the Fund

III.A     Comment:   The Staff noted that the Fund failed to adhere to non-fundamental investment policy that is disclosed in the Fund's SAI. The Fund's greater than 15% ownership in TerreStar's outstanding common stock allowed it to select a candidate for nomination to TerreStar's board. Additionally, the Fund and affiliated funds held a controlling position in TerreStar. It appears that the Fund invested in TerreStar for the purpose of exercising control or management, contrary to the Fund's non-fundamental investment policy.

Response:

The Fund invested in the security for investment purposes, not with the purpose of exercising control or management or to receive a board seat. TerreStar represented an attractive investment due to it being a licensee of wireless spectrum. An employee of Highland had been a TerreStar board member since March 2013 in connection with TerreStar's emergence from bankruptcy. Highland and Solus were chosen as board members given their expertise on the issuer and desire to seek the best path forward for the issuer as investors. Control is factual under circumstance, and Section 2(a)(9) of the 1940 Act, does not indicate that a board position represents control - indeed it is not unusual for a fund to gain a board seat to oversee an investment closely. The TerreStar board consists of three directors, none of which independently has the power to influence or control the TerreStar board, and Highland's board representative does not receive any direct or indirect compensation for performing this role. Further, the Fund did not at any point own greater than 25% of TerreStar. As noted, Highland investors did not exercise control as a matter of fact, and indeed never invested for a purpose other than investment.

III.B     Comment:  The Staff noted that the Fund failed to adhere to Fund's liquidity guidelines contained in the Fund's Compliance Manual. The Fund's illiquid holdings have exceeded 15% of net assets since October 31, 2016, if not earlier. The Fund did not take steps "as soon as reasonably practicable" to reduce the Fund's holdings of illiquid securities to less than 15% of net assets, which is inconsistent with the Fund's liquidity guidelines.

Response:

At the time of the initial investment in TerreStar by the Fund, the position and other illiquid assets held by the Fund were not in excess of the 15% illiquid asset threshold. As a result of Fund redemptions over time and certain mark to market movements of illiquid securities, the proportion of the Fund's assets represented by illiquid assets

increased above the 15% threshold. The Fund did not make additional purchases of illiquid securities once it was above the 15% illiquid threshold.

Prior to implementation of the Fund's liquidity risk management program required under Rule 22e-4 on November 7, 2018, the Fund's Compliance Manual stated pursuant to its policy Guidelines for Liquidity Determination for Securities:

> If at any time the Adviser determines that a Fund's illiquid holdings exceed 15% of its net assets, the Adviser will, on a weekly basis, ask its traders to identify any significant "presumptively illiquid" securities held by the Fund that have previously been determined to be liquid that are no longer liquid, and the Adviser will take steps to bring the Fund's illiquid holdings back within the 15% limit as soon as reasonably practicable.[2]

> If at any time the Adviser determines that a Fund's illiquid holdings exceed 25% of its net assets, the Adviser will notify the Fund's portfolio managers that, although they are not required to sell the Fund's illiquid holdings, they should seek to identify and take advantage of opportunities with a view to reducing the Fund's illiquid securities to 15% of its net assets, provided that the portfolio managers believe such sales would be consistent with the Adviser's duty to the Funds.

> [2] The SEC has stated with respect to money market funds: "In the event that changes in the portfolio or other external events cause the investments in illiquid instruments to exceed ten percent [the then-applicable limit for money market funds] of the fund's net assets, the fund must take steps to bring the aggregate amount of illiquid instruments back within the prescribed limitations as soon as reasonably practicable. However, this requirement generally would not force the fund to liquidate any portfolio instrument where the fund would suffer a loss on the sale of that instrument." See Inv. Co. Act Rel. No. 13380, n. 38 (July 11, 1983). Additionally, in 1969 the SEC stated that if an open-end fund's holdings of illiquid assets "increases beyond 10 percent [the then-applicable limit], it would be desirable for the open-end company to consider appropriate steps to protect maximum flexibility." See Inv. Co. Act Rel. No. 5847, at 6 (October 21, 1969).

The clear intention is that these paragraphs are meant to be read together with the first paragraph being modified not only by footnote 2 but also by the final clause of the second paragraph, "provided that the portfolio managers believe such sales would be consistent with the Adviser's duty to the Funds" which clause provides that all sales would be consistent with the Adviser's duty to the Fund and thus the Adviser would not be forced to fire-sale an asset to the detriment of the Fund. Any interpretation of the two paragraphs as independent could yield the illogical result that illiquidity between 15 and 25% mandates sales, but illiquidity greater than 25% would be permissible without sales if the Adviser believed appropriate. At all times, either above the 15% limit or the 25% limit, the Adviser assessed the level of illiquidity of the Fund and evaluated whether such sales, in particular TerreStar, would be consistent with its duty to the Fund.

The Adviser believes that this approach is consistent with the Commission's guidance as noted in the final release to Rule 22e-4, which provides that "requiring a fund to divest investments if the fund's holdings of illiquid investments that are assets exceed 15% of net assets—which, as suggested by a commenter, could result in the fund needing to sell the illiquid investments at prices that incorporate a significant discount

to the investments' stated value, or even at fire sale prices—could adversely affect shareholders and could potentially negate the liquidity risk management benefits of the illiquid investment limit."

III.C    <u>Comment</u>: The Staff believes the Fund and the Adviser failed to appropriately monitor the Fund's liquidity and failed to maintain an appropriate level of portfolio liquidity prior to the Fund's conversion to a closed-end fund, which is currently in process. The Staff observes that the compliance date for open-end funds, including ETFs but not money market funds, to adopt and implement a liquidity risk management program under Rule 22e-4 of the 1940 Act is December 1, 2018 for larger fund groups. The Adviser should ensure that open-end funds advised by the Adviser, including the Fund prior to having converted to a closed-end fund, have adopted and implemented a written liquidity risk management program reasonably designed to assess and manage the respective fund's liquidity risk as required under Rule 22e-4.

   <u>Response</u>:

The Adviser believes at all times that it monitored liquidity and maintained an appropriate level of portfolio liquidity to meet actual and reasonably anticipated redemption requests as described in II.1.b above. Further, while the fund operated as an open-end fund, it typically paid out redemption requests in cash within one to two days and because it maintained an appropriate level of portfolio liquidity, never paid redemptions in-kind.

All Funds managed by the Adviser, including the Fund, implemented a liquidity risk management program and designated a program administrator pursuant to rule Rule 22e-4 on November 7, 2018. The Adviser is finalizing the remainder of Rule 22e-4 elements which require implementation, subject to Board approval, on or before June 1, 2019 Prior to the implementation of this program, the Fund operated under its historical Guidelines for Liquidity Determination for Securities policy which, for the reasons outlined in the response to Comment III.B above, required a fund that has exceeded the 15% illiquid investments threshold to reduce its illiquid holdings only if such action is in the best interests of such fund and its shareholders and did not permit the Fund to purchase any additional illiquid securities.

IV.A    <u>Comment</u>: The Staff believes that the disclosures in the Fund's quarterly fund fact sheet published during 2017 (1Q2017, 2Q2017, 3Q2017 and 4Q2017) on the Fund's website regarding TerreStar and the failure to disclose risks of illiquid investments were inaccurate, incomplete and misleading in violation of Rule 34b-1.

   <u>Response</u>:

The Adviser believes the Fund's quarterly fact sheets included all disclosure required of such documents and were not misleading. These documents are neither intended nor required to serve as a report on illiquid investments to shareholders. Further the fact sheets state, ***"Before investing in the Fund, you should carefully consider the Fund's investment objectives, risks, charges, and expenses. For a copy of a prospectus or summary prospectus which contains this and other information, please visit our***

*website at highlandfunds.com or call 1-877-665-1287. Please read the fund prospectus carefully before investing."* Please also refer to our response set forth in II.1.d above.

As set forth in the prospectus - **Annual/Semi-Annual Reports to Shareholders:** Additional information about the Funds' investments will be available in the Funds' semi-annual reports to shareholders. In the Funds' annual reports, you will fund a discussion of the market conditions and investment strategies that significantly affected the Funds' performance during its last fiscal year. In the semi-annual and annual reports, TerreStar was described as a restricted security, with the below description:

> Restricted Securities. These securities are not registered and may not be sold to the public. There are legal and/or contractual restrictions on resale. The Fund does not have the right to demand that such securities be registered. The values of these securities are determined by valuations provided by pricing services, brokers, dealers, market makers, or in good faith under the procedures established by the Fund's Board of Trustees.

In addition both the TerreStar equity and debt were designated as Level 3 assets, with the below accompanying disclosure within Fair Value Measurements reporting:

> The fair value of the Funds' common stocks, preferred stocks, exchange-traded funds, rights, warrants and options that are not actively traded on national exchanges are generally priced using quotes derived from implied values, indicative bids, or a limited amount of actual trades and are classified as Level 3 assets because the inputs used by the brokers and pricing services to derive the values are not readily observable. Exchange-traded options are valued based on the last trade price on the primary exchange on which they trade. If an option does not trade, the mid-price, which is the mean of the bid and ask price, is utilized to value the option.

> At the end of each calendar quarter, the Investment Adviser evaluates the Level 2 and 3 assets and liabilities for changes in liquidity, including but not limited to: whether a broker is willing to execute at the quoted price, the depth and consistency of prices from third party services, and the existence of contemporaneous, observable trades in the market. Additionally, the Investment Adviser evaluates the Level 1 and 2 assets and liabilities on a quarterly basis for changes in listings or delistings on national exchanges.

> Due to the inherent uncertainty of determining the fair value of investments that do not have a readily available market value, the fair value of the Funds' investments may fluctuate from period to period. Additionally, the fair value of investments may differ significantly from the values that would have been used had a ready market existed for such investments and may differ materially from the values the Funds may ultimately realize. Further, such investments may be subject to legal and other restrictions on resale or otherwise less liquid than publicly traded securities.

Lastly conveyed through **Note 8. Disclosure of Significant Risks and Contingencies**

The primary risks of investing in the Funds are described below in alphabetical order:

### Illiquid and Restricted Securities Risk

Certain investments made by the Funds are, and others may be, illiquid, and consequently the Funds may not be able to sell such investments at prices that reflect the Investment Adviser's assessment of their value or the amount originally paid for such investments by the Funds. Illiquidity may result from the absence of an established market for the investments as well as legal, contractual or other restrictions on their resale and other factors. Furthermore, the nature of the Funds' investments, especially those in financially distressed companies, may require a long holding period prior to profitability.

Restricted securities (i.e., securities acquired in private placement transactions) and illiquid securities may offer higher yields than comparable publicly traded securities. The Funds, however, may not be able to sell these securities when the Investment Adviser considers it desirable to do so or, to the extent they are sold privately, may have to sell them at less than the price of otherwise comparable securities. Restricted securities are subject to limitations on resale which can have an adverse effect on the price obtainable for such securities. Also, if in order to permit resale the securities are registered under the Securities Act at a Fund's expense, the Fund's expenses would be increased. A high percentage of illiquid securities in a Fund creates a risk that such a Fund may not be able to redeem its shares without causing significant dilution to remaining shareholders.

IV.B.1    <u>Comment</u>:  The Staff noted that Section 34(b) of the 1940 Act makes it unlawful to make a material misstatement or omission in a registration statement filed pursuant to the 1940 Act. The lack of disclosure in the Fund's prospectus or SAI regarding the increasing percentage of the Fund's investments in illiquid securities, and the associated risks to shareholders, was incomplete, inaccurate and potentially misleading under Section 34(b) of the 1940 Act.

<u>Response</u>:

The Fund's prospectus and SAI have historically included the risks describing illiquid investments and the risks associated therewith as outlined above in II.1.d. As the Fund is not a money market fund, Form N-1A does not require any specific liquidity or illiquidity related disclosure in the prospectus or SAI relating to the percentage of illiquid securities. Specific information with respect to the levels of restricted securities and Level 3 assets are included in the Fund's annual and semi-annual reports to shareholders, as outlined above in IV.A.  In addition, we note that because open-end funds by nature expand and contract from purchases and redemptions that fund prospectuses are designed by rule to disclose overall risks sufficient to inform investors. Based on the constant potential for changed circumstances, funds disclose reasonably foreseeable risk which the actual impact varies constantly based on circumstances and funds may supplement disclosure only upon occurrence of such event is deemed

permanent (such as portfolio manager or strategy changes). Whereas fund annual and semi-annual shareholder reports indicate current financial status.

We will continue to evaluate disclosure in the prospectus, SAI and shareholder reports on an ongoing basis, and will incorporate additional disclosure as appropriate.

IV.B.2    <u>Comment</u>:  The Staff requests the Adviser review whether disclosure should be made concerning the business and/or professional relationships of John Honis, Rand Advisors, Highland Capital Management, L.P. and the Adviser and potential conflicts, consistent with Section 34(b) of the 1940 Act, and inform the Staff of steps the Adviser will take with respect to this issue.

<u>Response</u>:

While the Adviser believes the existing disclosures include all material disclosures regarding conflicts, the Adviser in response to the Staff's request, and at the next opportunity (no later than the Fund's next annual Form N-2 update, which is expected to file by the end of January 2020), will add the below disclosure regarding the arrangement between Mr. Honis and Highland Capital Management, L.P.  Separately, the Adviser will update affiliated fund filings through the annual update and annual shareholder meeting process (for listed funds). To the extent a registration statement for an affiliated fund is filed prior to such fund's annual update, the Adviser will include the updated disclosure.

Proposed Disclosure (with additions underlined):

> Since May 1, 2015, Mr. Honis has been treated as an Independent Trustee of the Fund. Prior to that date, Mr. Honis was treated as an Interested Trustee because he was a partner of an investment adviser affiliated with the Adviser until his resignation in November 2014. As of March 5, 2019, Mr. Honis was entitled to receive aggregate severance and/or deferred compensation payments of approximately $400,000 from another affiliate of the Investment Adviser. Mr. Honis also serves as a trustee of a trust that owns substantially all of the economic interest in an investment adviser affiliated with the Adviser. Mr. Honis indirectly receives an asset-based fee in respect of such interest, which is projected to range from $450,000-$550,000 annually. <u>Additionally, an investment adviser controlled by Mr. Honis has entered into a shared services arrangement with an affiliate of the Adviser, pursuant to which the affiliate provides back office support in exchange for approximately $50,000 per quarter. The affiliated adviser was paid $147,000 and $208,000 in 2017 and 2018, respectively.</u>  In light of these relationships between Mr. Honis and affiliates of the Adviser, it is possible that the Securities and Exchange Commission (the "SEC") might in the future determine Mr. Honis to be an interested person of the Fund.

VI.A    <u>Comment</u>:  The Staff noted that the Adviser failed to implement and/or adopt adequate policies and procedures concerning fair valuation of the Fund's portfolio securities. The Adviser should inform the Staff of the corrective action it is taking to adopt and implement policies, procedures and controls to address the compliance program deficiency and the control deficiency with respect to fair valuation of the Fund's portfolio securities.

<u>Response</u>:

The Adviser both had and implemented significant controls and steps in valuation, but the TerreStar circumstances revealed a weakness.  The Adviser has developed a plan to take corrective action to address the control deficiency related to fair valuation.

First, the Adviser has made enhancements to the Adviser's Valuation Committee review control by:

- Providing additional training to members of the Valuation Committee with respect to application of ASC 820
- Providing training to members of the Valuation Committee with respect to usage of subject matter expert inputs as inputs to fair value determinations
- Creating and implementing a guide for use of the Valuation Committee for the assessment of the application of ASC 820 to fair value models (see Exhibit D attached hereto)

These enhancements have been completed and were part of the materials provided at the March 19, 2019 Valuation Committee meeting (see <u>Exhibit E</u> attached hereto, with respect to the training materials)

Next, the Adviser has made enhancements to the Adviser's Valuation Sub-Committee review control, which is already a part of its existing valuation process.  This was accomplished by:

- The addition of an additional member to the Valuation Sub-Committee to conduct certain control activities

    This enhancement has been completed.

Lastly, the Fund has further enhanced and the Board has approved the Adviser's Valuation Policy at the February 28 through March 1, 2019 in-person Board meeting, as marked in <u>Exhibit F</u> attached hereto. The amended Policy now includes procedures for the engagement of subject matter experts to derive unobservable inputs, the reporting of trades of fair valued securities determined by the Valuation Committee to be "non-orderly," and the composition and documentation of valuation sub-committee meetings.

VI.B.
1

<u>Comment</u>: The Staff found instances where the Fund may not have complied with a non-fundamental investment policy, failed to adhere to investment guidelines, and failed to maintain an appropriate level of liquidity. These instances indicate weaknesses in the Adviser's policies and procedures for ensuring compliance with the Fund's investment policies and investment guidelines.

The Adviser should inform the Staff of the corrective action it is taking to adopt and implement policies and procedures in response to this compliance program deficiency.

<u>Response</u>:

The Adviser, as discussed, does not agree that it failed to comply with the noted policies. As outlined above in response III.A the Adviser believes the Fund complied with its non-fundamental investment policy. Also as outlined above in response II.1.b, the Adviser believes the Fund maintained an appropriate level of liquidity. Lastly the Adviser believes all investments made by the Fund were done in accordance its investment guidelines. Nonetheless, the Adviser is reviewing fund policies for identification of any improvements or clarifications that can be made. For example, the enhancements to the Valuation Policy outlined in Section VI.A above, have been implemented.

VI.B.
2

<u>Comment</u>: The Staff found sales literature published by the Fund that was inaccurate, incomplete and potentially misleading under Rule 34b-1. The staff also found certain disclosures in the Fund's prospectus and SAI to be inaccurate, incomplete and potentially misleading under Section 34(b). These findings indicate weaknesses in the Adviser's policies and procedures for ensuring accurate, complete and not misleading disclosures in the Fund's sales materials, prospectus and SAI.

The Adviser should inform the Staff of the corrective action it is taking to adopt and implement policies and procedures in response to this compliance program deficiency.

<u>Response</u>:

The Adviser does not believe the disclosure in sales literature for the Fund to be inaccurate, incomplete, or potentially misleading as set forth in the response provided above in II.2 and IV.A.

With respect to the disclosures in the Fund's prospectus and SAI deemed to be inaccurate, incomplete and potentially misleading, the Adviser believes applicable disclosures were appropriately addressed as has been set forth in our response above in II.1.d. and IV.B.1.

The Adviser continues to review the disclosure included in fact sheets for appropriate risks, and any risk that is included in a prospectus as prominent for a fund will be considered for inclusion in the fund's fact sheet. The Adviser also undertakes to continuously review disclosure of all funds managed by the Adviser for consistency with the responses to this letter.

*       *       *

Please feel free to contact me at 972-419-4459 to discuss any questions or comments you may have regarding the foregoing responses.  Thank you for your assistance.


Sincerely,

Jason Post
Chief Compliance Officer

# **EXHIBIT A**

March 18, 2019 Memorandum



**DATE:**      March 18, 2019

**TO:**        Securities and Exchange Commission (the "SEC")

**FROM:**      Highland Capital Management Fund Advisors, L.P. (the "Adviser")

**RE:**        Accounting Treatment of TerreStar Corporation ("TerreStar") Equity NAV Error in the Fund

---

This memorandum is intended to provide supplemental information regarding the NAV Error in the Highland Global Allocation Fund ("GAF" or the "Fund") and reflect the discussions on the March 8, 2019 call. Attendees of the call included:

(i)   SEC Staff: David Bartels, Paul Cellupica, Alison Staloch, Vince DiStefano, Dan Rooney, Christian Sandoe, Kathryn Feld and Linda Hoffman;

(ii)  Adviser Representatives: Thomas Surgent, Frank Waterhouse, Jason Post and Lauren Thedford;

(iii) Independent Trustee Counsel: Stacy Louizos of Drinker Biddle & Reath LLP; and

(iv) Fund and Adviser Counsel: George Zornada and Jon-Luc Dupuy of KL Gates LLP.

In connection with the Fund's conversion from an open-end fund to a closed-end fund (the "Conversion") on February 13, 2019, the Office of the Chief Accountant ("OCA") of the SEC reviewed the Adviser's fair valuation of TerreStar equity, in particular the application of Financial Accounting Standards Board Accounting Standards Update 2011-4, Topic 820, Fair Value Measurement ("ASC 820") to two transactions in TerreStar equity that occurred in March 2018 (the "March Transactions"). The OCA provided its feedback during an exit call on February 8, 2019 and subsequently confirmed no comments to the Adviser's confirmation of understanding letter on February 14, 2019.

The Adviser and Houlihan Lokey, an independent third party expert valuation consultant approved by the Board, initially determined that the March Transactions were "non-orderly" and should be given "zero weighting" for purposes of determining fair value. As reflected in the consultation, the Adviser ultimately determined that both March Transactions should be classified as "orderly." The fair valuation methodology adopted, as addressed in the consultation, weights inputs and does not reflect last sales transaction pricing exclusively in determining fair value. The "orderly" determination and adoption of the weighted fair valuation methodology resulted in NAV errors in the Fund (the "NAV Error").

After incorporation of the updated valuation into the Fund's NAV, the gross NAV Error, excluding interest, the advisory fee rebate, and processing costs, amounted to approximately $6.1 million of loss to the Fund and approximately $1.4 million of losses to Shareholders over the period between March 18, 2018 and January 19, 2019.

**Calculation of the NAV Error**

a.  For each day during the NAV Restatement Period, the Adviser analyzed the impact on the Fund's NAV resulting from the revised mark relative to the original mark for TerreStar Equity. This amount includes:

(i)   "Loss to Fund", which represents the sum of the overpayment of net redemptions (and resulting remaining shareholder dilution) caused by the NAV overstatement for each day in the period where the difference in marks resulted in a NAV error in accordance with the NAV Error

Confidential Treatment Requested by Highland Global Allocation Fund
Pursuant to 17 C.F.R. § 200.83 (2019)

Confidential Treatment Requested by Highland Global Allocation Fund
Pursuant to 17 C.F.R. § 200.83 (2019)

Correction Procedures. This number is an estimate based on net investor activity for all shareholders for each period, as provided to the Adviser by the Fund's transfer agent, DST Asset Manager Solutions, Inc. (the "Transfer Agent"). This amount is an estimate based on all investor activity for each period, as provided by the Transfer Agent. Final numbers will be determined once an investor-by-investor analysis is performed for the entire NAV restatement period by the Adviser and the Transfer Agent.

(ii) "Loss to Shareholders", which occurred where either (i) the revised mark was higher than the original mark for the period and shareholders who redeemed during the period were underpaid (these shareholders will be made whole as part of the shareholder reprocessing exercise); or (ii) the revised mark was lower than the original mark for the period and shareholders who subscribed or reinvested shares of the Fund overpaid (these shareholders will be made whole as part of the shareholder reprocessing exercise).

(iii) "Estimated Gross Up for Additional Omnibus Accounts", which is intended to estimate the potential impact for the reprocessing of individual capital activity that is currently netted within the Omnibus accounts. The investor level detail within the Omnibus accounts is aggregated into one net investor in the detail available from the Transfer Agent. The current analysis is only looking through to the NFS Omnibus account, but there may be additional omnibus accounts that require this look-through treatment, which will be determined after an analysis of the various omnibus agreements.

(iv) "Processing fees", which refer to the rough amount the Adviser expects to have to pay the Transfer Agent to reprocess shareholder transactions as described above.

(v) "Management fee rebate", which is the excess advisory fee calculated on the higher TerreStar valuation reflected in the NAV.

(vi) "Interest", which is calculated on the daily cumulative Fund receivable at a rate of Fed Funds + 45 bps using the "Actual/360" methodology.

**Equitable Treatment of Realized Gains in the NAV Error Calculation**

The GAF NAV Error represents a unique set of circumstances where, during the NAV Restatement period there are days in which there is (1) an original fair value mark, an (2) Updated Valuation (defined below), and (3) the mark at which TerreStar was sold in a negotiated arm's length transaction to an unaffiliated third party; the latter price is greater than both the original fair value mark and the Updated Valuation, and results in a Gain above Fair Value which the Adviser believes should also be considered in the determination of Fund Loss. On December 7, 2018, the Fund sold $23 million of TerreStar equity at $350 per share (above its restated December 2018 fair value mark of $274.38, as calculated under the methodology set forth in the consultation, and above the Adviser's original fair value mark of $333.12 prior to the OCA consultation). When applying the fair valuation approach approved by the SEC during the OCA consult process (the "Updated Valuation"), the Adviser believes it is appropriate to also apply a *portion* of the gain realized on the December 7, 2018 sale in excess of the restated fair value of approximately $4,959,992 (the "Gain above Fair Value).

The Adviser's process in applying this gain to the NAV Error is consistent with the Fund's NAV Error Correction Procedures for the following reasons:

2

Confidential Treatment Requested by Highland Global Allocation Fund
Pursuant to 17 C.F.R. § 200.83 (2019)

According to Item 4 of Section I, "<u>Definitions</u>," in relevant part, "<u>Fund Loss</u>" includes a situation where a Fund "has paid excessive redemption proceeds as a result of an overstatement of net asset value." While the definition of Fund Loss is silent on the unique circumstances present here, Item 2 of Section I provides context for analyzing the total harm in its definition of a NAV error:

> "one or more errors in the computation of [NAV] that, *when considered cumulatively*, result in a difference between the originally computed NAV and the corrected NAV of at least $0.01 per share. If there are one or more errors in the computation of NAV that, *when considered cumulatively*, result in a difference between the originally computed NAV and the corrected NAV of less than $0.01 per share, the impact is deemed to be immaterial and no corrective adjustment will be made to the Fund or any shareholder account. This computation is based upon the *actual difference* and is not based upon the rounding of NAV to the nearest cent per share." (emphasis added)

To the extent not expressly covered above, Item 9 of Section II, "<u>Correction Procedures</u>," states the following (emphasis added):

> "9. The foregoing Procedures are designed for general application. However, *there may be situations where equity would suggest a different result under the circumstances*. Accordingly, the Adviser may, with the approval of the Board, diverge from these Procedures, as they deem appropriate, on a case by case basis.

Although the definition of Fund Loss is not a bright line rule in this circumstance, it follows that these two provisions should be taken together and the Adviser should analyze the NAV Error on a cumulative basis when determining the actual harm to shareholders. This results in the application of the Gain above Fair Value to the NAV Error, which ultimately reduces the amount of Fund Loss (or harm to shareholders).

As the NAV Error Correction Procedures are designed for general application, the procedures do not, and were not intended to, contemplate or address every possible circumstance or scenario. Given the unique circumstances that produced the Gain above Fair Value (i.e. a period during which there is (1) an original fair value mark, an (2) Updated Valuation (defined below), and (3) the mark at which TerreStar was sold in a negotiated arm's length transaction to an unaffiliated third party), this particular scenario is not explicitly addressed in the general NAV Error Correction Procedures (set forth in Exhibit 1 of the attached NAV Error Correction Procedures).

The Adviser believes the intent of Item 9 was to provide the flexibility needed to consider the unique circumstances described above and, as such, warrant application of the equitable concept introduced by Item 9 of the NAV Error Correction Procedures and supported by the definition of Fund Loss in Item 4. As a result, the Adviser believes that, taking into account Item 9, the aggregation (or netting) of the Gain above Fair Value with the NAV Error ultimately is fair and equitable to shareholders and consistent with the NAV Error Correction Procedures. This approach has been discussed with the Board (see below).

The NAV Error amount of $7.7 million (including interest, rebate of Advisory fees, and processing costs) ignores the actual realized gain represented by the Gain above Fair Value. As a result of the Updated Valuation, the Loss to Fund was caused by dilution to remaining investors from redemptions at a NAV higher than the Updated Valuation. A significant part of that "paper" dilution was offset by the Gain above Fair Value because the Fund's net assets increased due to the actual cash realized in the December 7, 2018 sale at a price higher than the Updated Value; such sale benefitted remaining investors, however the fair value of the remaining TerreStar equity (reflected in the Updated Value) was not increased to reflect the full realized sale price.

Confidential Treatment Requested by Highland Global Allocation Fund
Pursuant to 17 C.F.R. § 200.83 (2019)

This application of all relevant data surrounding the TerreStar investment is particularly important in light of (i) the robust disclosure included in the Fund's definitive proxy statement, which made very clear the risks associated with the ongoing valuation of the TerreStar investment; and (ii) shareholder's overwhelming vote in favor of the Conversion (95% of shareholders present at the shareholder meeting voted in favor of the Conversion proposals). This shareholder affirmation suggests that shareholders chose to continue to seek exposure to the TerreStar investment. The Adviser also believes that these shareholders have invested in the Fund (as well as other funds advised by the Adviser) for these unique and opportunistic investment opportunities that provide investors with access to institutional quality strategies in a 1940 Act offering.

The following granular points were considered in the application of a portion of the realized Gain above Fair Value in the NAV Error calculation for GAF:

- On December 7, 2018, and prior to incorporation of the Updated Valuation, TerreStar was marked at $333.12 per share.

- When applying the Updated Valuation to GAF over its NAV Restatement Period, TerreStar's fair value marks were restated to $274.38 per share on December 7, 2018 (different values were determined for various other dates throughout the period).

- This restated value was intended to represent fair value more accurately than the previous TerreStar fair value marks, as set forth in the OCA consultation.

- The delta between $333.12 and $274.38 per share initially resulted in a NAV Error; however, *on the same day* GAF also executed a negotiated arm's length sale of 65,591 shares of TerreStar equity at a price of $350 per share for a total of $23 million.

- If the restated fair value price per share of $274.38 is *truly* representative of TerreStar's fair value on December 7, 2018, then application of the NAV Error Correction Procedures should consider <u>cumulatively</u> the delta between (i) the original mark of $333.12 per share and the revised mark of $274.38 share (red in the chart below) (the "<u>Basis of the NAV Error</u>") *and* (ii) the December 7, 2018 sale price of $350 per share and the revised mark of $274.38, or approximately $4.96 million (green in the chart below) (the Gain above Fair Value).

- Note, the Basis of the NAV Error represents a paper loss on the records of the Fund while the Gain above Fair Value represents actual cash in the Fund.

Confidential Treatment Requested by Highland Global Allocation Fund
Pursuant to 17 C.F.R. § 200.83 (2019)



December 7, 2018

- Application of approximately $2.3 million of the Gain above Fair Value against the Basis of the NAV Error represents the equitable application and inclusion of all relevant data of the TerreStar price in the calculation of Loss to Fund from dilution of remaining investors. As described in section 4 above, certain material components of the NAV error were estimated and can be finalized only after an investor-by-investor analysis is performed for the entire NAV restatement period by the Adviser and the Fund's transfer agent. As such, the $2.3 million of the Gain above Fair Value that is applied against the Basis of the NAV error could change materially, but would be limited to the total Gain above Fair Value of $4.96 million.

- Note, the benefit derived from the Gain above Fair Value as offset against the amount of the total Loss to Fund not covered by insurance inured to the benefit of <u>all</u> GAF shareholders on December 7, 2018 and not a subset of shareholders.

- Any shareholders subscribing into GAF subsequent to December 7, 2018 did not benefit from the Gain above Fair Value, but the approximate $17,000 of subscription proceeds paid in excess of the restated NAV will be made whole from insurance proceeds and the related deductible.

- The "paper" dilution referenced above is significantly offset by the Gain above Fair Value because the Fund's net assets increased due to *actual cash* realized in the December 7, 2018 sale at a price *higher* than the Updated Value. This sale benefitted remaining investors, however the fair value of the remaining TerreStar equity (reflected in the Updated Value) was not increased to reflect the full realized sale price.

- The factual circumstances surrounding the valuation of TerreStar equity, including:

  o The use of Houlihan Lokey, an independent third party expert valuation consultant approved by the Board, to assist in the fair valuation;

  o The initial conclusion that the sales of TerreStar in March 2018 (the "<u>March Transactions</u>") were "non-orderly", and the ultimate conclusion of the Adviser, after conclusion of a formal audit of affiliated funds holding TerreStar, that the March Transactions should be classified as "orderly"; and

Confidential Treatment Requested by Highland Global Allocation Fund
Pursuant to 17 C.F.R. § 200.83 (2019)

o   The consultation with the OCA.[1]

## Shareholder and Fund Reprocessing

The NAV Error totals approximately $7.7 million (including interest, rebate of Advisory fees, and processing costs). The NAV Error will be covered by: (i) GAF's pro rata portion of the Adviser's and the Fund's joint insurance policy and $250,000 deductible (paid by the Adviser); (ii) an additional payment and rebate of advisory fees by the Adviser; and (iii) the Gain above Fair Value (as defined below), which is unique to GAF and arises from a sale of TerreStar equity above fair value after the shareholder approval of the conversion.

In connection with this analysis, the Adviser disclosed to the Board the following process regarding the GAF NAV Error:

1.   Book a receivable for the NAV Error.

2.   Apply the insurance proceeds pro rata based on losses across the impacted funds.

3.   Application of the Gain above Fair Value to the GAF NAV Error.

4.   Adviser to pay the:

   •   Ratable share of insurance deductible across the impacted funds; and

   •   Management fee rebate and processing costs across the impacted funds.

A numerical summary is as follows:

|  | Loss to Fund | Loss to Shareholders | Totals |
|---|---|---|---|
| Net Loss | (6,068,851) | (1,373,272) | (7,442,124) |
| Processing, Fees, Interest | (231,000) | - | (231,000) |
| Insurance Proceeds | 3,566,248 | 1,373,272 | 4,939,520 |
| Insurance deductible paid by Adviser | 246,976 | - | 246,976 |
| Additional payment from Adviser | 231,000 | - | 231,000 |
| Gain above fair value | 2,255,628 | - | 2,255,628 |
| Total* | - | - | - |

   *The Total row should net to zero and serves solely as a check figure.

## Accounting Treatment

U.S. generally accepted accounting principles ("GAAP") are generally silent on the unique circumstances pertaining to the Gain above Fair Value, but the Adviser notes that GAAP's primary focus would relate to disclosure of the transaction to shareholders.  As stated in paragraph 11.67 of the AICPA Guide to the Audit of Investment Companies, "Regulation S-X requires disclosure of more information about transactions with [or related to]

---

[1] As a policy matter, a determination to ignore the Gain above Fair Value in the Loss to Fund would result in an outcome where the Adviser's sale of an asset at a price above fair value results in an increase in Adviser liability (i.e., such an outcome would set precedent in effect for the penalization of the Adviser's sale of an asset at a material gain). The Adviser fears that a finding to the contrary would clash with the Adviser's overarching duty of best execution.

Confidential Treatment Requested by Highland Global Allocation Fund
Pursuant to 17 C.F.R. § 200.83 (2019)

affiliates in prospectuses and annual reports to the SEC than is required under GAAP. Various rules of Regulation S-X require the financial statements of an investment company to state separately investments in affiliates, investment income from affiliates, *gain or loss on sales of securities of affiliates*, and management fees or other service fees payable to controlled entities and other affiliates." (emphasis added) Note, the gain on the sale of TerreStar to an unaffiliated third party is a gain on the sale of securities of a portfolio affiliate. As such, the Adviser acknowledges its disclosure obligation in the Fund's 2019 Annual Report.

Assuming the Board approved the proposed treatment and if there was no regulatory objection, then inclusion of the Gain above Fair Value could be reflected as a $2.3 million write down of the Fund's current NAV Error receivable.

The Adviser notes that the investors and the Fund receive the same outcome whether viewed as a write down of a receivable (under accounting standards) or viewed as a "netting" concept, and the write down would be addressed in disclosure in the Fund's financial statements.

The Adviser views this "write down" as the reduction of a portion of the approximately $5 million of Gain above Fair Value, which has been settled in cash and reflected as an increase in the net assets of the Fund as of the date of the sale. This approach represents an equitable resolution under the NAV Error Correction Procedures and has been discussed with and reviewed by the Funds' counsel, Chief Compliance Officer and Treasurer. Fund counsel believes that the proposed treatment represents an equitable and reasonable resolution under the NAV Error Correction Procedures.

The proposed treatment of the Gain above Fair Value on the receivable recorded by the Fund would not affect the balances and disclosures in the audited financial statements previously filed for the Fund for the year ended September 30, 2018.


**Board Discussions**

The Board agrees in principal with the aforementioned treatment, subject to consultation with and review by the SEC. Although the Adviser has begun shareholder reprocessing with the Fund's transfer agent, the Adviser does not intend to begin issuing payments to shareholders until all SEC comments, if applicable, have been answered.


**Conclusion**

The NAV Error for the Fund totals approximately $7.7 million (including interest, rebate of Advisory fees, and processing costs); the Fund and its shareholders have received $5.4 million and the remaining approximately $2.3 million was, in practical effect, paid through the cash received as a result of the Gain above Fair Value. This equitable treatment, which includes viewing all data points on an aggregate basis and considering the totality of the circumstances, is permitted under the Fund's NAV Error Correction Procedures and outlines an approach where: (i) individual shareholders are made whole; and (ii) the Fund and its current shareholders are is compensated for their losses through the pro rata application of the insurance proceeds, the advisory fee reimbursements, the Adviser's additional payments and the $2.3 million Gain above Fair Value.

Confidential Treatment Requested by Highland Global Allocation Fund
Pursuant to 17 C.F.R. § 200.83 (2019)

## EXHIBIT A

## NAV Error Correction Procedures

## NAV ERROR CORRECTION PROCEDURES

The Funds seek to provide reasonable assurance that standardized procedures (including any applicable NAV variance materiality thresholds) for resolving NAV misstatements are established, in accordance with the requirements set forth in this policy and/or procedures applicable to a particular Fund (which are intended to be consistent with any policies or procedures adopted by the Board of such Funds as and where applicable), as well as all applicable laws and regulations.

## I.   Definitions

1.   NAV means the net asset value of a Fund, as calculated in accordance with the current Prospectus (or similar governing document) of the Fund.

2.   A NAV error[83] is defined as one or more errors in the computation of net asset value ("NAV") that, when considered cumulatively, result in a difference between the originally computed NAV and the corrected NAV of at least $0.01 per share.[84]   If there are one or more errors in the computation of NAV that, when considered cumulatively, result in a difference between the originally computed NAV and the corrected NAV of less than $0.01 per share, the impact is deemed to be immaterial and no corrective adjustment will be made to the Fund or any shareholder account. This computation is based upon the actual difference and is not based upon the rounding of NAV to the nearest cent per share.

3.   The NAV error period consists of those days during which a NAV error existed.

4.   Fund loss refers to a situation where a Fund has either paid excessive redemption proceeds as a result of an overstatement of net asset value or received insufficient subscription proceeds as a result of an understatement of net asset value.  When such a Fund loss occurs, the individual shareholders effecting transactions received a corresponding benefit (a "shareholder benefit").

5.   Fund benefit refers to a situation where a Fund has either paid insufficient redemption proceeds as a result of an understatement of net asset value or received excessive subscription proceeds as a result of an overstatement of net asset value.  When such a Fund benefit occurs, the individual shareholders effecting transactions suffer a corresponding loss (a "shareholder loss").

6.   Net loss occurs when the Fund loss, as a result of an NAV error, exceeds the Fund benefit as a result of such NAV error; and the amount of the net loss is the difference between the Fund loss and the Fund benefit, plus the amount,

---

[83] This penny-per-share materiality standard is applicable when the NAV per share is within the range of $5.00 to $20.00. Outside of that range, the applicable materiality standard will be 0.1% per share.

[84] The CCO may delegate certain responsibilities to a designee subject to the CCO's supervision.

if any, of the Fund benefit paid to shareholders as reimbursements pursuant to paragraph 2(a) below.

7.  Net benefit occurs when the Fund benefit, as a result of an NAV error, exceeds the Fund loss as a result of such NAV error; and the amount of such net benefit is the difference between the Fund benefit and the Fund loss, minus the amount, if any, of the Fund benefit paid to shareholders as reimbursements pursuant to paragraph 2(a) below.

8.  The responsible party is the entity liable for an NAV error.

## II. Correction Procedures

In the event an NAV error occurs (defined above as at least $0.01 per share) in a Fund on any day on which its shares are purchased or redeemed, the Fund's Operations Group (the "Operations Group") shall notify the Fund's CCO.[85]   The Adviser shall, subject to the review and approval of the Board, determine the responsible party for any NAV error.  As soon as reasonably practicable after detection of the error but, in any event, within three business days, the Operations Group will provide the CCO with a written analysis and recommendation (based on the criteria below) to correct the error.  The CCO shall evaluate the recommendation of the Operations Group and, together with the Treasurer, monitor the corrective action taken to ensure that it is based upon the following criteria:

1.  If the NAV error is less than one half of one percent of the originally computed NAV, a Fund should determine whether total Fund losses exceeded total Fund benefits for the error period.  If the Fund incurred a net loss, the responsible party (e.g., the adviser, sub-adviser, administrator or transfer agent) should reimburse the Fund for the net loss; however, no shareholder account reimbursements are required.  If the Fund had a net benefit, no action need be taken; however, such net benefit will not be carried forward to any analyses performed in the future for other NAV errors that may occur.

2.  If the NAV error equals or exceeds one half of one percent of the originally computed NAV:

    (a)  The responsible party should reimburse shareholders for shareholder losses; and

    (b)  The responsible party should reimburse the Fund for Fund losses.

    (c)  With respect to individual shareholder losses, the responsible party should pay, in the case of an NAV understatement, to individual shareholders any additional redemption proceeds owed or, in the case

---

[85] If NHF or FRO's shares trade at a discount to NAV, NHF or FRO's agent would purchase shares on the open market rather than the Fund issuing shares.

of an NAV overstatement, either refund excess subscription monies paid or credit shareholder accounts as of the date of the error, with additional shares.[86] Only individual shareholders whose losses exceed a de minimis amount of $10 will be made whole.

(d)    With respect to Fund losses, the responsible party should reimburse the Fund for the amount of the Fund's losses.

(e)    Note that there is no netting of Fund benefits with Fund losses where the error equals or exceeds 1/2 of 1% of NAV to the extent Fund benefits were paid out by the Fund to shareholders as account adjustments.

3.    In the case of an error that fluctuates above and below 1/2 of one percent during the NAV error period, individual shareholder reimbursements should be effected for those days where the error was equal to or exceeded 1/2 of one percent.

4.    Where practicable and equitable, the Fund will reprocess shareholder trades (whether the NAV error is less than one half of one percent or equals or exceeds one half of one percent) at the correct NAV. The responsible party will pay the cost of any necessary reprocessing.

5.    The computation of whether an NAV error equals or exceeds one half of one percent can be affected by rounding. For example, a $.015 per share difference can constitute a per share NAV error of either $.01 or $.02 on a given day. As such, NAV errors will be computed to three decimal places in determining the appropriate corrective action under these NAV Error Correction Procedures.

6.    The process described above should be a comprehensive analysis encompassing all known errors. If there is a subsequent discovery of an error which affects an NAV error period that had previously been corrected in the manner described above, the subsequently discovered error should be analyzed in isolation without taking into consideration the previously corrected error.

7.    The Operations Group will maintain an inventory file that includes a short description of the error, the NAV error calculation and the subsequent resolution, including amount reimbursed and responsible party, a copy of which file shall be provided to the CCO. Certain immaterial items which occur frequently during the normal process of trading will not be maintained.

8.    On a quarterly basis, the Board shall receive a report on all NAV errors. The report, at a minimum, will contain the dates of the error(s), the original and corrected NAVs, the amount of the loss or benefit incurred by the Fund, the

---

[86] No Highland Client currently trades pursuant to a 19b-4 Order.

52813633_13

responsible party, the corrective action taken and whether reimbursements were required at the shareholder level.

9.    The foregoing Procedures are designed for general application. However, there may be situations where equity would suggest a different result under the circumstances. Accordingly, the Adviser may, with the approval of the Board, diverge from these Procedures, as they deem appropriate, on a case by case basis.

10.    See Exhibit 1 for a flow chart summarizing the above procedures. In case of any inconsistency between the Procedures and the chart, the Procedures shall govern.

### EXHIBIT 1 - NAV ERROR CORRECTION PROCEDURES



Account reimbursements should be made to compensate shareholders for *shareholder losses*. Make individual shareholders whole as follows:

For NAV understatements:

-Pay shareholders any additional redemption proceeds owed.

For NAV overstatements:

-Refund excess subscription monies paid or

-Credit shareholder account with additional shares

If account adjustment is less than a de minimis amount, account adjustment need not be made.

Determine total *fund loss* during error period. The responsible party should reimburse the fund for the amount of the *fund loss*. Note that there is no netting of *fund benefits* with *fund losses* to the extent *fund benefits* were paid out by the fund to shareholders as account adjustments.

197

## **EXHIBIT B**

January 19, 2019 OCA Submission

**Highland Global Allocation Fund**
**Calculation of Loss to Fund and Investors**
**for TerreStar Valuation Adjustment**

*Thru 09/30/18*

**Weighting Periods [1]**

| | |
|---|---|
| 03/14/18 thru 06/16/18 | (2,515,167) |
| 06/17/18 thru 08/16/18 | (1,447,124) |
| 08/17/18 thru 09/30/18 | 6,084 [2] |
| Net fund loss | (3,956,207) |
| Estimated management fee rebate [3] | (34,000) |
| Calculated interest for fund receivable [4] | (37,000) |
| **Total due to fund - thru 09/30/18 [8]** | **(4,027,207)** |

| | |
|---|---|
| Net owed to investors via specific allocation [5] | (579,802) |
| Estimated gross up for omnibus accounts [6] | (589,675) |
| Processing fees [7] | (100,000) |
| **Total due thru 09/30/18 [8]** | **(5,296,683)** |

See footnotes on next page

*Confidential Treatment Requested by Highland Global Allocation Fund*
*Pursuant to 17 C.F.R. § 200.83 (2018)*

**Footnotes:**

[1] Based on the findings outlined in a separate memo regarding the revised marks of the TerreStar equity held by the Highland Global Allocation Fund (the "Fund") at various points in time during the financial reporting period ending 9/30/18, the NAV restatement analysis during that period was determined to begin on 3/14/18. For each day during that period, we analyzed the impact on the Fund's NAV resulting from the revised mark relative to the original mark for the TerreStar investment. "Loss to Fund" for each period in the table above represents the sum of the overpayment of net redemptions caused by the NAV overstatement for each day in the period where the difference in marks resulted in a NAV error in accordance with the Fund's NAV error policy, which was previously provided. This number is an estimate based on net investor activity for all investors for each period, as provided to us by the Fund's transfer agent. This loss will be allocated to all investors prorata.

[2] The revised mark was lower than the original mark for the period, but the Fund experienced net inflows during this period. This amount represents the net benefit to the Fund from the overpayment of net subscriptions / reinvestments made by investors who subscribed during the period. Where applicable, these investors will be made whole as part of the shareholder reprocessing exercise. This impact is reflected in the "Net owed to Investors via specific allocation" line item.

[3] Calculated using the daily difference in TerreStar market value multiplied by the 0.40% advisory fee rate. The Advisor does not earn a performance-based fee from the Fund. Since August 2018, the Fund has withheld payment of advisory fees, and this adjustment will be an offset against the accrued amount of approximately ~$356k owed to the Advisor as of 9/30/18.

[4] Interest is calculated on daily cumulative fund receivable through September 30, 2018 at the rate of Fed Funds + 45 bps using "Actual/360" methodology.

[5] This will be allocated to specific investors who paid too much for subscriptions or for investors who are no longer in the fund.

[6] "Estimated gross up for Omnibus accounts" is intended to estimate the potential impact for reprocessing of individual capital activity that is currently held in the Omnibus accounts, which is aggregated into one net investor in the detail available from the Transfer Agent.

[7] The estimated "processing fees" refers to the estimated amount we expect to pay the Transfer Agent to reprocess shareholder transactions, as described above.

[8] As the consultation was requested in the context of issuing the year-end financial statements for the Fund, this calculation is through that date (9/30/18). We acknowledge there are additional errors subsequent to that date, and we are still assessing the extent and impact of those errors.

*Confidential Treatment Requested by Highland Global Allocation Fund*
*Pursuant to 17 C.F.R. § 200.83 (2018)*

**<u>EXHIBIT C</u>**

TerreStar Corporation Extension Denial



Highland Capital Management, L.P
300 Crescent Court, Suite 700
Dallas, TX 75201
(972) 628-4100

To:      Files
From:    Valuation Team
Date:    November 14, 2017
RE:      TerreStar Corporation ("TerreStar") Extension Denial

This memo outlines the Federal Communications Commission's ("FCC") denial of the extension on the 1.4GHz spectrum license and the potential valuation impact to the TerreStar debt and equity interests.

The FCC recently issued a denial order in TerreStar's extension request to its 1.4GHz spectrum licenses on October 10, 2017.  The denial order with respect to the 1.4GHz spectrum license, coupled with the commercial indications by the Dish group on TerreStar's other asset, the 1.7GHz spectrum license, resulted in a less than 1% change to the underlying value of TerreStar equity, as determined by Houlihan Lokey ("Houlihan"), a nationally recognized third party valuation provider that has also valued the TerreStar assets since April 2015.

**Background**
Highland Capital Management, LP and its affiliates ("Highland") manage funds holding certain debt and equity positions of TerreStar.  Terrestar holds two assets, a 1.4GHz spectrum license and a 1.7GHz spectrum license.  Each of these licenses expires in the event that the spectrum is not used by the expiration date, absent a waiver from the FCC of the implementation requirement. Although TerreStar had not used the 1.4GHz spectrum license prior to its scheduled expiration in April 2017, TerreStar applied for a waiver of the expiration date and was evaluating and prepared to fully implement usage with governmental medical facilities and nationwide medical service providers to deploy the 1.4 GHz spectrum. On October 10, 2017, the Mobility Division of the FCC's Wireless Telecommunications Bureau ("Bureau") denied TerreStar's waiver request (the "Order") for a three year extension of the build out requirement for TerreStar's 1.4 GHz spectrum licenses.  TerreStar has informed Highland that TerreStar believes the Order was based on factual, legal and public policy errors and will vigorously challenge the Order before the FCC and, if necessary, the Federal appeals court.  This includes filing an application for review of the Bureau Order by the full FCC.

### Highland Holdings as of October 31, 2017

| Term Loan A | Mark | 99.70 |
|---|---|---|

| Portfolio | # Of Shares | Market Value |
|---|---|---|
| Highland Global Allocation Fund | 47,224,093 | 47,082,421 |
| Highland Opportunistic Credit Fund | 784,818 | 782,464 |
| Nexpoint Credit Strategies Fund | 17,083,404 | 17,032,154 |
| | 65,092,315 | 64,897,038 |

| Term Loan C | Mark | 100.00 |
|---|---|---|

| Portfolio | # Of Shares | Market Value |
|---|---|---|
| Highland Opportunistic Credit Fund | 18,533 | 18,533 |
| Nexpoint Credit Strategies Fund | 403,408 | 403,408 |
| | 421,941 | 421,940 |

| Common Equity | Mark | 315.81 |
|---|---|---|

| Portfolio | # Of Shares | Market Value |
|---|---|---|
| Highland Global Allocation Fund | 306,550 | 96,811,556 |
| Highland Opportunistic Credit Fund | 5,082 | 1,604,946 |
| Nexpoint Credit Strategies Fund | 110,872 | 35,014,486 |
| | 422,504 | 133,430,988 |

The most recent valuation, performed by Houlihan as of September 30, 2017, considered the FCC's extension certain given the previous communication between the FCC and Jarvinian, TerreStar's consultant (see the Waiver email referenced below for support). As such, the valuation was not impacted by the filing of the extension request or the passage of the April 2017 end date for the 1.4 GHz spectrum license. Since the Order was filed as of October 10, 2017, and unknown as of September 30, 2017, Highland affirms the September 30, 2017 Houlihan value as indicative of fair value as of the valuation date.

In 2015, Highland made the strategic business decision to engage Houlihan to value certain harder-to-value, illiquid and private investments. In conjunction with this shift to a third-party, Houlihan was named as an approved third-party pricing provider by the retail Board. Houlihan is a leading advisor on valuations required under ASC 820 due to their deep portfolio, private-company and derivatives valuation expertise and experience. TerreStar has been valued monthly by Houlihan since April of 2015.

### October 11, 2017 Meeting

Upon receiving and reviewing the Waiver Bureau Order, a meeting was held at Highland's offices on October 11, 2017 to discuss the denial and potential impact to valuation. The following individuals were in attendance for the meeting:

- Thomas Surgent, Partner & CCO
- Frank Waterhouse, Partner & CFO
- Jason Post, CCO - Highland Funds
- Trey Parker, Partner and CIO
- David Klos, Controller
- Sean Fox, Manager - Finance

The group discussed the Order. Trey Parker, who is also on the Board of TerreStar, informed the group of the facts both leading up to the denial and supporting overturning the denial. Mr. Parker also brought to

the attention of the group additional facts of which he became aware in October 2017 including the recent commercial indications by the Dish group around the use/sale of the 1.7 GHz spectrum owned by TerreStar, which facts collectively resulted in an immaterial mark impact according to Mr. Parker's valuation model. Mr. Parker proposed that his model be utilized going forward in lieu of the Houlihan model given the esoteric nature of the dispute with the FCC. The meeting was adjourned for Highland Compliance and Valuation Team to consider Mr. Parker's request.

**October 12, 2017 Meeting**
The group re-convened to re-visit the previous day's discussion and next steps on October 12, 2017. The following individuals were in attendance for the meeting:

- Thomas Surgent, Partner & CCO
- Frank Waterhouse, Partner & CFO
- Jason Post, CCO - Highland Funds
- Trey Parker, Partner and Co-CIO
- David Klos, Controller
- Sean Fox, Manager - Finance

During the meeting, Mr. Surgent, speaking on behalf of Highland Compliance, informed the group that, pending further communication with the retail Board, Highland must continue to utilize Houlihan Lokey to value the TerreStar positions for the retail Funds and that Mr. Parker should immediately communicate all relevant information to Houlihan to confirm such valuations. Following the conclusion of the discussion, the Valuation Team scheduled a conference call with Houlihan for October 19th, the first available date for both teams. The call ultimately occurred on October 20th given conflicting schedules and travel.

**Pricing Committee**
On October 12, 2017, in normal course, the Pricing Committee convened to review the September 2017 Pricing Committee Report. During the meeting, TerreStar's extension denial, valuation considerations, and next steps were discussed with the Pricing Committee. In addition to members of the Valuation Team and Compliance Team, the following voting members of the Pricing Committee were in attendance for the meeting:

- Frank Waterhouse, Partner & CFO
- Trey Parker, Co-Chief Investment Officer
- Jon Poglitsch, Head of Credit Research
- Matthew Gray, Managing Director
- Jake Tomlin, Managing Director
- David Klos, Controller

**October 19, 2017**
The following documents were uploaded to 'Box' for Houlihan's review:
- *Application for Review of Bureau's Order Denying Waiver Request*
    o Attorney work product that provides history on the spectrum and outlines the inaccuracies found within the Order
- *Waiver email*
    o Email from Jarvinian, TerreStar's consultant, dated March 22, 2017, indicating that the FCC's Chairman's office approved grant of waiver. The email also contains an attachment from TerreStar's counsel to the FCC requesting the 36 month extension which was submitted August 12, 2016 and received and filed on September 16, 2016.
- *Ex Parte Notice filed September 20, 2017*
    o Response to FCC Secretary Dortch re: Ex Parte Notice: TerreStar Corporation Request for Temporary Waiver of Substantial Service Requirements – WT Docket No. 16-290
- *Shareholder Update email*

- o  Email to TerreStar shareholders providing notification of extension denial with Order attached.
- *Shadow Model*
    - o  Highland's internal analysis of the impact to valuation

**October 20, 2017**
Trey Parker and members of Highland's Valuation Team held a conference call with key members of Houlihan Lokey to discuss the denial order and valuation.  Subsequent to the call with Houlihan, the following additional documents were uploaded to 'Box' for Houlihan's review:
- *Duff & Phelps Estimation of the Fair Market Value of Certain Spectrum Licenses*
    - o  Duff & Phelps valuation as of February 27, 2015
- *Light Squared data*
    - o  Comparable market data

Houlihan's immediate feedback affirmed Highland's conclusion that using the September 30, 2017 valuation until the October 31, 2017 valuation was complete remained appropriate.

**October 25, 2017 Crusader Report**
On October 25th, Highland received the monthly Crusader report from Alvarez & Marsal ("A&M"), the current Manager of Crusader Fund, a fund formerly managed by Highland.  The report provided the following commentary on the 22% decline in NAV for September 2017:

"Below is a note to the change in net asset value in September. The overall decrease in the portfolio's valuation in September 2017 relates primarily to a substantial decrease in the value of Highland Crusader Offshore Partners, L.P.'s ("Crusader") non-control equity ownership stake in telecommunications company, TerreStar Corporation, resulting from a bureau level order of the Federal Communications Commission, dated October 10, 2017, revoking the licenses held by TerreStar for the 1.4 GHz spectrum. A copy of the FCC order is enclosed. By way of background, in August 2016 TerreStar petitioned the FCC to extend by 36 months the date by which TerreStar had to demonstrate "substantial service" of its licenses for the 1.4 GHz spectrum. For the reasons set forth in the order, the FCC denied that request and concluded that the licenses "automatically terminated due to TerreStar's failure to demonstrate substantial service by its April 23, 2017 performance deadline." Although TerreStar retains its licenses for the 1.7 GHz spectrum, this represents a material adverse development for TerreStar and Crusader's investment therein. We understand that TerreStar has the ability to seek review by the FCC of the order issued by the Wireless Telecommunications Bureau (a lower-level subdivision of the FCC). In February 2015, TerreStar entered into a senior secured term loan credit agreement with lenders affiliated with TerreStar's most significant stockholders, other than Crusader and certain other shareholders. The FCC order could have a potential impact on the credit agreement, which may further impair the value of Crusader's equity ownership stake. We, in conjunction with our 3rd party valuation advisors, have not factored the possibility of this potential impact into our valuation as of September 30, 2017."

While Highland does not have access to A&M's underlying valuation of TerreStar, Highland assumes a significant discount was taken on the valuation of the 1.4 GHz spectrum by A&M due to the denial Order as such a discount would appear to explain the 22% decline in NAV for September 2017.  The differences in approach to valuation are no surprise given the asset information and familiarity asymmetries that exist between A&M and Highland.  Highland has been invested in TerreStar for more than 10 years and also has Board representation while A&M has only recently been managing the asset and does not have a Board seat.

**Conclusion**

In accordance with Highland's Valuation Policy and based on the significant event nature of the Order, the Applicable Analyst reviewed Houlihan's fair value of TerreStar and concluded that a downward adjustment to the equity to reflect the denial Order was necessary which was offset with positive developments to the 1.7 GHz spectrum and both of these factored into the ultimate equity valuation conclusion were determined to be reflective of fair value. The Applicable Analyst also concluded that no changes to the debt valuation were required. Finally, since the valuation was determined to still be reflective of fair value, Highland concluded it appropriate to utilize the September 30, 2017 Houlihan valuation until the October 31, 2017 Houlihan valuation is reviewed and approved in due course.

On November 1, 2017, Highland received Houlihan's October 31, 2017 valuation of TerreStar. The debt remained marked at 99.70% of par and the equity decreased by $2.81 or 89 bps to $313.00/share. The Houlihan valuation was reviewed and approved by the Applicable Analyst on November 2, 2017 and was presented in the October 2017 Pricing Committee on November 13, 2017.

## **EXHIBIT D**

ASC 820 Application Guide

**Transactions Involving Fair Valued Securities Report**

| Asset Detail | | | | | | | Transaction Detail | |
|---|---|---|---|---|---|---|---|---|
| Issuer | Asset | Global Quantity or Shares Held | Retail Fund Holding? | Month End Mark | Market Value | | Trade Price | Orderly or Non-Orderly Determination by Sub-Committee |
| (UPDATE AS APPROPRIATE BASED ON TRANSACTIONS) | | | | | | | | |

**Transaction Reviewed at Sub-Committee and Determined to be Non-orderly:**
   (UPDATE AS APPROPRIATE BASED ON TRANSACTIONS)

| Questions | Yes | No | N/A | Notes |
|---|---|---|---|---|
| 1. Were both parties to the transaction market participants? | | | | If "No", consider whether transaction was at market terms |
| 2. Was there adequate exposure to the market to allow for usual and customary marketing activities? | | | | If "Yes", indicative that transaction may be orderly |
|    a. if yes, did the seller market to a single market participant? | | | | If "No", indicative that transaction may be orderly |
| 3. Was the seller in or near bankruptcy or receivership (ie was it a distressed sale)? | | | | If "No", indicative that transaction may be orderly |
| 4. Was the seller required to sell to meet regulatory or legal requirements (ie was it a forced sale)? | | | | If "No", indicative that transaction may be orderly |
| 5. Is the transaction price an outlier when compared with other recent transactions for the same or a similar asset? | | | | If "No", indicative that transaction may be orderly |

**Overall Conclusion Based on Weight of the Evidence:**    (EITHER ORDER, DISORDERLY, OR N/A)

**Definitions:**

**Fair value** - The price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date.

**Orderly transaction** - A transaction that assumes exposure to the market for a period before the measurement date to allow for marketing activities that are usual and customary for transactions involving such assets or liabilities; it is not a forced transaction (for example, a forced liquidation or distress sale).

**Market participants** - Buyers and sellers in the principal (or most advantageous) market for the asset or liability that have all of the following characteristics:
a. They are independent of each other, that is, they are not related parties, although the price in a related-party transaction may be used as an input to a fair value measurement if the reporting entity has evidence that the transaction was entered into at market terms
b. They are knowledgeable, having a reasonable understanding about the asset or liability and the transaction using all available information, including information that might be obtained through due diligence efforts that are usual and customary
c. They are able to enter into a transaction for the asset or liability
d. They are willing to enter into a transaction for the asset or liability, that is, they are motivated but not forced or otherwise compelled to do so.

**Identifying Transactions that are Not Orderly:**
The determination of whether a transaction is orderly (or is not orderly) is more difficult if there has been a significant decrease in the volume or level of activity for the asset or liability in relation to normal market activity for the asset or liability (or similar assets or liabilities). In such circumstances, it is not appropriate to conclude that all transactions in that market are not orderly (that is, forced liquidations or distress sales). Circumstances that may indicate that a transaction is not orderly include the following:
a. There was not adequate exposure to the market for a period before the measurement date to allow for marketing activities that are usual and customary for transactions involving such assets or liabilities under current market conditions.
b. There was a usual and customary marketing period, but the seller marketed the asset or liability to a single market participant.
c. The seller is in or near bankruptcy or receivership (that is, the seller is distressed).
d. The seller was required to sell to meet regulatory or legal requirements (that is, the seller was forced).
e. The transaction price is an outlier when compared with other recent transactions for the same or a similar asset or liability.

**EXHIBIT E**

March 19, 2019 Valuation Committee Meeting Materials

# HIGHLAND CAPITAL
## MANAGEMENT

### FEBRUARY 2019 PRICING COMMITTEE MEETING

## ASC 820 & USE OF SUBJECT MATTER EXPERTS TRAINING

## MARCH 19, 2019

CONFIDENTIAL

What is "Fair Value"?

- FASB Definition of Fair Value (ASC 820) –

- The price that would be received to sell an asset or paid to transfer a liability in an *orderly transaction* between *market participants* at the measurement date.

SEC Definition of Fair Value –

- Values estimated in good faith by management in the absence of readily available or realizable market quotations.

The difference is that the FASB (GAAP) definition includes all securities including those with market quotes.

HIGHLAND CAPITAL
MANAGEMENT

What is an "orderly transaction"?

- FASB Definition of Orderly Transaction (ASC 820) –

- A transaction that assumes exposure to the market for a period before the measurement date to allow for marketing activities that are usual and customary for transactions involving such assets or liabilities; it is not a forced transaction (for example, a forced liquidation or distress sale).

**HIGHLAND CAPITAL**
MANAGEMENT

What is a "market participant"?

- FASB Definition of Market Participant (ASC 820) –

- Buyers and sellers in the principal (or most advantageous) market for the asset or liability that have all of the following characteristics:

  — They are independent of each other, that is, they are not related parties, although the price in a related-party transaction may be used as an input to a fair value measurement if the reporting entity has evidence that the transaction was entered into at market terms

  — They are knowledgeable, having a reasonable understanding about the asset or liability and the transaction using all available information, including information that might be obtained through due diligence efforts that are usual and customary

  — They are able to enter into a transaction for the asset or liability

  — They are willing to enter into a transaction for the asset or liability, that is, they are motivated but not forced or otherwise compelled to do so

HIGHLAND CAPITAL
M A N A G E M E N T

## Identifying transactions that are not orderly

- The determination of whether a transaction is orderly (or is not orderly) is more difficult if there has been a significant decrease in the volume or level of activity for the asset or liability in relation to normal market activity for the asset or liability (or similar assets or liabilities). In such circumstances, it is not appropriate to conclude that all transactions in that market are not orderly (that is, forced liquidations or distress sales). Underline{Circumstances that may indicate that a transaction is not orderly include the following}:

  — There was not adequate exposure to the market for a period before the measurement date to allow for marketing activities that are usual and customary for transactions involving such assets or liabilities under current market conditions.

  — There was a usual and customary marketing period, but the seller marketed the asset or liability to a single market participant.

  — The seller is in or near bankruptcy or receivership (that is, the seller is distressed).

  — The seller was required to sell to meet regulatory or legal requirements (that is, the seller was forced).

  — The transaction price is an outlier when compared with other recent transactions for the same or a similar asset or liability.

HIGHLAND CAPITAL
MANAGEMENT

# FAIR VALUE MEASUREMENT (ASC 820) (*CONTINUED*)

*ASC 820 establishes a three-level fair value disclosure hierarchy that prioritizes the inputs used to estimate fair value:*

- **Level 1**: observable inputs that reflect quoted prices (unadjusted) for identical asset or liabilities in active markets

- **Level 2**: inputs other than quoted price included in Level 1 that are observable for the asset or liability either directly or indirectly

- **Level 3**: unobservable inputs (e.g. a reporting entity's or other entity's own data)

- Not leveled – items valued using NAV as a practical expedient (ASU 2015-07)

HIGHLAND CAPITAL
MANAGEMENT

# WHEN SHOULD A SECURITY BE "FAIR VALUED"?

- Determination that significant events have taken place between the close of the foreign market and the US market close that could necessitate fair value pricing

- Determination that market quotations are "unreliable"

- Thinly traded/infrequent sales of securities

- Privately held securities

- Existence of other data that calls into question the reliability of quotations

HIGHLAND CAPITAL
MANAGEMENT

- The asset manager must establish a policy to determine a good-faith estimate of fair value in such circumstances. Any adopted policy should be consistently applied. The responsibility for setting the valuation policy can be different depending on the construct of the fund, and could be any of the following:

  — Board of Directors (or delegated to a valuation committee, which reports to the board)

  — Board of Trustees

  — General Partner

  — Management

- The asset manager should also continuously assess the availability and reliability of market quotations

- An example of a type of investment that typically may not have quotations readily available **illiquid securities**. Examples include:

  — Structured securities (e.g., MBS, ABS, commodity-linked notes)

  — Private placements

  — Securities halted/suspended from trading by the exchange

HIGHLAND CAPITAL
MANAGEMENT

## Cost Approach

- Fair Value based on a variety of asset based measures including the historical cost of an asset, the cost of reproducing or replacing the asset, and an adjusted balance sheet determination.

## Market Approach

- Estimates the value of an asset by analyzing the pricing of similar assets relative (comparable companies) to a common variable(s)
  - Multiple applied to EBITDA or revenue
  - Multiple applied to underlying assets (total assets, net book value of loans, etc)

## Income Approach

- Based on projections of future revenues, expenses, investment and cash flow
- Value of subject company = PV of future cash flows during the term of the projection period plus the terminal value, discounted to present value by the risk-adjusted rate of return (typically, the weighted average cost of capital)



# INVESTMENT VALUATION – AUDITOR APPROACH

**Planning**
- Review Board and Valuation Committee minutes
- Identity risks and understand controls in the business process – Investments
- Complete portfolio risk assessment in advance of balance sheet date
- PM coordination
- Select pricing sources and establish pricing tolerance percentage thresholds

**Interim**
- Use of Global Securities Pricing Application for testing of valuation, including use of Halo for Investments
- Use of service organization – SSAE 15 or SSAE 18 report obtained
- Scoping of level 3 investments for identifying Specialist involvement for year-end

**Substantive Procedures**
- Investment valuation – Testing summary and conclusions
- Test valuation of investments in third party funds (fund of funds)
- Test valuation of investments fair valued by management and not subject to testing by a specialist, as well as broker quoted investments
- Test money market fund's compliance with Rule 2a-7 of the Investment Company Act of 1940

**Financial Statement Review**
- Test ASC 820 investment disclosures
- Financial statement tie-out
- Complete disclosure checklist

CONFIDENTIAL



# AUDITOR APPROACH - UNDERSTAND THE VALUATION COMMITTEE'S RESPONSIBILITIES

Typically the valuation committee performs the following:

- Generally define the valuation methodology and pricing policies (in writing) and ensure adherence to the established guidelines

- Provides periodic reporting to the Board or those charged with governance, including instances where policies and procedures have been modified

- Board or those charged with governance must continually review the appropriateness of the policies and ensure that such review is formally document in the minutes

- Facilitate communication with the Board or those charged with governance in emergency situations to obtain necessary guidance/approval

- Private funds sometimes do not have valuation committees, though this is a best practice. There should be a segregation of duties between valuation review and portfolio management. If no segregation of duties exist, the engagement team should consider whether additional testing is necessary to cover the risk of management bias in valuation.

The audit engagement team should understand the involvement of the valuation committee and review the meeting minutes to identify instances where the nature, timing and/or extent of the audit procedures may need to be adjusted.

HIGHLAND CAPITAL
M A N A G E M E N T

The goal of valuation testing is to obtain a price from a source of **independent of the asset manager's source***, in order to evaluate the reasonability of the asset manager's price against independent data.

It is crucial that as part of the auditor's planning process, they obtain an understanding of the manner in which asset manager's investments are valued (e.g. vendor price, internal/external model, NAV as a practical expedient, etc.).

At year end, the auditor will need to **re-confirm the source of all prices** to ensure that the vendor prices obtained are independent of the asset manager's source.

*In some circumstances such as reviewing an internal model, review of the work of experts engaged by management, or use of the practice expedient, the auditor may perform independent work over ultimately the same source of information as the asset manager



From time to time, fair value models rely on significant inputs that are subjective in nature and require the expertise of a subject matter expert

- For example, expected probabilities of outcomes of legal matters

The asset manager should take the appropriate steps to ensure that subject matter experts are retained who can provide competent and objective representations in order for such representations to be relied upon.  Such steps include:

- Ensuring the expert is competent (for example, checking that the expert has relevant experience and credentials in their field to indicate their expertise)

- Ensuring the expert is objective (for example, making certain that expert is free from conflicts or other factors that may cause them to not be able to provide an unbiased view)

  — If utilizing outside counsel for a matter pertaining to a portfolio company, where such counsel has already been engaged by the portfolio company, there may be a lack objectivity.  As best practice, the asset manager should engage counsel that is not already engaged by the portfolio company.

- Challenging/questioning the views of the expert for reasonableness

  — If a legal outcome probability, what are the key factors that could positively or negatively impact the outcome?  Have their been comparable matters litigated?  If so, how were they similar or different and what were their outcomes?  Are their sufficient similar situations that have occurred in the past to quantify a probability based on prior outcomes?

- Ensuring Highland legal/compliance is in attendance for phone calls or in-person meetings as applicable

- Obtaining representations of the expert in writing

- If probabilities may be impacted by the passage of time, request periodic updates to the representation

HIGHLAND CAPITAL
MANAGEMENT

# AUDITOR SUBSTANTIVE TESTING – VALUATION TIMELINE EXAMPLE

1. Establish completeness by obtaining asset manager's portfolio holdings, prices and values as of the year-end date

2. Scope positions for testing (for non-public) or test 100% (Registered Investment Companies) based on plan established at planning/interim

3. Obtain the source/vendor of the asset manager's prices (e.g. ICE Data Services, IHS Markit)

4. Engaged MIDA/FSR/PVSG and/or send confirmations (fund of funds, broker quotes, etc.) to obtain independent pricing data for substantive testing

5. Execute substantive testing –

   - Evaluate asset manager's prices against independent prices using documented thresholds

   - Quantify differences and untested (same source/unpriced) balances based on suitability of audit evidence

6. Conclude on reasonability of valuation



# *TESTING LEVEL 3 INVESTMENTS – COMMON INPUTS & ASSUMPTIONS*

| Inputs | Approach |
|---|---|
| ▪ Portfolio company's historical data (cash flows, cash, debt) | ▪ Agree to supporting documentation (financial statements, BOD packages, etc.)<br>▪ Perform backtesting of audited financial information to unaudited financial information |
| ▪ Capital structure, liquidation preferences, conversion ratios, liquidation rights | ▪ Confirmation procedures<br>▪ Examining documentation (e.g. obtaining latest capitalization tables from management, etc.) |
| ▪ Market comparables/precedent transactions | ▪ Verify deal/company information to external sources (press releases, CapIQ, Bloomberg, etc.) |
| ▪ Mathematical accuracy of financial model | ▪ Test mathematical accuracy of the valuation model by performing recalculations, footing, etc. |



# TESTING LEVEL 3 INVESTMENTS – COMMON INPUTS & ASSUMPTIONS (CONTINUED)

| Assumptions | Approach |
|---|---|
| ▪ Term to exit | ▪ Understand management's process / assess and validate if management's process is reasonable<br><br>▪ Develop an expectation and investigation differences for reasonableness |
| ▪ Portfolio company's forecasted cash flows | ▪ Assess reasonableness of portfolio company's forecasted cash flows |
| ▪ Selection of market multiples used in the model | ▪ Assess reasonableness of market comparable companies chosen<br><br>▪ Assess reasonableness of multiples chosen by comparing the relative growth rate and profitability of the portfolio company and comparable companies |
| ▪ Discount for lack of marketability (DLOM)<br>▪ Discount rate | ▪ Use of valuation specialists |



HIGHLAND CAPITAL
MANAGEMENT

## **EXHIBIT F**

Amended Valuation Policy presented to the Board at the
February 28 - March 1, 2019 In-person Board Meeting

## POLICY REGARDING VALUATION

### Purpose and Scope

The purpose of this policy regarding valuation (this "Policy") is to ensure that the Company implements and maintains appropriate valuation guidelines for its Clients' portfolio securities in accordance with applicable law. This Policy outlines the Company's policies and procedures with respect to the valuation of both liquid and illiquid securities, including domestic, foreign and emerging markets securities, and the parties responsible for ensuring the Company properly values such securities. The board of trustees (the "Board") of each registered investment company Client and NexPoint Capital, Inc. (the "BDC") (each, a "Retail Fund") has adopted this Policy for purposes of valuing the portfolio securities of each Retail Fund.[1]

> **Comment [DK1]:** Update footnote upon receipt of Board approval

### General Policy

Rule 206(4)-7 of the Advisers Act requires that a registered investment adviser implement written policies and procedures reasonably designed to prevent violation of the Advisers Act and any rules thereunder. The SEC has stated that, at a minimum, such policies and procedures should address the adviser's processes to value client securities and other holdings, and ensure that these processes are appropriate in view of the fact that the adviser receives compensation based on those valuations. Rule 38a-1 of the Investment Company Act requires that each registered investment company adopt and implement written policies and procedures reasonably designed to prevent violation of the federal securities laws by such company, including policies and procedures that provide for the oversight of compliance by each investment adviser of such company. The Company is committed to complying in all respects with all applicable law, including Rule 206(4)-7 and Rule 38a-1, and ensuring that its portfolio securities are valued in a fair and equitable manner. To that end, the Company has implemented this Policy to govern the method and frequency of valuing its Clients' portfolio securities. Under this Policy, the Company has adopted the following valuation guidelines, which are intended to provide for the fair and appropriate valuation of investments held in Client accounts.

### Specific Valuation Guidelines

The following are the Company's guidelines for the valuation of various investments for which market quotations are readily available:

---

[1] This policy was most recently approved by the Board on [June 10, 2016].

*Exchange Listed Securities*

In general, for each security listed or traded on a recognized securities exchange, the last reported sale price at the relevant valuation date on the principal exchange on which such security is traded (the "Primary Market") will be used.

For securities listed or traded on more than one recognized securities exchange, if there is no reported sale price on the relevant valuation date for such security on the Primary Market, the last reported sale price on the relevant valuation date on such other recognized securities exchange shall be used. If there are no such sales on such valuation date, the security will be valued based on pricing quotations from market makers or broker-dealers that trade actively in the security. Such quotations may be obtained directly from such sources or from independent pricing services that the Company has determined are able to provide appropriate pricing and, in respect of Retail Funds, that have been approved or ratified by the Board. Such securities shall be valued at the mean of the most recently quoted bid and ask prices provided on the valuation date. If there is more than one such source, the value shall be the average of such means, unless the investment analyst responsible for the particular security (the "Applicable Analyst")[2] reasonably determines that a source is unreliable, in which case such source shall be disregarded. Whenever a source is disregarded, such determination shall be documented in writing and, in the case of a Retail Fund, presented to the Board at the next regularly scheduled quarterly meeting.

*OTC Securities*

Securities traded over-the-counter will be valued based on the last reported sale price on the relevant valuation date. If there are no such reported sales, the security will be valued based on pricing quotations from market makers or broker-dealers that trade actively in the security. Such quotations may be obtained directly from such sources or from independent pricing services that the Company has determined are able to provide appropriate pricing and, in respect of Retail Funds, that have been approved or ratified by the Board. Such securities shall be valued at the mean between the most recent quoted bid and ask prices provided on the valuation date, to the extent available. If there is more than one such source, the value shall be the average of such means, unless the Applicable Analyst reasonably determines that a source is unreliable, in which case such source shall be disregarded. Whenever a source is disregarded, such determination shall be documented in writing and, in the case of a Retail Fund, presented to the Board at the next regularly scheduled quarterly meeting.

---

[2] In the case of any Retail Fund that is sub-advised, the "Applicable Analyst" shall refer throughout this Policy to the appropriate personnel of the sub-adviser. The Company shall be responsible for providing this Policy to each such sub-adviser, for communicating to the sub-adviser its responsibilities hereunder and for coordinating appropriately with such sub-adviser.

2

*Loans*

Loans will be valued based on market quotations reported by independent pricing services that the Company has determined are able to provide appropriate pricing and, in respect of Retail Funds, that have been approved or ratified by the Board or broker-dealers/counterparties that trade actively in the instrument, unless such quotations are unavailable, in which case the loan will be fair valued in accordance with the fair valuation procedures set forth below. Loans shall be valued at the mean bid and ask prices provided on the valuation date. If there is more than one such source, the value shall be the average of such means, unless the Applicable Analyst reasonably determines that a source is unreliable, in which case such source shall be disregarded. Whenever a source is disregarded, such determination shall be documented in writing and, in the case of a Retail Fund, presented to the Board at the next regularly scheduled quarterly meeting.

*Other Instruments*

Other instruments for which there are readily available reliable market quotations reported by an independent pricing service that the Company has determined is able to provide appropriate pricing and, in respect of Retail Funds, that have been approved or ratified by the Board or given by broker-dealers/counterparties that actively trade in the instrument shall be valued based on such market quotations. Otherwise, such instruments will be fair valued in accordance with the fair valuation procedures set forth below. Bid/ask quotations shall be valued at the mean bid and ask prices provided on the valuation date. If there is more than one such source, the value shall be the average of such means, unless the Applicable Analyst reasonably determines that a source is unreliable, in which case such source shall be disregarded. Whenever a source is disregarded, such determination shall be documented in writing and, in the case of a Retail Fund, presented to the Board at the next regularly scheduled quarterly meeting.

*Price Challenges*

Price challenges generally occur when, upon review of prices or quotations provided by an independent pricing service, the price of a security may appear to be out of line with the market based upon the Applicable Analyst's judgment and market experience or other relevant factors. It is not necessary for price differences to have a material impact in order to be challenged, although that may often be the case. After deciding to institute a price challenge, the Applicable Analyst will provide supporting documentation to the Valuation Department, which may then choose to engage the independent pricing service through that party's price challenge process, which generally requires that the Company provide trade or other market data (such as bid / ask quotations) to the independent pricing service to allow the service to re-evaluate the pricing of such security. There is no assurance that the price challenge will be successful, as the independent pricing

services have no duty to use the information provided by the Company, and may, in fact, possess information from other sources that contradicts the Company's information and supports the independent pricing service's evaluation. If the independent pricing service is unable or unwilling to change its valuation of the security at issue, the Applicable Analyst may recommend to the Valuation Department that the price be overridden. The Valuation Department shall then review the facts and circumstances and determine whether the Company will in fact override the price in question, if appropriate based on supporting documentation. Any such overrides shall be documented in writing by the Valuation Department and, for Retail Funds, shall be reported in writing to the Board at its next regularly scheduled quarterly meeting. To the extent that a price is obtained through a third party other than an independent pricing service, the Applicable Analyst who seeks to challenge the price may do so directly with that third party, provided that the Applicable Analyst has notified the Valuation Department of the challenge. In such cases, any pricing overrides will be handled in the manner described above. All challenges, whether successful or not, shall be reported to the Valuation Committee at its next regular meeting and, for Retail Funds, shall be reported in writing to the Board at its next regularly scheduled quarterly meeting. Although a portfolio manager or investment analyst may request that a price be challenged, under no circumstances may such personnel effect a pricing challenge, nor may an Applicable Analyst effect a pricing challenge, other than through the process described above. The Company shall retain a database or other record system tracking such challenges, including the results and the rationale for any pricing overrides, which shall be documented contemporaneously with the override decision.

*Significant Events*

Generally, if the Applicable Analyst responsible for a particular security determines that the market price of a security no longer represents the security's current value at the time of the portfolio's net asset value calculation because of an intervening "significant event," then such market price will no longer be deemed to be "readily available" and these valuation procedures will be followed to determine a fair value and such determination shall be documented in writing.

Significant events may be related to a single issuer, to a particular market sector, or to the entire market. These events may include:

(i)    issuer-specific events, including: rating agency action, earnings announcements, corporate actions, regulatory actions, litigation and corporate announcements relating to products or services;

(ii)   significant fluctuations in domestic or foreign markets;

(iii)  natural disasters;

(iv)  armed conflicts; and

(v)   government actions.

4

The Applicable Analyst is responsible for monitoring information sources in order to evaluate whether a significant event has occurred that impacts a particular security for which such Applicable Analyst is responsible and that requires a fair valuation.  This includes continuously monitoring market data, any press regarding companies whose securities are held in their portfolios and general news events.

When the Applicable Analyst believes that a significant event may have occurred, he or she shall notify the Valuation Department in writing so that the Valuation Department may determine whether a significant event that requires fair valuation has occurred and document its determination in writing.

### Securities Priced by Independent Pricing Service

Securities without a sale price on the Primary Market or quotations from principal market makers on the relevant valuation date shall be priced by an independent pricing service that (i) the Valuation Committee determines generally is able to provide appropriate pricing and (ii) in respect of securities held by Retail Funds, is approved or ratified by the Board.  The independent pricing services currently used by the Company on a regular basis and, for Retail Funds, that have been approved or ratified by the Board are included as Attachment A.  Attachment A may be revised from time to time upon the approval or ratification by the Board of an independent pricing service.  To the extent that prices obtained from an independent pricing service do not represent or are not based on market quotations, they will be treated as fair valued securities and subject to the fair valuation procedures described herein.

The Company shall require that the independent pricing service undertaking the valuation for the security:

(i)     Be qualified to carry out a valuation, in the judgment of the Company and, for Retail Funds, the Board (relying, as appropriate, on recommendations and assessments provided by the Company); and

(ii)    Be independent of the Company and have no conflict of interest that could reasonably be regarded as affecting that person's ability to give an unbiased opinion of the fair value of the securities in question.

### Securities Priced by Broker/Dealer Quotations, Other Source

The Applicable Analyst shall monitor the pricing provided by an independent pricing service to ensure that appropriate action will be taken promptly when it is determined that such pricing is "stale" (i.e., is based on information not incorporating more recent market, issuer or other events that could impact the security's value) or otherwise does not represent fair value. If the Applicable Analyst determines that a price received from an independent pricing service is stale or otherwise does not represent fair value, the Applicable Analyst shall notify

5

the Valuation Department, which will document its determination in writing and will report to the Valuation Committee, and may use one or more quotations from a broker or dealer (including bids without size) ("Broker Quoted"), subject to the approval or ratification of the valuation by the Valuation Committee and, in the case of a Retail Fund, subject to approval or ratification by the Board at its next regularly scheduled quarterly meeting. Absent a Broker Quoted price, the Applicable Analyst shall follow the procedures for fair valued securities set out below, subject to the approval of the Valuation Committee and, in the case of a Retail Fund, subject to approval or ratification by the Board at its next regularly scheduled quarterly meeting.

In determining whether a price received from an independent pricing service does not represent fair value, the Valuation Department and/or the Applicable Analyst shall evaluate information, as available and as applicable, including: (1) the length of time since the independent pricing service last adjusted the price; (2) information obtained from brokers regarding relevant sales activity in, and/or bids for, the security; (3) information available from other independent pricing services; (4) news about the issuer, particularly news regarding events subsequent to the last adjustment in the independent pricing service's valuation; (5) the issuer's publicly available filings; (6) available valuation information regarding similar securities of the same issuer or a comparable company, such as the price and extent of public trading; and (7) any other relevant information. The basis for the fair value determination shall be documented in writing.

## Fair Valued Securities

*When to Fair Value*

The Company seeks to fair value securities for which there is not a readily available market price or when the market price is determined by the Company to be unreliable in accordance with these procedures. When a readily available market quotation for a security exists and is determined to be reliable, the security shall not be fair valued. The Company recognizes fair value as the price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants on a given measurement date. Fair valuation may be required in a number of circumstances, including where:

(i)     A trading suspension occurs;
(ii)    The quote is stale based on the timing of the transaction and changes in credit conditions, interest rates and other market conditions during the intervening period;
(iii)   The securities are not liquid or no market prices are available because the security is restricted or not actively traded.

6

(iv)     The quote was part of a larger agreement between two parties and would have occurred at a different price if not for these other considerations;

(v)      A "significant event" (as described above) has occurred;

(vi)     Prices obtained from a pricing service regularly display unacceptable deviations from actual transactions;

(vii)    The quote was provided under duress; or

(viii)   Spreads between bid and ask prices are so large as to render them questionable.

## *Determining Fair Value*

When fair valuation is appropriate for a security, the Company may determine that the fair value of a security is the value provided by a third-party valuation provider or it may internally fair value securities, in each case as further described below. Fair valuations of securities held by a Retail Fund must be submitted for approval or ratification by the Board at its next regularly scheduled quarterly meeting.

### *Use of Independent Pricing Service for Fair Valued Securities*

The Company may, subject, in the case of a Retail Fund, to reporting to the Board at its next regularly scheduled quarterly meeting, engage an independent pricing service to provide a value for one or more securities for which market quotations are not readily available and may determine that the fair value of such securities is the value provided by such service. The Company will engage such independent pricing service in accordance with the guidelines set forth above. The Applicable Analyst's responsibilities for fair valuations performed by an independent pricing service include the following:

(i)      Providing or making available to the independent pricing service any information that would be material for the service to consider in determining the proper valuation, such as financial statements, business plans, forecasts, budgets and board materials;

(ii)     Monitoring and communicating to the independent pricing service (either directly or through the Valuation Department) current events that could impact the security's valuation;

(iii)    Communicating to the Applicable Analyst's supervisor any pertinent information that may have a material impact on the fair valued security; and

(iv)     Determining that the value provided by the independent pricing service represents the fair value of the security on the valuation date.

The Applicable Analyst shall provide to the Valuation Department any materials provided to any independent pricing service in connection with the responsibilities described above contemporaneously.

*Use of Internally Developed Models for Fair Valued Securities*

The Company may internally determine the fair value of securities for which market quotations are not readily available; for Retail Funds, such determination shall be made using a methodology approved or ratified by and subject to reporting to the Board at its next regularly scheduled quarterly meeting.

In determining the fair value of a security, the Applicable Analyst may consider a wide variety of inputs, including but not limited to:

(i)     Analytical data
(ii)    The type of security
(iii)   The size of account holdings
(iv)    Transactional information or offers, including cost
(v)     Public trading in similar securities of the issuer or of comparable companies
(vi)    Pricing history
(vii)   The liquidity of the market for the security
(viii)  Changes in the financial health of the issuer or news of events affecting the issuer
(ix)    Market changes
(x)     The valuation of other securities of the issuer; and
(xi)    Appraisals by third parties

In determining the fair value of a security, the Valuation Committee may instruct the Applicable Analyst to use a number of methodologies, including those based on discounted cash flows, multiples, recovery rates, yield to maturity, discounts to public comparables, or other appropriate methodologies.

The Applicable Analyst's responsibilities for internally-developed models for fair valuations include the following:

(i)     Determining fair value using methodologies described above;
(ii)    Retaining documentation to support the calculation of the fair value of the security (which information may be, but is not required to be, included within the fair value model);
(iii)   Providing or making available the model to the Valuation Department for review;
(iv)    Making himself or herself available to the Valuation Committee, the Valuation Sub-Committee and individual Valuation Department members to

8

discuss and clarify assumptions, inputs and methodologies incorporated into the valuation;

(v) Providing responses to questions from external auditors and regulators;

(vi) Evaluating the reasonableness of the valuation on any given valuation date; and

(vii) Communicating to the Applicable Analyst's supervisor any pertinent information that may have a material impact on the fair valued security.

The Valuation Department's responsibilities for internally developed models for fair valuations include the following:

(i) Reviewing all internally developed models for fair valuations following submission;

(ii) Identifying material changes in fair valuations including:

    a. Significant changes in the valuation from the previous month,

    b. Significant changes in the valuation from the previous three months,

    c. New methodologies employed or changes to the methodologies employed,

    d. Changes in subjective inputs that have a significant impact on the result of the valuation,

    e. Any deviations from these procedures;

(iii) For models identified in (ii), producing a listing of such models for review by the Valuation Sub-Committee; and

(iv) Producing materials to be reviewed by the Valuation Committee.

To the extent that the Applicable Analyst's supervisor has knowledge of information that would have a material impact on the fair valuation of the security, the supervisor has a duty to ensure that such information is incorporated by the Applicable Analyst.

*Use of Subject Matter Experts to Derive Legal Outcome Probabilities*

Subject matter experts, independent of the issuer, may be engaged to derive unobservable inputs utilized in fair value models such as probabilities of legal outcomes. These subject matter experts should generally provide their assessment in writing where practicable and absent material updates or legal opinions of outcome, the Valuation Department will generally seek monthly confirmation of such probabilities relied upon for fair value positions, with exceptions documented, unless those probabilities are unaffected by the passage of time.

*Additional Policies and Procedures for Fair Valued Securities*

Absent the occurrence of any significant event that materially impacts the value of the security, all new security purchases without a readily available market

9

quotation are valued at cost from the time of purchase until the next Valuation Committee meeting.  As reasonably determined to be appropriate by the Valuation Committee following the initial purchase, the Applicable Analyst may submit a suggested methodology for fair value pricing of the security to the Valuation Committee.  If such methodology is approved by the Valuation Committee, it will be used until the next review date, absent a determination by the Applicable Analyst that the price determined using such methodology does not represent fair value.  Should a significant event occur following an initial purchase or between meetings of the Valuation Committee, a special meeting of the Valuation Committee will be called to determine the appropriate valuation of the security in light of the significant event.  The appropriateness of the fair value pricing methodology used for each security may be reviewed periodically by an independent valuation service, as determined necessary by the Valuation Committee.  Any such review will be conditioned by materiality thresholds set forth by the Valuation Committee prior to such engagement.

The Applicable Analyst is responsible for monitoring developments affecting the issuers of fair valued securities and the markets for those securities to determine the continuing validity of the value.   This includes continuously monitoring market data, any press regarding companies whose securities are held in their portfolios and general news events.  When the Applicable Analyst believes that a material event has occurred with respect to such a security, he or she shall notify his or her supervisor and the Valuation Committee (or, by proxy, a member of the Valuation Department or Valuation Sub-Committee) so that the Valuation Committee may determine whether the method(s) used to determine the fair value should be adjusted.   If the Valuation Committee determines that such an adjustment would not be material to a Fund's calculation of net asset value, the Valuation Committee may determine not to adjust the method(s) used to determine fair value.

Attachment B sets forth specific fair valuation processes applicable to the BDC. In the event of a conflict with respect to the BDC between the fair valuation policies and procedures set forth in the body of this Policy and those set forth in Attachment B, the latter shall govern with respect to the BDC.

*Specific Methodologies*

Shares, units, limited partnership interests and other interests of private investment partnerships, separate accounts, non-listed REITs or other pooled investment structures in which investments are made, other than CDOs, will generally be valued at the net asset value of that investment vehicle, less any applicable redemption or withdrawal charges customarily imposed by that entity.

10

For non-traded warrants on publicly traded stocks, the Company will utilize a Black-Scholes model for determining fair value. Unobservable inputs used in the model will be documented.

For any private equity investments held by a Retail Fund with respect to which the Company has initiated a pricing override as described under "Price Challenges" above, the Company shall, on behalf of such Retail Fund, engage an independent pricing service to value the security. To the extent that there is any delay in obtaining such third-party pricing, the Company may continue to utilize an internally-developed fair value model for pricing the instrument in the interim period, subject to the review and approval of the Valuation Committee and reporting to the Board at its next regularly-scheduled quarterly meeting. The Company shall request updated reports from the independent pricing service on at least a monthly basis, absent either new information during the month that would be expected to have a material impact on valuation (in which case the Company shall request an interim report) or new data that would render fair valuation unnecessary.

CLOs will be valued according to a number of key data points including, but not limited to, market trading levels, bid auctions, financial institution data, offering levels from counterparties/dealers and other sources, such as an independent pricing service.

Clients may hold certain securities for which value may be substantially derived from real estate, including buildings and raw land. To the extent that such securities are required to be fair valued, the following methodology will be applied.

(i)      Generally, a third party appraisal will be obtained from a licensed appraiser at least once per year, with any exceptions documented. For example, the Company may determine that an exception should apply if a third-party broker opinion of value is determined by the Company to be more appropriate than an appraisal for valuing the real estate related asset. In such circumstances, the rationale for using a broker opinion of value shall be documented in writing and, in the case of a Retail Fund, presented to the Board of the Retail Fund at its next regularly scheduled quarterly meeting for approval or ratification.

(ii)      If the appraisal or broker opinion of value indicates a range of prices, the mid-point will generally be used for the value, with any exceptions documented in writing. If there is more than one appraisal or broker opinion of value, the value shall be the average of such appraisals or broker opinions of value (or prices, as applicable), unless the Company reasonably believes that one or more of the appraisals or broker opinions of value is unreliable, in which case such appraisal(s) or broker opinion(s) of value shall be disregarded. Whenever a pricing source is disregarded, such determination shall be documented in writing and, in the case of

a Retail Fund, presented to the Board of the Retail Fund at its next regularly scheduled quarterly meeting for approval or ratification.

(iii)   The Applicable Analyst will have the responsibility for providing updates and the dissemination of any information that would be expected to have a material impact on valuation on any given valuation date.

### General Policies

*Currency*

Client assets are valued in U.S. dollars and, except as otherwise determined by or at the direction of the Valuation Committee, (i) assets and liabilities denominated in currencies other than U.S. dollars are translated at the rates of exchange in effect at the date (and, for Retail Funds, as close as reasonably practicable to the time) of valuation (and exchange adjustments are recorded in the results of operations), and (ii) investment and trading transactions and income and expenses are translated at the rates of exchange in effect at the time of each transaction.

*Leveling*

The Company will adhere to the requirements of ASC 820 when performing leveling of assets held by Retail Funds.

*Change in Fair Valuation Procedures or Methodologies*

If the Valuation Committee reasonably determines that a procedure or methodology other than those set forth in this Policy would more accurately reflect the fair value of one or more portfolio securities and if, in the aggregate, the value of such securities is not material to such Client, then the Company may use such procedure or methodology, provided that, in the case of a Retail Fund, any such determination and the basis for such determination shall be documented in writing and submitted to the Board for ratification at its next regularly scheduled quarterly meeting.

*Board Reporting for Retail Funds*

The Company shall present the Board with the following reports and shall request the following approvals or ratifications, as applicable, in respect of each Retail Fund:

12

| Report | Frequency |
|---|---|
| A report indicating the current valuation and methodology for determining such valuation for each fair valued security and the dollar amount and percentage of any changes in valuation since the prior Board report in respect of such security. Such fair valuations shall be subject to Board approval or ratification and, to the extent the methodology is not set forth in this Policy or has not otherwise previously been approved or ratified by the Board, the methodology shall also be subject to Board approval or ratification. | Quarterly |
| A report noting any change in a previously reported fair valuation methodology since the last regularly scheduled quarterly Board meeting and the reason for such change. | Quarterly |
| A report documenting any pricing challenges or overrides that have been made since the last regularly scheduled quarterly Board meeting. | Quarterly |
| A report documenting any pricing sources that have been disregarded. | Quarterly |
| Copies of minutes from Valuation Committee meetings and copies of the pricing packets provided to the Valuation Committee. | Quarterly |
| Requests for the Board to approve or ratify any independent pricing service that the Company has determined is able to provide appropriate pricing. | As needed |
| Recommended changes to this Policy. | As needed |
| A written report on any changes in the composition of the Valuation Committee. | Quarterly, as needed |
| A report documenting any trades of fair valued securities determined by the Valuation Committee to be "non-orderly" | Quarterly, as needed |

13

| | |
|---|---|
| Such other information as the Board may from time to time request, including such supporting documentation as the Company is able to obtain from independent pricing services using good faith reasonable efforts. | As requested |

## Responsibilities

*Valuation Committee*

In order to assist with the determination of fair value, the Company has appointed a Valuation Committee consisting of such personnel of the Company as may be designated by the Company from time to time including, among others, the Chief Financial Officer, the head of the Valuation Department, one or more Senior Traders, one or more fund managers and one or more Senior Finance Professionals. The retail and institutional CCOs serve on the Committee as non-voting members. The Board has delegated to the Valuation Committee authority to determine the fair value of securities held by a Retail Fund for which market quotations are not readily available, subject to this Policy and the oversight of the Board. As noted above, the Company shall report in writing to the Board at its next regularly scheduled quarterly meeting regarding any changes in the composition of the Valuation Committee.

*Valuation Committee Meetings*

The Valuation Committee shall meet on (a) any day when a significant event may require fair valuation and (b) as necessary and at least once per month to approve the pricing methodology for any fair valued securities. The approval of a majority of the voting members of the Valuation Committee who are present at a meeting for which there is a quorum is required to approve any matter submitted for approval. Voting quorum is achieved when at least five voting members and the Retail Funds' CCO (or his designee) is in attendance.

*Valuation Sub-Committee*

In order to strengthen the review and oversight of internally developed models for fair valued securities, the Company has formed a Valuation Sub-Committee composed of the Chief Financial Officer, the head of the Valuation Department, all other Valuation Department members and one or more representatives from the Compliance Department.

14

*Valuation Sub-Committee Meetings*

The Valuation Sub-Committee shall meet at least once per month: (i) as appropriate, to perform a documented review and discussion of fair valued securities that have been identified as having material changes in fair valuations or securities that the Valuation Department or the Compliance Department deem pertinent for any reason and (ii) to make final decisions on which securities, in addition to those required to be presented to the Valuation Committee pursuant to these procedures, should be presented to the Valuation Committee.

*Valuation Sub-Committee Member Responsibilities*

It is the Valuation Department's responsibility to generate a listing of internally developed models for fair-valued securities for the Valuation Sub-Committee to review. The Compliance Department is responsible for adding any relevant insight to the positions discussed, for bringing to the attention of the Valuation Department any information known to the Compliance Department that may be relevant to valuation, including information relating to positions not otherwise scheduled for discussion by the Valuation Sub-Committee, and for providing general oversight over the Valuation Department.

*Valuation Department*

The Valuation Department is composed of one or more investment analysts who report directly to the head of the Company's Valuation Department.

## Files and Records

The Company will maintain written evidence for all prices authorized by the Valuation Committee. Documentation consists of:

(i)    copies of quotes obtained;
(ii)   a fair valuation summary template prepared by the Applicable Analyst(s); and
(iii)  as applicable, third-party valuation reports.

A member of the Compliance Department will prepare and the Company will retain in its records minutes of the Valuation Committee meetings documenting all determinations made and an attendance sheet signed by all Committee members present at the meeting.

For Retail Funds, the minutes of each Board meeting shall reflect any report given pursuant to these procedures. Valuation Committee meeting minutes will be provided to the Board on a quarterly basis.

Relevant available documentation and information supporting valuations pursuant to the fair valuation procedures or Broker Quoted securities described

15

above shall be maintained by the Company with the Retail Fund's records for at least six years, the first two years in an easily accessible place.

LIST OF PRICING SERVICES

| Independent Pricing Service | Instrument Type |
| --- | --- |
| Primary: Markit | Loans |
| Primary: Interactive Data Corp.<br>Secondary: Bloomberg | Bonds |
| Primary: Thomson Reuters<br>Secondary: Interactive Data Corp.,<br>Bloomberg | Equities; CLOs (Debt and Equity) |
| Primary: Houlihan Lokey | Private Equity; securities held by the BDC |

<u>Attachment B</u>

## <u>Procedures for NexPoint Capital, Inc.</u>

<u>Fair Valuation</u>

With respect to investments for which market quotations are not readily available, NexPoint Advisors, L.P. ("NexPoint") shall undertake a multi-step valuation process at the end of each fiscal quarter for NexPoint Capital, Inc. (the "BDC"), as described below:

- The Applicable Analyst will fair value all portfolio investments of the BDC each quarter;

- Senior management of the BDC and NexPoint will discuss and document preliminary valuation conclusions and the models and key assumptions used to determine such preliminary valuations;

- NexPoint will present those preliminary valuations and the models and key assumptions used to determine such preliminary valuations to the Board or its audit committee for review;

- At least once each quarter, the valuations for approximately one quarter of the portfolio investments that have been fair valued are reviewed by an independent valuation firm, such that, over the course of a year, each material portfolio investment that has been fair valued shall have been reviewed by an independent valuation firm at least once; and

- The Board will either approve the preliminary valuation or will otherwise determine in good faith the fair value of each portfolio investment for which market quotations are not readily available.

# EXHIBIT 35



May 3, 2019


<u>**VIA E-MAIL AND UPS**</u>

Marshall Gandy, Associate Regional Director
U.S. Securities and Exchange Commission
Fort Worth Regional Office
801 Cherry Street, Suite 1900, Unit 18
Fort Worth, Texas 76102

> Re:     Examination of Highland Capital Management Fund Advisors, L.P. (File No. 801-69968) ("**Adviser**") and Examination of Highland Funds II (File No. 811-07141) ("**Company**")

Dear Mr. Gandy:

This supplemental letter, to the response letter dated March 29, 2019, provides the responses of the Adviser and the Company to the letters of the staff of the Securities and Exchange Commission (the "**Staff**") dated February 27, 2019 regarding the above-referenced examinations. For convenience, the Staff's comments have been summarized before each response. The Adviser and Company have responded jointly to the Comments I.1, I.3, and I.6. Any capitalized terms not otherwise defined herein have the meanings ascribed to them in the Staff's letter.

I.1.     <u>Comment</u>:  The Staff requests that the Adviser provide a table with the following information for each business day from March 14, 2018 through the date on which the Adviser implemented its updated fair value methodology for TerreStar set forth in the Consultation Materials (the period from March 14, 2018 through the date on which the Adviser implemented its updated fair value methodology for TerreStar is referred to herein as the "NAV error period"):

(a) Original valuation of TerreStar
(b) Revised valuation of TerreStar
(c) Fund's NAV
(d) Fund's restated NAV
(e) Amount of NAV adjustment (expressed in dollars and cents)
(f) Amount of NAV adjustment (expressed as a percentage of the original NAV)
(g) Fund's total net assets
(h) Fund's restated total net assets

<u>Response</u>:

Please see the requested data as set forth in Exhibit A.

I.3     <u>Comment</u>:  The Staff requests that the Adviser provide whether there was a loss to the Fund from net redemptions over the NAV error period, and the amount of such loss. Provide documentation of whether the Fund was made whole for the loss and the entity that made the Fund whole.

<u>Response</u>:

Please see the requested data as set forth in Exhibit B.

The Fund was made whole through two separate wire transactions:

- $5,186,496 was paid to the Fund by the Adviser on February 15, 2019; and
- $2,398,842 was paid to the Fund by the Adviser on May 2, 2019.

The Fund's custodian cash details are included as part of Exhibit B to evidence these payments.

I.6     <u>Comment</u>:  For those shareholder accounts listed in the report with gains ("benefits")(i.e., for an NAV adjustment downward, shareholders that redeemed shares of the Fund received a benefit and the Fund experienced a loss), the Staff requests that the Adviser provide:

(a) documentation of whether the Fund was made whole for such losses; and

(b) documentation regarding the entity that made the Fund whole.

<u>Response</u>:

Please see the response as set forth in I.3 above.

Last, pursuant to the Staff's request on the May 1, 2019 telephonic call with the Adviser, the Staff requested an update on the status of the reprocessing with the transfer agent, DST, to Fund shareholders and its intermediaries. Please see Exhibit C for further detail.  The timing of this undertaking is dependent on the Fund's transfer agent receiving the requested information back from the intermediaries.

*       *       *

Please feel free to contact me at 972-419-4459 to discuss any questions or comments you may have regarding the foregoing responses.  Thank you for your assistance.

Sincerely,

Jason Post
Chief Compliance Officer

## **EXHIBIT A**

I.1 (a-h) – GAF Detail

## **EXHIBIT B**

I.3 – GAF Calculation Summary
I.3 – Response GAF Wire-In Confirm (02.15.19)
I.3 – Response GAF Wire-In Confirm (05.2.19)

## **EXHIBIT C**

GAF – DST Special Events Update

# EXHIBIT 36



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
FORT WORTH REGIONAL OFFICE
BURNETT PLAZA, 19TH FLOOR
801 CHERRY STREET, UNIT 18
FORT WORTH, TEXAS 76102
817-978-3821

DELIVERY VIA SECURE EMAIL
jpost@highlandcapital.com

May 22, 2019

Mr. Jason Post
Chief Compliance Officer
Highland Capital Management Fund Advisors, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201

RE:    Examination of Highland Capital Management Fund Advisors, L.P. (File No. 801-69968)

Dear Mr. Post:

The staff conducted an examination of Highland Capital Management Fund Advisors, L.P. (the "Adviser" or "Highland"), which evaluated compliance with certain provisions of the federal securities laws or other applicable rules and regulations (together, the "federal securities laws"). The examination identified the deficiencies and weaknesses in controls (together, the "findings") that were described in Exhibit A to the staff's letter dated February 27, 2019 addressed to you and which the staff discussed with you during an exit interview on February 26, 2019.

The Adviser has provided information in response to the matters described in Exhibit A to the staff's letter dated February 27, 2019. With respect to whether shareholders of Highland Global Allocation Fund (the "Fund") have been made whole for their losses as described in Exhibit A to the staff's letter dated February 27, 2019 resulting from the Fund's NAV error that was the result of the Adviser implementing a revised valuation model for TerreStar, the Adviser recently provided the staff with DST's work plan and timeline for completing the remediation to the Fund's shareholders. DST is the former transfer agent for the Fund.

On the basis of the information provided to the staff, the staff has determined that it has no further requests for information or documentation at this time. However, this does not preclude requests

from staff of other offices or divisions within the Commission.  Additionally, this does not preclude the exam staff from opening another examination of the Adviser that may include a review of remediation to the Fund's shareholders for their losses resulting from the NAV error that resulted from the Adviser implementing a revised valuation model for TerreStar.

The fact that we have no further requests for information or documentation at this time does not mean that all of the Adviser's activities comply with the federal securities laws or other applicable rules and regulations.  The exam staff's decision to make no further requests at this time is based on its examination of the Adviser and is not a finding or conclusion of, or binding on, the Commission or any of its divisions or offices. Furthermore, the exam staff's decision does not foreclose the Commission from taking any action, including but not limited to an enforcement action, with respect to the Adviser.

Thank you for your cooperation.  If you have any questions, please contact me at (817) 900-2622, Katherine Feld at (212) 336-0581 or Victoria Prescott at (817) 978-6468.

Sincerely,

Marshall Gandy
Associate Regional Director

Cc:

Katherine Feld, Senior Special Counsel to the Deputy Director, Office of Compliance Inspections and Examinations
Victoria Prescott, Regulatory Counsel, Forth Worth Regional Office

# EXHIBIT 37



**DATE:**     May 28, 2019

**TO:**     The Board of Trustees (the "<u>Board</u>") of Highland Global Allocation Fund (the "<u>Fund</u>")

**FROM:**     Highland Capital Management Fund Advisors, L.P. ("<u>HCMFA</u>" or the "<u>Adviser</u>")

**RE:**     Resolution of the Fund's Net Asset Value ("<u>NAV</u>") Error

---

This memorandum summarizes the final resolution of the Fund's NAV error related to its TerreStar Corporation ("<u>TerreStar</u>") equity holding. In connection with the Fund's conversion from an open-end fund to a closed-end fund (the "<u>Conversion</u>") on February 13, 2019, the Office of the Chief Accountant ("<u>OCA</u>") of the SEC reviewed the Adviser's fair valuation of TerreStar equity, in particular the application of Financial Accounting Standards Board Accounting Standards Update 2011-4, Topic 820, Fair Value Measurement ("<u>ASC 820</u>") to two transactions in TerreStar equity that occurred in March 2018 (the "<u>March Transactions</u>"). The OCA provided its feedback during an exit call on February 8, 2019 and subsequently confirmed no comments to the Adviser's confirmation of understanding letter on February 14, 2019.

The Adviser and Houlihan Lokey, an independent third party expert valuation consultant approved by the Board, initially determined that the March Transactions were "non-orderly" and should be given "zero weighting" for purposes of determining fair value. As reflected in the consultation, the Adviser ultimately determined that both March Transactions should be classified as "orderly." The fair valuation methodology adopted, as addressed in the consultation, weights inputs and does not reflect last sales transaction pricing exclusively in determining fair value. The "orderly" determination and adoption of the weighted fair valuation methodology resulted in NAV errors in the Fund (the "<u>NAV Error</u>").

After incorporation of the updated valuation into the Fund's NAV, the gross NAV Error, excluding interest, the advisory fee rebate, and processing costs, amounted to approximately $6.1 million of loss to the Fund and approximately $1.4 million of losses to Shareholders (a total loss of approximately $7.5 million) over the period between March 18, 2018 and January 19, 2019 (the "<u>NAV Restatement Period</u>").

The Fund was made whole through a $5,186,496 payment on February 15, 2019, and a $2,398,842 payment on May 2, 2019. A detailed breakdown of the NAV Error and the make whole payments is set forth below. Shareholder reprocessing and reimbursement are in progress with the Fund's prior transfer agent, DST Systems, Inc. (as transfer agent to the open-end fund), and given detailed omnibus account information has not yet been obtained the estimated make whole payments are subject to change. A representative of the Adviser will provide the Board with an update on the process during the May 28, 2019 Board meeting.

## NAV Error Breakdown and Make Whole Payments

| | Transaction Date(s) | Loss to Fund | Estimated Loss to Shareholders[3] | Totals |
|---|---|---|---|---|
| Estimated Net Loss | 3/14/18 thru 1/7/19 | (6,068,851) | (1,373,272) | (7,442,123) |
| Processing, Fees, Interest | 3/14/18 thru 1/7/19 | (375,000) | - | (375,000) |
| Insurance Proceeds | 2/15/2019 | 3,566,248 | 1,373,272 | 4,939,520 |
| Insurance deductible paid by Adviser | 2/15/2019 | 246,976 | - | 246,976 |
| Management fee offset | 4/1/2019 | 47,000 | - | 47,000 |
| Additional payment from Adviser | 5/2/2019 | 2,339,627[2] | - | 2,339,627 |
| Reimbursement of Processing costs from Adviser | -[1] | 244,000 | - | 244,000 |
| Total | | - | - | - |

**Supplemental Numerical Update**

| | | | | |
|---|---|---|---|---|
| Additional estimated loss to fund and shareholders | 1/8/19 thru 1/28/19 [5] | (19,789) | | |
| Additional processing, management fees, and interest | Note 4 | (39,426) | | |
| Additional payment from Adviser | 5/2/2019 | 59,215 | | |

**Total additional payment from Adviser [6]**   **5/2/2019**   **2,398,842**

**Notes**

1 - Expected to be incurred thru 12/31/19, and will be reimbursed by Adviser as incurred. To date no invoices have been billed or paid, but upon receipt of a future invoice, the Adviser will promptly pay.

2 - Includes $2,255,628 of previously outstanding balance, and $84,000 of interest calculated through 1/7/19, which was the "as of date" used for the calculations in the OCA submission.

3 - Represents the estimated losses to shareholder subscribing into the fund during the NAV Restatement Period and estimated losses to be determined after reprocessing individual capital activity that was held in Omnibus accounts.

4 - Proposal from service provider was higher than original estimate, and includes interest thru date of final payment made by Adviser.

5 - This includes the calculations subsequent to 1/7/19 (which was the "as of date" used for the calculations in the OCA submission) "through date" 1/28/19, which the final date in which the revised mark was fully reflected in the NAV.

6 - Includes $2,339,627 and $59,215 of Additional payments from Adviser

# EXHIBIT 38



June 3, 2019

PricewaterhouseCoopers LLP
2121 N Pearl, Suite 2000
Dallas, TX 75201

We are providing this letter in connection with your audit of the consolidated financial statements as of Highland Capital Management Fund Advisors, L.P. and its subsidiary (Appendix 1), (hereinafter collectively referred to as the "Partnership") as of December 31, 2018 (hereinafter referred to as the "balance sheet date") and the related consolidated statements of income, of changes in partners' capital, and of cash flows for the year then ended (hereinafter referred to as the "period") (hereinafter collectively referred to as the "consolidated financial statements"), for the purpose of expressing an opinion as to whether such consolidated financial statements present fairly, in all material respects, the financial position, results of operations, changes in partners' capital and cash flows of the Partnership in conformity with accounting principles generally accepted in the United States of America. We acknowledge and confirm that we have fulfilled our responsibility, as set out in our engagement letter of May 14, 2019, for the preparation and fair presentation in the consolidated financial statements of financial position, results of operations, changes in partners' capital and of cash flows in conformity with generally accepted in the United States of America, including the appropriate selection of accounting policies.

Certain representations in this letter are described as being limited to those matters that are material. Items are considered material, regardless of size, if they involve an omission or misstatement of accounting information that, in the light of surrounding circumstances, makes it probable that the judgment of a reasonable person relying on the information would have been changed or influenced by the omission or misstatement. Materiality used for purposes of these representations is $39,000.

We confirm, to the best of our knowledge and belief, as of June 3, 2019 the date of your report, the following representations made to you during your audit:

**General**

1. The consolidated financial statements referred to above are fairly presented in conformity with accounting principles generally accepted in the United States of America (US GAAP), and include all disclosures necessary for such fair presentation and disclosures otherwise required to be included therein by the laws and regulations to which the Partnership is subject. We prepared the Partnership's consolidated financial statements on the basis that the Partnership is able to continue as a going concern. There are no conditions or events, considered in the aggregate, that raise substantial doubt about the Partnership's ability to continue as a going concern within one year after the date these financial statements are issued.

2. We have made available to you:

   a. All financial records and related data.

   b. Unconditional access to persons within the entity from whom you have requested audit evidence.

c. All minutes of the meetings of committees or other governing bodies applicable to the Partnership, including but not limited to, investors, Partners and committees of Partners, including summaries of actions of recent meetings for which minutes have not yet been prepared .

d. Partnership agreements, Memoranda and Articles of Association, Confidential Offering Memoranda and amendments thereto (individually or collectively referred to hereinafter as the "Governing Documents"), and all other agreements to which the Partnership is subject.

e. All contracts or other agreements with the Partnership's service providers.

f. All official written reports, findings, recommendations and communications from specialists or professional advisors engaged to review investments, systems, processes, operations, or compliance programs of Partnership that are material to the Partnership, individually or in aggregate.

g. All side letter arrangements, whether written or oral, with any investors entered into or cancelled during the period for which noncompliance would have a material effect on the Partnership's consolidated financial statements. These side letters are allowed under the terms of the Governing Documents.

h. Withdrawal requests submitted or communicated by investors through the date of this letter.

3. We are responsible for all significant estimates and judgments affecting the consolidated financial statements. Significant estimates and judgments and their underlying assumptions, methods, procedures and the source and reliability of supporting data are reasonable and based on applicable guidance, are completely and appropriately disclosed in the consolidated financial statements, and appropriately reflect management's intent and ability to carry out specific courses of action, where relevant. The procedures and methods utilized in developing assumptions, estimates and judgments are appropriate and have been consistently applied in the periods presented. There have been no subsequent events which would require the adjustment of any significant estimate and related disclosures.

**Legal and Regulatory Compliance**

4. There have been no communications from such regulatory agencies concerning the Partnership's noncompliance with or deficiencies in financial reporting practices.

5. There have been no violations or possible violations of laws or regulations whose effects should be considered for disclosure in the consolidated financial statements or as a basis for recording a loss contingency.

6. The Partnership has complied with all aspects of contractual agreements that would have a material effect on the consolidated financial statements in the event of noncompliance.

**Fraud**

7. We acknowledge our responsibility for the design and implementation of programs and controls to provide reasonable assurance that fraud is prevented and detected.

2

8. We have disclosed to you the results of our assessment of the risk that the consolidated financial statements may be materially misstated as a result of fraud and we have no knowledge of any fraud or suspected fraud affecting the Partnership involving:

    a. Partnership management or its affiliates,

    b. Employees who have significant roles in the Partnership's internal control over financial reporting, or

    c. Others where the fraud could have a material effect on the consolidated financial statements.

9. Except for previously disclosed, we have no knowledge of any allegations of fraud or suspected fraud affecting the Partnership received in communications from employees, former employees, regulators, service providers, counterparties, current or former investors, or others.

(As to items 7,8, and 9 we understand the term "fraud" to mean those matters described in AICPA AU-C 240.)

## Assets, Liabilities and Capital

### *Assets:*

10. The Partnership has satisfactory title to all owned assets, including investments, and there are no liens or encumbrances on such assets nor has any asset been pledged as collateral, including, but not limited to, assets pledged or assigned as security for liabilities and performance of contracts, except as disclosed in the consolidated financial statements. All deposit and brokerage accounts and all investments and other assets of the Partnership of which we are aware are included in the consolidated financial statements.

11. Receivables recorded in the consolidated financial statements represent bona fide claims against debtors for transactions arising on or before the balance sheet date. All receivables have been appropriately reduced to their estimated net realizable value. Receivables, if any, from shareholders/partners or their affiliates, have been collected before the date of this letter.

### *Investments:*

With respect to Partnership's investments:

12. Investments included in the Partnership's consolidated financial statements have been stated at fair values as determined by management in accordance with the valuation methods set forth in the Governing Documents and related policies and procedures. Such policies are in accordance with US GAAP (e.g., fair value of an investment is that price which would be received to sell or paid to transfer, respectively, those assets or liabilities in orderly transactions between market participants).

13. The valuation policies used for investments whose fair values have been estimated by management are appropriate and have been consistently applied and documented. The policies for fair value measurement are appropriately disclosed in the consolidated financial statements. The methods, assumptions, and inputs used are appropriate and result in a fair value appropriate for consolidated financial statement measurement and disclosure purposes. As of the balance sheet date, the investments for which fair value were determined by estimates made by management are appropriately disclosed in the Partnership's consolidated financial statements.

3

14. We have informed you of any investments as of the balance sheet date that have restrictions on their sale or transferability. We have appropriately considered restrictions that are an attribute of the investment in our fair value determination.

15. The cost of portfolio securities was determined on the basis of FIFO method.

*Liabilities:*

16. All liabilities of the Partnership of which we are aware are included in the consolidated financial statements at the balance sheet date. There are no other liabilities or gain or loss contingencies that are required to be recognized or disclosed by ASC 450, *Contingencies*, and no unasserted claims or assessments that the our legal counsel has advised us are probable of assertion and required to be disclosed in accordance with that Topic.

17. The Partnership is not an "SEC registrant" as that term is used in ASC 480, *Distinguishing Liabilities from Equity*, 480-10-65-1. The Partnership has properly classified and disclosed as liabilities its mandatorily redeemable securities and other financial instruments (e.g., payable) that are within the scope of ASC 480-10-65, *Effective Date, Disclosures, and Transition for Mandatorily Redeemable Financial Instruments of Certain Nonpublic Entities and Certain Mandatorily Redeemable Noncontrolling Interests,* in the consolidated financial statements.

*Capital:*

18. Partner capital balances, including the allocation of income, gains and losses, and the calculation of management fees and incentive fees/allocation have been properly calculated throughout the period in accordance with the Governing Documents, after giving consideration to the terms identified in each investor's subscription document. The methodology was consistently applied throughout the period and was correctly applied in the computation of contribution and withdrawal transactions during the period.

**Statement of Income**

19. All material expenses charged to the Partnership are permissible under the terms of the Governing Documents. All directed brokerage and other expense reimbursement agreements, if any, have been properly disclosed in the consolidated financial statements.

**Tax Matters**

20. There are no material tax liabilities incurred by the Partnership under the provisions of ASC 740, Income Taxes. We have made the necessary provisions and disclosures in the consolidated financial statements as required by ASC 740, Income Taxes. The resulting liabilities are supported by specifically identified income tax exposures.

21. We have provided you with all information and our assessment related to all significant uncertain income tax positions that we have taken, or expect to take, of which we are aware. We have also provided you with access to all opinions, rulings, memoranda and analyses that relate to positions we have taken in regard to significant income tax matters. We are responsible for the accuracy and completeness of information provided to external counsel and we believe that the facts are consistent with any stated assumptions made by external counsel for purposes of forming such tax opinions. We have made you aware of and have disclosed all significant tax positions for which it is reasonably

4

possible the amount of unrecognized tax benefit will either increase or decrease in the next 12 months.

22. The Partnership is in compliance with applicable tax laws in the jurisdictions where it invests, and does business.

## Disclosure and Presentation of Financial Statements

23. The effects of the uncorrected financial statement misstatements are immaterial, both individually and in the aggregate, to the consolidated financial statements taken as a whole.

24. We have appropriately reconciled the Partnership's books and records (including, but not limited to, general ledger accounts, financial accounts maintained outside the general ledger and trial balances) underlying the consolidated financial statements to their related supporting information (e.g., sub ledger, or third-party data). All related reconciling items considered to be material were identified and included on the reconciliations and were appropriately adjusted in the consolidated financial statements, as necessary. There were no material un-reconciled differences or material general ledger suspense account items that should have been adjusted or reclassified to another account balance. There were no material general ledger suspense account items written off to a balance sheet account, which should have been written off to a statement of operations account and vice versa. All consolidating entries have been properly recorded. All intra-entity accounts have been eliminated or appropriately measured and considered for disclosure in the consolidated financial statements.

25. There are no material transactions, agreements or accounts that have not been properly recorded in the accounting records underlying the consolidated financial statements.

26. The following, if material, have been properly recorded or disclosed in the consolidated financial statements:

    a. Agreements to repurchase assets previously sold.

    b. All pertinent rights and privileges of both general partner and limited partner interests in the Partnership.

    c. Relationships and transactions with related parties, as described in ASC 850, *Related Party Disclosures*, including revenue, subadvisory fees, loan, purchases and sales of securities, transfers, affiliated investor capital, guarantees, other fees and expenses, and amounts receivable from or payable to related parties.

    d. Significant estimates and material concentrations known to us that are required to be disclosed in accordance with ASC 275, *Risks and Uncertainties*. (Significant estimates are estimates at the balance sheet date that could change materially within the next year. Concentrations refer to matters such as volume of investment activity, available sources of financing, markets or geographic areas for which events could occur that would significantly disrupt investment performance within the next year.)

5

    e. Arrangements with financial institutions involving compensating balances, or other arrangements involving restrictions on cash balances, lines of credit, collateral posted or similar arrangements.

    f. All financial instruments, including those with off-balance-sheet risk (including, but not limited to, swaps, forwards and futures), as required under US GAAP. This includes the following information with respect to the off-balance-sheet risks and the concentrations of credit risk:

        i. The extent, nature, and terms of financial instruments with off-balance-sheet risk.

        ii. The amount of credit risk of financial instruments with off-balance-sheet risk and information about the collateral supporting such financial instruments.

    g. Each significant concentration of credit risk arising from all financial instruments, and information about the collateral supporting such financial instruments, whether from an individual counterparty/prime broker or group of counterparties/prime brokers in accordance with ASC 825, *Financial Instruments,* and ASC 815, *Derivatives and Hedging* (ASC 815), 815-10-50.

    h. Commitments to purchase or sell financial instruments, commitments on certain debt instruments such as revolving credit facilities and obligations to fund capital calls.

    i. Fee income and expenses associated with stock lending and borrowing arrangements.

    j. Guarantees, whether written or oral, under which the Partnership is contingently liable.

    k. Transactions made in foreign currencies.

    l. Transactions made on margin or selling short.

27. We have disclosed to you the identity of the Partnership's related parties and all the related party relationships and transactions of which we are aware.

28. The Partnership has classified and disclosed financial assets and liabilities in the financial statements as Level 1, Level 2 and Level 3 in accordance with ASC 820, *Fair Value Measurement,* including a description of inputs and information used to develop valuation techniques as well as facts that required a change to such techniques, where applicable. We have made appropriate disclosures in accordance with Accounting Standards Update (ASU) 2011-11, *Disclosures about Offsetting Assets and Liabilities,* when the Partnership has the right of setoff in accordance with a master netting or similar agreement. The netting of assets and liabilities has been performed in accordance with the specific requirements of ASC 210, *Balance Sheet,* 210-20-45-1 and ASC 815-10-45-5.

29. The Partnership has properly recorded, classified and disclosed the prime broker margin collateral requirements in the consolidated financial statements in accordance with ASC 860, *Transfers and Servicing,* as to the recognition and reclassification of collateral and disclosures relating to securitization transactions and collateral.

30. We consistently applied our policy regarding classification of cash and cash equivalents, which are short-term, highly liquid investments that are readily convertible to known amounts of cash and are

so near their maturity that there is insignificant risk of changes in value due to interest rate or other credit risk changes.

31. All borrowings and financial obligations of the Partnership have been disclosed to you and are properly recorded in the consolidated financial statements.

32. The Partnership has not made any commitments during the year as underwriter, nor did it engage in joint trading or a joint investment account.

**Other**

33. The Partnership has no plans or intentions that may materially affect the Partnership's carrying value or classification of assets and liabilities. We have no plans or intentions to liquidate the Partnership or to cease operations.

34. We acknowledge and confirm that we have fulfilled our responsibility, as set out in our engagement letter May 14, 2019 , for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error and we are not aware of any deficiencies in the design or operation of internal control over financial reporting.

35. All directed brokerage and other expense reimbursement agreements, if any, have been properly disclosed in the consolidated financial statements.

36. No contracts were executed outside of Texas or the U.S. on behalf of the Partnership during 2018.

37. We have notified you of (i) any current or planned offerings of securities on a regulated market in a non-U.S. country or (ii) when we have provided or plan to provide audited consolidated financial statements to a non-U.S. regulator or government in connection with our access to its public capital markets, whether or not we include or refer to your report or include reference to your Firm.

38. Other than the litigation described in the Current Litigation Memo dated May 24, 2019 and disclosed in the consolidated financial statements, there is no other litigation that would materially impact the Partnership.

39. The consolidated financial statements disclose all matters of which we are aware that are relevant to the Partnership's ability to continue as a going concern, including all significant conditions and events and management's plans. We have the intent and ability to take actions necessary for the Partnership to continue as a going concern and accordingly the Partnership's consolidated financial statements are prepared on a going concern basis. We made available to you all relevant information on the Partnership's ability to continue as a going concern that could affect the consolidated financial statements. We derecognize liabilities if and only if it has been extinguished. A liability has been extinguished when the debtor pays the creditor and is relieved from its obligation or when the debtor has been legally released from being the primary obligor under the liability, either judicially or by the creditor.

40. We acknowledge responsibility for the presentation of the Supplemental Consolidating Balance Sheet, Supplemental Consolidating Statement of Income, Supplemental Unconsolidated Balance Sheet and Supplemental Unconsolidated Statement of Income in accordance with US GAAP and we believe such information, including its form and content, is fairly presented in accordance with US GAAP. We have communicated to you all changes in measurement or presentation from those used

7

in the prior period. We have informed you about any significant assumptions or interpretations underlying the measurement or presentation of the information.

To the best of our knowledge and belief, no events have occurred subsequent to the balance sheet date and through the date of this letter that would require adjustments to, or disclosure in, the aforementioned consolidated financial statements.

_____
James Dondero, Sole Director
Highland Capital Management Fund Advisors, L.P.
By: Strand Advisors XVI, Inc., its general partner

_____
Frank Waterhouse, Treasurer
Highland Capital Management Fund Advisors, L.P.
By: Strand Advisors XVI, Inc., its general partner

8

**Appendix 1**

Highland Capital Funds Distributors, Inc.

# EXHIBIT 39

**Table of Contents**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

---

# FORM N-CSR

---

### CERTIFIED SHAREHOLDER REPORT OF REGISTERED
### MANAGEMENT INVESTMENT COMPANIES

**Investment Company Act file number: 811-23369**

---

# HIGHLAND GLOBAL ALLOCATION FUND
**(Exact name of registrant as specified in charter)**

---

**200 Crescent Court**
**Suite 700**
**Dallas, Texas 75201**
**(Address of principal executive offices)(Zip code)**

---

**Highland Capital Management Fund Advisors, L.P.**
**200 Crescent Court**
**Suite 700**
**Dallas, Texas 75201**
**(Name and Address of Agent for Service)**

---

**Registrant's telephone number, including area code: (877) 665-1287**

**Date of fiscal year end: September 30**

**Date of reporting period: September 30, 2019**

Table of Contents

**Item 1.        Reports to Stockholders.**

A copy of the Annual Report transmitted to shareholders pursuant to Rule 30e-1 under the Investment Company Act of 1940, as amended (the "1940 Act"), is attached herewith.

**Table of Contents**



# Highland Global Allocation Fund

---

## Annual Report
## September 30, 2019

---

Beginning on January 1, 2021, as permitted by regulations adopted by the U.S. Securities and Exchange Commission, paper copies of the Funds' annual and semi-annual shareholder reports will no longer be sent by mail, unless you specifically request paper copies of the reports. Instead, the reports will be made available on the Funds' website (highlandfunds.com), and you will be notified by mail each time a report is posted and provided with a website link to access the report.

If you already elected to receive shareholder reports electronically, you will not be affected by this change and you need not take any action. You may elect to receive shareholder reports and other communications from a Fund electronically by contacting your financial intermediary (such as a broker-dealer or bank) or, if you are a direct investor, by contacting the Funds' transfer agent at 1-877-665-1287.

Beginning on January 1, 2019, you may elect to receive all future reports in paper free of charge. If you invest through a financial intermediary, you can contact your financial intermediary to request that you continue to receive paper copies of your shareholder reports. If you invest directly with a Fund, you can call 1-877-665-1287 to let the Fund know you wish to continue receiving paper copies of your shareholder reports. Your election to receive reports in paper will apply to all funds held in your account if you invest through your financial intermediary or all funds held with the fund complex if you invest directly with a Fund.

**Table of Contents**

# Highland Global Allocation Fund

## TABLE OF CONTENTS

| | |
|---|---|
| Portfolio Manager Commentary | 1 |
| Consolidated Fund Profile | 4 |
| Consolidated Financial Statements | 5 |
|    Consolidated Investment Portfolio | 6 |
|    Consolidated Statement of Assets and Liabilities | 12 |
|    Consolidated Statement of Operations | 13 |
|    Consolidated Statements of Changes in Net Assets | 14 |
|    Consolidated Statement of Cash Flows | 16 |
|    Consolidated Financial Highlights | 17 |
|    Notes to Consolidated Financial Statements | 18 |
|    Report of Independent Registered Public Accounting Firm | 36 |
| Additional Information | 37 |
| Important Information About This Report | 48 |

Economic and market conditions change frequently.
There is no assurance that the trends described in this report will continue or commence.

**A prospectus must precede or accompany this report. Please read the prospectus carefully before you invest.**

[Table of Contents](#)

# PORTFOLIO MANAGER COMMENTARY (unaudited)

**September 30, 2019**                                                **Highland Global Allocation Fund**

**Performance Overview**

For the twelve months ended September 30, 2019, the Highland Global Allocation Fund (the "Fund") experienced a total market price return of (26.45%) and a total NAV return of (7.04%). The Fund's benchmark, the FTSE All World index returned 1.86%.

**Manager Discussion**

The Fund officially listed as a closed-end fund in February 2019, and began trading on the New York Stock Exchange (ticker: HGLB) on February 19. Shortly after conversion the Fund instituted an 8.5% level distribution policy and changed the distribution frequency from quarterly to monthly. Additionally, the Fund announced plans for its share repurchase program. Through July 10, 2019 the Fund had completed $10 million in repurchases of the Fund's shares. On August 20, 2019 the Fund announced an additional $20 million of share repurchases and an extension of the repurchase program for a period of six months.

Some of the Fund's top investment themes during the year included Utilities, Telecom, and Energy MLP's. Vistra Energy, the Fund's largest single name equity position, was one of the largest contributors to performance as it returned 9.04%. Vistra Energy is an integrated power producer headquartered in Texas. The company arose out of the vestiges of the TXU bankruptcy when its merchant power / retail generation business restructured and later merged with competitor Dynegy. We believe this is an example of a unique and misunderstood business in an overlooked industry. We are attracted to its ample cash flow generation, multiple avenues for value creation, strong leadership team and cheap valuation.

Vista Energy's management reaffirmed its 2019 guidance on its recent 2Q call. The company is expected to generate free cash flow before growth investments of $2.1-$2.3 billion this year, which represents a 66% conversion of EBITDA to free cash flow. At the company's market cap of $13.1 billion at quarter end, free cash flow represents a yield of 16.3%. We find this free cash flow yield to be highly attractive given the company's size and scale and integrated position within the power value chain. In fact we find it hard to find any energy infrastructure company with a similar free cash flow yield that is not distressed or challenged in some fashion.

The ERCOT power market exhibited significant market tightness during this summer as scarcity events caused prices to spike in August and September. This improvement in real time prices caused forward prices to move higher which in turn should improve Vistra's earnings outlook for the next several years.

While free cash flow generation is one thing, what a management team does with that cash is another. This management team is focused on creating value for shareholders through a balanced capital allocation strategy. The company has completed over $1bn of buybacks under its $1.75bn repurchase program, recently initiated a quarterly dividend of $0.125 per share which management expects to grow at ~6-8%, and expects to achieve a ~2.5x net debt / EBITDA target by YE 2020. In addition, the company has announced tuck-in acquisitions of Crius Energy and Ambit Energy which expand the company's retail platform. We believe this approach to allocating the company's free cash flow will generate shareholder value over time.

The Fund continues to maintain a large allocation to energy MLPs, which detracted from performance during the year. While midstream energy companies generally produced strong earnings during the year, the sector experienced weakened investor sentiment due to a confluence of factors. On top of macro concerns, such as trade war fears and an uncertain commodity price environment, the domestic upstream sector generated poor investment returns. The S&P Oil & Gas Exploration and Production Select Industry Index returned -47.70% during the year. In short, domestic E&P companies underperformed the market and this in turn cast a negative sentiment on their counterparts in the midstream sector. We remain constructive on the long-term outlook for the midstream sector despite near term macro uncertainty and a weaker upstream market environment. The U.S. operates as a low cost producer of hydrocarbons, which means that we expect U.S. production volumes and export opportunities to continue to grow despite headline risks such as commodity price pressure or short-term reductions in upstream production budgets. The sector has undergone a significant transformation over the past several years towards a focus on shareholder returns, corporate simplification, returns on invested capital, and a reduction in leverage. We think this renewed focus on capital discipline combined with an underlying healthy fundamental backdrop should enable the sector to create value over time. Despite these positive factors, midstream MLPs appear cheap relative to history and other yield-oriented asset classes. The median MLP yields 10.1%, which is a 30.5% discount to its five year average of 7.0%, and trades at an estimated 2020 EV/EBITDA multiple of 9.8x, a 20.1% discount to its five year average of 12.2x. Meanwhile, Utilities trade at an 11.7x EV/EBITDA multiple, a 15% premium to its five year average, and REITs trade at a 17.3x multiple, a 5% discount.

The Fund's investments in Argentine sovereign debt and equity was the primary detractor for the year. In August 2019 Argentina held its primary election featuring president Macri and Alberto Fernandez. Polls predicted a tight race but Macri received just 32% of the vote, lagging 16% behind Fernandez. In Argentina, primaries are used to ensure candidates have ample support to compete in the general election. Both parties will be able to participate in the October 2019 election but the August election results foreshadowed a

Annual Report | 1

Table of Contents

## PORTFOLIO MANAGER COMMENTARY (unaudited)

**September 30, 2019**                                                      **Highland Global Allocation Fund**

defeat in October and a possible return to the policies of Cristina Kirchner. The scale of Macri's defeat surprised pollsters and Argentina stocks and bonds traded down on the news. Subsequent to September 30, 2019 Argentina held its election at the end of October and as projected in the August primaries, Alberto Fernandez was elected President. As of September 30, 2019, approximately 12% of the Fund was invested in Argentina debt and equity securities.

The Fund also uses derivatives such as options, futures and foreign currency transactions to protect from and/or to take advantage of quantifiable systematic and issuer-related risks. These derivatives had a negative impact on performance during the period.

2 │ Annual Report

**Table of Contents**

# PORTFOLIO MANAGER COMMENTARY (unaudited)

September 30, 2019                                                                              **Highland Global Allocation Fund**



### Growth of Hypothetical $10,000 Investment

|                              | | Average Annual Total Returns | | |
|------------------------------|-------|-------|--------|------------------|
|                              | 1 Year | 5 Year | 10 Year | Since Inception |
| Highland Global Allocation Fund | -7.04 | 0.55 | 6.82 | 5.46 |
| FTSE All World Index | 1.86 | 7.23 | 8.90 | 6.49 |

Returns shown in the chart and table do not reflect taxes that a shareholder would pay on Fund distributions or on the sale of the Fund shares.

Performance results reflect the contractual waivers and/or reimbursements of fund expenses by the Advisor. Absent this limitation, performance results would have been lower. The Expense Cap expired on January 31, 2019.

Effective on February 13, 2019, the Highland Global Allocation Fund converted from an open-end fund to a closed-end fund, and began trading on the NYSE under the symbol HGLB on February 19, 2019. The performance data presented above reflects that of Class Z shares of the Fund when it was an open-end fund, HCOYX. Month-end returns since March 2019 reflect market prices. The closed-end Fund pursues the same investment objective and strategy as it did before its conversion.

**The performance data quoted here represents past performance and is no guarantee of future results. Investment returns and principal value will fluctuate so that an investor's shares, when redeemed, may be worth more or less than their original cost. Current performance may be lower or higher than the performance data quoted. For performance data current to the most recent month-end, please visit our website at www.highlandfunds.com.**

Stock prices may fall or fail to rise over time for several reasons, including general financial market conditions and factors related to a specific issuer or industry. The Fund invests in growth stocks that may be more volatile because they are more sensitive to market conditions. The Fund invests in mid-cap companies which may entail greater risks and less liquidity due to narrower product lines and more limited resources than larger companies. The Fund may invest in foreign securities which may cause more volatility and less liquidity due to currency changes, political instability and accounting differences. The Fund's investments in derivatives may involve more volatility and less liquidity because of the risk that an investment may not correlate to the performance of the underlying securities.

Mutual fund investing involves risk including the possible loss of principal.

Annual Report | 3

**Table of Contents**

## CONSOLIDATED FUND PROFILE (unaudited)

**Highland Global Allocation Fund**

Objective

Highland Global Allocation Fund seeks to provide long-term growth of capital and future income (future income means the ability to pay dividends in the future.)

Net Assets as of September 30, 2019

$296.2 million

Portfolio Data as of September 30, 2019

The information below provides a snapshot of Highland Global Allocation Fund at the end of the reporting period. Highland Global Allocation Fund is actively managed and the composition of its portfolio will change over time. Current and future holdings are subject to risk.

### Sector Classifications as of 09/30/19[1]

| | |
|---|---|
| Non-U.S. Equity | 52.1% |
| Non-U.S. Master Limited Partnerships | 20.4% |
| U.S. Senior Loans | 12.6% |
| U.S. Equity | 9.8% |
| Non-U.S. Government Bond | 8.5% |
| Non-U.S. Registered Investment Companies | 7.3% |
| U.S. LLC Interest | 5.1% |
| U.S. Preferred Stock | 4.0% |
| Non-U.S. Asset-Backed Securities | 3.6% |
| U.S. Agency Collateralized Mortgage Obligation | 3.4% |
| Non-U.S. Corporate Bonds & Notes | 2.6% |
| Non-U.S. Purchased Options | 2.6% |
| U.S. Rights | 2.4% |
| Other (each less than 1.0%) | 0.4% |
| Other Assets & Liabilities, Net | (34.8)% |
| | 100.0% |

### Top 10 Holdings as of 9/30/2019[1]

| | |
|---|---|
| Vistra Energy Corp. (Non-U.S. Equity) | 34.8% |
| TerreStar Corporation (U.S. Equity) | 15.9% |
| Argentine Republic Government International Bond 3.75%, 12/31/2038 (Non-U.S. Government Bonds) | 8.5% |
| Energy Transfer LP (U.S. Master Limited Partnerships) | 6.6% |
| Fieldwood Energy LLC, Closing Date Loan, 2nd Lien 9.51%, 4/11/2023 (U.S. Senior Loans) | 6.1% |
| Highland Energy MLP Fund (Non-U.S. Master Limited Partnerships) | 4.9% |
| TerreStar Corporation, Term Loan A 11.00%, 2/27/2020 (U.S. Senior Loans) | 4.8% |
| Williams Cos., Inc. (Non-U.S. Equity) | 4.4% |
| Highland Merger Arbitrage Fund (U.S. Registered Investment Companies) | 3.5% |
| MPLX LP (Non-U.S. Master Limited Partnerships) | 3.5% |

[1] Asset classifications and holdings are calculated as a percentage of total net assets and net of long and short positions.

4 │ Annual Report

Table of Contents

# CONSOLIDATED FINANCIAL STATEMENTS

As of September 30, 2019                                                    **Highland Global Allocation Fund**

**A guide to understanding the Fund's consolidated financial statements**

| | |
|---|---|
| **Consolidated Investment Portfolio** | The Investment Portfolio details the Fund's holdings and its market value as of the last day of the reporting period. Portfolio holdings are organized by type of asset and industry to demonstrate areas of concentration and diversification. |
| **Consolidated Statement of Assets and Liabilities** | This statement details the Fund's assets, liabilities, net assets and share price for each share class as of the last day of the reporting period. Net assets are calculated by subtracting all of the Fund's liabilities (including any unpaid expenses) from the total of the Fund's investment and non-investment assets. The net asset value per share for each class is calculated by dividing net assets allocated to that share class by the number of shares outstanding in that class as of the last day of the reporting period. |
| **Consolidated Statement of Operations** | This statement reports income earned by the Fund and the expenses incurred by each Fund during the reporting period. The Statement of Operations also shows any net gain or loss the Fund realized on the sales of its holdings during the period as well as any unrealized gains or losses recognized over the period. The total of these results represents the Fund's net increase or decrease in net assets from operations. |
| **Consolidated Statement of Changes in Net Assets** | This statement details how the Fund's net assets were affected by its operating results, distributions to shareholders and shareholder transactions (e.g., subscriptions, redemptions and distribution reinvestments) during the reporting period. The Statement of Changes in Net Assets also details changes in the number of shares outstanding. |
| **Consolidated Statement of Cash Flows** | This statement reports net cash and foreign currency provided or used by operating, investing and financing activities and the net effect of those flows on cash and foreign currency during the period. |
| **Consolidated Financial Highlights** | The Financial Highlights demonstrate how the Fund's net asset value per share was affected by the Fund's operating results. The Financial Highlights also disclose the classes' performance and certain key ratios (e.g., net expenses and net investment income as a percentage of average net assets). |
| **Consolidated Notes to Financial Statements** | These notes disclose the organizational background of the Fund, certain of their significant accounting policies (including those surrounding security valuation, income recognition and distributions to shareholders), federal tax information, fees and compensation paid to affiliates and significant risks and contingencies. |

Annual Report | 5

Table of Contents

# CONSOLIDATED INVESTMENT PORTFOLIO

**As of September 30, 2019**                                               **Highland Global Allocation Fund**

| Shares | | Value ($) |
|---|---|---|
| **Non-U.S. Equity - 58.5%** | | |
| **COMMUNICATION SERVICES - 2.3%** | | |
| 131,733 | Cablevision Holding, Class B (a)(b) | 397,978 |
| 77,866 | Grupo Clarin, Class B (a)(b) | 41,370 |
| 71,981 | iHeartMedia, Inc. (a)(b) | 1,079,715 |
| 129,945 | Loral Space & Communications, Inc. (a) (b)(c) | 5,379,723 |
| | | 6,898,786 |
| **CONSUMER DISCRETIONARY - 4.3%** | | |
| 16,200 | MercadoLibre, Inc. (a)(b)(c) | 8,929,926 |
| 718 | Toys 'R' Us (a)(b) | 189,327 |
| 718 | Tru Kids, Inc. (a)(b) | 3,597,154 |
| | | 12,716,407 |
| **CONSUMER STAPLES - 0.1%** | | |
| 50,000 | Adecoagro SA (a)(b)(c) | 291,500 |
| **ENERGY - 6.7%** | | |
| 5,000 | Continental Resources, Inc. (a) | 153,950 |
| 29,751 | NextDecade Corp. (a)(b)(c) | 171,366 |
| 53,200 | Plains GP Holdings LP, Class A (a) | 1,129,436 |
| 56,400 | SemGroup Corp., Class A (a) | 921,576 |
| 113,000 | Targa Resources Corp. (a)(c) | 4,539,210 |
| 121 | Transocean (a)(b) | 541 |
| 537,700 | Williams Cos., Inc. (a) | 12,937,062 |
| | | 19,853,141 |
| **FINANCIALS - 2.2%** | | |
| 68,000 | Banco do Brasil (a)(c) | 744,418 |
| 100,000 | FGL Holdings (a)(c) | 798,000 |
| 188,858 | Grupo Supervielle SA ADR (a)(c) | 606,234 |
| 280,500 | IRB Brasil Resseguros S (a)(c) | 2,524,594 |
| 206,000 | Itau Unibanco Holding ADR (a) | 1,732,460 |
| | | 6,405,706 |
| **HEALTHCARE - 0.0%** | | |
| 5,000 | Idorsia, Ltd. (a)(b)(c) | 123,051 |
| **INDUSTRIALS - 2.9%** | | |
| 405,110 | America Airports (a)(b)(c) | 1,835,148 |
| 80,249 | American Airlines Group, Inc. (a)(c) | 2,164,316 |
| 87,855 | GL Events (a)(c) | 2,198,147 |
| 215,000 | Localiza Rent a Car (a)(c) | 2,346,450 |
| | | 8,544,061 |
| **INFORMATION TECHNOLOGY - 3.4%** | | |
| 342,949 | Avaya Holdings Corp. (a)(b) | 3,508,368 |
| 3,406 | Black Knight, Inc. (a)(b) | 207,970 |
| 6,200 | Fortinet, Inc. (a)(b) | 475,912 |
| 166,672 | StoneCo, Class A (a)(b)(c) | 5,796,852 |
| | | 9,989,102 |
| **MATERIALS - 0.8%** | | |
| 219,800 | United States Steel Corp. (a) | 2,538,690 |
| **UTILITIES - 35.8%** | | |
| 202,250 | Central Puerto ADR (a)(b) | 596,638 |
| 1,150 | NRG Energy, Inc. (a) | 45,540 |

| Shares | | Value ($) |
|---|---|---|
| **UTILITIES (continued)** | | |
| 109,400 | Pampa Energia ADR (a)(b)(c) | 1,899,184 |
| 3,851,800 | Vistra Energy Corp. (a)(c) | 102,958,614 |
| 45,830 | Voltalia (a)(b) | 497,641 |
| | | 105,997,617 |
| | Total Non-U.S. Equity (Cost $235,034,596) | 173,358,061 |
| **U.S. Equity - 28.3%** | | |
| **CHEMICALS - 0.2%** | | |
| 881,773 | Vertellus Specialties Inc. (b)(d)(e) | 731,871 |
| **COMMUNICATION SERVICES - 16.0%** | | |
| 48,209 | Clear Channel Outdoor Holdings, Inc., Class A (b) | 121,487 |
| 169,531 | TerreStar Corporation (b)(d)(e)(f)(g) | 47,134,704 |
| | | 47,256,191 |
| **CONSUMER DISCRETIONARY - 1.3%** | | |
| 141,215 | K12, Inc. (b)(c) | 3,728,076 |
| 698 | Lennar Corp., Class B (a)(c) | 30,970 |
| | | 3,759,046 |
| **FINANCIALS - 0.4%** | | |
| 4,500 | CIT Group, Inc. | 203,895 |
| 19,556 | Ditech Holding Corp. (b) | 1,292 |
| 335,000 | Medley Capital | 867,650 |
| | | 1,072,837 |
| **HEALTHCARE - 6.1%** | | |
| 15,200 | Aerie Pharmaceuticals, Inc. (b)(c) | 292,144 |
| 61,625 | Brookdale Senior Living, Inc. (b) | 467,117 |
| 18,900 | Collegium Pharmaceutical, Inc. (b) | 216,972 |
| 232,800 | Heron Therapeutics, Inc. (b)(c) | 4,306,800 |
| 191,000 | Minerva Neurosciences, Inc. (b)(c) | 1,480,250 |
| 345,350 | Patterson | 6,154,137 |
| 75,000 | Portola Pharmaceuticals, Inc. (b)(c) | 2,011,500 |
| 56,000 | Quorum Health Corp. (b) | 67,771 |
| 152,800 | Surgery Partners, Inc. (b)(c) | 1,128,428 |
| 321,300 | TG Therapeutics, Inc. (b)(c) | 1,804,100 |
| 2,800 | Ultragenyx Pharmaceutical, Inc. (b) | 119,784 |
| | | 18,049,003 |
| **INFORMATION TECHNOLOGY - 0.3%** | | |
| 21,300 | CDK Global, Inc. | 1,024,317 |
| **MATERIALS - 1.2%** | | |
| 730,484 | MPM Holdings, Inc. (b) | 3,652,420 |
| **REAL ESTATE - 2.8%** | | |
| 100 | GAF REIT (b)(f) | 1,000 |
| 114,300 | Independence Realty Trust, Inc., REIT | 1,635,633 |
| 101,918 | Jernigan Capital, Inc., REIT (c) | 1,961,922 |
| 25,380 | Macerich Co. (The), REIT (c) | 801,754 |
| 61,912 | NexPoint Residential Trust, REIT (f) | 2,895,005 |
| 44,387 | RAIT Financial Trust, REIT (b) | 2,219 |
| 280,000 | United Development Funding IV, REIT | 1,022,000 |
| | | 8,319,533 |
| | Total U.S. Equity (Cost $101,796,720) | 83,865,218 |

6 | See Glossary on page 11 for abbreviations along with accompanying Notes to Consolidated Financial Statements.

**Table of Contents**

# CONSOLIDATED INVESTMENT PORTFOLIO (continued)

**As of September 30, 2019**                                             **Highland Global Allocation Fund**

| Shares | | Value ($) |
|---|---|---|
| **Non-U.S. Master Limited Partnerships - 20.4%** | | |
| **ENERGY - 20.4%** | | |
| 1,499,100 | Energy Transfer LP (a)(c) | 19,608,228 |
| 333,900 | Enterprise Products Partners LP (a) | 9,542,862 |
| | Highland Energy MLP Fund, | |
| 5,166,913 | Class Y (a)(f) | 14,415,686 |
| 367,600 | MPLX LP (a) | 10,296,476 |
| 10,400 | Shell Midstream Partners LP (a) | 212,680 |
| 255,500 | Western Midstream Partners LP (a)(c) | 6,359,395 |
| | Total Non-U.S. Master Limited Partnerships (Cost $103,188,166) | 60,435,327 |

| Principal Amount ($) | | |
|---|---|---|
| **U.S. Senior Loans (h) - 12.6%** | | |
| **CHEMICALS - 0.4%** | | |
| 1,102,216 | Vertellus Holdings LLC Second Lien Term Loan, 10/31/21 (d)(e) | 1,088,107 |
| **COMMUNICATION SERVICES - 4.8%** | | |
| 14,336,849 | TerreStar Corporation, Term Loan A, 11.000% PIK, 02/27/20 (d)(e)(f) | 14,336,849 |
| **ENERGY - 6.1%** | | |
| 23,743,431 | Fieldwood Energy LLC, Closing Date Loan, 2nd Lien, VAR LIBOR USD 3 Month+7.250%, 04/11/23 | 17,939,468 |
| **RETAIL - 0.5%** | | |
| 1,947,729 | Academy, Ltd., Initial Term Loan, VAR LIBOR USD 3 Month+4.000%, 07/01/22 | 1,370,364 |
| **SERVICE - 0.7%** | | |
| 2,500,000 | Advantage Sales & Marketing Inc., Term Loan, 2nd Lien, VAR LIBOR USD 3 Month+6.500%, 07/25/22 | 2,173,613 |
| **UTILITIES - 0.1%** | | |
| 471,039,553 | Texas Competitive Electric Holdings Co., LLC, Extended Escrow Loan | 259,072 |
| | Total U.S. Senior Loans (Cost $54,330,811) | 37,167,473 |

| **Non-U.S. Government Bond - 8.5%** | | |
|---|---|---|
| **SOVEREIGN - 8.5%** | | |
| 62,500,000 | Argentine Republic Government International Bond 3.75%, 5.25%, 03/31/19, 12/31/38 (a)(i) | 25,078,750 |
| | Total Non-U.S. Government Bond (Cost $30,343,903) | 25,078,750 |

| Shares | | |
|---|---|---|
| **U.S. LLC Interest - 5.1%** | | |
| **REAL ESTATE - 5.1%** | | |
| 6,773,494 | SFR WLIF I, LLC (d)(e)(f) | 6,918,447 |

| Shares | | Value ($) |
|---|---|---|
| **REAL ESTATE (continued)** | | |
| 4,437,497 | SFR WLIF II, LLC (d)(e)(f) | 4,537,341 |
| 3,789,008 | SFR WLIF III, LLC (d)(e)(f) | 3,751,876 |
| | Total U.S. LLC Interest (Cost $15,000,000) | 15,207,664 |

| **U.S. Preferred Stock - 4.0%** | | |
|---|---|---|
| **FINANCIALS - 1.4%** | | |
| 127,751 | Federal Home Loan Mortgage (b)(j) | 2,706,758 |
| 58,233 | Federal National Mortgage Association (b)(j) | 1,328,801 |
| | | 4,035,559 |
| **REAL ESTATE - 2.6%** | | |
| 370,968 | Braemar Hotels & Resorts, Inc., REIT (c) | 7,738,392 |
| | Total U.S. Preferred Stock (Cost $9,275,244) | 11,773,951 |

| Principal Amount ($) | | |
|---|---|---|
| **Non-U.S. Asset-Backed Securities - 3.6%** | | |
| 4,000,000 | Acis CLO, Ltd., Series 2014-3A, Class E VAR LIBOR USD 3 Month+4.750%, 7.00%, 2/1/2026 (a)(k)(l)(n) | 3,000,000 |
| 2,500,000 | Acis CLO, Ltd., Series 2014-4A, Class E VAR LIBOR USD 3 Month+4.800%, 7.05%, 5/1/2026 (a)(k)(l)(n) | 1,875,000 |
| 4,000,000 | Acis CLO, Ltd., Series 2014-4A, Class F VAR LIBOR USD 3 Month+5.150%, 7.40%, 5/1/2026 (a)(k)(l)(n) | 2,400,000 |
| 3,500,000 | Acis CLO, Ltd., Series 2014-5A, Class E1 VAR LIBOR USD 3 Month+6.520%, 8.77%, 11/1/2026 (a)(k)(l)(n) | 2,800,000 |
| 364,434 | Highland Park CDO I, Ltd., Series 2006-1A, Class A2 VAR LIBOR USD 3 Month+0.400%, 3.05%, 11/25/2051 (a)(k)(l) | 363,191 |
| 311,866 | Pamco Cayman, Inc., Series 1997-1A, Class B 7.91%, 8/6/2013 (a)(d)(e)(l) | 136,722 |
| | Total Non-U.S. Asset-Backed Securities (Cost $13,053,775) | 10,574,913 |

| **U.S. Agency Collateralized Mortgage Obligation - 3.4%** | | |
|---|---|---|
| 10,009,764 | FREMF Mortgage Trust, Series 2019-KF60, Class C VAR LIBOR USD 1 Month+6.000%, 8.09%, 2/25/2026 (k)(l)(n) | 9,984,739 |
| | Total U.S. Agency Collateralized Mortgage Obligation (Cost $9,994,460) | 9,984,739 |

| **Non-U.S. Corporate Bonds & Notes - 2.6%** | | |
|---|---|---|
| **COMMUNICATION SERVICES - 0.3%** | | |
| | iHeartCommunications, Inc. | |
| 315,654 | 6.38%, 05/01/26 (a) | 342,485 |
| 584,493 | 8.38%, 05/01/27 (a) | 634,350 |
| | | 976,835 |

See Glossary on page 11 for abbreviations along with accompanying Notes to Consolidated Financial Statements.   |   7

Table of Contents

## CONSOLIDATED INVESTMENT PORTFOLIO (continued)

**As of September 30, 2019**                    **Highland Global Allocation Fund**

| Principal Amount ($) | | Value ($) |
|---|---|---|
| **Non-U.S. Corporate Bonds & Notes (continued)** | | |
| **ENERGY 0.9%** | | |
| | Ocean Rig UDW, Inc. | |
| 37,083,000 | 7.25%, 04/01/19 (a)(d)(e)(l)(m) | 2,558,727 |
| | Sable Permian Resources Land | |
| 290 | 7.38%, 11/01/21 (a)(l) | 45 |
| | | 2,558,772 |
| **UTILITIES - 1.4%** | | |
| | Pacific Gas & Electric | |
| 1,094,000 | 6.05%, 03/01/34 (a)(m) | 1,247,160 |
| 1,219,000 | 6.25%, 03/01/39 (a)(m) | 1,414,040 |
| 1,219,000 | 6.35%, 02/15/38 (a)(m) | 1,426,230 |
| | | 4,087,430 |
| | Total Non-U.S. Corporate Bonds & Notes (Cost $36,256,725) | 7,623,037 |
| **Non-U.S. Purchased Options (a)(b) - 2.6%** | | |
| | Total Non-U.S. Purchased Options (Cost $8,810,813) | 7,643,639 |

| Units | | |
|---|---|---|
| **U.S. Rights (b) - 2.4%** | | |
| **UTILITIES - 2.4%** | | |
| | Texas Competitive Electric Holdings Co., LLC | |
| 7,905,143 | | 6,996,052 |
| | Total U.S. Rights (Cost $22,062,762) | 6,996,052 |

| Principal Amount ($) | | |
|---|---|---|
| **Non-U.S. Senior Loan (h) - 0.4%** | | |
| **COMMUNICATION SERVICES - 0.4%** | | |
| | iHeartCommunications Inc., Initial Term Loan, 1st Lien, 05/01/26 (a) (m) | |
| 1,112,381 | | 1,120,913 |
| | Total Non-U.S. Senior Loan (Cost $4,247,058) | 1,120,913 |
| **U.S. Corporate Bonds & Notes - 0.4%** | | |
| **INFORMATION TECHNOLOGY - 0.0%** | | |
| | Avaya, Inc. | |
| 9,500,000 | 10.50%, 03/01/21 (d)(e)(m) | — |
| **REAL ESTATE - 0.1%** | | |
| | CBL & Associates | |
| 400,000 | 5.95%, 12/15/26 | 283,000 |
| **UTILITIES - 0.3%** | | |
| | Texas Competitive Electric Holdings Co., LLC (m) | |
| 151,234,000 | | 763,732 |
| | Texas Competitive Electric Holdings Co., LLC (m) | |
| 9,346,000 | | 47,197 |
| | Texas Competitive Electric Holdings Co., LLC (m) | |
| 3,000,000 | | 13,500 |
| | | 824,429 |
| | Total U.S. Corporate Bonds & Notes (Cost $2,029,710) | 1,107,429 |

| Units | | Value ($) |
|---|---|---|
| **U.S. Warrants (b) - 0.1%** | | |
| **FINANCIALS - 0.0%** | | |
| 59,755 | Ditech Holding Corp., Expires 02/09/2028 | 314 |
| **HEALTHCARE - 0.1%** | | |
| | HLS Therapeutics, Inc., | |
| 42,032 | Expires 12/31/2049 (d)(e) | 187,883 |
| | Total U.S. Warrants (Cost $–) | 188,197 |
| **Non-U.S. Warrants (b) - 0.1%** | | |
| **COMMUNICATION SERVICES - 0.0%** | | |
| | iHeartCommunications, Inc., Expires | |
| 1,109 | 05/01/2039(a) | 16,185 |
| **INDUSTRIALS - 0.1%** | | |
| 1,260,362 | American Airlines (a) | 289,883 |
| **INFORMATION TECHNOLOGY - 0.0%** | | |
| 38,742 | Avaya Holdings, Expires 12/18/2022(a) | 40,679 |
| | Total Non-U.S. Warrants (Cost $77,464) | 346,747 |

| Shares | | |
|---|---|---|
| **Non-U.S. Registered Investment Companies - 7.3%** | | |
| | BB Votorantim Highland Infrastructure LLC (a)(d)(e)(f) | |
| 10,000 | | 3,483,081 |
| | Highland Merger Arbitrage Fund, Class Z (a)(f) | |
| 544,599 | | 10,445,409 |
| | NexPoint Strategic Opportunities Fund (a) (f) | |
| 436,131 | | 7,819,829 |
| | Total Non-U.S. Registered Investment Companies (Cost $24,669,806) | 21,748,319 |
| **U.S. Cash Equivalent - 0.1%** | | |
| **MONEY MARKET FUND(o) - 0.1%** | | |
| | Dreyfus Treasury & Agency Cash Management, Institutional Class 1.810% | |
| 207,028 | | 207,028 |
| | Total U.S. Cash Equivalent (Cost $207,028) | 207,028 |
| | **Total Investments - 160.2%** | **474,427,457** |
| | (Cost $670,379,041) | |
| **Securities Sold Short(p) - (25.4)%** | | |
| **U.S. Exchange-Traded Fund - (0.5)%** | | |
| (25,500) | Direxion Daily Small Capital Bull 3X Shares | (1,419,585) |
| | Total U.S. Exchange-Traded Fund (Proceeds $1,510,274) | (1,419,585) |
| **U.S. Equity - (18.5)%** | | |
| **COMMUNICATION SERVICES - (6.3)%** | | |
| (69,650) | Netflix, Inc. (q) | (18,639,733) |

8 | See Glossary on page 11 for abbreviations along with accompanying Notes to Consolidated Financial Statements.

[Table of Contents](#)

# CONSOLIDATED INVESTMENT PORTFOLIO (continued)

As of September 30, 2019                                          **Highland Global Allocation Fund**

| Shares | | Value ($) |
|---|---|---|
| **U.S. Equity (continued)** | | |
| **CONSUMER DISCRETIONARY - (0.5)%** | | |
| (43,600) | Harley-Davidson | (1,568,292) |
| **HEALTHCARE - (11.7)%** | | |
| (490,150) | Boston Scientific Corp. (q) | (19,944,204) |
| (68,500) | Stryker Corp. | (14,816,550) |
| | | (34,760,754) |
| | Total U.S. Equity | |
| | (Proceeds $22,733,608) | (54,968,779) |
| **Non-U.S. Equity - (6.4)%** | | |
| **COMMUNICATION SERVICES - (1.3)%** | | |
| (80,000) | Nintendo Co, Ltd. ADR (a) | (3,728,000) |
| **ENERGY - (1.4)%** | | |
| (66,250) | Cheniere Energy, Inc. (a)(q) | (4,177,725) |
| **HEALTHCARE - (3.7)%** | | |
| (80,000) | Zimmer Holdings, Inc. (a) | (10,981,600) |
| | Total Non-U.S. Equity | |
| | (Proceeds $12,275,211) | (18,887,325) |
| | Total Securities Sold Short- (25.4)% | |
| | (Proceeds $36,519,093) | (75,275,689) |
| **Other Assets & Liabilities, Net - (34.8)%** | | **(102,987,583)** |
| **Net Assets - 100.0%** | | **296,164,185** |

(a) As described in the Fund's prospectus, a company is considered to be a non-U.S. issuer if the company's securities principally trade on a market outside of the United States, the company derives a majority of its revenues or profits outside of the United States, the company is not organized in the United States, or the company is significantly exposed to the economic fortunes and risks of regions outside the United States.

(b) Non-income producing security.

(c) All or part of this security is pledged as collateral for short sales. The market value of the securities pledged as collateral was $110,028,333.

(d) Securities with a total aggregate value of $84,865,608, or 28.7% of net assets, were classified as Level 3 within the three-tier fair value hierarchy. Please see Notes to Consolidated Financial Statements for an explanation of this hierarchy, as well as a list of unobservable inputs used in the valuation of these instruments.

(e) Represents fair value as determined by the Fund's Board of Trustees (the "Board"), or its designee in good faith, pursuant to the policies and procedures approved by the Board. The Board considers fair valued securities to be securities for which market quotations are not readily available and these securities may be valued using a combination of observable and unobservable inputs. Securities with a total aggregate value of $84,865,608, or 28.7% of net assets, were fair valued under the Fund's valuation procedures as of September 30, 2019. Please see Notes to Consolidated Financial Statements.

(f) Affiliated issuer. Assets with a total aggregate market value of $115,739,227, or 39.1% of net assets, were affiliated with the Fund as of September 30, 2019.

(g) Restricted Securities. These securities are not registered and may not be sold to the public. There are legal and/or contractual restrictions on resale. The Fund does not have the right to demand that such securities be registered. The values of these securities are determined by valuations provided by pricing services, brokers, dealers, market makers, or in good faith under the procedures established by the Fund's Board of Trustees. Additional Information regarding such securities follows:

| Restricted Security | Security Type | Acquisition Date | Cost of Security | Market Value at Year End | Percent of Net Assets |
|---|---|---|---|---|---|
| TerreStar Corporation | U.S. Equity | 11/14/2014 | $ 48,015,562 | $ 47,134,704 | 15.9% |

(h) Senior loans (also called bank loans, leveraged loans, or floating rate loans) in which the Fund invests generally pay interest at rates which are periodically determined by reference to a base lending rate plus a spread (unless otherwise identified, all senior loans carry a variable rate of interest). These base lending rates are generally (i) the Prime Rate offered by one or more major United States banks, (ii) the lending rate offered by one or more European banks such as the London Interbank Offered Rate ("LIBOR") or (iii) the Certificate of Deposit rate. As of September 30, 2019, the LIBOR USD 1 Month and LIBOR USD 3 Month rates were 2.02% and 2.09%, respectively. Senior loans, while exempt from registration under the Securities Act of 1933, as amended (the "1933 Act"), contain certain restrictions on resale and cannot be sold publicly. Senior secured floating rate loans often require prepayments from excess cash flow or permit the borrower to repay at its election. The degree to which borrowers repay, whether as a contractual requirement or at their election, cannot be predicted with accuracy. As a result, the actual remaining maturity maybe substantially less than the stated maturity shown.

(i) Step Bonds - Represents the current rate, the step rate, the step date and the final maturity date.

(j) Perpetual security with no stated maturity date.

(k) Variable or floating rate security. The base lending rates are generally the lending rate offered by one or more European banks such as the LIBOR. The interest rate shown reflects the rate in effect September 30, 2019. LIBOR, otherwise known as London Interbank Offered Rate, is the benchmark interest rate that banks charge each other for short-term loans. Current LIBOR rates include 1 month which is equal to 2.02% and 3 months equal to 2.09%.

(l) Securities exempt from registration under Rule 144A of the 1933 Act. These securities may only be resold in transaction exempt from registration to qualified institutional buyers. At September 30, 2019, these securities amounted to $23,118,424 or 7.8% of net assets.

(m) The issuer is, or is in danger of being, in default of its payment obligation.

(n) As of September 30, 2019, investments with a total aggregate value of $14,863,659 were fully or partially segregated with broker(s)/ custodian as collateral for reverse repurchase agreements.

(o) Rate shown is 7 day effective yield.

(p) As of September 30, 2019, $14,732,705 in cash was segregated or on deposit with the brokers to cover investments sold short and is included in "Other Assets & Liabilities, Net".

(q) No dividend payable on security sold short.

See Glossary on page 11 for abbreviations along with accompanying Notes to Consolidated Financial Statements. | 9

**Table of Contents**

# CONSOLIDATED INVESTMENT PORTFOLIO (concluded)

**As of September 30, 2019**                                                    **Highland Global Allocation Fund**

Purchased options contracts outstanding as of September 30, 2019 were as follows:

| Description | Exercise price | Counterparty | Expiration Date | Number of Contracts | Notional Value | Premium $ | Value $ |
|---|---|---|---|---|---|---|---|
| **PURCHASED CALL OPTIONS:** | | | | | | | |
| October 2019 Call on C$ | $ 75.75 | Societe Generale | October 19, 2019 | 1,000 | 75,630,000 | 280,650 | 120,000 |
| October 2019 Call on VIX | $ 22.00 | Jefferies | October 19, 2019 | 10,000 | 16,240,000 | 892,881 | 700,000 |
| October 2019 Call on VIX | $ 19.00 | Jefferies | October 19, 2019 | 10,000 | 16,240,000 | 1,642,881 | 1,070,000 |
| November 2019 Call on VIX | $ 18.00 | Jefferies | November 16, 2019 | 10,000 | 16,240,000 | 2,727,881 | 2,500,000 |
| December 2019 Call on Gold | $ 141.00 | Jefferies | December 31, 2019 | 10,000 | 138,880,000 | 3,266,520 | 3,253,639 |
| | | | | | | 8,810,813 | 7,643,639 |

Written options contracts outstanding as of September 30, 2019 were as follows:

| Description | Exercise price | Counterparty | Expiration Date | Number of Contracts | Notional Value | Premium $ | Value $ |
|---|---|---|---|---|---|---|---|
| **WRITTEN CALL OPTIONS:** | | | | | | | |
| October 2019 Call on VIX | $ 23.00 | Jefferies | October 19, 2019 | (10,000) | 16,240,000 | (747,119) | (520,000) |
| November 2019 Call on VIX | $ 28.00 | Jefferies | November 16, 2019 | (10,000) | 16,240,000 | (832,369) | (790,000) |
| December 2019 Call on Gold | $ 151.00 | Jefferies | December 31, 2019 | (10,000) | 138,880,000 | (1,146,557) | (1,159,462) |
| | | | | | | (2,726,045) | (2,469,462) |

The Fund had the following futures contracts open at September 30, 2019:

| Description | Expiration Date | Number of Contracts | Notional Value $ | Unrealized Appreciation $ | Value $ |
|---|---|---|---|---|---|
| **Short Futures:** | | | | | |
| S&P 500 Index E-MINI | December 23, 2019 | (420) | (63,181,396) | 632,896 | 632,896 |

The average amount of borrowing by the Fund on reverse repurchase agreements outstanding during the year ended September 30, 2019 was $6,610,143 at a weighted average interest rate of 3.52%.

| Counterparty | Collateral Pledged | Interest Rate | Trade Date | Maturity Date | Repurchase Amount $ | Principal Amount $ | Value $ |
|---|---|---|---|---|---|---|---|
| Mizuho | Acis CLO, Ltd., Series 2014-3A, Class E, VAR LIBOR USD 3 Month+4.750%, 7.00%, 2/1/2026 | 3.34 | 9/16/2019 | 10/17/2019 | 2,274,523 | 4,000,000 | 2,268,000 |
| Mizuho | Acis CLO, Ltd., Series 2014-4A, Class E, VAR LIBOR USD 3 Month+4.800%, 7.05%, 5/1/2026 | 3.34 | 9/16/2019 | 10/17/2019 | 1,386,476 | 2,500,000 | 1,382,500 |
| Mizuho | Acis CLO, Ltd., Series 2014-4A, Class F, VAR LIBOR USD 3 Month+5.150%, 7.40%, 5/1/2026 | 3.44 | 9/16/2019 | 10/17/2019 | 1,588,692 | 4,000,000 | 1,584,000 |
| Mizuho | Acis CLO, Ltd., Series 2014-5A, Class E1, VAR LIBOR USD 3 Month+6.520%, 8.77%, 11/1/2026 | 3.34 | 9/16/2019 | 10/17/2019 | 2,137,630 | 3,500,000 | 2,131,500 |
| Mizuho | FREMF Mortgage Trust, Series 2019-KF60, Class C, VAR LIBOR USD 1 Month+6.000%, 8.09%, 2/25/2026 | 3.64 | 7/10/2019 | 10/10/2019 | 7,567,404 | 10,000,000 | 7,497,659 |
| **Total Reverse Repurchase Agreements** | | | | | | 24,000,000 | 14,863,659 |

10 | See Glossary on page 11 for abbreviations along with accompanying Notes to Consolidated Financial Statements.

Table of Contents

## GLOSSARY: (abbreviations that may be used in the preceding statements)

Other Abbreviations:

| | |
|---|---|
| ADR | American Depositary Receipt |
| CDO | Collateralized Debt Obligation |
| CLO | Collateralized Loan Obligation |
| FREMF | Freddie Mac Multi-Family |
| MLP | Master Limited Partnership |
| LIBOR | London Interbank Offered Rate |
| LLC | Limited Liability Company |
| LP | Limited Partnership |
| Ltd. | Limited |
| PIK | Payment-in-Kind |
| REIT | Real Estate Investment Trust |
| USD | United States Dollar |
| VAR | Variable Rate |
| VIX | Chicago Board Options Exchange Volatility Index |

Annual Report │ 11

Table of Contents

# CONSOLIDATED STATEMENT OF ASSETS AND LIABILITIES

| As of September 30, 2019 | Highland Global Allocation Fund |
|---|---|
| | ($) |
| **Assets** | |
| Investments, at value | 358,481,202 |
| Affiliated investments, at value (Note 10) | 115,739,227 |
| Total Investments, at value | 474,220,429 |
| Cash equivalents (Note 2) | 207,028 |
| Cash | 819,346 |
| Restricted Cash — Securities Sold Short and Written Options (Notes 2 and 3) | 14,732,705 |
| Restricted Cash — Futures (Note 3) | 2,902,800 |
| Foreign currency | 2,139 |
| Foreign tax reclaim receivable | 133,553 |
| Receivable for: | |
|   Investment sold | 2,378,307 |
|   Dividends and interest | 2,952,428 |
|   Fund shares sold | 296,768 |
|   Variation Margin | 341,985 |
|   Due from broker | 325,226 |
| Prepaid expenses and other assets | 21,966 |
|     Total assets | 499,334,680 |
| **Liabilities:** | |
| Notes payable (Note 6). | 105,431,689 |
| Securities sold short, at value (Notes 2 and 8) | 75,275,689 |
| Reverse repurchase agreements | 14,863,659 |
| Written options contracts, at value (Note 3) | 2,469,462 |
| Payable for: | |
|   Investments purchased | 3,266,520 |
|   Investment advisory and administration fees (Note 7) | 103,547 |
|   Dividends on securities sold short | 10,082 |
|   Accounting services fees | 129,968 |
|   Conversion costs (Note 2) | 574,324 |
|   Custody fees | 51,818 |
|   Trustees fees | 25,142 |
|   Interest expense and commitment fee payable (Note 6) | 343,632 |
|   Transfer agent fees | 9,657 |
|   Reports to shareholders | 106,940 |
|   Legal fees | 100,000 |
|   Audit fees | 320,000 |
|   Accrued expenses and other liabilities | 88,366 |
|     Total liabilities | 203,170,495 |
| **Commitments and Contingencies (Note 6)** | |
| **Net Assets** | **296,164,185** |
| **Net Assets Consist of:** | |
| Paid-in capital | 766,449,528 |
| Total distributable loss | (470,285,343) |
| **Net Assets** | **296,164,185** |
| Investments, at cost | 523,983,584 |
| Affiliated investments, at cost (Note 10) | 146,188,429 |
| Cash equivalents, at cost (Note 2) | 207,028 |
| Foreign currency, at cost | 3,595 |
| Proceeds from securities sold short | 36,519,093 |
| Written option premiums received | 2,726,045 |
| **Common Shares** | |
| Shares outstanding ($0.001 par value; unlimited shares authorized) | 22,631,046 |

Net asset value, offering and redemption price per share          13.09

12 │  See accompanying Notes to Consolidated Financial Statements.

Table of Contents

# CONSOLIDATED STATEMENT OF OPERATIONS

**For the Year Ended September 30, 2019**                                        **Highland Global Allocation Fund**

|  | ($) |
|---|---|
| **Investment Income:** | |
| **Income:** | |
| Dividends from unaffiliated issuers | 8,267,340 |
| Dividends from affiliated issuers (Note 10) | 4,025,617 |
| Less: Foreign taxes withheld | (15,565) |
| Interest from unaffiliated issuers | 7,827,423 |
| Interest paid in-kind from affiliated issuers (Note 10) | 1,983,791 |
| Total income | 22,088,606 |
| | |
| **Expenses:** | |
| Investment advisory (Note 7) | 1,808,028 |
| Accounting services fees | 258,240 |
| Distribution and shareholder service fees: (Note 7) | |
| Class A | 167,920 |
| Class C | 305,447 |
| Transfer agent fees | 310,688 |
| Legal fees | 874,799 |
| Registration fees | 40,057 |
| Audit fees | 457,759 |
| Interest expense and commitment fees (Note 6) | 5,463,717 |
| Insurance | 51,655 |
| Trustees fees (Note 7) | 95,648 |
| Reports to shareholders | 181,140 |
| Custodian/wire agent fees | 244,583 |
| Dividends and fees on securities sold short (Note 2) | 376,155 |
| Conversion costs (Note 2) | 440,999 |
| Other | 265,883 |
| Total operating expenses before waiver and reimbursement | 11,342,718 |
| Less: Expenses waived or borne by the adviser and administrator | (417,999) |
| Net operating expenses | 10,924,719 |
| Net investment income | 11,163,887 |
| | |
| **Net Realized and Unrealized Gain (Loss) on Investments** | |
| **Net realized gain (loss) on:** | |
| Investments from unaffiliated issuers | (13,131,432) |
| Investments from affiliated issuers (Note 10) | 4,476,582 |
| Securities sold short (Note 2) | (9,814,480) |
| Written options contracts (Note 3) | 2,278,943 |
| Futures contracts (Note 3) | (3,218,996) |
| Foreign currency related transactions | (1,950,855) |
| | |
| **Change in unrealized appreciation (depreciation) on:** | |
| Investments in unaffiliated issuers | (33,207,031) |
| Investments in affiliated issuers (Note 10) | 7,664,907 |
| Securities sold short (Note 2) | 17,323,186 |
| Written options contracts (Note 3) | 256,583 |
| Futures contracts (Note 3) | 632,896 |
| Foreign currency related translations | (20,885) |
| Net realized and unrealized gain (loss) on investments | (28,710,582) |
| Total decrease in net assets resulting from operations | (17,546,695) |

See accompanying Notes to Consolidated Financial Statements.  │  13

Table of Contents

## CONSOLIDATED STATEMENTS OF CHANGES IN NET ASSETS

| | Highland Global Allocation Fund | |
| --- | --- | --- |
| | Year Ended September 30, 2019 ($) | Year Ended September 30, 2018 ($) |
| **Increase (Decrease) in Net Assets** | | |
| **Operations:** | | |
| Net investment income | 11,163,887 | 17,536,785 |
| Net realized (loss) on investments, securities sold short, written options, futures contracts and foreign currency transactions | (21,360,238) | (102,577,315) |
| Net increase (decrease) in unrealized appreciation (depreciation) on investments, securities sold short, written options and foreign currency transactions | (7,350,344) | 117,503,929 |
| Net increase (decrease) from operations | (17,546,695) | 32,463,399 |
| **Distributions** | | |
| Class A | — | (7,316,208) |
| Class C | — | (3,731,739) |
| Class Y | — | (5,219,394) |
| Shares of closed-end fund | (4,579,807) | — |
| Return of capital: | | |
| Class A | — | (3,365,442) |
| Class C | — | (1,716,593) |
| Class Y | — | (2,400,911) |
| Shares of closed-end fund | (12,388,348) | — |
| **Total distributions** | (16,968,155) | (23,750,287) |
| Increase (decrease) in net assets from operations and distributions | (34,514,850) | 8,713,112 |
| **Share transactions:** | | |
| Proceeds from sale of shares | | |
| Class A | 946,370 | 11,238,288 |
| Class C | 234,777 | 12,139,685 |
| Class Y | 4,996,134 | 56,903,923 |
| Value of distributions reinvested | | |
| Class A | — | 9,920,585 |
| Class C | — | 4,222,201 |
| Class Y | — | 6,119,220 |
| Shares of closed-end fund | 2,237,339 | — |
| Cost of shares redeemed | | |
| Class A | (23,498,679) | (90,127,788) |
| Class C | (16,412,456) | (80,655,298) |
| Class Y | (37,255,360) | (193,998,230) |
| Shares repurchased of closed-end fund (Note 1) | (12,190,006) | — |
| Reduction to redemptions (Note 7) | 2,055,239 | — |
| Net decrease from shares transactions | (78,886,642) | (264,237,414) |
| **Total decrease in net assets** | (113,401,492) | (255,524,302) |
| **Net Assets** | | |
| Beginning of year | 409,565,677 | 665,089,979 |
| End of year | 296,164,185 | 409,565,677 |

14 | See accompanying Notes to Consolidated Financial Statements.

Table of Contents

## CONSOLIDATED STATEMENTS OF CHANGES IN NET ASSETS (continued)

|  | **Highland Global Allocation Fund** | |
| --- | --- | --- |
|  | Year Ended<br>September 30, 2019 | Year Ended<br>September 30, 2018 |
| **CAPITAL STOCK ACTIVITY - SHARES\*** | | |
| **Class A:** | | |
| Shares sold | 111,890 | 1,295,700 |
| Issued for distribution reinvested | — | 1,188,136 |
| Shares redeemed | (2,775,549) | (10,712,388) |
| Shares converted in conversion (Note 1) | (11,645,203) | — |
| Net decrease in fund shares | (14,308,862) | (8,228,552) |
| **Class C:** | | |
| Shares sold | 31,829 | 1,590,900 |
| Issued for distribution reinvested | — | 581,387 |
| Shares redeemed | (2,232,995) | (11,034,420) |
| Shares converted in conversion (Note 1) | (5,075,831) | — |
| Net decrease in fund shares | (7,276,997) | (8,862,133) |
| **Class Y:** | | |
| Shares sold | 485,184 | 5,462,086 |
| Issued for distribution reinvested | — | 609,362 |
| Shares redeemed | (3,617,459) | (19,167,635) |
| Shares converted in conversion (Note 1) | (6,568,222) | — |
| Net decrease in fund shares | (9,700,497) | (13,096,187) |
| **Shares of closed-end fund:** | | |
| Issued for distribution reinvested | 199,465 | — |
| Shares redeemed | (857,675) | — |
| Shares converted in conversion (Note 1) | 23,289,256 | — |
| Net increase in fund shares | 22,631,046 | — |

\*    Capital stock activity prior to February 15, 2019 has been adjusted to give effect to an approximately 1 to 1.4217 reverse stock split as part of the conversion to a closed-end fund (Note 1). Distribution activity related to the A, C and Y share classes relates to the period from October 1, 2018 through February 15, 2019.

See accompanying Notes to Consolidated Financial Statements. | 15

Table of Contents

# CONSOLIDATED STATEMENT OF CASH FLOWS

| Year Ended September 30, 2019 | Highland Global Allocation Fund |
|---|---:|
| | **($)** |
| **Cash Flows Provided by Operating Activities:** | |
| Net decrease in net assets derived from investment operations | (17,546,695) |
| **Adjustments to Reconcile Net Decrease in Net Assets to Net Cash Provided by Operating Activities:** | |
| Purchases of investment securities from unaffiliated issuers | (119,807,756) |
| Purchases of investment securities from affiliated issuers | (23,700,994) |
| Proceeds from disposition of investment securities from unaffiliated issuers | 128,966,230 |
| Proceeds from disposition of investment securities from affiliated issuers | 81,249,336 |
| Proceeds from sale of short-term portfolio investments, net | 10,873,260 |
| Purchases of securities sold short | (29,096,059) |
| Proceeds from securities sold short | 7,485,204 |
| Net proceeds received on written options contracts | 5,004,988 |
| Amortization of premiums | 112,537 |
| Net realized loss on investments from unaffiliated issuers | 13,131,432 |
| Net realized gain on investments from affiliated issuers | (4,476,582) |
| Net realized loss on securities sold short, written options contracts and foreign currency transactions | 9,486,392 |
| Net change in unrealized appreciation/(depreciation) on investments, affiliated investments, securities sold short, swap contracts, written options contracts and translation on assets and liabilities denominated in foreign currency | 7,983,240 |
| Increase in receivable for investments sold | (296,137) |
| Increase in receivable for dividends and interest | (310,038) |
| Increase in due from broker | (719) |
| Increase in receivable for variation margin | (341,985) |
| Increase in foreign tax reclaim receivable | (133,553) |
| Decrease in prepaid expenses and other assets | 5,608,359 |
| Decrease in due to custodian | (396,467) |
| Decrease in payable upon receipt of securities on loan | (155,000) |
| Increase in payable for investments purchased | 2,546,987 |
| Decrease in payables to related parties | (251,800) |
| Decrease in payable for transfer agent fees | (68,020) |
| Decrease in accrued dividends on short sales | (117,366) |
| Increase in payable for commitment fees | 343,632 |
| Increase in payable for custody fees | 51,775 |
| Decrease in payable for conversion costs | (934,084) |
| Decrease in accrued expenses and other liabilities | (864,666) |
| Net cash flow provided by operating activities | 74,345,451 |
| **Cash Flows Received Used in Financing Activities:** | |
| Decrease in notes payable | (33,293,750) |
| Reverse repurchase agreements | 14,863,659 |
| Distributions paid in cash | (14,730,816) |
| Payments on shares redeemed | (89,079,890) |
| Proceeds from shares sold | 6,154,487 |
| Net cash flow used in financing activities | (116,086,310) |
| Effect of exchange rate changes on cash | (1,971,740) |
| Net decrease in cash | (43,712,599) |
| **Cash, Restricted Cash, and Foreign Currency:** | |
| Beginning of year | 62,169,589 |
| End of year | 18,456,990 |
| **Supplemental Disclosure of Cash Flow Information:** | |
| Reinvestment of distributions | 2,237,339 |
| Cash paid during the year for interest expense and commitment fees | 5,463,717 |
| Paid in-kind interest income | 1,983,791 |

16 │ See accompanying Notes to Consolidated Financial Statements.

Table of Contents

# CONSOLIDATED FINANCIAL HIGHLIGHTS

**Highland Global Allocation Fund**

**Selected data for a share outstanding throughout each period is as follows:**

| | For the Years Ended September 30, | | | | |
|---|---|---|---|---|---|
| | 2019*‡ | 2018*‡ | 2017*‡ | 2016*‡ | 2015*‡ |
| **Net Asset Value, Beginning of Year** | $ 14.63 | $ 14.16 | $ 14.12 | $ 13.86 | $ 17.36 |
| **Income from Investment Operations:** | | | | | |
| Net investment income[a] | 0.30 | 0.54 | 1.11 | 1.22 | 0.55 |
| Net realized and unrealized gain (loss) | (1.10) | 0.56 | (0.12) | 0.03 | (2.87) |
| Total from Investment Operations | (0.80) | 1.10 | 0.99 | 1.25 | (2.32) |
| **Less Distributions Declared to shareholders:** | | | | | |
| From net investment income | (0.20) | (0.43) | (0.92) | (0.94) | (0.65) |
| From net realized gains | — | — | — | — | (0.53) |
| From return of capital | (0.54) | (0.20) | (0.03) | (0.05) | — |
| Total distributions declared to shareholders | (0.74) | (0.63) | (0.95) | (0.99) | (1.18) |
| **Net Asset Value, End of Year[b]** | $ 13.09 | $ 14.63 | $ 14.16 | $ 14.12 | $ 13.86 |
| Total Return[b][c] | (4.40)% | 7.95% | 7.01% | 9.91% | (14.41)% |
| **Ratios to Average Net Assets:[d]** | | | | | |
| Net Assets, End of Year (000's) | $296,164 | $128,353 | $254,539 | $367,251 | $775,238 |
| Gross operating expenses[e][f] | 2.54% | 2.38% | 1.20% | 1.11% | 0.69% |
| Net investment income | 2.11% | 3.73% | 7.59% | 9.24% | 3.16% |
| Portfolio turnover rate | 28% | 51% | 66% | 100% | 108% |

‡    Reflects the financial highlights of Class Y of the open-end fund prior to the conversion.
*    Per share data prior to February 15, 2019 has been adjusted to give effect to an approximately 1 to 1.4217 reverse stock split as part of the conversion to a closed-end fund. (Note 1)
(a)    Per share data was calculated using average shares outstanding during the period.
(b)    The Net Asset Value per share and total return have been calculated based on net assets which include adjustments made in accordance with U.S. Generally Accepted Accounting Principles required at period end for financial reporting purposes. These figures do not necessarily reflect the Net Asset Value per share or total return experienced by the shareholder at period end
(c)    Total return is based on market value per share for periods after February 15, 2019. Distributions are assumed for purposes of this calculation to be reinvested at prices obtained under the Fund's Dividend Reinvestment Plan. Prior to February 15, 2019, total return is at net asset value assuming all distributions are reinvested. For periods with waivers/reimbursements, had the Fund's investment adviser not waived or reimbursed a portion of expenses, total return would have been lower.
(d)    All ratios for the period have been annualized, unless otherwise indicated.
(e)    Supplemental expense ratios are shown below:
(f)    Includes dividends and fees on securities sold short.

| | For the Years Ended September 30, | | | | |
|---|---|---|---|---|---|
| | 2019 | 2018 | 2017 | 2016 | 2015 |
| Net operating expenses (net of waiver/reimbursement, if applicable, but gross of all other operating expenses) | 2.45% | 2.38% | 1.19% | 1.05% | 0.69% |
| Interest expense and commitment fees | 1.60% | 1.02% | 0.37% | 0.11% | 0.01% |
| Dividends and fees on securities sold short | 0.11% | 0.16% | 0.05% | 0.17% | 0.03% |

See accompanying Notes to Consolidated Financial Statements. │  17

Table of Contents

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

September 30, 2019                                            **Highland Global Allocation Fund**

### Note 1. Organization

Highland Global Allocation Fund (the "Fund") is organized as an unincorporated business trust under the laws of The Commonwealth of Massachusetts. The Fund is registered under the Investment Company Act of 1940, as amended (the "1940 Act"), as a diversified, closed-end management investment company. This report covers information for the year ended September 30, 2019.

On November 8, 2018, shareholders of the Fund approved a proposal authorizing the Board of Trustees (the "Board") of the Fund to convert the fund from an open-end fund to a closed-end fund at a special meeting of shareholders. The Board took action to convert the Fund to a closed-end fund effective shortly after 4:00 p.m. Eastern Time on February 14, 2019 (the "Conversion Date"). The Fund also effected an approximately 1-for-1.4217 reverse stock split of the Fund's issued and outstanding shares on February 14, 2019, thereby reducing the number of shares outstanding. Shareholders were paid cash for any fractional shares resulting from the reverse stock split. The Fund began listing its shares for trading on the New York Stock Exchange (the "NYSE") on February 19, 2019 under the ticker symbol "HGLB". The Fund may issue an unlimited number of common shares, par value $0.001 per share ("Common Shares"). Prior to the Conversion Date, the Fund issued Class A, Class C, and Class Y shares. The Fund incurred $1,949,407 in Conversion costs related to the fund conversion to a closed-end fund.

On August 3, 2018, the Board of the Fund authorized the repurchase of up to the lesser of $20 million or 5% of the Fund's shares over a six-month period following conversion of the Fund from an open-end Fund to a closed-end fund. The Fund converted into a closed-end fund on February 13, 2019. Under this program, the Fund repurchased 853,870 shares through July, 2019, at an average price of $11.72, for a total investment of $10.0 million.

On August 20, 2019, the Board of the Fund approved an extension of the repurchase program for a period of six months up to an additional $20 million of the Fund's shares.

### Note 2. Significant Accounting Policies

The following summarizes the significant accounting policies consistently followed by the Fund in the preparation of its consolidated financial statements.

### Use of Estimates

The Fund is an investment company that applies the accounting and reporting guidance of Accounting Standards Codification Topic 946 applicable to investment companies. The Fund's consolidated financial statements have been prepared in conformity with accounting principles generally accepted in the United States of America ("GAAP"), which require Highland Capital Management Fund Advisors, L.P.

("HCMFA" or the "Investment Adviser") to make estimates and assumptions that affect the reported amounts of assets and liabilities, the disclosure of contingent assets and liabilities at the date of the consolidated financial statements and the reported amounts of revenue and expenses during the reporting period. Changes in the economic environment, financial markets and any other parameters used in determining these estimates could cause actual results to differ materially.

### Basis of Consolidation

The Fund consolidates Highland GAF Chemical Holdings, LLC ("GAF Chemical Holdings"), a Delaware wholly owned subsidiary, for financial reporting. GAF Chemical Holdings is used for commodity investment trading and its investments are included within the consolidated financial statements of the Fund. All inter-company accounts and transactions have been eliminated in the consolidation.

### Valuation of Investments

In computing the Fund's net assets attributable to shares, securities with readily available market quotations on the New York Stock Exchange (NYSE), National Association of Securities Dealers Automated Quotation ("NASDAQ") or other nationally recognized exchange, use the closing quotations on the respective exchange for valuation of those securities. Securities for which there are no readily available market quotations will be valued pursuant to policies adopted by the Fund's Board of Trustees (the "Board"). Typically, such securities will be valued at the mean between the most recently quoted bid and ask prices provided by the principal market makers. If there is more than one such principal market maker, the value shall be the average of such means. Securities without a sale price or quotations from principal market makers on the valuation day may be priced by an independent pricing service. Generally, the Fund's loan and bond positions are not traded on exchanges and consequently are valued based on a mean of the bid and ask price from the third-party pricing services or broker-dealer sources that the Investment Adviser has determined to have the capability to provide appropriate pricing services which have been approved by the Board.

Securities for which market quotations are not readily available, or for which the Fund has determined that the price received from a pricing service or broker-dealer is "stale" or otherwise does not represent fair value (such as when events materially affecting the value of securities occur between the time when market price is determined and calculation of the Fund's net asset value ("NAV"), will be valued by the Fund at fair value, as determined by the Board or its designee in good faith in accordance with procedures approved by the Board, taking into account factors reasonably determined to be relevant,

Table of Contents

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (continued)

**September 30, 2019**                                      **Highland Global Allocation Fund**

including, but not limited to: (i) the fundamental analytical data relating to the investment; (ii) the nature and duration of restrictions on disposition of the securities; and (iii) an evaluation of the forces that influence the market in which these securities are purchased and sold. In these cases, the Fund's NAV will reflect the affected portfolio securities' fair value as determined in the judgment of the Board or its designee instead of being determined by the market. Using a fair value pricing methodology to value securities may result in a value that is different from a security's most recent sale price and from the prices used by other investment companies to calculate their NAVs. Determination of fair value is uncertain because it involves subjective judgments and estimates.

There can be no assurance that the Fund's valuation of a security will not differ from the amount that it realizes upon the sale of such security. Those differences could have a material impact to the Fund. The NAV shown in the Fund's consolidated financial statements may vary from the NAV published by the Fund as of its period end because portfolio securities transactions are accounted for on the trade date (rather than the day following the trade date) for consolidated financial statement purposes.

### Fair Value Measurements

The Fund has performed an analysis of all existing investments and derivative instruments to determine the significance and character of inputs to their fair value determination. The levels of fair value inputs used to measure the Fund's investments are characterized into a fair value hierarchy. Where inputs for an asset or liability fall into more than one level in the fair value hierarchy, the investment is classified in its entirety based on the lowest level input that is significant to that investment's valuation. The three levels of the fair value hierarchy are described below:

*Level 1* — Quoted unadjusted prices for identical instruments in active markets to which the Fund has access at the date of measurement;

*Level 2* — Quoted prices for similar instruments in active markets; quoted prices for identical or similar instruments in markets that are not active, but are valued based on executed trades; broker quotations that constitute an executable price; and alternative pricing sources supported by observable inputs are classified within Level 2. Level 2 inputs are either directly or indirectly observable for the asset in connection with market data at the measurement date; and

*Level 3* — Model derived valuations in which one or more significant inputs or significant value drivers are unobservable. In certain cases, investments classified within Level 3 may include securities for

which the Fund has obtained indicative quotes from broker-dealers that do not necessarily represent prices the broker may be willing to trade on, as such quotes can be subject to material management judgment. Unobservable inputs are those inputs that reflect the Fund's own assumptions that market participants would use to price the asset or liability based on the best available information.

The Investment Adviser has established policies and procedures, as described above and approved by the Board, to ensure that valuation methodologies for investments and financial instruments that are categorized within all levels of the fair value hierarchy are fair and consistent. A Pricing Committee has been established to provide oversight of the valuation policies, processes and procedures, and is comprised of personnel from the Investment Adviser and its affiliates. The Pricing Committee meets monthly to review the proposed valuations for investments and financial instruments and is responsible for evaluating the overall fairness and consistent application of established policies.

As of September 30, 2019, the Fund's investments consisted of senior loans, asset-backed securities, bonds and notes, common stocks, master limited partnerships, registered investment companies, cash equivalents, exchange-traded funds, rights, warrants, securities sold short, and collateralized loan obligations. The fair value of the Fund's loans, bonds and asset-backed securities are generally based on quotes received from brokers or independent pricing services. Loans, bonds and asset-backed securities with quotes that are based on actual trades with a sufficient level of activity on or near the measurement date are classified as Level 2 assets. Senior loans, bonds and asset-backed securities that are priced using quotes derived from implied values, indicative bids, or a limited number of actual trades are classified as Level 3 assets because the inputs used by the brokers and pricing services to derive the values are not readily observable.

The fair value of the Fund's common stocks, registered investment companies, rights and warrants that are not actively traded on national exchanges are generally priced using quotes derived from implied values, indicative bids, or a limited amount of actual trades and are classified as Level 3 assets because the inputs used by the brokers and pricing services to derive the values are not readily observable. Exchange-traded options are valued based on the last trade price on the primary exchange on which they trade. If an option does not trade, the mid-price, which is the mean of the bid and ask price, is utilized to value the option.

At the end of each calendar quarter, the Investment Adviser evaluates the Level 2 and 3 assets and liabilities for changes

Table of Contents

# NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (continued)

**September 30, 2019**                                    **Highland Global Allocation Fund**

in liquidity, including but not limited to: whether a broker is willing to execute at the quoted price, the depth and consistency of prices from third party services, and the existence of contemporaneous, observable trades in the market. Additionally, the Investment Adviser evaluates the Level 1 and 2 assets and liabilities on a quarterly basis for changes in listings or delistings on national exchanges.

Due to the inherent uncertainty of determining the fair value of investments that do not have a readily available market

value, the fair value of the Fund's investments may fluctuate from period to period. Additionally, the fair value of investments may differ significantly from the values that would have been used had a ready market existed for such investments and may differ materially from the values the Fund may ultimately realize. Further, such investments may be subject to legal and other restrictions on resale or otherwise less liquid than publicly traded securities.

The inputs or methodology used for valuing securities are not necessarily an indication of the risk associated with investing in those securities. Transfers in and out of the levels are recognized at the value at the end of the period. A summary of the inputs used to value the Fund's assets as of September 30, 2019 is as follows:

| | Total value at September 30, 2019 | Level 1 Quoted Price | Level 2 Significant Observable Inputs | Level 3 Significant Unobservable Inputs |
|---|---|---|---|---|
| **Assets** | | | | |
| Non-U.S. Equity | | | | |
| Communication Services | $ 6,898,786 | $ 6,898,786 | $ — | $ — |
| Consumer Discretionary | 12,716,407 | 8,929,926 | 3,786,481 | — |
| Consumer Staples | 291,500 | 291,500 | — | — |
| Energy | 19,853,141 | 19,853,141 | — | — |
| Financials | 6,405,706 | 6,405,706 | — | — |
| Healthcare | 123,051 | 123,051 | — | — |
| Industrials | 8,544,061 | 8,544,061 | — | — |
| Information Technology | 9,989,102 | 9,989,102 | — | — |
| Materials | 2,538,690 | 2,538,690 | — | — |
| Utilities | 105,997,617 | 105,997,617 | — | — |
| U.S. Equity | | | | |
| Chemicals | 731,871 | — | — | 731,871 |
| Communication Services | 47,256,191 | 121,487 | — | 47,134,704 |
| Consumer Discretionary | 3,759,046 | 3,759,046 | — | — |
| Financials | 1,072,837 | 1,072,837 | — | — |
| Healthcare | 18,049,003 | 18,049,003 | — | — |
| Information Technology | 1,024,317 | 1,024,317 | — | — |
| Materials | 3,652,420 | — | 3,652,420 | — |
| Real Estate | 8,319,533 | 8,319,533 | — | — |
| Non-U.S. Master Limited Partnerships | | | | |
| Energy | 60,435,327 | 60,435,327 | — | — |
| U.S. Senior Loans | | | | |
| Chemicals | 1,088,107 | — | — | 1,088,107 |
| Communication Services | 14,336,849 | — | — | 14,336,849 |
| Energy | 17,939,468 | — | 17,939,468 | — |
| Retail | 1,370,364 | — | 1,370,364 | — |
| Service | 2,173,613 | — | 2,173,613 | — |
| Utilities | 259,072 | — | 259,072 | — |
| Non-U.S. Government Bond | | | | |
| Sovereign | 25,078,750 | — | 25,078,750 | — |
| U.S. LLC Interest | 15,207,664 | — | — | 15,207,664 |
| U.S. Preferred Stock | | | | |
| Financials | 4,035,559 | — | 4,035,559 | — |
| Real Estate | 7,738,392 | — | 7,738,392 | — |

20 | Annual Report

Table of Contents

# NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (continued)

September 30, 2019                                                    **Highland Global Allocation Fund**

| | Total value at September 30, 2019 | Level 1 Quoted Price | Level 2 Significant Observable Inputs | Level 3 Significant Unobservable Inputs |
|---|---|---|---|---|
| Non-U.S. Asset-Backed Securities | $ 10,574,913 | $ — | $ 10,438,191 | $ 136,722 |
| U.S. Agency Collateralized Mortgage Obligation | 9,984,739 | — | 9,984,739 | — |
| Non-U.S. Corporate Bonds & Notes | | | | |
|    Communication Services | 976,835 | — | 976,835 | — |
|    Energy | 2,558,772 | — | 45 | 2,558,727 |
|    Utilities | 4,087,430 | — | 4,087,430 | — |
| Non-U.S. Purchased Options | 7,643,639 | 7,643,639 | — | — |
| U.S. Rights | | | | |
|    Utilities | 6,996,052 | — | 6,996,052 | — |
| Non-U.S. Senior Loan | | | | |
|    Communication Services | 1,120,913 | — | 1,120,913 | — |
| U.S. Corporate Bonds & Notes | | | | |
|    Information Technology[1] | — | — | — | — |
|    Real Estate | 283,000 | — | 283,000 | — |
|    Utilities | 824,429 | — | 824,429 | — |
| U.S. Warrants | | | | |
|    Financials | 314 | 314 | — | — |
|    Healthcare | 187,883 | — | — | 187,883 |
| Non-U.S. Warrants | | | | |
|    Communication Services | 16,185 | 16,185 | — | — |
|    Industrials | 289,883 | — | 289,883 | — |
|    Information Technology | 40,679 | 40,679 | — | — |
| Non-U.S. Registered Investment Companies | 21,748,319 | 18,265,238 | — | 3,483,081 |
| U.S. Cash Equivalent | 207,028 | 207,028 | — | — |
| Other Financial Instruments | | | | |
|    Short Futures | 632,896 | 632,896 | — | — |
|    **Total Assets** | 475,060,353 | 289,159,109 | 101,035,636 | 84,865,608 |
| **Liabilities** | | | | |
| Securities Sold Short | | | | |
| U.S. Exchange-Traded Fund | (1,419,585) | (1,419,585) | — | — |
| U.S. Equity | | | | |
|    Communication Services | (18,639,733) | (18,639,733) | — | — |
|    Consumer Discretionary | (1,568,292) | (1,568,292) | — | — |
|    Healthcare | (34,760,754) | (34,760,754) | — | — |
| Non-U.S. Equity | | | | |
|    Communication Services | (3,728,000) | (3,728,000) | — | — |
|    Energy | (4,177,725) | (4,177,725) | — | — |
|    Healthcare | (10,981,600) | (10,981,600) | — | — |
| Other Financial Instruments | | | | |
|    Written Options | (2,469,462) | (2,469,462) | — | — |
|    **Total Liabilities** | (77,745,151) | (77,745,151) | — | — |
| **Total** | $ 397,315,202 | $211,413,958 | $101,035,636 | $ 84,865,608 |

[1] This category includes securities with a value of zero.

Annual Report │ 21

Table of Contents

# NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (continued)

**September 30, 2019**                                                                 **Highland Global Allocation Fund**

The table below sets forth a summary of changes in the Fund's assets measured at fair value using significant unobservable inputs (Level 3) for the year ended September 30, 2019.

| | Balance as of September 30, 2018 | Transfers Into Level 3 | Transfers Out of Level 3 | Accrued Discounts (Premiums) | Realized Gains/ (Losses) | Net Unrealized Appreciation (Depreciation) | Net Purchases | Net Sales | Balance as of September 30, 2019 | Change in Unrealized Appreciation (Depreciation) from Investments held at September 30, 2019 |
|---|---|---|---|---|---|---|---|---|---|---|
| **U.S. Equity** | | | | | | | | | | |
| Chemicals | $ 1,296,206 | $ — | $ — | $ — | $ — | (564,335) | $ — | $ — | $ 731,871 | (564,335) |
| Communication Services | 64,277,652 | — | — | — | 4,155,617 | 1,658,285 | — | (22,956,850) | 47,134,704 | 1,658,285 |
| Media | 2,127,254 | — | — | — | — | 11,041,979 | — | (13,169,233) | — | — |
| **U.S. Senior Loans** | | | | | | | | | | |
| Chemicals | 1,060,993 | — | — | 27,904 | — | (790) | — | — | 1,088,107 | (790) |
| Communication Services | 52,268,596 | — | — | 22,837 | (48,061) | 37,701 | 2,015,776 | (39,960,000) | 14,336,849 | 37,701 |
| **U.S. LLC Interest** | — | — | — | — | — | 207,664 | 15,000,000 | — | 15,207,664 | 207,664 |
| **Non-U.S. Asset-Backed Security** | 117,574 | — | — | (715) | — | 19,863 | — | — | 136,722 | 19,863 |
| **Non-U.S. Corporate Bonds & Notes** | | | | | | | | | | |
| Energy | 2,558,727 | — | — | — | — | — | — | — | 2,558,727 | — |
| **U.S. Warrants** | | | | | | | | | | |
| Healthcare | 201,754 | — | — | — | — | (13,871) | — | — | 187,883 | (13,871) |
| **Non-U.S. Warrants** | | | | | | | | | | |
| Information Technology | 199,521 | — | (107,509) | — | — | (92,012) | — | — | — | — |
| **Non-U.S. Registered Investment Company** | 2,966,972 | — | — | — | — | 516,109 | — | — | 3,483,081 | 516,109 |
| Total | $ 127,075,249 | $ — | $(107,509) | $ 50,026 | $4,107,556 | $ 12,810,593 | $17,015,776 | $(76,086,083) | $ 84,865,608 | 1,860,626 |

Investments designated as Level 3 may include assets valued using quotes or indications furnished by brokers which are based on models or estimates and may not be executable prices. In light of the developing market conditions, the Investment Adviser continues to search for observable data points and evaluate broker quotes and indications received for portfolio investments for the year ended September 30, 2019, there were no transfers between Levels.

The following is a summary of significant unobservable inputs used in the fair valuations of assets and liabilities categorized within Level 3 of the fair value hierarchy:

| Category | Market Value at 9/30/2019 | Valuation Technique | Unobservable Inputs | Input Value(s) |
|---|---|---|---|---|
| U.S. Equity | $ 47,866,575 | Multiples Analysis | Unadjusted Price/MHz-PoP | $0.12 - $0.95 |
| | | | Risk Discount | 55.2% - 59.8% |
| | | | LTM EBITDA Multiple | 6.83x |
| | | | Liquidity Discount | 10% |
| | | | Size Adjustment | 10% |
| | | Discounted Cash Flow | Discount Rate | 15% |
| | | Transaction Indication Of Value | Enterprise Value ($mm) | $365.00 -$771.00 |

22 | Annual Report

[Table of Contents](#)

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (continued)

**September 30, 2019**                                                                          **Highland Global Allocation Fund**

| Category | Market Value at 9/30/2019 | Valuation Technique | Unobservable Inputs | Input Value(s) |
|---|---|---|---|---|
| U.S. Senior Loans | 15,424,956 | Discounted Cash Flow | Discount Rate | 11.1% |
| | | | Spread Adjustment | 0.1% |
| | | Debt-Loan Spread | Adjusted Yield | 9.56% - 14.83% |
| | | | Swap Rate | 1.50% -1.64% |
| LLC Interest | 15,207,664 | Discounted Cash Flow | Discount Rate | 2.46% -4.54% |
| Registered Investment Companies | 3,483,081 | Net Asset Value | N/A | N/A |
| Corporate Bonds & Notes | 2,558,722 | Liquidation Analysis | Claim Amount: Percent of Par | 6.9% |
| Warrants | 187,883 | Black-Scholes Model | Annualized Volatility | 64.4% |
| Asset-Backed Securities | 136,722 | Discounted Cash Flow | Discount Rate | 20.9% |
| **Total** | $ 84,865,608 | | | |

In addition to the unobservable inputs utilized for various valuation methodologies, the Adviser frequently uses a combination of two or more valuation methodologies to determine fair value for a single holding. In such instances, the Adviser assesses the methodologies and ascribes weightings to each methodology. The weightings ascribed to any individual methodology ranged from as low as 10% to as high as 55% as of September 30, 2019. The selection of weightings is an inherently subjective process, dependent on professional judgment. These selections may have a material impact to the concluded fair value for such holdings.

The significant unobservable inputs used in the fair value measurement of the Fund's bank loan securities are: adjusted yield, swap rate, discount rate and spread adjustment. Significant increases (decreases) in any of those inputs in isolation could result in a significantly lower (higher) fair value measurement.

The significant unobservable inputs used in the fair value measurement of the Fund's common equity securities are: multiple of EBITDA, price/MHz-PoP multiple, risk discount, illiquidity discount, discount rate and size adjustment. Significant increases (decreases) in any of those inputs in isolation could result in a significantly lower (higher) fair value measurement. Generally, a change in the assumption used for the risk discount is accompanied by a directionally opposite change in the assumption for the price/MHz-PoP multiple.

### Security Transactions
Security transactions are accounted for on the trade date. Realized gains/(losses) on investments sold are recorded on the basis of the specific identification method for both consolidated financial statement and U.S. federal income tax purposes taking into account any foreign taxes withheld.

### Income Recognition
Corporate actions (including cash dividends) are recorded on the ex-dividend date, net of applicable withholding taxes, except for certain foreign corporate actions, which are recorded as soon after ex-dividend date as such information becomes available and is verified. Interest income is recorded on the accrual basis.

Accretion of discount on taxable bonds and loans is computed to the call date, while amortization of premium on taxable bonds and loans is computed to the call or maturity date, whichever is shorter, both using the effective yield method. Withholding taxes on foreign dividends have been provided for in accordance with the Fund's understanding of the applicable country's tax rules and rates.

### U.S. Federal Income Tax Status
The Fund is treated as a separate taxpayer for U.S. federal income tax purposes. The Fund intends to qualify each year as a "regulated investment company" under Subchapter M of the Internal Revenue Code of 1986, as amended, and will distribute substantially all of its taxable income and gains, if any, for the tax year, and as such will not be subject to U.S. federal income taxes. In addition, the Fund intends to distribute, in each calendar year, all of its net investment income, capital gains and certain other amounts, if any, such that the Fund should not be subject to U.S. federal excise tax. Therefore, no U.S. federal income or excise tax provisions are recorded.

The Investment Adviser has analyzed the Fund's tax positions taken on U.S. federal income tax returns for all open tax years (current and prior three tax years), and has concluded that no provision for U.S. federal income tax is required in the Fund's consolidated financial statements. The Fund's U.S. federal and state income and U.S. federal excise tax returns for tax years for which the applicable statutes of limitations have not expired are subject to examination by the Internal Revenue Service and state departments of revenue. Furthermore, the Investment Adviser of the Fund is also not aware of any tax positions for which it is reasonably possible

Annual Report | 23

Table of Contents

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (continued)

**September 30, 2019**                                             **Highland Global Allocation Fund**

that the total amounts of unrecognized tax benefits will significantly change in the next 12 months.

### Distributions to Shareholders
The Fund declares and pays investment income distributions quarterly. The Fund typically declares and pays distributions from net realized capital gains in excess of capital loss carryforwards annually.

### Cash & Cash Equivalents
The Fund considers liquid assets deposited with a bank and certain short-term debt instruments of sufficient credit quality with original maturities of three months or less to be cash equivalents. These investments represent amounts held with financial institutions that are readily accessible to pay Fund expenses or purchase investments. Cash and cash equivalents are valued at cost plus accrued interest, which approximates market value. The value of cash equivalents denominated in foreign currencies is determined by converting to U.S. dollars on the date of the Consolidated Statement of Assets and Liabilities.

### Foreign Currency
Accounting records of the Fund are maintained in U.S. dollars. Foreign currencies, investments and other assets and liabilities denominated in foreign currencies are translated into U.S. dollars at exchange rates using the current 4:00 PM London Time Spot Rate. Fluctuations in the value of the foreign currencies and other assets and liabilities resulting from changes in exchange rates, between trade and settlement dates on securities transactions and between the accrual and payment dates on dividends, interest income and foreign withholding taxes, are recorded as unrealized foreign currency gains/(losses). Realized gains/(losses) and unrealized appreciation/(depreciation) on investment securities and income and expenses are translated on the respective dates of such transactions. The effects of changes in foreign currency exchange rates on investments in securities are not segregated in the Consolidated Statement of Operations from the effects of changes in market prices of those securities, but are included with the net realized and unrealized gain or loss on investment securities.

### Securities Sold Short
The Fund may sell securities short. A security sold short is a transaction in which the Fund sells a security it does not own in anticipation that the market price of that security will decline. When the Fund sells a security short, it must borrow the security sold short from a broker-dealer and deliver it to the buyer upon conclusion of the transaction. A Fund may have to pay a fee to borrow particular securities and is often obligated to pay over any dividends or other payments received on such borrowed securities. In some circumstances,

a Fund may be allowed by its prime broker to utilize proceeds from securities sold short to purchase additional investments, resulting in leverage. Securities and cash held as collateral for securities sold short are shown on the Consolidated Investment Portfolio. Cash held as collateral for securities sold short is classified as restricted cash on the Consolidated Statement of Assets and Liabilities, as applicable. Restricted cash in the amount of $17,668,451 was held with the broker for the Fund. Additionally, securities valued at $110,028,333 were posted in the Fund's segregated account for collateral for short sales, written option contracts, and secured credit facility.

### Other Fee Income
Fee income may consist of origination/closing fees, amendment fees, administrative agent fees, transaction break-up fees and other miscellaneous fees. Origination fees, amendment fees, and other similar fees are non-recurring fee sources. Such fees are received on a transaction by transaction basis and do not constitute a regular stream of income and are recognized when incurred.

### Conversion Costs
In conjunction with the shareholder proposal to convert the Fund from an open-end fund to a closed-end fund (see Note 14), the Fund has incurred legal fees and other fees in preparation of this conversion. These conversion costs include both actual and estimated fees, and are included in the Consolidated Statement of Operations as conversion fees.

### Note 3. Derivative Transactions
The Fund is subject to equity securities risk, interest rate risk and currency risk in the normal course of pursuing its investment objectives. The Fund enters into derivative transactions for the purpose of hedging against the effects of changes in the value of portfolio securities due to anticipated changes in market conditions, to gain market exposure for residual and accumulating cash positions and for managing the duration of fixed income investments.

### Futures Contracts
A futures contract represents a commitment for the future purchase or sale of an asset at a specified price on a specified date. The Fund may invest in interest rate, financial and stock or bond index futures contracts subject to certain limitations. The Fund invests in futures contracts to manage its exposure to the stock and bond markets and fluctuations in currency values. Buying futures tends to increase the Fund's exposure to the underlying instrument while selling futures tends to decrease the Fund's exposure to the underlying instrument, or economically hedge other Fund investments. With futures contracts, there is minimal counterparty credit risk to the Fund since futures contracts are exchange-traded and the exchange's clearinghouse, as counterparty to all

24 │ Annual Report

Table of Contents

# NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (continued)

September 30, 2019                                                           Highland Global Allocation Fund

traded futures, guarantees the futures against default. A Fund's risks in using these contracts include changes in the value of the underlying instruments, non-performance of the counterparties under the contracts' terms and changes in the liquidity of the secondary market for the contracts. Futures contracts are valued at the settlement price established each day by the board of trade or exchange on which they principally trade.

Upon entering into a financial futures contract, the Fund is required to pledge to the broker an amount of cash and/or other assets equal to a certain percentage of the contract amount, known as initial margin deposit. Subsequent payments, known as variation margins, are made or can be received by the Fund each day, depending on the daily fluctuation in the fair value of the underlying security. The Fund records an unrealized gain/(loss) equal to the daily variation margin. Should market conditions move unexpectedly, the Fund may not achieve the anticipated benefits of the futures contracts and may incur a loss. The Fund recognizes a realized gain/(loss) on the expiration or closing of a futures contract.

During the year ended September 30, 2019, the Fund entered into futures transactions for the purpose of hedging against the effects of changes in the value of portfolio securities due to anticipated changes in market conditions, and to gain market exposure for residual and accumulating cash positions. Cash held as collateral for futures contracts is shown on the Consolidated Statement of Assets and Liabilities as "Restricted Cash — Futures."

## Options
The Fund may utilize options on securities or indices to varying degrees as part of its principal investment strategy. An option on a security is a contract that gives the holder of the option, in return for a premium, the right to buy from (in the case of a call) or sell to (in the case of a put) the writer of the option the security underlying the option at a specified exercise or "strike" price. The writer of an option on a security has the obligation upon exercise of the option to deliver the underlying security upon payment of the exercise price or to pay the exercise price upon delivery of the underlying security. The Fund may hold options, write option contracts, or both.

If an option written by a Fund expires unexercised, a Fund realizes on the expiration date a capital gain equal to the premium received by a Fund at the time the option was written. If an option purchased by a Fund expires unexercised, a Fund realizes a capital loss equal to the premium paid. Prior to the earlier of exercise or expiration, an exchange-traded option may be closed out by an offsetting purchase or sale of an option of the same series (type, underlying security,

exercise price and expiration). There can be no assurance, however, that a closing purchase or sale transaction can be effected when a Fund desires. A Fund will realize a capital gain from a closing purchase transaction if the cost of the closing option is less than the premium received from writing the option, or, if the cost of the closing option is more than the premium received from writing the option, a capital loss. A Fund will realize a capital gain from a closing sale transaction if the premium received from the sale is more than the original premium paid when the option position was opened, or a capital loss, if the premium received from a sale is less than the original premium paid.

During the year ended September 30, 2019, the Fund had written options to provide leveraged short exposure, and purchased options to provide leveraged long exposure, to the underlying equity, which is consistent with the investment strategies of the Fund.

## Additional Derivative Information
The Fund follows adopted amendments to authoritative guidance on disclosures about derivative instruments and hedging activities which require that the Fund discloses a) how and why an entity uses derivative instruments; b) how derivative instruments and related hedged items are accounted for; c) how derivative instruments and related hedged items affect an entity's financial position, financial performance and cash flows; and d) how the netting of derivatives subject to master netting arrangements (if applicable) affects the net exposure of the Fund related to the derivatives.

To reduce counterparty credit risk with respect to over-the-counter ("OTC") transactions, the Fund has entered into master netting arrangements, established within the Fund's International Swap and Derivatives Association, Inc. ("ISDA") master agreements, which allows the Fund to make (or to have an entitlement to receive) a single net payment in the event of default (close-out netting) for outstanding payables and receivables with respect to certain OTC derivative positions in forward currency exchange contracts for each individual counterparty. In addition, the Fund may require that certain counterparties post cash and/or securities in collateral accounts to cover its net payment obligations for those derivative contracts subject to ISDA master agreements. If the counterparty fails to perform under these contracts and agreements, the cash and/or securities will be made available to the Fund.

Certain ISDA master agreements include credit related contingent features which allow counterparties to OTC derivatives to terminate derivative contracts prior to maturity in the event the Fund's net assets decline by a

[Table of Contents](#)

# NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (continued)

**September 30, 2019**                                          **Highland Global Allocation Fund**

stated percentage or the Fund fails to meet the terms of its ISDA master agreements, which would cause the Fund to accelerate payment of any net liability owed to the counterparty.

For financial reporting purposes, the Fund does not offset derivative assets and derivative liabilities that are subject to netting arrangements in the Consolidated Statement of Assets and Liabilities. Bankruptcy or insolvency laws of a particular jurisdiction may impose restrictions on or prohibitions against the right of offset in bankruptcy, insolvency or other events.

Collateral terms are contract specific for OTC derivatives. For derivatives traded under an ISDA master agreement, the collateral requirements are typically calculated by netting the mark to market amount for each transaction under such agreement and comparing it to the value of any collateral currently pledged by the Fund or the Counterparty.

For financial reporting purposes, cash collateral that has been pledged to cover obligations of the Fund, if any, is reported in restricted cash on the Consolidated Statement of Assets and Liabilities. Generally, the amount of collateral due from or to a party must exceed a minimum transfer amount threshold before a transfer has to be made. To the extent amounts due to the Fund from its counterparties are not fully collateralized, contractually or otherwise, the Fund bears the risk of loss from counterparty non-performance.

The effect of derivative instruments on the Consolidated Statement of Operations for the year ended September 30, 2019, is as follows:

| | Net Realized Gain (Loss) on Derivatives | Net Change in Unrealized Appreciation/ (Depreciation) on Derivatives |
|---|---|---|
| Interest Rate Risk | 447,653[1] | (160,650)[4] |
| Equity Price Risk | (2,149,803)[1][2][3] | (91,259)[4][5][6] |
| Commodity Risk | — | (25,786)[4][6] |

[1] Consolidated Statement of Operations location: Realized gain (loss) on written options contracts.
[2] Consolidated Statement of Operations location: Realized gain (loss) on investments from unaffiliated issuers. Purchased options only.
[3] Consolidated Statement of Operations location: Realized gain (loss) on futures contracts.
[4] Consolidated Statement of Operations location: Change in unrealized appreciation (depreciation) on investments. Purchased options only.
[5] Consolidated Statement of Operations location: Change in unrealized appreciation (depreciation) on futures contracts.
[6] Consolidated Statement of Operations location: Change in unrealized appreciation (depreciation) on written options.

The average monthly volume of derivative activity for the year ended September 30, 2019, is as follows:

| | Units/ Contracts | Appreciation/ (Depreciation) |
|---|---|---|
| Futures Contracts[1] | 194 | $ (379,631) |
| Purchased Options Contracts | 17,662 | — |
| Written Options Contracts | 7,597 | — |

[1] Futures Contracts average monthly volume is calculated using Appreciation/(Depreciation).

## Note 4. Securities Lending

Effective April 4, 2019, HCMFA entered into a custody agreement with Bank of New York Mellon ("BNY"). Prior to April 4, 2019, State Street Bank and Trust Company ("State Street") served as the custodian to the Fund.

As of September 30, 2019, the Fund did not participate in securities lending transactions with BNY.

Prior to April 4, 2019, the Fund could seek additional income by making secured loans of its portfolio securities through its prior custodian, State Street. Such loans would be in an amount not greater than one-third of the value of the Fund's total assets. State Street would charge a fund fees based on a percentage of the securities lending income.

The Fund would receive collateral consisting of cash (U.S. and foreign currency), securities issued or guaranteed by the U.S. government or its agencies or instrumentalities, sovereign debt, convertible bonds, irrevocable bank letters of credit or such other collateral as may be agreed on by the parties to a securities lending arrangement, initially with a value of 102% or 105% of the market value of the loaned securities and thereafter maintained at a value of 100% of the market value of the loaned securities. If the collateral consists of non-cash collateral, the borrower would pay the Fund a loan premium fee. If the collateral consists of cash, State Street would reinvest the cash. Although voting rights, or rights to consent, with respect to the loaned securities pass to the borrower, the Fund would recall the loaned securities upon reasonable notice in order that the securities could be voted by the Fund if the holders of such securities are asked to vote upon or consent to matters materially affecting the investment. The Fund also could call such loans in order to sell the securities involved.

Securities lending transactions were entered into pursuant to Securities Loan Agreements ("SLA"), which would provide the right, in the event of default (including bankruptcy or insolvency) for the non-defaulting party to liquidate the collateral and calculate a net exposure to the defaulting party or request additional collateral. In the event that a borrower defaulted, the Fund, as lender, would offset the market value of the collateral received against the market value of the securities loaned. The value of the collateral is typically greater than that of the market value of the securities

26 │ Annual Report

Table of Contents

# NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (continued)

September 30, 2019                                                    Highland Global Allocation Fund

loaned, leaving the lender with a net amount payable to the defaulting party. However, bankruptcy or insolvency laws of a particular jurisdiction may impose restrictions on or prohibitions against such a right of offset in the event of an SLA counterparty's bankruptcy or insolvency. Under the SLA, the Fund can reinvest cash collateral, or, upon an event of default, resell or repledge the collateral, and the borrower can resell or repledge the loaned securities. The risks of securities lending also include the risk that the borrower may not provide additional collateral when required or may not return the securities when due. To mitigate this risk, each Fund benefits from a borrower default indemnity provided by State Street. State Street's indemnity generally provides for replacement of securities lent or the approximate value thereof.

## Note 5. U.S. Federal Income Tax Information
The character of income and gains to be distributed is determined in accordance with income tax regulations which may differ from U.S. GAAP. These differences include (but are not limited to) investments organized as partnerships for tax purposes, investments in futures, losses deferred to off-setting positions, tax treatment of organizational start-up costs, losses deferred due to wash sale transactions, tax

treatment of net investment loss and distributions in excess of net investment income, and tax attributes from Fund reorganizations. Reclassifications are made to the Fund's capital accounts to reflect income and gains available for distribution (or available capital loss carryovers) under income tax regulations. These reclassifications have no impact on net investment income, realized gains or losses, or NAV of the Fund. The calculation of net investment income per share in the Consolidated Financial Highlights table excludes these adjustments.

As of September 30, 2019, permanent differences chiefly resulting from foreign currency gains and losses, return of capital distributions from real estate investment trusts, capital gain distributions from other RICs, paydown gains and losses, partnership basis adjustments, defaulted bonds, elimination of subsidiary transactions, tax treatment of reorganization expense and capitalized dividends on short sales were identified and reclassified among the components of the Fund's net assets as follows:

| Distributable Earnings (Loss) | Paid-in-Capital |
|---|---|
| $4,862,699 | $(4,862,699) |

At September 30, 2019, the most recent tax year-end, components of distributable earnings on a tax basis is as follows:

| Undistributed Income | Undistributed Long-Term Capital Gains | Undistributed Tax-Exempt Income | Other Temporary Differences | Accumulated Capital and Other Losses | Net Tax Appreciation/ (Depreciation) |
|---|---|---|---|---|---|
| $    — | $    — | $    — | $    — | $(229,922,340) | $(240,363,003) |

Under the Regulated Investment Company Modernization Act of 2010, the Fund will be permitted to carry forward capital losses incurred in taxable years beginning after December 22, 2010 for an unlimited period. As of September 30, 2019, the most recent tax year end, the Fund has capital loss carryovers as indicated below.

| No Expiration Short-Term | No Expiration Long-Term | Total |
|---|---|---|
| $106,122,225 | $123,800,115 | $229,922,340 |

The tax character of distributions paid during the years ended September 30, 2019 and September 30, 2018 were as follows:

| | | | Distributions Paid From: | |
|---|---|---|---|---|
| | Exempt Interest | Ordinary Income[1] | Long-Term Capital Gains | Return of Capital[2] |
| 2019 | $    — | $ 4,579,807 | $    — | $12,388,348 |
| 2018 | — | 16,267,341 | — | 7,482,946 |

[1]   For tax purposes, short-term capital gains distributions, if any, are considered ordinary income distributions.
[2]   Additional Information will be distributed on Form 1099 at the end of the calendar year.

Annual Report | 27

Table of Contents

# NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (continued)

**September 30, 2019**                                                   **Highland Global Allocation Fund**

Unrealized appreciation and depreciation at September 30, 2019, based on cost of investments for U.S. federal income tax purposes was:

| Gross Appreciation | Gross Depreciation | Net Appreciation/ (Depreciation) | Cost |
|---|---|---|---|
| $ 18,545,175 | $ (258,908,178) | $ (240,363,003) | $ 677,197,027 |

For Federal income tax purposes, the cost of investments owned at September 30, 2019 were different from amounts reported for financial reporting purposes primarily due to investments in partnership, REIT, securities sold short, options, futures, defaulted bonds, other securities and deferred wash sale losses.

Under current laws, certain capital losses realized after October 31 may be deferred and treated as occurring on the first day of the following fiscal year. Late-Year Losses represent ordinary losses realized on investment transactions from January 1, 2019 through September 30, 2019. For the fiscal year ended September 30, 2019, the Funds elected to defer the following losses:

| Realized Capital Losses | Ordinary Losses |
|---|---|
| $ — | $ — |

## Note 6. Credit Agreement

On January 10, 2018, the Fund entered into a financing arrangement (the "Financing Arrangement") with BNP Paribas Prime Brokerage International, Ltd., BNP Prime Brokerage, Inc., acting through its New York Branch, and BNP Paribas (together, the "BNPP Entities"). Under the Financing Agreement, the BNPP Entities may make margin loans to the Fund at rates ranging from 1 month LIBOR + 0.50% to 1 month LIBOR + 0.80%. The Financing Arrangement may be terminated by either the Fund or the BNPP Entities with 30 days' notice. At September 30, 2019, current outstanding and fair value amounts were $105,431,689 and $105,484,360, respectively. The fair value was estimated based off discounting cash flows owed using a discount rate of 0.50% over the five month risk-free rate. The Fund's average daily balance was $120,248,041 at a weighted average interest rate of 3.15% for the days outstanding.

On March 25, 2019, the Fund entered into an agreement with Mizuho Securities USA, LLC ("Mizuho Securities") under which it may from time to time enter into reverse repurchase transactions pursuant to the terms of a master repurchase agreement and related annexes (collectively the "Repurchase Agreement"). A reverse repurchase transaction is a repurchase transaction in which the Fund is the seller of securities or other assets and agrees to repurchase them at a date certain or on demand. Pursuant to the Repurchase Agreement, the Fund may agree to sell securities or other assets to Mizuho Securities for an agreed upon price (the "Purchase Price"), with a simultaneous agreement to

repurchase such securities or other assets from Mizuho Securities for the Purchase Price plus a price differential that is economically similar to interest. The price differential is negotiated for each transaction. This creates leverage for the Fund because the cash received can be used to purchase other securities.

## Note 7. Advisory, Administration, Service and Distribution, Trustee, and Other Fees

### Investment Advisory Fees and Administration Fees

For its investment advisory services, the Fund pays the Investment Adviser a monthly fee, computed and accrued daily, based on an annual rate of the Fund's Average Daily Managed Assets. Average Daily Managed Assets of the Fund means the average daily value of the total assets of the Fund less all accrued liabilities of a Fund (other than the aggregate amount of any outstanding borrowings constituting financial leverage). The Fund's contractual advisory fee with Highland for the year ended September 30, 2019 was 0.40%.

On behalf of the Fund, the Trust has entered into an administration agreement with SEI Investments Global Funds Services ("SEI"), a wholly owned subsidiary of SEI Investments Company, and pays SEI a fee for administration services. The Investment Adviser generally assists in all aspects of the Fund's administration and operations and furnishes offices, necessary facilities, equipment and personnel.

### Expense Limits and Fee Reimbursements

The Investment Adviser has contractually agreed to limit the total annual operating expenses (exclusive of fees paid by the Fund pursuant to their distribution plans under Rule 12b-1 under the 1940 Act, as amended, taxes, such as deferred tax expenses, dividend expenses on short sales, interest payments, brokerage commissions and other transaction costs, acquired fund fees and expenses and extraordinary expenses (collectively, the "Excluded Expenses")) of the Fund to 0.90% of average daily net assets attributable to any class of the Fund the "Expense Cap". The Expense Cap expired on January 31, 2019.

Under the expense limitation agreement, the Investment Adviser may recoup waived and/or reimbursed amounts with respect to the Fund within thirty-six months of the date such amounts were waived or reimbursed, provided the Fund's total annual operating expenses, including such recoupment, do not exceed the Expense Cap in effect at the time of such waiver/reimbursement

[Table of Contents](#)

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (continued)

**September 30, 2019**                                    **Highland Global Allocation Fund**

Additionally, the Funds may invest in securities issued by other investment companies, including investment companies that are advised by the Adviser or its affiliates, to the extent permitted by applicable law and/or pursuant to exemptive relief from the SEC, and exchange-traded funds ("ETFs"). Fees and expenses of such investments will be borne by shareholders of the investing Fund, and the Adviser voluntarily waives the higher of the two fees for the portion of the Fund's investment advisory fee attributable to its investment in the affiliated investment company.

On September 30, 2019, the amounts subject to possible future recoupment under the Fund's expense limitations were as follows:

| Expiring during Fiscal Years Ending September 30, | | |
| --- | --- | --- |
| 2020 | 2021 | 2022 |
| $ — | $ — | $417,999 |

During the year ended September 30, 2019, the Investment Adviser did not recoup any fees previously waived or reimbursed, and $660,281 of fees previously waived and or reimbursed by the Investment Adviser that were eligible for recoupment expired. No other amounts expired or were recouped from the Funds during the year ended year ended September 30, 2019.

### Other Transactions with the Investment Adviser

Various transactions occurred related to the valuation correction of the Fund's investment in equity issued by TerreStar Corporation. Subsequent to September 30, 2018, a valuation correction was made, affecting the value of the individual position between March 2018 through January 2019 and, as a result, other Fund calculations and shareholder payments that occurred during that period. The Fund's former Transfer Agent was engaged to assess the extent and impact of the errors and process the payments owed to shareholders for subscription overpayments. As of September 30, 2019, the Fund has received payments of approximately $7.7 million from the Adviser for: overpayments made by the Fund on redemption payments to shareholders resulting from the valuation correction; amounts owed to certain shareholders for subscription overpayments resulting from the valuation correction; and interest on these amounts. Prior to year-end, the Fund wired approximately $1.6 million of the amount received from the Adviser to the Fund's former Transfer Agent to process and distribute amounts owed to affected shareholders. During the period ended September 30, 2018, the net increase in net assets of the Fund as a result of the amount received from the Adviser, less the amount distributed to the Fund's former Transfer Agent was $4.0 million. This amount is reflected as a reduction to redemptions paid on the Statement of Changes in Net Assets for the year ended September 30, 2018. The net

increase in the Fund's net assets for the period ended September 30, 2019 is $2.1 million and is reflected as a net reduction to redemptions paid on the Consolidated Statement of Changes in Net Assets. The Adviser will continue to pay any fees resulting from the services (e.g. tax reporting, FATCA documentation, etc.) performed by the former Transfer Agent. Additionally, advisory fees that were previously paid to the Adviser and attributable to the overstated net assets relating to this matter were returned to the Fund. As of September 30, 2019, no additional amounts are owed to the Fund relating to this matter. All daily NAVs published between March 2018 and January 2019 that were materially affected by the valuation correction will be restated after the completion of the Fund's annual audit.

### Fees Paid to Officers and Trustees

Each Trustee who is not an "interested person" of the Fund as defined in the 1940 Act (the "Independent Trustees") receives an annual retainer of $150,000 payable in quarterly installments and allocated among each portfolio in the Highland Fund Complex overseen by such Trustee based on relative net assets. The "Highland Fund Complex" consists of all of the registered investment companies advised by the Investment Adviser or its affiliated advisers and NexPoint Capital, Inc., a closed-end management investment company that has elected to be treated as a business development company under the 1940 Act as of the date of this report. Effective December 4, 2015, Mr. Powell resigned from his position with the Investment Adviser. Prior to December 8, 2017, Mr. Powell was treated as an Interested Trustee of the Trust for all purposes other than compensation and the Trust's code of ethics.

The Fund pays no compensation to its officers, all of whom are employees of the Investment Adviser or one of its affiliates.

### Distribution and Shareholder Service Fees

Prior to the Conversion Date, the Fund has a distribution and shareholder service plan (the "Plan") pursuant to Rule 12b-1 under the 1940 Act. The Plan required the payment of a monthly service fee to NexPoint Securities, Inc. (formerly, Highland Capital Funds Distributor, Inc.) (the "Underwriter") at an annual rate of 0.25% of the average daily net assets attributable to Class A, and Class C shares of the Fund. The Plan also required the payment of a monthly distribution fee to the Underwriter at an annual rate of 0.75% of the average daily net assets attributable to Class C shares. Class Y shares were not subject to a 12b-1 fee.

The Underwriter received $1,512 of front-end sales charges from the sale of Class A shares of the Fund during the year ended September 30, 2019.

After the Conversion Date, the Fund was no longer subject to 12b-1 fees.

Annual Report | 29

Table of Contents

# NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (continued)

September 30, 2019             Highland Global Allocation Fund

## Indemnification

Under the Fund's organizational documents, the officers and Trustees have been granted certain indemnification rights against certain liabilities that may arise out of performance of their duties to the Fund. Additionally, in the normal course of business, the Fund may enter into contracts with service providers that contain a variety of indemnification clauses. The Fund's maximum exposure under these arrangements is dependent on future claims that may be made against the Fund and, therefore, cannot be estimated.

## Note 8. Disclosure of Significant Risks and Contingencies

The primary risks of investing in the Fund are described below in alphabetical order:

## Counterparty Risk

Counterparty risk is the potential loss the Fund may incur as a result of the failure of a counterparty or an issuer to make payments according to the terms of a contract. Counterparty risk is measured as the loss the Fund would record if its counterparties failed to perform pursuant to the terms of their obligations to the Fund. Because the Fund may enter into over-the-counter forwards, options, swaps and other derivative financial instruments, the Fund may be exposed to the credit risk of its counterparties. To limit the counterparty risk associated with such transactions, the Fund conducts business only with financial institutions judged by the Investment Adviser to present acceptable credit risk.

## Credit Risk

Investments rated below investment grade are commonly referred to as high-yield, high risk or "junk debt." They are regarded as predominantly speculative with respect to the issuing company's continuing ability to meet principal and/ or interest payments. Investments in high yield debt and high yield Senior Loans may result in greater NAV fluctuation than if the Fund did not make such investments.

Corporate debt obligations, including Senior Loans, are subject to the risk of non-payment of scheduled interest and/or principal. Non-payment would result in a reduction of income to the Fund, a reduction in the value of the corporate debt obligation experiencing non-payment and a potential decrease in the NAV of the Fund.

## Currency Risk

A portion of the Fund's assets may be quoted or denominated in non-U.S. currencies. These securities may be adversely affected by fluctuations in relative currency exchange rates and by exchange control regulations. The Fund's investment performance may be negatively affected by a devaluation of a currency in which the Fund's investments are quoted or denominated. Further, the Fund's investment performance may be significantly affected, either positively or negatively, by currency exchange rates because the U.S. dollar value of securities quoted or denominated in another currency will increase or decrease in response to changes in the value of such currency in relation to the U.S. dollar.

## Derivatives Risk

Derivatives risk is a combination of several risks, including the risks that: (1) an investment in a derivative instrument may not correlate well with the performance of the securities or asset class to which the Fund seeks exposure, (2) derivative contracts, including options, may expire worthless and the use of derivatives may result in losses to the Fund, (3) a derivative instrument entailing leverage may result in a loss greater than the principal amount invested, (4) derivatives not traded on an exchange may be subject to credit risk, for example, if the counterparty does not meet its obligations (see also "Counterparty Risk"), and (5) derivatives not traded on an exchange may be subject to liquidity risk and the related risk that the instrument is difficult or impossible to value accurately. As a general matter, when the Fund establishes certain derivative instrument positions, such as certain futures, options and forward contract positions, it will segregate liquid assets (such as cash, U.S. Treasury bonds or commercial paper) equivalent to the Fund's outstanding obligations under the contract or in connection with the position. In addition, changes in laws or regulations may make the use of derivatives more costly, may limit the availability of derivatives, or may otherwise adversely affect the use, value or performance of derivatives. A Fund's ability to pursue its investment strategy, including its strategy of investing in certain derivative instruments, may be limited to or adversely affected by the Fund's intention to qualify as a regulated investment company, and its strategy may bear adversely on its ability to so qualify.

## Illiquid and Restricted Securities Risk

Certain investments made by the Fund are, and others may be, illiquid, and consequently the Fund may not be able to sell such investments at prices that reflect the Investment Adviser's assessment of their value or the amount originally paid for such investments by the Fund. Illiquidity may result from the absence of an established market for the investments as well as legal, contractual or other restrictions on their resale and other factors. Furthermore, the nature of the Fund's investments, especially those in financially distressed companies, may require a long holding period prior to profitability.

Restricted securities (i.e., securities acquired in private placement transactions) and illiquid securities may offer higher yields than comparable publicly traded securities. The Fund, however, may not be able to sell these securities when the Investment Adviser considers it desirable to do so or, to the extent they are sold privately, may have to sell them at less than the price of otherwise comparable securities. Restricted securities are subject to limitations on resale which can have an adverse effect on the price obtainable for such securities. Also, if in order to permit resale the

30 | Annual Report

Table of Contents

# NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (continued)

**September 30, 2019**                                      **Highland Global Allocation Fund**

securities are registered under the Securities Act at a Fund's expense, the Fund's expenses would be increased. A high percentage of illiquid securities in a Fund creates a risk that such a Fund may not be able to redeem its shares without causing significant dilution to remaining shareholders.

## Master Limited Partnership ("MLP") Risk

Master Limited Partnership Risk is the risk of investing in MLP units, which involves some risks that differ from an investment in the equity securities of a company. The Fund may hold a significant investment in MLP units. Holders of MLP units have limited control and voting rights on matters affecting the partnership. Holders of units issued by an MLP are exposed to a remote possibility of liability for all of the obligations of that MLP in the event that a court determines that the rights of the holders of MLP units to vote to remove or replace the general partner of that MLP, to approve amendments to that MLP's partnership agreement, or to take other action under the partnership agreement of that MLP would constitute "control" of the business of that MLP, or a court or governmental agency determines that the MLP is conducting business in a state without complying with the partnership statute of that state. Holders of MLP units are also exposed to the risk that they will be required to repay amounts to the MLP that are wrongfully distributed to them. Additionally, a sustained reduced demand for crude oil, natural gas and refined petroleum products could adversely affect MLP revenues and cash flows, and changes in the regulatory environment could adversely affect the profitability of MLPs.

## Interest Rate Risk

The risk that fixed income securities will decline in value because of changes in interest rates. When interest rates decline, the value of fixed rate securities already held by the Fund can be expected to rise. Conversely, when interest rates rise, the value of existing fixed rate portfolio securities can be expected to decline. A fund with a longer average portfolio duration will be more sensitive to changes in interest rates than a Fund with a shorter average portfolio duration. In addition, the interest rates of floating rate loans typically only adjust to changes in short-term interest rates; long-term interest rates can vary dramatically from short-term interest rates. On July 27, 2017, the head of the United Kingdom's Financial Conduct Authority announced a desire to phase out the use of LIBOR by the end of 2021. Due to this announcement, there remains uncertainty regarding the future utilization of LIBOR and the nature of any replacement rate. As such, the potential effect of a transition away from LIBOR on the Fund or the financial instruments in which the Company invests cannot yet be determined.

## Leverage Risk

The Fund may use leverage in its investment program, including the use of borrowed funds and investments in certain types of options, such as puts, calls and warrants, which may be purchased for a fraction of the price of the underlying

securities. While such strategies and techniques increase the opportunity to achieve higher returns on the amounts invested, they also increase the risk of loss. To the extent the Fund purchases securities with borrowed funds, its net assets will tend to increase or decrease at a greater rate than if borrowed funds are not used. If the interest expense on borrowings were to exceed the net return on the portfolio securities purchased with borrowed funds, the Fund's use of leverage would result in a lower rate of return than if the Fund were not leveraged.

## Non-U.S. Securities Risk

The Fund may invest in non-U.S. securities. Investing in non-U.S. securities involves certain risks not involved in domestic investments, including, but not limited to: fluctuations in foreign exchange rates; future foreign economic, financial, political and social developments; different legal systems; the possible imposition of exchange controls or other foreign governmental laws or restrictions; lower trading volume; much greater price volatility and illiquidity of certain non-U.S. securities markets; different trading and settlement practices; less governmental supervision; changes in currency exchange rates; high and volatile rates of inflation; fluctuating interest rates; less publicly available information; and different accounting, auditing and financial recordkeeping standards and requirements.

## Senior Loans Risk

The risk that the issuer of a senior may fail to pay interest or principal when due, and changes in market interest rates may reduce the value of the senior loan or reduce the Fund's returns. The risks associated with senior loans are similar to the risks of high yield debt securities. Senior loans and other debt securities are also subject to the risk of price declines and to increases in interest rates, particularly long-term rates. Senior loans are also subject to the risk that, as interest rates rise, the cost of borrowing increases, which may increase the risk of default. In addition, the interest rates of floating rate loans typically only adjust to changes in short-term interest rates; long-term interest rates can vary dramatically from short-term interest rates. Therefore, senior loans may not mitigate price declines in a long-term interest rate environment. The Fund's investments in senior loans are typically below investment grade and are considered speculative because of the credit risk of their issuers.

## Short Sales Risk

Short sales by the Fund that are not made where there is an offsetting long position in the asset that it is being sold short theoretically involve unlimited loss potential since the market price of securities sold short may continuously increase. Short selling allows the Fund to profit from declines in market prices to the extent such decline exceeds the transaction costs and costs of borrowing the securities. However, since the borrowed securities must be replaced by purchases at market prices in order to close out the short position, any

**Table of Contents**

# NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (continued)

September 30, 2019                                      **Highland Global Allocation Fund**

appreciation in the price of the borrowed securities would result in a loss. Purchasing securities to close out the short position can itself cause the price of securities to rise further, thereby exacerbating the loss. The Fund may mitigate such losses by replacing the securities sold short before the market price has increased significantly. Under adverse market conditions, the Fund might have difficulty purchasing securities to meet margin calls on its short sale delivery obligations, and might have to sell portfolio securities to raise the capital necessary to meet its short sale obligations at a time when fundamental investment considerations would not favor such sales.

## Valuation Risk

Certain of the Fund's assets are fair valued, including the Fund's primary illiquid asset, TerreStar. TerreStar is a non-operating company that does not currently generate revenue and which primarily derives its value from two spectrum frequencies, the license with respect to one of which was terminated by the FCC and is being contested by TerreStar on technical and public policy grounds. TerreStar currently anticipates such contest may take between 12 to 30 months and expects deployment of its other spectrum asset to require a similar period of time. If TerreStar is ultimately unsuccessful in its efforts, the terminated license would not be reinstated and the value of the TerreStar equity would likely be materially negatively impacted. The fair valuation of TerreStar involves uncertainty as it is materially dependent on these estimates.

With regard to the likelihood of TerreStar regaining the terminated license, the Investment Adviser assigned a high probability of success, based in part in consultation with outside experts.

## Note 9. Investment Transactions

### Purchases & Sales of Securities

The cost of purchases and the proceeds from sales of investments, other than short-term securities and short-term options, for the year ended September 30, 2019, were as follows:

| U.S. Government Securities | | Other Securities | |
|---|---|---|---|
| Purchases | Sales | Purchases | Sales |
| $— | $ — | $142,928,822 | $211,519,592 |

## Note 10. Affiliated Issuers

Under Section 2 (a)(3) of the Investment Company Act of 1940, as amended, a portfolio company is defined as "affiliated" if a fund owns five percent or more of its outstanding voting securities or if the portfolio company is under common control. The table below shows affiliated issuers of the Fund as of September 30, 2019:

| Issuer | Shares at September 30, 2018 | Beginning Value as of September 30, 2018 | Purchases at Cost | Proceeds from Sales | Net Realized Gain/ (Loss) on Sales of Affiliated Issuers | Change in Unrealized Appreciation/ Depreciation | Ending Value as of September 30, 2019 | Shares at September 30, 2019 | Affiliated Income |
|---|---|---|---|---|---|---|---|---|---|
| **Other Affiliates** | | | | | | | | | |
| TerreStar Corp. (U.S. Equity) | 235,122 | $ 64,277,652 | $ — | $(22,956,849) | $4,155,617 | $ 1,658,284 | $ 47,134,704 | 169,531 | $ — |
| Gambier Bay LLC (U.S. Equity) | 16,054,749 | 2,127,254 | — | (13,169,233) | — | 11,041,979 | — | — | — |
| NexPoint Residential Trust (U.S. Equity) | — | — | 2,002,735 | — | — | 892,270 | 2,895,005 | 61,912 | 19,785 |
| TerreStar Corp. (U.S. Senior Loans) | 52,320,917 | 52,268,596 | 2,014,796 | (39,960,000) | (48,061) | 61,518 | 14,336,849 | 14,336,849 | 1,983,791 |
| Highland Energy MLP Fund (Master Limited Partnerships) | 4,629,572 | 16,897,938 | 1,602,618 | — | — | (4,084,870) | 14,415,686 | 5,166,913 | 1,602,618 |
| SFR WLIF I, LLC (U.S. LLC Interest) | — | — | 6,773,494 | — | — | 144,953 | 6,918,447 | 6,773,494 | — |

32 | Annual Report

Table of Contents

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (continued)

September 30, 2019                                                                    **Highland Global Allocation Fund**

| Issuer | Shares at September 30, 2018 | Beginning Value as of September 30, 2018 | Purchases at Cost | Proceeds from Sales | Net Realized Gain/ (Loss) on Sales of Affiliated Issuers | Change in Unrealized Appreciation/ Depreciation | Ending Value as of September 30, 2019 | Shares at September 30, 2019 | Affiliated Income |
|---|---|---|---|---|---|---|---|---|---|
| SFR WLIF II, LLC (U.S. LLC Interest) | — | $ — | $ 4,437,497 | $ — | $ — | $ 99,844 | $ 4,537,341 | 4,437,497 | $ — |
| SFR WLIF III, LLC (U.S. LLC Interest) | — | — | 3,789,008 | — | — | (37,132) | 3,751,876 | 3,789,008 | — |
| BB Votorantim Highland Infrastructure LLC (Registered Investment Companies) | 10,000 | 2,966,972 | — | — | — | 516,109 | 3,483,081 | 10,000 | — |
| Highland Merger Arbitrage Fund (Registered Investment Companies) | 688,774 | 14,725,982 | 1,582,386 | (5,023,875) | 369,026 | (1,208,110) | 10,445,409 | 544,599 | 1,558,511 |
| Highland Global Allocation Fund (Registered Investment Companies) | — | — | 1,000 | — | — | — | 1,000 | 100 | 72,218 |
| NexPoint Strategic Opportunities Fund (Registered Investment Companies) | 351,861 | 7,881,686 | 1,497,460 | (139,379) | — | (1,419,938) | 7,819,829 | 436,131 | 772,485 |
| Total | 74,290,995 | $ 161,146,080 | $23,700,994 | $(81,249,336) | $4,476,582 | $ 7,664,907 | $ 115,739,227 | $ 35,726,034 | $6,009,408 |

### Note 11. Regulatory Matters

On August 17, 2018, the SEC adopted amendments to Regulation S-X. These changes are effective for periods after November 5, 2018. The updates to Registered Investment Companies were mainly focused on simplifying the presentation of distributable earnings by eliminating the need to present the components of distributable earnings on a book basis in the Statements of Assets and Liabilities. The update also impacted the presentation of undistributed net investment income and distribution to shareholders on the Consolidated Statements of Changes in Net Assets. The amounts presented in the current Consolidated Statements of Changes in Net Assets represent the aggregated total distributions of net investment income and realized capital gains, except for distributions classified as return of capital which are still presented separately.

### Note 12. New Accounting Pronouncements

In November 2016, the FASB issued Accounting Standards Update 2016-18, Statement of Cash Flows (Topic 230): Restricted Cash. The amendments in this update require the statement of cash flows to explain the change during the period in the total of cash, restricted cash and cash equivalents. Amounts generally described as restricted cash or restricted cash equivalents should be included with cash and cash equivalents when reconciling the beginning-of-period and end-of-period total amounts shown on the statement of cash flows. For public entities this update will be effective for

Annual Report | 33

Table of Contents

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (continued)

**September 30, 2019**                    **Highland Global Allocation Fund**

fiscal years beginning after December 15, 2017, and for interim periods within those fiscal years. The Investment Adviser has evaluated the impact of this new guidance and effective April 1, 2018, the Fund no longer reports the change in restricted cash and cash equivalents in the operating and investing sections in our Consolidated Statement of Cash Flows. Restricted cash and cash equivalents are now included in the beginning and end of the period cash and cash equivalents on the Consolidated Statement of Cash Flows. These changes have been applied using a retrospective transition method to each period presented.

In December 2016, the FASB issued Accounting Standards Update 2016-19, Technical Corrections and Improvements. The amendments in this update include an amendment to FASB ASC Topic 820, Fair Value Measurement and Disclosures to clarify the difference between a valuation approach and a valuation technique. The amendment also requires an entity to disclose when there has been a change in either or both a valuation approach and/or a valuation technique. For public entities, this update will be effective for fiscal years beginning after December 15, 2017, and for interim periods within those fiscal years. The Investment Adviser has evaluated the impact of this new guidance and the adoption of this guidance did not have a material impact on the Fund's consolidated financial statements.

In March 2017, the FASB issued Accounting Standards Update 2017-08, Receivables — Nonrefundable Fees and Other Costs (Subtopic 310-20). The amendments in this update shorten the amortization period for certain callable debt securities held at premium. Specifically, the amendments require the premium to be amortized to the earliest call date. The amendments do not require an accounting change for securities held at a discount; the discount continues to be amortized to maturity. For public entities this update will be effective for fiscal years beginning after December 15, 2018, and for interim periods within those fiscal years. The Investment Adviser is currently evaluating the impact of this new guidance on the Fund's consolidated financial statements.

In February 2018, the FASB issued Accounting Standards Update 2018-03, Technical Corrections and Improvements to Financial Instruments — Overall (Subtopic 825-10): Recognition and Measurement of Financial Assets and Financial Liabilities. The amendments in this update provide a variety of technical corrections and improvements to how entities should account for financial instruments. For public entities this update will be effective for fiscal years beginning after December 15, 2017, and for interim periods within those fiscal years beginning after June 15, 2018. The Investment Adviser has evaluated the impact of this new guidance and the adoption of this guidance did not have a material impact on the Fund's consolidated financial statements.

In August 2018, the FASB issued Accounting Standards Update 2018-13, Fair Value Measurement (Topic 820). The new guidance includes additions and modifications to disclosures requirements for fair value measurements. For public entities, the amendments are effective for consolidated financial statements issued for fiscal years beginning after December 15, 2019, and interim periods within those fiscal years. At this time, management is currently evaluating the impact of this new guidance on the consolidated financial statements and disclosures.

### Note 13. Legal Matters

The Fund received a shareholder demand letter dated March 1, 2018, from an individual purporting to be a share-holder of the Fund (the "Demand Letter"). The Demand Letter alleges that the current and former Board breached their fiduciary duties, and the Investment Adviser breached its advisory agreement, in relation to the Fund's investment in shares of an affiliated mutual fund, the Highland Energy MLP Fund (also a series of the Trust). The Fund holds $15.5 million (or 61.5%) of the Highland Energy MLP Fund. Upon receipt of the Demand Letter, the Board formed a Demand Review Committee ("DRC") comprised entirely of independent trustees to investigate these claims and to make a recommendation to the Board regarding whether pursuit of these claims is in the best interests of the Fund. Aided by independent counsel to the committee, the DRC engaged in a thorough and detailed review of the allegations contained in the Demand Letter. Upon completion of its evaluation, the DRC recommended that the Fund's independent trustees, who represent a majority of the Board, reject the demand specified in the shareholder Demand Letter.

After considering the report of the DRC, the independent trustees unanimously agreed and rejected the demand, noting that the Demand Letter contained material factual errors and incorrect assumptions, and the proposed suit was meritless and should not be pursued. A copy of the report was provided to the purported shareholder and her counsel.

Notwithstanding the foregoing, the purported shareholder (the "Plaintiff") filed a shareholder derivative suit against the Fund, certain members of the Board and the Investment Adviser on September 5, 2018 (the "Shareholder Litigation"). Based on the extensive pre-suit investigation and the resulting report, the Fund, Board and Investment Adviser believe the claims made in the Shareholder Litigation are without merit and intend to vigorously defend against them. The case is Lanotte v. Highland Global Allocation Fund et al, 3:18-cv-02360, U.S. District Court for the Northern District of Texas (Dallas). The Demand Letter and the Shareholder Litigation are not related to the Proposals and do not alter the intention of the Fund and the Investment Adviser to redomicile the Fund and convert the Fund into a closed-end fund.

34 | Annual Report

Table of Contents

# NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (concluded)

**September 30, 2019**                                                  **Highland Global Allocation Fund**

The Investment Adviser (HCMFA) is affiliated through common control with Highland Capital Management, L.P. ("HCMLP"), an SEC-registered investment adviser. On October 16, 2019, HCMLP filed for Chapter 11 bankruptcy protection with the United States Bankruptcy Court for the District of Delaware. The Investment Adviser (HCMFA) is not a party to HCMLP's bankruptcy filing. Investment Adviser (HCMFA) is a party to a shared services arrangement with HCMLP. Under this arrangement, the Investment Adviser (HCMFA) may utilize employees from HCMLP in connection with various services such as human resources, accounting, tax, valuation, information technology services, office space, employees, compliance and legal. The Investment Adviser (HCMFA) does not expect HCMLP's bankruptcy filings to impact its provision of services to the Fund at this time.

## Note 14. Asset Coverage

The Fund is required to maintain 300% asset coverage with respect to amounts outstanding (excluding short-term borrowings). Asset coverage is calculated by subtracting the Fund's total liabilities, not including any amount representing bank loans and senior securities, from the Fund's total assets and dividing the result by the principal amount of the borrowings outstanding. As of the dates indicated below, the Fund's debt outstanding and asset coverage was as follows:

| Date | Total Amount Outstanding | % of Asset Coverage of Indebtedness |
| --- | --- | --- |
| 9/30/2019 | 120,295,348 | 346.2 |
| 9/30/2018 | 138,725,439 | 395.2 |
| 9/30/2017 | — | — |
| 9/30/2016 | 40,000,000 | 2,414.9 |
| 9/30/2015 | — | — |
| 9/30/2014 | — | — |
| 9/30/2013 | — | — |
| 9/30/2012 | — | — |
| 9/30/2011 | — | — |
| 9/30/2010 | — | — |
| 9/30/2009 | — | — |

## Note 15. Subsequent Event

Management has evaluated the impact of all subsequent events on the Fund through the date the consolidated financial statements were issued, and has determined that there were no subsequent events to report which have not already been recorded or disclosed in these consolidated financial statements and accompanying notes.

Annual Report │ 35

Table of Contents

# REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

## To the Board of Trustees and Shareholders of Highland Global Allocation Fund

*Opinion on the Consolidated Financial Statements*

We have audited the accompanying consolidated statement of assets and liabilities, including the consolidated investment portfolio, of Highland Global Allocation Fund (hereafter referred to as the "Fund"), as of September 30, 2019, the related consolidated statements of operations and cash flows for the year ended September 30, 2019, the consolidated statements of changes in net assets for each of the two years in the period ended September 30, 2019, including the related notes, and the consolidated financial highlights for each of the two years in the period ended September 30, 2019 (collectively referred to as the "consolidated financial statements"). In our opinion, the consolidated financial statements present fairly, in all material respects, the financial position of the Fund as of September 30, 2019, the results of its operations and its cash flows for the year then ended, the changes in its net assets for each of the two years in the period ended September 30, 2019 and the financial highlights for each of the two years in the period ended September 30, 2019 in conformity with accounting principles generally accepted in the United States of America.

The financial statements of the Fund as of and for the year ended September 30, 2017 and the financial highlights for each of the periods ended on or prior to September 30, 2017 (not presented herein, other than the financial highlights) were audited by other auditors whose report dated November 28, 2017 expressed an unqualified opinion on those financial statements and financial highlights.

*Basis for Opinion*

These consolidated financial statements are the responsibility of the Fund's management. Our responsibility is to express an opinion on the Fund's consolidated financial statements based on our audits. We are a public accounting firm registered with the Public Company Accounting Oversight Board (United States) (PCAOB) and are required to be independent with respect to the Fund in accordance with the U.S. federal securities laws and the applicable rules and regulations of the Securities and Exchange Commission and the PCAOB.

We conducted our audits of these consolidated financial statements in accordance with the standards of the PCAOB. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the consolidated financial statements are free of material misstatement, whether due to error or fraud.

Our audits included performing procedures to assess the risks of material misstatement of the consolidated financial statements, whether due to error or fraud, and performing procedures that respond to those risks. Such procedures included examining, on a test basis, evidence regarding the amounts and disclosures in the consolidated financial statements. Our audits also included evaluating the accounting principles used and significant estimates made by management, as well as evaluating the overall presentation of the consolidated financial statements. Our procedures included confirmation of securities owned as of September 30, 2019 by correspondence with the custodian and brokers; when replies were not received from brokers, we performed other auditing procedures. We believe that our audits provide a reasonable basis for our opinion.

/s/ PricewaterhouseCoopers LLP

Dallas, Texas
November 27, 2019

We have served as the auditor of one or more investment companies of Highland Capital Management Fund Advisors, L.P. and its affiliates since 2004.

36 | Annual Report

Table of Contents

# ADDITIONAL INFORMATION (unaudited)

**September 30, 2019**                                      **Highland Global Allocation Fund**

## Tax Information

For shareholders that do not have a September 30, 2019 tax year end, this notice is for informational purposes only. For shareholders with a September 30, 2019 tax year end, please consult your tax adviser as to the pertinence of this notice. For the fiscal year ended September 30, 2019, the Fund is designating the following items with regard to earnings for the year.

| Return of Capital | Long-Term Capital Gain Distribution | Ordinary Income Distribution | Total Distribution |
|---|---|---|---|
| 72.46% | 0.00% | 27.54% | 100.00% |

| Dividends Received Deduction[1] | Qualified Dividend Income[2] | Interest Related Dividends[3] | Short-Term Capital Gain Dividends[4] | Qualifying Business Income[5] |
|---|---|---|---|---|
| 100.00% | 100.00% | 41.02% | 0.00% | 0.00% |

(1) Qualifying dividends represent dividends which qualify for the corporate dividends received deduction and is reflected as a percentage of ordinary income distributions (the total of short-term capital gain and net investment income distributions).

(2) The percentage in this column represents the amount of "Qualifying Dividend Income" as created by the Jobs and Growth Tax Relief Reconciliation Act of 2003 and is reflected as a percentage of ordinary income distributions (the total of short-term capital gain and net investment income distributions). It is the intention of each of the aforementioned Funds to designate the maximum amount permitted by law.

(3) The percentage in this column represents the amount of "Interest Related Dividends" as created by the American Jobs Creation Act of 2004 and is reflected as a percentage of net investment distributions that is exempt from U.S. withholding tax when paid to foreign investors.

(4) The percentage in this column represents the amount of "Short-Term Capital Gain Dividend" as created by the American Jobs Creation Act of 2004 and is reflected as a percentage of short-term capital gain distributions that is exempt from U.S. withholding tax when paid to foreign investors.

(5) The percentage in this column represents that amount of ordinary dividend income that qualified for 20% Business Income Deduction.

## Additional Portfolio Information

The Investment Adviser and its affiliates manage other accounts, including registered and private funds and individual accounts. Although investment decisions for the Fund are made independently from those of such other accounts, the Investment Adviser may, consistent with applicable law, make investment recommendations to other clients or accounts that may be the same or different from those made to the Fund, including investments in different levels of the capital structure of a company, such as equity versus senior loans, or that involve taking contradictory positions in multiple levels of the capital structure. The Investment Adviser has adopted policies and procedures that address the allocation of investment opportunities, execution of portfolio transactions, personal trading by employees and other potential conflicts of interest that are designed to ensure that all client accounts are treated equitably over time. Nevertheless, this may create situations where a client could be disadvantaged because of the investment activities conducted by the Investment Adviser

for other client accounts. When the Fund and one or more of such other accounts is prepared to invest in, or desire to dispose of, the same security, available investments or opportunities for each will be allocated in a manner believed by the Investment Adviser to be equitable to the Fund and such other accounts. The Investment Adviser also may aggregate orders to purchase and sell securities for the Fund and such other accounts. Although the Investment Adviser believes that, over time, the potential benefits of participating in volume transactions and negotiating lower transaction costs should benefit all accounts including the Fund, in some cases these activities may adversely affect the price paid or received by the Fund or the size of the position obtained or disposed of by the Fund.

## Disclosure of Fund Expenses

As a shareholder of a Fund, you incur two types of costs: (1) transaction costs, including sales charges (loads) on purchases and redemption fees; and (2) ongoing costs, including management fees; distribution (12b-1) and service fees; and other Fund expenses. This example is intended to help you understand the ongoing costs (in dollars) of investing in your Fund and to compare these costs with the ongoing costs of investing in other mutual funds. The example is based on an investment of $1,000 invested at the beginning of the period and held for the six-month period April 1, 2019 through September 30, 2019, unless otherwise indicated. This table illustrates your Fund's costs in two ways:

**Actual Expenses:** The first part of the table provides information about actual account values and actual expenses. You may use the information in this line, together with the amount you invested, to estimate the expenses that you paid over the period. Simply divide your account value by $1,000 (for example, an $8,600 account value divided by $1,000 = 8.6), then multiply the result by the number in the first line under the heading entitled "Expenses Paid During Period" to estimate the expenses you paid on your account during this period.

**Hypothetical Example for Comparison Purposes:** The second part of the table provides information about hypothetical account values and hypothetical expenses based on your Fund's actual expense ratio and an assumed rate of return of 5% per year before expenses, which is not your Fund's actual return. The actual expense ratio includes voluntary fee waivers or expense reimbursements by the Fund's investment adviser. The expense ratio would be higher had the fee waivers and expense reimbursements not been in effect. The hypothetical account values and expenses may not be used to estimate the actual ending account balance or expenses you paid for the period. You may use this information to compare the ongoing costs of investing in your Fund and other funds. To do so, compare this 5% hypothetical example with the 5% hypothetical examples that appear in the shareholder reports

Annual Report | 37

Table of Contents

## ADDITIONAL INFORMATION (unaudited) (continued)

September 30, 2019                                                                               Highland Global Allocation Fund

of the other funds. Please note that the expenses shown in the table are meant to highlight your ongoing costs only and do not reflect any transactional costs, such as sales charges (loads) or redemption fees. Therefore, the second part of the table is useful in comparing ongoing costs only, and will not help you determine the relative total costs of owning different funds. In addition, if these transactional costs were included, your costs would have been higher.

| | Beginning Account Value 04/01/19 | Ending Account Value 09/30/19 | Annualized Expense Ratios | Expenses Paid During Period[1] |
|---|---|---|---|---|
| Actual Fund Return | | | | |
| | $1,000.00 | $1,022.90 | 1.84% | $   9.28 |
| Hypothetical 5% Return (before expenses) | | | | |
| | $1,000.00 | $1,015.80 | 1.84% | $   9.25 |

(1) Expenses are equal to the Fund's annualized expense ratio multiplied by the average account value over the period, multiplied by the number of days in the most recent fiscal half-year, divided by the number of days in the full fiscal year (183/365).

### Approval of Highland Funds II Investment Advisory Agreement (Highland Global Allocation Fund)

The Fund has retained the Investment Adviser to manage the assets of the Fund pursuant to an investment advisory agreement between the Investment Adviser and the Fund (the "Advisory Agreement"). The Advisory Agreement has been approved by the Fund's Board of Trustees, including a majority of the Independent Trustees. The Advisory Agreement continues in effect from year-to-year, provided that such continuance is specifically approved at least annually by the vote of holders of at least a majority of the outstanding shares of the Fund or by the Board of Trustees and, in either event, by a majority of the Independent Trustees of the Fund casting votes in person at a meeting called for such purpose.

During a telephonic meeting held on August 15, 2019, the Board of Trustees gave preliminary consideration to information bearing on the continuation of the Agreement for a one-year period commencing November 1, 2019 with respect to the Fund. The primary objective of the meeting was to ensure that the Trustees had the opportunity to consider matters they deemed relevant in evaluating the continuation of the Agreement, and to request any additional information they considered reasonably necessary for their deliberations.

At an in-person meeting held on September 19-20, 2019, the Board of Trustees, including the Independent Trustees, approved the continuance of the Agreement for a one-year period commencing on November 1, 2019. As part of its review process, the Board requested, through its independent legal counsel, and received from the Investment Adviser, various information and written materials,

including: (1) information regarding the financial soundness of the Investment Adviser and on the anticipated profitability of the Advisory Agreement to the Investment Adviser; (2) information on the advisory and compliance personnel of the Investment Adviser, including compensation arrangements for portfolio managers; (3) information on internal compliance procedures of the Investment Adviser, including policies and procedures for personal securities transactions and with respect to cybersecurity, business continuity and disaster recovery; (4) comparative information showing how the Fund's fees and expenses compare to those of other registered investment companies and comparable funds managed by the Investment Adviser that follow investment strategies similar to those of the Fund, if any; (5) information regarding the investment performance of other accounts managed by the Investment Adviser that follow investment strategies similar to the Fund, if any; (6) premium and discount information with respect to the Fund; and (7) information on any legal proceedings or regulatory audits or investigations affecting the Investment Adviser or its affiliates. In addition, the Board of Trustees received an independent report from FUSE Research Network ("FUSE"), an independent source of investment company data, relating to the Fund's performance and expenses compared to the performance and expenses of a group of funds deemed by FUSE to be comparable to the Fund (the "peer group"), and to a larger group of comparable funds (the "peer universe").

The Board of Trustees' evaluation process with respect to the Investment Adviser is an ongoing one. In this regard, the Board of Trustees also took into account discussions with management and information provided to the Board of Trustees at periodic meetings of the Board of Trustees over the course of the year with respect to the services provided by the Investment Adviser to the Fund, including quarterly performance reports prepared by management containing reviews of investment results and prior presentations from the Investment Adviser with respect to the Fund. The information received and considered by the Board of Trustees in connection with the September 19-20, 2019 meeting and throughout the year was both written and oral.

The Board of Trustees reviewed various factors that were discussed in a legal memorandum provided by independent counsel regarding trustee responsibilities in considering the Advisory Agreement, the detailed information provided by the Investment Adviser and other relevant information and factors. The Board of Trustees also considered other factors (including conditions and trends prevailing generally in the economy, the securities markets, and the industry). The Board of Trustees' conclusions as to the approval of the Advisory Agreement were based on a comprehensive consideration of all information provided to the Trustees without any single factor being dispositive in and of itself.

Table of Contents

## ADDITIONAL INFORMATION (unaudited) (continued)

**September 30, 2019**                                                                        **Highland Global Allocation Fund**

Some of the factors that figured particularly in the Board of Trustees' deliberations are described below, although individual Trustees may have evaluated the information presented differently from one another, giving different weights to various factors. In addition, the Board of Trustees' conclusions may be based in part on its consideration of the advisory arrangements in prior years and on the Board's ongoing regular review of fund performance and operations throughout the year.

Throughout the process, the Board of Trustees had the opportunity to ask questions of and request additional information from the Investment Adviser. The Board of Trustees was assisted by legal counsel for the Trust and the Independent Trustees were also separately assisted by independent legal counsel throughout the process. The Independent Trustees were advised by and met in executive sessions with their independent legal counsel at which no representatives of management were present to discuss the proposed continuation of the Advisory Agreement, including prior to the September 19-20, 2019 meeting.

**The nature, extent, and quality of the services to be provided by the Investment Adviser.** The Board considered the portfolio management services to be provided by the Investment Adviser under the Advisory Agreement and the activities related to portfolio management, including use of technology, research capabilities and investment management staff. The Board discussed the relevant experience and qualifications of the personnel who would provide advisory services, including the background and experience of the members of the Fund's portfolio management team. The Trustees reviewed the management structure, assets under management and investment philosophies and processes of the Investment Adviser, including with respect to liquidity management. The Board also reviewed and discussed information regarding the Investment Adviser's compliance policies, procedures and personnel, including compensation arrangements and with respect to valuation, cybersecurity, business continuity and disaster recovery. The Board also considered the Investment Adviser's risk management processes. The Board of Trustees took into account the terms of the Advisory Agreement and considered that, the Investment Adviser, subject to the direction of the Board of Trustees, is responsible for providing advice and guidance with respect to the Fund and for managing the investment of the assets of the Fund. The Board of Trustees also took into account that the scope of services provided by the Investment Adviser and the undertakings required of the Investment Adviser in connection with those services, including maintaining and monitoring its own and the Fund's compliance program, had expanded over time as a result of regulatory, market and other developments. The Board of Trustees also considered the quality of the Investment

Adviser's compliance oversight program with respect to the Fund's service providers. The Board of Trustees also considered both the investment advisory services and the nature, quality and extent of any administrative and other non-advisory services that are provided to the Fund and its shareholders by the Investment Adviser and its affiliates. The Board also considered the significant risks assumed by the Investment Adviser in connection with the services provided to the Fund, including entrepreneurial risk and ongoing risks including investment, operational, enterprise, litigation, regulatory and compliance risks with respect to the Fund. The Board of Trustees also noted various cost-savings initiatives that had been implemented by the Adviser with respect to the Fund and the other funds in the Highland complex over the years.

The Board of Trustees also noted that on a regular basis it receives and reviews information from the Fund's Chief Compliance Officer (CCO) regarding the Fund's compliance policies and procedures established pursuant to Rule 38a-1 under the Investment Company Act of 1940.

In considering the nature, extent, and quality of the services provided by the Investment Adviser, the Board also took into account its knowledge of the Investment Adviser's management and the quality of the performance of its duties, through discussions and reports during the preceding year and in past years.

The Board took into account the Investment Adviser's risk assessment, monitoring process and regulatory history. The Board concluded that the Investment Adviser had the quality and depth of personnel and investment methods essential to performing its duties under the Advisory Agreement, and that the nature and the quality of such advisory services supported the approval of the Advisory Agreement.

**The Investment Adviser's historical performance.** In considering the Fund's performance, the Board of Trustees noted that it reviews at its regularly scheduled meetings information about the Fund's performance results. The Board of Trustees reviewed the historical performance of the Fund over various time periods and reflected on previous discussions regarding matters bearing on the Investment Adviser's performance at its meetings throughout the year. The Board of Trustees discussed the performance of the Fund and considered the relative performance of the Fund and its portfolio management team as compared to that of the Fund's peer group as selected by FUSE, as well as comparable indices. Among other data, the Board of Trustees also received data with respect to the Fund's leverage and distribution rates as compared to its peer group. The Board of Trustees noted that while it found the data provided by FUSE, the independent third-party data provider, generally useful, it recognized its limitations, including in particular

Annual Report ┃ 39

Table of Contents

## ADDITIONAL INFORMATION (unaudited) (continued)

**September 30, 2019**                                          **Highland Global Allocation Fund**

that the data may vary depending on the end date selected and the results of the performance comparisons may vary depending on the selection of the peer group. The Board of Trustees also took into account management's discussion of the Morningstar category in which the Fund was placed for comparative purposes, including any differences between the Fund's investment strategy and the strategy of the funds in the Fund's respective category, as well as compared to the peer group selected by FUSE.

Among other data relating specifically to the Fund's performance, the Board took note of the Fund's conversion from an open-end to a closed-end structure. The Board considered that the Fund trailed its benchmark, the FTSE All World TR USD Index for the one-, three-, five- and ten-year periods ended June 30, 2019. The Board further considered that the Fund had underperformed its peer group median for the three-, five- and ten-year periods ended June 30, 2019 and had outperformed its peer group median for the one-year period ended June 30, 2019. The Board of Trustees also took into account management's discussion of the Fund's underperformance, including a discussion of certain of the Fund' holdings and plans to improve Fund performance. The Board also took into account information about the Fund's discount/premium ranking relative to other peers and actions taken to address the Fund's discount.

The Board of Trustees concluded that the Fund's overall performance and other relevant factors, including the Adviser's actions to address any underperformance, supported the continuation of the Agreement with respect to the Fund for an additional one-year period.

**The costs of the services to be provided by the Investment Adviser and the profits to be realized by the Investment Adviser and its affiliates from the relationship with the Fund.** The Board of Trustees also gave consideration to the fees payable under the Agreement, the expenses the Investment Adviser incur in providing advisory services and the profitability to the Investment Adviser from managing the Fund, including: (1) information regarding the financial condition of the Investment Adviser; (2) information regarding the total fees and payments received by the Investment Adviser for its services and, with respect to the Investment Adviser, whether such fees are appropriate given economies of scale and other considerations; (3) comparative information showing (a) the fees payable under the Agreement versus the investment advisory fees of certain registered investment companies and comparable funds that follow investment strategies similar to those of the Fund and (b) the expense ratios of the Fund versus the expense ratios of certain registered investment companies and comparable funds that follow investment strategies similar to those of the Fund; and (4) information regarding the total fees and payments received and the related amounts waived and/or

reimbursed by the Investment Adviser for providing administrative services with respect to the Fund under separate agreements and whether such fees are appropriate. The Board of Trustees took into account the management fee structure, including that management fees for the Fund were based on the Fund's total managed assets.

Among other data, the Board of Trustees noted that the net management fee (including administrative fees) of the Fund was below the median of its peer group. The Board also noted that the total net expenses as a percentage of average managed assets of the Fund are above the median of its peer group. The Board of Trustees took into account management's discussion of the Fund's expenses and also took into consideration the amounts waived and/or reimbursed by the Investment Adviser in the prior year and in years past with respect to the Fund.

The Board of Trustees also considered the so-called "fall-out benefits" to the Investment Adviser with respect to the Fund, such as the reputational value of serving as Investment Adviser to the Fund, potential fees paid to the Investment Adviser's affiliates by the Fund or portfolio companies for services provided, including administrative services provided to the Fund by the Investment Adviser pursuant to separate agreements, the benefits of scale from investment by the Fund in affiliated funds, and the benefits of research made available to the Investment Adviser by reason of brokerage commissions (if any) generated by the Fund's securities transactions. The Board of Trustees concluded that the benefits received by the Investment Adviser and its affiliates were reasonable in the context of the relationship between the Investment Adviser and the Fund.

After such review, the Board of Trustees determined that the profitability to the Investment Adviser and its affiliates from their relationship with the Fund was not excessive. The Trustees also took into consideration the amounts waived and/or reimbursed, if any, where expense caps or advisory fee waivers had been implemented.

**The extent to which economies of scale would be realized as the Fund grows and whether fee levels reflect these economies of scale for the benefit of shareholders.** The Board considered the effective fee under the Advisory Agreement for the Fund as a percentage of assets at different asset levels and possible economies of scale that may be realized if the assets of the Fund grow. The Board noted that the advisory fee for the Fund did not have breakpoints. The Board considered the Investment Adviser's discussion of the Fund's advisory fee structure. The Board of Trustees also noted that the Investment Adviser had reimbursed and/or waived expenses with respect to the Fund over the years. The Board also noted that the Fund's contractual advisory fee was lower than its peer universe at all asset levels. The

Table of Contents

## ADDITIONAL INFORMATION (unaudited) (continued)

**September 30, 2019**                                      **Highland Global Allocation Fund**

Board of Trustees concluded that the fee structures are reasonable, and with respect to the Investment Adviser, should result in a sharing of economies of scale in view of the information provided. The Board determined to continue to review ways, and the extent to which, economies of scale might be shared between the Investment Adviser on the one hand and shareholders of the Fund on the other.

### Conclusion.
Following a further discussion of the factors above, it was noted that in considering the approval of the Advisory

Agreement, no single factor was determinative to the decision of the Board of Trustees. Rather, after weighing all factors and considerations, including those discussed above, the Board of Trustees, including separately, the Independent Trustees, unanimously agreed that the Advisory Agreement, including the advisory fee to be paid to the Investment Adviser, is fair and reasonable to the Fund in light of the services that the Investment Adviser proposes to provide, the expenses that it incurs and the reasonably foreseeable asset levels of the Fund.

Annual Report | 41

Table of Contents

## ADDITIONAL INFORMATION (unaudited) (continued)

**September 30, 2019**                                                          **Highland Global Allocation Fund**
**Trustees and Officers**

The Board is responsible for the overall management of the Fund, including supervision of the duties performed by the Investment Adviser. The names and birth dates of the Trustees and officers of the Fund, the year each was first elected or appointed to office, their principal business occupations during the last five years, the number of funds overseen by each Trustee and other directorships they hold are shown below. The business address for each Trustee and officer of the Fund is c/o Highland Capital Management Fund Advisors, L.P., 300 Crescent Court, Suite 700, Dallas, TX 75201.

| Name and Date of Birth | Position(s) with the Fund | Term of Office[1] and Length of Time Served | Principal Occupation(s) During Past Five Years | Number of Portfolios in the Highland Funds Complex Overseen by the Trustee[2] | Other Directorships/ Trusteeships Held During the Past Five Years | Experience, Qualifications, Attributes, Skills for Board Membership |
|---|---|---|---|---|---|---|
| | | | **Independent Trustees** | | | |

| | | | | | |
|---|---|---|---|---|---|
| Dr. Bob Froehlich (4/28/1953) | Trustee | Indefinite Term; Trustee since December 2013. | Retired. | 23 | Trustee of ARC Realty Finance Trust, Inc. (from January 2013 to May 2016); Director of KC Concessions, Inc. (since January 2013); Trustee of Realty Capital Income Funds Trust (from January 2014 to December 2016); Director of American Realty Capital Healthcare Trust II (from January 2013 to June 2016); Director, American Realty Capital Daily Net Asset Value Trust, Inc. (from November 2012 to July 2016); Director of American Sports Enterprise, Inc. (since January 2013); Director of Davidson Investment Advisors (from July 2009 to July 2016); Chairman and owner, Kane County Cougars Baseball Club (since January 2013); Advisory Board of Directors, Internet Connectivity Group, Inc. (from January 2014 to April 2016); Director of AXAR Acquisition Corp. (formerly AR Capital Acquisition Corp.) (from October 2014 to October 2017); Director of The Midwest League of Professional Baseball Clubs, Inc.; Director of Kane County Cougars Foundation, Inc.; Director of Galen Robotics, Inc.; Chairman and Director of FC Global Realty, Inc. (from May 2017 to June 2018); Chairman; Director of First Capital Investment Corp. (from March 2017 to March 2018); and Director and Special Advisor to Vault Data, LLC (since February 2018). | Significant experience in the financial industry; significant managerial and executive experience; significant experience on other boards of directors, including as a member of several audit committees. |

42 | Annual Report

Table of Contents

## ADDITIONAL INFORMATION (unaudited) (continued)

**September 30, 2019**                                                                    **Highland Global Allocation Fund**
**Trustees and Officers**

| Name and Date of Birth | Position(s) with the Fund | Term of Office[1] and Length of Time Served | Principal Occupation(s) During Past Five Years | Number of Portfolios in the Highland Funds Complex Overseen by the Trustee[2] | Other Directorships/ Trusteeships Held During the Past Five Years | Experience, Qualifications, Attributes, Skills for Board Membership |
|---|---|---|---|---|---|---|
| | | | **Independent Trustees** | | | |
| John Honis[3] (6/16/1958) | Trustee | Indefinite Term; Trustee since July 2013. | President of Rand Advisors, LLC since August 2013; and Partner of Highland Capital Management, L.P. ("HCM") from February 2007 until his resignation in November 2014. | 23 | Manager of Turtle Bay Resort, LLC (August 2011 — December 2018); Manager of American Home Patient (November 2011 to February 2016). | Significant experience in the financial industry; significant managerial and executive experience, including experience as president, chief executive officer or chief restructuring officer of five telecommunication firms; experience on other boards of directors. |

| Ethan Powell[4] (6/20/1975) | Trustee; Chairman of the Board | Indefinite Term; Trustee since December 2013; Chairman of the Board since December 2013; and Executive Vice President and Principal Executive Officer from June 2012 until December 2015. | President and Founder of Impact Shares LLC since December 2015; Trustee/Director of the Highland Funds Complex from June 2012 until July 2013 and since December 2013; Chief Product Strategist of Highland Capital Management Fund Advisors, L.P. ("HCMFA") from 2012 until December 2015; Senior Retail Fund Analyst of HCM from 2007 until December 2015 and HCMFA from its inception until December 2015; President and Principal Executive Officer of NHF from June 2012 until May 2015; Secretary of NHF from May 2015 until December 2015; Executive Vice President and Principal Executive Officer of HFI and HFII from June 2012 until December 2015; and Secretary of HFI and HFII from November 2010 to May 2015. | 23 | Trustee of Impact Shares Funds I Trust | Significant experience in the financial industry; significant executive experience including past service as an officer of funds in the Highland Funds Complex; significant administrative and managerial experience. |

Annual Report │ 43

Table of Contents

## ADDITIONAL INFORMATION (unaudited) (continued)

**September 30, 2019**                                                                 **Highland Global Allocation Fund**
**Trustees and Officers**

| Name and Date of Birth | Position(s) with the Fund | Term of Office[1] and Length of Time Served | Principal Occupation(s) During Past Five Years | Number of Portfolios in the Highland Funds Complex Overseen by the Trustee[2] | Other Directorships/ Trusteeships Held During the Past Five Years | Experience, Qualifications, Attributes, Skills for Board Membership |
|---|---|---|---|---|---|---|
| | | | **Independent Trustees** | | | |
| Bryan A. Ward (2/4/1955) | Trustee | Indefinite Term; Trustee since inception in 2006. | Senior Advisor, CrossFirst Bank since April 2019; Private Investor, BW Consulting, LLC since 2014; Senior Manager, Accenture, LLP (a consulting firm) from 1991 until retirement in 2014. | 23 | Director of Equity Metrix, LLC | Significant experience in the financial industry; significant executive experience including past service as an officer of funds in the Highland Funds Complex; significant administrative and managerial experience. |

44 │ Annual Report

Table of Contents

## ADDITIONAL INFORMATION (unaudited) (continued)

**September 30, 2019**                                                                                   **Highland Global Allocation Fund**
**Trustees and Officers**

| Name and Date of Birth | Position(s) with the Fund | Term of Office[1] and Length of Time Served | Principal Occupation(s) During Past Five Years | Number of Portfolios in the Highland Funds Complex Overseen by the Trustee[2] | Other Directorships/ Trusteeships Held During the Past Five Years | Experience, Qualifications, Attributes, Skills for Board Membership |
|---|---|---|---|---|---|---|
| | | | **Interested Trustee** | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Dustin Norris (1/6/1984) | Trustee | Indefinite Term; Trustee since February 2018; Executive Vice President since April 2019 | Head of Distribution and Chief Product Strategist at NexPoint since March 2019; President of NexPoint Securities, Inc. (formerly, Highland Capital Funds Distributor, Inc.) since April 2018; Head of Distribution at HCMFA from November 2017 until March 2019; Secretary of HFRO, GAF, HFI and HFII from October 2017 until April 2019; Assistant Secretary of HFRO and GAF II from August 2017 to October 2017; Chief Product Strategist at HCMFA from September 2015 to March 2019; Director of Product Strategy at HCMFA from May 2014 to September 2015; Assistant Secretary of HFI and HFII from March 2017 to October 2017; Secretary of NHF from December 2015 until April 2019; Assistant Treasurer of NexPoint Real Estate Advisors, L.P. since May 2015; Assistant Treasurer of NexPoint Real Estate Advisors II, L.P. since June 2016; Assistant Treasurer of HFI and HFII from November 2012 to March 2017; Assistant Treasurer of NHF from November 2012 to December 2015; Secretary of the BDC from 2014 until April 2019; and Secretary of the Interval Funds from March 2016 until April 2019. | 23 | None | Significant experience in the financial industry; significant managerial and executive experience, including experience as an officer of the Highland Funds Complex since 2012. |

Annual Report │ 45

Table of Contents

# ADDITIONAL INFORMATION (unaudited) (continued)

**September 30, 2019**                                                      Highland Global Allocation Fund
**Trustees and Officers**

1   On an annual basis, as a matter of Board policy, the Governance and Compliance Committee reviews each Trustee's performance and determines whether to extend each such Trustee's service for another year. Effective June 2013, the Board adopted a retirement policy wherein the Governance and Compliance Committee shall not recommend the continued service as a Trustee of a Board member who is older than 80 years of age at the time the Governance and Compliance Committee reports its findings to the Board.

2   The "Highland Fund Complex" consists of NHF, each series of HFI, each series of HFII, HFRO, GAF, the Interval Funds, and NexPoint Capital, Inc., a closed-end management investment company that has elected to be treated as a business development company under the 1940 Act.

3   Since May 1, 2015, Mr. Honis has been treated as an Independent Trustee of the Trust. Prior to that date, Mr. Honis was treated as an Interested Trustee because he was a partner of an investment adviser affiliated with the Adviser until his resignation in November 2014. As of September 30, 2019, Mr. Honis was entitled to receive aggregate severance and/or deferred compensation payments of approximately $230,000 from another affiliate of the Adviser. Mr. Honis also serves as a director of a portfolio company affiliated with the Adviser.

    In addition, Mr. Honis serves as a trustee of a trust that owns substantially all of the economic interest in an investment adviser affiliated with the Adviser. Mr. Honis indirectly receives an asset-based fee in respect of such interest, which is projected to range from $450,000-$550,000 annually. Additionally, an investment adviser controlled by Mr. Honis has entered into a shared services arrangement with an affiliate of the Adviser, pursuant to which the affiliate provides back office support in exchange for approximately $50,000 per quarter. The affiliated adviser was paid $147,000 and $208,000 in 2017 and 2018, respectively. In light of these relationships between Mr. Honis and affiliates of the Adviser, it is possible that the SEC might in the future determine Mr. Honis to be an interested person of the Trust.

4   Prior to December 8, 2017, Mr. Powell was treated as an Interested Trustee of the Trust for all purposes other than compensation and the Trust's code of ethics.

| Name and Date of Birth | Position(s) with the Fund | Term of Office and Length of Time Served | Principal Occupation(s) During Past Five Years |
|---|---|---|---|
| | | **Officers** | |
| Frank Waterhouse (4/14/1971) | Treasurer, Principal Accounting Officer, Principal Financial Officer and Principal Executive Officer | Indefinite Term; Treasurer since May 2015. Principal Financial Officer and Principal Accounting Officer since October 2017. Principal Executive Officer since February 2018. | Partner and Chief Financial Officer of HCM; Treasurer of the Highland Funds Complex since May 2015. |
| Clifford Stoops (11/17/1970) | Assistant Treasurer | Indefinite Term; Assistant Treasurer since March 2017. | Chief Accounting Officer at HCM; Assistant Treasurer of the Highland Funds Complex since March 2017. |
| Jason Post (1/9/1979) | Chief Compliance Officer | Indefinite Term; Chief Compliance Officer since September 2015. | Chief Compliance Officer for HCMFA and NexPoint since September 2015; Chief Compliance Officer and Anti-Money Laundering Officer of the Highland Funds Complex since September 2015. Prior to his current role at HCMFA and NexPoint, Mr. Post served as Deputy Chief Compliance Officer and Director of Compliance for HCM. |

46 | Annual Report

**Table of Contents**

## ADDITIONAL INFORMATION (unaudited) (concluded)

**September 30, 2019**                                                            **Highland Global Allocation Fund**
**Trustees and Officers**

| Name and Date of Birth | Position(s) with the Fund | Term of Office and Length of Time Served | Principal Occupation(s) During Past Five Years |
|---|---|---|---|
| | | **Officers** | |
| Dustin Norris (1/6/1984) | Executive Vice President; Trustee | Indefinite Term; Executive Vice President since April 2019; Trustee since February 2018 | Head of Distribution and Chief Product Strategist at NexPoint since March 2019; President of NexPoint Securities, Inc. since April 2018; Head of Distribution at HCMFA from November 2017 until March 2019; Chief Product Strategist at HCMFA from September 2015 to March 2019; Director of Product Strategy at HCMFA from May 2014 to September 2015; Officer of the Highland Funds Complex since November 2012. |
| Lauren Thedford (1/7/1989) | Secretary since April 2019 | Indefinite Term; Secretary since April 2019 | Associate General Counsel at HCM since September 2017; In-House Counsel at HCM from January 2015 until September 2017; Secretary of the Highland Funds Complex since April 2019; member of the AT&T Performance Arts Center, Education and Community Committee since March 2019. |

Annual Report | 47

Table of Contents

# IMPORTANT INFORMATION ABOUT THIS REPORT

**Investment Adviser**
Highland Capital Management Fund Advisors,
L.P.
300 Crescent Court, Suite 700
Dallas, TX 75201

**Transfer Agent**
American Stock Transfer & Trust Company,
LLC
6201 15th Avenue
Brooklyn, NY 11219

**Underwriter**
NexPoint Securities, Inc.
300 Crescent Court, Suite 700
Dallas, TX 75201

**Custodian**
Bank of New York Mellon
240 Greenwich Street
New York, NY 10286

**Independent Registered Public Accounting
Firm**
PricewaterhouseCoopers LLP
2121 N. Pearl Street, Suite 2000
Dallas, TX 75201

**Fund Counsel**
K&L Gates LLP
1 Lincoln Street
Boston, MA 02111

This report has been prepared for shareholders of Highland Global Allocation Fund (the "Fund"). The Fund mails one shareholder report to each shareholder address. If you would like more than one report, please call shareholder services at 1-877-665-1287 to request that additional reports be sent to you.

A description of the policies and procedures that the Fund uses to determine how to vote proxies relating to their portfolio securities, and the Fund's proxy voting records for the most recent 12-month period ended September 30, are available (i) without charge, upon request, by calling 1-877-665-1287 and (ii) on the Securities and Exchange Commission's website at http://www.sec.report.

The Fund files its complete schedules of portfolio holdings with the Securities and Exchange Commission for the first and third quarters of each fiscal year as an exhibit to its report on Form N-PORT. The Fund's Form N-PORT are available on the Commission's website at http://www.sec.gov and also may be reviewed and copied at the Commission's Public Reference Room in Washington, DC. Information on the Public Reference Room may be obtained by calling 1-800-SEC-0330. Shareholders may also obtain the Form N-PORT by visiting the Fund's website at www.highlandfunds.com.

The Statements of Additional Information include additional information about the Fund's Trustees and are available upon request without charge by calling 1-877-665-1287.

48 | Annual Report

Table of Contents

**THIS PAGE LEFT BLANK INTENTIONALLY**

**Table of Contents**



**American Stock Transfer & Trust Company, LLC**
**6201 15th Avenue**
**Brooklyn, NY 11219**

# Highland Global Allocation Fund

Annual Report, September 30, 2019

www.highlandfunds.com

HFII-GAF-AR-09/19

Table of Contents

**Item 2.　　Code of Ethics.**

(a)　Highland Global Allocation Fund (the "Registrant"), as of the end of the period covered by this report, has adopted a code of ethics that applies to the Registrant's principal executive officer, principal financial officer, principal accounting officer or controller, or persons performing similar functions, regardless of whether these individuals are employed by the Registrant or a third party.

(b)　Not applicable.

(c)　There have been no amendments, during the period covered by this report, to a provision of the code of ethics that applies to the Registrant's principal executive officer, principal financial officer, principal accounting officer or controller, or persons performing similar functions, regardless of whether these individuals are employed by the Registrant or a third party, and that relates to any element of the code of ethics description.

(d)　The Registrant has not granted any waiver, including any implicit waiver, from a provision of the code of ethics that applies to the Registrant's principal executive officer, principal financial officer, principal accounting officer or controller, or persons performing similar functions, regardless of whether these individuals are employed by the Registrant or a third party, that relates to one or more of the items set forth in paragraph (b) of this Item's instructions.

(e)　Not applicable.

(f)　The Registrant's code of ethics that applies to the Registrant's principal executive officer, principal financial officer, principal accounting officer or controller, or persons performing similar functions is filed herewith as Exhibit (a)(1).

**Item 3.　　Audit Committee Financial Expert.**

As of the end of the period covered by the report, the Registrant's Board of Trustees (the "Board") has determined that Bryan A. Ward, a member of the Audit & Qualified Legal Compliance Committee of the Board (the "Audit Committee"), is an audit committee financial expert as defined by the U.S. Securities and Exchange Commission (the "SEC") in Item 3 of Form N-CSR. Mr. Ward is "independent" as defined by the SEC for purposes of this Item 3 of Form N-CSR.

**Item 4.　　Principal Accountant Fees and Services.**

Audit Fees

(a)　The aggregate fees billed for each of the last two fiscal years for professional services rendered by the principal accountant for the audit of the Registrant's annual financial statements or services that are normally provided by the accountant in connection with statutory and regulatory filings or engagements for those fiscal years are $320,000 for the fiscal year ended September 30, 2018 and $370,000 for the fiscal year ended September 30, 2019.

Audit-Related Fees

(b)　The aggregate fees billed in each of the last two fiscal years for assurance and related services by the principal accountant that are reasonably related to the performance of the audit of the Registrant's financial statements and are not reported under paragraph (a) of this Item are $399,500 for the fiscal year ended September 30, 2018 and $370,000 for the fiscal year ended September 30, 2019.

**Table of Contents**

Tax Fees

(c)    The aggregate fees billed in each of the last two fiscal years for professional services rendered by the principal accountant for tax compliance, tax advice, and tax planning are $20,000 for the fiscal year ended September 30, 2018 and $36,000 for the fiscal year ended September 30, 2019. The nature of the services related to assistance on the Registrant's tax returns and excise tax calculations.

All Other Fees

(d)    The aggregate fees billed in each of the last two fiscal years for products and services provided by the principal accountant, other than the services reported in paragraphs (a) through (c) of this Item are $0 for the fiscal year ended September 30, 2018 and $0 for the fiscal year ended September 30, 2019.

(e)(1)  Disclose the Audit Committee's pre-approval policies and procedures described in paragraph (c)(7) of Rule 2-01 of Regulation S-X:

      The Audit Committee shall:

        (a) have direct responsibility for the appointment, compensation, retention and oversight of the Registrant's independent auditors and, in connection therewith, to review and evaluate matters potentially affecting the independence and capabilities of the auditors; and

        (b) review and pre-approve (including associated fees) all audit and other services to be provided by the independent auditors to the Registrant and all non-audit services to be provided by the independent auditors to the Registrant's investment adviser or any entity controlling, controlled by or under common control with the investment adviser (an "Adviser Affiliate") that provides ongoing services to the Registrant, if the engagement relates directly to the operations and financial reporting of the Registrant; and

        (c) establish, to the extent permitted by law and deemed appropriate by the Audit Committee, detailed pre-approval policies and procedures for such services; and

        (d) review and consider whether the independent auditors' provision of any non-audit services to the Registrant, the Registrant's investment adviser or an Adviser Affiliate not pre-approved by the Audit Committee are compatible with maintaining the independence of the independent auditors.

(e)(2)  The percentage of services described in each of paragraphs (b) through (d) of this Item that were approved by the Audit Committee pursuant to paragraph (c)(7)(i)(C) of Rule 2-01 of Regulation S-X are as follows:

        (b) 100%

        (c) 100%

        (d) N/A

(f)    The percentage of hours expended on the principal accountant's engagement to audit the Registrant's financial statements for the most recent fiscal year that were attributed to work performed by persons other than the principal accountant's full-time, permanent employees was less than fifty percent.

Table of Contents

(g)  The aggregate non-audit fees billed by the Registrant's principal accountant for services rendered to the Registrant, and rendered to the Registrant's investment adviser (not including any sub-adviser whose role is primarily portfolio management and is subcontracted with or overseen by another investment adviser), and an Adviser Affiliate that provides ongoing services to the Registrant for each of the last two fiscal years of the Registrant was $20,000 for the fiscal year ended September 30, 2018 and $36,000 for the fiscal year ended September 30, 2019.

(h)  The Registrant's Audit Committee has considered whether the provision of non-audit services that were rendered to the Registrant's investment adviser (not including any sub-adviser whose role is primarily portfolio management and is subcontracted with or overseen by another investment adviser), and an Adviser Affiliate that provides ongoing services to the Registrant that were not pre-approved pursuant to paragraph (c)(7)(ii) of Rule 2-01 of Regulation S-X is compatible with maintaining the principal accountant's independence.

**Item 5.**      **Audit Committee of Listed Registrants.**

The Registrant has a separately-designated standing Audit Committee established in accordance with Section 3(a)(58)(A) of the Securities Exchange Act of 1934, as amended. It is composed of the following Trustees, each of whom is not an "interested person" as defined in the 1940 Act:

      Dr. Bob Froehlich

      Bryan A. Ward

      Ethan Powell

**Item 6.**      **Investments.**

(a)  Schedule of Investments in securities of unaffiliated issuers as of the close of the reporting period is included as part of the Annual Report to Shareholders filed under Item 1 of this form.

(b)  Not applicable.

**Item 7.**      **Disclosure of Proxy Voting Policies and Procedures for Closed-End Management Investment Companies.**

<div align="center">

**HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.**
**PROXY VOTING POLICY**

**<u>Purpose and Scope</u>**

</div>

The purpose of these voting policies and procedures (the "Policy") is to set forth the principles and procedures by which Highland Capital Management Fund Advisors, L.P. (the "Company") votes or gives consents with respect to the securities owned by Clients for which the Company exercises voting authority and discretion.[1] For avoidance of doubt, this includes any proxy and any shareholder vote or consent, including a vote or consent for a private company or other issuer that does not involve a proxy. These policies and procedures have been designed to help ensure that votes are cast in the best interests of Clients in accordance with the Company's fiduciary duties and Rule 206(4)-6 under the Investment Advisers Act of 1940 (the "Advisers Act").

---

[1]    In any case where a Client has instructed the Company to vote in a particular manner on the Client's behalf, those instructions will govern in lieu of parameters set forth in the Policy.

**Table of Contents**

This Policy applies to securities held in all Client accounts (including Retail Funds and other pooled investment vehicles) as to which the Company has explicit or implicit voting authority. Implicit voting authority exists where the Company's voting authority is implied by a general delegation of investment authority without reservation of proxy voting authority to the Client.

If the Company has delegated voting authority to an investment sub-adviser with respect to any Retail Fund, such sub-adviser will be responsible for voting all proxies for such Retail Funds in accordance with the sub-adviser's proxy voting policies. The Compliance Department, to provide oversight over the proxy voting by sub-advisers and to ensure that votes are executed in the best interests of the Retail Funds, shall (i) review the proxy voting policies and procedures of each Retail Fund sub-adviser to confirm that they comply with Rule 206(4)-6, both upon engagement of the sub-adviser and upon any material change to the sub-adviser's proxy voting policies and procedures, and (ii) require each such sub-adviser to provide quarterly certifications that all proxies were voted pursuant to the sub-adviser's policies and procedures or to describe any inconsistent votes.

## General Principles

The Company and its affiliates engage in a broad range of activities, including investment activities for their own accounts and for the accounts of various Clients and providing investment advisory and other services to Clients. In the ordinary course of conducting the Company's activities, the interests of a Client may conflict with the interests of the Company, other Clients and/or the Company's affiliates and their clients. Any conflicts of interest relating to the voting of proxies, regardless of whether actual or perceived, will be addressed in accordance with these policies and procedures. The guiding principle by which the Company votes all proxies is to vote in the best interests of each Client by maximizing the economic value of the relevant Client's holdings, taking into account the relevant Client's investment horizon, the contractual obligations under the relevant advisory agreements or comparable documents and all other relevant facts and circumstances at the time of the vote. The Company does not permit voting decisions to be influenced in any manner that is contrary to, or dilutive of, this guiding principle.

## Voting Procedures

*Third-Party Proxy Advisors*

The Company may engage a third-party proxy advisor ("Proxy Advisor") to provide proxy voting recommendations with respect to Client proxies. Proxy Advisor voting recommendation guidelines are generally designed to increase investors' potential financial gain. When considering whether to retain or continue retaining any particular Proxy Advisor, the Compliance Department will ascertain, among other things, whether the Proxy Advisor has the capacity and competency to adequately analyze proxy issues. In this regard, the Compliance Department will consider, among other things: the adequacy and quality of the Proxy Advisor's staffing and personnel; the robustness of its policies and procedures regarding its ability to (a) ensure that its proxy voting recommendations are based on current and accurate information and (b) identify and address any conflicts of interest and any other considerations that the Compliance Department determines would be appropriate in considering the nature and quality of the services provided by the Proxy Advisor. To identify and address any conflicts that may arise on the part of the Proxy Advisor, the Compliance Department will ensure that the Proxy Advisor notifies the Compliance Department of any relevant business changes or changes to its policies and procedures regarding conflicts.

*Third-Party Proxy Voting Services*

The Company may utilize a third-party proxy voting service ("Proxy Voting Service") to monitor holdings in Client accounts for purposes of determining whether there are upcoming shareholder meetings or similar corporate

Table of Contents

actions and to execute Client proxies on behalf of the Company pursuant to the Company's instructions, which shall be given in a manner consistent with this Policy. The Compliance Department will oversee each Proxy Voting Service to ensure that proxies have been voted in a manner consistent with the Company's instructions.

*Monitoring*

Subject to the procedures regarding Nonstandard Proxy Notices described below, the Compliance Department of the Company shall have responsibility for monitoring Client accounts for proxy notices. Except as detailed below, if proxy notices are received by other employees of the Company, such employees must promptly forward all proxy or other voting materials to the Compliance Department.

*Portfolio Manager Review and Instruction*

From time to time, the settlement group of the Company may receive nonstandard proxy notices, regarding matters including, but not limited to, proposals regarding corporate actions or amendments ("Nonstandard Proxy Notices") with respect to securities held by Clients. Upon receipt of a Nonstandard Proxy Notice, a member of the settlement group (the "Settlement Designee") shall send an email notification containing all relevant information to the Portfolio Manager(s) with responsibility for the security and *R-Settlement@highlandcapital.com*. Generally, the relevant Portfolio Manager(s) shall deliver voting instructions for Nonstandard Proxy Notices by replying to the email notice sent to the Portfolio Manager(s) and *R-Settlement@highlandcapital.com* by the Settlement Designee or by sending voting instructions to *R-Settlement@highlandcapital.com* and *R-Settlement@highlandcapital.com*. Any conflicts for Nonstandard Proxy Notices should also be disclosed to the Compliance Department. In the event a Portfolio Manager orally conveys voting instructions to the Settlement Designee or any other member of the Company's settlement group, that Settlement Designee or member of the Company's settlement group shall respond to the original notice email sent to R-Settlement@highlandcapital.com detailing the Portfolio Manager(s) voting instructions.

With regard to standard proxy notices, on a weekly basis, the Compliance Department will send a notice of upcoming proxy votes related to securities held by Clients and the corresponding voting recommendations of the Proxy Advisor to the relevant Portfolio Manager(s). Upon receipt of a proxy notice from the Compliance Department, the Portfolio Manager(s) will review and evaluate the upcoming votes and recommendations. The Portfolio Managers may rely on any information and/or research available to him or her and may, in his or her discretion, meet with members of an issuer's management to discuss matters of importance to the relevant Clients and their economic interests. Should the Portfolio Manager determine that deviating from the Proxy Advisor's recommendation is in a Client's best interest, the Portfolio Manager shall communicate his or her voting instructions to the Compliance Department.

In the event that more than one Portfolio Manager is responsible for making a particular voting decision and such Portfolio Managers are unable to arrive at an agreement as to how to vote with respect to a particular proposal, they should consult with the applicable Chief Compliance Officer (the "CCO") for guidance.

*Voting*

Upon receipt of the relevant Portfolio Managers' voting instructions, if any, the Compliance Department will communicate the instructions to the Proxy Voting Service to execute the proxy votes.

*Non-Votes*

It is the general policy of the Company to vote or give consent on all matters presented to security holders in any vote, and these policies and procedures have been designated with that in mind. However, the Company reserves the right to abstain on any particular vote if, in the judgment of the CCO, or the relevant Portfolio Manager, the effect on the relevant Client's economic interests or the value of the portfolio holding is insignificant in relation to the Client's portfolio, if the costs associated with voting in any particular instance outweigh the benefits to the relevant Clients or if the circumstances make such an abstention or withholding otherwise advisable and in the best

Table of Contents

interests of the relevant Clients not to vote. Such determination may apply in respect of all Client holdings of the securities or only certain specified Clients, as the Company deems appropriate under the circumstances. As examples, a Portfolio Manager may determine: (a) not to recall securities on loan if, in his or her judgment, the matters being voted upon are not material events affecting the securities and the negative consequences to Clients of disrupting the securities lending program would outweigh the benefits of voting in the particular instance or (b) not to vote proxies relating to certain foreign securities if, in his or her judgment, the expense and administrative inconvenience outweighs the benefits to Clients of voting the securities.

*Conflicts of Interest*

The Company's Compliance Department is responsible for monitoring voting decisions for any conflicts of interest, regardless of whether they are actual or perceived. All voting decisions contrary to the recommendation of a Proxy Advisor require a mandatory conflicts of interest review by the Compliance Department, which will include a consideration of whether the Company or any Portfolio Manager or other person recommending or providing input on how to vote has an interest in the vote that may present a conflict of interest.

In addition, all Company investment professionals are expected to perform their tasks relating to the voting of proxies in accordance with the principles set forth above, according the first priority to the best interest of the relevant Clients. If at any time a Portfolio Manager or any other investment professional becomes aware of a potential or actual conflict of interest regarding any particular voting decision, he or she must contact the Compliance Department promptly and, if in connection with a proxy that has yet to be voted, prior to such vote. If any investment professional is pressured or lobbied, whether from inside or outside the Company, with respect to any particular voting decision, he or she should contact the Compliance Department promptly. The CCO will use his or her best judgment to address any such conflict of interest and ensure that it is resolved in accordance with his or her independent assessment of the best interests of the relevant Clients.

In the event of a conflict, the Company may choose to address such conflict by: (i) voting in accordance with the Proxy Advisor's recommendation; (ii) the CCO determining how to vote the proxy (if the CCO approves deviation from the Proxy Advisor's recommendation, then the CCO shall document the rationale for the vote); (iii) "echo voting" or "mirror voting" the proxy in the same proportion as the votes of other proxy holders that are not Clients; or (iv) with respect to Clients other than Retail Funds, notifying the affected Client of the material conflict of interest and seeking a waiver of the conflict or obtaining such Client's voting instructions. Where the Compliance Department deems appropriate, third parties may be used to help resolve conflicts. In this regard, the CCO or his or her delegate shall have the power to retain fiduciaries, consultants or professionals to assist with voting decisions and/or to delegate voting or consent powers to such fiduciaries, consultants or professionals.

Where a conflict of interest arises with respect to a voting decision for a Retail Fund, the Company shall disclose the conflict and the rationale for the vote taken to the Retail Fund's Board of Directors/Trustees at the next regularly scheduled quarterly meeting. The Compliance Department will maintain a log documenting the basis for the decision and will furnish the log to the Board of Trustees.

*Material Conflicts of Interest*

The following relationships or circumstances are examples of situations that may give rise to a material conflict of interest for purposes of this Policy. This list is not exclusive or determinative; any potential conflict (including payments of the types described below but less than the specified threshold) should be identified to the Company's Compliance Department:

    (i)      The issuer is a Client of the Company, or of an affiliate, accounting for more than 5% of the Company's or affiliate's annual revenues.

    (ii)    The issuer is an entity that reasonably could be expected to pay the Company or its affiliates more than $1 million through the end of the Company's next two full fiscal years.

    (iii)   The issuer is an entity in which a "Covered Person" (as defined in the Company's Policies and Procedures Designed to Detect and Prevent Insider Trading and to Comply with Rule 17j-1 of the Investment Company Act of 1940, as amended (the "Code of Ethics")) has a beneficial interest contrary to the position held by the Company on behalf of Clients.

Table of Contents

(iv)　The issuer is an entity in which an officer or partner of the Company or a relative of any such person is or was an officer, director or employee, or such person or relative otherwise has received more than $150,000 in fees, compensation and other payment from the issuer during the Company's last three fiscal years; provided, however, that the Compliance Department may deem such a relationship not to be a material conflict of interest if the Company representative serves as an officer or director of the issuer at the direction of the Company for purposes of seeking control over the issuer.

(v)　The matter under consideration could reasonably be expected to result in a material financial benefit to the Company or its affiliates through the end of the Company's next two full fiscal years (for example, a vote to increase an investment advisory fee for a Retail Fund advised by the Company or an affiliate).

(vi)　Another Client or prospective Client of the Company, directly or indirectly, conditions future engagement of the Company on voting proxies in respect of any Client's securities on a particular matter in a particular way.

(vii)　The Company holds various classes and types of equity and debt securities of the same issuer contemporaneously in different Client portfolios.

(viii)　Any other circumstance where the Company's duty to serve its Clients' interests, typically referred to as its "duty of loyalty," could be compromised.

Notwithstanding the foregoing, a conflict of interest described above shall not be considered material for the purposes of this Policy in respect of a specific vote or circumstance if:

The securities in respect of which the Company has the power to vote account for less than 1% of the issuer's outstanding voting securities, but only if: (i) such securities do not represent one of the 10 largest holdings of such issuer's outstanding voting securities and (ii) such securities do not represent more than 2% of the Client's holdings with the Company.

The matter to be voted on relates to a restructuring of the terms of existing securities or the issuance of new securities or a similar matter arising out of the holding of securities, other than common equity, in the context of a bankruptcy or threatened bankruptcy of the issuer.

## Recordkeeping

Following the submission of a proxy vote, the Registrant will maintain a report of the vote and all relevant documentation.

The Registrant shall retain records relating to the voting of proxies and the Company shall conduct due diligence, including on Proxy Voting Services and Proxy Advisors, as applicable, to ensure the following records are adequately maintained by the appropriate party:

(i)　Copies of this Policy and any amendments thereto.

(ii)　A current copy of the Proxy Advisor's voting guidelines, as amended.

(iii)　A copy of each proxy statement that the Company receives regarding Client securities. The Company may rely on a third party to make and retain, on the Company's behalf, a copy of a proxy statement, provided that the Company has obtained an undertaking from the third party to provide a copy of the proxy statement promptly upon request.

(iv)　Records of each vote cast by the Company on behalf of Clients. The Company may satisfy this requirement by relying on a third party to make and retain, on the Company's behalf, a record of the vote cast, provided that the Company has obtained an undertaking from the third party to provide a copy of the record promptly upon request.

(v)　A copy of any documents created by the Company that were material to making a decision how to vote or that memorializes the basis for that decision.

(vi)　A copy of each written request for information on how the Company voted proxies on behalf of the Client, and a copy of any written response by the Company to any (oral or written) request for information on how the Company voted.

Table of Contents

These records shall be maintained and preserved in an easily accessible place for a period of not less than five years from the end of the Company's fiscal year during which the last entry was made in the records, the first two years in an appropriate office of the Company.[2]

### Enforcement of this Policy

It shall be the responsibility of the Compliance Department to handle or coordinate the enforcement of this Policy. The Compliance Department will periodically sample proxy voting records to ensure that proxies have been voted in accordance with this Policy, with a particular focus on any proxy votes that require additional analysis (e.g., proxies voted contrary to the recommendations of a Proxy Advisor).

---

[2] If the Company has essentially immediate access to a book or record (on the Company's proprietary system or otherwise) through a computer located at an appropriate office of the Company, then that book or record will be considered to be maintained at an appropriate office of the Company. "Immediate access" to books and records includes that the Company has the ability to provide promptly to Securities and Exchange Commission (the "SEC") examination staff hard copies of the books and records or access to the storage medium. The party responsible for the applicable books and records as described above shall also be responsible for ensuring that those books and records for the first two years are either physically maintained in an appropriate office of the Company or that the Company otherwise has essentially immediate access to the required books and records for the first two years.

If the Compliance Department determines that a Proxy Advisor or Proxy Voting Service may have committed a material error, the Compliance Department will investigate the error, taking into account the nature of the error, and seek to determine whether the Proxy Advisor or Proxy Voting Service is taking reasonable steps to reduce similar errors in the future.

In addition, no less frequently than annually, the Compliance Department will review the adequacy of this Policy to ensure that it has been implemented effectively and to confirm that this Policy continues to be reasonably designed to ensure that proxies are voted in the best interest of Clients.

### Disclosures to Clients and Investors

The Company includes a description of its policies and procedures regarding proxy voting in Part 2 of Form ADV, along with a statement that Clients can contact the CCO to obtain a copy of these policies and procedures and information about how the Company voted with respect to a Client's securities. This Policy is, however, subject to change at any time without notice.

As a matter of policy, the Company does not disclose how it expects to vote on upcoming proxies. Additionally, the Company does not disclose the way it voted proxies to unaffiliated third parties without a legitimate need to know such information.

**Item 8.     Portfolio Managers of Closed-End Management Investment Companies.**

**(a)(1)  Identification of Portfolio Manager(s) or Management Team Members and Description of Role of Portfolio Manager(s) or Management Team Members**

Table of Contents

The Registrant's portfolio manager, who is primarily responsible for the day-to-day management of the Registrant's portfolio, is James Dondero.

*James Dondero* — Mr. Dondero has over 25 years of experience in credit markets. In addition to his role at Highland Capital Management Fund Advisors, L.P. ("HCMFA" or the "Adviser"), Mr. Dondero is the co-founder and President of Highland Capital Management, L.P. and NexPoint Advisors, L.P. Mr. Dondero has over 30 years of experience investing in credit and equity markets and has helped pioneer credit asset classes. Prior to founding Highland Capital Management in 1993, Mr. Dondero served as Chief Investment Officer of Protective Life's GIC subsidiary and helped grow the business from concept to over $2 billion between 1989 and 1993. His portfolio management experience includes mortgage-backed securities, investment grade corporates, leveraged bank loans, high-yield bonds, emerging market debt, real estate, derivatives, preferred stocks and common stocks. From 1985 to 1989, he managed approximately $1 billion in fixed income funds for American Express. Mr. Dondero received a BS in Commerce (Accounting and Finance) from the University of Virginia, and is a Certified Managerial Accountant. Mr. Dondero has earned the right to use the Chartered Financial Analyst designation. Mr. Dondero currently serves as Chairman of NexBank SSB and serves on the Board of Directors of Metro-Goldwyn-Mayer, Jernigan Capital, Inc., Cornerstone Healthcare Group, Texmark Timber Treasury, L.P. and SeaOne Holdings, LLC.

**(a)(2)  Other Accounts Managed by Portfolio Manager(s) or Management Team Member and Potential Conflicts of Interest**

**Other Accounts Managed by Portfolio Manager(s) or Management Team Member**

The following table provides information about funds and accounts, other than the Registrant, for which the Registrant's portfolio manager is primarily responsible for the day-to-day portfolio management as of September 30, 2019.

*James Dondero*

| Type of Accounts | Total # of Accounts Managed | Total Assets (millions) | # of Accounts Managed with Performance-Based Advisory Fee | Total Assets with Performance-Based Advisory Fee (millions) |
|---|---|---|---|---|
| Registered Investment Companies: | 12 | $ 2,430 | 1 | $ 90 |
| Other Pooled Investment Vehicles: | 2 | $ 1,012 | 2 | $ 1,012 |
| Other Accounts: | — | $ — | — | $ — |

**Potential Conflicts of Interests**

The Adviser is an affiliate of NexPoint Advisors, L.P. ("NexPoint"). The Adviser and/or its general partner, limited partners, officers, affiliates and employees provide investment advice to other parties and manage other accounts and private investment vehicles similar to the Trust. For the purposes of this section, the term "Highland" shall include the Adviser and its affiliated investment advisors, including Highland Capital Management, L.P. and its affiliates. In connection with such other investment management activities, the Adviser and/or its general partner, limited partners, officers, affiliates and employees may decide to invest the funds of one or more other accounts or recommend the investment of funds by other parties, rather than the Registrant's monies, in a particular security or strategy. In addition, the Adviser and such other persons will determine the allocation of funds from the Registrant and such other accounts to investment strategies and techniques on whatever basis they consider appropriate or desirable in their sole and absolute discretion.

Table of Contents

Highland has built a professional working environment, a firm-wide compliance culture and compliance procedures and systems designed to protect against potential incentives that may favor one account over another. Highland has adopted policies and procedures that address the allocation of investment opportunities, execution of portfolio transactions, personal trading by employees and other potential conflicts of interest that are designed to ensure that all client accounts are treated equitably over time. Nevertheless, Highland furnishes advisory services to numerous clients in addition to the Registrant, and Highland may, consistent with applicable law, make investment recommendations to other clients or accounts (including accounts that have performance or higher fees paid to Highland or in which portfolio managers have a personal interest in the receipt of such fees) that may be the same as or different from those made to the Registrant. In addition, Highland, its affiliates and any of their partners, directors, officers, stockholders or employees may or may not have an interest in the securities whose purchase and sale the Adviser recommends to the Registrant. Actions with respect to securities of the same kind may be the same as or different from the action that the Adviser, or any of its affiliates, or any of their partners, directors, officers, stockholders or employees or any member of their families may take with respect to the same securities. Moreover, the Adviser may refrain from rendering any advice or services concerning securities of companies of which any of the Adviser's (or its affiliates') partners, directors, officers or employees are directors or officers, or companies as to which the Adviser or any of its affiliates or partners, directors, officers and employees of any of them has any substantial economic interest or possesses material non-public information. In addition to its various policies and procedures designed to address these issues, Highland includes disclosure regarding these matters to its clients in both its Form ADV and investment advisory agreements.

The Adviser, its affiliates or their partners, directors, officers or employees similarly serve or may serve other entities that operate in the same or related lines of business, including accounts managed by an investment adviser affiliated with the Adviser. Accordingly, these individuals may have obligations to investors in those entities or funds or to other clients, the fulfillment of which might not be in the best interests of the Registrant. As a result, the Adviser will face conflicts in the allocation of investment opportunities to the Registrant and other funds and clients. In order to enable such affiliates to fulfill their fiduciary duties to each of the clients for which they have responsibility, the Adviser will endeavor to allocate investment opportunities in a fair and equitable manner, pursuant to policies and procedures adopted by the Adviser and its advisory affiliates that are designed to manage potential conflicts of interest, which may, subject to applicable regulatory constraints, involve pro rata co-investment by the funds and such other clients or may involve a rotation of opportunities among the funds and such other clients. The Registrant will only make investments in which the Adviser or an affiliate hold an interest to the extent permitted under the 1940 Act and SEC staff interpretations or pursuant to the terms and conditions of the exemptive order received by the Adviser and certain funds affiliated with the Registrant, dated April 19, 2016. For example, exemptive relief is not required for the Registrant to invest in syndicated deals and secondary loan market transactions in which the Adviser or an affiliate has an interest where price is the only negotiated point. The order applies to all "Investment Companies," which includes future closed-end investment companies registered under the 1940 Act that are managed by the Adviser, which includes the Registrant. The Registrant, therefore, may in the future invest in accordance with the terms and conditions of the exemptive order. To mitigate any actual or perceived conflicts of interest, allocation of limited offering securities (such as IPOs and registered secondary offerings) to principal accounts that do not include third party investors may only be made after all other client account orders for the security have been filled. However, there can be no assurance that such policies and procedures will in every case ensure fair and equitable allocations of investment opportunities, particularly when considered in hindsight.

Conflicts may arise in cases when clients invest in different parts of an issuer's capital structure, including circumstances in which one or more clients own private securities or obligations of an issuer and other clients may own public securities of the same issuer. In addition, one or more clients may invest in securities, or other financial

Table of Contents

instruments, of an issuer that are senior or junior to securities, or financial instruments, of the same issuer that are held by or acquired for, one or more other clients. For example, if such issuer encounters financial problems, decisions related to such securities (such as over the terms of any workout or proposed waivers and amendments to debt covenants) may raise conflicts of interests. In such a distressed situation, a client holding debt securities of the issuer may be better served by a liquidation of the issuer in which it may be paid in full, whereas a client holding equity securities of the issuer might prefer a reorganization that holds the potential to create value for the equity holders. In the event of conflicting interests within an issuer's capital structure, Highland will generally pursue the strategy that Highland believes best reflects what would be expected to be negotiated in an arm's length transaction with due consideration being given to Highland's fiduciary duties to each of its accounts (without regard to the nature of the accounts involved or fees received from such accounts). This strategy may be recommended by one or more Highland investment professionals. A single person may represent more than one part of an issuer's capital structure. The recommended course of action will be presented to the conflicts committee for final determination as to how to proceed. Highland may elect, but is not required, to assign different teams to make recommendations for different parts of the capital structure as the conflicts committee determines in its discretion. In the event any Highland personnel serve on the board of the subject company, they generally recuse themselves from voting on any board matter with respect to a transaction that has an asymmetrical impact on the capital structure. Highland personnel board members may still make recommendations to the conflicts committee. If any such persons are also on the conflicts committee, they may recuse themselves from the committee's determination. A portfolio manager with respect to any applicable Highland registered investment company clients ("Retail Accounts") participates in such discussions, but makes an independent determination as to which course of action he or she determines is in the best interest of the applicable Retail Accounts. Highland may use external counsel for guidance and assistance.

The Adviser and its affiliates have both subjective and objective procedures and policies in place designed to manage potential conflicts of interest involving clients so that, for example, investment opportunities are allocated in a fair and equitable manner among the Registrant and such other clients. An investment opportunity that is suitable for multiple clients of the Adviser and its affiliates may not be capable of being shared among some or all of such clients due to the limited scale of the opportunity or other factors, including regulatory restrictions imposed by the 1940 Act. There can be no assurance that the Adviser's or its affiliates' efforts to allocate any particular investment opportunity fairly among all clients for whom such opportunity is appropriate will result in an allocation of all or part of such opportunity to the Registrant. Not all conflicts of interest can be expected to be resolved in favor of the Registrant.

### (a)(3)  Compensation Structure of Portfolio Manager(s) or Management Team Members

HCMFA's financial arrangements with its portfolio managers, its competitive compensation and its career path emphasis at all levels reflect the value senior management places on key resources. Compensation may include a variety of components and may vary from year to year based on a number of factors, including the relative performance of a portfolio manager's underlying account, the combined performance of the portfolio managers' underlying accounts, and the relative performance of the portfolio managers' underlying accounts measured against other employees. The principal components of compensation include a base salary, a discretionary bonus and various retirement benefits.

*Base compensation*. Generally, portfolio managers receive base compensation based on their seniority and/or their position with HCMFA, which may include the amount of assets supervised and other management roles within HCMFA. Base compensation is determined by taking into account current industry norms and market data to ensure that HCMFA pays a competitive base compensation.

*Discretionary compensation*. In addition to base compensation, portfolio managers may receive discretionary compensation, which can be a substantial portion of total compensation. Discretionary compensation can include a discretionary cash bonus paid to recognize specific business contributions and to ensure that the total level of compensation is competitive with the market.

Table of Contents

Because each person's compensation is based on his or her individual performance, HCMFA does not have a typical percentage split among base salary, bonus and other compensation. Senior portfolio managers who perform additional management functions may receive additional compensation in these other capacities. Compensation is structured such that key professionals benefit from remaining with HCMFA.

(a)(4)  Disclosure of Securities Ownership

The following table sets forth the dollar range of equity securities beneficially owned by the portfolio manager in the Registrant as of September 30, 2019.

| Name of Portfolio Manager | Dollar Ranges of Equity Securities Beneficially Owned by Portfolio Manager |
|---|---|
| James Dondero | Over $1,000,000 |

(b)  Not applicable.

**Item 9.  Purchases of Equity Securities by Closed-End Management Investment Company and Affiliated Purchasers.**

| Period | (a) Total Number of Shares Purchased | (b) Average Price Paid per Share | (c) Total Number of Shares Purchased as Part of Publicly Announced Plans or Programs(1) | (d) Approximate Dollar Value of Shares that May Yet Be Purchased Under the Plans or Programs(1) |
|---|---|---|---|---|
| April 1, 2019 to April 30, 2019 | 95,523 | 12.47 | 95,523 | $ 18.8 million |
| May 1, 2019 to May 31, 2019 | 393,632 | 11.96 | 393,632 | $ 14.1 million |
| June 1, 2019 to June 30, 2019 | 275,108 | 11.19 | 275,108 | $ 11.0 million |
| July 1, 2019 to July 31, 2019 | 89,607 | 11.51 | 89,607 | $ 10.0 million |
| **Total** | 853,870 | 11.72 | 853,870 | $ 10.0 million |

(1)  On August 3, 2018, the Board of the Fund authorized the repurchase of up to the lesser of $20 million or 5% of the Fund's shares over a six-month period following conversion of the Fund from an open-end Fund to a closed-end fund. The Fund converted into a closed-end fund on February 13, 2019. Under this program, the Fund repurchased 853,870 shares through July, 2019, at an average price of $11.72, for a total investment of $10.0 million. On August 20, 2019, the Board of the Fund approved an extension of the repurchase program for a period of six months up to an additional $20 million of the Fund's shares.

**Item 10.  Submission of Matters to a Vote of Security Holders.**

There have been no material changes to the procedures by which the shareholders may recommend nominees to the Registrant's Board.

Table of Contents

Item 11.        Controls and Procedures.

(a)    Evaluation of Disclosure Controls and Procedures. The Registrant maintains disclosure controls and procedures that are designed to ensure that information required to be disclosed in the Registrant's filings under the Securities Exchange Act of 1934 (the "Exchange Act") and the Investment Company Act of 1940 is recorded, processed, summarized and reported within the periods specified in the rules and forms of the Securities and Exchange Commission. Such information is accumulated and communicated to the Registrant's management, including its principal executive officer and principal financial officer, as appropriate, to allow timely decisions regarding required disclosure. The Registrant's management, including the principal executive officer and principal financial officer, recognizes that any set of controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving the desired control objectives.

Remediation of Material Weakness in Internal Control over Financial Reporting. As of June 30, 2019, management remediated the material weakness previously identified as of September 30, 2018 relating to the application of ASC 820 and the reasonableness and reliability of assumptions used in the fair value model which is monitored by the Valuation Committee through the operation of a review control (the "Material Weakness"). This control was not designed at an appropriate level of precision to ensure the accurate valuation of Level 3 securities. The Material Weakness resulted in material pricing errors related to a hard-to-value security held over a period of time by Highland Global Allocation Fund, an affiliate of the Registrant which at that time was a series of the Registrant, but which was converted into a different trust effective February 13, 2019.

The steps management took to remediate this Material Weakness included: (i) enhancing a separate review control by adding control activities designed to operate at a level of precision which will enable such errors to be detected and by adding an additional member to the Valuation Sub-Committee to conduct such control activities; (ii) providing additional training to members of its Valuation Sub-Committee and Valuation Committee with respect to the application of ASC 820 and the usage of subject matter expert inputs as inputs to fair value determinations; and (iii) creating and implementing a guide for use of the Valuation Sub-Committee and the Valuation Committee for the application of ASC 820 to fair value models.

As a result of the remediation activities, management has determined that its controls were designed appropriately and at a sufficient level of precision, and have been operating effectively for a sufficient period of time, such that the Material Weakness previously identified as of December 31, 2018 has been remediated as of June 30, 2019.

(b)    Changes in Internal Controls. Other than the planned enhancements to controls noted above, there have been no changes in the Registrant's internal controls or in other factors that could materially affect the internal controls over financial reporting subsequent to the date of their evaluation in connection with the preparation of this Shareholder Report on Form N-CSR

Item 12.        Disclosure of Securities Lending Activities for Closed-End Management Investment Companies.

(a)

(1)    Gross income from securities lending activities: $0

(2)    All fees and/or compensation for securities lending activities and related services: $0

(3)    Aggregate fees/compensation: $0

Table of Contents

       (4)   Net income from securities lending activities: $0

(b)   The Registrant may lend up to 33 1/3% of the Registrant's total assets held by the Fund's custodian to certain qualified brokers, except those securities which the Registrant or the Advisor specifically identifies as not being available. By lending its investment securities, the Registrant attempts to increase its net investment income through the receipt of interest on the loan. Any gain or loss in the market price of the securities loaned that might occur and any interest or dividends declared during the term of the loan would accrue to the account of the Registrant. Risks of delay in recovery of the securities or even loss of rights in the collateral may occur should the borrower of the securities fail financially. Risks may also arise to the extent that the value of the collateral decreases below the value of the securities loaned. Upon entering into a securities lending transaction, the Registrant receives cash or other securities as collateral in an amount equal to or exceeding 100% of the current market value of the loaned securities with respect to securities of the U.S. government or its agencies, 102% of the current market value of the loaned securities with respect to U.S. securities and 105% of the current market value of the loaned securities with respect to foreign securities. Any cash received as collateral is generally invested by the Fund's custodian acting in its capacity as securities lending agent. Non-cash collateral is not disclosed in the Registrant's Statement of Assets and Liabilities as it is held by the lending agent on behalf of the Registrant and the Registrant does not have the ability to re-hypothecate those securities. A portion of the dividends received on the collateral may be rebated to the borrower of the securities and the remainder is split between the Fund's custodian, as the securities lending agent, and the Registrant.

**Item 13.**     **Exhibits.**

(a)(1)     Code of ethics, or amendment thereto, that is the subject of disclosure required by Item 2 is attached hereto.

(a)(2)     Certifications pursuant to Rule 30a-2(a) under the 1940 Act and Section 302 of the Sarbanes-Oxley Act of 2002 are attached hereto.

(a)(3)     Not applicable.

(a)(4)     Not applicable.

(b)     Certifications pursuant to Rule 30a-2(b) under the 1940 Act and Section 906 of the Sarbanes-Oxley Act of 2002 are attached hereto.

.

**Table of Contents**

<div align="center">

**SIGNATURES**

</div>

Pursuant to the requirements of the Securities Exchange Act of 1934, as amended, and the Investment Company Act of 1940, as amended, the Registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

**HIGHLAND GLOBAL ALLOCATION FUND**

| By (Signature and Title): | /s/ Frank Waterhouse |
|---|---|
| | Frank Waterhouse |
| | Treasurer, Principal Executive Officer and |
| | Principal Financial and Accounting Officer |

Date: December 9, 2019

Pursuant to the requirements of the Securities Exchange Act of 1934, as amended, and the Investment Company Act of 1940, as amended, this report has been signed below by the following persons on behalf of the Registrant and in the capacities and on the dates indicated.

| By (Signature and Title): | /s/ Frank Waterhouse |
|---|---|
| | Frank Waterhouse |
| | Treasurer, Principal Executive Officer and |
| | Principal Financial and Accounting Officer |

Date: December 9, 2019

| By (Signature and Title): | /s/ Clifford Stoops |
|---|---|
| | Clifford Stoops |
| | Assistant Treasurer |

Date: December 9, 2019

# EXHIBIT 40

## AMENDED AND RESTATED SHARED SERVICES AGREEMENT

This Amended and Restated Shared Services Agreement (as amended, modified, waived, supplemented or restated from time to time in accordance with the terms hereof, this "Agreement"), dated effective as of January 1, 2018, is entered into by and between NexPoint Advisors, L.P., a Delaware limited partnership, as the management company hereunder (in such capacity, the "Management Company"), and Highland Capital Management, L.P., a Delaware limited partnership ("Highland"), as the staff and services provider hereunder (in such capacity, the "Staff and Services Provider" and together with the Management Company, the "Parties").

## R E C I T A L S

WHEREAS, the Staff and Services Provider is a registered investment adviser under the Investment Advisers Act of 1940, as amended (the "Advisers Act");

WHEREAS, the Staff and Services Provider and the Management Company are engaged in the business of providing investment management services;

WHEREAS, the Parties entered into that certain Shared Services Agreement, dated effective as of January 1, 2013 (the "Original Agreement");

WHEREAS, the Parties desire to amend and restated the Original Agreement and the Staff and Services Provider is hereby being retained to provide certain back- and middle-office services and administrative, infrastructure and other services to assist the Management Company in conducting its business, and the Staff and Services Provider is willing to make such services available to the Management Company, in each case, on the terms and conditions hereof;

WHEREAS, the Management Company may employ certain individuals to perform portfolio selection and asset management functions for the Management Company, and certain of these individuals may also be employed simultaneously by the Staff and Services Provider during their employment with the Management Company; and

WHEREAS, each Person employed by both the Management Company and the Staff and Services Provider as described above (each, a "Shared Employee"), if any, is and shall be identified on the books and records of each of the Management Company and the Staff and Services Provider (as amended, modified, supplemented or restated from time to time).

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree, and the Original Agreement is hereby amended, restated and replaced in its entirety as follows:

## ARTICLE I

## DEFINITIONS

Section 1.01   Certain Defined Terms.   As used in this Agreement, the following terms shall have the following meanings:

"Affiliate" shall mean with respect to a Person, any other Person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with the first Person. The term "control" means (i) the legal or beneficial ownership of securities representing a majority of the voting power of any person or (ii) the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person, whether by contract or otherwise.

"Applicable Asset Criteria and Concentrations" means any applicable eligibility criteria, portfolio concentration limits and other similar criteria or limits which the Management Company instructs in writing to the Staff and Services Provider in respect of the Portfolio or one or more Accounts, as such criteria or limits may be modified, amended or supplemented from time to time in writing by the Management Company;

"Applicable Law" shall mean, with respect to any Person or property of such Person, any action, code, consent decree, constitution, decree, directive, enactment, finding, guideline, law, injunction, interpretation, judgment, order, ordinance, policy statement, proclamation, formal guidance, promulgation, regulation, requirement, rule, rule of law, rule of public policy, settlement agreement, statute, writ, or any particular section, part or provision thereof of any Governmental Authority to which the Person in question is subject or by which it or any of its property is bound.

"Client or Account" shall mean any fund, client or account advised by the Management Company, as applicable.

"Covered Person" shall mean the Staff and Services Provider, any of its Affiliates, and any of their respective managers, members, principals, partners, directors, officers, shareholders, employees and agents (but shall not include the Management Company, its subsidiaries or member(s) and any managers, members, principals, partners, directors, officers, shareholders, employees and agents of the Management Company or its subsidiaries or member(s) (in their capacity as such)).

"Governmental Authority" shall mean (i) any government or quasi-governmental authority or political subdivision thereof, whether national, state, county, municipal or regional, whether U.S. or non-U.S.; (ii) any agency, regulator, arbitrator, board, body, branch, bureau, commission, corporation, department, master, mediator, panel, referee, system or instrumentality of any such government, political subdivision or other government or quasi-government entity, whether non-U.S. or U.S.; and (iii) any court, whether U.S. or non-U.S.

"Indebtedness" shall mean: (a) all indebtedness for borrowed money and all other obligations, contingent or otherwise, with respect to surety bonds, guarantees of borrowed money, letters of credit and bankers' acceptances whether or not matured, and hedges and other derivative contracts and financial instruments; (b) all obligations evidenced by notes, bonds, debentures, or similar instruments, or incurred under bank guaranty or letter of credit facilities or credit agreements; (c) all indebtedness created or arising under any conditional sale or other title retention agreement with respect to any property of the Management Company or any subsidiary; (d) all capital lease obligations; (e) all indebtedness guaranteed by such Person or any of its subsidiaries; and (f) all indebtedness guaranteed by such Person or any of its subsidiaries.

2

"Operating Guidelines" means any operating guidelines attached to any portfolio management agreement, investment management agreement or similar agreement entered into between the Management Company and a Client or Account.

"Portfolio" means the portfolio of securities and other assets, including without limitation, financial instruments, equity investments, collateral loan obligations, debt securities, preferred return notes and other similar obligations held directly or indirectly by, or on behalf of, Clients and Accounts from time to time;

"Securities Act" shall mean the Securities Act of 1933, as amended.

Section 1.02    Interpretation.  The following rules apply to the use of defined terms and the interpretation of this Agreement: (i) the singular includes the plural and the plural includes the singular; (ii) "or" is not exclusive (unless preceded by "either") and "include" and "including" are not limiting; (iii) unless the context otherwise requires, references to agreements shall be deemed to mean and include such agreements as the same may be amended, supplemented, waived and otherwise modified from time to time; (iv) a reference to a law includes any amendment or modification to such law and any rules or regulations issued thereunder or any law enacted in substitution or replacement therefor; (v) a reference to a Person includes its successors and assigns; (vi) a reference to a Section without further reference is to the relevant Section of this Agreement; (vii) the headings of the Sections and subsections are for convenience and shall not affect the meaning of this Agreement; (viii) "writing", "written" and comparable terms refer to printing, typing, lithography and other shall mean of reproducing words in a visible form (including telefacsimile and electronic mail); (ix) "hereof", "herein", "hereunder" and comparable terms refer to the entire instrument in which such terms are used and not to any particular article, section or other subdivision thereof or attachment thereto; and (x) references to any gender include any other gender, masculine, feminine or neuter, as the context requires.

## ARTICLE II

## SERVICES

Section 2.01    General Authority.  Highland is hereby appointed as Staff and Services Provider for the purpose of providing such services and assistance as the Management Company may request from time to time to, and if applicable, to make available the Shared Employees to, the Management Company in accordance with and subject to the provisions of this Agreement and the Staff and Services Provider hereby accepts such appointment.  The Staff and Services Provider hereby agrees to such engagement during the term hereof and to render the services described herein for the compensation provided herein, subject to the limitations contained herein.

Section 2.02    Provision of Services.  Without limiting the generality of Section 2.01 and subject to Section 2.04 (Applicable Asset Criteria and Concentrations) below, the Staff and Services Provider hereby agrees, from the date hereof, to provide the following back- and middle-office services and administrative, infrastructure and other services to the Management Company.

(a)    *Back- and Middle-Office*: Assistance and advice with respect to back- and middle-office functions including, but not limited to, investment research, trade desk services,

3

including trade execution and settlement, finance and accounting, payments, operations, book keeping, cash management, cash forecasting, accounts payable, accounts receivable, expense reimbursement, vendor management, and information technology (including, without limitation, general support and maintenance (OMS, development, support), telecom (cellphones, telephones and broadband) and WSO);

(b)    *Legal/Compliance/Risk Analysis.* Assistance and advice with respect to legal issues, litigation support, management of outside counsel, compliance support and implementation and general risk analysis;

(c)    *Tax.* Assistance and advice with respect to tax audit support, tax planning and tax preparation and filing.

(d)    *Management of Clients and Accounts.* Assistance and advice with respect to (i) the adherence to Operating Guidelines by the Management Company, and (ii) performing any obligations of the Management Company under or in connection with any back- and middle-office function set forth in any portfolio management agreement, investment management agreement or similar agreement in effect between the Management Company and any Client or Account from time to time.

(e)    *Valuation.* Advice relating to the appointment of suitable third parties to provide valuations on assets comprising the Portfolio and including, but not limited to, such valuations required to facilitate the preparation of financial statements by the Management Company or the provision of valuations in connection with, or preparation of reports otherwise relating to, a Client or Account for which the Management Company serves as portfolio manager or investment manager or in a similar capacity;

(f)    *Execution and Documentation.* Assistance relating to the negotiation of the terms of, and the execution and delivery by the Management Company of, any and all documents which the Management Company considers to be necessary in connection with the acquisition and disposition of an asset in the Portfolio by the Management Company or a Client or Account managed by the Management Company, transactions involving the Management Company or a Client or Account managed by the Management Company, and any other rights and obligations of the Management Company or a Client or Account managed by the Management Company;

(g)    *Marketing.* Provide access to marketing team representatives to assist with the marketing of the Management Company and any specified Clients or Accounts managed by the Management Company conditional on the Management Company's agreement that any incentive compensation related to such marketing shall be borne by the Management Company;

(h)    *Reporting.* Assistance relating to any reporting the Management Company is required to make in relation to the Portfolio or any Client or Account, including reports relating to (i) credit facility reporting and purchases, sales, liquidations, acquisitions, disposals, substitutions and exchanges of assets in the Portfolio, (ii) the requirements of an applicable regulator, or (iii) other type of reporting which the Management Company and Staff and Services Provider may agree from time to time;

(i)    *Administrative Services.*   The provision of office space, information technology services and equipment, infrastructure, rent and parking and other related services requested or utilized by the Management Company from time to time;

(j)    *Shared Employees.*   To the extent applicable, the provision of Shared Employees and such additional human capital as may be mutually agreed by the Management Company and the Staff and Services Provider in accordance with the provisions of Section 2.03 hereof;

(k)    *Ancillary Services.*   Assistance and advice on all things ancillary or incidental to the foregoing; and

(l)    *Other.*   Assistance and advice relating to such other back- and middle-office services in connection with the day-to-day business of the Management Company as the Management Company and the Staff and Services Provider may from time to time agree.

For the avoidance of doubt, none of the services contemplated hereunder shall constitute investment advisory services, and the Staff & Services Provider shall not provide any advice to the Management Company or perform any duties on behalf of the Management Company, other than the back- and middle-office services contemplated herein, with respect to (a) the general management of the Management Company, its business or activities, (b) the initiation or structuring of any Client or Account or similar securitization, (c) the substantive investment management decisions with respect to any Client or Account or any related collateral obligations or securitization, (d) the actual selection of any collateral obligation or assets by the Management Company, (e) binding recommendations as to any disposal of or amendment to any Collateral Obligation or (f) any similar functions.

Section 2.03    Shared Employees.

(a)    The Staff and Services Provider hereby agrees and consents that each Shared Employee, if any, shall be employed by the Management Company, and the Management Company hereby agrees and consents that each Shared Employee shall be employed by the Staff and Services Provider. Except as may otherwise separately be agreed in writing between the applicable Shared Employee and the Management Company and/or the Staff and Services Provider, in each of their discretion, each Shared Employee is an at-will employee and no guaranteed employment or other employment arrangement is agreed or implied by this Agreement with respect to any Shared Employee, and for avoidance of doubt this Agreement shall not amend, limit, constrain or modify in any way the employment arrangements as between any Shared Employee and the Staff and Services Provider or as between any Shared Employee and the Management Company, it being understood that the Management Company may enter into a short-form employment agreement with any Shared Employee memorializing such Shared Employee's status as an employee of the Management Company. To the extent applicable, the Staff and Services Provider shall ensure that the Management Company has sufficient access to the Shared Employees so that the Shared Employees spend adequate time to provide the services required hereunder. The Staff and Services Provider may also employ the services of persons other than the Specified Persons as it deems fit in its sole discretion

(b)     Notwithstanding that the Shared Employees, if any, shall be employed by both the Staff and Services Provider and the Management Company, the Parties acknowledge and agree that any and all salary and benefits of each Shared Employee shall be paid exclusively by the Staff and Services Provider and shall not be paid or borne by the Management Company and no additional amounts in connection therewith shall be due from the Management Company to the Staff and Services Provider.

(c)     To the extent that a Shared Employee participates in the rendering of services to the Management Company's clients, the Shared Employee shall be subject to the oversight and control of the Management Company and such services shall be provided by the Shared Employee exclusively in his or her capacity as a "supervised person" or, or "person associated with", the Management Company (as such terms are defined in Sections 202(a)(25) and 202(a)(17), respectively, of the Advisers Act).

(d)     Each Party may continue to oversee, supervise and manage the services of each Shared Employee in order to (1) ensure compliance with the Party's compliance policies and procedures, (2) ensure compliance with regulations applicable to the Party and (3) protect the interests of the Party and its clients; *provided* that Staff and Services Provider shall (A) cooperate with the Management Company's supervisory efforts and (B) make periodic reports to the Management Company regarding the adherence of Shared Employees to Applicable Law, including but not limited to the 1940 Act, the Advisers Act and the United States Commodity Exchange Act of 1936, as amended, in performing the services hereunder.

(e)     Where a Shared Employee provides services hereunder through both Parties, the Parties shall cooperate to ensure that all such services are performed consistently with Applicable Law and relevant compliance controls and procedures designed to prevent, among other things, breaches in information security or the communication of confidential, proprietary or material non-public information.

(f)     The Staff and Services Provider shall ensure that each Shared Employee has any registrations, qualifications and/or licenses necessary to provide the services hereunder.

(g)     The Parties will cooperate to ensure that information about the Shared Employees is adequately and appropriately disclosed to clients, investors (and potential investors), investment banks operating as initial purchaser or placement agent with respect to any Client or Account, and regulators, as applicable.  To facilitate such disclosure, the Staff and Services Provider agrees to provide, or cause to be provided, to the Management Company such information as is deemed by the Management Company to be necessary or appropriate with respect to the Staff and Services Provider and the Shared Employees (including, but not limited to, biographical information about each Shared Employee).

(h)     The Parties shall cooperate to ensure that, when so required, each has adopted a Code of Ethics meeting the requirements of the Advisers Act ("Code of Ethics") that is consistent with applicable law and which is substantially similar to the other Party's Code of Ethics.

(i)     The Staff and Services Provider shall make reasonably available for use by the Management Company, including through Shared Employees providing services pursuant to this Agreement, any relevant intellectual property and systems necessary for the provision of the services hereunder.

(j)     The Staff and Services Provider shall require that each Shared Employee:

(i)     certify that he or she is subject to, and has been provided with, a copy of each Party's Code of Ethics and will make such reports, and seek prior clearance for such actions and activities, as may be required under the Codes of Ethics;

(ii)     be subject to the supervision and oversight of each Party's officers and directors, including without limitation its Chief Compliance Officer ("CCO"), which CCO may be the same Person, with respect to the services provided to that Party or its clients;

(iii)     provide services hereunder and take actions hereunder only as approved by the Management Company;

(iv)     provide any information requested by a Party, as necessary to comply with applicable disclosure or regulatory obligations;

(v)     to the extent authorized to transact on behalf of the Management Company or a Client or Account, take reasonable steps to ensure that any such transaction is consistent with any policies and procedures that may be established by the Parties and all Applicable Asset Criteria and Concentrations; and

(vi)     act, at all times, in a manner consistent with the fiduciary duties and standard of care owed by the Management Company to its members and direct or indirect investors or to a Client or Account as well as clients of Staff and Services Provider by seeking to ensure that, among other things, information about any investment advisory or trading activity applicable to a particular client or group of clients is not used to benefit the Shared Employee, any Party or any other client or group of clients in contravention of such fiduciary duties or standard of care.

(k)     Unless specifically authorized to do so, or appointed as an officer or authorized person of the Management Company with such authority, no Shared Employee may contract on behalf or in the name of the Management Company, acting as principal.

Section 2.04   Applicable Asset Criteria and Concentrations. The Management Company will promptly inform the Staff and Services Provider in writing of any Applicable Asset Criteria and Concentrations to which it agrees from time to time and the Staff and Services Provider shall take such Applicable Asset Criteria and Concentrations into account when providing assistance and advice in accordance with Section 2.02 above and any other assistance or advice provided in accordance with this Agreement.

Section 2.05   Compliance with Management Company Policies and Procedures. The Management Company will from time to time provide the Staff and Services Provider and the

Shared Employees, if any, with any policy and procedure documentation which it establishes internally and to which it is bound to adhere in conducting its business pursuant to regulation, contract or otherwise. Subject to any other limitations in this Agreement, the Staff and Services Provider will use reasonable efforts to ensure any services it and the Shared Employees provide pursuant to this Agreement complies with or takes account of such internal policies and procedures.

Section 2.06    Authority. The Staff and Services Provider's scope of assistance and advice hereunder is limited to the services specifically provided for in this Agreement. The Staff and Services Provider shall not assume or be deemed to assume any rights or obligations of the Management Company under any other document or agreement to which the Management Company is a party. Notwithstanding any other express or implied provision to the contrary in this Agreement, the activities of the Staff and Services Provider pursuant to this Agreement shall be subject to the overall policies of the Management Company, as notified to the Staff and Services Provider from time to time. The Staff and Services Provider shall not have any duties or obligations to the Management Company unless those duties and obligations are specifically provided for in this Agreement (or in any amendment, modification or novation hereto or hereof to which the Staff and Services Provider is a party).

Section 2.07    Third Parties.

(a)    The Staff and Services Provider may employ third parties, including its affiliates, to render advice, provide assistance and to perform any of its duties under this Agreement; *provided* that notwithstanding the employment of third parties for any such purpose, the Staff and Services Provider shall not be relieved of any of its obligations or liabilities under this Agreement.

(b)    In providing services hereunder, the Staff and Services Provider may rely in good faith upon and will incur no liability for relying upon advice of nationally recognized counsel (which may be counsel for the Management Company, a Client or Account or any Affiliate of the foregoing), accountants or other advisers as the Staff and Services Provider determines, in its sole discretion, is reasonably appropriate in connection with the services provided by the Staff and Services Provider under this Agreement.

Section 2.08    Management Company to Cooperate with the Staff and Services Provider. In furtherance of the Staff and Services Provider's obligations under this Agreement the Management Company shall cooperate with, provide to, and fully inform the Staff and Services Provider of, any and all documents and information the Staff and Services Provider reasonably requires to perform its obligations under this Agreement.

Section 2.09    Power of Attorney. If the Management Company considers it necessary for the provision by the Staff and Services Provider of the assistance and advice under this Agreement (after consultation with the Staff and Services Provider), it may appoint the Staff and Services Provider as its true and lawful agent and attorney, with full power and authority in its name to sign, execute, certify, swear to, acknowledge, deliver, file, receive and record any and all documents that the Staff and Services Provider reasonably deems appropriate or necessary in connection with the execution and settlement of acquisitions of assets as directed by the Management Company

and the Staff and Services Provider's powers and duties hereunder (which for the avoidance of doubt shall in no way involve the discretion and/or authority of the Management Company with respect to investments). Any such power shall be revocable in the sole discretion of the Management Company.

## ARTICLE III

## CONSIDERATION AND EXPENSES

Section 3.01   Consideration. As compensation for its performance of its obligations as Staff and Services Provider under this Agreement, the Staff and Services Provider will be entitled to receive a flat fee of $168,000 per month (the "Staff and Services Fee"), payable monthly in advance on the first business day of each month.

Section 3.02   Costs and Expenses. Each party shall bear its own expenses; *provided* that the Management Company shall reimburse the Staff and Services Provider for any and all costs and expenses that may be borne properly by the Management Company.

Section 3.03   Deferral. Notwithstanding anything to the contrary contained herein, if on any date the Management Company determines that it would not have sufficient funds available to it to make a payment of Indebtedness, it shall have the right to defer any all and amounts payable to the Staff and Services Provider pursuant to this Agreement, including any fees and expenses; *provided* that the Management Company shall promptly pay all such amounts on the first date thereafter that sufficient amounts exist to make payment thereof.

## ARTICLE IV

## REPRESENTATIONS AND COVENANTS

Section 4.01   Representations. Each of the Parties hereto represents and warrants that:

(a)   It has full power and authority to execute and deliver, and to perform its obligations under, this Agreement;

(b)   this Agreement has been duly authorized, executed and delivered by it and constitutes its valid and binding, obligation, enforceable in accordance with its terms except as the enforceability hereof may be subject to (i) bankruptcy, insolvency, reorganization moratorium, receivership, conservatorship or other similar laws now or hereafter in effect relating to creditors' rights and (ii) general principles of equity (regardless of whether such enforcement is considered in a proceeding, in equity or at law);

(c)   no consent, approval, authorization or order of or declaration or filing with any Governmental Authority is required for the execution of this Agreement or the performance by it of its duties hereunder, except such as have been duly made or obtained; and

(d)   neither the execution and delivery of this Agreement nor the fulfillment of the terms hereof conflicts with or results in a breach or violation of any of the terms or provisions of, or constitutes a default under, (i) its constituting and organizational documents; or (ii) the terms

9

of any material indenture, contract, lease, mortgage, deed of trust, note, agreement or other evidence of indebtedness or other material agreement, obligation, condition, covenant or instrument to which it is a party or by which it is bound.

## ARTICLE V

## COVENANTS

Section 5.01    Compliance; Advisory Restrictions.

(a)    The Staff and Services Provider shall reasonably cooperate with the Management Company in connection with the Management Company's compliance with its policies and procedures relating to oversight of the Staff and Services Provider. Specifically, the Staff and Services Provider agrees that it will provide the Management Company with reasonable access to information relating to the performance of Staff and Services Provider's obligations under this Agreement.

(b)    This Agreement is not intended to and shall not constitute an assignment, pledge or transfer of any portfolio management agreement or any part thereof. It is the express intention of the parties hereto that this Agreement and all services performed hereunder comply in all respects with all (a) applicable contractual provisions and restrictions contained in each portfolio management agreement, investment management agreement or similar agreement and each document contemplated thereby; and (b) Applicable Laws (collectively, the "Advisory Restrictions"). If any provision of this Agreement is determined to be in violation of any Advisory Restriction, then the services to be provided under this Agreement shall automatically be limited without action by any person or entity, reduced or modified to the extent necessary and appropriate to be enforceable to the maximum extent permitted by such Advisory Restriction.

Section 5.02    Records; Confidentiality.

The Staff and Services Provider shall maintain or cause to be maintained appropriate books of account and records relating to its services performed hereunder, and such books of account and records shall be accessible for inspection by representatives of the Management Company and its accountants and other agents at any time during normal business hours and upon not less than three (3) Business Days' prior notice; *provided* that the Staff and Services Provider shall not be obligated to provide access to any non-public information if it in good faith determines that the disclosure of such information would violate any applicable law, regulation or contractual arrangement.

The Staff and Services Provider shall follow its customary procedures to keep confidential any and all information obtained in connection with the services rendered hereunder that is either (a) of a type that would ordinarily be considered proprietary or confidential, such as information concerning the composition of assets, rates of return, credit quality, structure or ownership of securities, or (b) designated as confidential obtained in connection with the services rendered by the Staff and Services Provider hereunder and shall not disclose any such information to non-affiliated third parties, except (i) with the prior written consent of the Management Company, (ii) such information as a rating agency shall reasonably request in connection with its

10

rating of notes issued by a CLO or supplying credit estimates on any obligation included in the Portfolio, (iii) in connection with establishing trading or investment accounts or otherwise in connection with effecting transactions on behalf of the Management Company or any Client or Account for which the Management Company serves as portfolio manager or investment manager or in a similar capacity, (iv) as required by (A) Applicable Law or (B) the rules or regulations of any self-regulating organization, body or official having jurisdiction over the Staff and Services Provider or any of its Affiliates, (v) to its professional advisors (including, without limitation, legal, tax and accounting advisors), (vi) such information as shall have been publicly disclosed other than in known violation of this Agreement or shall have been obtained by the Staff and Services Provider on a non-confidential basis, (vii) such information as is necessary or appropriate to disclose so that the Staff and Services Provider may perform its duties hereunder, (viii) as expressly permitted in the final offering memorandum or any definitive transaction documents relating to any Client or Account, (ix) information relating to performance of the Portfolio as may be used by the Staff and Services Provider in the ordinary course of its business or (xx) such information as is routinely disclosed to the trustee, custodian or collateral administrator of any Client or Account in connection with such trustee's, custodian's or collateral administrator's performance of its obligations under the transaction documents related to such Client or Account. Notwithstanding the foregoing, it is agreed that the Staff and Services Provider may disclose without the consent of any Person (1) that it is serving as staff and services provider to the Management Company, (2) the nature, aggregate principal amount and overall performance of the Portfolio, (3) the amount of earnings on the Portfolio, (4) such other information about the Management Company, the Portfolio and the Clients or Accounts as is customarily disclosed by staff and services providers to management vehicles similar to the Management Company, and (5) the United States federal income tax treatment and United States federal income tax structure of the transactions contemplated by this Agreement and the related documents and all materials of any kind (including opinions and other tax analyses) that are provided to them relating to such United States federal income tax treatment and United States income tax structure. This authorization to disclose the U.S. tax treatment and tax structure does not permit disclosure of information identifying the Staff and Services Provider, the Clients or Accounts or any other party to the transactions contemplated by this Agreement (except to the extent such information is relevant to U.S. tax structure or tax treatment of such transactions).

## ARTICLE VI

## EXCULPATION AND INDEMNIFICATION

Section 6.01 <u>Standard of Care</u>. Except as otherwise expressly provided herein, each Covered Person shall discharge its duties under this Agreement with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. To the extent not inconsistent with the foregoing, each Covered Person shall follow its customary standards, policies and procedures in performing its duties hereunder. No Covered Person shall deal with the income or assets of the Management Company in such Covered Person's own interest or for its own account. Each Covered Person in its respective sole and absolute discretion may separately engage or invest in any other business ventures, including those that may be in competition with the Management Company, and the Management Company will not have any rights in or to such ventures or the income or profits derived therefrom

Section 6.02   Exculpation.  To the fullest extent permitted by law, no Covered Person will be liable to the Management Company, any Member, or any shareholder, partner or member thereof, for (i) any acts or omissions by such Covered Person arising out of or in connection with the conduct of the business of the Management Company or its General Partner, or any investment made or held by the Management Company or its General Partner, unless it is determined ultimately by a court of competent jurisdiction, in a final nonappealable judgment, to be the result of gross negligence or to constitute fraud or willful misconduct (as interpreted under the laws of the State of Delaware) (each, a "Disabling Conduct") on the part of such Covered Person, (ii) any act or omission of any Investor, (iii) any mistake, gross negligence, misconduct or bad faith of any employee, broker, administrator or other agent or representative of such Covered Person, *provided* that such employee, broker, administrator or agent was selected, engaged or retained by or on behalf of such Covered Person with reasonable care, or (iv) any consequential (including loss of profit), indirect, special or punitive damages.  To the extent that, at law or in equity, any Covered Person has duties (including fiduciary duties) and liabilities relating thereto to the Management Company or any Member, no Covered Person acting under this Agreement shall be liable to the Management Company or to any such Member for its good-faith reliance on the provisions of this Agreement.  The exculpations set forth in this Section 6.02 shall exculpate any Covered Person regardless of such Covered Person's sole, comparative, joint, concurrent, or subsequent negligence.

To the fullest extent permitted by law, no Covered Person shall have any personal liability to the Management Company or any Member solely by reason of any change in U.S. federal, state or local or foreign income tax laws, or in interpretations thereof, as they apply to the Management Company or the Members, whether the change occurs through legislative, judicial or administrative action.

Any Covered Person in its sole and absolute discretion may consult legal counsel, accountants or other advisers selected by it, and any act or omission taken, or made in good faith by such Person on behalf of the Management Company or in furtherance of the business of the Management Company in good-faith reliance on and in accordance with the advice of such counsel, accountants or other advisers shall be full justification for the act or omission, and to the fullest extent permitted by applicable law, no Covered Person shall be liable to the Management Company or any Member in so acting or omitting to act if such counsel, accountants or other advisers were selected, engaged or retained with reasonable care.

Section 6.03   Indemnification by the Management Company.  The Management Company shall and hereby does, to the fullest extent permitted by applicable law, indemnify and hold harmless any Covered Person from and against any and all claims, causes of action (including, but not limited to, strict liability, negligence, statutory violation, regulatory violation, breach of contract, and all other torts and claims arising under common law), demands, liabilities, costs, expenses, damages, losses, suits, proceedings, judgments, assessments, actions and other liabilities, whether judicial, administrative, investigative or otherwise, of whatever nature, known or unknown, liquidated or unliquidated ("Claims"), that may accrue to or be incurred by any Covered Person, or in which any Covered Person may become involved, as a party or otherwise, or with which any Covered Person may be threatened, relating to or arising out of the investment or other activities of the Management Company or its General Partner, or activities undertaken in connection with the Management Company or its General Partner, or otherwise relating to or

12

arising out of this Agreement, including amounts paid in satisfaction of judgments, in compromise or as fines or penalties, and attorneys' fees and expenses incurred in connection with the preparation for or defense or disposition of any investigation, action, suit, arbitration or other proceeding (a "<u>Proceeding</u>"), whether civil or criminal (all of such Claims, amounts and expenses referred to therein are referred to collectively as "<u>Damages</u>"), except to the extent that it shall have been determined ultimately by a court of competent jurisdiction, in a final nonappealable judgment, that such Damages arose primarily from Disabling Conduct of such Covered Person. The termination of any Proceeding by settlement, judgment, order, conviction or upon a plea of nolo contendere or its equivalent shall not, of itself, create a presumption that any Damages relating to such settlement, judgment, order, conviction or plea of nolo contendere or its equivalent or otherwise relating to such Proceeding arose primarily from Disabling Conduct of any Covered Persons. Any Covered Person shall be indemnified under the terms of this Section 6.03 regardless of such Covered Person's sole, comparative, joint, concurrent, or subsequent negligence.

Expenses (including attorneys' fees) incurred by a Covered Person in defense or settlement of any Claim that may be subject to a right of indemnification hereunder shall be advanced by the Management Company prior to the final disposition thereof upon receipt of a written undertaking by or on behalf of the Covered Person to repay the amount advanced to the extent that it shall be determined ultimately by a court of competent jurisdiction that the Covered Person is not entitled to be indemnified hereunder. The right of any Covered Persons to the indemnification provided herein shall be cumulative of, and in addition to, any and all rights to which the Covered Person may otherwise be entitled by contract or as a matter of law or equity and shall be extended to the Covered Person's successors, assigns and legal representatives. Any judgments against the Management Company and/or any Covered Persons in respect of which such Covered Person is entitled to indemnification shall first be satisfied from the assets of the Management Company, including Drawdowns, before such Covered Person is responsible therefor.

Notwithstanding any provision of this Agreement to the contrary, the provisions of this <u>Section 6.03</u> shall not be construed so as to provide for the indemnification of any Covered Person for any liability (including liability under Federal securities laws which, under certain circumstances, impose liability even on persons that act in good faith), to the extent (but only to the extent) that such indemnification would be in violation of applicable law, but shall be construed so as to effectuate the provisions of this <u>Section 6.03</u> to the fullest extent permitted by law.

Section 6.04   <u>Other Sources of Recovery etc</u>. The indemnification rights set forth in <u>Section 6.03</u> are in addition to, and shall not exclude, limit or otherwise adversely affect, any other indemnification or similar rights to which any Covered Person may be entitled. If and to the extent that other sources of recovery (including proceeds of any applicable policies of insurance or indemnification from any Person in which any of the Clients or Accounts has an investment) are available to any Covered Person, such Covered Person shall use reasonable efforts to obtain recovery from such other sources before the Company shall be required to make any payment in respect of its indemnification obligations hereunder; *provided* that, if such other recovery is not available without delay, the Covered Person shall be entitled to such payment by the Management Company and the Management Company shall be entitled to reimbursement out of such other recovery when and if obtained.

Section 6.05 <u>Rights of Heirs, Successors and Assigns</u>. The indemnification rights provided by <u>Section 6.03</u> shall inure to the benefit of the heirs, executors, administrators, successors and assigns of each Covered Person.

Section 6.06 <u>Reliance</u>. A Covered Person shall incur no liability to the Management Company or any Member in acting upon any signature or writing reasonably believed by him, her or it to be genuine, and may rely in good faith on a certificate signed by an officer of any Person in order to ascertain any fact with respect to such Person or within such Person's knowledge. Each Covered Person may act directly or through his, her or its agents or attorneys.

## ARTICLE VII

## TERMINATION

Section 7.01 <u>Termination</u>. Either Party may terminate this Agreement at any time upon at least thirty (30) days' written notice to the other.

## ARTICLE VIII

## MISCELLANEOUS

Section 8.01 <u>Amendments</u>. This Agreement may not be amended or modified except by an instrument in writing signed by each Party.

Section 8.02 <u>Assignment and Delegation</u>.

(a) Neither Party may assign, pledge, grant or otherwise encumber or transfer all or any part of its rights or responsibilities under this Agreement, in whole or in part, except (i) as provided in clauses (b) and (c) of this <u>Section 8.02</u>, without the prior written consent of the other Party and (ii) in accordance with Applicable Law.

(b) Except as otherwise provided in this <u>Section 8.02</u>, the Staff and Services Provider may not assign its rights or responsibilities under this Agreement unless (i) the Management Company consents in writing thereto and (ii) such assignment is made in accordance with Applicable Law.

(c) The Staff and Services Provider may, without satisfying any of the conditions of <u>Section 8.02(a)</u> other than clause (ii) thereof, (1) assign any of its rights or obligations under this Agreement to an Affiliate; *provided* that such Affiliate (i) has demonstrated ability, whether as an entity or by its principals and employees, to professionally and competently perform duties similar to those imposed upon the Staff and Services Provider pursuant to this Agreement and (ii) has the legal right and capacity to act as Staff and Services Provider under this Agreement, or (2) enter into (or have its parent enter into) any consolidation or amalgamation with, or merger with or into, or transfer of all or substantially all of its assets to, another entity; *provided* that, at the time of such consolidation, merger, amalgamation or transfer the resulting, surviving or transferee entity assumes all the obligations of the Staff and Services Provider under this Agreement generally (whether by operation of law or by contract) and the other entity is a continuation of the Staff and Services Provider in another corporate or similar form and has

14

substantially the same staff; *provided further* that the Staff and Services Provider shall deliver ten (10) Business Days' prior notice to the Management Company of any assignment or combination made pursuant to this sentence. Upon the execution and delivery of any such assignment by the assignee, the Staff and Services Provider will be released from further obligations pursuant to this Agreement except to the extent expressly provided herein.

Section 8.03    Non-Recourse; Non-Petition.

(a)    The Staff and Services Provider agrees that the payment of all amounts to which it is entitled pursuant to this Agreement shall be payable by the Management Company only to the extent of assets held in the Portfolio.

(b)    Notwithstanding anything to the contrary contained herein, the liability of the Management Company to the Staff and Services Provider hereunder is limited in recourse to the Portfolio, and if the proceeds of the Portfolio following the liquidation thereof are insufficient to meet the obligations of the Management Company hereunder in full, the Management Company shall have no further liability in respect of any such outstanding obligations, and such obligations and all claims of the Staff and Services Provider or any other Person against the Management Company hereunder shall thereupon extinguish and not thereafter revive. The Staff and Services Provider accepts that the obligations of the Management Company hereunder are the corporate obligations of the Management Company and are not the obligations of any employee, member, officer, director or administrator of the Management Company and no action may be taken against any such Person in relation to the obligations of the Management Company hereunder.

(c)    Notwithstanding anything to the contrary contained herein, any Staff and Services Provider agrees not to institute against, or join any other Person in instituting against, the Management Company any bankruptcy, reorganization, arrangement, insolvency, moratorium or liquidation proceedings, or other proceedings under United States federal or state bankruptcy laws, or similar laws until at least one year and one day (or, if longer, the then applicable preference period plus one day) after the payment in full all amounts payable in respect of any Indebtedness incurred to finance any portion of the Portfolio; *provided* that nothing in this provision shall preclude, or be deemed to stop, the Staff and Services Provider from taking any action prior to the expiration of the aforementioned one year and one day period (or, if longer, the applicable preference period then in effect plus one day) in (i) any case or proceeding voluntarily filed or commenced by the Management Company, or (ii) any involuntary insolvency proceeding filed or commenced against the Management Company by a Person other than the Staff and Services Provider.

(d)    The Management Company hereby acknowledges and agrees that the Staff and Services Provider's obligations hereunder shall be solely the corporate obligations of the Staff and Services Provider, and are not the obligations of any employee, member, officer, director or administrator of the Staff and Services Provider and no action may be taken against any such Person in relation to the obligations of the Staff and Services Provider hereunder.

(e)    The provisions of this Section 8.03 shall survive termination of this Agreement for any reason whatsoever.

Section 8.04   Governing Law.

(a)   This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas. The Parties unconditionally and irrevocably consent to the exclusive jurisdiction of the courts located in the State of Texas and waive any objection with respect thereto, for the purpose of any action, suit or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby.

(b)   The Parties irrevocably agree for the benefit of each other that the courts of the State of Texas and the United States District Court located in the Northern District of Texas in Dallas are to have exclusive jurisdiction to settle any disputes (whether contractual or non-contractual) which may arise out of or in connection with this Agreement and that accordingly any action arising out of or in connection therewith (together referred to as "Proceedings") may be brought in such courts. The Parties irrevocably submit to the jurisdiction of such courts and waive any objection which they may have now or hereafter to the laying of the venue of any Proceedings in any such court and any claim that any Proceedings have been brought in an inconvenient forum and further irrevocably agree that a judgment in any Proceedings brought in such courts shall be conclusive and binding upon the Parties and may be enforced in the courts of any other jurisdiction.

Section 8.05   WAIVER OF JURY TRIAL. EACH OF THE PARTIES HERETO HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHTS IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS AGREEMENT. EACH PARTY HERETO ACKNOWLEDGES AND AGREES THAT IT HAS RECEIVED FULL AND SUFFICIENT CONSIDERATION FOR THIS PROVISION AND THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR ITS ENTERING INTO THIS AGREEMENT.

Section 8.06   Severability. The provisions of this Agreement are independent of and severable from each other, and no provision shall be affected or rendered invalid or unenforceable by virtue of the fact that for any reason any other or others of them may be invalid or unenforceable in whole or in part. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties.

Section 8.07   No Waiver. The performance of any condition or obligation imposed upon any Party may be waived only upon the written consent of the Parties. Such waiver shall be limited to the terms thereof and shall not constitute a waiver of any other condition or obligation of the other Party. Any failure by any Party to enforce any provision shall not constitute a waiver of that or any other provision or this Agreement.

Section 8.08   Counterparts. This Agreement may be executed in any number of counterparts by facsimile or other written or electronic form of communication, each of which shall be deemed to be an original as against any Party whose signature appears thereon, and all of which shall together constitute one and the same instrument. This Agreement shall become binding when one or more counterparts hereof, individually or taken together, shall bear the signatures of all of the Parties reflected hereon as the signatories.

16

Section 8.09   Third Party Beneficiaries.   This Agreement is for the sole benefit of the Parties hereto and their permitted assigns and nothing herein express or implied shall give or be construed to give to any Person, other than the Parties hereto and such permitted assigns, any legal or equitable rights hereunder. For avoidance of doubt, this Agreement is not for the benefit or and is not enforceable by any Shared Employee, Client or Account or any investor (directly or indirectly) in the Management Company.

Section 8.10   No Partnership or Joint Venture.   Nothing set forth in this Agreement shall constitute, or be construed to create, an employment relationship, a partnership or a joint venture between the Parties.   Except as expressly provided herein or in any other written agreement between the Parties, no Party has any authority, express or implied, to bind or to incur liabilities on behalf of, or in the name of, any other Party.

Section 8.11   Independent Contractor.   Notwithstanding anything to the contrary, the Staff and Services Provider shall be deemed to be an independent contractor and, except as expressly provided or authorized herein, shall have no authority to act for or represent the Management Company or any Client or Account in which the Management Company acts as portfolio manager or investment manager or in a similar capacity in any manner or otherwise be deemed an agent of the Management Company or any Client or Account in which the Management Company acts as portfolio manager or investment manager or in a similar capacity.

Section 8.12   Written Disclosure Statement.   The Management Company acknowledges receipt of Part 2 of the Staff and Services Provider's Form ADV, as required by Rule 204-3 under the Advisers Act, on or before the date of execution of this Agreement.

Section 8.13   Headings.   The descriptive headings contained in this Agreement are for convenience of reference only and shall not affect in any way the meaning or interpretation of this Agreement.

Section 8.14   Entire Agreement.   This Agreement constitutes the entire agreement of the Parties with respect to the subject matter hereof and supersedes all prior agreements and undertakings, both written and oral, between the Parties with respect to such subject matter.

Section 8.15   Notices.   Any notice or demand to any Party to be given, made or served for any purposes under this Agreement shall be given, made or served by sending the same by overnight mail or email transmission or by delivering it by hand as follows:

(a)   If to the Management Company:

NexPoint Advisors, L.P.
200 Crescent Court
Suite 700
Dallas, TX 75201

(b)     If to the Staff and Services Provider:

Highland Capital Management, L.P.
300 Crescent Court
Suite 700
Dallas, TX 75201

or to such other address or email address as shall have been notified to the other Parties.

*[The remainder of this page intentionally left blank.]*

IN WITNESS WHEREOF, each Party has caused this Agreement to be executed as of the date hereof by its duly authorized representative.

**NEXPOINT ADVISORS, L.P.**

By: NexPoint Advisors GP, LLC, its General Partner

By: _____

Name: Frank Waterhouse
Title: Treasurer

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By: Strand Advisors, Inc., its General Partner

By: _____

Name: Frank Waterhouse
Title: Treasurer

# EXHIBIT 41



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 24, 2021**

_____
**United States Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff, | § | Adversary Proceeding No. |
| | § | |
| vs. | § | |
| | § | Case No. 21-03010-sgj11 |
| HIGHLAND CAPITAL MANAGEMENT FUND | § | |
| ADVISORS, L.P., AND NEXPOINT ADVISORS, | § | |
| L.P., | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER</u>

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.



1934054210224000000000013

This matter having come before the Court on the *Emergency Motion for a Mandatory Injunction Requiring the Advisors to Adopt and Implement a Plan for the Transition of Services by February 28, 2021* [Docket No. 2] (the "Motion")[2] filed by Highland Capital Management, L.P., the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Bankruptcy Case"), and the plaintiff in the above-captioned adversary proceeding, and this Court having considered (i) the Motion; (ii) *Plaintiff Highland Capital Management, L.P.'s Verified Original Complaint for Damages and for Declaratory and Injunctive Relief* [Docket No. 1] (the "Complaint"); (iii) the arguments and law cited in the Debtor's *Memorandum of Law in Support of its Motion for a Mandatory Injunction Requiring the Advisors to Adopt and Implement a Plan for the Transition of Services by February 28, 2021* [Docket No. 3] (the "Memorandum of Law," and together with the Motion and Complaint, the "Debtor's Papers"); (iv) the *Objection to Mandatory Injunction and Brief in Support Thereof* [Docket No. 20] (the "Objection"), filed on February 22, 2021, by the Advisors; (v) the testimonial and documentary evidence admitted into evidence during the hearing held on February 23, 2021 (the "Hearing"), including the credibility of witnesses Mr. James P. Seery, Jr., Mr. James Dondero, and Mr. Dustin Norris; and (vi) the arguments made during the Hearing; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding[3] pursuant to 28 U.S.C. § 157(b)(2);

---

[2] Capitalized terms used but not herein defined shall have the meanings ascribed to such terms in the Motion.

[3] **The court orally stated at the hearing that, at a minimum, there is bankruptcy subject matter jurisdiction in this action, since: (a) there is a conceivable effect on the bankruptcy estate being administered (i.e., the pre-confirmation test for bankruptcy subject matter jurisdiction), since there is a risk of potential liability or regulatory actions being pursued against the estate, if the Debtor does not obtain relief in this action, and, also (b) the outcome of this action could bear on the interpretation, implementation, and execution of a confirmed plan (i.e., the post-confirmation test for bankruptcy subject matter jurisdiction). The court also concluded, upon further analysis, that the action should be deemed to present a "core" matter, with regard to which the bankruptcy court may issue final orders and exercise Constitutional authority, since, among other things, the relief sought is, in essence, supplemental to the confirmation order and in furtherance of implementation of the confirmed plan.** *See* **11 U.S.C. § 1142(b). In all events, should this order ever be subject to an appeal, and the District Court concludes that "noncore" matters are involved, the bankruptcy**

2

and this Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate and that no other notice need be provided; and upon all of the proceedings had before this Court, the legal and factual bases set forth in the Debtor's Papers, and the evidence submitted at the Hearing; and after due deliberation and sufficient cause appearing therefor, and for the reasons set forth in the record on this Motion, the Court makes the following findings of fact:

1. Each of the Advisors is controlled by Mr. Dondero.

2. The Debtor had the contractual right to terminate the HCMFA Shared Services Agreement on 60 days' written notice.

3. The Debtor properly exercised its right to terminate the HCMFA Shared Services Agreement by providing at least 60 days' written notice.

4. The HCMFA Shared Services Agreement and the Debtor's obligation to provide services to HCMFA under the HCMFA Shared Services Agreement terminated on February 19, 2021.

5. The Debtor had the contractual right to terminate the NPA Shared Services Agreement on 30 days' written notice.

6. The Debtor properly exercised its right to terminate the NPA Shared Services Agreement by providing at least 30 days' written notice.

7. The NPA Shared Services Agreement and the Debtor's obligation to provide services to NPA under the NPA Shared Services Agreement terminated on February 19, 2021.

---

court requests that the District Court regard this ruling as a *proposed* set of findings, conclusions and order from the bankruptcy court and that the District Court adopt this ruling, pursuant to 28 U.S.C. § 157(c)(1).

8.     Except as expressly set forth herein, effective as of February 19, 2021, the Debtor has no obligation to provide any services, software, or assistance to any of HCMFA, NPA, the Funds, or any servicer or personnel retained by any of HMCFA, NPA, or the Funds.

9.     As of February 20, 2021, each of HCMFA and NPA had adopted an operating plan to obtain or provide all services previously provided by the Debtor that are necessary to fully perform under their agreements with the Funds without the aid or assistance of the Debtor.

10.     Except as expressly set forth herein, as of February 20, 2021, neither HCMFA nor NPA needs any services, including contractual arrangements and software, previously provided by the Debtor or its employees under the Shared Services Agreements that are necessary to fully perform under their agreements with the Funds.

11.     On or prior to February 28, 2021, the Advisors will promptly provide the Debtor with written notice of the documents, data, and books and records (collectively, the "Data") that the Advisors' believe constitute their property.  If the Debtor in reasonable good faith determines such Data is the Advisors' property, the Debtor will take reasonable efforts to provide the Advisors with a copy of such Data.  **Subject to paragraph 13 below, on and prior to February 28, 2021, each party will bear its own costs and expenses associated with the copying of the Data**.  Under no circumstances will the Debtor be required to erase or otherwise remove any Data from the Debtor's systems.  For the avoidance of doubt, the Debtor will have no obligation to provide any Data that constitutes the Debtor's privileged, confidential, or proprietary information.

12.     Subject to paragraph 14, the Debtor will have no obligation to provide any Data to the Advisors after February 28, 2021.  If the Debtor in reasonable good faith cannot satisfy any request for Data made pursuant to paragraph 11 by the close of business on February 28, 2021, the Debtor will have no further obligation to provide such Data.

13. The Debtor will not be required to incur any *material* time, cost, or expense in furtherance of its obligations set forth in paragraph 11—**the Advisors' witness having represented to the court that the copying and/or transfer of the Data would be fairly easy to achieve and that the Advisors stood by ready to receive the Data**. To the extent any requests require material time, cost, or expense, the Debtor may petition this Court for the payment of any fees, costs, or expenses incurred in connection with the fulfillment of its obligations under paragraph 11 (including the cost of such petition) and shall have no obligation to provide such Data until the Court has ruled on such petition.

14. If the Debtor cannot in reasonable good faith provide requested Data by February 28, 2021, or if the Advisors request any Data after February 28, 2021, and in each case if the parties cannot agree on the propriety of such request after conferring in good faith, the Advisors may petition this Court for access to such Data. Regardless, the Advisors will bear any and all costs associated with any requests for Data and the delivery of such Data under this paragraph.

15. Notwithstanding anything herein to the contrary, the delivery of Data to the Advisors will not constitute a waiver of any privileges, including attorney-client privilege, or any confidentiality requirements.

16. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

17. Based on the foregoing, the Motion is dismissed as moot.

### End of Order ###

DOCS_NY:42406.7 36027/002

# EXHIBIT 42



OPERATING RESULTS

**February 2018**

**Highland Capital Management, L.P.**
**Significant Items Impacting HCMLP's Balance Sheet**
**February 2018**

<u>CLOs</u>

███████████████████████████

<u>Operating Activities</u>

██████████████████████████
████████████████████████
██████████████████████████
████████████████████████
█████████████████████████

<u>Investments</u>

███████████████████
████████████████████
██████████████████████
███████████████████████████████
████████████████████
████████████████████
██████████████████████████████████
███████████████████████████████
████████████████████
████████████████████

<u>Other</u>
 - ($3.8M) partner loan

**Highland Capital Management, L.P.**
**Financial/Operational Highlights**
**February 2018 Close Package**
*(in millions)*

|  | 11/30/2017 | 12/31/2017 | 1/31/2018 | 2/28/2018 |
|---|---|---|---|---|
| **Cash** | $ 6.4 | $ 10.2 | $ 2.2 | $ 9.6 |
| **Operating Revenue** | $ 4.3 | $ 13.9 | $ 4.2 | $ 4.4 |
| **Operating Expenses** [1] | (4.2) | (19.7) | (3.7) | (4.5) |
| **Operating Income** | $ 0.1 | $ (5.8) | $ 0.5 | $ (0.1) |
| **Add back: Non-Recurring Items** | $ - | $ - | $ - | $ - |
| **Adjusted Operating Income** | $ 0.1 | $ (5.8) | $ 0.5 | $ (0.1) |
| **Net Income/(Loss)** | $ 20.4 | $ 17.0 | $ 7.2 | $ (26.1) |

|  | MTD | YTD | LTM |
|---|---|---|---|
| **Operating Cash Flow** [2] | $ (6.0) | $ (4.2) | $ (7.6) |
| Interest Expense | (0.1) | (0.2) | (1.6) |
| **Adjusted Operating Cash Flow** | $ (6.1) | $ (4.4) | $ (9.2) |

| **Assets Under Management (billions)** | 11/30/2017 | 12/31/2017 | 1/31/2018 |
|---|---|---|---|
| CLO 1.0 | $ 2.1 | $ 1.9 | $ 1.8 |
| Sep. Accounts | 1.9 | 2.0 | 2.0 |
| Hedge/PE | 1.1 | 1.1 | 1.1 |
| **Total** | $ 5.0 | $ 5.0 | $ 4.9 |

| **Headcount - including affiliates** | 11/30/2017 | 12/31/2017 | 1/31/2018 | 2/28/2018 |
|---|---|---|---|---|
| Front Office | 47 | 45 | 45 | 42 |
| Institutional Marketing and Client Service | 7 | 7 | 9 | 8 |
| Legal | 14 | 15 | 15 | 16 |
| Admin | 13 | 14 | 13 | 13 |
| Retail Operations (HCMLP) | 4 | 4 | 4 | 4 |
| Back Office | 41 | 38 | 39 | 39 |
| HCFD/NSI | 21 | 21 | 17 | 16 |
| HCMF Strategy/Marketing | 5 | 5 | 5 | 5 |
| Total | 152 | 149 | 147 | 143 |

**Notes:**

(1) Excludes deferred compensation MTM

(2) Operating Cash Flow = Operating Income + Dep. + Deferred Comp + Non-Cash Bonus Expense

2

**HCMLP Rolling Fee Earning AUM Schedule**
*(in millions)*

| | | 2/28/2017 | | 3/31/2017 | | 4/30/2017 | | 5/31/2017 | | 6/30/2017 | | 7/31/2017 | | 8/31/2017 | | 9/30/2017 | | 10/31/2017 | | 11/30/2017 | | 12/31/2017 | | 1/31/2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CLO 1 0 | $ | 3,396 | $ | 3,405 | $ | 3,402 | $ | 2,250 | $ | 2,250 | $ | 2,249 | $ | 2,063 | $ | 2,060 | $ | 2,072 | $ | 1,859 | $ | 1,827 | $ | 1,831 |
| Sep Accounts | | 2,251 | | 2,282 | | 1,538 | | 1,741 | | 1,732 | | 1,787 | | 1,823 | | 1,855 | | 1,905 | | 1,951 | | 1,987 | | 2,003 |
| Hedge/PE | | 1,189 | | 1,195 | | 1,213 | | 1,076 | | 1,065 | | 1,049 | | 1,058 | | 1,067 | | 1,072 | | 1,112 | | 1,073 | | 1,084 |
| Total | $ | 6,742 | $ | 6,882 | $ | 6,153 | $ | 5,067 | $ | 5,047 | $ | 5,085 | $ | 4,945 | $ | 4,981 | $ | 5,049 | $ | 4,922 | $ | 4,887 | $ | 4,917 |



Highland Capital Management, LP

3

**HCMLP Monthly Management Fees**
*(in thousands)*

| | 3/31/2017 | 4/30/2017 | 5/31/2017 | 6/30/2017 | 7/31/2017 | 8/31/2017 | 9/30/2017 | 10/31/2017 | 11/30/2017 | 12/31/2017 | 1/31/2018 | 2/28/2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CLO 1 0 | $ 1,433 | $ 1,081 | $ 961 | $ 961 | $ 1,644 | $ 793 | $ 802 | $ 1,082 | $ 768 | $ 765 | $ 817 | $ 713 |
| Sep Accounts | 577 | 762 | 586 | 327 | 792 | 635 | 563 | 516 | 678 | 584 | 622 | 626 |
| Subadvised Account | 566 | 526 | 505 | 588 | 538 | 520 | 529 | 447 | 620 | 621 | 491 | 497 |
| Hedge/PE Funds | 414 | 446 | 409 | 2,617 | 797 | 837 | 831 | 814 | 818 | 817 | 1,177 | 1,138 |
| Total | $ 2,990 | $ 2,815 | $ 2,462 | $ 4,494 | $ 3,771 | $ 2,785 | $ 2,725 | $ 2,860 | $ 2,885 | $ 2,786 | $ 3,107 | $ 2,974 |



**Highland Capital Management, LP**



**HIGHLAND CAPITAL**
M A N A G E M E N T, LP

**Statement of Income**
**Twelve Months Ended February 2018**
**(in thousands)**

| | Mar-17 | Apr-17 | May-17 | Jun-17 | Jul-17 | Aug-17 | Sep-17 | Oct-17 | Nov-17 | Dec-17 | Jan-18 | Feb-18 | LTM | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue:** | | | | | | | | | | | | | | |
| Management fees | $ 2,990 $ | 2,815 $ | 2,462 $ | 4,494 $ | 3,771 $ | 2,785 $ | 2,725 $ | 2,860 $ | 2,885 $ | 3,265 $ | 3,129 $ | 2,974 $ | 37,154 $ | 6,103 |
| Shared services fees | 817 | 871 | 794 | 620 | 779 | 803 | 757 | 732 | 871 | 873 | 930 | 866 | 9,713 | 1,796 |
| Incentive fees | - | - | - | - | - | - | - | - | - | 10,057 | - | - | 10,057 | - |
| Other income | 431 | 217 | 560 | 477 | 274 | 614 | 562 | 234 | 586 | 912 | 215 | 596 | 5,679 | 811 |
| **Total operating revenue** | 4,237 | 3,904 | 3,816 | 5,591 | 4,824 | 4,202 | 4,043 | 3,827 | 4,342 | 15,107 | 4,274 | 4,436 | 62,603 | 8,710 |
| **Operating expenses:** | | | | | | | | | | | | | | |
| Compensation and benefits | 2,769 | 2,539 | 2,495 | 2,702 | 2,885 | 2,800 | 2,368 | 2,308 | 2,795 | 2,692 | 2,755 | 2,769 | 31,876 | 5,524 |
| Deferred compensation | 222 | 243 | 157 | 214 | 426 | 50 | 297 | 286 | 755 | 291 | 159 | 101 | 3,201 | 260 |
| Professional services | 629 | 307 | 1,168 | 511 | 616 | 1,531 | 472 | 1,031 | 649 | 16,650 | 181 | 314 | 24,060 | 495 |
| Investment research and consulting | 226 | 175 | 8 | 208 | 14 | 15 | 160 | 22 | 8 | 242 | 13 | 20 | 1,111 | 33 |
| Depreciation | 110 | 110 | 110 | 114 | 112 | 112 | 113 | 112 | 112 | 108 | 109 | 108 | 1,328 | 217 |
| Other operating expenses | 875 | 684 | 702 | 1,021 | 645 | 988 | 805 | 723 | 497 | 662 | 580 | 683 | 8,866 | 1,263 |
| **Total operating expenses** | 4,831 | 4,057 | 4,640 | 4,770 | 4,697 | 5,495 | 4,216 | 4,482 | 4,816 | 20,646 | 3,798 | 3,995 | 70,442 | 7,793 |
| **Operating income** | (594) | (153) | (824) | 821 | 127 | (1,292) | (172) | (655) | (474) | (5,539) | 476 | 441 | (7,839) | 917 |
| **Other income/expense:** | | | | | | | | | | | | | | |
| Interest and investment income, net | 478 | 454 | 493 | 661 | 606 | 558 | 532 | 574 | 937 | 839 | 612 | 473 | 7,219 | 1,086 |
| Interest expense | (143) | (141) | (149) | (146) | (142) | (148) | (136) | (141) | (134) | (147) | (141) | (65) | (1,632) | (206) |
| Other income/expense | 59 | 170 | 4,060 | 947 | 39 | 13 | 63 | 77 | 64 | 19,147 | 81 | 64 | 24,784 | 145 |
| **Total other income/expense** | 394 | 484 | 4,405 | 1,462 | 503 | 424 | 459 | 510 | 867 | 19,839 | 552 | 472 | 30,370 | 1,024 |
| **Realized and unrealized gain/(loss) from investments** | | | | | | | | | | | | | | |
| Net realized gain/(loss) on sale of investment transactions | 1,547 | (20) | 2,560 | 272 | 496 | 2,811 | - | 22 | - | (1,155) | - | - | 6,533 | - |
| Net change in unrealized gain/(loss) of investments | (189) | (460) | 4,729 | 4,338 | 3,144 | (9,361) | 9,180 | (1,004) | 6,375 | 2,170 | 10,678 | (10,201) | 19,398 | 477 |
| **Total realized and unrealized gain/(loss) from investments** | 1,358 | (480) | 7,290 | 4,610 | 3,640 | (6,550) | 9,180 | (982) | 6,375 | 1,015 | 10,678 | (10,201) | 25,931 | 477 |
| **Earnings and losses from equity method investees** | | | | | | | | | | | | | | |
| | 225 | 235 | (16) | 258 | 44 | (201) | 333 | 12 | 200 | 329 | 926 | (210) | 2,135 | 716 |
| | (2,857) | (558) | (624) | 818 | (1,908) | 1,709 | (1,136) | (203) | 4,333 | 529 | (1,674) | (5,137) | (6,708) | (6,811) |
| | (5,870) | (1,935) | (1,352) | 1,692 | (3,860) | 3,454 | (2,300) | (419) | 8,353 | 1,019 | (3,731) | (11,446) | (16,395) | (15,177) |
| | - | - | - | - | - | 9 | 0 | 15 | - | 18 | - | - | 42 | - |
| | - | (184) | - | (6) | (15) | - | (14) | (18) | 11 | 102 | - | - | (125) | - |
| | - | - | - | - | - | - | - | - | 768 | - | - | - | 768 | - |
| | - | - | (1,534) | - | - | - | - | - | - | - | - | - | (1,534) | - |
| | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total earnings/(loss) from equity method investees** | (8,502) | (2,441) | (3,525) | 2,762 | (5,740) | 4,971 | (3,118) | (613) | 13,664 | 1,996 | (4,479) | (16,794) | (21,817) | (21,273) |
| **Net income** | (7,345) | (2,591) | 7,345 | 9,655 | (1,470) | (2,447) | 6,348 | (1,739) | 20,432 | 17,311 | 7,227 | (26,081) $ | 26,645 $ | (18,854) |
| **Profit margin** | -173% | -66% | 192% | 173% | -30% | -58% | 157% | -45% | 471% | 115% | 169% | -588% | 43% | -216% |
| **Operating Cash Flow Calculation:** | | | | | | | | | | | | | | |
| Operating income | (594) | (153) | (824) | 821 | 127 | (1,292) | (172) | (655) | (474) | (5,539) | 476 | 441 | (7,839) | 917 |
| Add Depreciation expense | 110 | 110 | 110 | 114 | 112 | 112 | 113 | 112 | 112 | 108 | 109 | 108 | 1,328 | 217 |
| Adjustment Deferred compensation | (2,767) | 243 | 157 | 214 | 426 | 50 | 297 | 286 | 755 | 291 | 159 | (489) | (378) | (330) |
| Bonus awards | 1,000 | 956 | 1,000 | 1,000 | 1,000 | (5,190) | 986 | 1,000 | 1,300 | 1,300 | 1,000 | (6,049) | (696) | (5,049) |
| **Operating Cash Flow** | (2,251) | 1,155 | 442 | 2,149 | 1,664 | (6,320) | 1,224 | 743 | 1,693 | (3,840) | 1,744 | (5,989) $ | (7,585) $ | (4,245) |
| Less Interest expense | (143) | (141) | (149) | (146) | (142) | (148) | (136) | (141) | (134) | (147) | (141) | (65) | (1,632) | (206) |
| **Adjusted Operating Cash Flow** | (2,395) | 1,015 | 293 | 2,003 | 1,523 | (6,468) | 1,087 | 603 | 1,559 | (3,987) | 1,603 | (6,054) $ | (9,217) $ | (4,451) |
| Add cash bonus expense | 1,063 | 1,001 | 1,000 | 1,100 | 1,032 | 1,025 | 1,000 | 1,008 | 1,304 | 1,300 | 1,000 | 1,000 | 12,832 | 2,000 |
| Less cash bonuses paid | (63) | (45) | - | (100) | (32) | (6,215) | (14) | (8) | (4) | - | - | (7,049) | (7,049) | (7,049) |
| **Non-cash bonus add-back** | 1,000 | 956 | 1,000 | 1,000 | 1,000 | (5,190) | 986 | 1,000 | 1,300 | 1,300 | 1,000 | (6,049) | (696) | (5,049) |
| Add deferred compensation MTM | 222 | 243 | 157 | 214 | 426 | 50 | 297 | 286 | 755 | 291 | 159 | - | 3,201 | 260 |
| Less cash deferred awards paid | (2,989) | - | - | - | - | - | - | - | - | - | - | (590) | (3,579) | (590) |
| **Non-cash deferred award add-back** | (2,767) | 243 | 157 | 214 | 426 | 50 | 297 | 286 | 755 | 291 | 159 | (489) | (378) | (330) |



**Balance Sheet**
**February 2018 vs. January 2018**
**(in thousands)**

| | February 28, 2018 | January 31, 2018 | Increase/ (Decrease) $ | Increase/ (Decrease) % |
|---|---|---|---|---|
| **Assets** | | | | |
| Cash and cash equivalents | $ 9,607 | $ 2,161 | $ 7,446 | 344.6% |
| Investments, at fair value | 266,615 | 277,888 | (11,273) | -4.1% |
| Equity method investees | 59,692 | 82,690 | (22,997) | -27.8% |
| Management and incentive fee receivable | 1,918 | 4,988 | (3,070) | -61.5% |
| Deferred incentive fees | - | 6,944 | (6,944) | 0.0% |
| Fixed assets, net | 5,557 | 5,665 | (109) | -1.9% |
| Due from affiliates | 181,222 | 175,605 | 5,617 | 3.2% |
| Other assets | 9,408 | 10,353 | (945) | -9.1% |
| **Total assets** | **$ 534,020** | **$ 566,295** | **$ (32,275)** | **(5.7%)** |
| | | | | |
| **Liabilities and Partners' Capital** | | | | |
| Accounts payable | $ 2,036 | $ 2,667 | $ (631) | -23.7% |
| Due to brokers | 35,777 | 35,842 | (64) | -0.2% |
| Accrued expenses and other liabilities | 54,361 | 59,860 | (5,498) | -9.2% |
| | | | | |
| Partners' capital | 441,846 | 467,927 | (26,081) | -5.6% |
| **Total liabilities and partners' capital** | **$ 534,020** | **$ 566,295** | **$ (32,275)** | **(5.7%)** |

**Partners' Capital Walk**

| | |
|---|---|
| Partners' capital at 1/31 | $ 467,927 |
| Net subscriptions/(redemptions) | - |
| Net income/(loss) | (26,081) |
| Partners' capital at 2/28 | $ 441,846 |



Income Statement
February 2018 YTD vs. January 2017 YTD
(in thousands)

|  | 2018 YTD | 2017 YTD | Increase/ (Decrease) $ | Increase/ (Decrease) % |
|---|---|---|---|---|
| **Revenue:** |  |  |  |  |
| Management fees | $ 6,103 | $ 6,106 | $ (3) | 0.0% |
| Shared services fees | 1,796 | 1,574 | 221 | 14.1% |
| Other income | 811 | 808 | 3 | 0.4% |
| **Total operating revenue** | **8,710** | **8,488** | **222** | **2.6%** |
| **Operating expenses:** |  |  |  |  |
| Salaries and overtime | 2,331 | 2,274 | 57 | 2.5% |
| Bonus | 2,000 | 1,995 | 5 | 0.2% |
| Other compensation and benefits | 1,193 | 1,125 | 68 | 6.1% |
| Deferred compensation | 260 | 666 | (406) | -61.0% |
| Professional services | 495 | 740 | (245) | -33.1% |
| Investment research and consulting | 33 | 23 | 10 | 45.5% |
| Marketing and advertising expense | 341 | 460 | (119) | -25.8% |
| Depreciation expense | 217 | 221 | (4) | -2.0% |
| Other operating expenses | 922 | 747 | 175 | 23.4% |
| **Total operating expenses** | **7,793** | **8,252** | **(460)** | **-5.6%** |
| **Operating income/(loss)** | **917** | **236** | **681** | **288.5%** |
| **Other income/expense:** |  |  |  |  |
| Interest income | 1,086 | 916 | 170 | 18.6% |
| Interest expense | (206) | (244) | 39 | -15.8% |
| Other income/expense | 145 | 251 | (106) | -42.3% |
| **Total other income/expense** | **1,024** | **922** | **103** | **11.1%** |
| **Realized and unrealized gains from investments:** |  |  |  |  |
| Net realized losses on sales of investment transactions | - | - | - | 0.0% |
| Net change in unrealized gains/(losses) of investments | 477 | 10,093 | (9,616) | 95.3% |
| **Total realized and unrealized gains from investments** | **477** | **10,093** | **(9,616)** | **-95.3%** |
| **Net earnings/(losses) from equity method investees** | (21,273) | 6,393 | (27,666) | 432.8% |
| **Net income/(loss)** | **$ (18,854)** | **$ 17,644** | **$ (36,498)** | **206.9%** |
| **Profit margin** | **-216%** | **208%** |  |  |

| Other operating expenses detail |  |  |  |  |
|---|---|---|---|---|
| Rent expense | 258 | 196 | 61 | 31.2% |
| Fees and dues | 44 | 55 | (11) | -19.6% |
| Travel and entertainment | 137 | 201 | (63) | -31.6% |
| Insurance expense | 128 | 50 | 78 | 155.8% |
| Bad debt expense | - | - | - | 0.0% |
| Miscellaneous expenses | 354 | 245 | 110 | 44.9% |
| **Total other operating expenses** | **922** | **747** | **175** | **23.4%** |



**HCMLP Analytics**
*(in thousands)*
**Accounts Payable Aging Analysis**

| Vendor Type | Current | | 30 Days | | 45 Days | | 90 Days | | 120 Days | | Greater Than 120 Days | | Grand Total | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Overhead | $ | 678 | $ | 45 | $ | 433 | $ | 86 | $ | - | $ | - | 1,242 | 61% |
| Legal | | - | | - | | - | | - | | - | | 794 | 794 | 39% |
| Grand Total | $ | 678 | $ | 45 | $ | 433 | $ | 86 | $ | - | $ | 794 | $ 2,036 | 100% |
| | | | | | | | | | | | | | | |
| % Outstanding | | 33% | | 2% | | 21% | | 4% | | 0% | | 39% | | |

| Top 5 Legal Greater than 120 Days | | February 2018 | Top 5 Overhead Greater than 120 Days* | | February 2018 |
|---|---|---|---|---|---|
| | $ | 292 | N/A | | - |
| | | 200 | | | |
| | | 180 | | | |
| | | 112 | | | |
| | | 10 | | | |
| Total | $ | 794 | Total | $ | - |
| % Total of AP Outstanding | | 39% | % Total of AP Outstanding | | 0% |

**Fund Reimbursements**

| Funds | 2/28/2018 | | 1/31/2018 | | 2/28/2017 | | Year-Over-Year $ Change | | % Change |
|---|---|---|---|---|---|---|---|---|---|
| US CLOs | $ | 851 | $ | 1,893 | $ | 633 | $ | 217 | 34% |
| Hedge/Private Equity | | 611 | | 622 | | 497 | | 114 | 23% |
| Separate Accounts | | 30 | | 30 | | 17 | | 13 | 77% |
| Retail | | 194 | | 194 | | 557 | | (363) | -65% |
| International/Portfolio Co | | 3,413 | | 3,668 | | 3,954 | | (541) | -14% |
| Research Unallocated | | 759 | | 311 | | 888 | | (129) | -15% |
| Unallocated | | 1,345 | | 1,297 | | 1,350 | | - | 0% |
| Total | $ | 7,202 | $ | 8,015 | $ | 7,896 | $ | (688) | -9% |

| | | | 1/31/2018 | | Net Additions | | Receipts | | 2/28/2018 |
|---|---|---|---|---|---|---|---|---|---|
| Month to Month Change | | $ | 8,015 | $ | 330 | $ | (1,143) | $ | 7,202 |

| | | 2/28/2017 | | 2/28/2018 | | 2017 YTD | 2018 YTD |
|---|---|---|---|---|---|---|---|
| Fund Reimbursement Receipts | $ | 1,620 | $ | 1,143 | $ | 2,225 | 2,256 |

**HCMLP Invoice Metrics**

| | February 2018 | | January 2018 |
|---|---|---|---|
| Invoices Processed: | | 162 | 120 |
| $ Amount Processed: | $ | 8,077 | $ 11,918 |
| # of Payments | | 166 | 152 |
| $ Amount of Payments: | $ | 8,558 | $ 13,302 |

**Self-Insurance Summary**

| Entity | Premium Balance |
|---|---|
| | 693 |
| | 370 |
| | 89 |
| | 9 |
| | (156) |
| | (154) |
| | (197) |
| | (392) |
| | (258) |
| **Total over/(under) funded** | $ 4 |

**Shared Services Receivables Summary**

| Entity | Balance |
|---|---|
| | 3,730 |
| | 367 |
| | 200 |
| | 40 |
| | 54 |
| | - |
| | - |
| **Total** | $ 4,391 |

**Highland Capital Management, LP**
**Schedule of Investments**
**As of February 2018**



| Fund | MV @ 1/31/2018 | Monthly Change in Unrealized Gain/(Loss) | Contributions, (Distributions) & Realized Gain/(Loss) | MV @ 2/28/2018 |
|---|---|---|---|---|
| | 5,660,653 | (29,409) | - | 5,631,244 |

**Historical Legal Summary through February 28, 2018**
**Includes only matters allocated to HCMLP**
**in thousands**

**HCMLP Legal by Matter**

**HCMLP Legal by Vendor**

| | | | |
|---|---|---|---|
| Sub-Total Top 25 Matters | 3,469 | 3,513 | 8,039 | 512 |

| Sub-Total Other Matters | 31 | 1 | - | - |
| Total Matters | 3,500 | 3,514 | 8,039 | 512 |

| Sub-Total Top 25 Vendors | 2,865 | 3,045 | 7,450 | 450 |
| Sub-Total Other Vendors | 635 | 469 | 589 | 61 |
| Total Vendors | 3,500 | 3,514 | 8,039 | 512 |

Sorted largest to smallest Matter by 2018 dollars invoiced

Sorted largest to smallest Vendor by cumulative dollars invoiced ('12 - YTD '18)

**Employee Expenses through February 28, 2018**
**Excludes all Dondero Reimbursements**
**HCMLP & Certain Affiliated Advisors**
**in thousands**

**Employee Expenses - Including Reimbursable**

| Company | 2015 | 2016 | 2017 | 2018 | 2018 Annualized |
|---|---|---|---|---|---|
| ▄▄▄ | $ 838 | $ 707 | $ 818 | $ 93 | $ 557 |
| ▄▄▄▄ | 2,447 | 1,860 | 1,041 | 85 | 509 |
| ▄▄▄▄ | 742 | 511 | 292 | 23 | 139 |
| ▄▄ | - | 57 | 141 | 18 | 108 |
| Total | $ 4,027 | $ 3,135 | $ 2,293 | $ 219 | $ 1,312 |

**Employee Expenses - Non-Reimbursable Only**

| Company | 2015 | 2016 | 2017 | 2018 | 2018 Annualized |
|---|---|---|---|---|---|
| HCMLP | $ 387 | $ 174 | $ 396 | $ 61 | $ 363 |
| HCFD | 2,219 | 933 | 543 | 39 | 231 |
| HCMFA | 450 | 380 | 256 | 18 | 110 |
| NPA | - | 16 | 61 | 9 | 55 |
| Total | $ 3,056 | $ 1,503 | $ 1,257 | $ 127 | $ 759 |

11

# EXHIBIT 43



# OPERATING RESULTS

**August 2018**

**Highland Capital Management, L.P.**
**Significant Items Impacting HCMLP's Balance Sheet**
**August 2018**

<u>Operating Activities</u>

██████████████████████████

████████████████████████

█████████████████

<u>Investments</u>

█████████████████████

██████████████████████

████████████████████████████████████

██████████████████████

██████████████████████████

███████████████████████

<u>Other</u>
 - ($5.0M) partner loan

**Highland Capital Management, L.P.**
**Financial/Operational Highlights**
**August 2018 Close Package**
*(in millions)*

|  | 5/31/2018 | 6/30/2018 | 7/31/2018 | 8/31/2018 |
|---|---|---|---|---|
| **Cash** | $ 6.9 | $ 7.8 | $ 7.7 | $ 3.4 |
| **Operating Revenue** | $ 5.0 | $ 4.4 | $ 4.8 | $ 3.2 |
| **Operating Expenses** [1] | (4.8) | (4.9) | (4.4) | (3.9) |
| **Operating Income** | $ 0.2 | $ (0.5) | $ 0.4 | $ (0.7) |
| **Add back: Non-Recurring Items** [3] | $ 0.9 | $ 0.9 | $ 0.7 | $ - |
| **Adjusted Operating Income** | $ 1.1 | $ 0.4 | $ 1.1 | $ (0.7) |
| **Net Income/(Loss)** | $ (1.3) | $ (2.2) | $ 12.1 | $ 11.9 |

|  | MTD | YTD | LTM |
|---|---|---|---|
| **Operating Cash Flow** [2] | $ (5.9) | $ 3.5 | $ (8.2) |
| Interest Expense | (0.2) | (1.1) | (1.6) |
| **Adjusted Operating Cash Flow** | $ (6.1) | $ 2.4 | $ (9.8) |

| **Assets Under Management (billions)** | 5/31/2018 | 6/30/2018 | 7/31/2018 |
|---|---|---|---|
| CLO 1.0 | $ 1.4 | $ 1.4 | $ 1.4 |
| Sep. Accounts | 2.5 | 2.5 | 2.5 |
| Hedge/PE | 0.6 | 0.2 | 0.2 |
| **Sub-total** | $ 4.5 | $ 4.1 | $ 4.1 |

| **Headcount - including affiliates** | 5/31/2018 | 6/30/2018 | 7/31/2018 | 8/31/2018 |
|---|---|---|---|---|
| Front Office | 38 | 38 | 38 | 38 |
| Institutional Marketing and Client Service | 4 | 4 | 3 | 2 |
| Legal | 15 | 15 | 15 | 15 |
| Admin | 15 | 15 | 15 | 15 |
| Retail Operations (HCMLP) | 6 | 6 | 6 | 6 |
| Back Office | 34 | 35 | 35 | 35 |
| HCFD/NSI | 16 | 17 | 17 | 17 |
| HCMF Strategy/Marketing | 8 | 8 | 8 | 8 |
| Total | 136 | 138 | 137 | 136 |

**Notes:**

(1) Excludes deferred compensation MTM

(2) Operating Cash Flow = Operating Income + Dep. + Deferred Comp + Non-Cash Bonus Expense

(3) Receivables reserve

**HCMLP Rolling Fee Earning AUM Schedule**
*(in millions)*

| | | 8/31/2017 | | 9/30/2017 | | 10/31/2017 | | 11/30/2017 | | 12/31/2017 | | 1/31/2018 | | 2/28/2018 | | 3/31/2018 | | 4/30/2018 | | 5/31/2018 | | 6/30/2018 | | 7/31/2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CLO 1 0 | $ | 2,063 | $ | 2,060 | $ | 2,072 | $ | 1,859 | $ | 1,827 | $ | 1,831 | $ | 1,579 | $ | 1,572 | $ | 1,575 | $ | 1,402 | $ | 1,390 | $ | 1,393 |
| Sep Accounts | | 1,823 | | 1,855 | | 1,905 | | 1,951 | | 1,987 | | 2,003 | | 2,013 | | 2,039 | | 2,493 | | 2,514 | | 2,515 | | 2,458 |
| Hedge/PE | | 1,058 | | 1,067 | | 1,072 | | 1,112 | | 1,073 | | 1,084 | | 757 | | 751 | | 598 | | 596 | | 204 | | 199 |
| Sub-total | $ | 4,945 | $ | 4,981 | $ | 5,049 | $ | 4,922 | $ | 4,887 | $ | 4,917 | $ | 4,349 | $ | 4,362 | $ | 4,665 | $ | 4,512 | $ | 4,108 | $ | 4,050 |
| CLO 2 0 | | - | | - | | - | | - | | - | | - | | - | | - | | 2,250 | | 2,174 | | 2,164 | | 2,161 |
| Grand Total | $ | 4,945 | $ | 4,981 | $ | 5,049 | $ | 4,922 | $ | 4,887 | $ | 4,917 | $ | 4,349 | $ | 4,362 | $ | 6,915 | $ | 6,686 | $ | 6,272 | $ | 6,211 |



Highland Capital Management, LP

**HCMLP Monthly Management Fees**
*(in thousands)*

| | 8/31/2017 | 9/30/2017 | 10/31/2017 | 11/30/2017 | 12/31/2017 | 1/31/2018 | 2/28/2018 | 3/31/2018 | 4/30/2018 | 5/31/2018 | 6/30/2018 | 7/31/2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Intercompany Retail Advisors | $ - | $ - | $ - | $ - | $ 252 | $ 252 | $ 252 | $ 252 | $ 1,500 | $ 668 | $ 1,500 | $ 668 |
| Sep Accounts | 1,036 | 938 | 1,100 | 1,361 | 1,107 | 1,068 | 963 | 987 | 967 | 961 | 894 | 893 |
| CLO 1 0 | 802 | 1,082 | 768 | 871 | 818 | 713 | 713 | 837 | 589 | 585 | 643 | 473 |
| Hedge/PE Funds | 358 | 393 | 396 | 404 | 440 | 443 | 448 | 408 | 206 | 77 | 95 | 90 |
| Other | - | - | - | 9 | - | - | - | 87 | - | 43 | 22 | 65 |
| Sub-total | $ 2,196 | $ 2,413 | $ 2,265 | $ 2,644 | $ 2,617 | $ 2,476 | $ 2,375 | $ 2,571 | $ 3,262 | $ 2,334 | $ 3,154 | $ 2,189 |
| CLO 2 0* | 529 | 447 | 620 | 561 | 491 | 497 | 497 | 500 | 497 | 497 | 407 | - |
| Grand Total | 2,725 | 2,860 | 2,885 | 3,205 | 3,108 | 2,974 | 2,873 | 3,071 | 3,760 | 2,832 | 3,561 | 2,189 |



**Highland Capital Management, LP**

*CLO 2 0 fees are reserved against



**HIGHLAND CAPITAL**
**M A N A G E M E N T, L P**

**Statement of Income**
**Twelve Months Ended August 2018**
**(in thousands)**

| | Sep-17 | Oct-17 | Nov-17 | Dec-17 | Jan-18 | Feb-18 | Mar-18 | Apr-18 | May-18 | Jun-18 | Jul-18 | Aug-18 | LTM | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue:** | | | | | | | | | | | | | | |
| Management fees | $  2,725 | $  2,860 | $  2,885 | $  3,205 | $  3,108 | $  2,974 | $  2,873 | $  3,071 | $  3,760 | $  2,832 | $  3,561 | $  2,189 | $  36,041 | $  24,366 |
| Shared services fees | 757 | 732 | 871 | 826 | 915 | 866 | 866 | 890 | 1,038 | 937 | 827 | 657 | 10,182 | 6,995 |
| Incentive fees | - | - | - | 10,043 | - | - | - | - | - | 18 | - | - | 10,061 | 18 |
| Other income | 562 | 234 | 586 | 912 | 215 | 596 | 339 | 482 | 304 | 653 | 458 | 348 | 5,689 | 3,395 |
| **Total operating revenue** | 4,043 | 3,827 | 4,342 | 14,987 | 4,237 | 4,436 | 4,079 | 4,442 | 5,102 | 4,440 | 4,846 | 3,193 | 61,973 | 34,774 |
| **Operating expenses:** | | | | | | | | | | | | | | |
| Compensation and benefits | 2,368 | 2,308 | 2,795 | 3,651 | 2,755 | 2,769 | 2,711 | 3,283 | 2,277 | 2,529 | 2,515 | 2,676 | 32,636 | 21,514 |
| Deferred compensation | 297 | 286 | 755 | 291 | 159 | 101 | 9 | 479 | 87 | 179 | 700 | 204 | 3,547 | 1,918 |
| Professional services | 472 | 1,031 | 649 | 18,821 | (15,051) | 314 | 606 | 344 | 814 | 608 | 408 | 342 | 9,358 | 1,819 |
| Investment research and consulting | 160 | 22 | 8 | 242 | 13 | 20 | 226 | 26 | 20 | 170 | 43 | 18 | 966 | 535 |
| Depreciation | 113 | 112 | 112 | 108 | 109 | 108 | 108 | 108 | 108 | 108 | 108 | 108 | 1,310 | 865 |
| Bad debt | - | - | - | 2,279 | - | - | 5 | 3,497 | 866 | 870 | 713 | - | 8,229 | 5,951 |
| Other operating expenses | 805 | 723 | 497 | 1,180 | 580 | 683 | 951 | 871 | 684 | 665 | 606 | 803 | 9,049 | 5,844 |
| **Total operating expenses** | 4,216 | 4,482 | 4,816 | 26,571 | (11,435) | 3,995 | 4,616 | 8,608 | 4,857 | 5,130 | 5,092 | 4,151 | 65,097 | 38,446 |
| **Operating income** | (172) | (655) | (474) | (11,585) | 15,672 | 441 | (537) | (4,166) | 245 | (690) | (246) | (957) | (3,124) | (3,672) |
| **Other income/expense:** | | | | | | | | | | | | | | |
| Interest and investment income, net | 532 | 574 | 937 | 839 | 612 | 473 | 524 | 886 | 554 | 462 | 978 | 529 | 7,899 | 5,018 |
| Interest expense | (136) | (141) | (134) | (145) | (143) | (65) | (131) | (140) | (151) | (141) | (152) | (156) | (1,634) | (1,078) |
| Other income/expense | 63 | 77 | 64 | 19,134 | (13,353) | 64 | 96 | 124 | 96 | 584 | 127 | 108 | 7,184 | 1,280 |
| **Total other income/expense** | 459 | 510 | 867 | 19,828 | (12,883) | 472 | 489 | 870 | 500 | 904 | 953 | 481 | 13,449 | 5,219 |
| **Realized and unrealized gain/(loss) from investments:** | | | | | | | | | | | | | | |
| Net realized gain/(loss) on sale of investment transactions | - | 22 | - | (1,196) | - | - | 3,961 | - | - | 351 | 89 | 48 | 3,276 | 4,450 |
| Net change in unrealized gain/(loss) of investments | 9,180 | (1,004) | 6,375 | (2,125) | 10,678 | (10,201) | (16,002) | 3,030 | (1,476) | (1,170) | 6,011 | 7,563 | 10,859 | (1,567) |
| **Total realized and unrealized gain/(loss) from investments** | 9,180 | (982) | 6,375 | (3,320) | 10,678 | (10,201) | (12,041) | 3,030 | (1,476) | (819) | 6,100 | 7,611 | 14,135 | 2,882 |
| **Earnings and losses from equity method investees** | | | | | | | | | | | | | | |
| | 333 | 12 | 200 | 329 | 926 | (210) | (821) | 726 | (617) | (91) | 223 | 122 | 1,130 | 257 |
| | (1,136) | (203) | 4,333 | 529 | (1,674) | (5,137) | (726) | (2,108) | 57 | (554) | 1,482 | 1,362 | (7,299) | (7,299) |
| | (2,300) | (419) | 8,353 | 1,019 | (3,731) | (11,446) | (199) | (5,483) | 138 | (1,348) | 3,601 | 3,311 | (8,505) | (15,157) |
| | 0 | 15 | - | 22 | - | - | - | - | - | - | - | - | 38 | - |
| | (14) | (18) | 11 | (18) | - | - | (126) | - | - | 88 | - | - | (77) | (38) |
| | - | - | - | 768 | (889) | - | - | - | (37) | - | - | - | 641 | (37) |
| | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | - | - | - | 75 | - | - | - | - | - | - | - | - | 75 | - |
| **Total earnings/(loss) from equity method investees** | (3,118) | (613) | 13,664 | 1,866 | (4,479) | (16,794) | (1,872) | (6,865) | (459) | (1,905) | 5,305 | 4,795 | (10,474) | (22,274) |
| **Net income** | 6,348 | (1,739) | 20,432 | 6,790 | 8,988 | (26,081) | (13,962) | (7,130) | (1,190) | (2,510) | 12,112 | 11,929 | $  13,986 | $  (17,844) |
| **Profit margin** | 157% | -45% | 471% | 45% | 212% | -588% | -342% | -161% | -23% | -57% | 250% | 374% | 23% | -51% |
| **Operating Cash Flow Calculation:** | | | | | | | | | | | | | | |
| Operating income | (172) | (655) | (474) | (11,585) | 15,672 | 441 | (537) | (4,166) | 245 | (690) | (246) | (957) | (3,124) | 9,762 |
| Add  Depreciation expense | 113 | 112 | 112 | 108 | 109 | 108 | 108 | 108 | 108 | 108 | 108 | 108 | 1,310 | 865 |
| Adjustment  Deferred compensation | 297 | 286 | 755 | 291 | 159 | 101 | (581) | (2,381) | 87 | 125 | 700 | 204 | 3,547 | (1,586) |
| Bonus awards | (5,215) | 994 | 1,296 | 1,984 | 1,000 | 1,000 | (6,001) | 964 | 889 | 900 | 945 | (5,210) | (6,455) | (5,514) |
| **Operating Cash Flow** | (4,977) | 737 | 1,690 | (9,201) | 16,939 | 1,650 | (7,012) | (5,475) | 1,329 | 443 | 1,507 | (5,855) $ | (8,225) $ | 3,527 |
| Less  Interest expense | (136) | (141) | (134) | (145) | (143) | (65) | (131) | (140) | (151) | (141) | (152) | (156) | (1,634) | (1,078) |
| **Adjusted Operating Cash Flow** | (5,114) | 596 | 1,556 | (9,346) | 16,797 | 1,585 | (7,143) | (5,614) | 1,178 | 302 | 1,355 | (6,011) $ | (9,859) $ | 2,449 |
| Add cash bonus expense | 1,000 | 1,008 | 1,304 | 1,988 | 1,000 | 1,000 | 1,048 | 1,011 | 900 | 900 | 945 | 900 | 13,003 | 7,703 |
| Less cash bonuses paid | (6,215) | (14) | (8) | (4) | - | - | (7,049) | (48) | (11) | - | - | (6,110) | (19,458) | (13,217) |
| Non-cash bonus add-back | (5,215) | 994 | 1,296 | 1,984 | 1,000 | 1,000 | (6,001) | 964 | 889 | 900 | 945 | (5,210) | (6,455) | (5,514) |
| Add deferred compensation MTM | 297 | 286 | 755 | 291 | 159 | 101 | 9 | 479 | 87 | 179 | 700 | 204 | 3,547 | 1,918 |
| Less cash deferred awards paid | - | - | - | - | - | - | (590) | (2,860) | - | (54) | - | - | (3,504) | (3,504) |
| Non-cash deferred award add-back | 297 | 286 | 755 | 291 | 159 | 101 | (581) | (2,381) | 87 | 125 | 700 | 204 | 43 | (1,586) |



**Balance Sheet**
**August 2018 vs. July 2018**
**(in thousands)**

| | August 31, 2018 | | July 31, 2018 | | Increase/ (Decrease) $ | | Increase/ (Decrease) % |
|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | |
| Cash and cash equivalents | $ | 3,396 | $ | 7,741 | $ | (4,344) | -56.1% |
| Investments, at fair value | | 265,622 | | 257,648 | | 7,974 | 3.1% |
| Equity method investees | | 60,752 | | 60,958 | | (205) | -0.3% |
| Management and incentive fee receivable | | 1,626 | | 3,577 | | (1,951) | -54.5% |
| Fixed assets, net | | 4,927 | | 5,035 | | (108) | -2.2% |
| Due from affiliates | | 179,404 | | 173,894 | | 5,510 | 3.2% |
| Other assets | | 10,921 | | 11,310 | | (389) | -3.4% |
| **Total assets** | $ | **526,648** | $ | **520,162** | $ | **6,487** | **1.25%** |
| | | | | | | | |
| **Liabilities and Partners' Capital** | | | | | | | |
| Accounts payable | $ | 1,355 | $ | 2,688 | $ | (1,333) | -49.6% |
| Due to brokers | | 31,464 | | 31,724 | | (260) | -0.8% |
| Accrued expenses and other liabilities | | 61,580 | | 65,430 | | (3,850) | -5.9% |
| | | | | | | | |
| Partners' capital | | 432,249 | | 420,320 | | 11,929 | 2.8% |
| **Total liabilities and partners' capital** | $ | **526,648** | $ | **520,162** | $ | **6,487** | **1.25%** |

**Partners' Capital Walk**

| | | |
|---|---|---|
| Partners' capital at 7/31 | $ | 420,320 |
| Net subscriptions/(redemptions) | | - |
| Net income/(loss) | | 11,929 |
| Partners' capital at 8/31 | $ | 432,249 |



<div align="center">

Income Statement

August 2018 YTD  vs. August 2017 YTD

(in thousands)

</div>

| | 2018 YTD | 2017 YTD | Increase/ (Decrease) $ | Increase/ (Decrease) % |
|---|---|---|---|---|
| **Revenue:** | | | | |
| Management fees | $ 24,366 | $ 25,288 | $ (922) | -3.6% |
| Shared services fees | 6,995 | 6,258 | 737 | 11.8% |
| Incentive fees | 18 | - | 18 | N/A |
| Other income | 3,395 | 3,381 | 14 | 0.4% |
| **Total operating revenue** | **34,774** | **34,927** | **(153)** | **-0.4%** |
| **Operating expenses:** | | | | |
| Salaries and overtime | 9,189 | 9,427 | (238) | -2.5% |
| Bonus | 7,703 | 8,216 | (513) | -6.2% |
| Other compensation and benefits | 4,623 | 4,547 | 76 | 1.7% |
| Deferred compensation | 1,918 | 1,372 | 546 | 39.8% |
| Professional services | 1,819 | 5,502 | (3,683) | -66.9% |
| Investment research and consulting | 535 | 669 | (134) | -20.1% |
| Marketing and advertising expense | 1,478 | 1,774 | (296) | -16.7% |
| Depreciation expense | 865 | 887 | (22) | -2.5% |
| Bad debt | 5,951 | - | 5,951 | 100.0% |
| Other operating expenses | 4,366 | 4,359 | 7 | 0.2% |
| **Total operating expenses** | **38,446** | **36,753** | **1,693** | **4.6%** |
| **Operating income/(loss)** | **(3,672)** | **(1,826)** | **(1,846)** | **101.1%** |
| **Other income/expense:** | | | | |
| Interest income | 5,018 | 4,167 | 851 | 20.4% |
| Interest expense | (1,078) | (1,113) | 35 | -3.1% |
| Other income/expense | 1,280 | 5,539 | (4,259) | -76.9% |
| **Total other income/expense** | **5,219** | **8,593** | **(3,374)** | **-39.3%** |
| **Realized and unrealized gains from investments:** | | | | |
| Net realized gains on sales of investment transactions | 4,450 | 7,666 | (3,216) | -42.0% |
| Net change in unrealized gains/(losses) of investments | (1,567) | 12,293 | (13,860) | 112.8% |
| **Total realized and unrealized gains from investments** | **2,882** | **19,959** | **(17,077)** | **-85.6%** |
| **Net earnings/(losses) from equity method investees** | **(22,274)** | **(6,081)** | **(16,193)** | **-266.3%** |
| **Net income/(loss)** | **$ (17,844)** | **$ 20,645** | **$ (38,489)** | **186.4%** |
| **Profit margin** | **-51%** | **59%** | | |

| Other operating expenses detail | | | | |
|---|---|---|---|---|
| Rent expense | 1,041 | 979 | 61 | 6 3% |
| Fees and dues | 166 | 211 | (45) | -21 2% |
| Travel and entertainment | 840 | 1,036 | (196) | -18 9% |
| Insurance expense | 496 | 431 | 64 | 15 0% |
| Miscellaneous expenses | 1,823 | 1,701 | 122 | 7 1% |
| **Total other operating expenses** | **4,366** | **4,359** | **7** | **0.2%** |

**Highland Capital Management, LP**
**Schedule of Investments**
**As of August 2018**



| Fund | Ticker | MV @ 7/31/2018 | Monthly Change in Unrealized Gain/(Loss) | Contributions, (Distributions) & Realized Gain/(Loss) | MV @ 8/31/2018 |
|---|---|---|---|---|---|
| | | 6,854,674 | (68,692) | - | 6,785,982 |

# EXHIBIT 44

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF

In re  Highland Capital Management, LP
        Debtor

Case No.

### INITIAL MONTHLY OPERATING REPORT

File report and attachments with Court and submit copy to United States Trustee within 15 days after order for relief.

Certificates of insurance must name United States Trustee as a party to be notified in the event of policy cancellation. Bank accounts and checks must bear the name of the debtor, the case number, and the designation "Debtor in Possession." Examples of acceptable evidence of Debtor in Possession bank accounts include voided checks, copy of bank deposit agreement/certificate of authority, signature card, and/or corporate checking resolution.

| REQUIRED DOCUMENTS | Document Attached | Explanation Attached |
|---|---|---|
| 12-Month Cash Flow Projection  (Form IR-1) | See attached | |
| Certificates of Insurance: | | |
| Workers Compensation | See attached | |
| Property | See attached | |
| General Liability | See attached | |
| Vehicle | See attached | |
| Other: Self-Insured Medical/Dental; Employers and Professional Liability | See attached | See attached |
| Identify areas of self-insurance w/liability caps | See attached | See attached |
| Evidence of Debtor in Possession Bank Accounts | | |
| Tax Escrow Account | NA | |
| General Operating Account | In Process at East West Bank | |
| Money Market Account pursuant to Local Rule 4001-3 for the | NA | |
| District of Delaware only.  Refer to: | | |
| http://www.deb.uscourts.gov/ | | |
| Other: Professional Fees Account/Insurance Account | In Process at East West Bank | |
| Retainers Paid (Form IR-2) | See attached | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and the documents attached
are true and correct to the best of my knowledge and belief.

_____          10/31/19
Signature of Debtor                                       Date


_____
Signature of Joint Debtor                               Date

_____          10/31/19
Signature of Authorized Individual*              Date

Frank Waterhouse                              CFO
Printed Name of Authorized Individual        Title of Authorized Individual
*Authorized individual must be an officer, director or shareholder if debtor is a corporation; a partner if debtor        FORM IR (4/07)
is a partnership; a manager or member if debtor is a limited liability company.

**Highland Capital Management, L.P. – Cash Forecast**
Next 13 Weeks Commencing October 18, 2019
(in thousands)



| | Actual[a] | Actual | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week beginning | 10/16 | 10/21 | 10/28 | 11/4 | 11/11 | 11/18 | 11/25 | 12/2 | 12/9 | 12/16 | 12/23 | 12/30 | 1/6 | 13 Weeks |
| Beginning unrestricted operating cash | 2,126 | 2,126 | 2,176 | 2,795 | 4,162 | 4,162 | 2,515 | 2,117 | 1,050 | 2,441 | 1,660 | 1,603 | 475 | 2,126 |
| **Operating Receipts** | | | | | | | | | | | | | | |
| Management fees and other related receipts | | 14 | 1,708 | 1,907 | 1,849 | 27 | 1,497 | | | | | 1,155 | 633 | 9,836 |
| **Compensation and benefits** | | | | | | | | | | | | | | |
| Payroll, benefits, and taxes + any reimb[b] | | (7) | (663) | | | (633) | | (631) | (631) | | (611) | (611) | | (5,199) |
| Severance payments | | | | | | | | | | | | | | |
| Cash bonus accruals (including deferred) | | | | | | | | | | | | | | |
| Total compensation and benefits | | (7) | (663) | | | (633) | (631) | (631) | (611) | | (611) | (611) | | (5,199) |
| **Current overhead** | | | | | | | | | | | | | | |
| Outside legal (non-balance sheet) | | | | | | | | | | | | | | |
| General overhead - critical vendors (pre-petition) | | (36) | (5) | (25) | (25) | (75) | (29) | (29) | (99) | (75) | (29) | (29) | (309) | (221) |
| General overhead - post-petition vendors | | (204) | (226) | (239) | (209) | (25) | (29) | (29) | (234) | (234) | (30) | (30) | (25) | (239) |
| Rent (west tax + use) | | (24) | (11) | | (31) | (209) | | | (31) | | (239) | (239) | (234) | (196) |
| Interest payments and financing costs | | | | | | | | | | | | | | |
| Total current overhead | | (245) | (243) | (303) | (265) | (309) | (290) | (290) | (360) | (360) | (345) | (345) | (309) | (1,473) |
| Net change in cash due to operating activities | | (57) | 597 | 1,508 | (968) | (916) | 1,217 | (991) | (991) | (366) | 265 | 264 | 374 | 3,166 |
| **Recent related[b] payments to predominant for reserve acct** | | | | | | | | | | | | | | |
| Debtor bankruptcy counsel | | | | | | (1,615) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (3,565) |
| Debtor FA/CRO | | | | | | (200) | (60) | (60) | (60) | (60) | (60) | (60) | (60) | (660) |
| Select Equity fixed equity indemnification | | | | | | (64) | (16) | (16) | (16) | (16) | (16) | (16) | (16) | (128) |
| Third party fund advisory indemnification | | | | | | (72) | (18) | (18) | (18) | (18) | (18) | (18) | (18) | (200) |
| Third party fund actual/expected c/o/advisors | | 79 | | | | (72) | (18) | (18) | (18) | (18) | (18) | (18) | (18) | (200) |
| Highland Capital Management Debtor | | | | | | 400 | | | | | | | | 479 |
| Main Strategy Global Fund | | | | | | | | | | | | | | |
| Highland Capital Management Latin America | | | | | (500) | | (500) | (509) | 1,301 | | (500) | (300) | | (2,000) |
| Proceeds from refunded escrow accounts | | | | | (100) | | (100) | | | | | | (100) | (900) |
| Proceeds from other investments (non-PE) | | | | | | | | | | | | 701 | | 701 |
| Net change in cash due to investing activities | | 79 | | | (500) | (946) | 867 | (500) | 845 | 1,301 | (599) | 681 | 2 | 848 |
| **Financing cash flows** | | | | | | | | | | | | | | |
| Deposits equity contributions | | | | | | | | | | | | | | |
| Equity contributions | | | | | | | | | | | | | | |
| Existing debt paydowns | | | | | | | | | | | | | | |
| Net change in cash due to financing activities | | | | | | | | | | | | | | |
| Ending unrestricted operating cash | 2,126 | 2,176 | 2,795 | 4,162 | 3,815 | 1,830 | 2,077 | 1,050 | 1,669 | 1,603 | 476 | 789 | 211 | 211 |
| **Professional fees escrow account[c]** | | | | | | | | | | | | | | |
| Recent related professional fees escrow beginning balance | | | | | | 2,077 | 2,449 | 2,820 | 3,192 | 1,538 | 1,900 | 2,271 | | 4,928 |
| Inflows from operating account | | | | | 2,077 | 372 | 372 | 372 | 372 | 372 | 622 | 372 | | 4,928 |
| Payments to professional[d] | | | | | | | | | | | | | | |
| Debtor bankruptcy counsel | | | | | | | | | (1,569) | | | | | (1,569) |
| Debtor FA/CRO | | | | | | | | | (350) | | | | | (350) |
| Committee counsel | | | | | | | | | (52) | | | | | (52) |
| Committee consultant | | | | | | | | | (73) | | | | | (73) |
| US Trustee | | | | | | | | | (73) | | | | | (73) |
| Recent related professional fees escrow ending balance | | | | | | 2,449 | 2,820 | 3,192 | 1,538 | 1,900 | 2,271 | 2,643 | (250) | 3,643 |

# CERTIFICATE OF LIABILITY INSURANCE

ACORD®

Page 1 of 1

DATE (MM/DD/YYYY)
10/24/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| Willis of Texas, Inc.<br>c/o 26 Century Blvd<br>P.O. Box 305191<br>Nashville, TN 372305191 USA | PHONE (A/C, No, Ext): 1-877-945-7378 | | FAX (A/C, No): 1-888-467-2378 |
| | E-MAIL ADDRESS: certificates@willis.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : Great Northern Insurance Company | | 20303 |
| INSURED<br>Highland Capital Management, L.P.<br>300 Crescent Court<br>Suite 700<br>Dallas, TX 75201 | INSURER B : Federal Insurance Company | | 20281 |
| | INSURER C : Chubb National Insurance Company | | 10052 |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES  CERTIFICATE NUMBER: W13496935  REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY | | | 3592-17-94 | 07/29/2019 | 07/29/2020 | EACH OCCURRENCE | $ 1,000,000 |
| | ☐ CLAIMS-MADE X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 1,000,000 |
| | | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | POLICY X PRO-JECT X LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | OTHER: | | | | | | | $ |
| A | AUTOMOBILE LIABILITY | | | 7358-99-26 | 07/29/2019 | 07/29/2020 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | X ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | X UMBRELLA LIAB X OCCUR | | | 7986-78-84 | 07/29/2019 | 07/29/2020 | EACH OCCURRENCE | $ 20,000,000 |
| | EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | $ 20,000,000 |
| | DED X RETENTION $ 0 | | | | | | | $ |
| C | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y / N | | | (20) 7174-63-12 | 07/29/2019 | 07/29/2020 | X PER STATUTE ☐ OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? No N/A (Mandatory in NH) | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Office of The United States Trustee<br>844 King Street, Suite 2207<br>Lockbox 35<br>Wilmington, DE 19801 | AUTHORIZED REPRESENTATIVE |

© 1988-2016 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)  The ACORD name and logo are registered marks of ACORD

SR ID: 18720730  BATCH: 1425032

# ACORD®

## EVIDENCE OF COMMERCIAL PROPERTY INSURANCE

DATE (MM/DD/YYYY)
10/24/2019

THIS EVIDENCE OF COMMERCIAL PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.

| PRODUCER NAME, CONTACT PERSON AND ADDRESS | PHONE (A/C, No, Ext): 1-877-945-7378 | COMPANY NAME AND ADDRESS | NAIC NO: 20303 |
|---|---|---|---|
| Willis of Texas, Inc. c/o 26 Century Blvd P.O. Box 305191 Nashville, TN 372305191 USA | | Great Northern Insurance Company 15 Mountain View Road Warren, NJ 07059 | |

| FAX (A/C, No): 1-888-467-2378 | E-MAIL ADDRESS: certificates@willis.com | IF MULTIPLE COMPANIES, COMPLETE SEPARATE FORM FOR EACH |
|---|---|---|

| CODE: | SUB CODE: | POLICY TYPE |
|---|---|---|
| AGENCY CUSTOMER ID #: | | Commercial Property |

| NAMED INSURED AND ADDRESS | LOAN NUMBER | POLICY NUMBER |
|---|---|---|
| Highland Capital Management, L.P. 300 Crescent Court Suite 700 Dallas, TX 75201 | | 3592-17-94 |
| | EFFECTIVE DATE 07/29/2019 | EXPIRATION DATE 07/29/2020 | CONTINUED UNTIL TERMINATED IF CHECKED |
| ADDITIONAL NAMED INSURED(S) | THIS REPLACES PRIOR EVIDENCE DATED: |

## PROPERTY INFORMATION (ACORD 101 may be attached if more space is required)   ☐ BUILDING OR ☒ BUSINESS PERSONAL PROPERTY

LOCATION / DESCRIPTION

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| COVERAGE INFORMATION | PERILS INSURED | BASIC | | BROAD | X | SPECIAL | |
|---|---|---|---|---|---|---|---|
| COMMERCIAL PROPERTY COVERAGE AMOUNT OF INSURANCE: | $ 9,062,000 | | | | | DED: 2,500 | |

| | YES | NO | N/A | |
|---|---|---|---|---|
| ☒ BUSINESS INCOME  ☒ RENTAL VALUE | X | | | If YES, LIMIT: 1,227,500. | X | Actual Loss Sustained; # of months: |
| BLANKET COVERAGE | X | | | If YES, indicate value(s) reported on property identified above: $ |
| TERRORISM COVERAGE | X | | | Attach Disclosure Notice / DEC |
| IS THERE A TERRORISM-SPECIFIC EXCLUSION? | | | X | |
| IS DOMESTIC TERRORISM EXCLUDED? | | X | | |
| LIMITED FUNGUS COVERAGE | | | X | If YES, LIMIT: | DED: |
| FUNGUS EXCLUSION (if "YES", specify organization's form used) | | X | | |
| REPLACEMENT COST | X | | | |
| AGREED VALUE | | X | | |
| COINSURANCE | | | X | If YES, % |
| EQUIPMENT BREAKDOWN (if Applicable) | X | | | If YES, LIMIT: Included | DED: 2,500 |
| ORDINANCE OR LAW - Coverage for loss to undamaged portion of bldg | | | X | If YES, LIMIT: | DED: |
| - Demolition Costs | | | X | If YES, LIMIT: | DED: |
| - Incr. Cost of Construction | | | X | If YES, LIMIT: | DED: |
| EARTH MOVEMENT (if Applicable) | | X | | If YES, LIMIT: | DED: |
| FLOOD (if Applicable) | X | | | If YES, LIMIT: 1,000,000 | DED: 25,000 |
| WIND / HAIL INCL   ☒ YES ☐ NO   Subject to Different Provisions | X | | | If YES, LIMIT: Included | DED: 50,000 |
| NAMED STORM INCL   ☐ YES ☒ NO   Subject to Different Provisions | | X | | If YES, LIMIT: | DED: |
| PERMISSION TO WAIVE SUBROGATION IN FAVOR OF MORTGAGE HOLDER PRIOR TO LOSS | | X | | |

## CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

## ADDITIONAL INTEREST

| ☐ CONTRACT OF SALE | ☐ LENDER'S LOSS PAYABLE | ☐ LOSS PAYEE | LENDER SERVICING AGENT NAME AND ADDRESS |
|---|---|---|---|
| ☐ MORTGAGEE | | | |

| NAME AND ADDRESS | |
|---|---|
| Office of The United States Trustee 844 King Street, Suite 2207 Lockbox 35 Wilmington, DE 19801 | AUTHORIZED REPRESENTATIVE |

© 2003-2015 ACORD CORPORATION. All rights reserved.

ACORD 28 (2016/03)      The ACORD name and logo are registered marks of ACORD

SR ID: 18720730     BATCH: 1425032     CERT: W13496936

**ACORD®**

## ADDITIONAL REMARKS SCHEDULE

Page 2 of 2

| AGENCY | NAMED INSURED |
|---|---|
| Willis of Texas, Inc. | Highland Capital Management, L.P.<br>300 Crescent Court<br>Suite 700<br>Dallas, TX 75201 |

| POLICY NUMBER | | |
|---|---|---|
| See Page 1 | | |

| CARRIER | NAIC CODE | |
|---|---|---|
| See Page 1 | See Page 1 | EFFECTIVE DATE: See Page 1 |

**ADDITIONAL REMARKS**

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

FORM NUMBER: _____28_____ FORM TITLE: Evidence of Commercial Property

Building Limit for 8355 Gaylord Pkwy, Frisco, TX: $3,000,000

Covered Locations:
300 Crescent CT., Ste. 700, Dallas, TX 75201
8355 Gaylord Pkwy., Frisco, TX 75034
7 Times SQ., Ste. 4304 (43rd Floor), New York, NY 10036
3409 Rosedale Ave., Dallas, TX 75205

ACORD 101 (2008/01)

© 2008 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

SR ID: 18720730      BATCH: 1425032      CERT: W13496936



**Initial Monthly Report**

**Highland Capital Management, LP ("Debtor")**

**Other Insurance/Self-Insurance Coverages**


**Self-Insurance:**

The Debtor and twelve of its affiliates ("The Group") participate in a self-insured medical and dental insurance program, which is administered by BlueCross BlueShield. The Group is responsible for paying insurance claims as incurred unless a stop-loss limit is reached. Stop loss limits are $100k per individual and $5.2M for the plan as a whole.


**Employers and Professional Liability:**

The Debtor holds Employers and Professional Liability coverage through an affiliate, Governance Re, Ltd., an insurance captive. The captive is owned by an affiliate, Highland Capital Management Services, Inc., which is majority owned by James Dondero. The annual premium on the policy is $300k and there is a $10M limit of liability.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-12239 (CSS) |
|  | ) |  |
| Debtor. | ) | **Related to Docket No. 5** |

**INTERIM ORDER AUTHORIZING (A) CONTINUANCE OF
EXISTING CASH MANAGEMENT SYSTEM, (B) CONTINUED USE OF THE PRIME
ACCOUNT, (C) LIMITED WAIVER OF SECTION 345(b) DEPOSIT AND INVESTMENT
REQUIREMENTS, AND (D) GRANTING RELATED RELIEF**

Upon consideration of the *Motion of Debtor for Interim and Final Orders*

*Authorizing (A) Continuance of Existing Cash Management System, (B) Continued Use of the*

*Prime Account, (C) Limited Waiver of Section 345(b) Deposit and Investment Requirements, and*

*(D) Granting Related Relief* (the "Motion")[2] filed by the above-captioned debtor and debtor in

possession (the "Debtor") in the above-captioned chapter 11 case; and this Court finding that (a)

this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) this matter

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and (c) due and adequate notice of the

Motion was given under the circumstances; and after due deliberation and cause appearing

therefor;

**IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED** on an interim basis as set forth herein.

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Case 21-03005-sgj Doc 28 Filed 05/31/21 Entered 05/31/21 10:33:30 Page 407 of 600
Case 19-12239-CSS Doc 42-3 Filed 08/04/19 Page 28 of 49 Page 8 of 22
Case 19-12239-CSS    Doc 42    Filed 10/18/19    Page 2 of 7

2.     The Debtor is authorized to continue operating the Cash Management System as described in the Motion and in a manner consistent with the Debtor's prepetition practices and this Order.

3.     The Debtor is authorized, but not directed, in the reasonable exercise of its business judgment, to: (a) designate, maintain and continue to use, with the same account numbers, the Bank Accounts and the Prime Account in existence as of the Petition Date; (b) treat the Bank Accounts and the Prime Account for all purposes as debtor in possession accounts; and (c) use all existing Business Forms without reference to the Debtor's status as "debtor in possession" until such supply is depleted, after which the Debtor will use new Business Forms with the "debtor in possession" reference and the corresponding bankruptcy case number; provided that, with respect to checks which the Debtor or its agents print themselves, the Debtor shall begin printing the "Debtor in Possession" legend and the bankruptcy case number on such items within ten (10) days of the date of entry of this Order.

4.     The Banks – NexBank, SSB, and BBVA USA – are authorized to continue to service and administer the Bank Accounts as debtor in possession accounts without interruption and in the usual and ordinary course of business, and to receive, process, honor, and pay any and all checks and drafts drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; provided, however, that any check that the Debtor advises to have been drawn or issued by the Debtor before the Petition Date may be honored only if specifically authorized by order of this Court.

2

Case 21-03005-sgj Doc 28 Filed 05/21/21 Entered 05/21/21 10:33:39 Page 408 of 600
Case 19-34054-sgj11 Doc 22 Filed 12/04/19 Entered 12/04/19 Page 29 of Page 9 of 21
Case 19-12239-CSS    Doc 42    Filed 10/18/19    Page 3 of 7

5.      Except as modified by this Order, the Debtor's existing agreements with the Banks and with respect to the transfers to and from the Bank Accounts shall continue to govern the postpetition cash management relationship between the Debtor and the Banks.  In the course of providing cash management services to the Debtor, the Banks are authorized, without further order of this Court, to continue to deduct from the appropriate accounts of the Debtor, their routine and ordinary course fees and expenses associated with the nature of the deposit and cash management services rendered to the Debtor.

6.      The Debtor shall maintain detailed records reflecting all transfers of funds under the terms and conditions provided for by the existing agreements with the institutions participating in the Cash Management System.  In connection with the ongoing utilization of its Cash Management System, the Debtor shall continue to maintain accurate and detailed records in the ordinary course of business with respect to all transfers including intercompany transfers so that all transactions may be readily ascertained, traced and recorded properly on the applicable accounts and distinguished between prepetition and postpetition transactions.

7.      Nothing contained herein shall prevent the Debtor from closing any Accounts as they may deem necessary, and any relevant Bank is authorized to honor the Debtor's request to close such Accounts, and the Debtor shall give notice of the closure of any Accounts to the U.S. Trustee and to any statutory committee appointed in this case.

8.      The Debtor is authorized to open new bank accounts; provided, however, that all accounts opened by the Debtor on or after the Petition Date at any bank shall, for purposes of this Order, be deemed a Bank Account as if it had been listed in the Motion; provided, further,

that (a) any such new bank account shall be opened at a bank that has executed a Uniform Depository Agreement with the U.S. Trustee for the District of Delaware, or at a bank that is willing to immediately execute such an agreement, (b) any such new bank account shall be designated as a "debtor in possession" account by the relevant bank, and (c) such opening shall be timely indicated on the Debtor's monthly operating report and notice of such opening shall be provided within 14 days to the U.S. Trustee and counsel to any statutory committee appointed in this chapter 11 case.

9.    The Debtor is authorized to make the Intercompany Transactions consistent with the Motion and this Order; provided, however, that Intercompany Transactions shall not exceed $1,700,000.00 on an interim basis absent further Order of the Court.

10.    The Debtor is authorized to continue using the Prime Account as described in the Motion and in a manner consistent with the Debtor's prepetition practices and this Order; provided, however that the Debtor does not intend to borrow any additional amounts on margin, absent further order of this Court.

11.    The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion.

12.    Nothing herein shall, or is intended to, (i) create any rights in favor of or enhance the status of any claim held by any party or (ii) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

13.    The Debtor is granted a 30 day extension of time to comply with the investment and deposit requirements of section 345 of the Bankruptcy Code, which extension is

4

without prejudice to the Debtor's ability to seek a further extension or final waiver of those requirements. For banks at which the Debtor holds accounts that are party to a Uniform Depository agreement with the Office of the United States Trustee for the District of Delaware, within fifteen (15) days from the date of entry of this Order the Debtor shall (a) contact each bank, (b) provide the bank with the Debtor's employer identification numbers, and (c) identify each of the accounts held at such banks as being held by a debtor in possession. For banks that are not party to a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, the Debtor shall use its good faith efforts to cause the bank to execute a Uniform Depository agreement in a form prescribed by the Office of the United States Trustee within thirty (30) days of the date of entry of this Order.

14.    The notice requirements under Bankruptcy Rule 6004(a) and the stay under Bankruptcy Rule 6004(h) are hereby waived, to the extent that they apply.

15.    This Order shall be served promptly by the Debtor on the Banks and all parties in interest who were served by the Motion and all other parties who file a request for notice under Bankruptcy Rule 2002.

16.    The final hearing (the "Final Hearing") on the Motion shall be held on November 19, 2019, at 2:00 p.m., prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on November 12, 2019, and shall be served on: (a) proposed counsel for the Debtor, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801, Attn: James E. O'Neill, Esq.; (b) counsel to any statutory committee appointed in this case; and (c) the Office of

The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801. In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

DOCS_NY:39652.15

Case 21-03005-sgj Doc 22 Filed 05/24/21 Entered 05/24/21 19:33:39 Page 412 of 600
Case 19-34054-sgj11 Doc 252 Filed 12/04/19 Entered 12/04/19 16:33:39 Page 13 of 14
Case 19-12239-CSS    Doc 42    Filed 10/18/19    Page 7 of 7

17.    This Court shall retain jurisdiction to hear and determine all matters arising

from the enforcement, implementation, or interpretation of this Order.

Dated: _____10/18_____, 2019

Honorable Christopher S. Sontchi
United States Bankruptcy Judge

7

Schedule of Retainers Paid to Professionals

| Payee | Date | Check Number | Name of Payor | Amount | Amount Applied to Date | Balance | Balance As of Date |
|-------|------|--------------|---------------|--------|------------------------|---------|---------------------|
| Development Specialists, Inc. | 10/7/2019 | Wire | Highland Capital Management, LP | $ 250,000.00 | $ 9,660 | $ 240,340 | 10/16/2019 |
| Pachulski Stang Ziehl & Jones LLP | 10/2/2019 | Wire | Highland Capital Management, LP | $ 500,000.00 | TBD | TBD | 10/16/2019 |
| Kurtzman Carson Consultants LLC | 10/7/2019 | Wire | Highland Capital Management, LP | $ 50,000.00 | TBD | TBD | 10/16/2019 |

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-12239 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## **CERTIFICATE OF SERVICE**

     I, James E. O'Neill, hereby certify that on the 31st day of October, 2019, I caused

a copy of the following document(s) to be served on the individual(s) on the attached service

list(s) in the manner indicated:

### **Initial Monthly Operating Report**

                    */s/ James E. O'Neill*

                    James E. O'Neill (Bar No. 4042)

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

Highland Capital 2002 Service List FCM
Case No. 19-12239 (CSS)
Document No. 225797
01 – Interoffice Mail
10 – Hand Delivery
55 – First Class Mail

*([Proposed] Counsel for the Debtor and Debtor in Possession)*
James O'Neill, Esquire
Pachulski Stang Ziehl & Jones LLP
919 N. Market Street, 17th Floor
Wilmington, DE 19899 (Courier 19801)

**INTEROFFICE MAIL**
*([Proposed] Counsel for the Debtor and Debtor in Possession)*
Richard M. Pachulski, Esquire
Jeffrey N. Pomerantz, Esquire
Ira D. Kharasch, Esquire
Maxim B. Litvak, Esquire
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd, 13th Floor
Los Angeles, CA 90067

**HAND DELIVERY**
(United States Trustee)
Jane M. Leamy, Esquire
Office of the U.S. Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801

**HAND DELIVERY**
(State Attorney General)
Kathy Jennings, Esquire
Delaware Department of Justice
Carvel State Office Building, 6th Floor
820 N. French Street
Wilmington, DE 19801

**HAND DELIVERY**
Zillah A. Frampton
Bankruptcy Administrator
Delaware Division of Revenue
Carvel State Office Building, 8th Floor
820 N. French Street
Wilmington, DE 19801

**HAND DELIVERY**
(United States Attorney)
David C. Weiss
c/o Ellen Slights
US Attorney's Office
District of Delaware
Hercules Building, Suite 400
1313 N. Market Street
Wilmington, DE 19801

**HAND DELIVERY**
(Top 20 Unsecured Creditor)
Ryan P. Newell, Esquire
Connolly Gallagher LLP
1201 N. Market Street, 20th Floor
Wilmington, DE 19801

**HAND DELIVERY**
(Counsel to Alvarez & Marsal CRF Management, LLC)
Sean M. Beach, Esquire
Jaclyn C. Weissgerber, Esquire
Young Conaway Stargatt & Taylor, LLP
1000 North King Street, Rodney Square
Wilmington, DE 19801

**HAND DELIVERY**
(Counsel to the Redeemer Committee of the Highland Crusader Fund)
Curtis S. Miller, Esquire
Morris, Nichols, Arsht & tunnel LLP
Kevin M. Coen, Esquire
1201 North Market Street, Suite 1600
Wilmington, DE 19801

**HAND DELIVERY**
(Counsel to Acis Capital Management GP
LLC and Acis Capital Management, L.P.)
John E. Lucian, Esquire
Josef W. Mintz, Esquire
Jose F. Bibiloni, Esquire
Blank Rome LLP
1201 N Market Street, Suite 800
Wilmington, DE  19801

**HAND DELIVERY**
(Counsel to Patrick Daugherty)
Michael L. Vild, Esquire
Cross & Simon, LLC
1105 N. Market Street, Suite 901
Wilmington, DE  19801

**HAND DELIVERY**
(Counsel to Hunter Mountain Trust)
William A. Hazeltine, Esquire
Sullivan Hazeltine Allinson LLC
901 North Market Street, Suite 1300
Wilmington, DE  19801

**FIRST CLASS MAIL**
(Counsel to Acis Capital Management GP
LLC and Acis Capital Management, L.P.)
Rakhee V. Patel, Esquire
Phillip Lamberson, Esquire
Winstead PC
2728 N. Harwood Street, Suite 500
Dallas, TX  75201

**FIRST CLASS MAIL**
(United States Attorney General)
William Barr, Esquire
Office of the US Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW,
Room 4400
Washington, DC  20530-0001

**FIRST CLASS MAIL**
State of Delaware
Division of Corporations - Franchise Tax
PO Box 898
Dover, DE  19903

**FIRST CLASS MAIL**
Delaware Secretary of Treasury
820 Silver Lake Blvd, Suite 100
Dover, DE  19904

**FIRST CLASS MAIL**
Office of General Counsel
U.S. Department of the Treasury
1500 Pennsylvania Avenue, NW
Washington, DC  20220

**FIRST CLASS MAIL**
Office of General Counsel
Securities & Exchange Commission
100 F Street, NE
Washington, DC  20554

**FIRST CLASS MAIL**
Sharon Binger, Regional Director
Philadelphia Regional Office
Securities & Exchange Commission
One Penn Center, Suite 520
1617 JFK Boulevard
Philadelphia, PA  19103

**FIRST CLASS MAIL**
Andrew Calamari, Regional Director
New York Regional Office
Securities & Exchange Commission
Brookfield Place, Suite 400
200 Vesey Street
New York, NY  10281

**FIRST CLASS MAIL**
Office of the General Counsel
Michael I. Baird, Esquire
Pension Benefit Guaranty Corporation
1200 K Street, NW
Washington, DC  20005-4026

**FIRST CLASS MAIL**
Internal Revenue Service
Centralized Insolvency Operation
PO Box 7346
Philadelphia, PA 19101

**FIRST CLASS MAIL**
BBVA
Michael Doran
8080 N. Central Expressway
Suite 1500
Dallas, TX 75206

**FIRST CLASS MAIL**
NexBank
John Danilowicz
2515 McKinney Avenue
Suite 1100
Dallas, TX 75201

**FIRST CLASS MAIL**
KeyBank National Association
as Administrative Agent
225 Franklin Street, 18th Floor
Boston, MA 02110

**FIRST CLASS MAIL**
KeyBank National Association
as Agent
127 Public Square
Cleveland, OH 44114

**FIRST CLASS MAIL**
Prime Brokerage Services
Jefferies LLC
520 Madison Avenue
New York, NY 10022

**FIRST CLASS MAIL**
Office of the General Counsel
Re: Prime Brokerage Services
Jefferies LLC
520 Madison Avenue, 16th Floor
New York, NY 10022

**FIRST CLASS MAIL**
Director of Compliance
Re: Prime Brokerage Services
Jefferies LLC
520 Madison Avenue, 16th Floor
New York, NY 10022

**FIRST CLASS MAIL**
Frontier State Bank
Attn: Steve Elliot
5100 South I-35 Service Road
Oklahoma City, OK 73129

**FIRST CLASS MAIL**
Strand Advisors, Inc.
300 Crescent Court
Suite 700
Dallas, TX 75201

**FIRST CLASS MAIL**
The Dugaboy Investment Trust
300 Crescent Court
Suite 700
Dallas, TX 75201

**FIRST CLASS MAIL**
Mark K. Okada
300 Crescent Court
Suite 700
Dallas, TX 75201

**FIRST CLASS MAIL**
The Mark and Pamela Okada Family
Trust – Exempt Trust #1
300 Crescent Court
Suite 700
Dallas, TX 75201

**FIRST CLASS MAIL**
The Mark and Pamela Okada Family
Trust – Exempt Trust #2
300 Crescent Court
Suite 700
Dallas, TX 75201

**FIRST CLASS MAIL**
Hunter Mountain Investment Trust
c/o Rand Advisors LLC
John Honis
87 Railroad Place Ste 403
Saratoga Springs, NY 12866

**FIRST CLASS MAIL**
(Top 20 Unsecured Creditor)
Acis Capital Management, L.P.
  and Acis Capital Management GP, LLC
c/o Brian P. Shaw, Esquire
Rogge Dunn Group, PC
500 N. Akard Street, Suite 1900
Dallas, TX 75201

**FIRST CLASS MAIL**
(Top 20 Unsecured Creditor)
American Arbitration Association
Elizabeth Robertson, Esquire
120 Broadway, 21st Floor,
New York, NY 10271

**FIRST CLASS MAIL**
(Top 20 Unsecured Creditor)
Andrews Kurth LLP
Scott A. Brister, Esquire
111 Congress Avenue, Ste 1700
Austin, TX 78701

**FIRST CLASS MAIL**
(Top 20 Unsecured Creditor)
Bates White, LLC
Karen Goldberg, Esquire
2001 K Street NW
North Bldg Suite 500
Washington, DC 20006

**FIRST CLASS MAIL**
(Top 20 Unsecured Creditor)
CLO Holdco, Ltd.
Grant Scott, Esquire
Myers Bigel Sibley & Sajovec, P.A.
4140 Park Lake Ave, Ste 600
Raleigh, NC 27612

**FIRST CLASS MAIL**
Cole, Schotz, Meisel, Forman & Leonard,
P.A.
Michael D. Warner, Esquire
301 Commerce Street, Suite 1700
Fort Worth, TX 76102

**FIRST CLASS MAIL**
(Top 20 Unsecured Creditor)
Debevoise & Plimpton LLP
Michael Harrell, Esquire
c/o Accounting Dept 28th Floor
919 Third Avenue
New York, NY 10022

**FIRST CLASS MAIL**
(Top 20 Unsecured Creditor)
DLA Piper LLP (US)
Marc D. Katz, Esquire
1900 N Pearl St, Suite 2200
Dallas, TX 75201

**FIRST CLASS MAIL**
(Top 20 Unsecured Creditor)
Duff & Phelps, LLC
c/o David Landman
Benesch, Friedlander, Coplan & Aronoff
LLP
200 Public Square, Suite 2300
Cleveland, OH 44114-2378

**FIRST CLASS MAIL**
(Top 20 Unsecured Creditor)
Foley Gardere
Holly O'Neil, Esquire
Foley & Lardner LLP
2021 McKinney Avenue Suite 1600
Dallas, TX 75201

**FIRST CLASS MAIL**
(Top 20 Unsecured Creditor)
Joshua & Jennifer Terry
c/o Brian P. Shaw, Esquire
Rogge Dunn Group, PC
500 N. Akard Street, Suite 1900
Dallas, TX 75201

**FIRST CLASS MAIL**
(Top 20 Unsecured Creditor)
Lackey Hershman LLP
Paul Lackey, Esquire
Stinson LLP
3102 Oak Lawn Avenue, Ste 777
Dallas, TX 75219

**FIRST CLASS MAIL**
Lynn Pinker Cox & Hurst, L.L.P.
Michael K. Hurst, Esquire
2100 Ross Avenue, Ste 2700
Dallas, TX 75201

**FIRST CLASS MAIL**
(Top 20 Unsecured Creditor)
McKool Smith, P.C.
(Top 20 Unsecured Creditor)
Gary Cruciani, Esquire
300 Crescent Court, Suite 1500
Dallas, TX 75201

**FIRST CLASS MAIL**
(Top 20 Unsecured Creditor)
Meta-e Discovery LLC
Paul McVoy
Six Landmark Square, 4th Floor
Stamford, CT 6901

**FIRST CLASS MAIL**
(Top 20 Unsecured Creditor)
NWCC, LLC
c/o of Michael A. Battle, Esquire
Barnes & Thornburg, LLP
1717 Pennsylvania Ave N.W. Ste 500
Washington, DC 20006-4623

**FIRST CLASS MAIL**
(Top 20 Unsecured Creditor)
Patrick Daugherty
c/o Thomas A. Uebler, Esquire
McCollom D'Emilio Smith Uebler LLC
2751 Centerville Rd #401
Wilmington, DE 19808

**FIRST CLASS MAIL**
(Top 20 Unsecured Creditor)
Redeemer Committee of the Highland
Crusader Fund
c/o Terri Mascherin, Esquire
Jenner & Block
353 N. Clark Street
Chicago, IL 60654-3456

**FIRST CLASS MAIL**
(Top 20 Unsecured Creditor)
Reid Collins & Tsai LLP
William T. Reid, Esquire
810 Seventh Avenue, Ste 410
New York, NY 10019

**FIRST CLASS MAIL**
(Top 20 Unsecured Creditor)
UBS AG, London Branch and UBS
Securities LLC
c/o Andrew Clubock, Esquire
Latham & Watkins LLP
555 Eleventh Street NW Suite 1000
Washington, DC 20004-130

**FIRST CLASS MAIL**
(Top 20 Unsecured Creditor)
Scott E. Gant, Esquire
Boies, Schiller & Flexner LLP
1401 New York Avenue, NW
Washington, DC 20005

**FIRST CLASS MAIL**
(Counsel to Alvarez & Marsal CRF
Management, LLC)
Marshall R. King, Esquire
Michael A. Rosenthal, Esquire
Alan Moskowitz, Esquire
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10066

**FIRST CLASS MAIL**
(Counsel to California Public Employees'
Retirement System ("CalPERS")
Louis J. Cisz, III, Esquire
Nixon Peabody LLP
One Embarcadero Center, 32nd Floor
San Francisco, CA 94111

**FIRST CLASS MAIL**
(Counsel to Alvarez & Marsal CRF
Management, LLC)
Matthew G. Bouslog, Esquire
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive
Irvine, CA 92612

**FIRST CLASS MAIL**
(Counsel to Redeemer Committee of the
Highland Crusader Fund)
Marc B. Hankin, Esquire
Richard Levin, Esquire
Jenner & Block LLP
919 Third Avenue
New York, New York 10022-3908

**FIRST CLASS MAIL**
(Counsel to Coleman County TAD, et al.)
Elizabeth Weller, Esquire
Linebarger Goggan Blair & Sampson, LLP
2777 N. Stemmons Freeway, Suite 1000
Dallas, TX 75207

**FIRST CLASS MAIL**
(Counsel to Jefferies)
Lee S. Attanasio, Esq.
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019

**FIRST CLASS MAIL**
(Proposed Official Committee of Unsecured
Creditors)
Bojan Guzina, Esquire
Matthew Clemente, Esquire
Alyssa Russell, Esquire
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603

**FIRST CLASS MAIL**
(Proposed Official Committee of Unsecured
Creditors)
Jessica Boelter, Esquire
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019

**FIRST CLASS MAIL**
(Proposed Official Committee of Unsecured
Creditors)
Penny P. Reid, Esquire
Paige Holden Montgomery, Esquire
Sidley Austin LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201

# EXHIBIT 45

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

In re:                                                    Chapter 11

HIGHLAND CAPITAL MANGEMENT, LP                            Case No. 19-12239-CSS

          Debtors.

                                                          Reporting Period:          10/31/2019

MONTHLY OPERATING REPORT
File with Court and submit copy to United States Trustee within 20 days after end of month.

| Required Documents | Form No. | Document Attached | Explanation Attached | Affidavit/ Supplement Attached |
|---|---|---|---|---|
| Schedule of Cash Receipts and Disbursements | MOR-1 | x | | |
| Attestation of Bank Reconciliation by the CRO | MOR-1a | x | | |
| Schedule of Professional Fees and Expenses Paid | | n/a | | |
| Cash Disbursements Journals | MOR-1b | | | |
| Statement of Operations | MOR-2 | x | | |
| Balance Sheet | MOR-3 | x | | |
| Status of Postpetition Taxes | | | | |
| Copies of IRS Form 6123 or Payment Receipt | MOR-4a | x | | |
| Copies of Tax Returns Filed During Reporting Period | | n/a | | |
| Summary of Unpaid Postpetition Debts | | | | |
| Listing of Aged Accounts Payable | MOR-4b | x | | |
| Accounts Receivable Reconciliation and Aging | MOR-5a | x | | |
| Debtor Questionnaire | MOR-5b | x | | |
| Budget | MOR-6 | | | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and the attached documents are true and correct to the best of my knowledge and belief.

_____          _____
Signature of Debtor                        Date

_____          _____
Signature of Joint Debtor                  Date

_____              12-2-19
Signature of Authorized Individual         Date

Bradley Sharp                              Chief Restructuring Officer
Printed Name of Authorized Individual      Title of Authorized Individual

/s/ Frank Waterhouse                       12-2-19
_____          _____
Signature of Authorized Individual

Frank Waterhouse                           Chief Financial Officer
_____          _____
Printed Name of Authorized Individual      Title of Authorized Individual

1934054200127000000000007

In re: Highland Capital Management, L.P.

Case No. 19-12239-CSS
Reporting Period: 10/16/2019 - 10/31/2019

**Cash Disbursements and Receipts from 10/16/2019 - 10/31/2019**
*(in thousands)*

| Week beginning | Compass Operating x0342 | Jefferies x0932 | Nexbank CD x5891 | Nexbank Insurance x7513 | Nexbank Operating x4130 | Maxim Group x1865 | Nexbank Operating x9735 | Total |
|---|---|---|---|---|---|---|---|---|
| Beginning cash | $ 2,126 | - | $ 135 | $ 291 | $ - | $ - | $ 1 | $ 2,554 |
| **Operating Receipts** | | | | | | | | |
| Other | 4 | - | - | 3 | - | - | - | 7 |
| Management fees and other related receipts | 62 | - | - | - | - | - | - | 62 |
| **Compensation and benefits** | | | | | | | | |
| Payroll, benefits, and taxes + exp reimb | (526) | - | - | (212) | - | - | - | (738) |
| Severance payments | - | - | - | - | - | - | - | - |
| Total compensation and benefits | (526) | - | - | (212) | - | - | - | (738) |
| **General overhead** | | | | | | | | |
| General overhead - critical vendors (pre-petition) | (2) | - | - | - | - | - | - | (2) |
| General overhead - post-petition vendors | (35) | - | - | - | - | - | - | (35) |
| Singapore service fees | (35) | - | - | - | - | - | - | (35) |
| Total general overhead | (72) | - | - | - | - | - | - | (72) |
| **Investing cash flows (principal only on notes)** | | | | | | | | |
| Third party fund actual/expected distributions | 79 | - | - | - | - | - | - | 79 |
| Divs, paydowns, misc from investment assets | - | 410 | - | - | - | - | - | 410 |
| Ending cash | 1,673 | 410 | 135 | 82 | - | - | 1 | 2,302 |

In re: Highland Capital Management, L.P.

Case No. 19-12239-CSS
Reporting Period: 10/16/2019 - 10/31/2019

### Attestation of Bank Reconciliation by the CRO

| Entity | Case No. | Bank | Account Type | Account # (last 4 digits) | Ending Bank Balance |
|---|---|---|---|---|---|
| Highland Capital Management, LP | 19-12239-CSS | BBVA Compass | Operating | x6342 | 1,672,176.25 |
| Highland Capital Management, LP | 19-12239-CSS | Nexbank | Operating | x4130 | 250.70 |
| Highland Capital Management, LP | 19-12239-CSS | Nexbank | Insurance | x7513 | 82,272.52 |
| Highland Capital Management, LP | 19-12239-CSS | Jefferies LLC | Brokerage | x0932 | 410,107.71 |
| Highland Capital Management, LP | 19-12239-CSS | Maxim Group | Brokerage | x1885 | 163.61 |
| Highland Capital Management, LP | 19-12239-CSS | Nexbank | CD | x5891 | 135,205.21 |
| Highland Capital Management, LP | 19-12239-CSS | Nexbank | Operating | x668 | - |
| Highland Capital Management, LP | 19-12239-CSS | Nexbank | Operating | x0735 | 1,453.59 |
| | | | | **Total:** | **2,301,630** |

No bank statements are being provided with this report. I attest that the bank statements for the above-listed accounts have been reconciled to the Debtor's books and records.

Following month end, The Debtor opened three bank accounts at East West Bank. On November 21, 2019, the Debtor closed accounts ending in x735, x668 x130 and x513.

_____
Signature of Authorized Individual

_____
Frank Waterhouse
Printed Name of Authorized Individual

_____
Signature of Authorized Individual

_____
Bradley Sharp
Printed Name of Authorized Individual

_____
Date

_____
Chief Financial Officer
Title of Authorized Individual

12-2-19
_____
Date

_____
Chief Restructuring Officer
Title of Authorized Individual

In re: Highland Capital Management, L.P.

RECEIPTS LISTING

| Date | Amount | Sender | Bank |
|------|--------|--------|------|
| 10/16/2019 | 2,777.24 | Discovery Benefits | x6342 |
| 10/16/2019 | 592.81 | Discovery Benefits | x6342 |
| 10/21/2019 | 46.00 | Co-op | x4130 |
| 10/22/2019 | 79,266.46 | Third party fund distribution | x6342 |
| 10/22/2019 | 93.83 | Paylocity | x6342 |
| 10/24/2019 | 14,128.70 | Fund Reimbursement | x6342 |
| 10/25/2019 | 438.00 | Discovery Benefits | x6342 |
| 10/28/2019 | 15,000.00 | Shared Services | x6342 |
| 10/31/2019 | 17,763.15 | Fund Reimbursement | x6342 |
| 10/31/2019 | 14,533.49 | Fund Reimbursement | x6342 |
| 10/31/2019 | 13.88 | Interest | x4130 |
| 10/30/2019 | 592.82 | Insurance Premiums | x7513 |
| 10/31/2019 | 2,371.27 | Insurance Premiums | x7513 |
| 10/31/2019 | 0.19 | Interest | x0735 |
| 10/25/2019 | 369,973.45 | Investment receipts | x0932 |
| 10/28/2019 | 12,766.83 | Investment receipts | x0932 |
| 10/28/2019 | 27,367.43 | Investment receipts | x0932 |
| 10/31/2019 | 67.44 | Dividend | x1885 |
| | 557,792.99 | | |

DISBURSEMENT LISTING

| Date | Amount | Vendor | Bank |
|------|--------|--------|------|
| 10/16/2019 | 2,047.22 | Zayo | x6342 |
| 10/16/2019 | 836.22 | Discovery Benefits | x6342 |
| 10/16/2019 | 52.79 | Discovery Benefits | x6342 |
| 10/16/2019 | 20.00 | Discovery Benefits | x6342 |
| 10/22/2019 | 11,813.33 | Singapore Service Fee Funding | x6342 |
| 10/22/2019 | 12,600.88 | Singapore Service Fee Funding | x6342 |
| 10/22/2019 | 40.00 | Discovery Benefits | x6342, |
| 10/22/2019 | 20.00 | Discovery Benefits | x6342 |
| 10/23/2019 | 10,335.00 | Delta Risk | x6342 |
| 10/23/2019 | 4,944.58 | Discovery Benefits | x6342 |
| 10/23/2019 | 550.60 | Discovery Benefits | x6342 |
| 10/23/2019 | 25.00 | Discovery Benefits | x6342 |
| 10/23/2019 | 15.00 | Discovery Benefits | x6342 |
| 10/24/2019 | 9.73 | Discovery Benefits | x6342 |
| 10/25/2019 | 75.00 | Discovery Benefits | x6342 |
| 10/25/2019 | 215.00 | Discovery Benefits | x6342 |
| 10/25/2019 | 305.46 | Discovery Benefits | x6342 |
| 10/25/2019 | 1,303.80 | Discovery Benefits | x6342 |
| 10/28/2019 | (26.00) | Discovery Benefits | x6342 |
| 10/28/2019 | 20.00 | Discovery Benefits | x6342 |
| 10/28/2019 | 1,350.04 | Discovery Benefits | x6342 |
| 10/28/2019 | 20.00 | Discovery Benefits | x6342 |
| 10/29/2019 | 245.00 | Discovery Benefits | x6342 |
| 10/29/2019 | 5.00 | Discovery Benefits | x6342 |
| 10/29/2019 | 370.00 | Discovery Benefits | x6342 |
| 10/29/2019 | 5.00 | Discovery Benefits | x6342 |
| 10/29/2019 | 9,770.39 | CDW | x6342 |
| 10/29/2019 | 1,876.88 | Third Party Consultant | x6342 |
| 10/30/2019 | 518.51 | Discovery Benefits | x6342 |
| 10/31/2019 | 11,000.00 | Third Party Consultant | x6342 |
| 10/31/2019 | 100.00 | Discovery Benefits | x6342 |
| 10/29/2019 | 1,475.38 | Third Party Consultant | x6342 |
| 10/31/2019 | 1,667.78 | Third Party Consultant | x6342 |
| 10/31/2019 | 10,219.19 | Singapore Service Fee Funding | x6342 |
| 10/30/2019 | 50,233.99 | Paylocity | x6342 |
| 10/30/2019 | 311,831.36 | Paylocity | x6342 |
| 10/31/2019 | 1,974.64 | Paylocity | x6342 |
| 10/30/2019 | 110,396.48 | Paylocity | x6342 |
| 10/29/2019 | 771.24 | Standard Insurance | x6342 |
| 10/29/2019 | 4,459.96 | Standard Insurance | x6342 |
| 10/30/2019 | 33,670.47 | Charles Schwab | x6342 |
| 10/30/2019 | 1,227.80 | Paylocity | x6342 |
| 10/21/2019 | 59,268.63 | Blue Cross Blue Shield of Texas | x7513 |
| 10/25/2019 | 152,732.21 | Blue Cross Blue Shield of Texas | x7513 |
| | 810,393.55 | | |

\*   Payments to Discovery Benefits are for employee Flexible Spending Account (FSA) reimbursement

In re: Highland Capital Management, L.P.

Case No. 19-12239-CSS
Reporting Period: 10/16/2019 - 10/31/2019

## Income Statement [1]
(in thousands)

|  | Date |
| --- | --- |
|  | **10/16/19 - 10/31/19** |
| **Revenue:** |  |
| Management fees | 975 |
| Shared services fees | 283 |
| Other income | 99 |
| **Total operating revenue** | **1,357** |
| **Operating expenses:** |  |
| Compensation and Benefits | 997 |
| Professional services | 256 |
| Investment research and consulting | 10 |
| Depreciation expense [3] | 82 |
| Other operating expenses | 201 |
| **Total operating expenses** | **1,545** |
| **Operating income/(loss)** | **(188)** |
| **Other income/expense:** |  |
| Interest income | 250 |
| Interest expense | (107) |
| Re-org related expenses [2] | - |
| Other income/expense | 32 |
| **Total other income/expense** | **175** |
| Net realized gains on investments | 339 |
| Net change in unrealized gains/(losses) of investments [4] | 2,654 |
|  | 2,993 |
| **Net earnings/(losses) from equity method investees** [4] | (20) |
| **Net income/(loss)** | **$ 2,959** |

(1) Note on accruals: expenses recorded in the Income Statement reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.

(2) Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed as of the petition date. No additional amounts were accrued between October 16, 2019 and October 31, 2019

(3) Includes full month of depreciation as depreciation is run monthly at month end. Estimated pro-rated depreciation October 16, 2019 to October 31, 2019 is $42k.

(4) Mark to market gains/(losses) on investments include normal course pricing updates for publicly traded securities and other positions with readily available market price information. Limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

In re: Highland Capital Management, L.P.

Balance Sheet
(in thousands)

| | Date |
| --- | --- |
| | 10/31/2019 |
| **Assets** | |
| Cash and cash equivalents | $ 2,286 |
| Investments, at fair value [3] | 359,448 |
| Equity method investees [3] | 37,508 |
| Management and incentive fee receivable | 3,202 |
| Fixed assets, net | 3,672 |
| Due from affiliates [1] | 152,124 |
| Other assets | 11,261 |
| **Total assets** | $ 569,501 |
| | |
| **Liabilities and Partners' Capital** | |
| Pre-petition accounts payable [4] | $ 1,135 |
| Post-petition accounts payable [4] | 102 |
| Secured debt | 35,510 |
| Accrued expenses and other liabilities [4] | 59,184 |
| Accrued re-organization related fees [5] | - |
| Claim accrual [2] | 73,997 |
| Partners' capital | 399,573 |
| **Total liabilities and partners' capital** | $ 569,501 |

[1] Includes various notes receivable at carrying value (fv undetermined).

[2] Uncontested portion of claim less appplicable offsets. Potential for additional liability based on future events.

[3] Mark to market gains/(losses) on investments include normal course pricing updates for publicly traded securities and other positions with readily available market price information. Limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

[4] Note on accruals: expenses recorded in Accounts Payable and Accrued Expenses and Other Liabilities reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.

[5] Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed prior to the petition date. No additional amounts were accrued between October 16, 2019 and October 31, 2019

In re: Highland Capital Management, L.P.

Case No. 19-12239-CSS
Reporting Period: 10/16/2019 - 10/31/2019

| Form 6123 (Rev. 06-97) | | Department of the Treasury–Internal Revenue Service **Verification of Fiduciary's Federal Tax Deposit** | |
|---|---|---|---|
| | | **Do not attach this Notice to your Return** | |
| **TO** | | District Director, Internal revenue Service Attn: Chief, Special Procedures Function | |
| **FROM:** | | Name of Taxpayer   Highland Capital Management, L.P. | |
| | | Taxpayer Address   300 Crescent Ct. Ste. 700, Dallas, TX 75201 | |

The following information is to notify you of Federal tax deposit(s)(FTD) as required by the United States Bankruptcy Court (complete sections 1 and/or 2 as appropriate):

| Section 1 | **Form 941 Federal Tax Deposit (FTD) Information** |
|---|---|
| Taxes Reported on Form 941, Employer's Quarterly Federal Tax Return | For the payroll period from  10/16/2019  to  10/31/2019 |
| | Payroll date   10/31/2019 |
| | Gross wages paid to employees$ 557,425.72 |
| | Income tax withheld$ 105,313.71 |
| | Social Security (Employer's plus Employee's share of Social Security Tax) $  36,603.10 |
| | Tax Deposited  $ 141,916.84 |
| | Date Deposited   10/31/2019 |

| Section 2 | **Form 940 Federal Tax Deposit (FTD) Information** |
|---|---|
| Taxes Reported on Form 940, Employer's Annual Federal Unemployment Tax Return | For the payroll period from  10/16/2019  to   10/31/2019 |
| | Gross wages paid to employees  $ 557,425.72 |
| | Tax Deposited  $   574.93 |
| | Date Deposited   10/31/2019 |

**Certification**
**(Certification is limited to receipt or electronic transmittal of deposit only)**
This certifies receipt or electronic transmittal of deposits described below for Federal taxes as defined in Circular E, Employer's Tax Guide (Publication 15)

| Deposit Method (check box) | 9 Form 8109/8109B Federal Tax Deposit (FTD) coupon X 9 Electronic Federal Tax Payment System (EFTPS) Deposit | |
|---|---|---|
| Amount (Form 941 141,916.84 | Date of Deposit 10/31/2019 | EFTPS acknowledgment number or Form 8109 FTD received by: EFT_COMM01_1034607 |
| Amount (Form 940 574.93 | Date of Deposit 10/31/2019 | EFTPS acknowledgment number or Form 8109 FTD received by: EFT_COMM01_1051577-1-2944938 |
| Depositor's Employer Identification Number: 75-2716725 | Name and Address of Bank Compass Bank | |

Under penalties of perjury, I certify that the above federal tax deposit information is true and correct

| Signed: | Date: |
|---|---|
| Name and Title (print or type) | |

Cat. #43099Z                         Form 6123 (rev. 06-97)

In re: Highland Capital Management, L.P.

**Post-Petition Accounts Payable Aging as of 10/31/2019**

| | 0-30 days | 31 - 60 days old | 61 - 90 days old | 91 + days old | Grand Total |
|---|---|---|---|---|---|
| Remaining Amount | $ 102,132 | $ - | $ - | $ - | $ 102,132 |

**Accounts Receivable Reconciliation**

| | 0 - 30 days old [1] | 31 - 60 days old | 61 - 90 days old | 91 + days old net of uncollectable balances [2] | Accounts Receivable (Net) |
|---|---|---|---|---|---|
| Management Fees | $ 3,201,548 | $ - | $ - | $ - | $ 3,201,548 |
| Shared Services Fees [3] | 516,469 | | - | - | 516,469 |
| Expense Reimbursements [3] | 537,514 | 84,081 | 155,514 | 3,440,751 | 4,217,859 |
| **Total Receivable** | **$ 4,255,531** | **$ 84,081** | **$ 155,514** | **$ 3,440,751** | **$ 7,935,877** |

[1] All management fees and shared services fees are considered to be 0-30 days old as all such receivables are paid current per their investment management contracts.

[2] Receivables shown above are net of certain potentially uncollectible amounts. The net balances also do not include amounts that have been reserved against in prior years relating to management fees, shared services, and fund reimbursements, including but not limited to amounts paid on other entities' behalf with respect to legal related expenses as well as receivable escrowed distributions from fund holdings.

[3] Accounts Receivable from Shared Services Fees and Expense Reimbursements is included in the Other Assets line item on the Balance Sheet (see MOR-3).

In re: Highland Capital Management, L.P.

### DEBTOR QUESTIONNAIRE

| Must be completed each month | | Yes | No |
|---|---|---|---|
| 1 | Have any assets been sold or transferred outside the normal course of business this reporting period? If yes, provide an explanation below. | | x |
| 2 | Have any funds been disbursed from any account other than a debtor in possession account this reporting period? If yes, provide an explanation below. $598,419 of funds transferred from non-debtor in possession accounts, while those accounts were in process of being opened. These debtor in possession accounts were opened following month end and are being used for operating activities as of the date of this submission. | x | |
| 3 | Have all postpetition tax returns been timely filed? If no, provide an explanation below. | x | |
| 4 | Are workers compensation, general liability and other necessary insurance coverages in effect? If no, provide an explanation below. | x | |
| 5 | Has any bank account been opened during the reporting period? If yes, provide documentation identifying the opened account(s). If an investment account has been opened provide the required documentation pursuant to the Delaware Local Rule 4001-3. Following month end, The Debtor opened three bank accounts at East West Bank. On November 21, 2019, the Debtor closed accounts ending in x735, x668 x130 and x513. | | x |

Harris Highland Capital Management, L.P.

Case No. 19-34054-CSS
Reporting Period: 11/26/2019-12/31/2019

Next 13 Weeks Commencing October 16, 2019
(in thousands)

| | Actual | Actual | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | 13 Weeks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week beginning | 10/16 | 10/23 | 10/29 | 11/6 | 11/13 | 11/20 | 11/27 | 12/4 | 12/11 | 12/18 | 12/25 | 1/1 | 1/8 | 13 Weeks |

# EXHIBIT 46

Case 21-03005-sgj Doc 29 Filed 05/24/21 Entered 05/24/21 10:23:39 Page 434 of 600
Case 19-34054-sgj11 Doc 289 Filed 12/31/...

Docket #0289  Date Filed: 12/31/2019

**Monthly Operating Report**
ACCRUAL BASIS

| | |
|---|---|
| CASE NAME: | Highland Capital Management |
| CASE NUMBER: | 19-34054 |
| JUDGE: | Stacey Jernigan |

# UNITED STATES BANKRUPTCY COURT

## NORTHERN & EASTERN DISTRICTS OF TEXAS

### REGION 6

## MONTHLY OPERATING REPORT

**MONTH ENDING:** ___November___  ___2019___
                       MONTH          YEAR

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT (ACCRUAL BASIS-1 THROUGH ACCRUAL BASIS-7) AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE. DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.

RESPONSIBLE PARTY:

_____       Chief Restructuring Officer
ORIGINAL SIGNATURE OF RESPONSIBLE PARTY        TITLE

Bradley Sharp                            12-31-19
PRINTED NAME OF RESPONSIBLE PARTY         DATE


PREPARER:

_____       Chief Financial Officer
ORIGINAL SIGNATURE OF PREPARER                TITLE

Frank Waterhouse                         12.31.19
PRINTED NAME OF PREPARER                  DATE

1934054191231000000000002

**Monthly Operating Report**
ACCRUAL BASIS-1

| CASE NAME: | Highland Capital Management, LP |
| --- | --- |
| CASE NUMBER: | 19-12239-CSS |

**Comparative Balance Sheet**
(in thousands)

| | 10/15/2019 | 10/31/2019 | 11/30/2019 |
| --- | --- | --- | --- |
| **Assets** | | | |
| Cash and cash equivalents | 2,529 | 2,286 | 6,343 |
| Investments, at fair value[3] | 232,620 | 235,144 | 233,776 |
| Equity method investees[3] | 161,819 | 161,813 | 175,381 |
| Management and incentive fee receivable | 2,579 | 3,202 | 1,223 |
| Fixed assets, net | 3,754 | 3,672 | 3,601 |
| Due from affiliates[1] | 151,901 | 152,124 | 152,523 |
| Other assets | 11,311 | 11,260 | 10,621 |
| **Total assets** | $ 566,513 | $ 569,501 | $ 583,468 |
| | | | |
| **Liabilities and Partners' Capital** | | | |
| Pre-petition accounts payable[4] | 1,176 | 1,135 | 1,250 |
| Post-petition accounts payable[4] | - | 102 | 236 |
| Secured debt: | | | |
| Frontier | 5,195 | 5,195 | 5,195 |
| Jefferies | 30,328 | 30,315 | 30,268 |
| Accrued expenses and other liabilities[4] | 59,203 | 59,184 | 60,848 |
| Accrued re-organization related fees[5] | - | - | - |
| Claim accrual[2] | 73,997 | 73,997 | 73,997 |
| Partners' capital | 396,614 | 399,573 | 411,674 |
| **Total liabilities and partners' capital** | $ 566,513 | $ 569,501 | $ 583,468 |

[1] Includes various notes receivable at carrying value (fv undetermined).

[2] Uncontested portion of claim less appplicable offsets. Potential for additional liability based on future events. No interest has been accrued beyond petition date.

[3] Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

[4] Note on accruals: expenses recorded in Accounts Payable and Accrued Expenses and Other Liabilities reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices. For balance sheet dates other than the Petition Date, amounts include both pre-petition and post-petition liabilities.

[5] Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed prior to the petition date. No additional amounts were accrued between October 16, 2019 and November 30, 2019

**Monthly Operating Report**
ACCRUAL BASIS-2

| CASE NAME: | **Highland Capital Management, LP** |
|---|---|

| CASE NUMBER: | **19-12239-CSS** |
|---|---|

## Income Statement [1]

(in thousands)

| | Date | Month ended | Filing to Date |
|---|---|---|---|
| | 10/16/19 - 10/31/19 | 11/30/2019 | |
| **Revenue:** | | | |
| Management fees | 975 | 1,638 | 2,613 |
| Shared services fees | 283 | 709 | 992 |
| Other income | 99 | 418 | 517 |
| **Total operating revenue** | **1,357** | **2,765** | **4,122** |
| **Operating expenses:** | | | |
| Compensation and Benefits | 997 | 1,936 | 2,932 |
| Professional services | 256 | 90 | 346 |
| Investment research and consulting | 10 | 34 | 44 |
| Marketing and advertising expense | - | 35 | 35 |
| Depreciation expense | 82 | 82 | 164 |
| Other operating expenses | 201 | 480 | 681 |
| **Total operating expenses** | **1,545** | **2,657** | **4,202** |
| **Operating income/(loss)** | **(188)** | **108** | **(80)** |
| **Other income/expense:** | | | |
| Interest income | 250 | 484 | 735 |
| Interest expense | (107) | (103) | (211) |
| Re-org related expenses[2] | - | - | - |
| Other income/expense | 32 | - | 32 |
| **Total other income/expense** | **175** | **381** | **555** |
| Net realized gains/(losses) on investments | 339 | 279 | 618 |
| Net change in unrealized gains/(losses) of investment[3] | 2,654 | (2,004) | 650 |
| | 2,993 | (1,725) | 1,268 |
| **Net earnings/(losses) from equity method investees [3]** | (20) | 13,468 | 13,448 |
| **Net income/(loss)** | $ 2,959 | $ 12,232 | $ 15,192 |

(1) Note on accruals: expenses recorded in the Income Statement reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.

(2) Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed as of the petition date. No additional amounts were accrued between October 16, 2019 and November 30, 2019

(3) Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

<div align="right">

**Monthly Operating Report**
**ACCRUAL BASIS-3A**

</div>

| CASE NAME: | Highland Capital Management |
| --- | --- |
| **CASE NUMBER:** | 19-34054 |

| CASH RECEIPTS AND DISBURSEMENTS | OCTOBER | NOVEMBER | DECEMBER | QUARTER |
| --- | --- | --- | --- | --- |
| 1. CASH - BEGINNING OF MONTH [2] | $2,554,230 | $2,286,160 | | $2,554,230 |
| **RECEIPTS FROM OPERATIONS** | | | | |
| 2. OTHER OPERATING RECEIPTS | $6,911.97 | $972,733 | | $979,644 |
| 3 MANAGEMENT FEES AND OTHER RELATED RECEIPTS | $15,000.00 | $1,764,749 | | $1,779,749 |
| **COLLECTION OF ACCOUNTS RECEIVABLE** | | | | |
| 4 PREPETITION | $46,425 | $2,962,108 | | $3,008,534 |
| 5 POSTPETITION [1] | - | - | | - |
| 6 TOTAL OPERATING RECEIPTS | $68,337 | $5,699,590 | | $5,767,928 |
| **NON-OPERATING RECEIPTS** | | | | |
| 7 THIRD PARTY FUND ACTUAL/EXPECTED DISTRIBUTIONS | $79,266 | $320,836 | | $400,103 |
| 8 DIVS, PAYDOWNS, MISC FROM INVESTMENT ASSETS | $410,189 | $501,983 | | $912,172 |
| 9 OTHER (ATTACH LIST) | | | | $0 |
| 10 TOTAL NON-OPERATING RECEIPTS | $489,456 | $822,820 | | $1,312,275 |
| 11 TOTAL RECEIPTS | $557,793 | $6,522,410 | | $7,080,203 |
| 12 TOTAL CASH AVAILABLE | $3,112,023 | $8,808,570 | | |
| **OPERATING DISBURSEMENTS** | | | | |
| 13 PAYROLL, BENEFITS, AND TAXES + EXP REIMB | $737,588 | $961,282 | | $1,698,869 |
| 14 SINGAPORE SERVICE FEES | $34,633 | $32,555 | | $67,189 |
| 15 HCM LATIN AMERICA | | $100,000 | | $100,000 |
| 16 THIRD PARTY FUND CAPITAL CALL OBLIGATION | | $967,555 | | $967,555 |
| 17 UTILITIES | | | | $0 |
| 18 INSURANCE | | | | $0 |
| 19 INVENTORY PURCHASES | | | | $0 |
| 20 VEHICLE EXPENSES | | | | $0 |
| 21 TRAVEL | | | | $0 |
| 22 ENTERTAINMENT | | | | $0 |
| 23 REPAIRS & MAINTENANCE | | | | $0 |
| 24 SUPPLIES | | | | $0 |
| 25 ADVERTISING | | | | $0 |
| 26 OTHER (ATTACH LIST) | $53,642 | $404,581 | | $458,223 |
| 27 TOTAL OPERATING DISBURSEMENTS | $825,863 | $2,465,973 | | $3,291,836 |
| **REORGANIZATION EXPENSES** | | | | |
| 28 PROFESSIONAL FEES | | | | $0 |
| 29 U.S. TRUSTEE FEES | | | | $0 |
| 30 OTHER (ATTACH LIST) | | | | $0 |
| 31 TOTAL REORGANIZATION EXPENSES | $0 | $0 | | $0 |
| 32 TOTAL DISBURSEMENTS | $825,863 | $2,465,973 | | $3,291,836 |
| 33 NET CASH FLOW | ($268,070) | $4,056,437 | | $3,788,367 |
| 34 CASH - END OF MONTH | $2,286,160 | $6,342,598 | | $6,342,598 |

1    All postpetition receipts are included in line 3, Management Fees and Other Related Receipts.

2    Beginning cash in October represents the bank balance as of the filing date, while the cash amount shown on the balance sheet includes any outstanding checks.

<div align="right">

**Monthly Operating Report**
ACCRUAL BASIS-3B

</div>

| CASE NAME: | Highland Capital Management |
| --- | --- |
| | |
| CASE NUMBER: | 19-34054 |

**OPERATING DISBURSMENTS - OTHER**

| Date | Amount | Vendor |
| --- | --- | --- |
| 11/1/2019 | $ 155,983 | Crescent TC Invest |
| 11/1/2019 | 26,667 | Third Party Consultant |
| 11/1/2019 | 13,636 | Third Party Consultant |
| 11/8/2019 | 33,007 | Platinum Parking |
| 11/8/2019 | 1,053 | Gold's Gym International |
| 11/12/2019 | 1,525 | MicroTel |
| 11/15/2019 | 1,951 | Compass Bank Operating |
| 11/18/2019 | 2,047 | Zayo |
| 11/20/2019 | 2,894 | Third Party Consultant |
| 11/25/2019 | 24,232 | Coleman Research Group, Inc. |
| 11/26/2019 | 3,092 | Canteen Vending |
| 11/26/2019 | 925 | UPS Small Package |
| 11/26/2019 | 671 | SolarWinds |
| 11/26/2019 | 7,995 | Intralinks Inc |
| 11/26/2019 | 56,522 | Houlihan Lokey Financial Advisors |
| 11/26/2019 | 9,259 | Willis of Texas, Inc. |
| 11/26/2019 | 8,846 | GrubHub for Work |
| 11/29/2019 | 31,894 | Third Party Consultant |
| 11/29/2019 | 11,000 | Third Party Consultant |
| 11/29/2019 | 11,382 | Verity Group |
| | $ 404,581 | |

-

<div align="right">

**Monthly Operating Report**
ACCRUAL BASIS-4

</div>

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| MGMT FEE RECEIVABLE AGING [2] | SCHEDULE AMOUNT | October | November | December |
|---|---|---|---|---|
| 1. 0-30 | $ 2,578,744 | $ 3,201,548 | $ 1,222,880 | |
| 2. 31-60 | | $0 | | |
| 3. 61-90 | | $0 | | |
| 4. 91+ | | - | | |
| 5. TOTAL MGMT FEE RECEIVABLE | $ 2,578,744 | $ 3,201,548 | $ 1,222,880 | $0 |
| 6. AMOUNT CONSIDERED UNCOLLECTIBLE | | | | |
| 7. MGMT FEE RECEIVABLE (NET) | $ 2,578,744 | $ 3,201,548 | $ 1,222,880 | $0 |

| AGING OF POSTPETITION TAXES AND PAYABLES | | MONTH: | November 2019 | |
|---|---|---|---|---|
| **TAXES PAYABLE** | 0-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS | TOTAL |
| 1. FEDERAL | | | | | $0 |
| 2. STATE | | | | | $0 |
| 3. LOCAL | | | | | $0 |
| 4. OTHER (ATTACH LIST) | | | | | $0 |
| 5. TOTAL TAXES PAYABLE | $0 | $0 | $0 | $0 | $0 |

| 6. ACCOUNTS PAYABLE | $215,777 | $20,059 | | | $235,836 |
|---|---|---|---|---|---|

| STATUS OF POSTPETITION TAXES [1] | | MONTH: | November 2019 | |
|---|---|---|---|---|
| **FEDERAL** | BEGINNING TAX LIABILITY | AMOUNT WITHHELD AND/ 0R ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY |
| 1. WITHHOLDING | | | | $0 |
| 2. FICA-EMPLOYEE | | | | $0 |
| 3. FICA-EMPLOYER | | | | $0 |
| 4. UNEMPLOYMENT | | | | $0 |
| 5. INCOME | | | | $0 |
| 6. OTHER (ATTACH LIST) | | | | $0 |
| 7. TOTAL FEDERAL TAXES | $0 | $0 | $0 | $0 |
| **STATE AND LOCAL** | | | | |
| 8. WITHHOLDING | | | | $0 |
| 9. SALES | | | | $0 |
| 10. EXCISE | | | | $0 |
| 11. UNEMPLOYMENT | | | | $0 |
| 12. REAL PROPERTY | $ 16,472 | $0 | $0 | $16,472 |
| 13. PERSONAL PROPERTY | | | | $0 |
| 14. OTHER (ATTACH LIST) | | | | $0 |
| 15. TOTAL STATE & LOCAL | $16,472 | $0 | $0 | $16,472 |
| 16. TOTAL TAXES | $16,472 | $0 | $0 | $16,472 |

1  The Debtor funds all state and federal employment taxes to Paylocity, who files all required federal and state related employment reports and withholdings.

2  Aging based on when management fee is due and payable.

**Monthly Operating Report**
ACCRUAL BASIS-5

| CASE NAME: | Highland Capital Management |
| --- | --- |
| CASE NUMBER: | 19-34054 |

**MONTH:** November     2019

### BANK RECONCILIATIONS

| | | Account #1 | Account #2 | Account #3 | Account #4 | Account #5 | Account #6 | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| A. | BANK: | BBVA Compass | East West Bank | East West Bank | Maxim Group | Jefferies LLC | Nexbank | |
| B. | ACCOUNT NUMBER: | x6342 | x4686 | x4693 | x1885 | x0932 | x5891 | TOTAL |
| C. | PURPOSE (TYPE): | Operating | Operating | Insurance | Brokerage | Brokerage | CD | |
| 1. | BALANCE PER BANK STATEMENT [1] | $229,247 | $5,477,826 | $105,067 | $164 | $410,108 | $135,205 | $6,357,616 |
| 2. | ADD: TOTAL DEPOSITS NOT CREDITED | | | | | | | $0 |
| 3. | SUBTRACT: OUTSTANDING CHECKS | $15,019 | | | | | | $15,019 |
| 4. | OTHER RECONCILING ITEMS | | | | | | | $0 |
| 5. | MONTH END BALANCE PER BOOKS | $214,228 | $5,477,826 | $105,067 | $164 | $410,108 | $135,205 | $6,342,598 |
| 6. | NUMBER OF LAST CHECK WRITTEN | 18133 | 100001 | n/a | n/a | n/a | n/a | |

### INVESTMENT ACCOUNTS

| BANK, ACCOUNT NAME & NUMBER | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | | | CURRENT VALUE |
| --- | --- | --- | --- | --- | --- | --- |
| 7. | | | | | | |
| 8. | | | | | | |
| 9. | | | | | | |
| 10. | | | | | | |
| 11. | TOTAL INVESTMENTS | | $0 | | | $0 |

### CASH

| | | |
| --- | --- | --- |
| 12. | CURRENCY ON HAND | $0 |
| 13. | **TOTAL CASH - END OF MONTH** | $6,342,598 |

1   For Compass account x6342, funds transferred in December such that only sufficient cash to cover outstanding checks remains

**Monthly Operating Report**
ACCRUAL BASIS-6

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

MONTH: _____ November 2019 _____

**PAYMENTS TO INSIDERS AND PROFESSIONALS**

| | INSIDERS | | | |
|---|---|---|---|---|
| | NAME | TYPE OF PAYMENT | AMOUNT PAID | TOTAL PAID TO DATE |
| 1 | Frank Waterhouse | Salary | $29,167 | $43,750 |
| 2 | Frank Waterhouse | Expense Reimbursement | $339 | $506 |
| 3 | Scott Ellington | Salary | $37,500 | $56,250 |
| 4 | Scott Ellington | Expense Reimbursement | $84 | $2,010 |
| 5 | James Dondero | Salary | $46,875 | $70,313 |
| 6 | James Dondero | Expense Reimbursement [1] | $11,255 | $15,269 |
| 7 | Thomas Surgent | Salary | $33,333 | $50,000 |
| 8 | Thomas Surgent | Expense Reimbursement | $224 | $248 |
| 9 | Trey Parker | Salary | $29,167 | $43,750 |
| 10 | Trey Parker | Expense Reimbursement | $207 | $425 |
| | TOTAL PAYMENTS TO INSIDERS | | $188,151 | $282,519 |

[1] The total amount of reimbursements also included $83,358 for use of the credit card by the Debtor for office related expenses such as subscriptions, employee lunches, vending supplies, IT equipment/software, employee gifts/awards, training, postage and charitable donations.

| | PROFESSIONALS [2] | | | | |
|---|---|---|---|---|---|
| | NAME | DATE OF COURT ORDER AUTHORIZING PAYMENT | AMOUNT APPROVED | AMOUNT PAID | TOTAL PAID TO DATE | TOTAL INCURRED & UNPAID |
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | TOTAL PAYMENTS TO PROFESSIONALS | | | $0 | $0 | $0 |

2 Does not include payments to ordinary course professionals.

**POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS**

| | NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POSTPETITION |
|---|---|---|---|---|
| 1. | Crescent TC Investors LP (rent portion only) | 130,364 | 130,364 | - |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | TOTAL | 130,364 | $130,364 | $0 |

**Monthly Operating Report**
**ACCRUAL BASIS-7**

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

**MONTH:** November 2019

### QUESTIONNAIRE

| | | YES | NO |
|---|---|:---:|:---:|
| 1. | HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | x |
| 2. | HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | x | |
| 3. | ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES, OR LOANS) DUE FROM RELATED PARTIES? | x | |
| 4. | HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | x | |
| 5. | HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | x |
| 6. | ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | x |
| 7. | ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | x |
| 8. | ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | x |
| 9. | ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | x |
| 10. | ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | x |
| 11. | HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | x |
| 12. | ARE ANY WAGE PAYMENTS PAST DUE? | | x |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES," PROVIDE A DETAILED EXPLANATION OF EACH ITEM. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| 2 | $1,206,592 of funds paid from non-debtor in possession accounts, while those accounts were in the process of being opened. |
|---|---|
| 3 | Debtor generates fee income and other receipts from various related parties in normal course, see cash management motion for further discussion. |
| 4 | Payments have been made on prepetition liabilities, as approved in the critical vendor motion. |

### INSURANCE

| | | YES | NO |
|---|---|:---:|:---:|
| 1. | ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | x | |
| 2. | ARE ALL PREMIUM PAYMENTS PAID CURRENT? | x | |
| 3. | PLEASE ITEMIZE POLICIES BELOW. | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO," OR IF ANY POLICIES HAVE BEEN CANCELLED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN EXPLANATION BELOW. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| INSTALLMENT PAYMENTS | | | |
|---|---|---|---|
| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT 47

**Monthly Operating Report**
ACCRUAL BASIS

| | |
|---|---|
| **CASE NAME:** | Highland Capital Management |
| **CASE NUMBER:** | 19-34054 |
| **JUDGE:** Stacey Jernigan | |

# UNITED STATES BANKRUPTCY COURT

# NORTHERN & EASTERN DISTRICTS OF TEXAS

# REGION 6

# MONTHLY OPERATING REPORT

## MONTH ENDING: December 2019
<u>MONTH</u>  <u>YEAR</u>

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT (ACCRUAL BASIS-1 THROUGH ACCRUAL BASIS-7) AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE. DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.

**RESPONSIBLE PARTY:**

_____     Chief Restructuring Officer
ORIGINAL SIGNATURE OF RESPONSIBLE PARTY          TITLE

Bradley Sharp                                              1/31/2020
PRINTED NAME OF RESPONSIBLE PARTY                 DATE


**PREPARER:**

_____     Chief Financial Officer
ORIGINAL SIGNATURE OF PREPARER                   TITLE

Frank Waterhouse
PRINTED NAME OF PREPARER                         DATE

**Monthly Operating Report**
**ACCRUAL BASIS-1**

| CASE NAME: | Highland Capital Management, LP |
| --- | --- |
| CASE NUMBER: | 19-12239-CSS |

**Comparative Balance Sheet**
(in thousands)

| | 10/15/2019 | 10/31/2019 | 11/30/2019 | 12/31/2019 [6] |
| --- | --- | --- | --- | --- |
| **Assets** | | | | |
| Cash and cash equivalents | 2,529 | 2,286 | 6,343 | 9,501 |
| Investments, at fair value [3] | 232,620 | 235,144 | 233,776 | 235,054 |
| Equity method investees [3] | 161,819 | 161,813 | 175,381 | 174,815 |
| Management and incentive fee receivable | 2,579 | 3,202 | 1,223 | 1,828 |
| Fixed assets, net | 3,754 | 3,672 | 3,601 | 3,521 |
| Due from affiliates [1] | 151,901 | 152,124 | 152,523 | 146,245 |
| Reserve against notes recievable | | | | (57,963) |
| Other assets | 11,311 | 11,260 | 10,621 | 10,663 |
| **Total assets** | **$ 566,513** | **$ 569,501** | **$ 583,468** | **$ 523,664** |
| | | | | |
| **Liabilities and Partners' Capital** | | | | |
| Pre-petition accounts payable [4] | 1,176 | 1,135 | 1,250 | 1,068 |
| Post-petition accounts payable [4] | - | 102 | 236 | 624 |
| Secured debt: | | | | |
| Frontier | 5,195 | 5,195 | 5,195 | 5,195 |
| Jefferies | 30,328 | 30,315 | 30,268 | 30,020 |
| Accrued expenses and other liabilities [4] | 59,203 | 59,184 | 60,848 | 66,423 |
| Accrued re-organization related fees [5] | - | - | - | 5,693 |
| Claim accrual [2] | 73,997 | 73,997 | 73,997 | 73,997 |
| Partners' capital | 396,614 | 399,573 | 411,674 | 340,644 |
| **Total liabilities and partners' capital** | **$ 566,513** | **$ 569,501** | **$ 583,468** | **$ 523,664** |

[1] Includes various notes receivable at carrying value, except note due from Hunter Mountain Investment Trust which is fully reserved against ($58M reserve). Fair value has not been determined with respect to any of the notes.

[2] Uncontested portion of Redeemer claim less appplicable offsets. Potential for additional liability based on future events. No interest has been accrued beyond petition date.

[3] Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Limited partnership interests normally marked to a NAV statement have been updated based upon the most recent statement available, or marked to an estimate to the extent available.

[4] Note on accruals: expenses recorded in Accounts Payable and Accrued Expenses and Other Liabilities reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices. For balance sheet dates other than the Petition Date, amounts include both pre-petition and post-petition liabilities.

[5] At December 31st, 2019, Debtor accrued for post-petition re-organization fees based upon an estimate of fees incurred to date.

[6] All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process.

<div align="right">

**Monthly Operating Report**
ACCRUAL BASIS-2

</div>

| CASE NAME: | Highland Capital Management, LP |
| --- | --- |
| CASE NUMBER: | 19-12239-CSS |

## Income Statement [1]

(in thousands)

| | Date | Month ended | Month ended [4] | Filing to Date |
| --- | --- | --- | --- | --- |
| | 10/16/19 - 10/31/19 | 11/30/2019 | 12/31/2019 | |
| **Revenue:** | | | | |
| Management fees | 975 | 1,638 | 1,804 | 4,417 |
| Shared services fees | 283 | 709 | 596 | 1,588 |
| Other income | 99 | 418 | 1,032 | 1,549 |
| **Total operating revenue** | **1,357** | **2,765** | **3,433** | **7,555** |
| **Operating expenses:** | | | | |
| Compensation and benefits | 997 | 1,936 | 2,256 | 5,188 |
| Professional services | 256 | 90 | 354 | 700 |
| Investment research and consulting | 10 | 34 | 10 | 54 |
| Marketing and advertising expense | - | 35 | (15) | 20 |
| Depreciation expense | 82 | 82 | 80 | 244 |
| Bad debt expense reserve | - | - | 8,420 | 8,420 |
| Other operating expenses | 201 | 480 | 310 | 991 |
| **Total operating expenses** | **1,545** | **2,657** | **11,415** | **15,617** |
| **Operating income/(loss)** | **(188)** | **108** | **(7,982)** | **(8,062)** |
| **Other income/expense:** | | | | |
| Interest income | 250 | 484 | 495 | 1,230 |
| Interest expense | (107) | (103) | (135) | (346) |
| Reserve against notes receivable | - | - | (57,963) | (57,963) |
| Re-org related expenses [2] | - | - | (5,693) | (5,693) |
| Other income/expense | 32 | - | - | 32 |
| **Total other income/expense** | **175** | **381** | **(63,296)** | **(62,741)** |
| Net realized gains/(losses) on investments | 339 | 279 | - | 618 |
| Net change in unrealized gains/(losses) of investment [3] | 2,654 | (2,004) | 988 | 1,638 |
| | **2,993** | **(1,725)** | **988** | **2,256** |
| **Net earnings/(losses) from equity method investees [3]** | (20) | 13,468 | (692) | 12,756 |
| **Net income/(loss)** | **$ 2,959** | **$ 12,232** | **$ (70,982)** | **$ (55,791)** |

(1) Note on accruals: expenses recorded in the Income Statement reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.

(2) Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed as of the petition date. At December 31st, 2019, Debtor accrued for post-petition re-organization fees based upon an estimate of fees incurred to date.

(3) Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Limited partnership interests normally marked to a NAV statement have been updated based upon the most recent statement available, or marked to an estimate to the extent available.

(4) All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process.

**Monthly Operating Report**
**ACCRUAL BASIS-3A**

| CASE NAME: | Highland Capital Management |
| --- | --- |
| CASE NUMBER: | 19-34054 |

| CASH RECEIPTS AND DISBURSEMENTS | OCTOBER | NOVEMBER | DECEMBER | QUARTER |
| --- | --- | --- | --- | --- |
| 1.  CASH - BEGINNING OF MONTH [2] | $ 2,554,230 | $ 2,286,160 | $ 6,342,598 | $ 2,554,230 |
| **RECEIPTS FROM OPERATIONS** | | | | |
| 2.  OTHER OPERATING RECEIPTS | $ 6,912 | $ 972,733 | $ 883,113 | $ 1,862,757 |
| 3  MANAGEMENT FEES AND OTHER RELATED RECEIPTS | $ 15,000 | $ 1,764,749 | $ 1,376,993 | $ 3,156,742 |
| **COLLECTION OF ACCOUNTS RECEIVABLE** | | | | |
| 4  PREPETITION | $ 46,425 | $ 2,962,108 | $ 584,575 | $ 3,593,108 |
| 5  POSTPETITION [1] | $ - | $ - | $ - | $ - |
| 6  TOTAL OPERATING RECEIPTS | $ 68,337 | $ 5,699,590 | $ 2,844,680 | $ 8,612,608 |
| **NON-OPERATING RECEIPTS** | | | | |
| 7  THIRD PARTY FUND ACTUAL/EXPECTED DISTRIBUTIONS | $ 79,266 | $ 320,836 | $ 23,365 | $ 423,468 |
| 8  DIVS, PAYDOWNS, MISC FROM INVESTMENT ASSETS | $ 410,189 | $ 501,983 | $ 425,897 | $ 1,338,069 |
| 9  OTHER (ATTACH LIST) | | | $ 3,390,286 | $ 3,390,286 |
| 10  TOTAL NON-OPERATING RECEIPTS | $ 489,456 | $ 822,820 | $ 3,839,547 | $ 5,151,822 |
| 11  TOTAL RECEIPTS | $ 557,793 | $ 6,522,410 | $ 6,684,227 | $ 13,764,430 |
| 12  TOTAL CASH AVAILABLE | $ 3,112,023 | $ 8,808,570 | $ 13,026,825 | |
| **OPERATING DISBURSEMENTS** | | | | |
| 13  PAYROLL, BENEFITS, AND TAXES + EXP REIMB [3] | $ 737,588 | $ 961,282 | $ 2,077,577 | $ 3,776,446 |
| 14  SINGAPORE SERVICE FEES | $ 34,633 | $ 32,555 | $ 27,930 | $ 95,118 |
| 15  HCM LATIN AMERICA | | $ 100,000 | $ 100,000 | $ 200,000 |
| 16  THIRD PARTY FUND CAPITAL CALL OBLIGATION | | $ 967,555 | $ 459,432 | $ 1,426,987 |
| 17  UTILITIES | | | | $ - |
| 18  INSURANCE | | | | $ - |
| 19  INVENTORY PURCHASES | | | | $ - |
| 20  VEHICLE EXPENSES | | | | $ - |
| 21  TRAVEL | | | | $ - |
| 22  ENTERTAINMENT | | | | $ - |
| 23  REPAIRS & MAINTENANCE | | | | $ - |
| 24  SUPPLIES | | | | $ - |
| 25  ADVERTISING | | | | $ - |
| 26  OTHER (ATTACH LIST) | $ 53,642 | $ 404,581 | $ 860,477 | $ 1,318,700 |
| 27  TOTAL OPERATING DISBURSEMENTS | $ 825,863 | $ 2,465,973 | $ 3,525,415 | $ 6,817,251 |
| **REORGANIZATION EXPENSES** | | | | |
| 28  PROFESSIONAL FEES | | | | $ - |
| 29  U.S. TRUSTEE FEES | | | | $ - |
| 30  OTHER (ATTACH LIST) | | | | $ - |
| 31  TOTAL REORGANIZATION EXPENSES | $ - | $ - | $ - | $ - |
| 32  TOTAL DISBURSEMENTS | $ 825,863 | $ 2,465,973 | $ 3,525,415 | $ 6,817,251 |
| 33  NET CASH FLOW | $ (268,070) | $ 4,056,437 | $ 3,158,812 | $ 6,947,179 |
| 34  CASH - END OF MONTH | $ 2,286,160 | $ 6,342,598 | $ 9,501,409 | $ 9,501,409 |

1    All postpetition receipts are included in line 3, Management Fees and Other Related Recepts.

2    Beginning cash in October represents the bank balance as of the filing date, while the cash amount shown on the balance sheet includes any outstanding checks.

3    November 30th, 2019 payroll in the amount of $478,337 did not debit the account until December 2nd, 2019. For comparability purposes this $478,337 amount should be added to the November total and subtracted from the December total.

**Monthly Operating Report**
ACCRUAL BASIS-3B

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

**NON-OPERATING RECEIPTS - OTHER**

| Date | Amount | Description |
|---|---|---|
| 12/9/2019 | 1,518,575.34 | Note principal or interest |
| 12/9/2019 | 739.72 | Note principal or interest |
| 12/23/2019 | 783,011.86 | Note principal or interest |
| 12/30/2019 | 530,112.36 | Note principal or interest |
| 12/30/2019 | 65,360.49 | Note principal or interest |
| 12/30/2019 | 201,994.40 | Note principal or interest |
| 12/30/2019 | 275,487.21 | Note principal or interest |
| 12/31/2019 | 15,004.30 | Voided Checks |
| | $3,390,285.68 | |

**OPERATING DISBURSMENTS - OTHER**

| Date | Amount | Vendor |
|---|---|---|
| 12/2/2019 | 155,084.39 | Crescent TC Investors LP |
| 12/3/2019 | 18,289.49 | Platinum Parking |
| 12/3/2019 | 672.72 | ProStar Services, Inc |
| 12/3/2019 | 1,191.25 | Gold's Gym International |
| 12/3/2019 | 1,021.44 | Chick-fil-A |
| 12/3/2019 | 5,052.88 | Iron Mountain Records Management |
| 12/3/2019 | 1,472.00 | Platinum Parking |
| 12/5/2019 | 110.00 | FINRA |
| 12/11/2019 | 5,780.50 | Third Party Consultant |
| 12/13/2019 | 110.00 | FINRA |
| 12/13/2019 | 163.35 | Arkadin Inc |
| 12/13/2019 | 356.00 | Jordan Fraker Photography |
| 12/13/2019 | 480.00 | Action Shred of Texas |
| 12/13/2019 | 1,023.67 | UPS Small Package |
| 12/13/2019 | 1,489.20 | Canteen |
| 12/13/2019 | 3,032.73 | Greenwood Office Outfitters, Inc. |
| 12/13/2019 | 3,659.07 | Third Party Consultant |
| 12/13/2019 | 2,887.50 | Centroid Systems, Inc. |
| 12/13/2019 | 2,394.28 | Thomson Reuters West |
| 12/13/2019 | 8,642.37 | Concur Technologies Inc |
| 12/13/2019 | 23,950.60 | Flexential Colorado Corp |
| 12/13/2019 | 3,234.81 | ICE Data Pricing Ref Data LLC |
| 12/13/2019 | 226.25 | Third Party Consultant |
| 12/13/2019 | 1,155.00 | Centroid Systems, Inc. |
| 12/13/2019 | 4,788.56 | Thomson Reuters West |
| 12/13/2019 | 4,090.46 | Concur Technologies Inc |
| 12/16/2019 | 155,452.35 | Bloomberg Finance LP |
| 12/16/2019 | 1,582.66 | Compass Bank Oper |
| 12/16/2019 | 32,508.98 | Bloomberg Finance LP |
| 12/17/2019 | 259.60 | East West Bank |
| 12/17/2019 | 13,516.50 | ATT Mobility |
| 12/17/2019 | 516.91 | DIRECTV |
| 12/19/2019 | 477.59 | PITNEY BOWES |
| 12/19/2019 | 400.00 | PITNEY BOWES |
| 12/19/2019 | 1,611.00 | PITNEY BOWES |
| 12/20/2019 | 348.00 | Visix, Inc. |
| 12/20/2019 | 1,000.00 | Marco Quintana |
| 12/20/2019 | 21.40 | CHASE COURIERS, INC |
| 12/20/2019 | 751.26 | Four Seasons Plantscaping, LLC |
| 12/20/2019 | 36,084.06 | SIEPE SOFTWARE |
| 12/20/2019 | 248,637.49 | SIEPE SERVICES |
| 12/20/2019 | 31,050.00 | McLagan |
| 12/20/2019 | 6,495.61 | ATT Mobility |
| 12/23/2019 | 27,891.43 | Third Party Consultant |
| 12/23/2019 | 6,942.54 | TW Telecom |
| 12/23/2019 | 6,934.01 | TW Telecom |
| 12/24/2019 | 398.22 | Xerox |
| 12/26/2019 | 548.83 | Pitney Bowes |
| 12/27/2019 | 5,076.50 | Third Party Consultant |
| 12/31/2019 | 17,147.40 | Wolters Kluwer |
| 12/31/2019 | 1,419.08 | Oracle America, Inc. |
| 12/31/2019 | 2,047.22 | Zayo Group |
| 12/31/2019 | 11,000.00 | Third Party Consultant |
| | $ 860,477.16 | |

**Monthly Operating Report**
ACCRUAL BASIS-4

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| MGMT FEE RECEIVABLE AGING [2] | SCHEDULE AMOUNT | October | November | December |
|---|---|---|---|---|
| 1. 0-30 | $ 2,578,744 | $ 3,201,548 | $ 1,222,880 | $1,828,180 |
| 2. 31-60 | | | | |
| 3. 61-90 | | | | |
| 4. 91+ | | | | |
| 5. TOTAL MGMT FEE RECEIVABLE | $ 2,578,744 | $ 3,201,548 | $ 1,222,880 | $1,828,180 |
| 6. AMOUNT CONSIDERED UNCOLLECTIBLE | | | | |
| 7. MGMT FEE RECEIVABLE (NET) | $ 2,578,744 | $ 3,201,548 | $ 1,222,880 | $1,828,180 |

| AGING OF POSTPETITION TAXES AND PAYABLES | | | MONTH: | December 2019 | |
|---|---|---|---|---|---|
| TAXES PAYABLE | 0-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS | TOTAL |
| 1. FEDERAL | | | | | $0 |
| 2. STATE | | | | | $0 |
| 3. LOCAL | | | | | $0 |
| 4. OTHER (ATTACH LIST) | | | | | $0 |
| 5. TOTAL TAXES PAYABLE | $0 | $0 | $0 | $0 | $0 |

| 6. ACCOUNTS PAYABLE | $413,201 | $60,483 | $150,355 | | $624,038 |
|---|---|---|---|---|---|

| STATUS OF POSTPETITION TAXES [1] | | | MONTH: | December 2019 | |
|---|---|---|---|---|---|
| FEDERAL | BEGINNING TAX LIABILITY | AMOUNT WITHHELD AND/ 0R ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY | |
| 1. WITHHOLDING | | | | $0 | |
| 2. FICA-EMPLOYEE | | | | $0 | |
| 3. FICA-EMPLOYER | | | | $0 | |
| 4. UNEMPLOYMENT | | | | $0 | |
| 5. INCOME | | | | $0 | |
| 6. OTHER (ATTACH LIST) | | | | $0 | |
| 7. TOTAL FEDERAL TAXES | $0 | $0 | $0 | $0 | |
| STATE AND LOCAL | | | | | |
| 8. WITHHOLDING | | | | $0 | |
| 9. SALES | | | | $0 | |
| 10. EXCISE | | | | $0 | |
| 11. UNEMPLOYMENT | | | | $0 | |
| 12. REAL PROPERTY | $0 | $0 | $0 | $0 | |
| 13. PERSONAL PROPERTY | | | | $0 | |
| 14. OTHER (ATTACH LIST) | | | | $0 | |
| 15. TOTAL STATE & LOCAL | $0 | $0 | $0 | $0 | |
| 16. TOTAL TAXES | $0 | $0 | $0 | $0 | |

1 The Debtor funds all state and federal employment taxes to Paylocity, who files all required federal and state related employment reports and withholdings.

2 Aging based on when management fee is due and payable.

**Monthly Operating Report**
ACCRUAL BASIS-5

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

**MONTH:** December      2019

### BANK RECONCILIATIONS

| | | Account #1 | Account #2 | Account #3 | Account #4 | Account #5 | Account #6 | TOTAL |
|---|---|---|---|---|---|---|---|---|
| A. | BANK: | BBVA Compass | East West Bank | East West Bank | Maxim Group | Jefferies LLC | Nexbank | |
| B. | ACCOUNT NUMBER: | x6342 | x4686 | x4693 | x1885 | x0932 | x5891 | |
| C. | PURPOSE (TYPE): | Operating | Operating | Insurance | Brokerage | Brokerage | CD | |
| 1. | BALANCE PER BANK STATEMENT [1] | $ 15,004 | $ 8,562,272 | $ 132,822 | $ 245,849 | $ 410,108 | $ 136,105 | $ 9,502,160 |
| 2. | ADD: TOTAL DEPOSITS NOT CREDITED | | | | | | | $ - |
| 3. | SUBTRACT: OUTSTANDING CHECKS | | $ 751 | | | | | $ 751 |
| 4. | OTHER RECONCILING ITEMS | | | | | | | $ - |
| 5. | MONTH END BALANCE PER BOOKS | $ 15,004 | $ 8,561,521 | $ 132,822 | $ 245,849 | $ 410,108 | $ 135,205 | $ 9,501,409 |
| 6. | NUMBER OF LAST CHECK WRITTEN | 18133 | 100009 | n/a | n/a | n/a | n/a | |

### INVESTMENT ACCOUNTS

| | BANK, ACCOUNT NAME & NUMBER | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | | | CURRENT VALUE |
|---|---|---|---|---|---|---|---|
| 7. | | | | | | | |
| 8. | | | | | | | |
| 9. | | | | | | | |
| 10. | | | | | | | |
| 11. | TOTAL INVESTMENTS | | | $0 | | | $0 |

### CASH

| | | |
|---|---|---|
| 12. | CURRENCY ON HAND | $0 |
| 13. | **TOTAL CASH - END OF MONTH** | $9,501,409 |

1   For Compass account x6342, subsequent to year end balance was transferred to the East West operating account and the account was closed.

**Monthly Operating Report**
ACCRUAL BASIS-6

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

MONTH: _____ December 2019 _____

**PAYMENTS TO INSIDERS AND PROFESSIONALS**

| | INSIDERS | | | |
|---|---|---|---|---|
| | NAME | TYPE OF PAYMENT | AMOUNT PAID | TOTAL PAID POST PETITION |
| 1 | Frank Waterhouse | Salary | $29,167 | $72,917 |
| 2 | Frank Waterhouse | Expense Reimbursement | $1,003 | $1,508 |
| 3 | Scott Ellington | Salary | $37,500 | $93,750 |
| 4 | Scott Ellington | Expense Reimbursement | $24 | $2,034 |
| 5 | James Dondero | Salary | $46,875 | $117,188 |
| 6 | James Dondero | Expense Reimbursement [1] | $1,077 | $16,346 |
| 7 | Thomas Surgent | Salary | $33,333 | $83,333 |
| 8 | Thomas Surgent | Expense Reimbursement | $1,007 | $1,254 |
| 9 | Trey Parker | Salary | $29,167 | $72,917 |
| 10 | Trey Parker | Expense Reimbursement | $240 | $665 |
| | TOTAL PAYMENTS TO INSIDERS | | $179,393 | $461,911 |

[1] The total amount of reimbursements during the reporting month also included $24,556 for use of the credit card by the Debtor for office related expenses such as subscriptions, employee lunches, vending supplies, IT equipment/software, employee gifts/awards, non-employee related travel, training and postage.

| | PROFESSIONALS [2] | | | | |
|---|---|---|---|---|---|
| | NAME | DATE OF COURT ORDER AUTHORIZING PAYMENT | AMOUNT APPROVED | AMOUNT PAID | TOTAL PAID TO DATE | TOTAL INCURRED & UNPAID |
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | TOTAL PAYMENTS TO PROFESSIONALS | | | $0 | $0 | $0 |

2 Does not include payments to ordinary course professionals.

**POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS**

| | NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POSTPETITION |
|---|---|---|---|---|
| 1. | Crescent TC Investors LP (rent portion only) | 130,364 | 130,364 | - |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | TOTAL | 130,364 | $130,364 | $0 |

**Monthly Operating Report**
ACCRUAL BASIS-7

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

**MONTH:** December 2019

### QUESTIONNAIRE

| | YES | NO |
|---|---|---|
| 1. HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | x |
| 2. HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | x | |
| 3. ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES, OR LOANS) DUE FROM RELATED PARTIES? | x | |
| 4. HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | x | |
| 5. HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | x |
| 6. ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | x |
| 7. ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | x |
| 8. ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | x |
| 9. ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | x |
| 10. ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | x |
| 11. HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | x |
| 12. ARE ANY WAGE PAYMENTS PAST DUE? | | x |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES," PROVIDE A DETAILED EXPLANATION OF EACH ITEM. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| 2 | $272,727 of funds transferred from non-debtor-in-possession accounts to debtor-in-possession account. |
|---|---|
| 3 | Debtor generates fee income and other receipts from various related parties in normal course, see cash management motion for further discussion. |
| 4 | Payments have been made on prepetition liabilities, as approved in the critical vendor motion. |

### INSURANCE

| | YES | NO |
|---|---|---|
| 1. ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | x | |
| 2. ARE ALL PREMIUM PAYMENTS PAID CURRENT? | x | |
| 3. PLEASE ITEMIZE POLICIES BELOW. | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO," OR IF ANY POLICIES HAVE BEEN CANCELLED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN EXPLANATION BELOW. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| INSTALLMENT PAYMENTS | | | |
|---|---|---|---|
| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT 48

**December 2019 Due From Affiliates**

| | | |
|---|---|---:|
| 14585 DUE FROM HUNTER MOUNTAIN INVESTMENT TRUST | $ | 57,963,118 |
| 14532 DUE FROM NEXPOINT ADVISORS | | 23,034,644 |
| 14750 LONG TERM NOTES RECEIVABLE | | 18,286,268 |
| 14531 DUE FROM HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS | | 10,413,540 |
| 14533 DUE FROM HCRE PARTNERS | | 10,192,686 |
| 14565 DUE FROM OTHER - TAX LOANS | | 9,946,805 |
| 14530 DUE FROM HIGHLAND CAPITAL MANAGEMENT SERVICES | | 7,543,781 |
| 14590 DUE FROM OTHER AFFILIATE | | 5,088,256 |
| 14595 DUE FROM HIGHLAND CAPITAL KOREA | | 3,132,278 |
| 14140 SHARED SVCS FEE RECVBL - PYXIS | | 298,283 |
| 14010 CASH INTEREST RECEIVABLE | | 285,626 |
| 14580 DUE FROM NEXBANK | | 60,000 |
| **Total Due From Affiliates** | $ | **146,245,285** |

# EXHIBIT 49

**Monthly Operating Report**
ACCRUAL BASIS

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |
| JUDGE: Stacey Jernigan | |

# UNITED STATES BANKRUPTCY COURT

## NORTHERN & EASTERN DISTRICTS OF TEXAS

## REGION 6

## MONTHLY OPERATING REPORT

**MONTH ENDING:**  January  2020
MONTH  YEAR

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT (ACCRUAL BASIS-1 THROUGH ACCRUAL BASIS-7) AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE. DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.

RESPONSIBLE PARTY:

_____
ORIGINAL SIGNATURE OF RESPONSIBLE PARTY

Chief Restructuring Officer
TITLE

Bradley Sharp
PRINTED NAME OF RESPONSIBLE PARTY

3/02/2020
DATE

PREPARER:

_____
ORIGINAL SIGNATURE OF PREPARER

Chief Financial Officer
TITLE

Frank Waterhouse
PRINTED NAME OF PREPARER

2-28-20
DATE

1934054200303000000000001

<div align="right">

**Monthly Operating Report**
ACCRUAL BASIS-1

</div>

| CASE NAME: | Highland Capital Management, LP |
|---|---|
| CASE NUMBER: | 19-12239-CSS |

**Comparative Balance Sheet**
(in thousands)

| | 10/15/2019 | 12/31/2019 [6] | 1/31/2020 [6] |
|---|---|---|---|
| **Assets** | | | |
| Cash and cash equivalents | 2,529 | 9,501 | 7,645 |
| Investments, at fair value [3] | 232,620 | 235,224 | 240,649 |
| Equity method investees [3] | 161,819 | 174,815 | 174,893 |
| Management and incentive fee receivable | 2,579 | 1,895 | 2,913 |
| Fixed assets, net | 3,754 | 3,521 | 3,441 |
| Due from affiliates [1] | 151,901 | 146,245 | 146,818 |
| Reserve against notes recievable | | (57,963) | (57,963) |
| Other assets | 11,311 | 10,986 | 10,842 |
| **Total assets** | $ 566,513 | $ 524,224 | $ 529,238 |
| | | | |
| **Liabilities and Partners' Capital** | | | |
| Pre-petition accounts payable [4] | 1,176 | 1,079 | 1,620 |
| Post-petition accounts payable [4] | - | 961 | 153 |
| Secured debt: | | | |
| Frontier | 5,195 | 5,195 | 5,195 |
| Jefferies | 30,328 | 30,020 | 29,950 |
| Accrued expenses and other liabilities [4] | 59,203 | 66,592 | 67,391 |
| Accrued re-organization related fees [5] | - | 5,762 | 7,326 |
| Claim accrual [2] | 73,997 | 73,997 | 73,997 |
| Partners' capital | 396,614 | 340,618 | 343,605 |
| **Total liabilities and partners' capital** | $ 566,513 | $ 524,224 | $ 529,238 |

[1] Includes various notes receivable at carrying value, except note due from Hunter Mountain Investment Trust which is fully reserved against ($58M reserve). Fair value has not been determined with respect to any of the notes.

[2] Uncontested portion of Redeemer claim less appplicable offsets. Potential for additional liability based on future events. No interest has been accrued beyond petition date.

[3] Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

[4] Note on accruals: expenses recorded in Accounts Payable and Accrued Expenses and Other Liabilities reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices. For balance sheet dates other than the Petition Date, amounts include both pre-petition and post-petition liabilities.

[5] Beginning December 31st, 2019, Debtor accrued for post-petition re-organization fees based upon an estimate of fees incurred to date.

[6] All balances at 12/31/2019 are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, balances for subsequent months will fluctuate.

**Monthly Operating Report**
ACCRUAL BASIS-2

| CASE NAME: | Highland Capital Management, LP |
| --- | --- |
| | |
| CASE NUMBER: | 19-12239-CSS |

## Income Statement [1]

(in thousands)

| | Filing to Year Ended 2019 | Month ended 1/31/2020 | Filing to date |
| --- | --- | --- | --- |
| **Revenue:** | | | |
| Management fees | 4,484 | 1,705 | 6,189 |
| Shared services fees | 1,588 | 646 | 2,234 |
| Other income | 1,582 | 172 | 1,754 |
| **Total operating revenue** | **7,654** | **2,523** | **10,177** |
| **Operating expenses:** | | | |
| Compensation and benefits | 5,188 | 1,929 | 7,117 |
| Professional services | 702 | 85 | 787 |
| Investment research and consulting | 54 | 7 | 61 |
| Marketing and advertising expense | 20 | 37 | 57 |
| Depreciation expense | 244 | 79 | 323 |
| Bad debt expense reserve | 8,420 | - | 8,420 |
| Other operating expenses | 1,046 | 335 | 1,381 |
| **Total operating expenses** | **15,674** | **2,472** | **18,146** |
| **Operating income/(loss)** | **(8,020)** | **51** | **(7,969)** |
| **Other income/expense:** | | | |
| Interest income | 1,230 | 495 | 1,725 |
| Interest expense | (346) | (114) | (460) |
| Reserve against notes receivable | (57,963) | - | (57,963) |
| Re-org related expenses [2] | (5,762) | (2,590) | (8,352) |
| Independent director fees | - | (134) | (134) |
| Other income/expense | 32 | - | 32 |
| **Total other income/expense** | **(62,809)** | **(2,343)** | **(65,152)** |
| Net realized gains/(losses) on investments | 618 | 6 | 624 |
| Net change in unrealized gains/(losses) of investments [3] | 1,638 | 5,409 | 7,047 |
| | **2,256** | **5,415** | **7,671** |
| **Net earnings/(losses) from equity method investees** [3] | 12,756 | (136) | 12,620 |
| **Net income/(loss)** | **$ (55,817)** | **$ 2,987** | **$ (52,830)** |

(1) Note on accruals: expenses recorded in the Income Statement reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.

(2) Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed as of the petition date. At December 31st, 2019, Debtor accrued for post-petition re-organization fees based upon an estimate of fees incurred to date.

(3) Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

(4) All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process.

**Monthly Operating Report**
**ACCRUAL BASIS-3A**

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| CASH RECEIPTS AND DISBURSEMENTS | | FILING TO YEAR END 2019 | | JANUARY | FEBRUARY | MARCH | | QUARTER |
|---|---|---|---|---|---|---|---|---|
| 1. | CASH - BEGINNING OF MONTH [2] | $ | 2,554,230 | $ 9,501,409 | | | $ | 9,501,409 |
| RECEIPTS FROM OPERATIONS | | | | | | | | |
| 2. | OTHER OPERATING RECEIPTS | $ | 1,862,757 | $ 437,863 | | | $ | 437,863 |
| 3 | MANAGEMENT FEES AND OTHER RELATED RECEIPTS | $ | 3,156,742 | $ 1,149,280 | | | $ | 1,149,280 |
| COLLECTION OF ACCOUNTS RECEIVABLE | | | | | | | | |
| 4 | PREPETITION | $ | 3,593,108 | $ - | | | $ | - |
| 5 | POSTPETITION [1] | $ | - | $ - | | | $ | - |
| 6 | TOTAL OPERATING RECEIPTS | $ | 8,612,608 | $ 1,587,143 | | | $ | 1,587,143 |
| NON-OPERATING RECEIPTS | | | | | | | | |
| 7 | THIRD PARTY FUND ACTUAL/EXPECTED DISTRIBUTIONS | $ | 423,468 | $ - | | | $ | - |
| 8 | DIVS, PAYDOWNS, MISC FROM INVESTMENT ASSETS | $ | 1,338,069 | $ 80,114 | | | $ | 80,114 |
| 9 | OTHER (ATTACH LIST) | $ | 3,390,286 | $ 43,550 | | | $ | 43,550 |
| 10 | TOTAL NON-OPERATING RECEIPTS | $ | 5,151,822 | $ 123,664 | | | $ | 123,664 |
| 11 | TOTAL RECEIPTS | $ | 13,764,430 | $ 1,710,807 | | | $ | 1,710,807 |
| 12 | TOTAL CASH AVAILABLE | | | $ 11,212,217 | | | | |
| OPERATING DISBURSEMENTS | | | | | | | | |
| 13 | PAYROLL, BENEFITS, AND TAXES + EXP REIMB [3] | $ | 3,776,446 | $ 1,483,225 | | | $ | 1,483,225 |
| 14 | SINGAPORE SERVICE FEES | $ | 95,118 | $ 32,607 | | | $ | 32,607 |
| 15 | HCM LATIN AMERICA | $ | 200,000 | $ 100,000 | | | $ | 100,000 |
| 16 | THIRD PARTY FUND CAPITAL CALL OBLIGATION | $ | 1,426,987 | $ - | | | $ | - |
| 17 | UTILITIES | $ | - | | | | $ | - |
| 18 | INSURANCE | $ | - | | | | $ | - |
| 19 | INVENTORY PURCHASES | $ | - | | | | $ | - |
| 20 | VEHICLE EXPENSES | $ | - | | | | $ | - |
| 21 | TRAVEL | $ | - | | | | $ | - |
| 22 | ENTERTAINMENT | $ | - | | | | $ | - |
| 23 | REPAIRS & MAINTENANCE | $ | - | | | | $ | - |
| 24 | SUPPLIES | $ | - | | | | $ | - |
| 25 | ADVERTISING | $ | - | | | | $ | - |
| 26 | OTHER (ATTACH LIST) | $ | 1,318,700 | $ 792,268 | | | $ | 792,268 |
| 27 | TOTAL OPERATING DISBURSEMENTS | $ | 6,817,251 | $ 2,408,100 | | | $ | 2,408,100 |
| REORGANIZATION EXPENSES | | | | | | | | |
| 28 | PROFESSIONAL FEES | $ | - | $ 1,025,308 | | | $ | 1,025,308 |
| 29 | U.S. TRUSTEE FEES | $ | - | | | | $ | - |
| 30 | OTHER (ATTACH LIST) | $ | - | $ 133,869 | | | $ | 133,869 |
| 31 | TOTAL REORGANIZATION EXPENSES | $ | - | $ 1,159,176 | | | $ | 1,159,176 |
| 32 | TOTAL DISBURSEMENTS | $ | 6,817,251 | $ 3,567,277 | | | $ | 3,567,277 |
| 33 | NET CASH FLOW | $ | 6,947,179 | $ (1,856,469) | | | $ | (1,856,469) |
| 34 | CASH - END OF MONTH | $ | 9,501,409 | $ 7,644,940 | | | $ | 7,644,940 |

1   All postpetition receipts are included in line 3, Management Fees and Other Related Recepits.

**Monthly Operating Report**
**ACCRUAL BASIS-3B**

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

**NON-OPERATING RECEIPTS - OTHER**

| Date | Amount | Description |
|---|---|---|
| 1/9/2020 | 43,550.00 | Cash Receipt from Multi Strategy |
| | $ 43,550.00 | |

**OPERATING DISBURSMENTS - OTHER**

| Date | Amount | Vendor |
|---|---|---|
| 1/2/2020 | 158,748.85 | Crescent TC Investors LP |
| 1/3/2020 | 43,550.00 | Cash Disbursement to Multi Strategy |
| 1/3/2020 | 637.13 | AT&T |
| 1/7/2020 | 7,729.05 | CDW Direct LLC |
| 1/8/2020 | 7,150.74 | AT&T |
| 1/13/2020 | 6,846.47 | TW Telecom |
| 1/15/2020 | 18,042.03 | Siepe Software LLC |
| 1/15/2020 | 2,500.00 | Maples and Calder |
| 1/17/2020 | 2,017.51 | Zayo Group |
| 1/22/2020 | 6,367.28 | AT&T |
| 1/22/2020 | 3,749.90 | AT&T |
| 1/23/2020 | 11,210.06 | Fidelity National Information Svcs |
| 1/24/2020 | 94,963.62 | Houlihan Lokey |
| 1/24/2020 | 130,530.12 | Siepe Services, LLC |
| 1/24/2020 | 3,120.36 | UPS Small Package |
| 1/24/2020 | 844.00 | CSC |
| 1/24/2020 | 225.00 | Action Shred of Texas |
| 1/24/2020 | 11,380.24 | AT&T |
| 1/24/2020 | 5,985.38 | Third Party Consultant |
| 1/24/2020 | 70,400.00 | Intex Solutions, Inc. |
| 1/24/2020 | 15,448.54 | Compass Group USA dba Canteen |
| 1/27/2020 | 260.58 | DirecTV |
| 1/28/2020 | 1,633.42 | Xerox |
| 1/30/2020 | 117,957.04 | HE Peoria Place |
| 1/30/2020 | 36,564.20 | HE Asante |
| 1/30/2020 | 518.96 | HE Fox Trails |
| 1/31/2020 | 18,650.19 | Ace Parking |
| 1/31/2020 | 11,000.00 | Third Party Consultant |
| 1/31/2020 | 3,787.76 | Oak Cliff Office Supply & Printing (OCOP) |
| 1/31/2020 | 450.00 | Action Shred of Texas |
| | $ 792,268.43 | |

**REORGANIZATION EXPENSES - OTHER**

| Date | Amount | Description |
|---|---|---|
| 1/13/2020 | 44,836.63 | Russell F. Nelms |
| 1/13/2020 | 44,516.00 | Dubel & Associates, LLC |
| 1/13/2020 | 44,516.00 | James P. Seery, Jr. |
| | 133,868.63 | |

**Monthly Operating Report**
ACCRUAL BASIS-4

| CASE NAME: | Highland Capital Management |
| --- | --- |
| CASE NUMBER: | 19-34054 |

| MGMT FEE RECEIVABLE AGING [2] | | October | November | December [3] | January |
| --- | --- | --- | --- | --- | --- |
| 1. | 0-30 | $ 3,201,548 | $ 1,222,880 | $ 1,894,850 | $2,912,832 |
| 2. | 31-60 | | | | |
| 3. | 61-90 | | | | |
| 4. | 91+ | | | | |
| 5. | TOTAL MGMT FEE RECEIVABLE | $ 3,201,548 | $ 1,222,880 | $ 1,894,850 | $2,912,832 |
| 6. | AMOUNT CONSIDERED UNCOLLECTIBLE | | | | |
| 7. | MGMT FEE RECEIVABLE (NET) | $ 3,201,548 | $ 1,222,880 | $ 1,894,850 | $2,912,832 |

| AGING OF POSTPETITION TAXES AND PAYABLES | MONTH: | January 2020 |
| --- | --- | --- |

| TAXES PAYABLE | 0-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS | TOTAL |
| --- | --- | --- | --- | --- | --- |
| 1. FEDERAL | | | | | $0 |
| 2. STATE | | | | | $0 |
| 3. LOCAL | | | | | $0 |
| 4. OTHER (ATTACH LIST) | | | | | $0 |
| 5. TOTAL TAXES PAYABLE | $0 | $0 | $0 | $0 | $0 |

| 6. ACCOUNTS PAYABLE | 545917.96-65 | $43,229 | $10,712 | $99,547 | $153,488 |
| --- | --- | --- | --- | --- | --- |

| STATUS OF POSTPETITION TAXES [1] | MONTH: | January 2020 |
| --- | --- | --- |

| FEDERAL | BEGINNING TAX LIABILITY | AMOUNT WITHHELD AND/ 0R ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY |
| --- | --- | --- | --- | --- |
| 1. WITHHOLDING | | | | $0 |
| 2. FICA-EMPLOYEE | | | | $0 |
| 3. FICA-EMPLOYER | | | | $0 |
| 4. UNEMPLOYMENT | | | | $0 |
| 5. INCOME | | | | $0 |
| 6. OTHER (ATTACH LIST) | | | | $0 |
| 7. TOTAL FEDERAL TAXES | $0 | $0 | $0 | $0 |
| STATE AND LOCAL | | | | |
| 8. WITHHOLDING | | | | $0 |
| 9. SALES | | | | $0 |
| 10. EXCISE | | | | $0 |
| 11. UNEMPLOYMENT | | | | $0 |
| 12. REAL PROPERTY | $0 | $0 | $0 | $0 |
| 13. PERSONAL PROPERTY | | | | $0 |
| 14. OTHER (ATTACH LIST) | | | | $0 |
| 15. TOTAL STATE & LOCAL | $0 | $0 | $0 | $0 |
| 16. TOTAL TAXES | $0 | $0 | $0 | $0 |

1  The Debtor funds all state and federal employment taxes to Paylocity, who files all required federal and state related employment reports and withholdings.

2  Aging based on when management fee is due and payable.

3  All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process.

**Monthly Operating Report**
**ACCRUAL BASIS-5**

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

**MONTH:** January    2020

| BANK RECONCILIATIONS | | Account #1 | Account #2 | Account #3 | Account #4 | Account #5 | Account #6 | |
|---|---|---|---|---|---|---|---|---|
| A. | BANK: | BBVA Compass | East West Bank | East West Bank | Maxim Group | Jefferies LLC | Nexbank | TOTAL |
| B. | ACCOUNT NUMBER: | x6342 | x4686 | x4693 | x1885 | x0932 | x5891 | |
| C. | PURPOSE (TYPE): | Operating | Operating | Insurance | Brokerage | Brokerage | CD | |
| 1. | BALANCE PER BANK STATEMENT [1] | $        - | $   6,389,954 | $   382,809 | $   325,963 | $   410,108 | $   136,105 | $   7,644,939 |
| 2. | ADD: TOTAL DEPOSITS NOT CREDITED | | | | | | | $        - |
| 3. | SUBTRACT: OUTSTANDING CHECKS | | $        - | | | | | $        - |
| 4. | OTHER RECONCILING ITEMS | | | | | | | $        - |
| 5. | MONTH END BALANCE PER BOOKS | $        - | $   6,389,954 | $   382,809 | $   325,963 | $   410,108 | $   135,205 | $   7,644,939 |
| 6. | NUMBER OF LAST CHECK WRITTEN | 18133 | 100011 | n/a | n/a | n/a | n/a | |

| INVESTMENT ACCOUNTS | | | | | | |
|---|---|---|---|---|---|---|
| BANK, ACCOUNT NAME & NUMBER | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | | | CURRENT VALUE |
| 7. | | | | | | |
| 8. | | | | | | |
| 9. | | | | | | |
| 10. | | | | | | |
| 11.            TOTAL INVESTMENTS | | | $0 | | | $0 |

| CASH | |
|---|---|
| 12.            CURRENCY ON HAND | $0 |

| 13.            **TOTAL CASH - END OF MONTH** | $7,644,939 |
|---|---|

1    Account x6342 is now closed.

**Monthly Operating Report**
ACCRUAL BASIS-6

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

MONTH: _____January 2020_____

**PAYMENTS TO INSIDERS AND PROFESSIONALS**

| | INSIDERS | | | |
|---|---|---|---|---|
| | NAME | TYPE OF PAYMENT | AMOUNT PAID | TOTAL PAID POST PETITION |
| 1 | Frank Waterhouse | Salary | $29,167 | $102,083 |
| 2 | Frank Waterhouse | Expense Reimbursement | $334 | $1,842 |
| 3 | Scott Ellington | Salary | $37,500 | $131,250 |
| 4 | Scott Ellington | Expense Reimbursement | $144 | $2,177 |
| 5 | James Dondero | Salary | $12,784 | $129,972 |
| 6 | James Dondero | Expense Reimbursement [1] | $572 | $16,918 |
| 7 | Thomas Surgent | Salary | $33,333 | $116,667 |
| 8 | Thomas Surgent | Expense Reimbursement | $224 | $1,478 |
| 9 | Trey Parker | Salary | $29,167 | $102,083 |
| 10 | Trey Parker | Expense Reimbursement | $169 | $834 |
| | TOTAL PAYMENTS TO INSIDERS | | $143,393 | $605,304 |

[1] The total amount of reimbursements during the reporting month also included $49,940 for use of the credit card by the Debtor for office related expenses such as subscriptions, employee lunches, vending supplies, IT equipment/software, employee gifts/awards, non-employee related travel and training.

| | PROFESSIONALS [2] | | | | |
|---|---|---|---|---|---|
| | NAME | DATE OF COURT ORDER AUTHORIZING PAYMENT | AMOUNT APPROVED | AMOUNT PAID | TOTAL PAID TO DATE | TOTAL INCURRED & UNPAID |
| 1. | Pachulski Stang Ziehl & Jones LLP | 1/22/20 & 1/22/20 | $982,158 | $982,158 | $982,158 | $236,470 |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | TOTAL PAYMENTS TO PROFESSIONALS | | | $982,158 | $982,158 | $236,470 |

2 Does not include payments to ordinary course professionals.

**POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS**

| | NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POSTPETITION |
|---|---|---|---|---|
| 1. | Crescent TC Investors LP (rent portion only) | 130,364 | 130,364 | - |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | TOTAL | 130,364 | $130,364 | $0 |

<div align="right">

**Monthly Operating Report**

**ACCRUAL BASIS-7**

</div>

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

**MONTH:** January 2020

### QUESTIONNAIRE

| | | YES | NO |
|---|---|---|---|
| 1. | HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | x |
| 2. | HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | x | |
| 3. | ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES, OR LOANS) DUE FROM RELATED PARTIES? | x | |
| 4. | HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | x | |
| 5. | HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | x |
| 6. | ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | x |
| 7. | ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | x |
| 8. | ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | x |
| 9. | ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | x |
| 10. | ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | x |
| 11. | HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | x |
| 12. | ARE ANY WAGE PAYMENTS PAST DUE? | | x |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES," PROVIDE A DETAILED
EXPLANATION OF EACH ITEM. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| | |
|---|---|
| 2 | $15,004 of funds transferred from non-debtor-in-possession accounts to debtor-in-possession account. |
| 3 | Debtor generates fee income and other receipts from various related parties in normal course, see cash management motion for further discussion. |
| 4 | Payments have been made on prepetition liabilities, as approved in the critical vendor motion. |

### INSURANCE

| | | YES | NO |
|---|---|---|---|
| 1. | ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | x | |
| 2. | ARE ALL PREMIUM PAYMENTS PAID CURRENT? | x | |
| 3. | PLEASE ITEMIZE POLICIES BELOW. | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO," OR IF ANY POLICIES HAVE BEEN
CANCELLED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN EXPLANATION
BELOW. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| INSTALLMENT PAYMENTS | | | |
|---|---|---|---|
| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT 50

**Monthly Operating Report**
ACCRUAL BASIS

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

**JUDGE:** Stacey Jernigan

# UNITED STATES BANKRUPTCY COURT

# NORTHERN & EASTERN DISTRICTS OF TEXAS

# REGION 6

# MONTHLY OPERATING REPORT

**MONTH ENDING:**  February  2020
MONTH  YEAR

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT (ACCRUAL BASIS-1 THROUGH ACCRUAL BASIS-7) AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE. DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.

RESPONSIBLE PARTY:

_____  Chief Restructuring Officer
ORIGINAL SIGNATURE OF RESPONSIBLE PARTY  TITLE

Bradley Sharp
PRINTED NAME OF RESPONSIBLE PARTY  DATE

PREPARER:

_____  Chief Financial Officer
ORIGINAL SIGNATURE OF PREPARER  TITLE

Frank Waterhouse  03.31.20
PRINTED NAME OF PREPARER  DATE

**Monthly Operating Report**
**ACCRUAL BASIS-1**

| CASE NAME: | Highland Capital Management, LP |
| CASE NUMBER: | 19-12239-CSS |

**Comparative Balance Sheet**
(in thousands)

|  | 10/15/2019 | 12/31/2019 [6] | 1/31/2020 [6] | 2/29/2020 [6] |
|---|---|---|---|---|
| **Assets** | | | | |
| Cash and cash equivalents | 2,529 | 9,501 | 7,645 | 6,466 |
| Investments, at fair value [3] | 232,620 | 235,391 | 240,816 | 238,960 |
| Equity method investees [3] | 161,819 | 174,892 | 174,970 | 156,657 |
| Management and incentive fee receivable | 2,579 | 1,903 | 2,922 | 1,614 |
| Fixed assets, net | 3,754 | 3,521 | 3,441 | 3,363 |
| Due from affiliates [1] | 151,901 | 146,245 | 146,818 | 147,083 |
| Reserve against notes receivable | | (57,963) | (57,963) | (57,963) |
| Other assets | 11,311 | 11,480 | 11,430 | 11,162 |
| **Total assets** | **$ 566,513** | **$ 524,970** | **$ 530,079** | **$ 507,342** |
| | | | | |
| **Liabilities and Partners' Capital** | | | | |
| Pre-petition accounts payable [4] | 1,176 | 1,092 | 1,090 | 1,064 |
| Post-petition accounts payable [4] | - | 1,660 | 1,526 | 948 |
| Secured debt: | | | | |
| Frontier | 5,195 | 5,195 | 5,195 | 5,195 |
| Jefferies | 30,328 | 30,020 | 29,950 | 29,894 |
| Accrued expenses and other liabilities [4] | 59,203 | 63,336 | 64,131 | 63,289 |
| Accrued re-organization related fees [5] | - | 5,475 | 7,040 | 9,386 |
| Claim accrual [2] | 73,997 | 73,997 | 73,997 | 73,997 |
| Partners' capital | 396,614 | 344,195 | 347,150 | 323,569 |
| **Total liabilities and partners' capital** | **$ 566,513** | **$ 524,970** | **$ 530,079** | **$ 507,342** |

[1] Includes various notes receivable at carrying value, except note due from Hunter Mountain Investment Trust which is fully reserved against ($58M reserve). Fair value has not been determined with respect to any of the notes.

[2] Uncontested portion of Redeemer claim less appplicable offsets. Potential for additional liability based on future events. No interest has been accrued beyond petition date.

[3] Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

[4] Note on accruals: expenses recorded in Accounts Payable and Accrued Expenses and Other Liabilities reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices. For balance sheet dates other than the Petition Date, amounts include both pre-petition and post-petition liabilities.

[5] Beginning December 31st, 2019, Debtor accrued for post-petition re-organization fees based upon an estimate of fees incurred to date.

[6] All balances at December 31st, 2019 are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, balances for subsequent months have and will fluctuate.

<div align="right">

**Monthly Operating Report**
ACCRUAL BASIS-2

</div>

| CASE NAME: | Highland Capital Management, LP |
|---|---|
| CASE  NUMBER: | 19-12239-CSS |

### Income Statement [1]

(in thousands)

| | Filing to Year Ended [4] 2019 | Month ended [4] 1/31/2020 | Month ended [4] 2/29/2020 | Filing to date [4] |
|---|---|---|---|---|
| **Revenue:** | | | | |
| Management fees | 4,502 | 1,706 | 1,641 | 7,849 |
| Shared services fees | 1,588 | 646 | 593 | 2,827 |
| Other income | 1,582 | 172 | 472 | 2,226 |
| **Total operating revenue** | **7,672** | **2,524** | **2,706** | **12,902** |
| **Operating expenses:** | | | | |
| Compensation and benefits | 1,488 | 1,929 | 1,848 | 5,265 |
| Professional services | 823 | 86 | 187 | 1,096 |
| Investment research and consulting | 59 | 8 | 8 | 75 |
| Marketing and advertising expense | 370 | 37 | (15) | 392 |
| Depreciation expense | 244 | 79 | 79 | 402 |
| Bad debt expense reserve | 8,420 | - | - | 8,420 |
| Other operating expenses | 1,095 | 367 | 275 | 1,737 |
| **Total operating expenses** | **12,499** | **2,506** | **2,382** | **17,387** |
| **Operating income/(loss)** | **(4,827)** | **18** | **324** | **(4,485)** |
| **Other income/expense:** | | | | |
| Interest income | 1,230 | 495 | 463 | 2,188 |
| Interest expense | (346) | (114) | (108) | (568) |
| Reserve against notes receivable | (57,963) | - | - | (57,963) |
| Re-org related expenses [2] | (5,475) | (2,590) | (2,658) | (10,723) |
| Independent director fees [5] | - | (134) | (293) | (427) |
| Other income/expense | 32 | - | 11 | 43 |
| **Total other income/expense** | **(62,523)** | **(2,343)** | **(2,585)** | **(67,451)** |
| Net realized gains/(losses) on investments | 618 | 6 | - | 624 |
| Net change in unrealized gains/(losses) of investment [3] | 1,616 | 5,409 | (3,006) | 4,019 |
| | 2,234 | 5,416 | (3,006) | 4,643 |
| **Net earnings/(losses) from equity method investees [3]** | 12,833 | (136) | (18,313) | (5,616) |
| **Net income/(loss)** | **$ (52,283)** | **$ 2,955** | **$ (23,581)** | **$ (72,909)** |

(1) Note on accruals: expenses recorded in the Income Statement reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.

(2) Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed as of the petition date. At December 31st, 2019, Debtor accrued for post-petition re-organization fees based upon an estimate of fees incurred to date.

(3) Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

(4) All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, operating results will change as these entries

(5) Independent director fees are recognized when paid, please refer to Accrual Basis-3B for expense detail.

**Monthly Operating Report**
**ACCRUAL BASIS-3A**

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| CASH RECEIPTS AND DISBURSEMENTS | FILING TO YEAR END 2019 | JANUARY | FEBRUARY | MARCH | QUARTER |
|---|---|---|---|---|---|
| 1. CASH - BEGINNING OF MONTH [2] | $ 2,554,230 | $ 9,501,409 | $ 7,644,940 | | $ 9,501,409 |
| **RECEIPTS FROM OPERATIONS** | | | | | |
| 2. OTHER OPERATING RECEIPTS | $ 1,862,757 | $ 437,863 | $ 611,963 | | $ 1,049,826 |
| 3 MANAGEMENT FEES AND OTHER RELATED RECEIPTS | $ 3,156,742 | $ 1,149,280 | $ 4,383,115 | | $ 5,532,395 |
| **COLLECTION OF ACCOUNTS RECEIVABLE** | | | | | |
| 4 PREPETITION | $ 3,593,108 | $ - | $ - | | $ - |
| 5 POSTPETITION [1] | $ - | $ - | $ - | | $ - |
| 6 TOTAL OPERATING RECEIPTS | $ 8,612,608 | $ 1,587,143 | $ 4,995,078 | | $ 6,582,221 |
| **NON-OPERATING RECEIPTS** | | | | | |
| 7 THIRD PARTY FUND ACTUAL/EXPECTED DISTRIBUTIONS | $ 423,468 | $ - | $ 222,267 | | $ 222,267 |
| 8 DIVS, PAYDOWNS, MISC FROM INVESTMENT ASSETS | $ 1,338,069 | $ 80,114 | $ 191,642 | | $ 271,756 |
| 9 OTHER (ATTACH LIST) | $ 3,390,286 | $ 43,550 | $ - | | $ 43,550 |
| 10 TOTAL NON-OPERATING RECEIPTS | $ 5,151,822 | $ 123,664 | $ 413,909 | | $ 537,573 |
| 11 TOTAL RECEIPTS | $ 13,764,430 | $ 1,710,807 | $ 5,408,987 | | $ 7,119,794 |
| 12 TOTAL CASH AVAILABLE | | $ 11,212,217 | $ 13,053,927 | | |
| **OPERATING DISBURSEMENTS** | | | | | |
| 13 PAYROLL, BENEFITS, AND TAXES + EXP REIMB [3] | $ 3,776,446 | $ 1,483,225 | $ 3,394,787 | | $ 4,878,011 |
| 14 SINGAPORE SERVICE FEES | $ 95,118 | $ 32,607 | $ 25,522 | | $ 58,129 |
| 15 HCM LATIN AMERICA | $ 200,000 | $ 100,000 | $ - | | $ 100,000 |
| 16 THIRD PARTY FUND CAPITAL CALL OBLIGATION | $ 1,426,987 | $ - | $ 1,378,361 | | $ 1,378,361 |
| 17 UTILITIES | $ - | | | | $ - |
| 18 INSURANCE | $ - | | | | $ - |
| 19 INVENTORY PURCHASES | $ - | | | | $ - |
| 20 VEHICLE EXPENSES | $ - | | | | $ - |
| 21 TRAVEL | $ - | | | | $ - |
| 22 ENTERTAINMENT | $ - | | | | $ - |
| 23 REPAIRS & MAINTENANCE | $ - | | | | $ - |
| 24 SUPPLIES | $ - | | | | $ - |
| 25 ADVERTISING | $ - | | | | $ - |
| 26 OTHER (ATTACH LIST) | $ 1,318,700 | $ 792,268 | $ 1,183,911 | | $ 1,976,180 |
| 27 TOTAL OPERATING DISBURSEMENTS | $ 6,817,251 | $ 2,408,100 | $ 5,982,581 | | $ 8,390,682 |
| **REORGANIZATION EXPENSES** | | | | | |
| 28 PROFESSIONAL FEES | $ - | $ 1,025,308 | $ 243,795 | | $ 1,269,102 |
| 29 U.S. TRUSTEE FEES | $ - | | $ 68,173 | | $ 68,173 |
| 30 OTHER (ATTACH LIST) | $ - | $ 133,869 | $ 293,212 | | $ 427,081 |
| 31 TOTAL REORGANIZATION EXPENSES | $ - | $ 1,159,176 | $ 605,180 | | $ 1,764,356 |
| 32 TOTAL DISBURSEMENTS | $ 6,817,251 | $ 3,567,277 | $ 6,587,761 | | $ 10,155,038 |
| 33 NET CASH FLOW | $ 6,947,179 | $ (1,856,469) | $ (1,178,774) | | $ (3,035,244) |
| 34 CASH - END OF MONTH | $ 9,501,409 | $ 7,644,940 | $ 6,466,165 | | $ 6,466,165 |

1 All postpetition receipts are included in line 3, Management Fees and Other Related Receipts.

**Monthly Operating Report**
ACCRUAL BASIS-3B

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

**OPERATING DISBURSMENTS - OTHER**

| Date | Amount | Vendor |
|---|---|---|
| 2/5/2020 | 654.50 | PACER Service Center |
| 2/5/2020 | 1,319.76 | ProStar Services, Inc |
| 2/3/2020 | 158,760.94 | Crescent TC Investors LP |
| 2/3/2020 | 33,884.60 | Third Party Consultant |
| 2/4/2020 | 289.36 | AT&T |
| 2/5/2020 | 324,494.13 | S&P Global Market Intelligence LLC |
| 2/7/2020 | 11,975.30 | Flexential Colorado Corp |
| 2/7/2020 | 8,604.84 | Pershing LLC |
| 2/7/2020 | 3,573.58 | AT&T |
| 2/5/2020 | 12.00 | PACER Service Center |
| 2/4/2020 | 1.50 | Kaufman County Property Taxes |
| 2/4/2020 | 12,081.17 | Kaufman County Property Taxes |
| 2/5/2020 | 706.10 | Denton County Property Taxes |
| 2/11/2020 | 6,771.26 | Level 3 Communications |
| 2/14/2020 | 327,271.09 | Bloomberg Finance LP |
| 2/14/2020 | 48,145.61 | HE Fox Trails |
| 2/14/2020 | 22,726.00 | HE Asante |
| 2/14/2020 | 11,575.00 | 4CAST Inc. |
| 2/14/2020 | 10,335.00 | Delta Risk LLC |
| 2/14/2020 | 7,367.25 | Third Party Consultant |
| 2/14/2020 | 12.42 | Markit WSO Corporation |
| 2/14/2020 | 9,985.73 | Bloomberg Finance LP |
| 2/14/2020 | 59.01 | Markit WSO Corporation |
| 2/21/2020 | 2,439.85 | Gold's Gym International |
| 2/18/2020 | 964.72 | AT&T |
| 2/18/2020 | 4,479.65 | Thomson Reuters West |
| 2/19/2020 | 3,730.99 | LogMeIn USA, Inc. |
| 2/19/2020 | 1,997.44 | Zayo Group |
| 2/21/2020 | 263.81 | Directv |
| 2/21/2020 | 36,073.94 | Thomson Reuters Tax & Accounting |
| 2/21/2020 | 15,227.15 | GrubHub for Work |
| 2/21/2020 | 11,975.30 | Flexential Colorado Corp |
| 2/21/2020 | 3,373.98 | NYSE Market (DE), Inc. |
| 2/21/2020 | 7,401.14 | NYSE Market (DE), Inc. |
| 2/21/2020 | 7,995.00 | Intralinks Inc |
| 2/21/2020 | 4,016.75 | Oak Cliff Office Supply & Printing |
| 2/21/2020 | 1,362.00 | Ace Parking Lot 3749 |
| 2/21/2020 | 1,039.22 | Prostar Services Inc. |
| 2/21/2020 | 450.00 | Action Shred of Texas |
| 2/21/2020 | 42.22 | American Solutions for Business |
| 2/21/2020 | 6,395.02 | AT&T |
| 2/24/2020 | 298.00 | PCA Valet, INC |
| 2/25/2020 | 1,000.00 | ImageMAKER Development Inc. |
| 2/26/2020 | 19,902.98 | Compliance Science, Inc. |
| 2/26/2020 | 1,348.89 | CT Corporation System |
| 2/28/2020 | 31,277.58 | Third Party Consultant |
| 2/28/2020 | 11,607.49 | Third Party Consultant |
| 2/28/2020 | 6,254.37 | Payne & Smith LLC |
| 2/28/2020 | 2,387.73 | Prostar Services Inc. |
| | $ 1,183,911.37 | |

**REORGANIZATION EXPENSES - OTHER**

| Date | Amount | Description |
|---|---|---|
| 2/3/2020 | 70,000.00 | Dubel & Associates, LLC |
| 2/3/2020 | 70,000.00 | James P. Seery, Jr. |
| 2/3/2020 | 65,000.00 | Russell F. Nelms |
| 2/18/2020 | 10,800.13 | James P. Seery, Jr. |
| 2/24/2020 | 11,003.01 | Dubel & Associates, LLC |
| 2/28/2020 | 66,409.29 | Russell F. Nelms |
| | 293,212.43 | |

**Monthly Operating Report**
ACCRUAL BASIS-4

| CASE NAME: | Highland Capital Management |
| --- | --- |
| CASE NUMBER: | 19-34054 |

| MGMT FEE RECEIVABLE AGING [2] | November | December [3] | January [3] | February [3] |
| --- | --- | --- | --- | --- |
| 1. | 0-30 | $ 1,232,527 | $ 1,902,935 | $ 2,921,692 | $1,614,232 |
| 2. | 31-60 | | | | |
| 3. | 61-90 | | | | |
| 4. | 91+ | | | | |
| 5. | TOTAL MGMT FEE RECEIVABLE | $ 1,232,527 | $ 1,902,935 | $ 2,921,692 | $1,614,232 |
| 6. | AMOUNT CONSIDERED UNCOLLECTIBLE | | | | |
| 7. | MGMT FEE RECEIVABLE (NET) | $ 1,232,527 | $ 1,902,935 | $ 2,921,692 | $1,614,232 |

| AGING OF POSTPETITION TAXES AND PAYABLES | | MONTH: | February 2020 | | |
| --- | --- | --- | --- | --- | --- |
| **TAXES PAYABLE** | 0-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS | TOTAL |
| 1. FEDERAL | | | | | $0 |
| 2. STATE | | | | | $0 |
| 3. LOCAL | | | | | $0 |
| 4. OTHER (ATTACH LIST) | | | | | $0 |
| 5. TOTAL TAXES PAYABLE | $0 | $0 | $0 | $0 | $0 |
| | | | | | |
| 6. ACCOUNTS PAYABLE | $654,833 | $110,059 | $20,750 | $162,608 | $948,249 |

| STATUS OF POSTPETITION TAXES [1] | | MONTH: | February 2020 | |
| --- | --- | --- | --- | --- |
| **FEDERAL** | BEGINNING TAX LIABILITY | AMOUNT WITHHELD AND/ OR ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY |
| 1. WITHHOLDING | | | | $0 |
| 2. FICA-EMPLOYEE | | | | $0 |
| 3. FICA-EMPLOYER | | | | $0 |
| 4. UNEMPLOYMENT | | | | $0 |
| 5. INCOME | | | | $0 |
| 6. OTHER (ATTACH LIST) | | | | $0 |
| 7. TOTAL FEDERAL TAXES | $0 | $0 | $0 | $0 |
| **STATE AND LOCAL** | | | | |
| 8. WITHHOLDING | | | | $0 |
| 9. SALES | | | | $0 |
| 10. EXCISE | | | | $0 |
| 11. UNEMPLOYMENT | | | | $0 |
| 12. REAL PROPERTY | $0 | $0 | $0 | $0 |
| 13. PERSONAL PROPERTY | | | | $0 |
| 14. OTHER (ATTACH LIST) | | | | $0 |
| 15. TOTAL STATE & LOCAL | $0 | $0 | $0 | $0 |
| 16. TOTAL TAXES | $0 | $0 | $0 | $0 |

1 The Debtor funds all state and federal employment taxes to Paylocity, who files all required federal and state related employment reports and withholdings.
2 Aging based on when management fee is due and payable.
3 All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process.

**Monthly Operating Report**
ACCRUAL BASIS-5

| CASE NAME: | Highland Capital Management |
| --- | --- |
| CASE NUMBER: | 19-34054 |

**MONTH:** February 2020

### BANK RECONCILIATIONS

| | | Account #2 | Account #3 | Account #4 | Account #5 | Account #6 | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| A. | BANK: | East West Bank | East West Bank | Maxim Group | Jefferies LLC | Nexbank | |
| B. | ACCOUNT NUMBER: | x4686 | x4693 | x1885 | x0932 | x5891 | TOTAL |
| C. | PURPOSE (TYPE): | Operating | Insurance | Brokerage | Brokerage | CD | |
| 1. | BALANCE PER BANK STATEMENT [1] | $ 5,311,925 | $ 204,208 | $ 406,259 | $ 410,108 | $ 136,105 | $ 6,468,605 |
| 2. | ADD: TOTAL DEPOSITS NOT CREDITED | | | | | | $ - |
| 3. | SUBTRACT: OUTSTANDING CHECKS | $ 2,440 | | | | | $ 2,440 |
| 4. | OTHER RECONCILING ITEMS | | | | | | $ - |
| 5. | MONTH END BALANCE PER BOOKS | $ 5,309,485 | $ 204,208 | $ 406,259 | $ 410,108 | $ 135,205 | $ 6,466,165 |
| 6. | NUMBER OF LAST CHECK WRITTEN | 100016 | n/a | n/a | n/a | n/a | |

### INVESTMENT ACCOUNTS

| | BANK, ACCOUNT NAME & NUMBER | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | | | CURRENT VALUE |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 7. | | | | | | | |
| 8. | | | | | | | |
| 9. | | | | | | | |
| 10. | | | | | | | |
| 11. | TOTAL INVESTMENTS | | | $0 | | | $0 |

### CASH

| | | |
| --- | --- | --- |
| 12. | CURRENCY ON HAND | $0 |

| | | |
| --- | --- | --- |
| 13. | TOTAL CASH - END OF MONTH | $6,466,165 |

1  Account x6342 is now closed.

**Monthly Operating Report**
ACCRUAL BASIS-6

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

MONTH: _____ February 2020 _____

**PAYMENTS TO INSIDERS AND PROFESSIONALS**

| | INSIDERS | | | |
|---|---|---|---|---|
| | NAME | TYPE OF PAYMENT | AMOUNT PAID | TOTAL PAID POST PETITION |
| 1 | Frank Waterhouse | Salary | $29,167 | $131,250 |
| 2 | Frank Waterhouse | Expense Reimbursement | $320 | $2,163 |
| 3 | Scott Ellington | Salary | $37,500 | $168,750 |
| 4 | Scott Ellington | Expense Reimbursement | $1,531 | $3,708 |
| 5 | James Dondero | Salary | $0 | $129,972 |
| 6 | James Dondero | Expense Reimbursement [1] | $0 | $16,918 |
| 7 | Thomas Surgent | Salary | $33,333 | $150,000 |
| 8 | Thomas Surgent | Expense Reimbursement | $236 | $1,714 |
| 9 | Trey Parker | Salary | $29,167 | $131,250 |
| 10 | Trey Parker | Expense Reimbursement | $5,233 | $6,067 |
| | TOTAL PAYMENTS TO INSIDERS | | $136,487 | $741,791 |

[1] The total amount of reimbursements during the reporting month also included $36,225 for use of the credit card by the Debtor for office related expenses such as subscriptions, employee lunches, vending supplies, IT equipment/software, employee gifts/awards, non-employee related travel and marketing. An additional $9,359 was paid for meals and entertainment, but this $9,359 amount was reimbursed to the Debtor on 3/27/2020.

| | PROFESSIONALS [2] | | | | |
|---|---|---|---|---|---|
| | NAME | DATE OF COURT ORDER AUTHORIZING PAYMENT | AMOUNT APPROVED | AMOUNT PAID | TOTAL PAID TO DATE | TOTAL INCURRED & UNPAID |
| 1. | Development Specialists, Inc. | N/A | N/A | $243,795 | $243,795 | $0 |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | TOTAL PAYMENTS TO PROFESSIONALS | | | $243,795 | $243,795 | $0 |

[2] Does not include payments to ordinary course professionals.

**POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS**

| | NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POSTPETITION |
|---|---|---|---|---|
| 1. | Crescent TC Investors LP (rent portion only) | 130,364 | 130,364 | - |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | TOTAL | 130,364 | $130,364 | $0 |

**Monthly Operating Report**
ACCRUAL BASIS-7

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

MONTH:  February 2020

**QUESTIONNAIRE**

| | | YES | NO |
|---|---|---|---|
| 1. | HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | x |
| 2. | HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | | x |
| 3. | ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES, OR LOANS) DUE FROM RELATED PARTIES? | x | |
| 4. | HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | x | |
| 5. | HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | x |
| 6. | ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | x |
| 7. | ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | x |
| 8. | ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | x |
| 9. | ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | x |
| 10. | ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | x |
| 11. | HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | x |
| 12. | ARE ANY WAGE PAYMENTS PAST DUE? | | x |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES," PROVIDE A DETAILED EXPLANATION OF EACH ITEM. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| 3 | Debtor generates fee income and other receipts from various related parties in normal course, see cash management motion for further discussion. |
|---|---|
| 4 | Payments have been made on prepetition liabilities, as approved in the critical vendor motion. |

**INSURANCE**

| | | YES | NO |
|---|---|---|---|
| 1. | ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | x | |
| 2. | ARE ALL PREMIUM PAYMENTS PAID CURRENT? | x | |
| 3. | PLEASE ITEMIZE POLICIES BELOW. | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO," OR IF ANY POLICIES HAVE BEEN CANCELLED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN EXPLANATION BELOW.  ATTACH ADDITIONAL SHEETS IF NECESSARY.

| INSTALLMENT PAYMENTS | | | |
|---|---|---|---|
| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT 51

Case 21-03005-sgj Doc 28 Filed 05/24/21 Entered 05/24/21 10:22:39 Page 476 of 600
Case 19-34054-sgj11 Doc 634 Filed 05/1

Docket #0634  Date Filed: 05/14/2020

**Monthly Operating Report**
ACCRUAL BASIS

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

**JUDGE:** Stacey Jernigan

# UNITED STATES BANKRUPTCY COURT

# NORTHERN & EASTERN DISTRICTS OF TEXAS

# REGION 6

# MONTHLY OPERATING REPORT

**MONTH ENDING:**  March  2020
MONTH  YEAR

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT (ACCRUAL BASIS-1 THROUGH ACCRUAL BASIS-7) AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE. DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.

RESPONSIBLE PARTY:

| ORIGINAL SIGNATURE OF RESPONSIBLE PARTY | Chief Restructuring Officer |
|---|---|
| | TITLE |

| Bradley Sharp | 5/13/2020 |
|---|---|
| PRINTED NAME OF RESPONSIBLE PARTY | DATE |

PREPARER:

| ORIGINAL SIGNATURE OF PREPARER | Chief Financial Officer |
|---|---|
| | TITLE |

| Frank Waterhouse | 5/13/2020 |
|---|---|
| PRINTED NAME OF PREPARER | DATE |

1934054200514000000000001

**Monthly Operating Report**
**ACCRUAL BASIS-1**

| CASE NAME: | Highland Capital Management, LP |
|---|---|
| CASE NUMBER: | 19-12239-CSS |

**Comparative Balance Sheet**
(in thousands)

| | 10/15/2019 | 12/31/2019 [6] | 3/31/2020 [6] |
|---|---|---|---|
| **Assets** | | | |
| Cash and cash equivalents | 2,529 | 9,501 | 12,532 |
| Investments, at fair value [3] | 232,620 | 234,021 | 122,166 |
| Equity method investees [3] | 161,819 | 174,892 | 87,635 |
| Management and incentive fee receivable | 2,579 | 1,903 | 1,685 |
| Fixed assets, net | 3,754 | 3,521 | 3,285 |
| Due from affiliates [1] | 151,901 | 146,245 | 147,219 |
| Reserve against notes recievable | | (57,963) | (57,963) |
| Other assets | 11,311 | 11,312 | 32,429 |
| **Total assets** | $ 566,513 | $ 523,432 | $ 348,988 |
| | | | |
| **Liabilities and Partners' Capital** | | | |
| Pre-petition accounts payable [4] | 1,176 | 1,073 | 1,037 |
| Post-petition accounts payable [4] | - | 1,722 | 727 |
| Secured debt: | | | |
| Frontier | 5,195 | 5,195 | 5,195 |
| Jefferies | 30,328 | 30,020 | 18,716 |
| Accrued expenses and other liabilities [4] | 59,203 | 63,336 | 59,374 |
| Accrued re-organization related fees [5] | - | 5,313 | 7,989 |
| Claim accrual [2] | 73,997 | 73,997 | 73,997 |
| Partners' capital | 396,614 | 342,776 | 181,954 |
| **Total liabilities and partners' capital** | $ 566,513 | $ 523,432 | $ 348,988 |

---

[1] Includes various notes receivable at carrying value, except note due from Hunter Mountain Investment Trust which is fully reserved against ($58M reserve). Fair value has not been determined with respect to any of the notes.

[2] Uncontested portion of Redeemer claim less appplicable offsets. Potential for additional liability based on future events. No interest has been accrued beyond petition date.

[3] Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Limited partnership interests normally marked to a NAV statement have been updated based upon the most recent statement available, or marked to an estimate to the extent available.

[4] Note on accruals: expenses recorded in Accounts Payable and Accrued Expenses and Other Liabilities reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices. For balance sheet dates other than the Petition Date, amounts include both pre-petition and post-petition liabilities.

[5] Beginning December 31st, 2019, Debtor accrued for post-petition re-organization fees based upon an estimate of fees incurred to date.

[6] All balances at December 31st, 2019 are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, balances for subsequent months have and will fluctuate.

**Monthly Operating Report**

ACCRUAL BASIS-2

| CASE NAME: | Highland Capital Management, LP |
| --- | --- |
| | |
| CASE NUMBER: | 19-12239-CSS |

**Income Statement** [1]

(in thousands)

| | Date | Filing to Year Ended [4] | Month ended [4] | Month ended [4] | Month ended [4] | Filing to date [4] |
| --- | --- | --- | --- | --- | --- | --- |
| | 10/16/19 - 10/31/19 | 2019 | 1/31/2020 | 2/29/2020 | 3/31/2020 | |
| **Revenue:** | | | | | | |
| Management fees | 975 | 4,502 | 1,706 | 1,641 | 1,892 | 9,741 |
| Shared services fees | 283 | 1,588 | 646 | 593 | 603 | 3,431 |
| Other income | 99 | 1,582 | 172 | 472 | 448 | 2,673 |
| **Total operating revenue** | 1,357 | 7,672 | 2,524 | 2,706 | 2,944 | 15,845 |
| **Operating expenses:** | | | | | | |
| Compensation and benefits [6] | 997 | 1,498 | 1,934 | 1,960 | (343) | 5,050 |
| Professional services | 256 | 824 | 105 | 324 | 385 | 1,638 |
| Investment research and consulting | 10 | 266 | 8 | 8 | 271 | 553 |
| Marketing and advertising expense | - | 370 | 37 | (15) | 8 | 401 |
| Depreciation expense | 82 | 244 | 79 | 79 | 78 | 479 |
| Bad debt expense reserve | - | 8,410 | - | - | - | 8,410 |
| Other operating expenses | 201 | 1,098 | 417 | 309 | 412 | 2,236 |
| **Total operating expenses** | 1,545 | 12,710 | 2,580 | 2,665 | 811 | 18,766 |
| **Operating income/(loss)** | (188) | (5,039) | (57) | 41 | 2,133 | (2,921) |
| **Other income/expense:** | | | | | | |
| Interest income | 250 | 1,230 | 495 | 463 | 492 | 2,680 |
| Interest expense | (107) | (346) | (114) | (108) | (94) | (661) |
| Reserve against notes receivable | - | (57,963) | - | - | - | (57,963) |
| Re-org related expenses [2] | - | (5,313) | (3,517) | (2,936) | (1,752) | (13,518) |
| Independent director fees [5] | - | - | (134) | (293) | (288) | (715) |
| Other income/expense | 32 | 32 | - | 11 | (130) | (87) |
| **Total other income/expense** | 175 | (62,361) | (3,270) | (2,863) | (1,772) | (70,265) |
| Net realized gains/(losses) on investments | 339 | 618 | 6 | - | (8,139) | (7,515) |
| Net change in unrealized gains/(losses) of investments [3] | 2,654 | 247 | 5,409 | (3,006) | (61,883) | (59,233) |
| | 2,993 | 865 | 5,416 | (3,006) | (70,022) | (66,748) |
| **Net earnings/(losses) from equity method investees** [3] | (20) | 12,833 | 1,953 | (18,313) | (68,974) | (74,590) |
| **Net income/(loss)** | $ 2,959 | $ (53,702) | $ 1,953 | $ (24,141) | $ (138,634) | $ (214,524) |

(1) Note on accruals: expenses recorded in the Income Statement reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.

(2) Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed as of the petition date.

(3) Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Limited partnership interests normally marked to a NAV statement have been updated based upon the most recent statement available, or marked to an estimate to the extent available.

(4) All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, operating results will change as these entries are made.

(5) Independent director fees are recognized when paid, please refer to Accrual Basis-3B for expense detail.

(6) This line item includes accruals for various deferred compensation awards, which are tracked and marked to various funds' performance. Due to market volatility, some months experience a negative expense accrual

<div align="right">

**Monthly Operating Report**
**ACCRUAL BASIS-3A**

</div>

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| CASH RECEIPTS AND DISBURSEMENTS | FILING TO YEAR END 2019 | JANUARY | FEBRUARY | MARCH | QUARTER |
|---|---|---|---|---|---|
| 1. CASH - BEGINNING OF MONTH | $ 2,554,230 | $ 9,501,409 | $ 7,644,940 | $ 6,466,165 | $ 9,501,409 |
| **RECEIPTS FROM OPERATIONS** | | | | | |
| 2. OTHER OPERATING RECEIPTS | $ 1,862,757 | $ 437,863 | $ 611,963 | $ 329,512 | $ 1,379,338 |
| 3 MANAGEMENT FEES AND OTHER RELATED RECEIPTS | $ 3,156,742 | $ 1,149,280 | $ 4,383,115 | $ 2,022,902 | $ 7,555,297 |
| **COLLECTION OF ACCOUNTS RECEIVABLE** | | | | | |
| 4 PREPETITION | $ 3,593,108 | $ - | $ - | $ 76,569 | $ 76,569 |
| 5 POSTPETITION [1] | $ - | $ - | $ - | $ - | $ - |
| 6 TOTAL OPERATING RECEIPTS | $ 8,612,608 | $ 1,587,143 | $ 4,995,078 | $ 2,428,983 | $ 9,011,204 |
| **NON-OPERATING RECEIPTS** | | | | | |
| 7 THIRD PARTY FUND ACTUAL/EXPECTED DISTRIBUTIONS | $ 423,468 | $ - | $ 222,267 | $ 18,770,519 | $ 18,992,786 |
| 8 DIVS, PAYDOWNS, MISC FROM INVESTMENT ASSETS | $ 1,338,069 | $ 80,114 | $ 191,642 | $ 205,723 | $ 477,479 |
| 9 OTHER (ATTACH LIST) | $ 3,390,286 | $ 43,550 | $ - | $ 1,363,553 | $ 1,407,103 |
| 10 TOTAL NON-OPERATING RECEIPTS | $ 5,151,822 | $ 123,664 | $ 413,909 | $ 20,339,796 | $ 20,877,369 |
| 11 TOTAL RECEIPTS | $ 13,764,430 | $ 1,710,807 | $ 5,408,987 | $ 22,768,779 | $ 29,888,573 |
| 12 TOTAL CASH AVAILABLE | | 11,212,217 | 13,053,927 | 29,234,944 | |
| **OPERATING DISBURSEMENTS** | | | | | |
| 13 PAYROLL, BENEFITS, AND TAXES + EXP REIMB | $ 3,776,446 | $ 1,483,225 | $ 3,394,787 | $ 3,947,030 | $ 8,825,042 |
| 14 SINGAPORE SERVICE FEES | $ 95,118 | $ 32,607 | $ 25,522 | $ - | $ 58,129 |
| 15 HCM LATIN AMERICA | $ 200,000 | $ 100,000 | $ - | $ - | $ 100,000 |
| 16 THIRD PARTY FUND CAPITAL CALL OBLIGATION | $ 1,426,987 | $ - | $ 1,378,361 | $ 6,434,108 | $ 7,812,469 |
| 17 UTILITIES | $ - | | | | |
| 18 INSURANCE | $ - | | | $ 533,940 | $ 533,940 |
| 19 INVENTORY PURCHASES | $ - | | | | |
| 20 VEHICLE EXPENSES | $ - | | | | $ - |
| 21 TRAVEL | $ - | | | | $ - |
| 22 ENTERTAINMENT | $ - | | | | $ - |
| 23 REPAIRS & MAINTENANCE | $ - | | | | $ - |
| 24 SUPPLIES | $ - | | | | $ - |
| 25 ADVERTISING | $ - | | | | $ - |
| 26 OTHER (ATTACH LIST) | $ 1,318,700 | $ 792,268 | $ 1,183,911 | $ 1,307,718 | $ 3,283,898 |
| 27 TOTAL OPERATING DISBURSEMENTS | $ 6,817,251 | $ 2,408,100 | $ 5,982,581 | $ 12,222,797 | $ 20,613,478 |
| **REORGANIZATION EXPENSES** | | | | | |
| 28 PROFESSIONAL FEES | $ - | $ 1,025,308 | $ 243,795 | $ 4,191,444 | $ 5,460,546 |
| 29 U.S. TRUSTEE FEES | $ - | | $ 68,173 | $ - | $ 68,173 |
| 30 OTHER (ATTACH LIST) | $ - | $ 133,869 | $ 293,212 | $ 288,236 | $ 715,317 |
| 31 TOTAL REORGANIZATION EXPENSES | $ - | $ 1,159,176 | $ 605,180 | $ 4,479,680 | $ 6,244,037 |
| 32 TOTAL DISBURSEMENTS | $ 6,817,251 | $ 3,567,277 | $ 6,587,761 | $ 16,702,477 | $ 26,857,515 |
| 33 NET CASH FLOW | $ 6,947,179 | $ (1,856,469) | $ (1,178,774) | $ 6,066,302 | $ 3,031,058 |
| 34 CASH - END OF MONTH | $ 9,501,409 | $ 7,644,940 | $ 6,466,165 | $ 12,532,467 | $ 12,532,467 |

1   All postpetition receipts are included in line 3, Management Fees and Other Related Receipts.

**Monthly Operating Report**
ACCRUAL BASIS-3B

| CASE NAME: | Highland Capital Management |
| CASE NUMBER: | 19-34054 |

**NON-OPERATING RECEIPTS - OTHER**

| Date | Amount | Type |
|---|---|---|
| 3/18/2002 | 1,363,553.44 | Loan Repyament |

**OPERATING DISBURSMENTS - OTHER**

| Date | Amount | Vendor |
|---|---|---|
| 3/2/2020 | 159,064.83 | Crescent TC Investors LP |
| 3/4/2020 | 290.75 | AT&T |
| 3/4/2020 | 20,371.06 | Liberty Life Assurance Co of Boston |
| 3/6/2020 | 7,253.30 | Chick-fil-A |
| 3/6/2020 | 183,346.70 | Siepe Services LLC |
| 3/6/2020 | 51,677.01 | Flamingo Vegas Holdco LLC |
| 3/6/2020 | 50,217.02 | HE Asante |
| 3/6/2020 | 22,519.69 | GrubHub for Work |
| 3/6/2020 | 18,042.03 | Siepe Software LLC |
| 3/6/2020 | 14,154.02 | Willis of Texas, Inc. |
| 3/6/2020 | 11,535.21 | Flexential Colorado Corp |
| 3/6/2020 | 11,167.14 | Compass Group USA dba Canteen |
| 3/6/2020 | 4,906.69 | Canteen |
| 3/6/2020 | 3,035.59 | Arkadin Inc |
| 3/6/2020 | 195.39 | Arkadin Inc |
| 3/6/2020 | 2,361.99 | Pershing LLC |
| 3/6/2020 | 2,316.94 | Thomson Reuters West |
| 3/6/2020 | 1,534.00 | Ace Parking Lot 3749 |
| 3/6/2020 | 689.31 | CDW Direct LLC |
| 3/6/2020 | 450.00 | Action Shred of Texas |
| 3/6/2020 | 267.93 | Secured Access Systems, LLC |
| 3/9/2020 | 299.00 | Franke Coffee Systems Americas, LLC |
| 3/9/2020 | 1,145.75 | Pitney Bowes |
| 3/9/2020 | 548.83 | Pitney Bowes |
| 3/10/2020 | 6,233.56 | TW Telecom |
| 3/10/2020 | 3,573.58 | AT&T |
| 3/11/2020 | 1,189.30 | Xerox |
| 3/11/2020 | 116,600.00 | Third Party Consultant |
| 3/11/2020 | 27,000.00 | Third Party Consultant |
| 3/11/2020 | 27,000.00 | Third Party Consultant |
| 3/16/2020 | 727.26 | AT&T |
| 3/17/2020 | 1,997.44 | Zayo Group |
| 3/18/2020 | 848.34 | AT&T |
| 3/20/2020 | 33,884.91 | Bruchou |
| 3/20/2020 | 24,862.72 | CDW Direct |
| 3/20/2020 | 24,144.90 | Portfolio Media |
| 3/20/2020 | 20,240.75 | Canteen |
| 3/20/2020 | 18,042.03 | Siepe Software |
| 3/20/2020 | 4,708.08 | DTCC |
| 3/20/2020 | 5,007.18 | DTCC |
| 3/20/2020 | 2,488.03 | Verity |
| 3/20/2020 | 7,092.89 | Verity |
| 3/20/2020 | 8,378.68 | Advent Software |
| 3/20/2020 | 4,752.72 | Venture Mechanical |
| 3/20/2020 | 1,492.73 | UPS |
| 3/20/2020 | 1,188.00 | Total Uptime |
| 3/20/2020 | 772.91 | Connex |
| 3/20/2020 | 6,254.21 | AT&T |
| 3/20/2020 | 1,087.85 | Xerox |
| 3/23/2020 | 4,975.90 | ASW Law |
| 3/23/2020 | 34,064.40 | Meta-e |
| 3/23/2020 | 40,115.00 | Carey Olsen |
| 3/23/2020 | 75,004.87 | Hunton Andrews Kurth |
| 3/23/2020 | 263.81 | DIRECTV |
| 3/25/2020 | 40.00 | FINRA |
| 3/25/2020 | 225.00 | FINRA |
| 3/26/2020 | 106.79 | Deluxe |
| 3/27/2020 | 1,368.29 | Compliance Science, Inc. |
| 3/27/2020 | 2,206.62 | Salesforce.com Inc |
| 3/27/2020 | 11,261.87 | Hedgeye Risk Mgmt, LLC |
| 3/27/2020 | 13,271.70 | Refinitiv US LLC |
| 3/27/2020 | 23,539.04 | ABM |
| 3/27/2020 | 53,309.06 | CDW Direct LLC |
| 3/27/2020 | 95,000.00 | Guidepoint Global, LLC |
| 3/31/2020 | 36,007.88 | Third Party Consultant |
| | $ 1,307,718.48 | |

**REORGANIZATION EXPENSES - OTHER**

| Date | Amount | Description |
|---|---|---|
| 3/2/2020 | 62,374.52 | Dubel & Associates, LLC |
| 3/2/2020 | 61,562.30 | James P. Seery, Jr. |
| 3/31/2020 | 53,803.32 | James P. Seery, Jr. |
| 3/31/2020 | 54,953.64 | Dubel & Associates, LLC |
| 3/31/2020 | 55,542.59 | Russell F. Nelms |
| | 288,236.37 | |

**Monthly Operating Report**
**ACCRUAL BASIS-4**

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| MGMT FEE RECEIVABLE AGING [2] | | December [3] | January [3] | February [3] | March [3] |
|---|---|---|---|---|---|
| 1. | 0-30 | $ 1,902,935 | $ 2,921,692 | $ 1,614,232 | $1,685,109 |
| 2. | 31-60 | | | | |
| 3. | 61-90 | | | | |
| 4. | 91+ | | | | |
| 5. | TOTAL MGMT FEE RECEIVABLE | $ 1,902,935 | $ 2,921,692 | $ 1,614,232 | $1,685,109 |
| 6. | AMOUNT CONSIDERED UNCOLLECTIBLE | | | | |
| 7. | MGMT FEE RECEIVABLE (NET) | $ 1,902,935 | $ 2,921,692 | $ 1,614,232 | $1,685,109 |

| AGING OF POSTPETITION TAXES AND PAYABLES | | | MONTH: | March 2020 | |
|---|---|---|---|---|---|
| TAXES PAYABLE | 0-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS | TOTAL |
| 1. FEDERAL | | | | | $0 |
| 2. STATE | | | | | $0 |
| 3. LOCAL | | | | | $0 |
| 4. OTHER (ATTACH LIST) | | | | | $0 |
| 5. TOTAL TAXES PAYABLE | $0 | $0 | $0 | $0 | $0 |
| | | | | | |
| 6. ACCOUNTS PAYABLE | $379,444 | $152,828 | $20,527 | $174,257 | $727,056 |

| STATUS OF POSTPETITION TAXES [1] | | | MONTH: | March 2020 | |
|---|---|---|---|---|---|
| FEDERAL | BEGINNING TAX LIABILITY | AMOUNT WITHHELD AND/0R ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY |
| 1. WITHHOLDING | | | | $0 |
| 2. FICA-EMPLOYEE | | | | $0 |
| 3. FICA-EMPLOYER | | | | $0 |
| 4. UNEMPLOYMENT | | | | $0 |
| 5. INCOME | | | | $0 |
| 6. OTHER (ATTACH LIST) | | | | $0 |
| 7. TOTAL FEDERAL TAXES | $0 | $0 | $0 | $0 |
| STATE AND LOCAL | | | | |
| 8. WITHHOLDING | | | | $0 |
| 9. SALES | | | | $0 |
| 10. EXCISE | | | | $0 |
| 11. UNEMPLOYMENT | | | | $0 |
| 12. REAL PROPERTY | $0 | $0 | $0 | $0 |
| 13. PERSONAL PROPERTY | | | | $0 |
| 14. OTHER (ATTACH LIST) | | | | $0 |
| 15. TOTAL STATE & LOCAL | $0 | $0 | $0 | $0 |
| 16. TOTAL TAXES | $0 | $0 | $0 | $0 |

1 The Debtor funds all state and federal employment taxes to Paylocity, who files all required federal and state related employment reports and withholdings.
2 Aging based on when management fee is due and payable.
3 All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process.

**Monthly Operating Report**
ACCRUAL BASIS-5

| CASE NAME: | Highland Capital Management |
| --- | --- |
| CASE NUMBER: | 19-34054 |

**MONTH:** March 2020

**BANK RECONCILIATIONS**

| | | Account #1 | Account #2 | Account #3 | Account #4 | Account #5 | Account #6 | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| A. | BANK: | East West Bank | East West Bank | Maxim Group | Jefferies LLC | Nexbank | East West Bank | TOTAL |
| B. | ACCOUNT NUMBER: | x4686 | x4693 | x1885 | x0932 | x5891 | x5848 | |
| C. | PURPOSE (TYPE): | Operating | Insurance | Brokerage | Brokerage | CD | Prepaid Card | |
| 1. | BALANCE PER BANK STATEMENT [1] | $ 11,607,784 | $ 75,623 | $ 612,046 | $ - | $ 137,009 | $ 100,004 | $ 12,532,467 |
| 2. | ADD: TOTAL DEPOSITS NOT CREDITED | | | | | | | $ - |
| 3. | SUBTRACT: OUTSTANDING CHECKS | | | | | | | $ - |
| 4. | OTHER RECONCILING ITEMS | | | | | | | $ - |
| 5. | MONTH END BALANCE PER BOOKS | $ 11,607,784 | $ 75,623 | $ 612,046 | $ - | $ 137,009 | $ 100,004 | $ 12,532,467 |
| 6. | NUMBER OF LAST CHECK WRITTEN | 100018 | n/a | n/a | n/a | n/a | n/a | |

**INVESTMENT ACCOUNTS**

| | BANK, ACCOUNT NAME & NUMBER | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | | | | CURRENT VALUE |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 7. | | | | | | | | |
| 8. | | | | | | | | |
| 9. | | | | | | | | |
| 10. | | | | | | | | |
| 11. | TOTAL INVESTMENTS | | | $0 | | | | $0 |

**CASH**

| | | |
| --- | --- | --- |
| 12. | CURRENCY ON HAND | $0 |

| | | |
| --- | --- | --- |
| 13. | **TOTAL CASH - END OF MONTH** | $12,532,467 |

1   Account x6342 is now closed.

**Monthly Operating Report**
ACCRUAL BASIS-6

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

MONTH: _____ March 2020 _____

## PAYMENTS TO INSIDERS AND PROFESSIONALS

| | INSIDERS | | | |
|---|---|---|---|---|
| | NAME | TYPE OF PAYMENT | AMOUNT PAID | TOTAL PAID POST PETITION |
| 1 | Frank Waterhouse | Salary | $29,167 | $160,417 |
| 2 | Frank Waterhouse | Expense Reimbursement | $414 | $2,577 |
| 3 | Scott Ellington | Salary | $37,500 | $206,250 |
| 4 | Scott Ellington | Expense Reimbursement | $84 | $3,792 |
| 5 | James Dondero | Salary | $0 | $129,972 |
| 6 | James Dondero | Expense Reimbursement [1] | $0 | $16,918 |
| 7 | Thomas Surgent | Salary | $33,333 | $183,333 |
| 8 | Thomas Surgent | Expense Reimbursement | $293 | $2,007 |
| 9 | Trey Parker | Salary | $0 | $131,250 |
| 10 | Trey Parker | Expense Reimbursement | $145 | $6,212 |
| | TOTAL PAYMENTS TO INSIDERS | | $100,936 | $842,727 |

[1] The total amount of reimbursements during the reporting month also included $11,732 for use of the credit card by the Debtor for office related expenses such as employee lunches, vending supplies, and IT equipment/software. An additional $474 was paid for meals and entertainment, but this $474 amount was reimbursed to the Debtor on 4/29/2020.

| | PROFESSIONALS [2] | | | | | |
|---|---|---|---|---|---|---|
| | NAME | DATE OF MONTHLY FEE APPLICATION | AMOUNT APPROVED | AMOUNT PAID | TOTAL PAID TO DATE | TOTAL INCURRED & UNPAID |
| 1. | Kurtzman Carson Consultants LLC | Oct 19, Nov 19, Dec 19, Jan 19 | $214,005 | $214,005 | $214,005 | $153,979 |
| 2. | Sidley Austin LLP | Nov 19 & Dec 19 | $1,538,374 | $1,538,374 | $1,538,374 | $2,283,291 |
| 3. | Young Conaway Stargatt & Taylor LLP | Nov 19 | $281,156 | $281,156 | $281,156 | $0 |
| 4. | FTI Consulting, Inc. | Nov 19 & Dec 19 | $620,133 | $620,133 | $620,133 | $734,998 |
| 5. | Pachulski Stang Ziehl & Jones LLP | Dec 19 & Jan 20 | $1,245,342 | $1,245,342 | $2,227,499 | $1,963,793 |
| 6 | Hayward & Associates PLLC | Dec 19 | $15,037 | $15,037 | $15,037 | $160,702 |
| 7 | Development Specialists, Inc. | N/A | $277,398 | $277,398 | $804,683 | $0 |
| 8 | TOTAL PAYMENTS TO PROFESSIONALS | | | $4,191,444 | $5,700,886 | $5,296,763 |

[2] Does not include payments to ordinary course professionals.

## POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS

| | NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POSTPETITION |
|---|---|---|---|---|
| 1. | Crescent TC Investors LP (rent portion only) | 130,364 | 130,364 | - |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | TOTAL | 130,364 | $130,364 | $0 |

**Monthly Operating Report**

ACCRUAL BASIS-7

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

MONTH: _____ March 2020 _____

**QUESTIONNAIRE**

| | | YES | NO |
|---|---|---|---|
| 1. | HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | x |
| 2. | HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | | x |
| 3. | ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES, OR LOANS) DUE FROM RELATED PARTIES? | x | |
| 4. | HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | x | |
| 5. | HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | x |
| 6. | ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | x |
| 7. | ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | x |
| 8. | ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | x |
| 9. | ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | x |
| 10. | ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | x |
| 11. | HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | x |
| 12. | ARE ANY WAGE PAYMENTS PAST DUE? | | x |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES," PROVIDE A DETAILED EXPLANATION OF EACH ITEM. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| 3 | Debtor generates fee income and other receipts from various related parties in normal course, see cash management motion for further discussion. |
|---|---|
| 4 | Payments have been made on prepetition liabilities, as approved in the critical vendor motion. |

**INSURANCE**

| | | YES | NO |
|---|---|---|---|
| 1. | ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | x | |
| 2. | ARE ALL PREMIUM PAYMENTS PAID CURRENT? | x | |
| 3. | PLEASE ITEMIZE POLICIES BELOW. | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO," OR IF ANY POLICIES HAVE BEEN CANCELLED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN EXPLANATION BELOW. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| INSTALLMENT PAYMENTS | | | |
|---|---|---|---|
| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT 52

**Monthly Operating Report**
ACCRUAL BASIS

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |
| JUDGE: | Stacey Jernigan |

# UNITED STATES BANKRUPTCY COURT

## NORTHERN & EASTERN DISTRICTS OF TEXAS

## REGION 6

## MONTHLY OPERATING REPORT

**MONTH ENDING:**  April  2020
MONTH  YEAR

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT (ACCRUAL BASIS-1 THROUGH ACCRUAL BASIS-7) AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE. DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.

RESPONSIBLE PARTY:

_____
ORIGINAL SIGNATURE OF RESPONSIBLE PARTY

Chief Restructuring Officer
TITLE

Bradley Sharp
PRINTED NAME OF RESPONSIBLE PARTY

6/1/2020
DATE

PREPARER:

_____
ORIGINAL SIGNATURE OF PREPARER

Chief Financial Officer
TITLE

Frank Waterhouse
PRINTED NAME OF PREPARER

DATE

**Monthly Operating Report**
**ACCRUAL BASIS-1**

| CASE NAME: | Highland Capital Management, LP |
| --- | --- |
| CASE NUMBER: | 19-12239-CSS |

**Comparative Balance Sheet**
(in thousands)

| | 10/15/2019 | 12/31/2019 [6] | 4/30/2020 [6] |
| --- | --- | --- | --- |
| **Assets** | | | |
| Cash and cash equivalents | 2,529 | 9,501 | 10,343 |
| Investments, at fair value [3] | 232,620 | 232,820 | 129,757 |
| Equity method investees [3] | 161,819 | 174,892 | 87,339 |
| Management and incentive fee receivable | 2,579 | 1,903 | 2,584 |
| Fixed assets, net | 3,754 | 3,521 | 3,208 |
| Due from affiliates [1] | 151,901 | 146,245 | 147,219 |
| Reserve against notes recievable | | (57,963) | (57,963) |
| Other assets | 11,311 | 11,481 | 16,233 |
| **Total assets** | **$ 566,513** | **$ 522,400** | **$ 338,719** |
| | | | |
| **Liabilities and Partners' Capital** | | | |
| Pre-petition accounts payable [4] | 1,176 | 1,141 | 1,063 |
| Post-petition accounts payable [4] | - | 1,891 | 1,059 |
| Secured debt: | | | |
| Frontier | 5,195 | 5,195 | 5,195 |
| Jefferies | 30,328 | 30,020 | 7,101 |
| Accrued expenses and other liabilities [4] | 59,203 | 63,336 | 56,339 |
| Accrued re-organization related fees [5] | - | 5,298 | 11,615 |
| Claim accrual [2] | 73,997 | 73,997 | 73,997 |
| Partners' capital | 396,614 | 341,521 | 182,351 |
| **Total liabilities and partners' capital** | **$ 566,513** | **$ 522,400** | **$ 338,719** |

[1] Includes various notes receivable at carrying value, except note due from Hunter Mountain Investment Trust which is fully reserved against ($58M reserve). Fair value has not been determined with respect to any of the notes.

[2] Uncontested portion of Redeemer claim less appplicable offsets. Potential for additional liability based on future events. No interest has been accrued beyond petition date.

[3] Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

[4] Note on accruals: expenses recorded in Accounts Payable and Accrued Expenses and Other Liabilities reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices. For balance sheet dates other than the Petition Date, amounts include both pre-petition and post-petition liabilities.

[5] Beginning December 31st, 2019, Debtor accrued for post-petition re-organization fees based upon an estimate of fees incurred to date.

[6] All balances at December 31st, 2019 are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, balances for subsequent months have and will fluctuate.

**Monthly Operating Report**
ACCRUAL BASIS-2

| CASE NAME: | Highland Capital Management, LP |
|---|---|
| CASE NUMBER: | 19-12239-CSS |

## Income Statement[1]

(in thousands)

| | Filing to Year Ended [4] 2019 | Quarter [4] 1/1/2020 - 3/31/2020 | Month ended [4] 4/30/2020 | Filing to date [4] |
|---|---|---|---|---|
| **Revenue:** | | | | |
| Management fees | 4,502 | 5,199 | 1,958 | 11,659 |
| Shared services fees | 1,588 | 1,842 | 645 | 4,076 |
| Other income | 1,582 | 1,092 | 341 | 3,015 |
| **Total operating revenue** | **7,672** | **8,134** | **2,944** | **18,750** |
| **Operating expenses:** | | | | |
| Compensation and benefits | 1,498 | 3,567 | 1,755 | 6,820 |
| Professional services | 35 | 829 | (1) | 863 |
| Investment research and consulting | 266 | 287 | 2 | 555 |
| Marketing and advertising expense | 370 | 30 | 29 | 430 |
| Depreciation expense | 244 | 235 | 77 | 556 |
| Bad debt expense reserve | 8,410 | - | - | 8,410 |
| Other operating expenses | 1,156 | 1,150 | 369 | 2,675 |
| **Total operating expenses** | **11,980** | **6,099** | **2,231** | **20,309** |
| **Operating income/(loss)** | **(4,308)** | **2,035** | **714** | **(1,559)** |
| **Other income/expense:** | | | | |
| Interest income | 1,230 | 1,450 | 477 | 3,157 |
| Interest expense | (346) | (315) | (57) | (719) |
| Reserve against notes receivable | (57,963) | - | - | (57,963) |
| Re-org related expenses [2] | (5,298) | (8,477) | (1,997) | (15,773) |
| Independent director fees | - | (715) | (100) | (815) |
| Other income/expense | 32 | (119) | (8) | (95) |
| **Total other income/expense** | **(62,346)** | **(8,177)** | **(1,685)** | **(72,208)** |
| Net realized gains/(losses) on investments | 618 | (8,133) | (14,991) | (22,506) |
| Net change in unrealized gains/(losses) of investments [3] | (955) | (59,748) | 18,534 | (42,168) |
| | **(337)** | **(67,881)** | **3,543** | **(64,674)** |
| **Net earnings/(losses) from equity method investees** [3] | 12,833 | (87,423) | (296) | (74,886) |
| **Net income/(loss)** | **$ (54,157)** | **$ (161,445)** | **$ 2,275** | **$ (213,327)** |

(1) Note on accruals: expenses recorded in the Income Statement reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.

(2) Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed as of the petition date.

(3) Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

(4) All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, operating results will change as these entries are made.

**Monthly Operating Report**
ACCRUAL BASIS-3A

| CASE NAME: | Highland Capital Management |
| --- | --- |

| CASE NUMBER: | 19-34054 |
| --- | --- |

| CASH RECEIPTS AND DISBURSEMENTS | FILING TO YEAR END 2019 | QUARTER | APRIL | MAY | JUNE | QUARTER |
| --- | --- | --- | --- | --- | --- | --- |
| 1. CASH - BEGINNING OF MONTH | $ 2,554,230 | $ 9,501,409 | $ 12,532,467 | | | $ 12,532,467 |
| **RECEIPTS FROM OPERATIONS** | | | | | | |
| 2. OTHER OPERATING RECEIPTS | $ 1,862,757 | $ 1,379,338 | $ 825,387 | | | $ 825,387 |
| 3. MANAGEMENT FEES AND OTHER RELATED RECEIPTS | $ 3,156,742 | $ 7,555,297 | $ 1,708,720 | | | $ 1,708,720 |
| **COLLECTION OF ACCOUNTS RECEIVABLE** | | | | | | |
| 4. PREPETITION | $ 3,593,108 | $ 76,569 | $ 3,727 | | | $ 3,727 |
| 5. POSTPETITION [1] | $ - | $ - | $ - | | | $ - |
| 6. TOTAL OPERATING RECEIPTS | $ 8,612,608 | $ 9,011,204 | $ 2,537,834 | | | $ 2,537,834 |
| **NON-OPERATING RECEIPTS** | | | | | | |
| 7. THIRD PARTY FUND ACTUAL/EXPECTED DISTRIBUTIONS | $ 423,468 | $ 18,992,786 | $ - | | | $ - |
| 8. DIVS, PAYDOWNS, MISC FROM INVESTMENT ASSETS | $ 1,338,069 | $ 477,479 | $ 36,007 | | | $ 36,007 |
| 9. OTHER (ATTACH LIST) | $ 3,390,286 | $ 1,407,103 | $ 10,000 | | | $ 10,000 |
| 10. TOTAL NON-OPERATING RECEIPTS | $ 5,151,822 | $ 20,877,369 | $ 46,007 | | | $ 46,007 |
| 11. TOTAL RECEIPTS | $ 13,764,430 | $ 29,888,573 | $ 2,583,841 | | | $ 2,583,841 |
| 12. TOTAL CASH AVAILABLE | | | $ 15,116,308 | | | |
| **OPERATING DISBURSEMENTS** | | | | | | |
| 13. PAYROLL, BENEFITS, AND TAXES + EXP REIMB | $ 3,776,446 | $ 8,825,042 | $ 1,441,850 | | | $ 1,441,850 |
| 14. SINGAPORE SERVICE FEES | $ 95,118 | $ 58,129 | $ 2,965 | | | $ 2,965 |
| 15. HCM LATIN AMERICA | $ 200,000 | $ 100,000 | $ - | | | $ - |
| 16. THIRD PARTY FUND CAPITAL CALL OBLIGATION | $ 1,426,987 | $ 7,812,469 | $ 726,000 | | | $ 726,000 |
| 17. UTILITIES | $ - | $ - | $ - | | | $ - |
| 18. INSURANCE | $ - | $ 533,940 | $ 10,500 | | | $ 10,500 |
| 19. INVENTORY PURCHASES | $ - | $ - | $ - | | | $ - |
| 20. VEHICLE EXPENSES | $ - | $ - | | | | $ - |
| 21. TRAVEL | $ - | $ - | | | | $ - |
| 22. ENTERTAINMENT | $ - | $ - | | | | $ - |
| 23. REPAIRS & MAINTENANCE | $ - | $ - | | | | $ - |
| 24. SUPPLIES | $ - | $ - | | | | $ - |
| 25. ADVERTISING | $ - | $ - | | | | $ - |
| 26. OTHER (ATTACH LIST) | $ 1,318,700 | $ 3,283,898 | $ 851,659 | | | $ 851,659 |
| 27. TOTAL OPERATING DISBURSEMENTS | $ 6,817,251 | $ 20,613,478 | $ 3,032,974 | | | $ 3,032,974 |
| **REORGANIZATION EXPENSES** | | | | | | |
| 28. PROFESSIONAL FEES | $ - | $ 5,460,546 | $ 1,740,298 | | | $ 1,740,298 |
| 29. U.S. TRUSTEE FEES | $ - | $ 68,173 | $ - | | | $ - |
| 30. OTHER (ATTACH LIST) | $ - | $ 715,317 | $ - | | | $ - |
| 31. TOTAL REORGANIZATION EXPENSES | $ - | $ 6,244,037 | $ 1,740,298 | | | $ 1,740,298 |
| 32. TOTAL DISBURSEMENTS | $ 6,817,251 | $ 26,857,515 | $ 4,773,272 | | | $ 4,773,272 |
| 33. NET CASH FLOW | $ 6,947,179 | $ 3,031,058 | $ (2,189,431) | | | $ (2,189,431) |
| 34. CASH - END OF MONTH | $ 9,501,409 | $ 12,532,467 | $ 10,343,036 | | | $ 10,343,036 |

1   All postpetition receipts are included in line 3, Management Fees and Other Related Receipts.

<div align="right">

**Monthly Operating Report**
ACCRUAL BASIS-3B

</div>

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

**NON-OPERATING RECEIPTS - OTHER**

| Date | Amount | Type |
|---|---|---|
| 4/9/2020 | 10,000.00 | SBA Grant |
| | 10,000.00 | |

**OPERATING DISBURSMENTS - OTHER**

| Date | Amount | Vendor |
|---|---|---|
| 4/1/2020 | 1,758.74 | Pershing LLC |
| 4/1/2020 | 11,000.00 | Third Party Consultant |
| 4/1/2020 | 158,702.63 | Crescent TC Investors LP |
| 4/3/2020 | 973.53 | UPS Small Package |
| 4/3/2020 | 1,091.27 | Prostar Services Inc. |
| 4/3/2020 | 2,728.19 | Third Party Consultant |
| 4/3/2020 | 2,932.87 | GrubHub for Work |
| 4/3/2020 | 4,982.18 | Liberty Life Assurance Co of Boston |
| 4/3/2020 | 24,828.27 | Bloomberg Finance LP |
| 4/3/2020 | 36,084.06 | Siepe Software LLC |
| 4/3/2020 | 39,533.00 | Willis Towers Watson Northeast, Inc |
| 4/3/2020 | 56,860.61 | Ace Parking Lot 3749 |
| 4/3/2020 | 62,718.37 | Houlihan Lokey Financial Advisors |
| 4/3/2020 | 347.89 | AT&T |
| 4/3/2020 | 52.64 | Arkadin Inc |
| 4/3/2020 | 145,525.57 | Siepe Services LLC |
| 4/3/2020 | 2,861.56 | FPG CT Owner, LP |
| 4/6/2020 | 2,074.87 | Pershing LLC |
| 4/7/2020 | 390.78 | Four Seasons Plantscaping, LLC |
| 4/7/2020 | 1,237.63 | DTCC ITP LLC |
| 4/7/2020 | 2,145.00 | Centroid Systems, Inc. |
| 4/7/2020 | 9,715.26 | DTCC ITP LLC |
| 4/7/2020 | 66,882.21 | Moody's Analytics, Inc. |
| 4/8/2020 | 902.99 | AT&T |
| 4/9/2020 | 11,975.30 | Flexential Colorado Corp |
| 4/9/2020 | 14,473.72 | ICE Data Pricing Ref Data LLC |
| 4/9/2020 | 59,182.19 | Moody's Analytics, Inc. |
| 4/9/2020 | 6,244.73 | TW Telecom |
| 4/9/2020 | 1,109.56 | Four Seasons Plantscaping, LLC |
| 4/9/2020 | 1,317.57 | Netwrix Corporation |
| 4/9/2020 | 9,070.41 | GrubHub for Work |
| 4/13/2020 | 150.00 | FINRA |
| 4/17/2020 | 6,519.15 | Third Party Consultant |
| 4/17/2020 | 5,884.76 | ABM |
| 4/17/2020 | 1,731.35 | DTCC ITP LLC |
| 4/17/2020 | 150.00 | Action Shred of Texas |
| 4/17/2020 | 3,822.04 | Canteen Vending Services |
| 4/17/2020 | 1,971.88 | Zayo Group |
| 4/17/2020 | 16,793.25 | Fitch Solutions, Inc (Covenant) |
| 4/17/2020 | 19,746.97 | James Dondero (ofc expense reimb) |
| 4/20/2020 | 927.16 | AT&T |
| 4/21/2020 | 6,155.39 | AT&T |
| 4/24/2020 | 15,781.18 | Oak Cliff Office Supply & Printing |
| 4/24/2020 | 5,884.76 | ABM |
| 4/24/2020 | 280.33 | Franke Foodservice Solutions |
| 4/28/2020 | 15,156.86 | Iron Mountain |
| 4/30/2020 | 11,000.00 | Third Party Consultant |
| | $ 851,658.68 | |

**Monthly Operating Report**
ACCRUAL BASIS-4

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| MGMT FEE RECEIVABLE AGING [2] | | January [3] | February [3] | March [3] | April [3] |
|---|---|---|---|---|---|
| 1. | 0-30 | $ 2,921,692 | $ 1,614,232 | $ 1,645,609 | $2,583,565 |
| 2. | 31-60 | | | | |
| 3. | 61-90 | | | | |
| 4. | 91+ | | | | |
| 5. | TOTAL MGMT FEE RECEIVABLE | $ 2,921,692 | $ 1,614,232 | $ 1,645,609 | $2,583,565 |
| 6. | AMOUNT CONSIDERED UNCOLLECTIBLE | | | | |
| 7. | MGMT FEE RECEIVABLE (NET) | $ 2,921,692 | $ 1,614,232 | $ 1,645,609 | $2,583,565 |

**AGING OF POSTPETITION TAXES AND PAYABLES**  MONTH: April 2020

| TAXES PAYABLE | 0-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS | TOTAL |
|---|---|---|---|---|---|
| 1. FEDERAL | | | | | $0 |
| 2. STATE | | | | | $0 |
| 3. LOCAL | | | | | $0 |
| 4. OTHER (ATTACH LIST) | | | | | $0 |
| 5. TOTAL TAXES PAYABLE | $0 | $0 | $0 | $0 | $0 |

| 6. ACCOUNTS PAYABLE | $840,844 | $13,423 | $40,522 | $164,555 | $1,059,343 |
|---|---|---|---|---|---|

**STATUS OF POSTPETITION TAXES [1]**  MONTH: April 2020

| FEDERAL | BEGINNING TAX LIABILITY | AMOUNT WITHHELD AND/0R ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY |
|---|---|---|---|---|
| 1. WITHHOLDING | | | | $0 |
| 2. FICA-EMPLOYEE | | | | $0 |
| 3. FICA-EMPLOYER | | | | $0 |
| 4. UNEMPLOYMENT | | | | $0 |
| 5. INCOME | | | | $0 |
| 6. OTHER (ATTACH LIST) | | | | $0 |
| 7. TOTAL FEDERAL TAXES | $0 | $0 | $0 | $0 |
| STATE AND LOCAL | | | | |
| 8. WITHHOLDING | | | | $0 |
| 9. SALES | | | | $0 |
| 10. EXCISE | | | | $0 |
| 11. UNEMPLOYMENT | | | | $0 |
| 12. REAL PROPERTY | $0 | $0 | $0 | $0 |
| 13. PERSONAL PROPERTY | | | | $0 |
| 14. OTHER (ATTACH LIST) | | | | $0 |
| 15. TOTAL STATE & LOCAL | $0 | $0 | $0 | $0 |
| 16. TOTAL TAXES | $0 | $0 | $0 | $0 |

1 The Debtor funds all state and federal employment taxes to Paylocity, who files all required federal and state related employment reports and withholdings.

2 Aging based on when management fee is due and payable.

3 All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process.

**Monthly Operating Report**
ACCRUAL BASIS-5

| CASE NAME: | Highland Capital Management |
| --- | --- |
| CASE NUMBER: | 19-34054 |

MONTH: April 2020

| BANK RECONCILIATIONS | | Account #1 | Account #2 | Account #3 | Account #4 | Account #5 | Account #6 | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| A. | BANK: | East West Bank | East West Bank | Maxim Group | Jefferies LLC | Nexbank | East West Bank | |
| B. | ACCOUNT NUMBER: | x4686 | x4693 | x1885 | x0932 | x5891 | x5848 | TOTAL |
| C. | PURPOSE (TYPE): | Operating | Insurance | Brokerage | Brokerage | CD | Prepaid Card | |
| 1. | BALANCE PER BANK STATEMENT [1] | $ 9,969,020 | $ 100,987 | $ 36,007 | $ - | $ 137,009 | $ 100,012 | $ 10,343,036 |
| 2. | ADD: TOTAL DEPOSITS NOT CREDITED | | | | | | | $ - |
| 3. | SUBTRACT: OUTSTANDING CHECKS | | | | | | | $ - |
| 4. | OTHER RECONCILING ITEMS | | | | | | | $ - |
| 5. | MONTH END BALANCE PER BOOKS | $ 9,969,020 | $ 100,987 | $ 36,007 | $ - | $ 137,009 | $ 100,012 | $ 10,343,036 |
| 6. | NUMBER OF LAST CHECK WRITTEN | 100018 | n/a | n/a | n/a | n/a | n/a | |

| INVESTMENT ACCOUNTS | | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | | | | CURRENT VALUE |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | BANK, ACCOUNT NAME & NUMBER | | | | | | | |
| 7. | | | | | | | | |
| 8. | | | | | | | | |
| 9. | | | | | | | | |
| 10. | | | | | | | | |
| 11. | TOTAL INVESTMENTS | | | $0 | | | | $0 |

| CASH | | | |
| --- | --- | --- | --- |
| 12. | CURRENCY ON HAND | | $0 |
| 13. | TOTAL CASH - END OF MONTH | | $10,343,036 |

1    Account x6342 is now closed.

**Monthly Operating Report**
ACCRUAL BASIS-6

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

MONTH: _____ April 2020 _____

**PAYMENTS TO INSIDERS AND PROFESSIONALS**

| | INSIDERS | | | |
|---|---|---|---|---|
| | NAME | TYPE OF PAYMENT | AMOUNT PAID | TOTAL PAID POST PETITION |
| 1 | Frank Waterhouse | Salary | $29,167 | $189,583 |
| 2 | Frank Waterhouse | Expense Reimbursement | $646 | $3,223 |
| 3 | Scott Ellington | Salary | $37,500 | $243,750 |
| 4 | Scott Ellington | Expense Reimbursement | $268 | $4,060 |
| 5 | James Dondero | Salary | $0 | $129,972 |
| 6 | James Dondero | Expense Reimbursement [1] | $0 | $16,918 |
| 7 | Thomas Surgent | Salary | $33,333 | $216,667 |
| 8 | Thomas Surgent | Expense Reimbursement | $224 | $2,231 |
| 9 | Trey Parker | Salary | $0 | $131,250 |
| 10 | Trey Parker | Expense Reimbursement | $0 | $6,212 |
| | TOTAL PAYMENTS TO INSIDERS | | $101,137 | $943,864 |

[1] The total amount of reimbursements during the reporting month also included $43,394 for use of the credit card by the Debtor for office related expenses such as business transportation, subscriptions, groceries, employee lunches, vending supplies, marketing and IT equipment/software.

| | PROFESSIONALS [2] | | | | | |
|---|---|---|---|---|---|---|
| | NAME | DATE OF MONTHLY FEE APPLICATION | AMOUNT APPROVED | AMOUNT PAID | TOTAL PAID TO DATE | TOTAL INCURRED & UNPAID |
| 1. | Kurtzman Carson Consultants LLC | | | | $214,005 | $153,979 |
| 2. | Sidley Austin LLP | | | | $1,538,374 | $2,283,291 |
| 3. | Young Conaway Stargatt & Taylor LLP | | | | $281,156 | $0 |
| 4. | FTI Consulting, Inc. | Jan 20 | 411,486.28 | 411,486.28 | $1,031,619 | $734,998 |
| 5. | Pachulski Stang Ziehl & Jones LLP | Feb 20 | $760,928 | 760,927.74 | $2,988,427 | $1,963,793 |
| 6 | Hayward & Associates PLLC | | | | $15,037 | $160,702 |
| 7 | Development Specialists, Inc. | Feb 20 and Mar 20 | $567,884 | 567,884.40 | $1,372,567 | $0 |
| 8 | TOTAL PAYMENTS TO PROFESSIONALS | | | $1,740,298 | $7,441,185 | $5,296,763 |

[2] Does not include payments to ordinary course professionals.

**POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS**

| | NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POSTPETITION |
|---|---|---|---|---|
| 1. | Crescent TC Investors LP (rent portion only) | 130,364 | 130,364 | - |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | TOTAL | 130,364 | $130,364 | $0 |

<div align="right">

**Monthly Operating Report**

ACCRUAL BASIS-7
</div>

| CASE NAME: | Highland Capital Management |
| --- | --- |

| CASE NUMBER: | 19-34054 |
| --- | --- |

MONTH: _____ April 2020 _____

**QUESTIONNAIRE**

| | | YES | NO |
| --- | --- | --- | --- |
| 1. | HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | x |
| 2. | HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | | x |
| 3. | ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES, OR LOANS) DUE FROM RELATED PARTIES? | x | |
| 4. | HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | x | |
| 5. | HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | x |
| 6. | ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | x |
| 7. | ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | x |
| 8. | ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | x |
| 9. | ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | x |
| 10. | ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | x |
| 11. | HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | x |
| 12. | ARE ANY WAGE PAYMENTS PAST DUE? | | x |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES," PROVIDE A DETAILED EXPLANATION OF EACH ITEM. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| | |
| --- | --- |
| 3 | Debtor generates fee income and other receipts from various related parties in normal course, see cash management motion for further discussion. |
| 4 | Payments have been made on prepetition liabilities, as approved in the critical vendor motion. |

**INSURANCE**

| | | YES | NO |
| --- | --- | --- | --- |
| 1. | ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | x | |
| 2. | ARE ALL PREMIUM PAYMENTS PAID CURRENT? | x | |
| 3. | PLEASE ITEMIZE POLICIES BELOW. | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO," OR IF ANY POLICIES HAVE BEEN CANCELLED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN EXPLANATION BELOW. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| INSTALLMENT PAYMENTS | | | |
| --- | --- | --- | --- |
| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT 53

**Monthly Operating Report**
ACCRUAL BASIS

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

**JUDGE:** Stacey Jernigan

# UNITED STATES BANKRUPTCY COURT

# NORTHERN & EASTERN DISTRICTS OF TEXAS

# REGION 6

# MONTHLY OPERATING REPORT

**MONTH ENDING:**  May  2020

MONTH  YEAR

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT (ACCRUAL BASIS-1 THROUGH ACCRUAL BASIS-7) AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE. DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.

**RESPONSIBLE PARTY:**

ORIGINAL SIGNATURE OF RESPONSIBLE PARTY

Bradley Sharp
PRINTED NAME OF RESPONSIBLE PARTY

Chief Restructuring Officer
TITLE

6/30/2020
DATE

**PREPARER:**

ORIGINAL SIGNATURE OF PREPARER

Frank Waterhouse
PRINTED NAME OF PREPARER

Chief Financial Officer
TITLE

06/30/2020
DATE

1934054200702000000000001

**Monthly Operating Report**
**ACCRUAL BASIS-1**

| CASE NAME: | Highland Capital Management, LP |
|---|---|
| CASE NUMBER: | 19-12239-CSS |

**Comparative Balance Sheet**
(in thousands)

| | 10/15/2019 | 12/31/2019 [(6)] | 5/31/2020 [(6)] |
|---|---|---|---|
| **Assets** | | | |
| Cash and cash equivalents | 2,529 | 9,501 | 9,917 |
| Investments, at fair value [(3)] | 232,620 | 232,820 | 127,724 |
| Equity method investees [(3)] | 161,819 | 174,902 | 98,844 |
| Management and incentive fee receivable | 2,579 | 1,929 | 1,839 |
| Fixed assets, net | 3,754 | 3,521 | 3,131 |
| Due from affiliates [(1)] | 151,901 | 146,245 | 148,480 |
| Reserve against notes recievable | | (57,963) | (57,963) |
| Other assets | 11,311 | 11,493 | 16,751 |
| **Total assets** | **$    566,513** | **$    522,448** | **$    348,722** |
| | | | |
| **Liabilities and Partners' Capital** | | | |
| Pre-petition accounts payable [(4)] | 1,176 | 1,141 | 1,044 |
| Post-petition accounts payable [(4)] | - | 2,042 | 1,055 |
| Secured debt: | | | |
| Frontier | 5,195 | 5,195 | 5,195 |
| Jefferies | 30,328 | 30,020 | - |
| Accrued expenses and other liabilities [(4)] | 59,203 | 63,336 | 60,583 |
| Accrued re-organization related fees [(5)] | - | 5,532 | 11,134 |
| Claim accrual [(2)] | 73,997 | 73,997 | 73,997 |
| Partners' capital | 396,614 | 341,185 | 195,713 |
| **Total liabilities and partners' capital** | **$    566,513** | **$    522,448** | **$    348,722** |

[(1)] Includes various notes receivable at carrying value, except note due from Hunter Mountain Investment Trust which is fully reserved against ($58M reserve). Fair value has not been determined with respect to any of the notes.

[(2)] Uncontested portion of Redeemer claim less appplicable offsets. Potential for additional liability based on future events. No interest has been accrued beyond petition date.

[(3)] Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

[(4)] Note on accruals: expenses recorded in Accounts Payable and Accrued Expenses and Other Liabilities reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices. For balance sheet dates other than the Petition Date, amounts include both pre-petition and post-petition liabilities.

[(5)] Beginning December 31st, 2019, Debtor accrued for post-petition re-organization fees based upon an estimate of fees incurred to date.

[(6)] All balances at December 31st, 2019 are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, balances for subsequent months have and will fluctuate.

**Monthly Operating Report**
ACCRUAL BASIS-2

| CASE NAME: | **Highland Capital Management, LP** |
|---|---|
| CASE NUMBER: | **19-12239-CSS** |

**Income Statement**[1]
(in thousands)

| | Filing to Year Ended [4] 2019 | Quarter [4] 1/1/2020 - 3/31/2020 | Month ended [4] 5/31/2020 | Filing to date [4] |
|---|---|---|---|---|
| **Revenue:** | | | | |
| Management fees | 4,328 | 5,453 | 1,616 | 11,397 |
| Shared services fees | 1,638 | 1,842 | 603 | 4,082 |
| Other income | 689 | 1,261 | 1,423 | 3,373 |
| **Total operating revenue** | **6,655** | **8,555** | **3,642** | **18,852** |
| **Operating expenses:** | | | | |
| Compensation and benefits | 4,867 | 3,387 | 1,670 | 9,924 |
| Professional services | 609 | 824 | 134 | 1,567 |
| Investment research and consulting | 52 | 282 | 5 | 339 |
| Marketing and advertising expense | 72 | 22 | - | 94 |
| Depreciation expense | 243 | 233 | 77 | 553 |
| Bad debt expense reserve | - | - | - | - |
| Other operating expenses | 1,126 | 1,105 | 544 | 2,775 |
| **Total operating expenses** | **6,969** | **5,853** | **2,430** | **15,252** |
| **Operating income/(loss)** | **(313)** | **2,702** | **1,212** | **3,600** |
| **Other income/expense:** | | | | |
| Interest income | 1,230 | 1,432 | 493 | 3,155 |
| Interest expense | (325) | (259) | (48) | (631) |
| Reserve against notes receivable | (57,963) | - | - | (57,963) |
| Re-org related expenses [2] | (2,717) | (8,256) | (1,815) | (12,788) |
| Independent director fees | - | (681) | (100) | (781) |
| Other income/expense | 32 | 3 | (6) | 29 |
| **Total other income/expense** | **(59,744)** | **(7,761)** | **(1,475)** | **(68,979)** |
| Net realized gains/(losses) on investments | 618 | (17,786) | (8,566) | (25,734) |
| Net change in unrealized gains/(losses) of investments [3] | 6,065 | (51,967) | 12,434 | (33,468) |
| | **6,683** | **(69,753)** | **3,868** | **(59,202)** |
| **Net earnings/(losses) from equity method investees** [3] | 13,312 | (87,583) | 11,495 | (62,776) |
| **Net income/(loss)** | **$ (40,062)** | **$ (162,395)** | **$ 15,100** | **$ (187,357)** |

(1) Note on accruals: expenses recorded in the Income Statement reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but yet received invoices.

(2) Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed as of the petition date.

(3) Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

(4) All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, operating results will change as these entries are made.

**Monthly Operating Report**
ACCRUAL BASIS-3A

| | | | |
|---|---|---|---|
| CASE NAME: | Highland Capital Management | | |
| CASE NUMBER: | 19-34054 | | |

| CASH RECEIPTS AND DISBURSEMENTS | FILING TO YEAR END 2019 | QUARTER | APRIL | MAY |
|---|---|---|---|---|
| 1. CASH - BEGINNING OF MONTH | $ 2,554,230 | $ 9,501,409 | $ 12,532,467 | $ 10,343,036 |
| RECEIPTS FROM OPERATIONS | | | | |
| 2. OTHER OPERATING RECEIPTS | $ 1,862,757 | $ 1,379,338 | $ 825,387 | $ 1,687,854 |
| 3 MANAGEMENT FEES AND OTHER RELATED RECEIPTS | $ 3,156,742 | $ 7,555,297 | $ 1,708,720 | $ 3,188,304 |
| COLLECTION OF ACCOUNTS RECEIVABLE | | | | |
| 4 PREPETITION | $ 3,593,108 | $ 76,569 | $ 3,727 | $ - |
| 5 POSTPETITION [1] | $ - | $ - | $ - | $ - |
| 6 TOTAL OPERATING RECEIPTS | $ 8,612,608 | $ 9,011,204 | $ 2,537,834 | $ 4,876,158 |
| NON-OPERATING RECEIPTS | | | | |
| 7 THIRD PARTY FUND ACTUAL/EXPECTED DISTRIBUTIONS | $ 423,468 | $ 18,992,786 | $ - | $ 319,242 |
| 8 DIVS, PAYDOWNS, MISC FROM INVESTMENT ASSETS | $ 1,338,069 | $ 477,479 | $ 36,007 | $ 36,007 |
| 9 OTHER (ATTACH LIST) | $ 3,390,286 | $ 1,407,103 | $ 10,000 | $ - |
| 10 TOTAL NON-OPERATING RECEIPTS | $ 5,151,822 | $ 20,877,369 | $ 46,007 | $ 355,249 |
| 11 TOTAL RECEIPTS | $ 13,764,430 | $ 29,888,573 | $ 2,583,841 | $ 5,231,407 |
| 12 TOTAL CASH AVAILABLE | | | $ 15,116,308 | $ 15,574,443 |
| OPERATING DISBURSEMENTS | | | | |
| 13 PAYROLL, BENEFITS, AND TAXES + EXP REIMB | $ 3,776,446 | $ 8,825,042 | $ 1,441,850 | $ 1,183,140 |
| 14 SINGAPORE SERVICE FEES | $ 95,118 | $ 58,129 | $ 2,965 | $ - |
| 15 HCM LATIN AMERICA | $ 200,000 | $ 100,000 | $ - | $ - |
| 16 THIRD PARTY FUND CAPITAL CALL OBLIGATION | $ 1,426,987 | $ 7,812,469 | $ 726,000 | $ 2,000,000 |
| 17 UTILITIES | $ - | $ - | $ - | $ - |
| 18 INSURANCE | $ - | $ 533,940 | $ 10,500 | $ 330,000 |
| 19 INVENTORY PURCHASES | $ - | $ - | $ - | $ - |
| 20 VEHICLE EXPENSES | $ - | $ - | $ - | $ - |
| 21 TRAVEL | $ - | $ - | $ - | $ - |
| 22 ENTERTAINMENT | $ - | $ - | $ - | $ - |
| 23 REPAIRS & MAINTENANCE | $ - | $ - | $ - | $ - |
| 24 SUPPLIES | $ - | $ - | $ - | $ - |
| 25 ADVERTISING | $ - | $ - | $ - | $ - |
| 26 OTHER (ATTACH LIST) | $ 1,318,700 | $ 3,283,898 | $ 851,659 | $ 1,277,268 |
| 27 TOTAL OPERATING DISBURSEMENTS | $ 6,817,251 | $ 20,613,478 | $ 3,032,974 | $ 4,790,407 |
| REORGANIZATION EXPENSES | | | | |
| 28 PROFESSIONAL FEES | $ - | $ 5,460,546 | $ 1,740,298 | $ 550,170 |
| 29 U.S. TRUSTEE FEES | $ - | $ 68,173 | $ - | $ 167,025 |
| 30 OTHER (ATTACH LIST) | $ - | $ 715,317 | $ - | $ 150,000 |
| 31 TOTAL REORGANIZATION EXPENSES | $ - | $ 6,244,037 | $ 1,740,298 | $ 867,195 |
| 32 TOTAL DISBURSEMENTS | $ 6,817,251 | $ 26,857,515 | $ 4,773,272 | $ 5,657,602 |
| 33 NET CASH FLOW | $ 6,947,179 | $ 3,031,058 | $ (2,189,431) | $ (426,195) |
| 34 CASH - END OF MONTH | $ 9,501,409 | $ 12,532,467 | $ 10,343,036 | $ 9,916,841 |

1  All postpetition receipts are included in line 3, Management Fees and Other Related Receipts.

**Monthly Operating Report**
ACCRUAL BASIS-3B

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

### OPERATING DISBURSEMENTS - OTHER

| Date | Amount | Vendor |
|---|---|---|
| 5/1/2020 | 389.32 | UPS Small Package |
| 5/1/2020 | 73.36 | Markit WSO Corporation |
| 5/1/2020 | 105.48 | Arkadin Inc |
| 5/1/2020 | 1,100.00 | Ace Parking Lot 3749 |
| 5/1/2020 | 1,745.14 | DTCC ITP LLC |
| 5/1/2020 | 4,812.82 | Liberty Life Assurance Co of Boston |
| 5/1/2020 | 4,975.90 | ASW Law Limited - USD Account |
| 5/1/2020 | 17,153.26 | Concur Technologies Inc |
| 5/1/2020 | 18,700.47 | Third Party Consultant |
| 5/1/2020 | 140,800.00 | Intex Solutions, Inc. |
| 5/1/2020 | 158,453.88 | Crescent TC Investors LP |
| 5/1/2020 | 307,026.32 | Bloomberg Finance LP |
| 5/4/2020 | 335.90 | AT&T |
| 5/8/2020 | 765.36 | ProStar Services, Inc |
| 5/8/2020 | 109.28 | Chase Couriers, Inc. |
| 5/8/2020 | 3,598.16 | AT&T |
| 5/8/2020 | 12,180.00 | M.Q. Services Ltd. |
| 5/8/2020 | 61,699.50 | Advent software, Inc. |
| 5/8/2020 | 189,332.14 | Siepe Services LLC |
| 5/11/2020 | 325.00 | USI Southwest, Inc. |
| 5/11/2020 | 3,989.97 | Chick-fil-A |
| 5/11/2020 | 1,476.50 | Verity Group |
| 5/11/2020 | 2,439.85 | Gold's Gym International |
| 5/11/2020 | 750.00 | Southland Property Tax Consultants, Inc |
| 5/12/2020 | 6,164.54 | TW Telecom Holdings, llc |
| 5/14/2020 | 228.05 | AT&T |
| 5/15/2020 | 5,063.10 | North Texas Trim And Hardware, LLC |
| 5/15/2020 | 28.00 | Ace Parking Management Inc. |
| 5/15/2020 | 7,995.00 | Intralinks |
| 5/15/2020 | 3,500.00 | MaplesFS Service Company Limited |
| 5/15/2020 | 681.05 | Houlihan Lokey |
| 5/12/2020 | 400.00 | Pitney |
| 5/14/2020 | 531.87 | Direct TV |
| 5/12/2020 | 2,584.26 | Xerox |
| 5/15/2020 | 3,981.82 | Standard Insurance |
| 5/19/2020 | 23,518.15 | ConvergeOne, Inc. |
| 5/19/2020 | 400.00 | Pitney Bowes- Purchase Power |
| 5/22/2020 | 4,812.82 | Liberty Life Assurance Company of Boston - Group Benefits |
| 5/22/2020 | 3,678.28 | BOK Financial Asset Management |
| 5/22/2020 | 2,250.17 | Arkadin, Inc. |
| 5/22/2020 | 1,828.02 | CDW Direct |
| 5/22/2020 | 1,388.22 | Ace Parking Management Inc. |
| 5/22/2020 | 586.81 | UPS Supply Chain Solutions |
| 5/22/2020 | 1,613.41 | ProStar Services, Inc |
| 5/18/2020 | 970.27 | AT&T |
| 5/19/2020 | 1,971.88 | Zayo Group |
| 5/19/2020 | 300.00 | Pitney Bowes Bank Inc- Reserve Acct |
| 5/20/2020 | 5,931.14 | AT&T |
| 5/22/2020 | 7,670.53 | Advent software, Inc. |
| 5/26/2020 | 900.00 | Crescent Research |
| 5/26/2020 | 300.00 | Delaware Secretary of State |
| 5/26/2020 | 25,835.58 | The Bureau of National Affairs, Inc |
| 5/27/2020 | 2,464.33 | Iron Mountain Records Management |
| 5/29/2020 | 20,065.56 | HE Asante, LLC |
| 5/29/2020 | 11,975.30 | Flexential Colorado Corp. |
| 5/26/2020 | 5,790.13 | Third Party Consultant |
| 5/29/2020 | 12,231.30 | Third Party Consultant |
| 5/29/2020 | 68,934.31 | MaplesFS Service Company Limited |
| 5/29/2020 | 108,356.01 | Maples and Calder |
| | $ 1,277,267.52 | |

### REORGANIZATION EXPENSES - OTHER

| Date | Amount | Description |
|---|---|---|
| 5/1/2020 | 50,000.00 | Russell F. Nelms |
| 5/1/2020 | 50,000.00 | Dubel & Associates, LLC |
| 5/4/2020 | 50,000.00 | James P. Seery, Jr. |
| | 150,000.00 | |

**Monthly Operating Report**
**ACCRUAL BASIS-4**

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| MGMT FEE RECEIVABLE AGING [2] | February [3] | March [3] | April [3] | May [3] |
|---|---|---|---|---|
| 1. 0-30 | $ 1,614,232 | $ 1,835,632 | $2,583,565 | $1,839,132 |
| 2. 31-60 | | | | |
| 3. 61-90 | | | | |
| 4. 91+ | | | | |
| 5. TOTAL MGMT FEE RECEIVABLE | $ 1,614,232 | $ 1,835,632 | $ 2,583,565 | $1,839,132 |
| 6. AMOUNT CONSIDERED UNCOLLECTIBLE | | | | |
| 7. MGMT FEE RECEIVABLE (NET) | $ 1,614,232 | $ 1,835,632 | $ 2,583,565 | $1,839,132 |

**AGING OF POSTPETITION TAXES AND PAYABLES**   MONTH: _____ May 2020

| TAXES PAYABLE | 0-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS | TOTAL |
|---|---|---|---|---|---|
| 1. FEDERAL | | | | | $0 |
| 2. STATE | | | | | $0 |
| 3. LOCAL | | | | | $0 |
| 4. OTHER (ATTACH LIST) | | | | | $0 |
| 5. TOTAL TAXES PAYABLE | $0 | $0 | $0 | $0 | $0 |
| 6. ACCOUNTS PAYABLE | $703,643 | $24,656 | $123,368 | $203,806 | $1,055,472 |

**STATUS OF POSTPETITION TAXES [1]**   MONTH: _____ May 2020

| FEDERAL | BEGINNING TAX LIABILITY | AMOUNT WITHHELD AND/ 0R ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY |
|---|---|---|---|---|
| 1. WITHHOLDING | | | | $0 |
| 2. FICA-EMPLOYEE | | | | $0 |
| 3. FICA-EMPLOYER | | | | $0 |
| 4. UNEMPLOYMENT | | | | $0 |
| 5. INCOME | | | | $0 |
| 6. OTHER (ATTACH LIST) | | | | $0 |
| 7. TOTAL FEDERAL TAXES | $0 | $0 | $0 | $0 |
| STATE AND LOCAL | | | | |
| 8. WITHHOLDING | | | | $0 |
| 9. SALES | | | | $0 |
| 10. EXCISE | | | | $0 |
| 11. UNEMPLOYMENT | | | | $0 |
| 12. REAL PROPERTY | $0 | $0 | $0 | $0 |
| 13. PERSONAL PROPERTY | | | | $0 |
| 14. OTHER (ATTACH LIST) | | | | $0 |
| 15. TOTAL STATE & LOCAL | $0 | $0 | $0 | $0 |
| 16. TOTAL TAXES | $0 | $0 | $0 | $0 |

1   The Debtor funds all state and federal employment taxes to Paylocity, who files all required federal and state related employment reports and withholdings.

2   Aging based on when management fee is due and payable.

3   All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process.

**Monthly Operating Report**
ACCRUAL BASIS-5

| CASE NAME: | Highland Capital Management |
| --- | --- |
| CASE NUMBER: | 19-34054 |

**BANK RECONCILIATIONS**

MONTH: May 2020

| | | Account #1 | Account #2 | Account #3 | Account #4 | Account #5 | Account #6 | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| A. | BANK: | East West Bank | East West Bank | Maxim Group | Jefferies LLC | Nexbank | East West Bank | |
| B. | ACCOUNT NUMBER: | x4686 | x4693 | x1885 | x0932 | x5891 | x5848 | TOTAL |
| C. | PURPOSE (TYPE): | Operating | Insurance | Brokerage | Brokerage | CD | Prepaid Card | |
| 1. | BALANCE PER BANK STATEMENT [1] | $ 9,220,374 | $ 393,363 | $ 72,013 | $ - | $ 137,009 | $ 100,020 | $ 9,922,781 |
| 2. | ADD: TOTAL DEPOSITS NOT CREDITED | | | | | | | $ - |
| 3. | SUBTRACT: OUTSTANDING CHECKS | $ 5,940 | | | | | | $ 5,940 |
| 4. | OTHER RECONCILING ITEMS | | | | | | | $ - |
| 5. | MONTH END BALANCE PER BOOKS | $ 9,214,434 | $ 393,363 | $ 72,013 | $ - | $ 137,009 | $ 100,020 | $ 9,916,841 |
| 6. | NUMBER OF LAST CHECK WRITTEN | 100505 | n/a | n/a | n/a | n/a | n/a | |

**INVESTMENT ACCOUNTS**

| | | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | | | | CURRENT VALUE |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 7. | | | | | | | | |
| 8. | | | | | | | | |
| 9. | | | | | | | | |
| 10. | | | | | | | | |
| 11. | TOTAL INVESTMENTS | | | $0 | | | | $0 |

**CASH**

| | | | |
| --- | --- | --- | --- |
| 12. | CURRENCY ON HAND | | $0 |

| | | | |
| --- | --- | --- | --- |
| 13. | TOTAL CASH - END OF MONTH | | $9,916,841 |

1    Account x6342 is now closed.

**Monthly Operating Report**
ACCRUAL BASIS-6

| CASE NAME: | Highland Capital Management |
| CASE NUMBER: | 19-34054 |

MONTH: _____ May 2020 _____

**PAYMENTS TO INSIDERS AND PROFESSIONALS**

| | INSIDERS | | | |
|---|---|---|---|---|
| | NAME | TYPE OF PAYMENT | AMOUNT PAID | TOTAL PAID POST PETITION |
| 1 | Frank Waterhouse | Salary | $29,167 | $218,750 |
| 2 | Frank Waterhouse | Expense Reimbursement | $436 | $3,659 |
| 3 | Scott Ellington | Salary | $37,500 | $281,250 |
| 4 | Scott Ellington | Expense Reimbursement | $766 | $4,826 |
| 5 | James Dondero | Salary | $0 | $129,972 |
| 6 | James Dondero | Expense Reimbursement [1] | $0 | $16,918 |
| 7 | Thomas Surgent | Salary | $33,333 | $250,000 |
| 8 | Thomas Surgent | Expense Reimbursement | $545 | $2,775 |
| 9 | Trey Parker | Salary | $0 | $131,250 |
| 10 | Trey Parker | Expense Reimbursement | $0 | $6,212 |
| | TOTAL PAYMENTS TO INSIDERS | | $101,747 | $1,045,611 |

[1] The total amount of reimbursements during the reporting month also included $11,573 for use of the credit card by the Debtor for office related expenses such as subscriptions, vending supplies, marketing and IT equipment/software.

| | PROFESSIONALS [2] | | | | | |
|---|---|---|---|---|---|---|
| | NAME | DATE OF MONTHLY FEE APPLICATION | AMOUNT APPROVED | AMOUNT PAID | TOTAL PAID TO DATE | TOTAL INCURRED & UNPAID |
| 1. | Kurtzman Carson Consultants LLC | | | | $214,005 | $165,739 |
| 2. | Sidley Austin LLP | | | | $1,538,374 | $3,269,620 |
| 3. | Young Conaway Stargatt & Taylor LLP | | | | $281,156 | $0 |
| 4. | FTI Consulting, Inc. | | | | $1,031,619 | $1,966,009 |
| 5. | Pachulski Stang Ziehl & Jones LLP | | | | $2,988,427 | $3,888,635 |
| 6 | Hayward & Associates PLLC | | $97,043 | $97,043 | $112,079 | $63,659 |
| 7 | Development Specialists, Inc. | | | | $1,099,973 | $254,029 |
| 8 | Foley & Lardner LLP | | | 398,127.12 | 398,127.12 | $157,832 |
| | TOTAL PAYMENTS TO PROFESSIONALS | | | $495,170 | $7,663,760 | $9,765,523 |

2 Does not include payments to ordinary course professionals.

**POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS**

| | NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POSTPETITION |
|---|---|---|---|---|
| 1. | Crescent TC Investors LP (rent portion only) | 130,364 | 130,364 | - |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | TOTAL | 130,364 | $130,364 | $0 |

**Monthly Operating Report**

ACCRUAL BASIS-7

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

**MONTH:** May 2020

| QUESTIONNAIRE | | YES | NO |
|---|---|---|---|
| 1. | HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | x |
| 2. | HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | | x |
| 3. | ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES, OR LOANS) DUE FROM RELATED PARTIES? | x | |
| 4. | HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | x | |
| 5. | HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | x |
| 6. | ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | x |
| 7. | ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | x |
| 8. | ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | x |
| 9. | ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | x |
| 10. | ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | x |
| 11. | HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | x |
| 12. | ARE ANY WAGE PAYMENTS PAST DUE? | | x |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES," PROVIDE A DETAILED
EXPLANATION OF EACH ITEM. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| 3 | Debtor generates fee income and other receipts from various related parties in normal course, see cash management motion for further discussion. |
|---|---|
| 4 | Payments have been made on prepetition liabilities, as approved in the critical vendor motion. |

| INSURANCE | | YES | NO |
|---|---|---|---|
| 1. | ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | x | |
| 2. | ARE ALL PREMIUM PAYMENTS PAID CURRENT? | x | |
| 3. | PLEASE ITEMIZE POLICIES BELOW. | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO," OR IF ANY POLICIES HAVE BEEN
CANCELLED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN EXPLANATION
BELOW. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| INSTALLMENT PAYMENTS | | | |
|---|---|---|---|
| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT 54

**Monthly Operating Report**
ACCRUAL BASIS

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

**JUDGE:** Stacey Jernigan

# UNITED STATES BANKRUPTCY COURT

# NORTHERN & EASTERN DISTRICTS OF TEXAS

# REGION 6

# MONTHLY OPERATING REPORT

**MONTH ENDING:** <u>Amended May</u>     <u>2020</u>

                                                  MONTH                      YEAR

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT (ACCRUAL BASIS-1 THROUGH ACCRUAL BASIS-7) AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE. DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.

**RESPONSIBLE PARTY:**

_____       Chief Restructuring Officer
ORIGINAL SIGNATURE OF RESPONSIBLE PARTY             TITLE

Bradley Sharp                              7/29/2020
PRINTED NAME OF RESPONSIBLE PARTY             DATE

**PREPARER:**

_____       Chief Financial Officer
ORIGINAL SIGNATURE OF PREPARER                 TITLE

Frank Waterhouse                          7.29.20
PRINTED NAME OF PREPARER                  DATE

1934054200730000000000002

**Monthly Operating Report**
**ACCRUAL BASIS-1**

| CASE NAME: | Highland Capital Management, LP |
| --- | --- |
| CASE NUMBER: | 19-12239-CSS |

**Comparative Balance Sheet**
(in thousands)

| | 10/15/2019 | 12/31/2019 [6] | 5/31/2020 [6] |
| --- | --- | --- | --- |
| **Assets** | | | |
| Cash and cash equivalents | 2,529 | 9,501 | 9,917 |
| Investments, at fair value[3] | 232,620 | 232,820 | 127,724 |
| Equity method investees [3] | 161,819 | 174,902 | 98,844 |
| Management and incentive fee receivable | 2,579 | 1,929 | 1,839 |
| Fixed assets, net | 3,754 | 3,521 | 3,131 |
| Due from affiliates [1] | 151,901 | 146,245 | 148,480 |
| Reserve against notes recievable | | (57,963) | (57,963) |
| Other assets | 11,311 | 11,493 | 16,751 |
| **Total assets** | **$ 566,513** | **$ 522,448** | **$ 348,722** |
| | | | |
| **Liabilities and Partners' Capital** | | | |
| Pre-petition accounts payable [4] | 1,176 | 1,141 | 1,044 |
| Post-petition accounts payable [4] | - | 2,042 | 1,055 |
| Secured debt: | | | |
| Frontier | 5,195 | 5,195 | 5,195 |
| Jefferies | 30,328 | 30,020 | - |
| Accrued expenses and other liabilities [4] | 59,203 | 63,336 | 60,583 |
| Accrued re-organization related fees [5] | - | 5,532 | 11,134 |
| Claim accrual [2] | 73,997 | 73,997 | 73,997 |
| Partners' capital | 396,614 | 341,185 | 195,713 |
| **Total liabilities and partners' capital** | **$ 566,513** | **$ 522,448** | **$ 348,722** |

[1] Includes various notes receivable at carrying value, except note due from Hunter Mountain Investment Trust which is fully reserved against ($58M reserve). Fair value has not been determined with respect to any of the notes.

[2] Uncontested portion of Redeemer claim less appplicable offsets. Potential for additional liability based on future events. No interest has been accrued beyond petition date.

[3] Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

[4] Note on accruals: expenses recorded in Accounts Payable and Accrued Expenses and Other Liabilities reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices. For balance sheet dates other than the Petition Date, amounts include both pre-petition and post-petition liabilities.

[5] Beginning December 31st, 2019, Debtor accrued for post-petition re-organization fees based upon an estimate of fees incurred to date.

[6] All balances at December 31st, 2019 are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, balances for subsequent months have and will fluctuate.

**Monthly Operating Report**
ACCRUAL BASIS-2

| CASE NAME: | Highland Capital Management, LP |
| --- | --- |
| CASE NUMBER: | 19-12239-CSS |

**Income Statement**[1]
(in thousands)

Amended[5]

| | Filing to Year Ended [4] | Quarter [4] | Month ended [4] | Filing to date [4] |
| --- | --- | --- | --- | --- |
| | 2019 | 1/1/2020 - 3/31/2020 | 5/31/2020 | |
| **Revenue:** | | | | |
| Management fees | 4,528 | 5,199 | 1,616 | 13,302 |
| Shared services fees | 1,588 | 1,842 | 603 | 4,678 |
| Other income | 1,582 | 1,092 | 1,423 | 4,438 |
| **Total operating revenue** | **7,697** | **8,134** | **3,642** | **22,418** |
| **Operating expenses:** | | | | |
| Compensation and benefits | 1,498 | 3,567 | 1,670 | 8,490 |
| Professional services | 64 | 836 | 134 | 1,127 |
| Investment research and consulting | 266 | 287 | 5 | 561 |
| Marketing and advertising expense | 370 | 30 | - | 430 |
| Depreciation expense | 244 | 235 | 77 | 633 |
| Bad debt expense reserve | 8,410 | - | - | 8,410 |
| Other operating expenses | 1,265 | 1,152 | 544 | 3,331 |
| **Total operating expenses** | **12,118** | **6,107** | **2,430** | **22,981** |
| **Operating income/(loss)** | **(4,421)** | **2,026** | **1,212** | **(563)** |
| **Other income/expense:** | | | | |
| Interest income | 1,230 | 1,450 | 493 | 3,650 |
| Interest expense | (346) | (315) | (48) | (766) |
| Reserve against notes receivable | (57,963) | - | - | (57,963) |
| Re-org related expenses [2] | (5,532) | (9,201) | (1,815) | (19,120) |
| Independent director fees | - | (715) | (100) | (915) |
| Other income/expense | 32 | (119) | (6) | (100) |
| **Total other income/expense** | **(62,579)** | **(8,901)** | **(1,475)** | **(75,214)** |
| Net realized gains/(losses) on investments | 973 | (8,133) | (8,566) | (24,332) |
| Net change in unrealized gains/(losses) of investments [3] | (1,310) | (59,748) | 12,434 | (36,475) |
| | **(337)** | **(67,881)** | **3,868** | **(60,806)** |
| **Net earnings/(losses) from equity method investees** [3] | 12,844 | (87,423) | 11,495 | (63,381) |
| **Net income/(loss)** | **$ (54,493)** | **$ (162,178)** | **$ 15,100** | **$ (199,965)** |

(1) Note on accruals: expenses recorded in the Income Statement reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.

(2) Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed as of the petition date.

(3) Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

(4) All balances are preliminary, unaudited, and subject to further year-end closing process pursuant to the normal year-end closing process. As a result, operating results will change as these entries are made.

(5) This page was amended due to the filing to date column not including the amounts for April 2020.

**Monthly Operating Report**
ACCRUAL BASIS-3A

| CASE NAME: | Highland Capital Management |
| --- | --- |
| CASE NUMBER: | 19-34054 |

| CASH RECEIPTS AND DISBURSEMENTS | FILING TO YEAR END 2019 | QUARTER | APRIL | MAY |
| --- | --- | --- | --- | --- |
| 1. CASH - BEGINNING OF MONTH | $ 2,554,230 | $ 9,501,409 | $ 12,532,467 | $ 10,343,036 |
| **RECEIPTS FROM OPERATIONS** | | | | |
| 2. OTHER OPERATING RECEIPTS | $ 1,862,757 | $ 1,379,338 | $ 825,387 | $ 1,687,854 |
| 3 MANAGEMENT FEES AND OTHER RELATED RECEIPTS | $ 3,156,742 | $ 7,555,297 | $ 1,708,720 | $ 3,188,304 |
| **COLLECTION OF ACCOUNTS RECEIVABLE** | | | | |
| 4 PREPETITION | $ 3,593,108 | $ 76,569 | $ 3,727 | $ - |
| 5 POSTPETITION [1] | $ - | $ - | $ - | $ - |
| 6 TOTAL OPERATING RECEIPTS | $ 8,612,608 | $ 9,011,204 | $ 2,537,834 | $ 4,876,158 |
| **NON-OPERATING RECEIPTS** | | | | |
| 7 THIRD PARTY FUND ACTUAL/EXPECTED DISTRIBUTIONS | $ 423,468 | $ 18,992,786 | $ - | $ 319,242 |
| 8 DIVS, PAYDOWNS, MISC FROM INVESTMENT ASSETS | $ 1,338,069 | $ 477,479 | $ 36,007 | $ 36,007 |
| 9 OTHER (ATTACH LIST) | $ 3,390,286 | $ 1,407,103 | $ 10,000 | $ - |
| 10 TOTAL NON-OPERATING RECEIPTS | $ 5,151,822 | $ 20,877,369 | $ 46,007 | $ 355,249 |
| 11 TOTAL RECEIPTS | $ 13,764,430 | $ 29,888,573 | $ 2,583,841 | $ 5,231,407 |
| 12 TOTAL CASH AVAILABLE | | | $ 15,116,308 | $ 15,574,443 |
| **OPERATING DISBURSEMENTS** | | | | |
| 13 PAYROLL, BENEFITS, AND TAXES + EXP REIMB | $ 3,776,446 | $ 8,825,042 | $ 1,441,850 | $ 1,183,140 |
| 14 SINGAPORE SERVICE FEES | $ 95,118 | $ 58,129 | $ 2,965 | $ - |
| 15 HCM LATIN AMERICA | $ 200,000 | $ 100,000 | $ - | $ - |
| 16 THIRD PARTY FUND CAPITAL CALL OBLIGATION | $ 1,426,987 | $ 7,812,469 | $ 726,000 | $ 2,000,000 |
| 17 UTILITIES | $ - | $ - | $ - | $ - |
| 18 INSURANCE | $ - | $ 533,940 | $ 10,500 | $ 330,000 |
| 19 INVENTORY PURCHASES | $ - | $ - | $ - | $ - |
| 20 VEHICLE EXPENSES | $ - | $ - | $ - | $ - |
| 21 TRAVEL | $ - | $ - | $ - | $ - |
| 22 ENTERTAINMENT | $ - | $ - | $ - | $ - |
| 23 REPAIRS & MAINTENANCE | $ - | $ - | $ - | $ - |
| 24 SUPPLIES | $ - | $ - | $ - | $ - |
| 25 ADVERTISING | $ - | $ - | $ - | $ - |
| 26 OTHER (ATTACH LIST) | $ 1,318,700 | $ 3,283,898 | $ 851,659 | $ 1,277,268 |
| 27 TOTAL OPERATING DISBURSEMENTS | $ 6,817,251 | $ 20,613,478 | $ 3,032,974 | $ 4,790,407 |
| **REORGANIZATION EXPENSES** | | | | |
| 28 PROFESSIONAL FEES | $ - | $ 5,460,546 | $ 1,740,298 | $ 550,170 |
| 29 U.S. TRUSTEE FEES | $ - | $ 68,173 | $ - | $ 167,025 |
| 30 OTHER (ATTACH LIST) | $ - | $ 715,317 | $ - | $ 150,000 |
| 31 TOTAL REORGANIZATION EXPENSES | $ - | $ 6,244,037 | $ 1,740,298 | $ 867,195 |
| 32 TOTAL DISBURSEMENTS | $ 6,817,251 | $ 26,857,515 | $ 4,773,272 | $ 5,657,602 |
| 33 NET CASH FLOW | $ 6,947,179 | $ 3,031,058 | $ (2,189,431) | $ (426,195) |
| 34 CASH - END OF MONTH | $ 9,501,409 | $ 12,532,467 | $ 10,343,036 | $ 9,916,841 |

1     All postpetition receipts are included in line 3, Management Fees and Other Related Receipts.

**Monthly Operating Report**
ACCRUAL BASIS-3B

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

**OPERATING DISBURSMENTS - OTHER**

| Date | Amount | Vendor |
|---|---|---|
| 5/1/2020 | 389.32 | UPS Small Package |
| 5/1/2020 | 73.36 | Markit WSO Corporation |
| 5/1/2020 | 105.48 | Arkadin Inc |
| 5/1/2020 | 1,100.00 | Ace Parking Lot 3749 |
| 5/1/2020 | 1,745.14 | DTCC ITP LLC |
| 5/1/2020 | 4,812.82 | Liberty Life Assurance Co of Boston |
| 5/1/2020 | 4,975.90 | ASW Law Limited - USD Account |
| 5/1/2020 | 17,153.26 | Concur Technologies Inc |
| 5/1/2020 | 18,700.47 | Third Party Consultant |
| 5/1/2020 | 140,800.00 | Intex Solutions, Inc. |
| 5/1/2020 | 158,453.88 | Crescent TC Investors LP |
| 5/1/2020 | 307,026.32 | Bloomberg Finance LP |
| 5/4/2020 | 335.90 | AT&T |
| 5/8/2020 | 765.36 | ProStar Services, Inc |
| 5/8/2020 | 109.28 | Chase Couriers, Inc. |
| 5/8/2020 | 3,598.16 | AT&T |
| 5/8/2020 | 12,180.00 | M.Q. Services Ltd. |
| 5/8/2020 | 61,699.50 | Advent software, Inc. |
| 5/8/2020 | 189,332.14 | Siepe Services LLC |
| 5/11/2020 | 325.00 | USI Southwest, Inc. |
| 5/11/2020 | 3,989.97 | Chick-fil-A |
| 5/11/2020 | 1,476.50 | Verity Group |
| 5/11/2020 | 2,439.85 | Gold's Gym International |
| 5/11/2020 | 750.00 | Southland Property Tax Consultants, Inc |
| 5/12/2020 | 6,164.54 | TW Telecom Holdings, llc |
| 5/14/2020 | 228.05 | AT&T |
| 5/15/2020 | 5,063.10 | North Texas Trim And Hardware, LLC |
| 5/15/2020 | 28.00 | Ace Parking Management Inc. |
| 5/15/2020 | 7,995.00 | Intralinks |
| 5/15/2020 | 3,500.00 | MaplesFS Service Company Limited |
| 5/15/2020 | 681.05 | Houlihan Lokey |
| 5/12/2020 | 400.00 | Pitney |
| 5/14/2020 | 531.87 | Direct TV |
| 5/12/2020 | 2,584.26 | Xerox |
| 5/15/2020 | 3,981.82 | Standard Insurance |
| 5/19/2020 | 23,518.15 | ConvergeOne, Inc. |
| 5/19/2020 | 400.00 | Pitney Bowes- Purchase Power |
| 5/22/2020 | 4,812.82 | Liberty Life Assurance Company of Boston - Group Benefits |
| 5/22/2020 | 3,678.28 | BOK Financial Asset Management |
| 5/22/2020 | 2,250.17 | Arkadin, Inc. |
| 5/22/2020 | 1,828.02 | CDW Direct |
| 5/22/2020 | 1,388.22 | Ace Parking Management Inc. |
| 5/22/2020 | 586.81 | UPS Supply Chain Solutions |
| 5/22/2020 | 1,613.41 | ProStar Services, Inc |
| 5/18/2020 | 970.27 | AT&T |
| 5/19/2020 | 1,971.88 | Zayo Group |
| 5/19/2020 | 300.00 | Pitney Bowes Bank Inc- Reserve Acct |
| 5/20/2020 | 5,931.14 | AT&T |
| 5/22/2020 | 7,670.53 | Advent software, Inc. |
| 5/26/2020 | 900.00 | Crescent Research |
| 5/26/2020 | 300.00 | Delaware Secretary of State |
| 5/26/2020 | 25,835.58 | The Bureau of National Affairs, Inc |
| 5/27/2020 | 2,464.33 | Iron Mountain Records Management |
| 5/29/2020 | 20,065.56 | HE Asante, LLC |
| 5/29/2020 | 11,975.30 | Flexential Colorado Corp. |
| 5/26/2020 | 5,790.13 | Third Party Consultant |
| 5/29/2020 | 12,231.30 | Third Party Consultant |
| 5/29/2020 | 68,934.31 | MaplesFS Service Company Limited |
| 5/29/2020 | 108,356.01 | Maples and Calder |
| | $ 1,277,267.52 | |

**REORGANIZATION EXPENSES - OTHER**

| Date | Amount | Description |
|---|---|---|
| 5/1/2020 | 50,000.00 | Russell F. Nelms |
| 5/1/2020 | 50,000.00 | Dubel & Associates, LLC |
| 5/4/2020 | 50,000.00 | James P. Seery, Jr. |
| | 150,000.00 | |

**Monthly Operating Report**
ACCRUAL BASIS-4

| CASE NAME: | Highland Capital Management |
| CASE NUMBER: | 19-34054 |

| MGMT FEE RECEIVABLE AGING [2] | | February [3] | | March [3] | April [3] | May [3] |
|---|---|---|---|---|---|---|
| 1. | 0-30 | $ | 1,614,232 | $ | 1,835,632 | $2,583,565 | $1,839,132 |
| 2. | 31-60 | | | | | | |
| 3. | 61-90 | | | | | | |
| 4. | 91+ | | | | | | |
| 5. | TOTAL MGMT FEE RECEIVABLE | $ | 1,614,232 | $ | 1,835,632 | $ 2,583,565 | $1,839,132 |
| 6. | AMOUNT CONSIDERED UNCOLLECTIBLE | | | | | | |
| 7. | MGMT FEE RECEIVABLE (NET) | $ | 1,614,232 | $ | 1,835,632 | $ 2,583,565 | $1,839,132 |

| AGING OF POSTPETITION TAXES AND PAYABLES | | | | | MONTH: | Amended May 2020 |
|---|---|---|---|---|---|---|
| TAXES PAYABLE | 0-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS | | TOTAL |
| 1. FEDERAL | | | | | | $0 |
| 2. STATE | | | | | | $0 |
| 3. LOCAL | | | | | | $0 |
| 4. OTHER (ATTACH LIST) | | | | | | $0 |
| 5. TOTAL TAXES PAYABLE | $0 | $0 | $0 | $0 | | $0 |
| 6. ACCOUNTS PAYABLE | $703,643 | $24,656 | $123,368 | $203,806 | | $1,055,472 |

| STATUS OF POSTPETITION TAXES [1] | | | | MONTH: | Amended May 2020 |
|---|---|---|---|---|---|
| FEDERAL | BEGINNING TAX LIABILITY | AMOUNT WITHHELD AND/ 0R ACCRUED | AMOUNT PAID | | ENDING TAX LIABILITY |
| 1. WITHHOLDING | | | | | $0 |
| 2. FICA-EMPLOYEE | | | | | $0 |
| 3. FICA-EMPLOYER | | | | | $0 |
| 4. UNEMPLOYMENT | | | | | $0 |
| 5. INCOME | | | | | $0 |
| 6. OTHER (ATTACH LIST) | | | | | $0 |
| 7. TOTAL FEDERAL TAXES | $0 | $0 | $0 | | $0 |
| STATE AND LOCAL | | | | | |
| 8. WITHHOLDING | | | | | $0 |
| 9. SALES | | | | | $0 |
| 10. EXCISE | | | | | $0 |
| 11. UNEMPLOYMENT | | | | | $0 |
| 12. REAL PROPERTY | $0 | $0 | $0 | | $0 |
| 13. PERSONAL PROPERTY | | | | | $0 |
| 14. OTHER (ATTACH LIST) | | | | | $0 |
| 15. TOTAL STATE & LOCAL | $0 | $0 | $0 | | $0 |
| 16. TOTAL TAXES | $0 | $0 | $0 | | $0 |

1  The Debtor funds all state and federal employment taxes to Paylocity, who files all required federal and state related employment reports and withholdings.
2  Aging based on when management fee is due and payable.
3  All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process.

**Monthly Operating Report**
ACCRUAL BASIS-5

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

**MONTH:** Amended May  2020

**BANK RECONCILIATIONS**

| | | Account #1 | Account #2 | Account #3 | Account #4 | Account #5 | Account #6 | |
|---|---|---|---|---|---|---|---|---|
| A. | BANK: | East West Bank | East West Bank | Maxim Group | Jefferies LLC | Nexbank | East West Bank | |
| B. | ACCOUNT NUMBER: | x4686 | x4693 | x1885 | x0932 | x5891 | x5848 | TOTAL |
| C. | PURPOSE (TYPE): | Operating | Insurance | Brokerage | Brokerage | CD | Prepaid Card | |
| 1. | BALANCE PER BANK STATEMENT [1] | $  9,220,374 | $  393,363 | $  72,013 | $  - | $  137,009 | $  100,020 | $  9,922,781 |
| 2. | ADD: TOTAL DEPOSITS NOT CREDITED | | | | | | | $  - |
| 3. | SUBTRACT: OUTSTANDING CHECKS | $  5,940 | | | | | | $  5,940 |
| 4. | OTHER RECONCILING ITEMS | | | | | | | $  - |
| 5. | MONTH END BALANCE PER BOOKS | $  9,214,434 | $  393,363 | $  72,013 | $  - | $  137,009 | $  100,020 | $  9,916,841 |
| 6. | NUMBER OF LAST CHECK WRITTEN | 100505 | n/a | n/a | n/a | n/a | n/a | |

**INVESTMENT ACCOUNTS**

| | BANK, ACCOUNT NAME & NUMBER | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | | | | CURRENT VALUE |
|---|---|---|---|---|---|---|---|---|
| 7. | | | | | | | | |
| 8. | | | | | | | | |
| 9. | | | | | | | | |
| 10. | | | | | | | | |
| 11. | TOTAL INVESTMENTS | | | $0 | | | | $0 |

**CASH**

| | | |
|---|---|---|
| 12. | CURRENCY ON HAND | $0 |

| | | |
|---|---|---|
| 13. | TOTAL CASH - END OF MONTH | $9,916,841 |

1  Account x6342 is now closed.

**Monthly Operating Report**
ACCRUAL BASIS-6

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

MONTH: _Amended May 2020_

**PAYMENTS TO INSIDERS AND PROFESSIONALS**

| | INSIDERS | | | |
|---|---|---|---|---|
| NAME | | TYPE OF PAYMENT | AMOUNT PAID | TOTAL PAID POST PETITION |
| 1 | Frank Waterhouse | Salary | $29,167 | $218,750 |
| 2 | Frank Waterhouse | Expense Reimbursement | $436 | $3,659 |
| 3 | Scott Ellington | Salary | $37,500 | $281,250 |
| 4 | Scott Ellington | Expense Reimbursement | $766 | $4,826 |
| 5 | James Dondero | Salary | $0 | $129,972 |
| 6 | James Dondero | Expense Reimbursement [1] | $0 | $16,918 |
| 7 | Thomas Surgent | Salary | $33,333 | $250,000 |
| 8 | Thomas Surgent | Expense Reimbursement | $545 | $2,775 |
| 9 | Trey Parker | Salary | $0 | $131,250 |
| 10 | Trey Parker | Expense Reimbursement | $0 | $6,212 |
| | TOTAL PAYMENTS TO INSIDERS | | $101,747 | $1,045,611 |

[1] The total amount of reimbursements during the reporting month also included $11,573 for use of the credit card by the Debtor for office related expenses such as subscriptions, vending supplies, marketing and IT equipment/software.

| | PROFESSIONALS [2] | | | | | |
|---|---|---|---|---|---|---|
| NAME | | DATE OF MONTHLY FEE APPLICATION | AMOUNT APPROVED | AMOUNT PAID | TOTAL PAID TO DATE | TOTAL INCURRED & UNPAID |
| 1. | Kurtzman Carson Consultants LLC | | | | $214,005 | $165,739 |
| 2. | Sidley Austin LLP | | | | $1,538,374 | $3,269,620 |
| 3. | Young Conaway Stargatt & Taylor LLP | | | | $281,156 | $0 |
| 4. | FTI Consulting, Inc. | | | | $1,031,619 | $1,966,009 |
| 5. | Pachulski Stang Ziehl & Jones LLP | | | | $2,988,427 | $3,888,635 |
| 6 | Hayward & Associates PLLC | | $97,043 | $97,043 | $112,079 | $63,659 |
| 7 | Development Specialists, Inc. | | | | $1,099,973 | $254,029 |
| 8 | Foley & Lardner LLP | | | 398,127.12 | 398,127.12 | $157,832 |
| | TOTAL PAYMENTS TO PROFESSIONALS | | | $495,170 | $7,663,760 | $9,765,523 |

2 Does not include payments to ordinary course professionals.

**POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS**

| | NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POSTPETITION |
|---|---|---|---|---|
| 1. | Crescent TC Investors LP (rent portion only) | 130,364 | 130,364 | - |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | TOTAL | 130,364 | $130,364 | $0 |

**Monthly Operating Report**

**ACCRUAL BASIS-7**

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

**MONTH:** __Amended May 2020__

**QUESTIONNAIRE**

| | | YES | NO |
|---|---|---|---|
| 1. | HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | x |
| 2. | HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | | x |
| 3. | ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES, OR LOANS) DUE FROM RELATED PARTIES? | x | |
| 4. | HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | x | |
| 5. | HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | x |
| 6. | ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | x |
| 7. | ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | x |
| 8. | ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | x |
| 9. | ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | x |
| 10. | ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | x |
| 11. | HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | x |
| 12. | ARE ANY WAGE PAYMENTS PAST DUE? | | x |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES," PROVIDE A DETAILED EXPLANATION OF EACH ITEM. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| 3 | Debtor generates fee income and other receipts from various related parties in normal course, see cash management motion for further discussion. |
|---|---|
| 4 | Payments have been made on prepetition liabilities, as approved in the critical vendor motion. |

**INSURANCE**

| | | YES | NO |
|---|---|---|---|
| 1. | ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | x | |
| 2. | ARE ALL PREMIUM PAYMENTS PAID CURRENT? | x | |
| 3. | PLEASE ITEMIZE POLICIES BELOW. | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO," OR IF ANY POLICIES HAVE BEEN CANCELLED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN EXPLANATION BELOW. ATTACH ADDITIONAL SHEETS IF NECESSARY.

**INSTALLMENT PAYMENTS**

| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT 55

**Monthly Operating Report**
ACCRUAL BASIS

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |
| JUDGE: | Stacey Jernigan |

# UNITED STATES BANKRUPTCY COURT

Docket #0913  Date Filed: 08/03/2020

## NORTHERN & EASTERN DISTRICTS OF TEXAS

### REGION 6

### MONTHLY OPERATING REPORT

### MONTH ENDING: ___June___ ___2020___
MONTH                              YEAR

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT (ACCRUAL BASIS-1 THROUGH ACCRUAL BASIS-7) AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE. DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.

RESPONSIBLE PARTY:

_____                    Chief Restructuring Officer/ CEO
ORIGINAL SIGNATURE OF RESPONSIBLE PARTY                        TITLE

James Seery
PRINTED NAME OF RESPONSIBLE PARTY                             DATE

PREPARER:

_____                    Chief Financial Officer
ORIGINAL SIGNATURE OF PREPARER                                TITLE

Frank Waterhouse                                     07.31.20
PRINTED NAME OF PREPARER                                      DATE

**Monthly Operating Report**
**ACCRUAL BASIS-1**

| CASE NAME: | Highland Capital Management, LP |
|---|---|

| CASE NUMBER: | 19-12239-CSS |
|---|---|

**Comparative Balance Sheet**
(in thousands)

| | 10/15/2019 | 12/31/2019 [6] | 6/30/2020 [6] |
|---|---|---|---|
| **Assets** | | | |
| Cash and cash equivalents | 2,529 | 9,501 | 14,994 |
| Investments, at fair value [3] | 232,620 | 232,820 | 119,991 |
| Equity method investees [3] | 161,819 | 183,529 | 102,914 |
| Management and incentive fee receivable | 2,579 | 1,929 | 2,976 |
| Fixed assets, net | 3,754 | 3,521 | 3,055 |
| Due from affiliates [1] | 151,901 | 146,245 | 150,814 |
| Reserve against notes recievable | | (57,963) | (57,963) |
| Other assets | 11,311 | 11,493 | 14,962 |
| **Total assets** | $ 566,513 | $ 531,076 | $ 351,742 |
| | | | |
| **Liabilities and Partners' Capital** | | | |
| Pre-petition accounts payable [4] | 1,176 | 1,141 | 1,053 |
| Post-petition accounts payable [4] | - | 2,042 | 932 |
| Secured debt: | | | |
| Frontier | 5,195 | 5,195 | 5,195 |
| Jefferies | 30,328 | 30,020 | - |
| Accrued expenses and other liabilities [4] | 59,203 | 63,336 | 60,715 |
| Accrued re-organization related fees [5] | - | 5,532 | 10,745 |
| Claim accrual [2] | 73,997 | 73,997 | 73,997 |
| Partners' capital | 396,614 | 349,812 | 199,105 |
| **Total liabilities and partners' capital** | $ 566,513 | $ 531,076 | $ 351,742 |

[1] Includes various notes receivable at carrying value, except note due from Hunter Mountain Investment Trust which is fully reserved against ($58M reserve). Fair value has not been determined with respect to any of the notes.

[2] Uncontested portion of Redeemer claim less appplicable offsets. Potential for additional liability based on future events. No interest has been accrued beyond petition date.

[3] Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

[4] Note on accruals: expenses recorded in Accounts Payable and Accrued Expenses and Other Liabilities reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices. For balance sheet dates other than the Petition Date, amounts include both pre-petition and post-petition liabilities.

[5] Beginning December 31st, 2019, Debtor accrued for post-petition re-organization fees based upon an estimate of fees incurred to date.

[6] All balances at December 31st, 2019 are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, balances for subsequent months have and will fluctuate.

**Monthly Operating Report**
ACCRUAL BASIS-2

| CASE NAME: | Highland Capital Management, LP | |
| --- | --- | --- |
| | | |
| CASE NUMBER: | 19-12239-CSS | |

**Income Statement** [1]

(in thousands)

| | Date | Filing to Year Ended [4] | Month ended [4] | Filing to date [4] |
| --- | --- | --- | --- | --- |
| | 10/16/19 - 10/31/19 | 2019 | 6/30/2020 | |
| **Revenue:** | | | | |
| Management fees | 975 | 4,528 | 1,754 | 15,206 |
| Shared services fees | 283 | 1,588 | 601 | 5,279 |
| Other income | 99 | 1,582 | 145 | 4,583 |
| **Total operating revenue** | **1,357** | **7,697** | **2,500** | **25,068** |
| **Operating expenses:** | | | | |
| Compensation and benefits | 997 | 1,498 | 2,044 | 10,534 |
| Professional services | 256 | 64 | 187 | 1,332 |
| Investment research and consulting | 10 | 266 | 148 | 709 |
| Marketing and advertising expense | - | 370 | (8) | 422 |
| Depreciation expense | 82 | 244 | 76 | 709 |
| Bad debt expense reserve | - | 8,410 | - | 8,410 |
| Other operating expenses | 201 | 1,265 | 345 | 3,731 |
| **Total operating expenses** | **1,545** | **12,118** | **2,792** | **25,846** |
| **Operating income/(loss)** | **(188)** | **(4,421)** | **(292)** | **(779)** |
| **Other income/expense:** | | | | |
| Interest income | 250 | 1,230 | 482 | 4,133 |
| Interest expense | (107) | (346) | (47) | (813) |
| Reserve against notes receivable | - | (57,963) | - | (57,963) |
| Re-org related expenses [2] | - | (5,532) | (2,813) | (21,932) |
| Independent director fees | - | - | (207) | (1,122) |
| Other income/expense | 32 | 32 | (1) | (102) |
| **Total other income/expense** | **175** | **(62,579)** | **(2,585)** | **(77,799)** |
| Net realized gains/(losses) on investments | 339 | 618 | (3,113) | (27,800) |
| Net change in unrealized gains/(losses) of investments [3] | 2,654 | (955) | 5,236 | (30,884) |
| | **2,993** | **(337)** | **2,123** | **(58,684)** |
| **Net earnings/(losses) from equity method investees** [3] | (20) | 14,918 | (4,558) | (65,864) |
| **Net income/(loss)** | **$ 2,959** | **$ (52,419)** | **$ (5,311)** | **$ (203,126)** |

(1) Note on accruals: expenses recorded in the Income Statement reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.

(2) Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed as of the petition date.

(3) Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

(4) All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, operating results will change as these entries are made.

<div align="right">

**Monthly Operating Report**
ACCRUAL BASIS-3A

</div>

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| CASH RECEIPTS AND DISBURSEMENTS | FILING TO YEAR END 2019 | QUARTER | APRIL | MAY | JUNE | QUARTER |
|---|---|---|---|---|---|---|
| 1. CASH - BEGINNING OF MONTH | $ 2,554,230 | $ 9,501,409 | $ 12,532,467 | $ 10,343,036 | $ 9,916,841 | $ 12,532,467 |
| **RECEIPTS FROM OPERATIONS** | | | | | | |
| 2. OTHER OPERATING RECEIPTS | $ 1,862,757 | $ 1,379,338 | $ 825,387 | $ 1,687,854 | $ 469,980 | $ 2,983,221 |
| 3. MANAGEMENT FEES AND OTHER RELATED RECEIPTS | $ 3,156,742 | $ 7,555,297 | $ 1,708,720 | $ 3,188,304 | $ 1,282,412 | $ 6,179,437 |
| **COLLECTION OF ACCOUNTS RECEIVABLE** | | | | | | |
| 4. PREPETITION | $ 3,593,108 | $ 76,569 | $ 3,727 | $ - | $ - | $ 3,727 |
| 5. POSTPETITION [1] | $ - | $ - | $ - | $ - | $ - | $ - |
| 6. TOTAL OPERATING RECEIPTS | $ 8,612,608 | $ 9,011,204 | $ 2,537,834 | $ 4,876,158 | $ 1,752,392 | $ 9,166,385 |
| **NON-OPERATING RECEIPTS** | | | | | | |
| 7. THIRD PARTY FUND ACTUAL/EXPECTED DISTRIBUTIONS | $ 423,468 | $ 18,992,786 | $ - | $ 319,242 | $ 478,329 | $ 797,571 |
| 8. DIVS, PAYDOWNS, MISC FROM INVESTMENT ASSETS | $ 1,338,069 | $ 477,479 | $ 36,007 | $ 36,007 | $ 2,363 | $ 74,376 |
| 9. OTHER (ATTACH LIST) | $ 3,390,286 | $ 1,407,103 | $ 10,000 | $ - | $ 10,000,000 | $ 10,010,000 |
| 10. TOTAL NON-OPERATING RECEIPTS | $ 5,151,822 | $ 20,877,369 | $ 46,007 | $ 355,249 | $ 10,480,691 | $ 10,881,947 |
| 11. TOTAL RECEIPTS | $ 13,764,430 | $ 29,888,573 | $ 2,583,841 | $ 5,231,407 | $ 12,233,084 | $ 20,048,331 |
| 12. TOTAL CASH AVAILABLE | | | $ 15,116,308 | $ 15,574,443 | $ 22,149,925 | |
| **OPERATING DISBURSEMENTS** | | | | | | |
| 13. PAYROLL, BENEFITS, AND TAXES + EXP REIMB | $ 3,776,446 | $ 8,825,042 | $ 1,441,850 | $ 1,183,140 | $ 2,261,324 | $ 4,886,314 |
| 14. SINGAPORE SERVICE FEES | $ 95,118 | $ 58,129 | $ 2,965 | $ - | $ - | $ 2,965 |
| 15. HCM LATIN AMERICA | $ 200,000 | $ 100,000 | $ - | $ - | $ - | $ - |
| 16. THIRD PARTY FUND CAPITAL CALL OBLIGATION | $ 1,426,987 | $ 7,812,469 | $ 726,000 | $ 2,000,000 | $ 361,163 | $ 3,087,163 |
| 17. UTILITIES | $ - | $ - | $ - | $ - | $ - | $ - |
| 18. INSURANCE | $ - | $ 533,940 | $ 10,500 | $ 330,000 | $ 35,876 | $ 376,376 |
| 19. INVENTORY PURCHASES | $ - | $ - | $ - | $ - | $ - | $ - |
| 20. VEHICLE EXPENSES | $ - | $ - | $ - | $ - | $ - | $ - |
| 21. TRAVEL | $ - | $ - | $ - | $ - | $ - | $ - |
| 22. ENTERTAINMENT | $ - | $ - | $ - | $ - | $ - | $ - |
| 23. REPAIRS & MAINTENANCE | $ - | $ - | $ - | $ - | $ - | $ - |
| 24. SUPPLIES | $ - | $ - | $ - | $ - | $ - | $ - |
| 25. ADVERTISING | $ - | $ - | $ - | $ - | $ - | $ - |
| 26. OTHER (ATTACH LIST) | $ 1,318,700 | $ 3,283,898 | $ 851,659 | $ 1,277,268 | $ 1,066,127 | $ 3,195,054 |
| 27. TOTAL OPERATING DISBURSEMENTS | $ 6,817,251 | $ 20,613,478 | $ 3,032,974 | $ 4,790,407 | $ 3,724,490 | $ 11,547,870 |
| **REORGANIZATION EXPENSES** | | | | | | |
| 28. PROFESSIONAL FEES | $ - | $ 5,460,546 | $ 1,740,298 | $ 550,170 | $ 3,281,564 | $ 5,572,032 |
| 29. U.S. TRUSTEE FEES | $ - | $ 68,173 | $ - | $ 167,025 | $ - | $ 167,025 |
| 30. OTHER (ATTACH LIST) | $ - | $ 715,317 | $ - | $ 150,000 | $ 150,000 | $ 300,000 |
| 31. TOTAL REORGANIZATION EXPENSES | $ - | $ 6,244,037 | $ 1,740,298 | $ 867,195 | $ 3,431,564 | $ 6,039,057 |
| 32. TOTAL DISBURSEMENTS | $ 6,817,251 | $ 26,857,515 | $ 4,773,272 | $ 5,657,602 | $ 7,156,053 | $ 17,586,927 |
| 33. NET CASH FLOW | $ 6,947,179 | $ 3,031,058 | $ (2,189,431) | $ (426,195) | $ 5,077,030 | $ 2,461,404 |
| 34. CASH - END OF MONTH | $ 9,501,409 | $ 12,532,467 | $ 10,343,036 | $ 9,916,841 | $ 14,993,872 | $ 14,993,872 |

1  All postpetition receipts are included in line 3, Management Fees and Other Related Receipts.

**Monthly Operating Report**
ACCRUAL BASIS-3B

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

**NON-OPERATING RECEIPTS - OTHER**

| Date | Amount | Type |
|---|---|---|
| | 10,000,000.00 | Sale of Various Jefferies Assets |

**OPERATING DISBURSMENTS - OTHER**

| Date | Amount | Vendor |
|---|---|---|
| 6/1/2020 | 516 | PACER Service Center |
| 6/5/2020 | 12,014 | Flexential Colorado Corp. |
| 6/5/2020 | 8,427 | GRUBHUB for Work |
| 6/5/2020 | 43,932 | Metlife |
| 6/5/2020 | 11,770 | ABM |
| 6/5/2020 | 100 | UPS Supply Chain Solutions |
| 6/5/2020 | 5,074 | Centroid |
| 6/5/2020 | 300 | Action Shred of Texas |
| 6/5/2020 | 2,190 | Canteen Vending Services |
| 6/5/2020 | 703 | Arkadin, Inc. |
| 6/1/2020 | 29,853 | Third Party Consultant |
| 6/1/2020 | 160,018 | Crescent TC Investors LP |
| 6/2/2020 | 300 | eCorp Tax E-CHECK |
| 6/2/2020 | 336 | ATT |
| 6/5/2020 | 58,260 | Carey Olsen |
| 6/8/2020 | 1,692 | ORACLE AMERICA, INC |
| 6/8/2020 | 103,402 | Markit North America Inc. |
| 6/8/2020 | 16,790 | S&P Global Market Intelligence |
| 6/8/2020 | 7,117 | MacroMavens, LLC |
| 6/9/2020 | 3,574 | AT&T |
| 6/10/2020 | 6,392 | TW Telecom Holdings, llc |
| 6/12/2020 | 35,200 | Intex Solutions, Inc. |
| 6/12/2020 | 20,000 | Sage Search Partners |
| 6/12/2020 | 8,120 | Concur Technologies, Inc. |
| 6/12/2020 | 5,913 | Thomson West |
| 6/12/2020 | 3,000 | McLagan Partners |
| 6/12/2020 | 1,756 | Ace Parking Management Inc. |
| 6/12/2020 | 1,192 | CDW Direct |
| 6/12/2020 | 604 | Frank Russell Company |
| 6/12/2020 | 299 | Franke Foodservice Solutions |
| 6/12/2020 | 225 | Four Seasons Plantscaping, LLC |
| 6/12/2020 | 183,912 | Siepe Services, LLC |
| 6/12/2020 | 30 | Chase Couriers |
| 6/16/2020 | 405 | East West Bank |
| 6/17/2020 | 941 | ATT |
| 6/17/2020 | 1,972 | Zayo group |
| 6/26/2020 | 417 | Four Seasons Plantscaping, LLC |
| 6/26/2020 | 4,854 | Liberty Life Assurance Company of Boston - Group Benefits |
| 6/26/2020 | 146 | Secured Access Systems, LLC |
| 6/26/2020 | 75 | MARKIT WSO CORPORATION |
| 6/26/2020 | 23,750 | Sage Search Partners |
| 6/26/2020 | 1,394 | GRUBHUB for Work |
| 6/26/2020 | 389 | UPS Supply Chain Solutions |
| 6/26/2020 | 18,042 | Siepe Software, LLC |
| 6/22/2020 | 5,786 | ATT |
| 6/22/2020 | 35,467 | Ace Parking Lot 3749 |
| 6/23/2020 | 549 | Pitney Bowes |
| 6/24/2020 | 783 | Xerox Corp |
| 6/26/2020 | 19,720 | LinkedIn Corporation |
| 6/26/2020 | 38,930 | Carey Olsen |
| 6/26/2020 | 142,594 | Houlihan Lokey Financial Advisors |
| 6/29/2020 | 20,681 | Strategas Securities LLC |
| 6/30/2020 | 2,498 | Iron Mountain |
| 6/30/2020 | 2,722 | Iron Mountain |
| 6/30/2020 | 11,000 | Third Party Consultant |
| | 1,066,127 | |

**REORGANIZATION EXPENSES - OTHER**

| Date | Amount | Description |
|---|---|---|
| 6/1/2020 | 50,000 | Nelms and Associates |
| 6/1/2020 | 50,000 | J.P. Seery & Co. LLC |
| 6/1/2020 | 50,000 | Dubel & Associates, LLC |
| | 150,000 | |

**Monthly Operating Report**
ACCRUAL BASIS-4

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| MGMT FEE RECEIVABLE AGING [2] | | March [3] | | April [3] | | May [3] | June [3] |
|---|---|---|---|---|---|---|---|
| 1. | 0-30 | $ | 1,835,632 | $ | 2,583,565 | $1,839,132 | $1,813,292 |
| 2. | 31-60 | | | | | | $1,163,000 |
| 3. | 61-90 | | | | | | |
| 4. | 91+ | | | | | | |
| 5. | TOTAL MGMT FEE RECEIVABLE | $ | 1,835,632 | $ | 2,583,565 | $ 1,839,132 | $2,976,292 |
| 6. | AMOUNT CONSIDERED UNCOLLECTIBLE | | | | | | |
| 7. | MGMT FEE RECEIVABLE (NET) | $ | 1,835,632 | $ | 2,583,565 | $ 1,839,132 | $2,976,292 |

**AGING OF POSTPETITION TAXES AND PAYABLES**          MONTH: June 2020

| TAXES PAYABLE | 0-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS | TOTAL |
|---|---|---|---|---|---|
| 1. FEDERAL | | | | | $0 |
| 2. STATE | | | | | $0 |
| 3. LOCAL | | | | | $0 |
| 4. OTHER (ATTACH LIST) | | | | | $0 |
| 5. TOTAL TAXES PAYABLE | $0 | $0 | $0 | $0 | $0 |

| 6. ACCOUNTS PAYABLE | $679,568 | $9,655 | $41,511 | $201,232 | $931,966 |
|---|---|---|---|---|---|

**STATUS OF POSTPETITION TAXES [1]**          MONTH: June 2020

| FEDERAL | BEGINNING TAX LIABILITY | AMOUNT WITHHELD AND/OR ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY |
|---|---|---|---|---|
| 1. WITHHOLDING | | | | $0 |
| 2. FICA-EMPLOYEE | | | | $0 |
| 3. FICA-EMPLOYER | | | | $0 |
| 4. UNEMPLOYMENT | | | | $0 |
| 5. INCOME | | | | $0 |
| 6. OTHER (ATTACH LIST) | | | | $0 |
| 7. TOTAL FEDERAL TAXES | $0 | $0 | $0 | $0 |
| STATE AND LOCAL | | | | |
| 8. WITHHOLDING | | | | $0 |
| 9. SALES | | | | $0 |
| 10. EXCISE | | | | $0 |
| 11. UNEMPLOYMENT | | | | $0 |
| 12. REAL PROPERTY | $0 | $0 | $0 | $0 |
| 13. PERSONAL PROPERTY | | | | $0 |
| 14. OTHER (ATTACH LIST) | | | | $0 |
| 15. TOTAL STATE & LOCAL | $0 | $0 | $0 | $0 |
| 16. TOTAL TAXES | $0 | $0 | $0 | $0 |

1  The Debtor funds all state and federal employment taxes to Paylocity, who files all required federal and state related employment reports and withholdings.
2  Aging based on when management fee is due and payable.
3  All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process.

**Monthly Operating Report**
ACCRUAL BASIS-5

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

**BANK RECONCILIATIONS**

MONTH: June 2020

| | | Account #1 | Account #2 | Account #3 | Account #4 | Account #5 | Account #6 | |
|---|---|---|---|---|---|---|---|---|
| A. | BANK: | East West Bank | East West Bank | Maxim Group | Jefferies LLC | Nexbank | East West Bank | |
| B. | ACCOUNT NUMBER: | x4686 | x4693 | x1885 | x0932 | x5891 | x5848 | TOTAL |
| C. | PURPOSE (TYPE): | Operating | Insurance | Brokerage | Brokerage | CD | Prepaid Card | |
| 1. | BALANCE PER BANK STATEMENT [1] | $    14,581,744 | $    174,140 | $    30 | $    - | $    137,929 | $    100,028 | $    14,993,871 |
| 2. | ADD: TOTAL DEPOSITS NOT CREDITED | | | | | | | $    - |
| 3. | SUBTRACT: OUTSTANDING CHECKS | | | | | | | $    - |
| 4. | OTHER RECONCILING ITEMS | | | | | | | $    - |
| 5. | MONTH END BALANCE PER BOOKS | $    14,581,744 | $    174,140 | $    30 | $    - | $    137,929 | $    100,028 | $    14,993,871 |
| 6. | NUMBER OF LAST CHECK WRITTEN | 100508 | n/a | n/a | n/a | n/a | n/a | |

**INVESTMENT ACCOUNTS**

| | | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | | | | CURRENT VALUE |
|---|---|---|---|---|---|---|---|---|
| 7. | | | | | | | | |
| 8. | | | | | | | | |
| 9. | | | | | | | | |
| 10. | | | | | | | | |
| 11. | TOTAL INVESTMENTS | | | $0 | | | | $0 |

**CASH**

| | | | |
|---|---|---|---|
| 12. | CURRENCY ON HAND | | $0 |

| | | |
|---|---|---|
| 13. | **TOTAL CASH - END OF MONTH** | $14,993,871 |

1    Account x6342 is now closed.

**Monthly Operating Report**
**ACCRUAL BASIS-6**

| CASE NAME: | Highland Capital Management |
| --- | --- |
| CASE NUMBER: | 19-34054 |

MONTH: _____ June 2020 _____

**PAYMENTS TO INSIDERS AND PROFESSIONALS**

| | INSIDERS | | | |
| --- | --- | --- | --- | --- |
| | NAME | TYPE OF PAYMENT | AMOUNT PAID | TOTAL PAID POST PETITION |
| 1 | Frank Waterhouse | Salary | $29,167 | $247,917 |
| 2 | Frank Waterhouse | Expense Reimbursement | $615 | $4,274 |
| 3 | Scott Ellington | Salary | $37,500 | $318,750 |
| 4 | Scott Ellington | Expense Reimbursement | $244 | $5,069 |
| 5 | James Dondero | Salary | $0 | $129,972 |
| 6 | James Dondero | Expense Reimbursement [1] | $0 | $16,918 |
| 7 | Thomas Surgent | Salary | $33,333 | $283,333 |
| 8 | Thomas Surgent | Expense Reimbursement | $224 | $2,999 |
| 9 | Trey Parker | Salary | $0 | $131,250 |
| 10 | Trey Parker | Expense Reimbursement | $0 | $6,212 |
| | TOTAL PAYMENTS TO INSIDERS | | $101,082 | $1,146,694 |

[1] The total amount of reimbursements during the reporting month also included $16,497 for use of the credit card by the Debtor for office related expenses such as subscriptions, vending supplies, marketing and IT equipment/software.

| | PROFESSIONALS [2] | | | | |
| --- | --- | --- | --- | --- | --- |
| | NAME | DATE OF MONTHLY FEE APPLICATION | AMOUNT APPROVED | AMOUNT PAID | TOTAL PAID TO DATE | TOTAL INCURRED & UNPAID |
| 1. | Kurtzman Carson Consultants LLC | | $44,399 | $44,399 | $258,404 | $82,851 |
| 2. | Sidley Austin LLP | | $1,672,840 | $1,672,840 | $3,211,214 | $1,284,149 |
| 3. | Young Conaway Stargatt & Taylor LLP | | | | $281,156 | $0 |
| 4. | FTI Consulting, Inc. | | 734,998.00 | 734,998.00 | $1,766,617 | $522,912 |
| 5. | Pachulski Stang Ziehl & Jones LLP | | $722,244 | 722,243.95 | $3,710,671 | $1,852,579 |
| 6 | Hayward & Associates PLLC | | $26,620 | $26,620 | $138,699 | $24,914 |
| 7 | Development Specialists, Inc. | | | | $1,864,005 | $0 |
| 8 | Foley & Lardner LLP | | $80,464 | 80,463.92 | 446,956.52 | $157,832 |
| | TOTAL PAYMENTS TO PROFESSIONALS | | $3,281,564 | | $11,677,721 | $3,925,237 |

2 Does not include payments to ordinary course professionals.

**POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS**

| | NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POSTPETITION |
| --- | --- | --- | --- | --- |
| 1. | Crescent TC Investors LP (rent portion only) | 130,364 | 130,364 | - |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | TOTAL | 130,364 | $130,364 | $0 |

<div align="right">

# Monthly Operating Report
### ACCRUAL BASIS-7

</div>

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

**MONTH:** _____ June 2020 _____

## QUESTIONNAIRE

|  | YES | NO |
|---|:---:|:---:|
| 1. HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? |  | x |
| 2. HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? |  | x |
| 3. ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES, OR LOANS) DUE FROM RELATED PARTIES? | x |  |
| 4. HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | x |  |
| 5. HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? |  | x |
| 6. ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? |  | x |
| 7. ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? |  | x |
| 8. ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? |  | x |
| 9. ARE ANY OTHER POSTPETITION TAXES PAST DUE? |  | x |
| 10. ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? |  | x |
| 11. HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? |  | x |
| 12. ARE ANY WAGE PAYMENTS PAST DUE? |  | x |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES," PROVIDE A DETAILED
EXPLANATION OF EACH ITEM. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| 3 | Debtor generates fee income and other receipts from various related parties in normal course, see cash management motion for further discussion. |
|---|---|
| 4 | Payments have been made on prepetition liabilities, as approved in the critical vendor motion. |

## INSURANCE

|  | YES | NO |
|---|:---:|:---:|
| 1. ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | x |  |
| 2. ARE ALL PREMIUM PAYMENTS PAID CURRENT? | x |  |
| 3. PLEASE ITEMIZE POLICIES BELOW. |  |  |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO," OR IF ANY POLICIES HAVE BEEN
CANCELLED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN EXPLANATION
BELOW. ATTACH ADDITIONAL SHEETS IF NECESSARY.

### INSTALLMENT PAYMENTS

| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

# EXHIBIT 56

**Monthly Operating Report**
ACCRUAL BASIS

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

| JUDGE: Stacey Jernigan |
|---|

# UNITED STATES BANKRUPTCY COURT

## NORTHERN & EASTERN DISTRICTS OF TEXAS

## REGION 6

## MONTHLY OPERATING REPORT

### MONTH ENDING:   July   2020
                     MONTH     YEAR

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT (ACCRUAL BASIS-1 THROUGH ACCRUAL BASIS-7) AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE. DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.

RESPONSIBLE PARTY:

_____
ORIGINAL SIGNATURE OF RESPONSIBLE PARTY

James Seery
PRINTED NAME OF RESPONSIBLE PARTY

Chief Restructuring Officer/ Chief Executive Officer
                    TITLE

9-1-20
                    DATE

PREPARER:

_____
ORIGINAL SIGNATURE OF PREPARER

Frank Waterhouse
PRINTED NAME OF PREPARER

Chief Financial Officer
                    TITLE

8.31.20
                    DATE

1934054200901000000000001

**Monthly Operating Report**
**ACCRUAL BASIS-1**

| CASE NAME: | Highland Capital Management, LP |
|---|---|
| CASE NUMBER: | 19-12239-CSS |

**Comparative Balance Sheet**
(in thousands)

| | 10/15/2019 | 12/31/2019 [6] | 7/31/2020 [6] |
|---|---|---|---|
| **Assets** | | | |
| Cash and cash equivalents | 2,529 | 9,501 | 9,824 |
| Investments, at fair value [3] | 232,620 | 232,820 | 116,841 |
| Equity method investees [3] | 161,819 | 183,529 | 99,748 |
| Management and incentive fee receivable | 2,579 | 1,929 | 3,714 |
| Fixed assets, net | 3,754 | 3,521 | 2,977 |
| Due from affiliates [1] | 151,901 | 146,245 | 148,633 |
| Reserve against notes recievable | | (57,963) | (57,963) |
| Other assets | 11,311 | 11,493 | 15,332 |
| **Total assets** | **$ 566,513** | **$ 531,076** | **$ 339,106** |
| | | | |
| **Liabilities and Partners' Capital** | | | |
| Pre-petition accounts payable [4] | 1,176 | 1,141 | 1,051 |
| Post-petition accounts payable [4] | - | 2,042 | 670 |
| Secured debt: | | | |
| Frontier | 5,195 | 5,195 | 5,195 |
| Jefferies | 30,328 | 30,020 | - |
| Accrued expenses and other liabilities [4] | 59,203 | 63,275 | 61,416 |
| Accrued re-organization related fees [5] | - | 5,547 | 6,561 |
| Claim accrual [2] | 73,997 | 73,997 | 73,997 |
| Partners' capital | 396,614 | 349,857 | 190,217 |
| **Total liabilities and partners' capital** | **$ 566,513** | **$ 531,076** | **$ 339,106** |

[1] Includes various notes receivable at carrying value, except note due from Hunter Mountain Investment Trust which is fully reserved against ($58M reserve). Fair value has not been determined with respect to any of the notes.

[2] Uncontested portion of Redeemer claim less appplicable offsets. Potential for additional liability based on future events. No interest has been accrued beyond petition date.

[3] Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

[4] Note on accruals: expenses recorded in Accounts Payable and Accrued Expenses and Other Liabilities reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices. For balance sheet dates other than the Petition Date, amounts include both pre-petition and post-petition liabilities.

[5] Beginning December 31st, 2019, Debtor accrued for post-petition re-organization fees based upon an estimate of fees incurred to date.

[6] All balances at December 31st, 2019 are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, balances for subsequent months have and will fluctuate.

**Monthly Operating Report**
ACCRUAL BASIS-2

| CASE NAME: | Highland Capital Management, LP | |
|---|---|---|
| CASE NUMBER: | 19-12239-CSS | |

**Income Statement[1]**
(in thousands)

| | Date | Filing to Year Ended [4] | Month ended [4] | Filing to date [4] |
|---|---|---|---|---|
| | 10/16/19 - 10/31/19 | 2019 | 7/31/2020 | |
| **Revenue:** | | | | |
| Management fees | 975 | 4,528 | 1,405 | 16,611 |
| Shared services fees | 283 | 1,588 | 721 | 6,000 |
| Other income | 99 | 1,582 | 41 | 4,624 |
| **Total operating revenue** | **1,357** | **7,697** | **2,167** | **27,234** |
| **Operating expenses:** | | | | |
| Compensation and benefits | 997 | 1,498 | 1,686 | 12,221 |
| Professional services | 256 | 64 | 257 | 1,589 |
| Investment research and consulting | 10 | 266 | 5 | 714 |
| Marketing and advertising expense | - | 370 | 30 | 452 |
| Depreciation expense | 82 | 244 | 78 | 786 |
| Bad debt expense reserve | - | 8,410 | - | 8,410 |
| Other operating expenses | 201 | 1,265 | 376 | 4,106 |
| **Total operating expenses** | **1,545** | **12,118** | **2,432** | **28,278** |
| **Operating income/(loss)** | **(188)** | **(4,421)** | **(265)** | **(1,044)** |
| **Other income/expense:** | | | | |
| Interest income | 250 | 1,230 | 497 | 4,630 |
| Interest expense | (107) | (286) | 121 | (632) |
| Reserve against notes receivable | - | (57,963) | - | (57,963) |
| Re-org related expenses [2] | - | (5,547) | (1,760) | (23,708) |
| Independent director fees | - | - | (495) | (1,617) |
| Other income/expense | 32 | 32 | (31) | (132) |
| **Total other income/expense** | **175** | **(62,534)** | **(1,668)** | **(79,422)** |
| Net realized gains/(losses) on investments | 339 | 618 | (763) | (28,562) |
| Net change in unrealized gains/(losses) of investments [3] | 2,654 | (955) | (3,073) | (33,957) |
| | **2,993** | **(337)** | **(3,835)** | **(62,519)** |
| **Net earnings/(losses) from equity method investees** [3] | (20) | 14,918 | (3,166) | (69,030) |
| **Net income/(loss)** | **$ 2,959** | **$ (52,374)** | **$ (8,934)** | **$ (212,014)** |

(1) Note on accruals: expenses recorded in the Income Statement reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.

(2) Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed as of the petition date.

(3) Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

(4) All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, operating results will change as these entries are made.

**Monthly Operating Report**
**ACCRUAL BASIS-3A**

| CASE NAME: | Highland Capital Management |
| --- | --- |
| CASE NUMBER: | 19-34054 |

| CASH RECEIPTS AND DISBURSEMENTS | | FILING TO YEAR END 2019 | | QUARTER | | QUARTER | | JULY |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1. | CASH - BEGINNING OF MONTH | $ | 2,554,230 | $ | 9,501,409 | $ | 12,532,467 | $ | 14,993,872 |
| **RECEIPTS FROM OPERATIONS** | | | | | | | | |
| 2. | OTHER OPERATING RECEIPTS | $ | 1,862,757 | $ | 1,379,338 | $ | 2,983,221 | $ | 758,938 |
| 3 | MANAGEMENT FEES AND OTHER RELATED RECEIPTS | $ | 3,156,742 | $ | 7,555,297 | $ | 6,179,437 | $ | 1,298,474 |
| **COLLECTION OF ACCOUNTS RECEIVABLE** | | | | | | | | |
| 4 | PREPETITION | $ | 3,593,108 | $ | 76,569 | $ | 3,727 | $ | - |
| 5 | POSTPETITION [1] | $ | - | $ | - | $ | - | $ | - |
| 6 | TOTAL OPERATING RECEIPTS | $ | 8,612,608 | $ | 9,011,204 | $ | 9,166,385 | $ | 2,057,412 |
| **NON-OPERATING RECEIPTS** | | | | | | | | |
| 7 | THIRD PARTY FUND ACTUAL/EXPECTED DISTRIBUTIONS | $ | 423,468 | $ | 18,992,786 | $ | 797,571 | $ | - |
| 8 | DIVS, PAYDOWNS, MISC FROM INVESTMENT ASSETS | $ | 1,338,069 | $ | 477,479 | $ | 74,376 | $ | 1,772 |
| 9 | OTHER (ATTACH LIST) | $ | 3,390,286 | $ | 1,407,103 | $ | 10,010,000 | $ | 3,750,000 |
| 10 | TOTAL NON-OPERATING RECEIPTS | $ | 5,151,822 | $ | 20,877,369 | $ | 10,881,947 | $ | 3,751,772 |
| 11 | TOTAL RECEIPTS | $ | 13,764,430 | $ | 29,888,573 | $ | 20,048,331 | $ | 5,809,183 |
| 12 | TOTAL CASH AVAILABLE | | | | | | | $ | 20,803,055 |
| **OPERATING DISBURSEMENTS** | | | | | | | | |
| 13 | PAYROLL, BENEFITS, AND TAXES + EXP REIMB | $ | 3,776,446 | $ | 8,825,042 | $ | 4,886,314 | $ | 2,243,199 |
| 14 | SINGAPORE SERVICE FEES | $ | 95,118 | $ | 58,129 | $ | 2,965 | $ | - |
| 15 | HCM LATIN AMERICA | $ | 200,000 | $ | 100,000 | $ | - | $ | - |
| 16 | THIRD PARTY FUND CAPITAL CALL OBLIGATION | $ | 1,426,987 | $ | 7,812,469 | $ | 3,087,163 | $ | 979,631 |
| 17 | UTILITIES | $ | - | $ | - | $ | - | $ | - |
| 18 | INSURANCE | $ | - | $ | 533,940 | $ | 376,376 | $ | - |
| 19 | INVENTORY PURCHASES | $ | - | $ | - | $ | - | $ | - |
| 20 | VEHICLE EXPENSES | $ | - | $ | - | $ | - | $ | - |
| 21 | TRAVEL | $ | - | $ | - | $ | - | $ | - |
| 22 | ENTERTAINMENT | $ | - | $ | - | $ | - | $ | - |
| 23 | REPAIRS & MAINTENANCE | $ | - | $ | - | $ | - | $ | - |
| 24 | SUPPLIES | $ | - | $ | - | $ | - | $ | - |
| 25 | ADVERTISING | $ | - | $ | - | $ | - | $ | - |
| 26 | OTHER (ATTACH LIST) | $ | 1,318,700 | $ | 3,283,898 | $ | 3,195,054 | $ | 1,254,939 |
| 27 | TOTAL OPERATING DISBURSEMENTS | $ | 6,817,251 | $ | 20,613,478 | $ | 11,547,870 | $ | 4,477,770 |
| **REORGANIZATION EXPENSES** | | | | | | | | |
| 28 | PROFESSIONAL FEES | $ | - | $ | 5,460,546 | $ | 5,572,032 | $ | 5,959,765 |
| 29 | U.S. TRUSTEE FEES | $ | - | $ | 68,173 | $ | 167,025 | $ | 505 |
| 30 | OTHER (ATTACH LIST) | $ | - | $ | 715,317 | $ | 300,000 | $ | 541,289 |
| 31 | TOTAL REORGANIZATION EXPENSES | $ | - | $ | 6,244,037 | $ | 6,039,057 | $ | 6,501,559 |
| 32 | TOTAL DISBURSEMENTS | $ | 6,817,251 | $ | 26,857,515 | $ | 17,586,927 | $ | 10,979,329 |
| 33 | NET CASH FLOW | $ | 6,947,179 | $ | 3,031,058 | $ | 2,461,404 | $ | (5,170,145) |
| 34 | CASH - END OF MONTH | $ | 9,501,409 | $ | 12,532,467 | $ | 14,993,872 | $ | 9,823,726 |

[1]  All postpetition receipts are included in line 3, Management Fees and Other Related Receipts.

**Monthly Operating Report**
ACCRUAL BASIS-3B

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

**NON-OPERATING RECEIPTS - OTHER**

| Date | Amount | Type |
|---|---|---|
| 7/29/2020 | 3,750,000.00 | Highland Multi Strategy Credit Fund post-petition loan receipt |

**OPERATING DISBURSEMENTS - OTHER**

| Date | Amount | Vendor |
|---|---|---|
| 7/1/2020 | 170,277 | Crescent TC Investors LP |
| 7/2/2020 | 18,042 | Siepe Software, LLC |
| 7/2/2020 | 2,977 | Open Text Inc. |
| 7/2/2020 | 2,376 | Nitro Software, Inc. |
| 7/2/2020 | 2,216 | Options Price Reporting Authority |
| 7/2/2020 | 2,025 | Crescent Research |
| 7/2/2020 | 863 | Verity Group |
| 7/2/2020 | 600 | Action Shred of Texas |
| 7/2/2020 | 354 | PCA-VALET, INC |
| 7/2/2020 | 307 | UPS Supply Chain Solutions |
| 7/2/2020 | 192 | Canteen Vending Services |
| 7/2/2020 | 30 | CHASE COURIERS, INC |
| 7/2/2020 | 18,284 | Ace Parking Management Inc. |
| 7/1/2020 | 31,641 | Third Party Consultant |
| 7/1/2020 | 18,236 | Bloomberg Finance LP |
| 7/2/2020 | 7,000 | EPC Group |
| 7/2/2020 | 23,384 | John Hancock U.S.A. |
| 7/2/2020 | 160,139 | Siepe Services LLC |
| 7/3/2020 | 336 | ATT |
| 7/3/2020 | 532 | DirecTV |
| 7/10/2020 | 70,400 | Intex Solutions, Inc. |
| 7/10/2020 | 104 | UPS Supply Chain Solutions |
| 7/10/2020 | 5,885 | ABM |
| 7/10/2020 | 1,248 | ProStar Services, Inc |
| 7/10/2020 | 915 | Canteen Vending Services |
| 7/10/2020 | 9,592 | Hedgeye Risk Mgmt, LLC |
| 7/10/2020 | 11,888 | Flexential Colorado Corp. |
| 7/7/2020 | 20,658 | CDW Direct LLC |
| 7/10/2020 | 2,787 | ,Level 3 Communic |
| 7/10/2020 | 3,574 | ATT |
| 7/10/2020 | 8,304 | Third Party Consultant |
| 7/10/2020 | 23,920 | Lantana Communications Corporation |
| 7/10/2020 | 25,690 | HE Asante |
| 7/10/2020 | 50 | Arizona Department of Revenue |
| 7/10/2020 | 50 | Arizona Department of Revenue |
| 7/10/2020 | 50 | Arizona Department of Revenue |
| 7/10/2020 | 651 | Department of Treasury- Internal Revenue Service |
| 7/13/2020 | 35,416 | Trend Macrolytics LLC |
| 7/14/2020 | 500 | Pitney Bowes- Purchase Power |
| 7/16/2020 | 500 | Pitney Bowes- Purchase Power |
| 7/17/2020 | 695 | CDW Direct |
| 7/17/2020 | 8,960 | GRUBHUB for Work |
| 7/14/2020 | 215,000 | State Comptroller of Texas |
| 7/17/2020 | 941 | AT&t |
| 7/17/2020 | 2,082 | Zayo |
| 7/17/2020 | 14,964 | PWC Singapore |
| 7/25/2020 | 320 | PACER Service Center |
| 7/21/2020 | 6,060 | ATT |
| 7/22/2020 | 441 | ATT |
| 7/22/2020 | 786 | XEROX CORP. |
| 7/24/2020 | 22,390 | Compass Group USA dba Canteen |
| 7/31/2020 | 22,500 | SNI Companies |
| 7/31/2020 | 1,043 | DTCC ITP LLC |
| 7/31/2020 | 1,692 | Oracle America, Inc. |
| 7/31/2020 | 4,308 | Third Party Consultant |
| 7/31/2020 | 6,371 | Level 3 Communic |
| 7/31/2020 | 8,700 | Intralinks Inc |
| 7/31/2020 | 9,535 | Hedgeye Risk Mgmt, LLC |
| 7/31/2020 | 12,643 | Third Party Consultant |
| 7/31/2020 | 18,042 | Siepe Software LLC |
| 7/31/2020 | 26,543 | REFINITIV US LLC |
| 7/31/2020 | 31,694 | Willis Towers Watson Insurance Svcs |
| 7/31/2020 | 157,238 | Siepe Services LLC |
| | 1,254,939 | |

**REORGANIZATION EXPENSES - OTHER**

| Date | Amount | Description |
|---|---|---|
| 7/1/2020 | 35,591 | J.P. Seery & Co. LLC |
| 7/1/2020 | 35,591 | Nelms and Associates |
| 7/1/2020 | 35,591 | Dubel & Associates, L.L.C. |
| 7/17/2020 | 434,516 | J.P. Seery & Co. LLC |
| | 541,289 | |

**Monthly Operating Report**
**ACCRUAL BASIS-4**

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| MGMT FEE RECEIVABLE AGING [2] | | April [3] | May [3] | June [3] | July [3] |
|---|---|---|---|---|---|
| 1. | 0-30 | $ 2,583,565 | $1,839,132 | $1,813,292 | $2,163,766 |
| 2. | 31-60 | | | $1,163,000 | $1,550,667 |
| 3. | 61-90 | | | | |
| 4. | 91+ | | | | |
| 5. | TOTAL MGMT FEE RECEIVABLE | $ 2,583,565 | $ 1,839,132 | $ 2,976,292 | $3,714,432 |
| 6. | AMOUNT CONSIDERED UNCOLLECTIBLE | | | | |
| 7. | MGMT FEE RECEIVABLE (NET) | $ 2,583,565 | $ 1,839,132 | $ 2,976,292 | $3,714,432 |

| AGING OF POSTPETITION TAXES AND PAYABLES | | | MONTH: | July 2020 | |
|---|---|---|---|---|---|
| TAXES PAYABLE | 0-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS | TOTAL |
| 1. FEDERAL | | | | | $0 |
| 2. STATE | | | | | $0 |
| 3. LOCAL | | | | | $0 |
| 4. OTHER (ATTACH LIST) | | | | | $0 |
| 5. TOTAL TAXES PAYABLE | $0 | $0 | $0 | $0 | $0 |
| | | | | | |
| 6. ACCOUNTS PAYABLE | $810,035 | ($335,873) | $2,845 | $192,607 | $669,614 |

| STATUS OF POSTPETITION TAXES [1] | | | MONTH: | July 2020 |
|---|---|---|---|---|
| FEDERAL | BEGINNING TAX LIABILITY | AMOUNT WITHHELD AND/ 0R ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY |
| 1. WITHHOLDING | | | | $0 |
| 2. FICA-EMPLOYEE | | | | $0 |
| 3. FICA-EMPLOYER | | | | $0 |
| 4. UNEMPLOYMENT | | | | $0 |
| 5. INCOME | | | | $0 |
| 6. OTHER (ATTACH LIST) | | | | $0 |
| 7. TOTAL FEDERAL TAXES | $0 | $0 | $0 | $0 |
| STATE AND LOCAL | | | | |
| 8. WITHHOLDING | | | | $0 |
| 9. SALES | | | | $0 |
| 10. EXCISE | | | | $0 |
| 11. UNEMPLOYMENT | | | | $0 |
| 12. REAL PROPERTY | $0 | $0 | $0 | $0 |
| 13. PERSONAL PROPERTY | | | | $0 |
| 14. OTHER (ATTACH LIST) | | | | $0 |
| 15. TOTAL STATE & LOCAL | $0 | $0 | $0 | $0 |
| 16. TOTAL TAXES | $0 | $0 | $0 | $0 |

1 The Debtor funds all state and federal employment taxes to Paylocity, who files all required federal and state related employment reports and withholdings.
2 Aging based on when management fee is due and payable.
3 All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process.

**Monthly Operating Report**
ACCRUAL BASIS-5

| CASE NAME: | Highland Capital Management |
| --- | --- |
| CASE NUMBER: | 19-34054 |

**BANK RECONCILIATIONS**

MONTH: July 2020

| | | Account #1 | Account #2 | Account #3 | Account #4 | Account #5 | Account #6 | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| A. | BANK: | East West Bank | East West Bank | Maxim Group | Jefferies LLC | Nexbank | East West Bank | |
| B. | ACCOUNT NUMBER: | x4686 | x4693 | x1885 | x0932 | x5891 | x5848 | TOTAL |
| C. | PURPOSE (TYPE): | Operating | Insurance | Brokerage | Brokerage | CD | Prepaid Card | |
| 1. | BALANCE PER BANK STATEMENT [1] | $ 9,235,042 | $ 351,010 | $ 30 | $ - | $ 137,929 | $ 100,036 | $ 9,824,046 |
| 2. | ADD: TOTAL DEPOSITS NOT CREDITED | | | | | | | $ - |
| 3. | SUBTRACT: OUTSTANDING CHECKS | $ 320 | | | | | | $ 320 |
| 4. | OTHER RECONCILING ITEMS | | | | | | | $ - |
| 5. | MONTH END BALANCE PER BOOKS | $ 9,234,721 | $ 351,010 | $ 30 | $ - | $ 137,929 | $ 100,036 | $ 9,823,726 |
| 6. | NUMBER OF LAST CHECK WRITTEN | 100508 | n/a | n/a | n/a | n/a | n/a | |

**INVESTMENT ACCOUNTS**

| | BANK, ACCOUNT NAME & NUMBER | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | | | | CURRENT VALUE |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 7. | | | | | | | | |
| 8. | | | | | | | | |
| 9. | | | | | | | | |
| 10. | | | | | | | | |
| 11. | TOTAL INVESTMENTS | | | $0 | | | | $0 |

**CASH**

| 12. | CURRENCY ON HAND | $0 |
| --- | --- | --- |

| 13. | TOTAL CASH - END OF MONTH | $9,823,726 |
| --- | --- | --- |

1   Account x6342 is now closed.

**Monthly Operating Report**
ACCRUAL BASIS-6

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

MONTH: _____ July 2020 _____

**PAYMENTS TO INSIDERS AND PROFESSIONALS**

| | | INSIDERS | | |
|---|---|---|---|---|
| | NAME | TYPE OF PAYMENT | AMOUNT PAID | TOTAL PAID POST PETITION |
| 1 | Frank Waterhouse | Salary | $45,833 | $293,750 |
| 2 | Frank Waterhouse | Expense Reimbursement | $380 | $4,654 |
| 3 | Scott Ellington | Salary | $37,500 | $356,250 |
| 4 | Scott Ellington | Expense Reimbursement | $180 | $5,249 |
| 5 | James Dondero | Salary | $0 | $129,972 |
| 6 | James Dondero | Expense Reimbursement [1] | $0 | $16,918 |
| 7 | Thomas Surgent | Salary | $33,333 | $316,667 |
| 8 | Thomas Surgent | Expense Reimbursement | $543 | $3,542 |
| 9 | Trey Parker | Salary | $0 | $131,250 |
| 10 | Trey Parker | Expense Reimbursement | $0 | $6,212 |
| | TOTAL PAYMENTS TO INSIDERS | | $117,769 | $1,264,463 |

[1] The total amount of reimbursements during the reporting month also included $9,749 for use of the credit card by the Debtor for office related expenses such as marketing, vending supplies, IT serrvices and research.

| | | PROFESSIONALS [2] | | | |
|---|---|---|---|---|---|
| | NAME | DATE OF MONTHLY FEE APPLICATION | AMOUNT APPROVED | AMOUNT PAID | TOTAL PAID TO DATE | TOTAL INCURRED & UNPAID |
| 1. | Kurtzman Carson Consultants LLC | | $192,432 | $192,432 | $450,836 | $39,720 |
| 2. | Sidley Austin LLP | | $1,282,010 | $1,282,010 | $4,493,224 | $937,766 |
| 3. | Young Conaway Stargatt & Taylor LLP | | | | $281,156 | $0 |
| 4. | FTI Consulting, Inc. | | 989,136.65 | 989,136.65 | 2,755,753.64 | $933,584 |
| 5. | Pachulski Stang Ziehl & Jones LLP | | 2,782,984.84 | 2,782,984.84 | 6,493,655.63 | $1,205,399 |
| 6. | Hayward & Associates PLLC | | $56,978 | $56,978 | $195,676 | $41,158 |
| 7. | Development Specialists, Inc. | | 491,437.83 | 491,437.83 | 2,355,442.73 | $249,391 |
| 8. | Foley & Lardner LLP | | 48,829.40 | 48,829.40 | 495,785.92 | $130,589 |
| 9. | Mercer (US) Inc. | | 115,956.33 | 115,956.33 | 115,956.33 | $0 |
| | TOTAL PAYMENTS TO PROFESSIONALS | | | $5,959,765 | $17,637,486 | $3,537,606 |

[2] Does not include payments to ordinary course professionals.

**POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS**

| | NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POSTPETITION |
|---|---|---|---|---|
| 1. | Crescent TC Investors LP (rent portion only) | 130,364 | 130,364 | - |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | TOTAL | 130,364 | $130,364 | $0 |

**Monthly Operating Report**
ACCRUAL BASIS-7

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

MONTH: _____ July 2020 _____

### QUESTIONNAIRE

| | | YES | NO |
|---|---|---|---|
| 1. | HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | x |
| 2. | HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | | x |
| 3. | ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES, OR LOANS) DUE FROM RELATED PARTIES? | x | |
| 4. | HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | | x |
| 5. | HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | x |
| 6. | ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | x |
| 7. | ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | x |
| 8. | ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | x |
| 9. | ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | x |
| 10. | ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | x |
| 11. | HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | x |
| 12. | ARE ANY WAGE PAYMENTS PAST DUE? | | x |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES," PROVIDE A DETAILED EXPLANATION OF EACH ITEM. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| 3 | Debtor generates fee income and other receipts from various related parties in normal course, see cash management motion for further discussion. |
|---|---|

### INSURANCE

| | | YES | NO |
|---|---|---|---|
| 1. | ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | x | |
| 2. | ARE ALL PREMIUM PAYMENTS PAID CURRENT? | x | |
| 3. | PLEASE ITEMIZE POLICIES BELOW. | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO," OR IF ANY POLICIES HAVE BEEN CANCELLED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN EXPLANATION BELOW. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| INSTALLMENT PAYMENTS | | | |
|---|---|---|---|
| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT 57

**Monthly Operating Report**
ACCRUAL BASIS

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |
| JUDGE: Stacey Jernigan | |

# UNITED STATES BANKRUPTCY COURT

## NORTHERN & EASTERN DISTRICTS OF TEXAS

## REGION 6

## MONTHLY OPERATING REPORT

### MONTH ENDING:  August  2020
MONTH  YEAR

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT (ACCRUAL BASIS-1 THROUGH ACCRUAL BASIS-7) AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE. DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.

RESPONSIBLE PARTY:

_____
ORIGINAL SIGNATURE OF RESPONSIBLE PARTY

James Seery
PRINTED NAME OF RESPONSIBLE PARTY

Chief Restructuring Officer/ Chief Executive Officer
TITLE

9-30-20
DATE

PREPARER:

_____
ORIGINAL SIGNATURE OF PREPARER

Frank Waterhouse
PRINTED NAME OF PREPARER

Chief Financial Officer
TITLE

9.30.20
DATE

1934054200930000000000017

**Monthly Operating Report**
**ACCRUAL BASIS-1**

| CASE NAME: | Highland Capital Management, LP |
|---|---|
| CASE NUMBER: | 19-12239-CSS |

**Comparative Balance Sheet**
(in thousands)

| | 10/15/2019 | 12/31/2019 [(6)] | 8/31/2020 [(6)] |
|---|---|---|---|
| **Assets** | | | |
| Cash and cash equivalents | 2,529 | 9,501 | 10,026 |
| Investments, at fair value [(3)] | 232,620 | 232,820 | 106,939 |
| Equity method investees [(3)] | 161,819 | 183,529 | 100,877 |
| Management and incentive fee receivable | 2,579 | 1,929 | 2,541 |
| Fixed assets, net | 3,754 | 3,521 | 2,899 |
| Due from affiliates [(1)] | 151,901 | 146,276 | 152,160 |
| Reserve against notes recievable | | (57,963) | (59,016) |
| Other assets | 11,311 | 11,463 | 12,369 |
| **Total assets** | $ 566,513 | $ 531,076 | $ 328,795 |
| | | | |
| **Liabilities and Partners' Capital** | | | |
| Pre-petition accounts payable [(4)] | 1,176 | 1,141 | 1,051 |
| Post-petition accounts payable [(4)] | - | 2,042 | 1,114 |
| Secured debt: | | | |
| Frontier | 5,195 | 5,195 | 5,195 |
| Jefferies | 30,328 | 30,020 | - |
| Accrued expenses and other liabilities [(4)] | 59,203 | 63,275 | 58,096 |
| Accrued re-organization related fees [(5)] | - | 5,547 | 5,869 |
| Claim accrual [(2)] | 73,997 | 73,997 | 73,997 |
| Partners' capital | 396,614 | 349,857 | 183,472 |
| **Total liabilities and partners' capital** | $ 566,513 | $ 531,076 | $ 328,795 |

[(1)] Includes various notes receivable at carrying value, except note due from Hunter Mountain Investment Trust which is fully reserved against ($59M reserve). Fair value has not been determined with respect to any of the notes.

[(2)] Uncontested portion of Redeemer claim less appplicable offsets. Potential for additional liability based on future events. No interest has been accrued beyond petition date. No additional accruals will be made on settlement claims until further approval by the court.

[(3)] Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

[(4)] Note on accruals: expenses recorded in Accounts Payable and Accrued Expenses and Other Liabilities reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices. For balance sheet dates other than the Petition Date, amounts include both pre-petition and post-petition liabilities.

[(5)] Beginning December 31st, 2019, Debtor accrued for post-petition re-organization fees based upon an estimate of fees incurred to date.

[(6)] All balances at December 31st, 2019 are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, balances for subsequent months have and will fluctuate.

**Monthly Operating Report**
ACCRUAL BASIS-2

| CASE NAME: | Highland Capital Management, LP | |
|---|---|---|
| CASE NUMBER: | 19-12239-CSS | |

**Income Statement**[1]
(in thousands)

| | Date | Filing to Year Ended [4] | Month ended [4] | Filing to date [4] |
|---|---|---|---|---|
| | 10/16/19 - 10/31/19 | 2019 | 8/31/2020 | |
| **Revenue:** | | | | |
| Management fees | 975 | 4,528 | 887 | 17,498 |
| Shared services fees | 283 | 1,588 | 603 | 6,603 |
| Other income | 99 | 1,582 | 34 | 4,658 |
| **Total operating revenue** | **1,357** | **7,697** | **1,524** | **28,758** |
| **Operating expenses:** | | | | |
| Compensation and benefits | 997 | 1,498 | 1,890 | 14,111 |
| Professional services | 256 | 64 | 384 | 1,973 |
| Investment research and consulting | 10 | 266 | 4 | 718 |
| Marketing and advertising expense | - | 370 | 33 | 485 |
| Depreciation expense | 82 | 244 | 77 | 863 |
| Bad debt expense reserve | - | 8,410 | 1,053 | 9,462 |
| Other operating expenses | 201 | 1,265 | 519 | 4,248 |
| **Total operating expenses** | **1,545** | **12,118** | **3,960** | **31,861** |
| **Operating income/(loss)** | **(188)** | **(4,421)** | **(2,436)** | **(3,103)** |
| **Other income/expense:** | | | | |
| Interest income | 250 | 1,230 | 498 | 5,128 |
| Interest expense | (107) | (286) | (22) | (654) |
| Reserve against notes receivable | - | (57,963) | - | (57,963) |
| Re-org related expenses [2] | - | (5,547) | (1,276) | (24,983) |
| Independent director fees | - | - | (330) | (1,947) |
| Other income/expense | 32 | 32 | (6) | (138) |
| **Total other income/expense** | **175** | **(62,534)** | **(1,135)** | **(80,557)** |
| Net realized gains/(losses) on investments | 339 | 618 | (310) | (28,872) |
| Net change in unrealized gains/(losses) of investments [3] | 2,654 | (955) | (4,369) | (38,326) |
| | **2,993** | **(337)** | **(4,679)** | **(67,198)** |
| **Net earnings/(losses) from equity method investees** [3] | **(20)** | **14,918** | **1,129** | **(67,901)** |
| **Net income/(loss)** | **$ 2,959** | **$ (52,374)** | **$ (7,121)** | **$ (218,759)** |

(1) Note on accruals: expenses recorded in the Income Statement reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.

(2) Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed as of the petition date.

(3) Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

(4) All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, operating results will change as these entries are made.

**Monthly Operating Report**
ACCRUAL BASIS-3A

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| CASH RECEIPTS AND DISBURSEMENTS | | FILING TO YEAR END 2019 | | QUARTER | | QUARTER | | AUGUST |
|---|---|---|---|---|---|---|---|---|
| 1. | CASH - BEGINNING OF MONTH | $ | 2,554,230 | $ | 9,501,409 | $ | 12,532,467 | $ | 9,823,726 |
| **RECEIPTS FROM OPERATIONS** | | | | | | | | |
| 2. | OTHER OPERATING RECEIPTS | $ | 1,862,757 | $ | 1,379,338 | $ | 2,983,221 | $ | 784,607 |
| 3 | MANAGEMENT FEES AND OTHER RELATED RECEIPTS | $ | 3,156,742 | $ | 7,555,297 | $ | 6,179,437 | $ | 2,762,104 |
| **COLLECTION OF ACCOUNTS RECEIVABLE** | | | | | | | | |
| 4 | PREPETITION | $ | 3,593,108 | $ | 76,569 | $ | 3,727 | $ | - |
| 5 | POSTPETITION [1] | $ | - | $ | - | $ | - | $ | - |
| 6 | TOTAL OPERATING RECEIPTS | $ | 8,612,608 | $ | 9,011,204 | $ | 9,166,385 | $ | 3,546,711 |
| **NON-OPERATING RECEIPTS** | | | | | | | | |
| 7 | THIRD PARTY FUND ACTUAL/EXPECTED DISTRIBUTIONS | $ | 423,468 | $ | 18,992,786 | $ | 797,571 | $ | 220,898 |
| 8 | DIVS, PAYDOWNS, MISC FROM INVESTMENT ASSETS | $ | 1,338,069 | $ | 477,479 | $ | 74,376 | $ | 1,770 |
| 9 | OTHER (ATTACH LIST) | $ | 3,390,286 | $ | 1,407,103 | $ | 10,010,000 | $ | 5,000,000 |
| 10 | TOTAL NON-OPERATING RECEIPTS | $ | 5,151,822 | $ | 20,877,369 | $ | 10,881,947 | $ | 5,222,668 |
| 11 | TOTAL RECEIPTS | $ | 13,764,430 | $ | 29,888,573 | $ | 20,048,331 | $ | 8,769,379 |
| 12 | TOTAL CASH AVAILABLE | | | | | | | $ | 18,593,105 |
| **OPERATING DISBURSEMENTS** | | | | | | | | |
| 13 | PAYROLL, BENEFITS, AND TAXES + EXP REIMB | $ | 3,776,446 | $ | 8,825,042 | $ | 4,886,314 | $ | 5,135,559 |
| 14 | SINGAPORE SERVICE FEES | $ | 95,118 | $ | 58,129 | $ | 2,965 | $ | - |
| 15 | HCM LATIN AMERICA | $ | 200,000 | $ | 100,000 | $ | - | $ | - |
| 16 | THIRD PARTY FUND CAPITAL CALL OBLIGATION | $ | 1,426,987 | $ | 7,812,469 | $ | 3,087,163 | $ | - |
| 17 | UTILITIES | $ | - | $ | - | $ | - | $ | - |
| 18 | INSURANCE | $ | - | $ | 533,940 | $ | 376,376 | $ | 163,400 |
| 19 | INVENTORY PURCHASES | $ | - | $ | - | $ | - | $ | - |
| 20 | VEHICLE EXPENSES | $ | - | $ | - | $ | - | $ | - |
| 21 | TRAVEL | $ | - | $ | - | $ | - | $ | - |
| 22 | ENTERTAINMENT | $ | - | $ | - | $ | - | $ | - |
| 23 | REPAIRS & MAINTENANCE | $ | - | $ | - | $ | - | $ | - |
| 24 | SUPPLIES | $ | - | $ | - | $ | - | $ | - |
| 25 | ADVERTISING | $ | - | $ | - | $ | - | $ | - |
| 26 | OTHER (ATTACH LIST) | $ | 1,318,700 | $ | 3,283,898 | $ | 3,195,054 | $ | 1,091,762 |
| 27 | TOTAL OPERATING DISBURSEMENTS | $ | 6,817,251 | $ | 20,613,478 | $ | 11,547,870 | $ | 6,390,721 |
| **REORGANIZATION EXPENSES** | | | | | | | | |
| 28 | PROFESSIONAL FEES | $ | - | $ | 5,460,546 | $ | 5,572,032 | $ | 1,689,437 |
| 29 | U.S. TRUSTEE FEES | $ | - | $ | 68,173 | $ | 167,025 | $ | 277,420 |
| 30 | OTHER (ATTACH LIST) | $ | - | $ | 715,317 | $ | 300,000 | $ | 210,000 |
| 31 | TOTAL REORGANIZATION EXPENSES | $ | - | $ | 6,244,037 | $ | 6,039,057 | $ | 2,176,857 |
| 32 | TOTAL DISBURSEMENTS | $ | 6,817,251 | $ | 26,857,515 | $ | 17,586,927 | $ | 8,567,577 |
| 33 | NET CASH FLOW | $ | 6,947,179 | $ | 3,031,058 | $ | 2,461,404 | $ | 201,802 |
| 34 | CASH - END OF MONTH | $ | 9,501,409 | $ | 12,532,467 | $ | 14,993,872 | $ | 10,025,528 |

1   All postpetition receipts are included in line 3, Management Fees and Other Related Receipts.

| | | Monthly Operating Report |
|---|---|---|
| | | ACCRUAL BASIS-3B |

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

**NON-OPERATING RECEIPTS - OTHER**

| Date | Amount | Type |
|---|---|---|
| | 5,000,000.00 | Sale of Various Jefferies Assets |

**OPERATING DISBURSMENTS - OTHER**

| Date | Amount | Vendor |
|---|---|---|
| 8/7/2020 | 165,619.98 | Hunton Andrews Kurth, LLP |
| 8/7/2020 | 3,573.58 | AT&T |
| 8/7/2020 | 31,709.37 | CDW Direct |
| 8/7/2020 | 120.60 | Iron Mountain Records Management |
| 8/7/2020 | 47,647.36 | Houlihan Lokey |
| 8/7/2020 | 17,070.36 | AT&T |
| 8/7/2020 | 3,176.25 | Centroid |
| 8/7/2020 | 1,322.32 | Canteen Vending Services |
| 8/7/2020 | 1,693.03 | NetWrix Corporation |
| 8/7/2020 | 5,884.76 | ABM |
| 8/7/2020 | 10,468.52 | Bloomberg Finance LP |
| 8/7/2020 | 225.16 | Four Seasons Plantscaping, LLC |
| 8/7/2020 | 94.07 | Chase Couriers, Inc |
| 8/7/2020 | 350.00 | Crescent Research |
| 8/7/2020 | 11,887.73 | Flexential Colorado Corp. |
| 8/7/2020 | 2,075.52 | NYSE Market, Inc |
| 8/5/2020 | 2,724.99 | Iron Mountain Records Management |
| 8/4/2020 | 31,747.76 | Third party Consultant |
| 8/3/2020 | 7,069.59 | MacroMavens, LLC |
| 8/3/2020 | 2,531.35 | Siepe Services, LLC |
| 8/3/2020 | 158,601.09 | Crescent TC Investors LP |
| 8/3/2020 | 25,000.00 | InsiderScore, LLC |
| 8/4/2020 | 335.80 | ATT Payment |
| 8/12/2020 | 92,000.00 | American Arbitration Association |
| 8/14/2020 | 4,918.34 | Liberty Life Assurance Company of Boston - Group Benefits |
| 8/14/2020 | 660.00 | Centroid |
| 8/14/2020 | 2,878.44 | Grubhub for Work |
| 8/14/2020 | 1,535.27 | Canteen Vending Services |
| 8/14/2020 | 2,668.57 | Iron Mountain Records Management |
| 8/14/2020 | 567.13 | Arkadin, Inc. |
| 8/14/2020 | 3,818.42 | ICE Data Pricing & Reference Data, LLC |
| 8/14/2020 | 8,119.62 | Concur Technologies, Inc. |
| 8/14/2020 | 1,224.93 | Oak Cliff Office Products |
| 8/14/2020 | 772.33 | UPS Supply Chain Solutions |
| 8/14/2020 | 4,932.20 | Thomson West |
| 8/14/2020 | 718.35 | ProStar Services, Inc |
| 8/14/2020 | 810.84 | DTCC ITP LLC |
| 8/14/2020 | 1,242.42 | Options Price Reporting Authority |
| 8/14/2020 | 342.18 | Verity Group |
| 8/14/2020 | 18,765.08 | Ace Parking Management Inc. |
| 8/14/2020 | 3,031.00 | Daltex Janitorial Services, LLC |
| 8/14/2020 | 690.00 | Action Shred of Texas |
| 8/14/2020 | 265.48 | American Solutions for Business |
| 8/21/2020 | 314,488.40 | Bloomberg Finance LP |
| 8/21/2020 | 35,200.00 | Intex Solutions, Inc. |
| 8/21/2020 | 137.50 | AT&T |
| 8/21/2020 | 339.54 | UPS Small Package |
| 8/21/2020 | 390.78 | Four Seasons Plantscaping, LLC |
| 8/21/2020 | 516.57 | Laser Works, Inc dba Verity Group |
| 8/21/2020 | 528.00 | Ace Parking Lot 3749 |
| 8/21/2020 | 978.62 | CDW Direct LLC |
| 8/21/2020 | 1,028.73 | Iron Mountain |
| 8/21/2020 | 1,381.40 | Compass Group USA dba Canteen |
| 8/21/2020 | 1,388.97 | DTCC ITP LLC |
| 8/21/2020 | 1,969.46 | Standard Insurance Company |
| 8/21/2020 | 2,373.40 | Prostar Services Inc. |
| 8/21/2020 | 2,845.06 | Dawn US Holdings LLC |
| 8/21/2020 | 3,192.11 | Oak Cliff Office Supply & Printing |
| 8/21/2020 | 3,889.87 | Third party Consultant |
| 8/21/2020 | 3,963.84 | GrubHub for Work |
| 8/21/2020 | 4,894.41 | Liberty Life Assurance Co of Boston |
| 8/21/2020 | 7,120.89 | NYSE Market (DE), Inc. |
| 8/19/2020 | 325.00 | USI Southwest, Inc. |
| 8/18/2020 | 2,082.70 | Zayo group |
| 8/18/2020 | 332.02 | East West Bank |
| 8/17/2020 | 870.41 | ATT |
| 8/25/2020 | 362.91 | Xerox Corporation |
| 8/25/2020 | 9,005.07 | Visa Payment |
| 8/31/2020 | 11,000.00 | Third party Consultant |
| 8/31/2020 | 266.65 | Directv, LLC |
| | 1,091,762 | |

**REORGANIZATION EXPENSES - OTHER**

| Date | Amount | Description |
|---|---|---|
| 8/3/2020 | 30,000 | Nelms and Associates |
| 8/3/2020 | 150,000 | J.P. Seery & Co. LLC |
| 8/3/2020 | 30,000 | Dubel & Associates, L.L.C. |
| | 210,000 | |

**Monthly Operating Report**
ACCRUAL BASIS-4

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| MGMT FEE RECEIVABLE AGING [2] | | May [3] | June [3] | July [3] | August [3] |
|---|---|---|---|---|---|
| 1. | 0-30 | $ 1,839,132 | $1,813,292 | $2,428,715 | $998,818 |
| 2. | 31-60 | | $1,163,000 | $1,285,718 | $770,000 |
| 3. | 61-90 | | | | |
| 4. | 91+ | | | | $772,384 |
| 5. | TOTAL MGMT FEE RECEIVABLE | $ 1,839,132 | $ 2,976,292 | $ 3,714,432 | $2,541,202 |
| 6. | AMOUNT CONSIDERED UNCOLLECTIBLE | | | | |
| 7. | MGMT FEE RECEIVABLE (NET) | $ 1,839,132 | $ 2,976,292 | $ 3,714,432 | $2,541,202 |

| AGING OF POSTPETITION TAXES AND PAYABLES | MONTH: | August 2020 | | | |
|---|---|---|---|---|---|
| TAXES PAYABLE | 0-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS | TOTAL |
| 1. FEDERAL | | | | | $0 |
| 2. STATE | | | | | $0 |
| 3. LOCAL | | | | | $0 |
| 4. OTHER (ATTACH LIST) | | | | | $0 |
| 5. TOTAL TAXES PAYABLE | $0 | $0 | $0 | $0 | $0 |
| | | | | | |
| 6. ACCOUNTS PAYABLE | $930,656 | $12,140 | $26,596 | $144,936 | $1,114,328 |

| STATUS OF POSTPETITION TAXES [1] | MONTH: | August 2020 | | |
|---|---|---|---|---|
| FEDERAL | BEGINNING TAX LIABILITY | AMOUNT WITHHELD AND/ 0R ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY |
| 1. WITHHOLDING | | | | $0 |
| 2. FICA-EMPLOYEE | | | | $0 |
| 3. FICA-EMPLOYER | | | | $0 |
| 4. UNEMPLOYMENT | | | | $0 |
| 5. INCOME | | | | $0 |
| 6. OTHER (ATTACH LIST) | | | | $0 |
| 7. TOTAL FEDERAL TAXES | $0 | $0 | $0 | $0 |
| STATE AND LOCAL | | | | |
| 8. WITHHOLDING | | | | $0 |
| 9. SALES | | | | $0 |
| 10. EXCISE | | | | $0 |
| 11. UNEMPLOYMENT | | | | $0 |
| 12. REAL PROPERTY | $0 | $0 | $0 | $0 |
| 13. PERSONAL PROPERTY | | | | $0 |
| 14. OTHER (ATTACH LIST) | | | | $0 |
| 15. TOTAL STATE & LOCAL | $0 | $0 | $0 | $0 |
| 16. TOTAL TAXES | $0 | $0 | $0 | $0 |

1  The Debtor funds all state and federal employment taxes to Paylocity, who files all required federal and state related employment reports and withholdings.
2  Aging based on when management fee is due and payable.
3  All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process.

**Monthly Operating Report**
ACCRUAL BASIS-5

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

**BANK RECONCILIATIONS**

MONTH: August 2020

| | | Account #1 | Account #2 | Account #3 | Account #4 | Account #5 | Account #6 | |
|---|---|---|---|---|---|---|---|---|
| A. | BANK: | East West Bank | East West Bank | Maxim Group | Jefferies LLC | Nexbank | East West Bank | TOTAL |
| B. | ACCOUNT NUMBER: | x4686 | x4693 | x1885 | x0932 | x5891 | x5848 | |
| C. | PURPOSE (TYPE): | Operating | Insurance | Brokerage | Brokerage | CD | Prepaid Card | |
| 1. | BALANCE PER BANK STATEMENT [1] | $ 9,718,445 | $ 69,399 | $ 30 | $ - | $ 137,929 | $ 100,044 | $ 10,025,848 |
| 2. | ADD: TOTAL DEPOSITS NOT CREDITED | | | | | | | $ - |
| 3. | SUBTRACT: OUTSTANDING CHECKS | $ 320 | | | | | | $ 320 |
| 4. | OTHER RECONCILING ITEMS | | | | | | | $ - |
| 5. | MONTH END BALANCE PER BOOKS | $ 9,718,125 | $ 69,399 | $ 30 | $ - | $ 137,929 | $ 100,044 | $ 10,025,527 |
| 6. | NUMBER OF LAST CHECK WRITTEN | 100510 | n/a | n/a | n/a | n/a | n/a | |

**INVESTMENT ACCOUNTS**

| | BANK, ACCOUNT NAME & NUMBER | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | | | | CURRENT VALUE |
|---|---|---|---|---|---|---|---|---|
| 7. | | | | | | | | |
| 8. | | | | | | | | |
| 9. | | | | | | | | |
| 10. | | | | | | | | |
| 11. | TOTAL INVESTMENTS | | | $0 | | | | $0 |

**CASH**

| | | | |
|---|---|---|---|
| 12. | CURRENCY ON HAND | | $0 |

| 13. | TOTAL CASH - END OF MONTH | $10,025,527 |
|---|---|---|

1  Account x6342 is now closed.

**Monthly Operating Report**
ACCRUAL BASIS-6

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

MONTH: _____ August 2020 _____

**PAYMENTS TO INSIDERS AND PROFESSIONALS**

| | INSIDERS | | | |
|---|---|---|---|---|
| | NAME | TYPE OF PAYMENT | AMOUNT PAID | TOTAL PAID POST PETITION |
| 1 | Frank Waterhouse | Salary | $33,333 | $327,083 |
| 2 | Frank Waterhouse | Expense Reimbursement | $457 | $5,111 |
| 3 | Scott Ellington | Salary | $37,500 | $393,750 |
| 4 | Scott Ellington | Expense Reimbursement | $594 | $5,843 |
| 5 | James Dondero | Salary | $0 | $129,972 |
| 6 | James Dondero | Expense Reimbursement [1] | $0 | $16,918 |
| 7 | Thomas Surgent | Salary | $33,333 | $350,000 |
| 8 | Thomas Surgent | Expense Reimbursement | $224 | $3,766 |
| 9 | Trey Parker | Salary | $0 | $131,250 |
| 10 | Trey Parker | Expense Reimbursement | $0 | $6,212 |
| | TOTAL PAYMENTS TO INSIDERS | | $105,441 | $1,369,904 |

[1] The total amount of reimbursements during the reporting month also included $6,981 for use of the credit card by the Debtor for office related expenses such as subscriptions, vending supplies, and IT equipment/software.

| | PROFESSIONALS [2] | | | | | |
|---|---|---|---|---|---|---|
| | NAME | DATE OF MONTHLY FEE APPLICATION | AMOUNT APPROVED | AMOUNT PAID | TOTAL PAID TO DATE | TOTAL INCURRED & UNPAID |
| 1. | Kurtzman Carson Consultants LLC | | 39,720 | 39,720 | 490,555 | 41,966 |
| 2. | Sidley Austin LLP | | 499,548 | 499,548 | 4,992,773 | 1,112,556 |
| 3. | Young Conaway Stargatt & Taylor LLP | | | - | 281,156 | - |
| 4. | FTI Consulting, Inc. | | 225,205 | 225,205 | 2,980,959 | 708,379 |
| 5. | Pachulski Stang Ziehl & Jones LLP | | 658,235 | 658,235 | 7,151,891 | 1,288,329 |
| 6. | Hayward & Associates PLLC | | - | - | 195,676 | 41,158 |
| 7. | Development Specialists, Inc. | | 249,391 | 249,391 | 2,113,396 | 237,828 |
| 8. | Foley & Lardner LLP | | 17,337 | 17,337 | 464,294 | 119,516 |
| 9. | Mercer (US) Inc. | | - | - | 115,956 | 54,328 |
| | TOTAL PAYMENTS TO PROFESSIONALS | | | $1,689,437 | $18,786,656 | $3,604,059 |

[2] Does not include payments to ordinary course professionals.

**POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS**

| | NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POSTPETITION |
|---|---|---|---|---|
| 1. | Crescent TC Investors LP (rent portion only) | 130,364 | 130,364 | - |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | TOTAL | 130,364 | $130,364 | $0 |

## Monthly Operating Report
### ACCRUAL BASIS-7

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

**MONTH:** _____August 2020_____

### QUESTIONNAIRE

| | | YES | NO |
|---|---|---|---|
| 1. | HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | x |
| 2. | HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | | x |
| 3. | ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES, OR LOANS) DUE FROM RELATED PARTIES? | x | |
| 4. | HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | | x |
| 5. | HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | x |
| 6. | ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | x |
| 7. | ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | x |
| 8. | ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | x |
| 9. | ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | x |
| 10. | ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | x |
| 11. | HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | x |
| 12. | ARE ANY WAGE PAYMENTS PAST DUE? | | x |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES," PROVIDE A DETAILED
EXPLANATION OF EACH ITEM. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| 3 | Debtor generates fee income and other receipts from various related parties in normal course, see cash management motion for further discussion. |
|---|---|

### INSURANCE

| | | YES | NO |
|---|---|---|---|
| 1. | ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | x | |
| 2. | ARE ALL PREMIUM PAYMENTS PAID CURRENT? | x | |
| 3. | PLEASE ITEMIZE POLICIES BELOW. | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO," OR IF ANY POLICIES HAVE BEEN
CANCELLED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN EXPLANATION
BELOW. ATTACH ADDITIONAL SHEETS IF NECESSARY.

### INSTALLMENT PAYMENTS

| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT 58

**Monthly Operating Report**
ACCRUAL BASIS

| | |
|---|---|
| **CASE NAME:** | Highland Capital Management |
| **CASE NUMBER:** | 19-34054 |
| **JUDGE:** Stacey Jernigan | |

# UNITED STATES BANKRUPTCY COURT

## NORTHERN & EASTERN DISTRICTS OF TEXAS

## REGION 6

## MONTHLY OPERATING REPORT

## MONTH ENDING:    September    2020
MONTH        YEAR

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT (ACCRUAL BASIS-1 THROUGH ACCRUAL BASIS-7) AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE. DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.

RESPONSIBLE PARTY:

_____    Chief Restructuring Officer/ Chief Executive Officer
ORIGINAL SIGNATURE OF RESPONSIBLE PARTY        TITLE

James Seery
_____    _____
PRINTED NAME OF RESPONSIBLE PARTY        DATE

PREPARER:

_____    Chief Financial Officer
ORIGINAL SIGNATURE OF PREPARER        TITLE

Frank Waterhouse
_____    _____
PRINTED NAME OF PREPARER        DATE

**Monthly Operating Report**
**ACCRUAL BASIS-1**

| CASE NAME: | Highland Capital Management, LP |
| --- | --- |
| CASE NUMBER: | 19-12239-CSS |

**Comparative Balance Sheet**
(in thousands)

| | 10/15/2019 | 12/31/2019 [6] | 9/30/2020 [6] |
| --- | --- | --- | --- |
| **Assets** | | | |
| Cash and cash equivalents | 2,529 | 9,501 | 5,888 |
| Investments, at fair value [3] | 232,620 | 232,820 | 109,479 |
| Equity method investees [3] | 161,819 | 183,529 | 101,213 |
| Management and incentive fee receivable | 2,579 | 1,929 | 3,350 |
| Fixed assets, net | 3,754 | 3,521 | 2,823 |
| Due from affiliates [1] | 151,901 | 146,276 | 152,585 |
| Reserve against notes recievable | | (57,963) | (59,140) |
| Other assets | 11,311 | 11,463 | 12,105 |
| **Total assets** | **$ 566,513** | **$ 531,076** | **$ 328,302** |
| | | | |
| **Liabilities and Partners' Capital** | | | |
| Pre-petition accounts payable [4] | 1,176 | 1,141 | 1,051 |
| Post-petition accounts payable [4] | - | 2,042 | 583 |
| Secured debt: | | | |
| Frontier | 5,195 | 5,195 | 5,195 |
| Jefferies | 30,328 | 30,020 | - |
| Accrued expenses and other liabilities [4] | 59,203 | 63,275 | 58,733 |
| Accrued re-organization related fees [5] | - | 5,547 | 5,922 |
| Claim accrual [2] | 73,997 | 73,997 | 73,997 |
| Partners' capital | 396,614 | 349,857 | 182,821 |
| **Total liabilities and partners' capital** | **$ 566,513** | **$ 531,076** | **$ 328,302** |

[1] Includes various notes receivable at carrying value, except note due from Hunter Mountain Investment Trust which is fully reserved against ($59M reserve). Fair value has not been determined with respect to any of the notes.

[2] Uncontested portion of Redeemer claim less appplicable offsets. Potential for additional liability based on future events. No interest has been accrued beyond petition date. No additional accruals will be made on settlement claims until further approval by the court.

[3] Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

[4] Note on accruals: expenses recorded in Accounts Payable and Accrued Expenses and Other Liabilities reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices. For balance sheet dates other than the Petition Date, amounts include both pre-petition and post-petition liabilities.

[5] Beginning December 31st, 2019, Debtor accrued for post-petition re-organization fees based upon an estimate of fees incurred to date.

[6] All balances at December 31st, 2019 are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, balances for subsequent months have and will fluctuate.

<div align="right">

**Monthly Operating Report**
ACCRUAL BASIS-2

</div>

| CASE NAME: | Highland Capital Management, LP | |
|---|---|---|
| CASE NUMBER: | 19-12239-CSS | |

**Income Statement[1]**
(in thousands)

| | Date | Filing to Year Ended [4] | Month ended [4] | Filing to date [4] |
|---|---|---|---|---|
| | 10/16/19 - 10/31/19 | 2019 | 9/30/2020 | |
| **Revenue:** | | | | |
| Management fees | 975 | 4,528 | 1,495 | 18,993 |
| Shared services fees | 283 | 1,588 | 645 | 7,248 |
| Other income | 99 | 1,582 | 401 | 5,058 |
| **Total operating revenue** | **1,357** | **7,697** | **2,541** | **31,299** |
| **Operating expenses:** | | | | |
| Compensation and benefits | 997 | 1,498 | 1,668 | 15,778 |
| Professional services | 256 | 64 | 190 | 2,167 |
| Investment research and consulting | 10 | 266 | 241 | 960 |
| Marketing and advertising expense | - | 370 | 36 | 521 |
| Depreciation expense | 82 | 244 | 76 | 940 |
| Bad debt expense reserve | - | 8,410 | 124 | 9,586 |
| Other operating expenses | 201 | 1,265 | 463 | 4,665 |
| **Total operating expenses** | **1,545** | **12,118** | **2,799** | **34,617** |
| **Operating income/(loss)** | **(188)** | **(4,421)** | **(258)** | **(3,318)** |
| **Other income/expense:** | | | | |
| Interest income | 250 | 1,230 | 488 | 5,616 |
| Interest expense | (107) | (286) | (21) | (675) |
| Reserve against notes receivable | - | (57,963) | - | (57,963) |
| Re-org related expenses [2] | - | (5,547) | (3,816) | (28,800) |
| Independent director fees | - | - | (30) | (1,977) |
| Other income/expense | 32 | 32 | (6) | (144) |
| **Total other income/expense** | **175** | **(62,534)** | **(3,386)** | **(83,943)** |
| Net realized gains/(losses) on investments | 339 | 618 | 1,133 | (27,738) |
| Net change in unrealized gains/(losses) of investments [3] | 2,654 | (955) | 1,480 | (36,847) |
| | **2,993** | **(337)** | **2,613** | **(64,585)** |
| **Net earnings/(losses) from equity method investees [3]** | (20) | 14,918 | 337 | (67,564) |
| **Net income/(loss)** | **$ 2,959** | **$ (52,374)** | **$ (694)** | **$ (219,410)** |

(1) Note on accruals: expenses recorded in the Income Statement reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.

(2) Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed as of the petition date.

(3) Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

(4) All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, operating results will change as these entries are made.

| | | Monthly Operating Report | | | Monthly Operating Report |
|---|---|---|---|---|---|
| | | ACCRUAL BASIS-3A | | | ACCRUAL BASIS-3A |

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| CASH RECEIPTS AND DISBURSEMENTS | FILING TO YEAR END 2019 | QUARTER 1 | QUARTER 2 | SEPTEMBER | QUARTER 3 |
|---|---|---|---|---|---|
| 1.  CASH - BEGINNING OF MONTH | $ 2,554,230 | $ 9,501,409 | $ 12,532,467 | $ 10,025,528 | $ 14,993,872 |
| RECEIPTS FROM OPERATIONS | | | | | |
| 2.  OTHER OPERATING RECEIPTS | $ 1,862,757 | $ 1,379,338 | $ 2,983,221 | $ 716,191 | $ 2,259,736 |
| 3  MANAGEMENT FEES AND OTHER RELATED RECEIPTS | $ 3,156,742 | $ 7,555,297 | $ 6,179,437 | $ 1,515,102 | $ 5,575,680 |
| COLLECTION OF ACCOUNTS RECEIVABLE | | | | | |
| 4  PREPETITION | $ 3,593,108 | $ 76,569 | $ 3,727 | $ - | $ - |
| 5  POSTPETITION [1] | $ - | $ - | $ - | $ - | $ - |
| 6  TOTAL OPERATING RECEIPTS | $ 8,612,608 | $ 9,011,204 | $ 9,166,385 | $ 2,231,293 | $ 7,835,415 |
| NON-OPERATING RECEIPTS | | | | | |
| 7  THIRD PARTY FUND ACTUAL/EXPECTED DISTRIBUTIONS | $ 423,468 | $ 18,992,786 | $ 797,571 | $ 389,357 | $ 610,254 |
| 8  DIVS, PAYDOWNS, MISC FROM INVESTMENT ASSETS | $ 1,338,069 | $ 477,479 | $ 74,376 | $ 1,769 | $ 5,311 |
| 9  OTHER (ATTACH LIST) | $ 3,390,286 | $ 1,407,103 | $ 10,010,000 | $ 67,099 | $ 8,817,099 |
| 10  TOTAL NON-OPERATING RECEIPTS | $ 5,151,822 | $ 20,877,369 | $ 10,881,947 | $ 458,225 | $ 9,432,664 |
| 11  TOTAL RECEIPTS | $ 13,764,430 | $ 29,888,573 | $ 20,048,331 | $ 2,689,517 | $ 17,268,080 |
| 12  TOTAL CASH AVAILABLE | | | | $ 12,715,045 | $ 32,261,951 |
| OPERATING DISBURSEMENTS | | | | | |
| 13  PAYROLL, BENEFITS, AND TAXES + EXP REIMB | $ 3,776,446 | $ 8,825,042 | $ 4,886,314 | $ 1,428,122 | $ 8,806,880 |
| 14  SINGAPORE SERVICE FEES | $ 95,118 | $ 58,129 | $ 2,965 | $ - | $ - |
| 15  HCM LATIN AMERICA | $ 200,000 | $ 100,000 | $ - | $ - | $ - |
| 16  THIRD PARTY FUND CAPITAL CALL OBLIGATION | $ 1,426,987 | $ 7,812,469 | $ 3,087,163 | $ - | $ 979,631 |
| 17  UTILITIES | $ - | $ - | $ - | $ - | $ - |
| 18  INSURANCE | $ - | $ 533,940 | $ 376,376 | $ - | $ 163,400 |
| 19  INVENTORY PURCHASES | $ - | $ - | $ - | $ - | $ - |
| 20  VEHICLE EXPENSES | $ - | $ - | $ - | $ - | $ - |
| 21  TRAVEL | $ - | $ - | $ - | $ - | $ - |
| 22  ENTERTAINMENT | $ - | $ - | $ - | $ - | $ - |
| 23  REPAIRS & MAINTENANCE | $ - | $ - | $ - | $ - | $ - |
| 24  SUPPLIES | $ - | $ - | $ - | $ - | $ - |
| 25  ADVERTISING | $ - | $ - | $ - | $ - | $ - |
| 26  OTHER (ATTACH LIST) | $ 1,318,700 | $ 3,283,898 | $ 3,195,054 | $ 1,286,630 | $ 3,633,331 |
| 27  TOTAL OPERATING DISBURSEMENTS | $ 6,817,251 | $ 20,613,478 | $ 11,547,870 | $ 2,714,752 | $ 13,583,243 |
| REORGANIZATION EXPENSES | | | | | |
| 28  PROFESSIONAL FEES | $ - | $ 5,460,546 | $ 5,572,032 | $ 3,902,480 | $ 11,551,682 |
| 29  U.S. TRUSTEE FEES | $ - | $ 68,173 | $ 167,025 | $ - | $ 277,924 |
| 30  OTHER (ATTACH LIST) | $ - | $ 715,317 | $ 300,000 | $ 210,000 | $ 961,289 |
| 31  TOTAL REORGANIZATION EXPENSES | $ - | $ 6,244,037 | $ 6,039,057 | $ 4,112,480 | $ 12,790,896 |
| 32  TOTAL DISBURSEMENTS | $ 6,817,251 | $ 26,857,515 | $ 17,586,927 | $ 6,827,232 | $ 26,374,138 |
| 33  NET CASH FLOW | $ 6,947,179 | $ 3,031,058 | $ 2,461,404 | $ (4,137,715) | $ (9,106,059) |
| 34  CASH - END OF MONTH | $ 9,501,409 | $ 12,532,467 | $ 14,993,872 | $ 5,887,813 | $ 5,887,813 |

1    All postpetition receipts are included in line 3, Management Fees and Other Related Receipts.

**Monthly Operating Report**
ACCRUAL BASIS-3B

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

**OPERATING RECEIPTS - OTHER**

| Date | Amount | Type |
|---|---|---|
| | 67,098.85 | Nexpoint Real Estate Strategies Fund redemption |

**OPERATING DISBURSEMENTS - INVESTMENT**

| Date | Amount | Type |
|---|---|---|
| | 383,041.29 | Carey term-loan purchase |

**OPERATING DISBURSEMENTS - OTHER**

| Date | Amount | Vendor |
|---|---|---|
| 9/1/2020 | 18,412.07 | Ace Parking Management Inc. |
| 9/1/2020 | 2,257.01 | Bloomberg Finance LP |
| 9/1/2020 | 3,009.00 | Brighthouse Life Insurance Company |
| 9/1/2020 | 10,611.00 | Brighthouse Life Insurance Company |
| 9/1/2020 | 1,889.22 | Canteen Vending Services |
| 9/1/2020 | 145.20 | Chase Couriers, Inc |
| 9/1/2020 | 950.00 | Crescent Research |
| 9/1/2020 | 144,048.21 | Crescent TC Investors LP |
| 9/1/2020 | 2,067.50 | CT Corporation System |
| 9/1/2020 | 37,583.75 | Third Party Consultant |
| 9/1/2020 | 1,548.97 | GRUBHUB for Work |
| 9/1/2020 | 47,654.00 | Houlihan Lokey |
| 9/1/2020 | 7,617.26 | ICE Data Pricing & Reference Data, LLC |
| 9/1/2020 | 9,500.00 | Ipreo Data Inc. |
| 9/1/2020 | 89.24 | Iron Mountain Records Management |
| 9/1/2020 | 495.86 | Jordan Fraker Photography |
| 9/1/2020 | 3,392.01 | NYSE MARKET, INC |
| 9/1/2020 | 3,051.14 | Oak Cliff Office Products |
| 9/1/2020 | 1,625.00 | Paessler |
| 9/1/2020 | 441.34 | ProStar Services, Inc |
| 9/1/2020 | 107.15 | UPS Supply Chain Solutions |
| 9/9/2020 | 5,884.76 | ABM |
| 9/9/2020 | 432.00 | Ace Parking Management Inc. |
| 9/9/2020 | 600.00 | Action Shred of Texas |
| 9/9/2020 | 1,492.38 | Canteen Vending Services |
| 9/9/2020 | 510.61 | CDW Direct |
| 9/9/2020 | 11,131.97 | CT Corporation System |
| 9/9/2020 | 1,617.81 | GRUBHUB for Work |
| 9/9/2020 | 47,470.00 | Houlihan Lokey |
| 9/9/2020 | 35,200.00 | Intex Solutions, Inc |
| 9/9/2020 | 2,668.57 | Iron Mountain Records Management |
| 9/9/2020 | 7,500.00 | MacroMavens, LLC |
| 9/9/2020 | 1,570.00 | MICRO-TEL |
| 9/9/2020 | 507.47 | ProStar Services, Inc |
| 9/9/2020 | 16,355.96 | S&P Global Market Intelligence |
| 9/9/2020 | 151,448.26 | Siepe Services, LLC |
| 9/9/2020 | 18,042.03 | Siepe Software, LLC |
| 9/9/2020 | 535.34 | Standard Insurance Company |
| 9/9/2020 | 6,369.17 | TW Telecom Holdings, llc |
| 9/9/2020 | 6,866.42 | Willis of Texas, Inc. |
| 9/11/2020 | 263.81 | Directv, LLC |
| 9/11/2020 | 1,000.00 | Pitney Bowes- Purchase Power |
| 9/11/2020 | 4,335.10 | Third Party Consultant |
| 9/14/2020 | 500.00 | Pitney Bowes |
| 9/17/2020 | 2,082.70 | Zayo Group, LLC |
| 9/18/2020 | 253.94 | Arkadin, Inc. |
| 9/18/2020 | 4,192.71 | Third Party Consultant |
| 9/18/2020 | 2,955.06 | AT&T |
| 9/18/2020 | 137.50 | AT&T |
| 9/18/2020 | 768.58 | Audio Visual Innovations, Inc. |
| 9/18/2020 | 8,140.16 | Bloomberg Finance LP |
| 9/18/2020 | 1,636.20 | Canteen Vending Services |
| 9/18/2020 | 21,863.25 | CDW Direct |
| 9/18/2020 | 700.00 | Centroid |
| 9/18/2020 | 4,059.81 | Concur Technologies, Inc. |
| 9/18/2020 | 369.00 | CT Corporation System |
| 9/18/2020 | 3,031.00 | Daltex Janitorial Services, LLC |
| 9/18/2020 | 859.36 | DTCC ITP LLC |
| 9/18/2020 | 11,887.73 | Flexential Colorado Corp. |
| 9/18/2020 | 2,162.11 | Grubhub for Work |
| 9/18/2020 | 3,762.48 | ICE Data Pricing & Reference Data, LLC |
| 9/18/2020 | 112.21 | Iron Mountain Records Management |
| 9/18/2020 | 3,766.00 | MacroView Business Technology |
| 9/18/2020 | 2,128.81 | NYSE Market, Inc |
| 9/18/2020 | 548.83 | Pitney Bowes Financial Services |
| 9/18/2020 | 6,757.16 | Proofpoint |
| 9/18/2020 | 2,466.10 | Thomson West |
| 9/18/2020 | 301.48 | UPS Supply Chain Solutions |
| 9/18/2020 | 259.80 | Venture Mechanical, Inc. |
| 9/18/2020 | 273.47 | Verity Group |
| 9/18/2020 | 416.57 | Analysis Charge |
| 9/18/2020 | 23.00 | Chase Couriers |
| 9/25/2020 | 16,750.65 | Ace Parking Management Inc. |
| 9/25/2020 | 1,740.82 | AT&T |
| 9/25/2020 | 763.22 | AT&T |
| 9/25/2020 | 7,147.16 | AT&T |
| 9/25/2020 | 1,431.77 | Canteen Vending Services |
| 9/25/2020 | 2,491.11 | CDW Direct |
| 9/25/2020 | 15,000.00 | Centroid |
| 9/25/2020 | 58.62 | Chase Couriers |
| 9/25/2020 | 320.70 | CT Corporation System |
| 9/25/2020 | 7,752.34 | Fitch Solutions, Inc. |
| 9/25/2020 | 484.96 | Four Seasons Plantscaping, LLC |
| 9/25/2020 | 1,480.74 | Grubhub for Work |
| 9/25/2020 | 4,840.01 | Liberty Life Assurance Company of Boston - Group Benefits |
| 9/25/2020 | 562.50 | Maples & Calder |
| 9/25/2020 | 124,634.61 | Siepe Services, LLC |
| 9/28/2020 | 1,412.83 | Southland Property Tax Consultants, Inc |
| 9/29/2020 | 980.96 | Xerox Corporation |
| 9/30/2020 | 11,000.00 | Third Party Consultant |
| 9/30/2020 | 25.00 | Bank fees returned Foley Wire |
| | 903,589 | |

**REORGANIZATION EXPENSES - OTHER**

| Date | Amount | Description |
|---|---|---|
| 9/1/2020 | 30,000 | Dubel & Associates, L.L.C. |
| 9/1/2020 | 150,000 | J.P. Seery & Co. LLC |
| 9/1/2020 | 30,000 | Nelms and Associates |
| | 210,000 | |

**Monthly Operating Report**
**ACCRUAL BASIS-4**

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| MGMT FEE RECEIVABLE AGING [2] | | June [3] | July [3] | August [3] | September [3] |
|---|---|---|---|---|---|
| 1. | 0-30 | $  1,813,292 | $2,428,715 | $1,768,818 | $2,577,696 |
| 2. | 31-60 | | $1,163,000 | $1,285,718 | $772,384 |
| 3. | 61-90 | | | | $772,384 |
| 4. | 91+ | | | | |
| 5. | TOTAL MGMT FEE RECEIVABLE | $  2,976,292 | $  3,714,432 | $  2,541,202 | $3,350,080 |
| 6. | AMOUNT CONSIDERED UNCOLLECTIBLE | | | | |
| 7. | MGMT FEE RECEIVABLE (NET) | $  2,976,292 | $  3,714,432 | $  2,541,202 | $3,350,080 |

| AGING OF POSTPETITION TAXES AND PAYABLES | | | MONTH: | September 2020 | |
|---|---|---|---|---|---|
| TAXES PAYABLE | 0-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS | TOTAL |
| 1. FEDERAL | | | | | $0 |
| 2. STATE | | | | | $0 |
| 3. LOCAL | | | | | $0 |
| 4. OTHER (ATTACH LIST) | | | | | $0 |
| 5. TOTAL TAXES PAYABLE | $0 | $0 | $0 | $0 | $0 |
| | | | | | |
| 6. ACCOUNTS PAYABLE | $418,457 | $16,057 | $0 | $320,995 | $755,509 |

| STATUS OF POSTPETITION TAXES [1] | | | MONTH: | September 2020 |
|---|---|---|---|---|
| FEDERAL | BEGINNING TAX LIABILITY | AMOUNT WITHHELD AND/ OR ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY |
| 1. WITHHOLDING | | | | $0 |
| 2. FICA-EMPLOYEE | | | | $0 |
| 3. FICA-EMPLOYER | | | | $0 |
| 4. UNEMPLOYMENT | | | | $0 |
| 5. INCOME | | | | $0 |
| 6. OTHER (ATTACH LIST) | | | | $0 |
| 7. TOTAL FEDERAL TAXES | $0 | $0 | $0 | $0 |
| STATE AND LOCAL | | | | |
| 8. WITHHOLDING | | | | $0 |
| 9. SALES | | | | $0 |
| 10. EXCISE | | | | $0 |
| 11. UNEMPLOYMENT | | | | $0 |
| 12. REAL PROPERTY | $0 | $0 | $0 | $0 |
| 13. PERSONAL PROPERTY | | | | $0 |
| 14. OTHER (ATTACH LIST) | | | | $0 |
| 15. TOTAL STATE & LOCAL | $0 | $0 | $0 | $0 |
| 16. TOTAL TAXES | $0 | $0 | $0 | $0 |

1   The Debtor funds all state and federal employment taxes to Paylocity, who files all required federal and state related employment reports and withholdings.
2   Aging based on when management fee is due and payable.
3   All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process.

**Monthly Operating Report**
ACCRUAL BASIS-5

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

**MONTH:** September 2020

**BANK RECONCILIATIONS**

| | | Account #1 | Account #2 | Account #3 | Account #4 | Account #5 | Account #6 | |
|---|---|---|---|---|---|---|---|---|
| A. | BANK: | East West Bank | East West Bank | Maxim Group | Jefferies LLC | Nexbank | East West Bank | |
| B. | ACCOUNT NUMBER: | x4686 | x4693 | x1885 | x0932 | x5891 | x5848 | TOTAL |
| C. | PURPOSE (TYPE): | Operating | Insurance | Brokerage | Brokerage | CD | Prepaid Card | |
| 1. | BALANCE PER BANK STATEMENT [1] | $ 5,617,167 | $ 32,373 | $ 30 | $ - | $ 138,190 | $ 100,052 | $ 5,887,812 |
| 2. | ADD: TOTAL DEPOSITS NOT CREDITED | | | | | | | $ - |
| 3. | SUBTRACT: OUTSTANDING CHECKS | | | | | | | $ - |
| 4. | OTHER RECONCILING ITEMS | | | | | | | $ - |
| 5. | MONTH END BALANCE PER BOOKS | $ 5,617,167 | $ 32,373 | $ 30 | $ - | $ 138,190 | $ 100,052 | $ 5,887,812 |
| 6. | NUMBER OF LAST CHECK WRITTEN | **100510** | n/a | n/a | n/a | n/a | n/a | |

**INVESTMENT ACCOUNTS**

| | | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | | | | CURRENT VALUE |
|---|---|---|---|---|---|---|---|---|
| | BANK, ACCOUNT NAME & NUMBER | | | | | | | |
| 7. | | | | | | | | |
| 8. | | | | | | | | |
| 9. | | | | | | | | |
| 10. | | | | | | | | |
| 11. | TOTAL INVESTMENTS | | | $0 | | | | $0 |

**CASH**

| 12. | CURRENCY ON HAND | $0 |
|---|---|---|

| 13. | **TOTAL CASH - END OF MONTH** | **$5,887,812** |
|---|---|---|

[1] Account x6342 is now closed.

**Monthly Operating Report**
ACCRUAL BASIS-6

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

MONTH: September 2020

**PAYMENTS TO INSIDERS AND PROFESSIONALS**

| | INSIDERS | | | |
|---|---|---|---|---|
| | NAME | TYPE OF PAYMENT | AMOUNT PAID | TOTAL PAID POST PETITION |
| 1 | Frank Waterhouse | Salary | $33,333 | $360,417 |
| 2 | Frank Waterhouse | Expense Reimbursement | $807 | $5,918 |
| 3 | Scott Ellington | Salary | $37,500 | $431,250 |
| 4 | Scott Ellington | Expense Reimbursement | $252 | $6,095 |
| 5 | James Dondero | Salary | $0 | $129,972 |
| 6 | James Dondero | Expense Reimbursement [1] | $0 | $16,918 |
| 7 | Thomas Surgent | Salary | $33,333 | $383,333 |
| 8 | Thomas Surgent | Expense Reimbursement | $456 | $4,222 |
| 9 | Trey Parker | Salary | $0 | $131,250 |
| 10 | Trey Parker | Expense Reimbursement | $0 | $6,212 |
| | TOTAL PAYMENTS TO INSIDERS | | $105,681 | $1,475,585 |

[1] The total amount of reimbursements during the reporting month also included $5,675 for use of the credit card by the Debtor for office related expenses such as subscriptions, vending supplies, and IT equipment/software.

| | PROFESSIONALS [2] | | | | | |
|---|---|---|---|---|---|---|
| | NAME | DATE OF MONTHLY FEE APPLICATION | AMOUNT APPROVED | AMOUNT PAID | TOTAL PAID TO DATE | TOTAL INCURRED & UNPAID |
| 1. | Kurtzman Carson Consultants LLC | | 41,966 | 41,966 | 532,521 | 95,605 |
| 2. | Sidley Austin LLP | | 814,318 | 814,318 | 5,807,091 | 1,333,420 |
| 3. | Young Conaway Stargatt & Taylor LLP | | | - | 281,156 | - |
| 4. | FTI Consulting, Inc. | | 626,333 | 626,333 | 3,607,292 | 559,823 |
| 5. | Pachulski Stang Ziehl & Jones LLP | | 1,283,329 | 1,283,329 | 8,435,219 | 1,512,143 |
| 6 | Hayward & Associates PLLC | | 60,736 | 60,736 | 256,412 | 10,828 |
| 7 | Development Specialists, Inc. | | 237,828 | 237,828 | 2,351,224 | 249,129 |
| 8 | Foley & Lardner LLP | | - | | 464,294 | 119,516 |
| 9 | Mercer (US) Inc. | | 54,328 | 54,328 | 170,284 | - |
| 10 | Wilmer Cutler Pickering Hale and Dorr LLP | | 618,643 | 618,643 | 618,643 | |
| 11 | Meta-e Discovery LLC | | 165,000 | 165,000 | 165,000 | |
| | TOTAL PAYMENTS TO PROFESSIONALS | | | 3,902,480 | 22,689,136 | 3,880,463 |

[2] Does not include payments to ordinary course professionals.

**POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS**

| | NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POSTPETITION |
|---|---|---|---|---|
| 1. | Crescent TC Investors LP (rent portion only) | 130,364 | 130,364 | - |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | TOTAL | 130,364 | $130,364 | $0 |

<div align="right">

**Monthly Operating Report**

ACCRUAL BASIS-7
</div>

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

**MONTH:**  September 2020

### QUESTIONNAIRE

| | | YES | NO |
|---|---|---|---|
| 1. | HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | x |
| 2. | HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | | x |
| 3. | ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES, OR LOANS) DUE FROM RELATED PARTIES? | x | |
| 4. | HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | | x |
| 5. | HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | x |
| 6. | ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | x |
| 7. | ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | x |
| 8. | ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | x |
| 9. | ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | x |
| 10. | ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | x |
| 11. | HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | x |
| 12. | ARE ANY WAGE PAYMENTS PAST DUE? | | x |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES," PROVIDE A DETAILED
EXPLANATION OF EACH ITEM. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| 3 | Debtor generates fee income and other receipts from various related parties in normal course, see cash management motion for further discussion. |
|---|---|

### INSURANCE

| | | YES | NO |
|---|---|---|---|
| 1. | ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | x | |
| 2. | ARE ALL PREMIUM PAYMENTS PAID CURRENT? | x | |
| 3. | PLEASE ITEMIZE POLICIES BELOW. | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO," OR IF ANY POLICIES HAVE BEEN
CANCELLED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN EXPLANATION
BELOW. ATTACH ADDITIONAL SHEETS IF NECESSARY.

### INSTALLMENT PAYMENTS

| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT 59

**September 2020 Due From Affiliates**

| | | |
|---|---|---:|
| 14585 DUE FROM HUNTER MOUNTAIN INVESTMENT TRUST | $ | 57,963,118 |
| 14532 DUE FROM NEXPOINT ADVISORS | | 23,610,195 |
| 14750 LONG TERM NOTES RECEIVABLE | | 18,286,268 |
| 14531 DUE FROM HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS | | 10,635,564 |
| 14533 DUE FROM HCRE PARTNERS | | 10,436,597 |
| 14565 DUE FROM OTHER - TAX LOANS | | 8,929,625 |
| 14530 DUE FROM HIGHLAND CAPITAL MANAGEMENT SERVICES | | 7,518,692 |
| 14590 DUE FROM OTHER AFFILIATE | | 5,088,256 |
| 14595 DUE FROM HIGHLAND CAPITAL KOREA | | 3,832,358 |
| 14536 DUE FROM SELECT | | 3,000,000 |
| 14010 CASH INTEREST RECEIVABLE | | 2,718,375 |
| 14140 SHARED SVCS FEE RECVBL - PYXIS | | 308,093 |
| 14137 SHARED SVCS FEE RECVBL - OSLI | | 122,000 |
| 14580 DUE FROM NEXBANK | | 60,000 |
| 14148 SHARED SVCS FEE RECVBL - RAND ADVISORS | | 40,182 |
| 14142 SHARED SVCS FEE RECVBL - HCLOH | | 24,592 |
| 14535 DUE FROM HERA | | 10,676 |
| **Total Due From Affiliates** | $ | 152,584,592 |

# EXHIBIT 60

**Monthly Operating Report**
ACCRUAL BASIS

| | |
|---|---|
| **CASE NAME:** | Highland Capital Management |
| **CASE NUMBER:** | 19-34054 |
| **JUDGE:** Stacey Jernigan | |

# UNITED STATES BANKRUPTCY COURT

## NORTHERN & EASTERN DISTRICTS OF TEXAS

## REGION 6

## MONTHLY OPERATING REPORT

**MONTH ENDING:**     October     2020

MONTH     YEAR

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT (ACCRUAL BASIS-1 THROUGH ACCRUAL BASIS-7) AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE. DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.

RESPONSIBLE PARTY:

_____     Chief Restructuring Officer/ Chief Executive Officer
ORIGINAL SIGNATURE OF RESPONSIBLE PARTY     TITLE

James Seery     12-1-20
PRINTED NAME OF RESPONSIBLE PARTY     DATE

PREPARER:

_____     Chief Financial Officer
ORIGINAL SIGNATURE OF PREPARER     TITLE

Frank Waterhouse     12.1.20
PRINTED NAME OF PREPARER     DATE

1934054201201000000000001

**Monthly Operating Report**
**ACCRUAL BASIS-1**

| CASE NAME: | Highland Capital Management, LP |
|---|---|
| CASE NUMBER: | 19-12239-CSS |

**Comparative Balance Sheet**
(in thousands)

| | 10/15/2019 | 12/31/2019 [6] | 10/31/2020 [6] |
|---|---|---|---|
| **Assets** | | | |
| Cash and cash equivalents | 2,529 | 9,501 | 8,753 |
| Investments, at fair value [3] | 232,620 | 232,820 | 107,676 |
| Equity method investees [3] | 161,819 | 183,529 | 95,244 |
| Management and incentive fee receivable | 2,579 | 1,929 | 4,703 |
| Fixed assets, net | 3,754 | 3,521 | 2,746 |
| Due from affiliates [1] | 151,901 | 146,276 | 149,822 |
| Reserve against notes recievable | | (57,963) | (59,269) |
| Other assets | 11,311 | 11,463 | 12,467 |
| **Total assets** | **$ 566,513** | **$ 531,076** | **$ 322,143** |
| | | | |
| **Liabilities and Partners' Capital** | | | |
| Pre-petition accounts payable [4] | 1,176 | 1,141 | 1,077 |
| Post-petition accounts payable [4] | - | 2,042 | 923 |
| Secured debt: | | | |
| Frontier | 5,195 | 5,195 | 5,195 |
| Jefferies | 30,328 | 30,020 | - |
| Accrued expenses and other liabilities [4] | 59,203 | 63,275 | 59,815 |
| Accrued re-organization related fees [5] | - | 5,547 | 7,021 |
| Claim accrual [2] | 73,997 | 73,997 | 73,997 |
| Partners' capital | 396,614 | 349,857 | 174,115 |
| **Total liabilities and partners' capital** | **$ 566,513** | **$ 531,076** | **$ 322,143** |

[1] Includes various notes receivable at carrying value, except note due from Hunter Mountain Investment Trust which is fully reserved against ($59M reserve). Fair value has not been determined with respect to any of the notes.

[2] Uncontested portion of Redeemer claim less appplicable offsets. Potential for additional liability based on future events. No interest has been accrued beyond petition date. No additional accruals will be made on settlement claims until further approval by the court.

[3] Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

[4] Note on accruals: expenses recorded in Accounts Payable and Accrued Expenses and Other Liabilities reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.  For balance sheet dates other than the Petition Date, amounts include both pre-petition and post-petition liabilities.

[5] Beginning December 31st, 2019, Debtor accrued for post-petition re-organization fees based upon an estimate of fees incurred to date.

[6] All balances at December 31st, 2019 are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, balances for subsequent months have and will fluctuate.

**Monthly Operating Report**
ACCRUAL BASIS-2

| CASE NAME: | Highland Capital Management, LP | |
| --- | --- | --- |
| | | |
| CASE NUMBER: | 19-12239-CSS | |

**Income Statement[1]**
(in thousands)

| | Date | Filing to Year Ended [4] | Month ended [4] | Filing to date [4] |
| --- | --- | --- | --- | --- |
| | 10/16/19 - 10/31/19 | 2019 | 10/31/2020 | |
| **Revenue:** | | | | |
| Management fees | 975 | 4,528 | 2,099 | 21,113 |
| Shared services fees | 283 | 1,588 | 638 | 7,886 |
| Other income | 99 | 1,582 | 19 | 5,077 |
| **Total operating revenue** | **1,357** | **7,697** | **2,756** | **34,076** |
| **Operating expenses:** | | | | |
| Compensation and benefits | 997 | 1,498 | 1,634 | 17,412 |
| Professional services | 256 | 64 | 218 | 2,385 |
| Investment research and consulting | 10 | 266 | 5 | 965 |
| Marketing and advertising expense | - | 370 | 7 | 528 |
| Depreciation expense | 82 | 244 | 76 | 1,016 |
| Bad debt expense reserve | - | 8,410 | 128 | 9,715 |
| Other operating expenses | 201 | 1,265 | 443 | 5,108 |
| **Total operating expenses** | **1,545** | **12,118** | **2,511** | **37,129** |
| **Operating income/(loss)** | **(188)** | **(4,421)** | **245** | **(3,052)** |
| **Other income/expense:** | | | | |
| Interest income | 250 | 1,230 | 505 | 6,121 |
| Interest expense | (107) | (286) | (22) | (697) |
| Reserve against notes receivable | - | (57,963) | - | (57,963) |
| Re-org related expenses [2] | - | (5,547) | (1,309) | (30,108) |
| Independent director fees | - | - | - | (1,977) |
| Other income/expense | 32 | 32 | (24) | (168) |
| **Total other income/expense** | **175** | **(62,534)** | **(850)** | **(84,793)** |
| Net realized gains/(losses) on investments | 339 | 618 | 2,527 | (25,211) |
| Net change in unrealized gains/(losses) of investments [3] | 2,654 | (955) | (4,680) | (41,527) |
| | **2,993** | **(337)** | **(2,153)** | **(66,738)** |
| **Net earnings/(losses) from equity method investees** [3] | **(20)** | **14,918** | **(5,969)** | **(73,533)** |
| **Net income/(loss)** | **$ 2,959** | **$ (52,374)** | **$ (8,728)** | **$ (228,116)** |

(1) Note on accruals: expenses recorded in the Income Statement reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.

(2) Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed as of the petition date.

(3) Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

(4) All balances are preliminary, unaudited, and subject to further year-end closing process pursuant to the normal year-end closing process. As a result, operating results will change as these entries are made.

<div align="right">

**Monthly Operating Report**
ACCRUAL BASIS-3A

</div>

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| CASH RECEIPTS AND DISBURSEMENTS | FILING TO YEAR END 2019 | QUARTER 1 | QUARTER 2 | QUARTER 3 | OCTOBER |
|---|---|---|---|---|---|
| 1. CASH - BEGINNING OF MONTH | $ 2,554,230 | $ 9,501,409 | $ 12,532,467 | $ 14,993,872 | 5,887,813 |
| **RECEIPTS FROM OPERATIONS** | | | | | |
| 2. OTHER OPERATING RECEIPTS | $ 1,862,757 | $ 1,379,338 | $ 2,983,221 | $ 2,259,736 | 598,804 |
| 3. MANAGEMENT FEES AND OTHER RELATED RECEIPTS | $ 3,156,742 | $ 7,555,297 | $ 6,179,437 | $ 5,575,680 | 1,367,428 |
| **COLLECTION OF ACCOUNTS RECEIVABLE** | | | | | |
| 4. PREPETITION | $ 3,593,108 | $ 76,569 | $ 3,727 | $ - | $ - |
| 5. POSTPETITION [1] | $ - | $ - | $ - | $ - | $ - |
| 6. TOTAL OPERATING RECEIPTS | $ 8,612,608 | $ 9,011,204 | $ 9,166,385 | $ 7,835,415 | 1,966,232 |
| **NON-OPERATING RECEIPTS** | | | | | |
| 7. THIRD PARTY FUND ACTUAL/EXPECTED DISTRIBUTIONS | $ 423,468 | $ 18,992,786 | $ 797,571 | $ 610,254 | $ - |
| 8. DIVS, PAYDOWNS, MISC FROM INVESTMENT ASSETS | $ 1,338,069 | $ 477,479 | $ 74,376 | $ 5,311 | 1,242 |
| 9. OTHER (ATTACH LIST) | $ 3,390,286 | $ 1,407,103 | $ 10,010,000 | $ 8,817,099 | 3,269,000 |
| 10. TOTAL NON-OPERATING RECEIPTS | $ 5,151,822 | $ 20,877,369 | $ 10,881,947 | $ 9,432,664 | 3,270,242 |
| 11. TOTAL RECEIPTS | $ 13,764,430 | $ 29,888,573 | $ 20,048,331 | $ 17,268,080 | 5,236,475 |
| 12. TOTAL CASH AVAILABLE | | | | $ 32,261,951 | 11,124,288 |
| **OPERATING DISBURSEMENTS** | | | | | |
| 13. PAYROLL, BENEFITS, AND TAXES + EXP REIMB | $ 3,776,446 | $ 8,825,042 | $ 4,886,314 | $ 8,806,880 | 1,347,709 |
| 14. SINGAPORE SERVICE FEES | $ 95,118 | $ 58,129 | $ 2,965 | $ - | 10,547 |
| 15. HCM LATIN AMERICA | $ 200,000 | $ 100,000 | $ - | $ - | $ - |
| 16. THIRD PARTY FUND CAPITAL CALL OBLIGATION | $ 1,426,987 | $ 7,812,469 | $ 3,087,163 | $ 979,631 | 110,220 |
| 17. UTILITIES | $ - | $ - | $ - | $ - | $ - |
| 18. INSURANCE | $ - | $ 533,940 | $ 376,376 | $ 163,400 | $ - |
| 19. INVENTORY PURCHASES | $ - | $ - | $ - | $ - | $ - |
| 20. VEHICLE EXPENSES | $ - | $ - | $ - | $ - | $ - |
| 21. TRAVEL | $ - | $ - | $ - | $ - | $ - |
| 22. ENTERTAINMENT | $ - | $ - | $ - | $ - | $ - |
| 23. REPAIRS & MAINTENANCE | $ - | $ - | $ - | $ - | $ - |
| 24. SUPPLIES | $ - | $ - | $ - | $ - | $ - |
| 25. ADVERTISING | $ - | $ - | $ - | $ - | $ - |
| 26. OTHER (ATTACH LIST) | $ 1,318,700 | $ 3,283,898 | $ 3,195,054 | $ 3,633,331 | 653,828 |
| 27. TOTAL OPERATING DISBURSEMENTS | $ 6,817,251 | $ 20,613,478 | $ 11,547,870 | $ 13,583,243 | 2,122,305 |
| **REORGANIZATION EXPENSES** | | | | | |
| 28. PROFESSIONAL FEES | $ - | $ 5,460,546 | $ 5,572,032 | $ 11,551,682 | 39,255 |
| 29. U.S. TRUSTEE FEES | $ - | $ 68,173 | $ 167,025 | $ 277,924 | $ - |
| 30. OTHER (ATTACH LIST) | $ - | $ 715,317 | $ 300,000 | $ 961,289 | 210,000 |
| 31. TOTAL REORGANIZATION EXPENSES | $ - | $ 6,244,037 | $ 6,039,057 | $ 12,790,896 | 249,255 |
| 32. TOTAL DISBURSEMENTS | $ 6,817,251 | $ 26,857,515 | $ 17,586,927 | $ 26,374,138 | 2,371,560 |
| 33. NET CASH FLOW | $ 6,947,179 | $ 3,031,058 | $ 2,461,404 | $ (9,106,059) | 2,864,915 |
| 34. CASH - END OF MONTH | $ 9,501,409 | $ 12,532,467 | $ 14,993,872 | $ 5,887,813 | 8,752,728 |

1    All postpetition receipts are included in line 3, Management Fees and Other Related Receipts.

**Monthly Operating Report**
ACCRUAL BASIS-3B

| CASE NAME: | Highland Capital Management |
| --- | --- |
| CASE NUMBER: | 19-34054 |

**OPERATING DISBURSMENTS - OTHER**

| Date | Amount | Vendor |
| --- | --- | --- |
| 10/1/2020 | 158,674.80 | Crescent TC Investors LP |
| 10/1/2020 | 35,839.30 | East West Visa pmt |
| 10/2/2020 | 51.72 | American Solutions for Business |
| 10/2/2020 | 67.92 | UPS Supply Chain Solutions |
| 10/2/2020 | 300.00 | Action Shred of Texas |
| 10/2/2020 | 593.75 | ProStar Services, Inc |
| 10/2/2020 | 1,649.07 | GRUBHUB for Work |
| 10/2/2020 | 2,567.28 | Canteen Vending Services |
| 10/2/2020 | 2,668.57 | Iron Mountain Records Management |
| 10/2/2020 | 5,884.76 | ABM |
| 10/2/2020 | 6,866.42 | Willis of Texas, Inc. |
| 10/2/2020 | 11,423.25 | Fitch Solutions, Inc. |
| 10/2/2020 | 18,042.03 | Siepe Software, LLC |
| 10/2/2020 | 35,200.00 | Intex Solutions, Inc. |
| 10/2/2020 | 3,102.00 | Third Party Consultant |
| 10/2/2020 | 6,179.02 | TW Telecom Holdings, llc |
| 10/2/2020 | 11,532.12 | ICE Data Pricing & Reference Data, LLC |
| 10/2/2020 | 44,741.78 | Third Party Consultant |
| 10/8/2020 | 263.81 | Directv, LLC |
| 10/8/2020 | 664.00 | PBGC |
| 10/9/2020 | 158.36 | UPS Supply Chain Solutions |
| 10/9/2020 | 13,271.70 | Refinitiv US LLC |
| 10/9/2020 | 330.77 | ProStar Services, Inc |
| 10/9/2020 | 1,208.84 | Options Price Reporting Authority |
| 10/9/2020 | 2,128.81 | NYSE MARKET, INC |
| 10/9/2020 | 112.21 | Iron Mountain Records Management |
| 10/9/2020 | 6,863.93 | ICE Data Pricing & Reference Data, LLC |
| 10/9/2020 | 47,729.56 | Houlihan Lokey |
| 10/9/2020 | 1,622.46 | GRUBHUB for Work |
| 10/9/2020 | 100.32 | CT Corporation System |
| 10/9/2020 | 4,059.81 | Concur Technologies, Inc. |
| 10/9/2020 | 15,197.50 | Centroid |
| 10/9/2020 | 824.31 | CDW Direct |
| 10/9/2020 | 1,590.12 | Canteen Vending Services |
| 10/9/2020 | 20,731.98 | Bloomberg Finance LP |
| 10/9/2020 | 158.04 | Arkadin, Inc. |
| 10/9/2020 | 342.00 | Ace Parking Management Inc. |
| 10/9/2020 | 2,466.10 | Thomson West |
| 10/14/2020 | 550.67 | Xerox Corporation |
| 10/14/2020 | 10,407.89 | Pricewaterhouse Coopers, LLP |
| 10/15/2020 | 1,000.00 | Pitney Bowes- Purchase Power |
| 10/16/2020 | 7,551.64 | ICE Data Pricing & Reference Data, LLC |
| 10/16/2020 | 293.63 | UPS Supply Chain Solutions |
| 10/16/2020 | 320.90 | Verity Group |
| 10/16/2020 | 938.36 | Standard Insurance Company |
| 10/16/2020 | 1,825.96 | GRUBHUB for Work |
| 10/16/2020 | 2,391.37 | Canteen Vending Services |
| 10/16/2020 | 3,236.64 | DTCC ITP LLC |
| 10/16/2020 | 19,159.48 | Strategas Securities LLC |
| 10/19/2020 | 2,092.34 | Zayo Group, LLC |
| 10/20/2020 | 880.04 | EastWest Bank |
| 10/22/2020 | 24.60 | CHASE COURIERS, INC |
| 10/22/2020 | 87.50 | UPS Supply Chain Solutions |
| 10/22/2020 | 303.10 | Four Seasons Plantscaping, LLC |
| 10/22/2020 | 1,171.83 | Canteen Vending Services |
| 10/22/2020 | 3,251.87 | Third Party Consultant |
| 10/22/2020 | 11,887.73 | Flexential Colorado Corp. |
| 10/22/2020 | 16,967.11 | Ace Parking Management Inc. |
| 10/22/2020 | 18,673.13 | MERGERMARKET LTD |
| 10/22/2020 | 4,629.14 | Liberty Life Assurance Company of Boston - Group Benefits |
| 10/27/2020 | 34,520.76 | Reorg Research, Inc. |
| 10/28/2020 | 12,250.00 | Summit Management Limited |
| 10/30/2020 | 3,500.00 | MaplesFS Service Company Limited |
| 10/30/2020 | 1,914.10 | Canteen Vending Services |
| 10/30/2020 | 1,692.38 | Oracle America, Inc. |
| 10/30/2020 | 1,642.86 | GRUBHUB for Work |
| 10/30/2020 | 1,270.09 | ICE Data Pricing & Reference Data, LLC |
| 10/30/2020 | 740.80 | CDW Direct |
| 10/30/2020 | 715.53 | ProStar Services, Inc |
| 10/30/2020 | 552.35 | DTCC ITP LLC |
| 10/30/2020 | 495.00 | Intralinks |
| 10/30/2020 | 172.44 | UPS Supply Chain Solutions |
| 10/30/2020 | 146.14 | Secured Access Systems, LLC |
| 10/30/2020 | 12,996.05 | Third Party Consultant |
| 10/30/2020 | 6,866.42 | Willis of Texas, Inc. |
| 10/30/2020 | 137.50 | AT&T |
| 10/30/2020 | 1,362.60 | Discovery Benefits Admin |
| | 653,828 | |

**REORGANIZATION EXPENSES - OTHER**

| Date | Amount | Description |
| --- | --- | --- |
| 10/1/2020 | 30,000 | Dubel & Associates, L.L.C. |
| 10/1/2020 | 150,000 | J.P. Seery & Co. LLC |
| 10/1/2020 | 30,000 | Nelms and Associates |
| | 210,000 | |

**Monthly Operating Report**
ACCRUAL BASIS-4

| CASE NAME: | Highland Capital Management |
| --- | --- |
| CASE NUMBER: | 19-34054 |

| MGMT FEE RECEIVABLE AGING [2] | | July [3] | August [3] | September [3] | October [3] |
| --- | --- | --- | --- | --- | --- |
| 1. | 0-30 | $2,428,715 | $1,768,818 | $2,577,696 | $3,148,887 |
| 2. | 31-60 | $1,285,718 | $772,384 | | $807,441 |
| 3. | 61-90 | | | $772,384 | |
| 4. | 91+ | | | | $746,913 |
| 5. | TOTAL MGMT FEE RECEIVABLE | $ 3,714,432 | $ 2,541,202 | $ 3,350,080 | $4,703,241 |
| 6. | AMOUNT CONSIDERED UNCOLLECTIBLE | | | | |
| 7. | MGMT FEE RECEIVABLE (NET) | $ 3,714,432 | $ 2,541,202 | $ 3,350,080 | $4,703,241 |

| AGING OF POSTPETITION TAXES AND PAYABLES | MONTH: October 2020 | | | | |
| --- | --- | --- | --- | --- | --- |
| TAXES PAYABLE | 0-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS | TOTAL |
| 1. FEDERAL | | | | | $0 |
| 2. STATE | | | | | $0 |
| 3. LOCAL | | | | | $0 |
| 4. OTHER (ATTACH LIST) | | | | | $0 |
| 5. TOTAL TAXES PAYABLE | $0 | $0 | $0 | $0 | $0 |
| | | | | | |
| 6. ACCOUNTS PAYABLE | $723,031 | $83,748 | $14,787 | $101,044 | $922,610 |

| STATUS OF POSTPETITION TAXES [1] | MONTH: October 2020 | | | |
| --- | --- | --- | --- | --- |
| FEDERAL | BEGINNING TAX LIABILITY | AMOUNT WITHHELD AND/ 0R ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY |
| 1. WITHHOLDING | | | | $0 |
| 2. FICA-EMPLOYEE | | | | $0 |
| 3. FICA-EMPLOYER | | | | $0 |
| 4. UNEMPLOYMENT | | | | $0 |
| 5. INCOME | | | | $0 |
| 6. OTHER (ATTACH LIST) | | | | $0 |
| 7. TOTAL FEDERAL TAXES | $0 | $0 | $0 | $0 |
| STATE AND LOCAL | | | | |
| 8. WITHHOLDING | | | | $0 |
| 9. SALES | | | | $0 |
| 10. EXCISE | | | | $0 |
| 11. UNEMPLOYMENT | | | | $0 |
| 12. REAL PROPERTY | $0 | $0 | $0 | $0 |
| 13. PERSONAL PROPERTY | | | | $0 |
| 14. OTHER (ATTACH LIST) | | | | $0 |
| 15. TOTAL STATE & LOCAL | $0 | $0 | $0 | $0 |
| 16. TOTAL TAXES | $0 | $0 | $0 | $0 |

1  The Debtor funds all state and federal employment taxes to Paylocity, who files all required federal and state related employment reports and withholdings.
2  Aging based on when management fee is due and payable.
3  All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process.

**Monthly Operating Report**
ACCRUAL BASIS-5

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

**MONTH:** October      2020

**BANK RECONCILIATIONS**

| | | Account #1 | Account #2 | Account #3 | Account #4 | Account #5 | Account #6 | TOTAL |
|---|---|---|---|---|---|---|---|---|
| A. | BANK: | East West Bank | East West Bank | Maxim Group | Jefferies LLC | Nexbank | East West Bank | |
| B. | ACCOUNT NUMBER: | x4686 | x4693 | x1885 | x0932 | x5891 | x5848 | |
| C. | PURPOSE (TYPE): | Operating | Insurance | Brokerage | Brokerage | CD | Prepaid Card | |
| 1. | BALANCE PER BANK STATEMENT [1] | $ 8,286,354 | $ 228,102 | $ 30 | $ - | $ 138,190 | $ 100,060 | $ 8,752,736 |
| 2. | ADD: TOTAL DEPOSITS NOT CREDITED | | | | | | | $ - |
| 3. | SUBTRACT: OUTSTANDING CHECKS | | | | | | | $ - |
| 4. | OTHER RECONCILING ITEMS | | | | | | | $ - |
| 5. | MONTH END BALANCE PER BOOKS | $ 8,286,354 | $ 228,102 | $ 30 | $ - | $ 138,190 | $ 100,060 | $ 8,752,736 |
| 6. | NUMBER OF LAST CHECK WRITTEN | 100510 | n/a | n/a | n/a | n/a | n/a | |

**INVESTMENT ACCOUNTS**

| | BANK, ACCOUNT NAME & NUMBER | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | | | | CURRENT VALUE |
|---|---|---|---|---|---|---|---|---|
| 7. | | | | | | | | |
| 8. | | | | | | | | |
| 9. | | | | | | | | |
| 10. | | | | | | | | |
| 11. | TOTAL INVESTMENTS | | | $0 | | | | $0 |

**CASH**

| | | |
|---|---|---|
| 12. | CURRENCY ON HAND | $0 |

| | | |
|---|---|---|
| 13. | TOTAL CASH - END OF MONTH | $8,752,736 |

[1] Account x6342 is now closed.

**Monthly Operating Report**
ACCRUAL BASIS-6

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

MONTH: _____ October 2020 _____

**PAYMENTS TO INSIDERS AND PROFESSIONALS**

| | INSIDERS | | | |
|---|---|---|---|---|
| | NAME | TYPE OF PAYMENT | AMOUNT PAID | TOTAL PAID POST PETITION |
| 1 | Frank Waterhouse | Salary | $33,333 | $393,750 |
| 2 | Frank Waterhouse | Expense Reimbursement | $304 | $6,222 |
| 3 | Scott Ellington | Salary | $37,500 | $468,750 |
| 4 | Scott Ellington | Expense Reimbursement | $244 | $6,338 |
| 5 | James Dondero | Salary | $0 | $129,972 |
| 6 | James Dondero | Expense Reimbursement [1] | $0 | $16,918 |
| 7 | Thomas Surgent | Salary | $33,333 | $416,667 |
| 8 | Thomas Surgent | Expense Reimbursement | $360 | $4,581 |
| 9 | Trey Parker | Salary | $0 | $131,250 |
| 10 | Trey Parker | Expense Reimbursement | $0 | $6,212 |
| | TOTAL PAYMENTS TO INSIDERS | | $105,074 | $1,580,659 |

[1] The total amount of reimbursements during the reporting month also included $8,194 for use of the credit card by the Debtor for office related expenses such as subscriptions and IT equipment/software.

| | PROFESSIONALS [2] | | | | | |
|---|---|---|---|---|---|---|
| | NAME | DATE OF MONTHLY FEE APPLICATION | AMOUNT APPROVED | AMOUNT PAID | TOTAL PAID TO DATE | TOTAL INCURRED & UNPAID |
| 1. | Kurtzman Carson Consultants LLC | | - | - | 532,521 | 54,170 |
| 2. | Sidley Austin LLP | | - | - | 5,807,091 | 821,421 |
| 3. | Young Conaway Stargatt & Taylor LLP | | - | - | 281,156 | - |
| 4. | FTI Consulting, Inc. | | - | - | 3,607,292 | 391,704 |
| 5. | Pachulski Stang Ziehl & Jones LLP | | - | - | 8,435,219 | 2,109,271 |
| 6. | Hayward & Associates PLLC | | - | - | 256,412 | 5,957 |
| 7. | Development Specialists, Inc. | | - | - | 2,351,224 | - |
| 8. | Foley & Lardner LLP | | - | - | 464,294 | 127,594 |
| 9. | Mercer (US) Inc. | | - | - | 170,284 | |
| 10 | Wilmer Cutler Pickering Hale and Dorr LLP | | - | - | 618,643 | - |
| 11 | Meta-e Discovery LLC | | - | - | 165,000 | |
| | TOTAL PAYMENTS TO PROFESSIONALS | | - | | 22,689,136 | 3,510,117 |

2 Does not include payments to ordinary course professionals.

**POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS**

| | NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POSTPETITION |
|---|---|---|---|---|
| 1. | Crescent TC Investors LP (rent portion only) | 130,364 | 130,364 | - |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | TOTAL | 130,364 | $130,364 | $0 |

**Monthly Operating Report**
ACCRUAL BASIS-7

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

MONTH:    October 2020

### QUESTIONNAIRE

| | | YES | NO |
|---|---|---|---|
| 1. | HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | x |
| 2. | HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | | x |
| 3. | ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES, OR LOANS) DUE FROM RELATED PARTIES? | x | |
| 4. | HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | | x |
| 5. | HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | x |
| 6. | ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | x |
| 7. | ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | x |
| 8. | ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | x |
| 9. | ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | x |
| 10. | ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | x |
| 11. | HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | x |
| 12. | ARE ANY WAGE PAYMENTS PAST DUE? | | x |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES," PROVIDE A DETAILED
EXPLANATION OF EACH ITEM. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| 3 | Debtor generates fee income and other receipts from various related parties in normal course, see cash management motion for further discussion. |
|---|---|

### INSURANCE

| | | YES | NO |
|---|---|---|---|
| 1. | ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | x | |
| 2. | ARE ALL PREMIUM PAYMENTS PAID CURRENT? | x | |
| 3. | PLEASE ITEMIZE POLICIES BELOW. | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO," OR IF ANY POLICIES HAVE BEEN
CANCELLED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN EXPLANATION
BELOW. ATTACH ADDITIONAL SHEETS IF NECESSARY.

### INSTALLMENT PAYMENTS

| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT 61

**Monthly Operating Report**
ACCRUAL BASIS

| | |
|---|---|
| **CASE NAME:** | Highland Capital Management |
| **CASE NUMBER:** | 19-34054 |
| **JUDGE:** Stacey Jernigan | |

# UNITED STATES BANKRUPTCY COURT

# NORTHERN & EASTERN DISTRICTS OF TEXAS

Docket #1710  Date Filed: 01/08/2021

# REGION 6

# MONTHLY OPERATING REPORT

**MONTH ENDING:**   November     2020
<br>MONTH           YEAR

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT (ACCRUAL BASIS-1 THROUGH ACCRUAL BASIS-7) AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE. DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.

**RESPONSIBLE PARTY:**

_____         Chief Restructuring Officer/ Chief Executive Officer
ORIGINAL SIGNATURE OF RESPONSIBLE PARTY                    TITLE

James Seery
_____         _____
PRINTED NAME OF RESPONSIBLE PARTY                        DATE

**PREPARER:**

_____         Chief Financial Officer
ORIGINAL SIGNATURE OF PREPARER                           TITLE

Frank Waterhouse                          1.07.21
_____         _____
PRINTED NAME OF PREPARER                                 DATE

**Monthly Operating Report**
ACCRUAL BASIS-1

| CASE NAME: | Highland Capital Management, LP |
|---|---|
| CASE NUMBER: | 19-12239-CSS |

**Comparative Balance Sheet**
(in thousands)

| | 10/15/2019 | 12/31/2019 [6] | 11/30/2020 [6] |
|---|---|---|---|
| **Assets** | | | |
| Cash and cash equivalents | 2,529 | 9,501 | 13,367 |
| Investments, at fair value [3] | 232,620 | 232,820 | 106,344 |
| Equity method investees [3] | 161,819 | 183,529 | 94,853 |
| Management and incentive fee receivable | 2,579 | 1,929 | 1,496 |
| Fixed assets, net | 3,754 | 3,521 | 2,670 |
| Due from affiliates [1] | 151,901 | 146,276 | 150,152 |
| Reserve against notes recievable | | (57,963) | (59,393) |
| Other assets | 11,311 | 11,463 | 8,961 |
| **Total assets** | $ 566,513 | $ 531,076 | $ 318,449 |
| | | | |
| **Liabilities and Partners' Capital** | | | |
| Pre-petition accounts payable [4] | 1,176 | 1,141 | 1,077 |
| Post-petition accounts payable [4] | - | 2,042 | 750 |
| Secured debt: | | | |
| Frontier | 5,195 | 5,195 | 5,195 |
| Jefferies | 30,328 | 30,020 | - |
| Accrued expenses and other liabilities [4] | 59,203 | 63,275 | 58,254 |
| Accrued re-organization related fees [5] | - | 5,547 | 7,823 |
| Claim accrual [2] | 73,997 | 73,997 | 73,997 |
| Partners' capital | 396,614 | 349,857 | 171,353 |
| **Total liabilities and partners' capital** | $ 566,513 | $ 531,076 | $ 318,449 |

[1] Includes various notes receivable at carrying value, except note due from Hunter Mountain Investment Trust which is fully reserved against ($59M reserve). Fair value has not been determined with respect to any of the notes.

[2] Uncontested portion of Redeemer claim less appplicable offsets. Potential for additional liability based on future events. No interest has been accrued beyond petition date. No additional accruals will be made on settlement claims until further approval by the court.

[3] Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

[4] Note on accruals: expenses recorded in Accounts Payable and Accrued Expenses and Other Liabilities reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices. For balance sheet dates other than the Petition Date, amounts include both pre-petition and post-petition liabilities. There are additional compensation accrual amounts of $5.7mm that are not accounted for as of the report date

[5] Beginning December 31st, 2019, Debtor accrued for post-petition re-organization fees based upon an estimate of fees incurred to date.

[6] All balances at December 31st, 2019 are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, balances for subsequent months have and will fluctuate.

**Monthly Operating Report**
ACCRUAL BASIS-2

| CASE NAME: | Highland Capital Management, LP | |
|---|---|---|
| | | |
| CASE NUMBER: | 19-12239-CSS | |

**Income Statement [1]**
(in thousands)

| | Date | Filing to Year Ended [4] | Month ended [4] | Filing to date [4] |
|---|---|---|---|---|
| | 10/16/19 - 10/31/19 | 2019 | 11/30/2020 | |
| **Revenue:** | | | | |
| Management fees | 975 | 4,528 | 1,528 | 22,641 |
| Shared services fees | 283 | 1,588 | 579 | 8,465 |
| Other income | 99 | 1,582 | 296 | 5,373 |
| **Total operating revenue** | **1,357** | **7,697** | **2,403** | **36,479** |
| **Operating expenses:** | | | | |
| Compensation and benefits [5] | 997 | 1,498 | 1,626 | 19,038 |
| Professional services | 256 | 64 | 273 | 2,657 |
| Investment research and consulting | 10 | 266 | 4 | 969 |
| Marketing and advertising expense | - | 370 | (65) | 463 |
| Depreciation expense | 82 | 244 | 76 | 1,092 |
| Bad debt expense reserve | - | 8,410 | 124 | 9,839 |
| Other operating expenses | 201 | 1,265 | 539 | 5,647 |
| **Total operating expenses** | **1,545** | **12,118** | **2,577** | **39,706** |
| **Operating income/(loss)** | **(188)** | **(4,421)** | **(174)** | **(3,227)** |
| **Other income/expense:** | | | | |
| Interest income | 250 | 1,230 | 481 | 6,602 |
| Interest expense | (107) | (286) | (21) | (718) |
| Reserve against notes receivable | - | (57,963) | - | (57,963) |
| Re-org related expenses [2] | - | (5,547) | (2,738) | (32,876) |
| Independent director fees | - | - | (210) | (2,187) |
| Other income/expense | 32 | 32 | (1) | (170) |
| **Total other income/expense** | **175** | **(62,534)** | **(2,490)** | **(87,312)** |
| Net realized gains/(losses) on investments | 339 | 618 | (4,819) | (30,030) |
| Net change in unrealized gains/(losses) of investments [3] | 2,654 | (955) | 5,143 | (36,384) |
| | **2,993** | **(337)** | **324** | **(66,414)** |
| **Net earnings/(losses) from equity method investees [3]** | **(20)** | **14,918** | **(391)** | **(73,925)** |
| **Net income/(loss)** | **$ 2,959** | **$ (52,374)** | **$ (2,732)** | **$ (230,878)** |

(1) Note on accruals: expenses recorded in the Income Statement reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.

(2) Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed as of the petition date.

(3) Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have been updated as of period end as statements are generally available on a one-month lag.

(4) All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, operating results will change as these entries are made.

(5) There are additional compensation accrual amounts of $5.7mm that are not accounted for as of the report date.

**Monthly Operating Report**
ACCRUAL BASIS-3A

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| CASH RECEIPTS AND DISBURSEMENTS | FILING TO YEAR END 2019 | QUARTER 1 | QUARTER 2 | QUARTER 3 | OCTOBER | NOVEMBER |
|---|---|---|---|---|---|---|
| 1. CASH - BEGINNING OF MONTH | $ 2,554,230 | $ 9,501,409 | $ 12,532,467 | $ 14,993,872 | $ 5,887,813 | $ 8,752,728 |
| **RECEIPTS FROM OPERATIONS** | | | | | | |
| 2. OTHER OPERATING RECEIPTS | $ 1,862,757 | $ 1,379,338 | $ 2,983,221 | $ 2,259,736 | $ 598,804 | $ 1,568,241 |
| 3. MANAGEMENT FEES AND OTHER RELATED RECEIPTS | $ 3,156,742 | $ 7,555,297 | $ 6,179,437 | $ 5,575,680 | $ 1,367,428 | $ 5,473,112 |
| **COLLECTION OF ACCOUNTS RECEIVABLE** | | | | | | |
| 4. PREPETITION | $ 3,593,108 | $ 76,569 | $ 3,727 | $ - | $ - | $ 197,173 |
| 5. POSTPETITION [1] | $ - | $ - | $ - | $ - | $ - | $ - |
| 6. TOTAL OPERATING RECEIPTS | $ 8,612,608 | $ 9,011,204 | $ 9,166,385 | $ 7,835,415 | $ 1,966,232 | $ 7,238,525 |
| **NON-OPERATING RECEIPTS** | | | | | | |
| 7. THIRD PARTY FUND ACTUAL/EXPECTED DISTRIBUTIONS | $ 423,468 | $ 18,992,786 | $ 797,571 | $ 610,254 | $ - | $ 289,873 |
| 8. DIVS, PAYDOWNS, MISC FROM INVESTMENT ASSETS | $ 1,338,069 | $ 477,479 | $ 74,376 | $ 5,311 | $ 1,242 | $ 1,244 |
| 9. OTHER (ATTACH LIST) | $ 3,390,286 | $ 1,407,103 | $ 10,010,000 | $ 8,817,099 | $ 3,269,000 | $ 2,623,121 |
| 10. TOTAL NON-OPERATING RECEIPTS | $ 5,151,822 | $ 20,877,369 | $ 10,881,947 | $ 9,432,664 | $ 3,270,242 | $ 2,914,237 |
| 11. TOTAL RECEIPTS | $ 13,764,430 | $ 29,888,573 | $ 20,048,331 | $ 17,268,080 | $ 5,236,475 | $ 10,152,762 |
| 12. TOTAL CASH AVAILABLE | | | | $ 32,261,951 | $ 11,124,288 | $ 18,905,490 |
| **OPERATING DISBURSEMENTS** | | | | | | |
| 13. PAYROLL, BENEFITS, AND TAXES + EXP REIMB | $ 3,776,446 | $ 8,825,042 | $ 4,886,314 | $ 8,806,880 | $ 1,347,709 | $ 1,602,768 |
| 14. SINGAPORE SERVICE FEES | $ 95,118 | $ 58,129 | $ 2,965 | $ - | $ - | $ - |
| 15. HCM LATIN AMERICA | $ 200,000 | $ 100,000 | $ - | $ - | $ 10,547 | $ - |
| 16. THIRD PARTY FUND CAPITAL CALL OBLIGATION | $ 1,426,987 | $ 7,812,469 | $ 3,087,163 | $ 979,631 | $ 110,220 | $ 722,194 |
| 17. UTILITIES | $ - | $ - | $ - | $ - | $ - | $ - |
| 18. INSURANCE | $ - | $ 533,940 | $ 376,376 | $ 163,400 | $ - | $ - |
| 19. INVENTORY PURCHASES | $ - | $ - | $ - | $ - | $ - | $ - |
| 20. VEHICLE EXPENSES | $ - | $ - | $ - | $ - | $ - | $ - |
| 21. TRAVEL | $ - | $ - | $ - | $ - | $ - | $ - |
| 22. ENTERTAINMENT | $ - | $ - | $ - | $ - | $ - | $ - |
| 23. REPAIRS & MAINTENANCE | $ - | $ - | $ - | $ - | $ - | $ - |
| 24. SUPPLIES | $ - | $ - | $ - | $ - | $ - | $ - |
| 25. ADVERTISING | $ - | $ - | $ - | $ - | $ - | $ - |
| 26. OTHER (ATTACH LIST) | $ 1,318,700 | $ 3,283,898 | $ 3,195,054 | $ 3,633,331 | $ 653,828 | $ 1,022,221 |
| 27. TOTAL OPERATING DISBURSEMENTS | $ 6,817,251 | $ 20,613,478 | $ 11,547,870 | $ 13,583,243 | $ 2,122,305 | $ 3,347,183 |
| **REORGANIZATION EXPENSES** | | | | | | |
| 28. PROFESSIONAL FEES | $ - | $ 5,460,546 | $ 5,572,032 | $ 11,551,682 | $ 39,255 | $ 1,731,613 |
| 29. U.S. TRUSTEE FEES | $ - | $ 68,173 | $ 167,025 | $ 277,924 | $ - | $ 250,000 |
| 30. OTHER (ATTACH LIST) | $ - | $ 715,317 | $ 300,000 | $ 961,289 | $ 210,000 | $ 210,000 |
| 31. TOTAL REORGANIZATION EXPENSES | $ - | $ 6,244,037 | $ 6,039,057 | $ 12,790,896 | $ 249,255 | $ 2,191,613 |
| 32. TOTAL DISBURSEMENTS | $ 6,817,251 | $ 26,857,515 | $ 17,586,927 | $ 26,374,138 | $ 2,371,560 | $ 5,538,796 |
| 33. NET CASH FLOW | $ 6,947,179 | $ 3,031,058 | $ 2,461,404 | $ (9,106,059) | $ 2,864,915 | $ 4,613,966 |
| 34. CASH - END OF MONTH | $ 9,501,409 | $ 12,532,467 | $ 14,993,872 | $ 5,887,813 | $ 8,752,728 | $ 13,366,694 |

1    All postpetition receipts are included in line 3, Management Fees and Other Related Receipts.

**Monthly Operating Report**
ACCRUAL BASIS-3B

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

**OPERATING RECEIPTS - OTHER**

| Date | Amount | Type |
|---|---|---|
| 11/12/2020 | 2,623,121 | SSP Loan |

**OPERATING DISBURSMENTS - OTHER**

| Date | Amount | Vendor |
|---|---|---|
| 11/2/2020 | 30,820 | Third Party Consultant |
| 11/2/2020 | 159,061 | Crescent TC Investors LP |
| 11/4/2020 | 46,292 | East West Visa Payment |
| 11/6/2020 | 471 | UPS Supply Chain Solutions |
| 11/6/2020 | 600 | Action Shred of Texas |
| 11/6/2020 | 1,019 | GRUBHUB for Work |
| 11/6/2020 | 1,443 | S&P Global Market Intelligence |
| 11/6/2020 | 1,554 | Canteen Vending Services |
| 11/6/2020 | 2,466 | Thomson West |
| 11/6/2020 | 4,074 | Concur Technologies, Inc. |
| 11/6/2020 | 4,996 | Oak Cliff Office Products |
| 11/6/2020 | 5,885 | ABM |
| 11/6/2020 | 14,520 | Third Party Consultant |
| 11/6/2020 | 18,042 | Siepe Software, LLC |
| 11/6/2020 | 31,388 | Centroid |
| 11/6/2020 | 35,200 | Intex Solutions, Inc. |
| 11/6/2020 | 47,471 | Houlihan Lokey |
| 11/6/2020 | 199,718 | Bloomberg Finance LP |
| 11/6/2020 | 446 | Ace Parking Management Inc. |
| 11/10/2020 | 6,190 | TW Telecom Holdings, llc |
| 11/10/2020 | 53,123 | John R Ames, CTA |
| 11/10/2020 | 2,669 | Iron Mountain Records Management |
| 11/13/2020 | 4,591 | Third Party Consultant |
| 11/13/2020 | 95,940 | Bloomberg Finance LP |
| 11/13/2020 | 6,271 | Intelligent Discovery Solutions, Inc. |
| 11/16/2020 | 118 | Arkadin, Inc. |
| 11/16/2020 | 224 | American Solutions for Business |
| 11/16/2020 | 273 | UPS Supply Chain Solutions |
| 11/16/2020 | 508 | Verity Group |
| 11/16/2020 | 1,160 | Canteen Vending Services |
| 11/16/2020 | 1,335 | GRUBHUB for Work |
| 11/16/2020 | 2,129 | NYSE MARKET, INC |
| 11/16/2020 | 5,391 | ICE Data Pricing & Reference Data, LLC |
| 11/16/2020 | 7,995 | Intralinks |
| 11/16/2020 | 11,496 | KPMG LLP |
| 11/17/2020 | 2,092 | Zayo Group, LLC |
| 11/17/2020 | 971 | EastWest Bank |
| 11/19/2020 | 825 | Xerox Corporation |
| 11/20/2020 | 138 | AT&T |
| 11/20/2020 | 4,629 | Liberty Life Assurance Company of Boston - Group Benefits |
| 11/20/2020 | 15,250 | HE Peoria Place |
| 11/20/2020 | 12,500 | Bloomberg Finance LP |
| 11/20/2020 | 549 | Pitney Bowes Financial Services LLC |
| 11/20/2020 | 32 | Pitney Bowes Financial Services LLC |
| 11/20/2020 | 32 | Pitney Bowes Financial Services LLC |
| 11/20/2020 | 2,845 | AT&T |
| 11/20/2020 | 790 | AT&T |
| 11/20/2020 | 870 | AT&T |
| 11/20/2020 | 7,251 | AT&T |
| 11/23/2020 | 11,888 | Flexential Colorado Corp. |
| 11/23/2020 | 7,500 | MacroMavens, LLC |
| 11/23/2020 | 1,375 | Canteen Vending Services |
| 11/23/2020 | 146 | Secured Access Systems, LLC |
| 11/23/2020 | 289 | UPS Supply Chain Solutions |
| 11/23/2020 | 249 | CHASE COURIERS, INC |
| 11/23/2020 | 225 | Four Seasons Plantscaping, LLC |
| 11/23/2020 | 481 | DTCC ITP LLC |
| 11/23/2020 | 131,149 | Siepe Services, LLC |
| 11/25/2020 | 1,422 | GRUBHUB for Work |
| 11/25/2020 | 2,845 | AT&T |
| 11/30/2020 | 11,000 | Third Party Consultant |
| | 1,022,221 | |

**REORGANIZATION EXPENSES - OTHER**

| Date | Amount | Description |
|---|---|---|
| 11/2/2020 | 30,000 | Dubel & Associates, L.L.C. |
| 11/2/2020 | 150,000 | J.P. Seery & Co. LLC |
| 11/2/2020 | 30,000 | Nelms and Associates |
| | 210,000 | |

<div align="right">

**Monthly Operating Report**
ACCRUAL BASIS-4

</div>

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| MGMT FEE RECEIVABLE AGING [2] | | August [3] | September [3] | October [3] | November [3] |
|---|---|---|---|---|---|
| 1. | 0-30 | $1,768,818 | $2,577,696 | $3,148,887 | $1,495,877 |
| 2. | 31-60 | | $772,384 | | $807,441 | |
| 3. | 61-90 | | | $772,384 | | |
| 4. | 91+ | | | | $746,913 | |
| 5. | TOTAL MGMT FEE RECEIVABLE | $ 2,541,202 | $ 3,350,080 | $ 4,703,241 | $1,495,877 |
| 6. | AMOUNT CONSIDERED UNCOLLECTIBLE | | | | |
| 7. | MGMT FEE RECEIVABLE (NET) | $ 2,541,202 | $ 3,350,080 | $ 4,703,241 | $1,495,877 |

| AGING OF POSTPETITION TAXES AND PAYABLES | | | MONTH: | November 2020 | |
|---|---|---|---|---|---|
| TAXES PAYABLE | 0-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS | TOTAL |
| 1. FEDERAL | | | | | $0 |
| 2. STATE | | | | | $0 |
| 3. LOCAL | | | | | $0 |
| 4. OTHER (ATTACH LIST) | | | | | $0 |
| 5. TOTAL TAXES PAYABLE | $0 | $0 | $0 | $0 | $0 |

| 6. ACCOUNTS PAYABLE | $625,935 | $6,277 | $17,276 | $100,881 | $750,368 |
|---|---|---|---|---|---|

| STATUS OF POSTPETITION TAXES [1] | | | MONTH: | November 2020 |
|---|---|---|---|---|
| FEDERAL | BEGINNING TAX LIABILITY | AMOUNT WITHHELD AND/ OR ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY |
| 1. WITHHOLDING | | | | $0 |
| 2. FICA-EMPLOYEE | | | | $0 |
| 3. FICA-EMPLOYER | | | | $0 |
| 4. UNEMPLOYMENT | | | | $0 |
| 5. INCOME | | | | $0 |
| 6. OTHER (ATTACH LIST) | | | | $0 |
| 7. TOTAL FEDERAL TAXES | $0 | $0 | $0 | $0 |
| STATE AND LOCAL | | | | |
| 8. WITHHOLDING | | | | $0 |
| 9. SALES | | | | $0 |
| 10. EXCISE | | | | $0 |
| 11. UNEMPLOYMENT | | | | $0 |
| 12. REAL PROPERTY | $0 | $0 | $0 | $0 |
| 13. PERSONAL PROPERTY | | | | $0 |
| 14. OTHER (ATTACH LIST) | | | | $0 |
| 15. TOTAL STATE & LOCAL | $0 | $0 | $0 | $0 |
| 16. TOTAL TAXES | $0 | $0 | $0 | $0 |

1   The Debtor funds all state and federal employment taxes to Paylocity, who files all required federal and state related employment reports and withholdings.
2   Aging based on when management fee is due and payable.
3   All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process.

**Monthly Operating Report**
ACCRUAL BASIS-5

| | |
|---|---|
| **CASE NAME:** | Highland Capital Management |

| | |
|---|---|
| **CASE NUMBER:** | 19-34054 |

**MONTH:** November 2020

### BANK RECONCILIATIONS

| | | Account #1 | Account #2 | Account #3 | Account #4 | Account #5 | Account #6 | TOTAL |
|---|---|---|---|---|---|---|---|---|
| **A.** | **BANK:** | East West Bank | East West Bank | Maxim Group | Jefferies LLC | Nexbank | East West Bank | |
| **B.** | **ACCOUNT NUMBER:** | x4686 | x4693 | x1885 | x0932 | x5891 | x5848 | |
| **C.** | **PURPOSE (TYPE):** | Operating | Insurance | Brokerage | Brokerage | CD | Prepaid Card | |
| 1. | BALANCE PER BANK STATEMENT [1] | $  13,124,581 | $  3,842 | $  30 | $  - | $  138,190 | $  100,068 | $  13,366,710 |
| 2. | ADD: TOTAL DEPOSITS NOT CREDITED | | | | | | | $  - |
| 3. | SUBTRACT: OUTSTANDING CHECKS | | | | | | | $  - |
| 4. | OTHER RECONCILING ITEMS | | | | | | | $  - |
| 5. | MONTH END BALANCE PER BOOKS | $  13,124,581 | $  3,842 | $  30 | $  - | $  138,190 | $  100,068 | $  13,366,710 |
| 6. | NUMBER OF LAST CHECK WRITTEN | **100510** | **n/a** | **n/a** | **n/a** | **n/a** | **n/a** | |

### INVESTMENT ACCOUNTS

| | BANK, ACCOUNT NAME & NUMBER | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | | | | CURRENT VALUE |
|---|---|---|---|---|---|---|---|---|
| 7. | | | | | | | | |
| 8. | | | | | | | | |
| 9. | | | | | | | | |
| 10. | | | | | | | | |
| 11. | TOTAL INVESTMENTS | | | $0 | | | | $0 |

### CASH

| | | |
|---|---|---|
| 12. | CURRENCY ON HAND | $0 |

| | | |
|---|---|---|
| 13. | **TOTAL CASH - END OF MONTH** | $13,366,710 |

1  Account x6342 is now closed.

**Monthly Operating Report**
ACCRUAL BASIS-6

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

MONTH: _____ November 2020 _____

**PAYMENTS TO INSIDERS AND PROFESSIONALS**

| | INSIDERS | | | |
|---|---|---|---|---|
| | NAME | TYPE OF PAYMENT | AMOUNT PAID | TOTAL PAID POST PETITION |
| 1 | Frank Waterhouse | Salary | $33,333 | $427,083 |
| 2 | Frank Waterhouse | Expense Reimbursement | $384 | $6,605 |
| 3 | Scott Ellington | Salary | $37,500 | $506,250 |
| 4 | Scott Ellington | Expense Reimbursement | $260 | $6,598 |
| 5 | James Dondero | Salary | $0 | $129,972 |
| 6 | James Dondero | Expense Reimbursement [1] | $0 | $16,918 |
| 7 | Thomas Surgent | Salary | $33,333 | $450,000 |
| 8 | Thomas Surgent | Expense Reimbursement | $400 | $4,981 |
| 9 | Trey Parker | Salary | $0 | $131,250 |
| 10 | Trey Parker | Expense Reimbursement | $0 | $6,212 |
| | TOTAL PAYMENTS TO INSIDERS | | $105,210 | $1,685,869 |

[1] The total amount of reimbursements during the reporting month also included $3,129 for use of the credit card by the Debtor for office related expenses such as subscriptions and IT equipment/software.

| | PROFESSIONALS [2] | | | | |
|---|---|---|---|---|---|
| | NAME | DATE OF MONTHLY FEE APPLICATION | AMOUNT APPROVED | AMOUNT PAID | TOTAL PAID TO DATE | TOTAL INCURRED & UNPAID |
| 1. | Kurtzman Carson Consultants LLC | | 41,435 | 41,435 | 573,957 | 54,170 |
| 2. | Sidley Austin LLP | | 511,998 | 511,998 | 6,319,089 | 821,421 |
| 3. | Young Conaway Stargatt & Taylor LLP | | - | - | 281,156 | |
| 4. | FTI Consulting, Inc. | | 382,499 | 382,499 | 3,989,791 | 425,593 |
| 5. | Pachulski Stang Ziehl & Jones LLP | | 541,680 | 541,680 | 8,976,900 | 970,463 |
| 6 | Hayward & Associates PLLC | | 4,871 | 4,871 | 261,283 | 67,488 |
| 7 | Development Specialists, Inc. | | 249,129 | 249,129 | 2,600,354 | 249,129 |
| 8 | Foley & Lardner LLP | | - | - | 464,294 | 132,045 |
| 9 | Mercer (US) Inc. | | - | - | 170,284 | - |
| 10 | Wilmer Cutler Pickering Hale and Dorr LLP | | - | - | 618,643 | |
| 11 | Meta-e Discovery LLC | | - | - | 165,000 | |
| | TOTAL PAYMENTS TO PROFESSIONALS | | | 1,731,613 | 24,420,749 | 2,720,310 |

2 Does not include payments to ordinary course professionals.

**POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS**

| | NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POSTPETITION |
|---|---|---|---|---|
| 1. | Crescent TC Investors LP (rent portion only) | 130,364 | 130,364 | - |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | TOTAL | 130,364 | $130,364 | $0 |

**Monthly Operating Report**

ACCRUAL BASIS-7

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

MONTH:_____ November 2020_____

**QUESTIONNAIRE**

| | | YES | NO |
|---|---|---|---|
| 1. | HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | x |
| 2. | HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | | x |
| 3. | ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES, OR LOANS) DUE FROM RELATED PARTIES? | x | |
| 4. | HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | | x |
| 5. | HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | x |
| 6. | ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | x |
| 7. | ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | x |
| 8. | ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | x |
| 9. | ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | x |
| 10. | ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | x |
| 11. | HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | x |
| 12. | ARE ANY WAGE PAYMENTS PAST DUE? | | x |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES," PROVIDE A DETAILED EXPLANATION OF EACH ITEM. ATTACH ADDITIONAL SHEETS IF NECESSARY.

3   Debtor generates fee income and other receipts from various related parties in normal course, see cash management motion for further discussion.

**INSURANCE**

| | | YES | NO |
|---|---|---|---|
| 1. | ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | x | |
| 2. | ARE ALL PREMIUM PAYMENTS PAID CURRENT? | x | |
| 3. | PLEASE ITEMIZE POLICIES BELOW. | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO," OR IF ANY POLICIES HAVE BEEN CANCELLED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN EXPLANATION BELOW. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| INSTALLMENT PAYMENTS | | | |
|---|---|---|---|
| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT 62

**Monthly Operating Report**
ACCRUAL BASIS

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

| JUDGE: Stacey Jernigan |
|---|

# UNITED STATES BANKRUPTCY COURT

## NORTHERN & EASTERN DISTRICTS OF TEXAS

## REGION 6

## MONTHLY OPERATING REPORT

**MONTH ENDING:**    December    2020

                       MONTH        YEAR

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT (ACCRUAL BASIS-1 THROUGH ACCRUAL BASIS-7) AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE. DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.

RESPONSIBLE PARTY:

_____       Chief Restructuring Officer/ Chief Executive Officer
ORIGINAL SIGNATURE OF RESPONSIBLE PARTY            TITLE

James Seery
PRINTED NAME OF RESPONSIBLE PARTY                 DATE

PREPARER:

_____       Chief Financial Officer
ORIGINAL SIGNATURE OF PREPARER            TITLE

Frank Waterhouse                2.10.21
PRINTED NAME OF PREPARER                DATE

1934054210224000000000009

<div align="right">

**Monthly Operating Report**
**ACCRUAL BASIS-1**

</div>

| CASE NAME: | Highland Capital Management, LP |
|---|---|
| CASE NUMBER: | 19-12239-CSS |

**Comparative Balance Sheet**
(in thousands)

| | 10/15/2019 | 12/31/2019 [6] | 12/31/2020 [6] |
|---|---|---|---|
| **Assets** | | | |
| Cash and cash equivalents | 2,529 | 9,501 | 12,651 |
| Investments, at fair value [3] | 232,620 | 232,820 | 109,211 |
| Equity method investees [3] | 161,819 | 183,529 | 103,174 |
| Management and incentive fee receivable | 2,579 | 1,929 | 2,461 |
| Fixed assets, net | 3,754 | 3,521 | 2,594 |
| Due from affiliates [1] | 151,901 | 146,276 | 152,449 |
| Reserve against notes recievable | | (57,963) | (61,039) |
| Other assets | 11,311 | 11,463 | 8,258 |
| **Total assets** | **$ 566,513** | **$ 531,076** | **$ 329,758** |
| | | | |
| **Liabilities and Partners' Capital** | | | |
| Pre-petition accounts payable [4] | 1,176 | 1,141 | 1,077 |
| Post-petition accounts payable [4] | - | 2,042 | 900 |
| Secured debt: | | | |
| Frontier | 5,195 | 5,195 | 5,195 |
| Jefferies | 30,328 | 30,020 | - |
| Accrued expenses and other liabilities [4] | 59,203 | 63,275 | 60,446 |
| Accrued re-organization related fees [5] | - | 5,547 | 5,795 |
| Claim accrual [2] | 73,997 | 73,997 | 73,997 |
| Partners' capital | 396,614 | 349,857 | 182,347 |
| **Total liabilities and partners' capital** | **$ 566,513** | **$ 531,076** | **$ 329,758** |

[1] Includes various notes receivable at carrying value, except note due from Hunter Mountain Investment Trust which is fully reserved against ($61M reserve). Fair value has not been determined with respect to any of the notes.

[2] Uncontested portion of Redeemer claim less appplicable offsets. Potential for additional liability based on future events. No interest has been accrued beyond petition date. No additional accruals will be made on settlement claims until further approval by the court.

[3] Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

[4] Note on accruals: expenses recorded in Accounts Payable and Accrued Expenses and Other Liabilities reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices. For balance sheet dates other than the Petition Date, amounts include both pre-petition and post-petition liabilities.

[5] Beginning December 31st, 2019, Debtor accrued for post-petition re-organization fees based upon an estimate of fees incurred to date.

[6] All balances at December 31st, 2020 are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, balances for subsequent months have and will fluctuate.

**Monthly Operating Report**
ACCRUAL BASIS-2

| CASE NAME: | Highland Capital Management, LP | |
| --- | --- | --- |
| CASE NUMBER: | 19-12239-CSS | |

**Income Statement**[1]
(in thousands)

| | Date | Filing to Year Ended [4] | Month ended [4] | Filing to date [4] |
| --- | --- | --- | --- | --- |
| | 10/16/19 - 10/31/19 | 2019 | 12/31/2020 | |
| **Revenue:** | | | | |
| Management fees | 975 | 4,528 | 1,690 | 24,331 |
| Shared services fees | 283 | 1,588 | 605 | 9,070 |
| Other income | 99 | 1,582 | 3,022 | 8,395 |
| **Total operating revenue** | **1,357** | **7,697** | **5,317** | **41,797** |
| **Operating expenses:** | | | | |
| Compensation and benefits | 997 | 1,498 | 3,101 | 22,139 |
| Professional services | 256 | 64 | 344 | 3,001 |
| Investment research and consulting | 10 | 266 | 4 | 974 |
| Marketing and advertising expense | - | 370 | (22) | 441 |
| Depreciation expense | 82 | 244 | 76 | 1,168 |
| Bad debt expense reserve | - | 8,410 | 128 | 9,968 |
| Other operating expenses | 201 | 1,265 | 466 | 6,112 |
| **Total operating expenses** | **1,545** | **12,118** | **4,097** | **43,803** |
| **Operating income/(loss)** | **(188)** | **(4,421)** | **1,220** | **(2,006)** |
| **Other income/expense:** | | | | |
| Interest income | 250 | 1,230 | 457 | 7,059 |
| Interest expense | (107) | (286) | (22) | (740) |
| Reserve against notes receivable | - | (57,963) | - | (57,963) |
| Re-org related expenses [2] | - | (5,547) | (1,657) | (34,534) |
| Independent director fees | - | - | (420) | (2,607) |
| Other income/expense | 32 | 32 | (1) | (171) |
| **Total other income/expense** | **175** | **(62,534)** | **(1,643)** | **(88,956)** |
| Net realized gains/(losses) on investments | 339 | 618 | 896 | (29,134) |
| Net change in unrealized gains/(losses) of investments [3] | 2,654 | (955) | 3,717 | (32,667) |
| | **2,993** | **(337)** | **4,614** | **(61,801)** |
| **Net earnings/(losses) from equity method investees** [3] | **(20)** | **14,918** | **8,321** | **(65,604)** |
| **Net income/(loss)** | **$ 2,959** | **$ (52,374)** | **$ 12,511** | **$ (218,367)** |

(1) Note on accruals: expenses recorded in the Income Statement reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.

(2) Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed as of the petition date.

(3) Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

(4) All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, operating results will change as these entries are made.

**Monthly Operating Report**
ACCRUAL BASIS-3A

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

| CASH RECEIPTS AND DISBURSEMENTS | FILING TO YEAR END 2019 | QUARTER 1 | QUARTER 2 | QUARTER 3 | DECEMBER | QUARTER 4 |
|---|---|---|---|---|---|---|
| 1. CASH - BEGINNING OF MONTH | $ 2,554,230 | $ 9,501,409 | $ 12,532,467 | $ 14,993,872 | $ 13,366,694 | $ 5,887,813 |
| **RECEIPTS FROM OPERATIONS** | | | | | | |
| 2. OTHER OPERATING RECEIPTS | 1,862,757 | 1,379,338 | 2,983,221 | 2,259,736 | 619,275 | 2,786,320 |
| 3. MANAGEMENT FEES AND OTHER RELATED RECEIPTS | $ 3,156,742 | 7,555,297 | 6,179,437 | 5,575,680 | 131,818 | 6,972,357 |
| **COLLECTION OF ACCOUNTS RECEIVABLE** | | | | | | |
| 4. PREPETITION | 3,593,108 | 76,569 | 3,727 | - | - | 197,173 |
| 5. POSTPETITION [1] | - | - | - | - | - | |
| 6. TOTAL OPERATING RECEIPTS | 8,612,608 | 9,011,204 | 9,166,385 | 7,835,415 | 751,093 | 9,955,850 |
| **NON-OPERATING RECEIPTS** | | | | | | |
| 7. THIRD PARTY FUND ACTUAL/EXPECTED DISTRIBUTIONS | 423,468 | 18,992,786 | 797,571 | 610,254 | 1,744,327 | 2,034,200 |
| 8. DIVS, PAYDOWNS, MISC FROM INVESTMENT ASSETS | 1,338,069 | 477,479 | 74,376 | 5,311 | 2,987,274 | 2,989,760 |
| 9. OTHER (ATTACH LIST) | 3,390,286 | 1,407,103 | 10,010,000 | 8,817,099 | 1,183,356 | 7,075,476 |
| 10. TOTAL NON-OPERATING RECEIPTS | 5,151,822 | 20,877,369 | 10,881,947 | 9,432,664 | 5,914,957 | 12,099,436 |
| 11. TOTAL RECEIPTS | 13,764,430 | 29,888,573 | 20,048,331 | 17,268,080 | 6,666,050 | 22,055,287 |
| 12. TOTAL CASH AVAILABLE | | | | 32,261,951 | 20,032,744 | 27,943,100 |
| **OPERATING DISBURSEMENTS** | | | | | | |
| 13. PAYROLL, BENEFITS, AND TAXES + EXP REIMB | 3,776,446 | 8,825,042 | 4,886,314 | 8,806,880 | 1,330,329 | 4,280,805 |
| 14. SINGAPORE SERVICE FEES | 95,118 | 58,129 | 2,965 | - | - | 10,547 |
| 15. HCM LATIN AMERICA | 200,000 | 100,000 | - | - | - | - |
| 16. THIRD PARTY FUND CAPITAL CALL OBLIGATION | 1,426,987 | 7,812,469 | 3,087,163 | 979,631 | 908,675 | 1,741,089 |
| 17. UTILITIES | - | - | - | - | - | - |
| 18. INSURANCE | - | 533,940 | 376,376 | 163,400 | - | - |
| 19. INVENTORY PURCHASES | - | - | - | - | - | - |
| 20. VEHICLE EXPENSES | - | - | - | - | - | - |
| 21. TRAVEL | - | - | - | - | - | - |
| 22. ENTERTAINMENT | - | - | - | - | - | - |
| 23. REPAIRS & MAINTENANCE | - | - | - | - | - | - |
| 24. SUPPLIES | - | - | - | - | - | - |
| 25. ADVERTISING | - | - | - | - | - | - |
| 26. OTHER (ATTACH LIST) | 1,318,700 | 3,283,898 | 3,195,054 | 3,633,331 | 928,252 | 2,604,301 |
| 27. TOTAL OPERATING DISBURSEMENTS | 6,817,251 | 20,613,478 | 11,547,870 | 13,583,243 | 3,167,255 | 8,636,743 |
| **REORGANIZATION EXPENSES** | | | | | | |
| 28. PROFESSIONAL FEES | - | 5,460,546 | 5,572,032 | 11,551,682 | 4,004,983 | 5,775,852 |
| 29. U.S. TRUSTEE FEES | - | 68,173 | 167,025 | 277,924 | - | 250,000 |
| 30. OTHER (ATTACH LIST) | - | 715,317 | 300,000 | 961,289 | 210,000 | 630,000 |
| 31. TOTAL REORGANIZATION EXPENSES | - | 6,244,037 | 6,039,057 | 12,790,896 | 4,214,983 | 6,655,852 |
| 32. TOTAL DISBURSEMENTS | 6,817,251 | 26,857,515 | 17,586,927 | 26,374,138 | 7,382,239 | 15,292,594 |
| 33. NET CASH FLOW | 6,947,179 | 3,031,058 | 2,461,404 | (9,106,059) | (716,189) | 6,762,692 |
| 34. CASH - END OF MONTH | $ 9,501,409 | $ 12,532,467 | $ 14,993,872 | $ 5,887,813 | 12,650,505 | $ 12,650,505 |

1   All postpetition receipts are included in line 3, Management Fees and Other Related Receipts.

**Monthly Operating Report**
ACCRUAL BASIS-3B

| CASE NAME: | Highland Capital Management |
| CASE NUMBER: | 19-34054 |

**OPERATING RECEIPTS - OTHER**

| Date | Amount | Type |
|------|--------|------|
| 12/2/2020 | 1,183,356 | Trussway |

**OPERATING DISBURSMENTS - OTHER**

| Date | Amount | Vendor |
|------|--------|--------|
| 12/1/2020 | 42,599 | Third Party Consultant |
| 12/1/2020 | 158,696 | Crescent TC Investors LP |
| 12/4/2020 | 53 | Chase Couriers |
| 12/4/2020 | 386 | ProStar Services, Inc |
| 12/4/2020 | 413 | UPS Supply Chain Solutions |
| 12/4/2020 | 450 | Action Shred of Texas |
| 12/4/2020 | 511 | CDW Direct |
| 12/4/2020 | 1,518 | GRUBHUB for Work |
| 12/4/2020 | 2,036 | Canteen Vending Services |
| 12/4/2020 | 2,558 | Markit WSO Corporation |
| 12/4/2020 | 4,064 | Third Party Consultant |
| 12/4/2020 | 5,885 | ABM |
| 12/4/2020 | 6,866 | Willis of Texas, Inc. |
| 12/4/2020 | 15,000 | Centroid |
| 12/4/2020 | 15,718 | Ace Parking Management Inc. |
| 12/4/2020 | 18,042 | Siepe Software, LLC |
| 12/4/2020 | 35,200 | Intex Solutions, Inc. |
| 12/4/2020 | 144,229 | Siepe Services, LLC |
| 12/4/2020 | 14 | PCA-Valet, Inc |
| 12/7/2020 | 1,750 | Bermuda Monetary Authority |
| 12/8/2020 | 549 | Pitney Bowes Financial Services |
| 12/8/2020 | 6,188 | TW Telecom Holdings, llc |
| 12/9/2020 | 2,669 | Iron Mountain Records Management |
| 12/9/2020 | 14,854 | Visa Payment |
| 12/10/2020 | 62,900 | Robert Half Legal |
| 12/11/2020 | 83 | Arkadin, Inc. |
| 12/11/2020 | 199 | UPS Supply Chain Solutions |
| 12/11/2020 | 216 | Ace Parking Management Inc. |
| 12/11/2020 | 363 | GRUBHUB for Work |
| 12/11/2020 | 1,442 | Canteen Vending Services |
| 12/11/2020 | 2,022 | NYSE Market, Inc |
| 12/11/2020 | 2,466 | Thomson West |
| 12/11/2020 | 4,060 | Concur Technologies, Inc. |
| 12/11/2020 | 5,081 | ICE Data Pricing & Reference Data, LLC |
| 12/11/2020 | 9,970 | Hedgeye Risk Mgmt, LLC |
| 12/11/2020 | 31,858 | Centroid |
| 12/11/2020 | 107 | ICE Data Pricing & Reference Data, LLC |
| 12/11/2020 | 10,564 | Pricewaterhouse Coopers, LLP |
| 12/14/2020 | 110 | FINRA |
| 12/14/2020 | 40 | FINRA |
| 12/15/2020 | 22,635 | Employee expense reimbursement |
| 12/17/2020 | 2,092 | Zayo Group, LLC |
| 12/17/2020 | 532 | DirecTV |
| 12/18/2020 | 138 | AT&T |
| 12/18/2020 | 512 | DTCC ITP LLC |
| 12/18/2020 | 459 | Verity Group |
| 12/18/2020 | 176 | UPS Supply Chain Solutions |
| 12/18/2020 | 1,473 | Canteen Vending Services |
| 12/18/2020 | 2,845 | AT&T |
| 12/18/2020 | 16,016 | Ace Parking Management Inc. |
| 12/18/2020 | 11,693 | Flexential Colorado Corp. |
| 12/18/2020 | 225 | Four Seasons Plantscaping, LLC |
| 12/18/2020 | 145,258 | Siepe Services, LLC |
| 12/21/2020 | 898 | East West Bank |
| 12/23/2020 | 36,000 | Experienced Advisory Consultants LLC |
| 12/24/2020 | 931 | Xerox Corporation |
| 12/31/2020 | 164 | UPS Supply Chain Solutions |
| 12/31/2020 | 450 | Action Shred of Texas |
| 12/31/2020 | 482 | Four Seasons Plantscaping, LLC |
| | 928,252 | |

**REORGANIZATION EXPENSES - OTHER**

| Date | Amount | Description |
|------|--------|-------------|
| 12/1/2020 | 30,000 | Dubel & Associates, L.L.C. |
| 12/1/2020 | 150,000 | J.P. Seery & Co. LLC |
| 12/1/2020 | 30,000 | Nelms and Associates |
| | 210,000 | |

**Monthly Operating Report**

ACCRUAL BASIS-4

| CASE NAME: | Highland Capital Management |
| CASE NUMBER: | 19-34054 |

| MGMT FEE RECEIVABLE AGING [2] | | September [3] | October [3] | November [3] | December [3] |
|---|---|---|---|---|---|
| 1. | 0-30 | | $2,577,696 | $3,148,887 | $902,434 | $2,460,863 |
| 2. | 31-60 | | | $807,441 | | |
| 3. | 61-90 | | $772,384 | | | |
| 4. | 91+ | | | 746,913 | | |
| 5. | TOTAL MGMT FEE RECEIVABLE | $   3,350,080 | $   4,703,241 | $   902,434 | $2,460,863 |
| 6. | AMOUNT CONSIDERED UNCOLLECTIBLE | | | | |
| 7. | MGMT FEE RECEIVABLE (NET) | $   3,350,080 | $   4,703,241 | $   902,434 | $2,460,863 |

| AGING OF POSTPETITION TAXES AND PAYABLES | | | MONTH: | December 2020 | |
|---|---|---|---|---|---|
| TAXES PAYABLE | 0-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS | TOTAL |
| 1. | FEDERAL | | | | | $0 |
| 2. | STATE | | | | | $0 |
| 3. | LOCAL | | | | | $0 |
| 4. | OTHER (ATTACH LIST) | | | | | $0 |
| 5. | TOTAL TAXES PAYABLE | $0 | $0 | $0 | $0 | $0 |
| 6. | ACCOUNTS PAYABLE | $556,609 | $179,791 | $37,722 | $126,257 | $900,378 |

| STATUS OF POSTPETITION TAXES [1] | | | MONTH: | December 2020 | |
|---|---|---|---|---|---|
| FEDERAL | | BEGINNING TAX LIABILITY | AMOUNT WITHHELD AND/ OR ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY |
| 1. | WITHHOLDING | | | | $0 |
| 2. | FICA-EMPLOYEE | | | | $0 |
| 3. | FICA-EMPLOYER | | | | $0 |
| 4. | UNEMPLOYMENT | | | | $0 |
| 5. | INCOME | | | | $0 |
| 6. | OTHER (ATTACH LIST) | | | | $0 |
| 7. | TOTAL FEDERAL TAXES | $0 | $0 | $0 | $0 |
| STATE AND LOCAL | | | | | |
| 8. | WITHHOLDING | | | | $0 |
| 9. | SALES | | | | $0 |
| 10. | EXCISE | | | | $0 |
| 11. | UNEMPLOYMENT | | | | $0 |
| 12. | REAL PROPERTY | $0 | $0 | $0 | $0 |
| 13. | PERSONAL PROPERTY | | | | $0 |
| 14. | OTHER (ATTACH LIST) | | | | $0 |
| 15. | TOTAL STATE & LOCAL | $0 | $0 | $0 | $0 |
| 16. | TOTAL TAXES | $0 | $0 | $0 | $0 |

1    The Debtor funds all state and federal employment taxes to Paylocity, who files all required federal and state related employment reports and withholdings.

2    Aging based on when management fee is due and payable.

3    All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process.

**Monthly Operating Report**
ACCRUAL BASIS-5

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

**MONTH:** December     2020

**BANK RECONCILIATIONS**

| | | Account #1 | Account #2 | Account #3 | Account #4 | Account #5 | Account #6 | TOTAL |
|---|---|---|---|---|---|---|---|---|
| A. | BANK: | East West Bank | East West Bank | Maxim Group | Jefferies LLC | Nexbank | East West Bank | |
| B. | ACCOUNT NUMBER: | x4686 | x4693 | x1885 | x0932 | x5891 | x5848 | |
| C. | PURPOSE (TYPE): | Operating | Insurance | Brokerage | Brokerage | CD | Prepaid Card | |
| 1. | BALANCE PER BANK STATEMENT [1] | $ 12,216,465 | $ 195,510 | $ 30 | $ - | $ 138,448 | $ 100,076 | $ 12,650,529 |
| 2. | ADD: TOTAL DEPOSITS NOT CREDITED | | | | | | | $ - |
| 3. | SUBTRACT: OUTSTANDING CHECKS | | | | | | | $ - |
| 4. | OTHER RECONCILING ITEMS | | | | | | | $ - |
| 5. | MONTH END BALANCE PER BOOKS | $ 12,216,465 | $ 195,510 | $ 30 | $ - | $ 138,448 | $ 100,076 | $ 12,650,529 |
| 6. | NUMBER OF LAST CHECK WRITTEN | 100510 | n/a | n/a | n/a | n/a | n/a | |

**INVESTMENT ACCOUNTS**

| | BANK, ACCOUNT NAME & NUMBER | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | | | | CURRENT VALUE |
|---|---|---|---|---|---|---|---|---|
| 7. | | | | | | | | |
| 8. | | | | | | | | |
| 9. | | | | | | | | |
| 10. | | | | | | | | |
| 11. | TOTAL INVESTMENTS | | | $0 | | | | $0 |

**CASH**

| | | |
|---|---|---|
| 12. | CURRENCY ON HAND | $0 |

| | | |
|---|---|---|
| 13. | TOTAL CASH - END OF MONTH | $12,650,529 |

1    Account x6342 is now closed.

**Monthly Operating Report**
ACCRUAL BASIS-6

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

MONTH: December 2020

**PAYMENTS TO INSIDERS AND PROFESSIONALS**

| | INSIDERS | | | |
|---|---|---|---|---|
| | NAME | TYPE OF PAYMENT | AMOUNT PAID | TOTAL PAID POST PETITION |
| 1 | Frank Waterhouse | Salary | $33,333 | $460,417 |
| 2 | Frank Waterhouse | Expense Reimbursement | $383 | $6,988 |
| 3 | Scott Ellington | Salary | $37,500 | $543,750 |
| 4 | Scott Ellington | Expense Reimbursement | $2,728 | $9,327 |
| 5 | James Dondero | Salary | $0 | $129,972 |
| 6 | James Dondero | Expense Reimbursement [1] | $0 | $16,918 |
| 7 | Thomas Surgent | Salary | $33,333 | $483,333 |
| 8 | Thomas Surgent | Expense Reimbursement | $5,439 | $10,420 |
| 9 | Trey Parker | Salary | $0 | $131,250 |
| 10 | Trey Parker | Expense Reimbursement | $0 | $6,212 |
| | TOTAL PAYMENTS TO INSIDERS | | $112,717 | $1,798,586 |

[1] The total amount of reimbursements during the reporting month also included $360 for use of the credit card by the Debtor for office related subscriptions.

| | PROFESSIONALS [2] | | | | | |
|---|---|---|---|---|---|---|
| | NAME | DATE OF MONTHLY FEE APPLICATION | AMOUNT APPROVED | AMOUNT PAID | TOTAL PAID TO DATE | TOTAL INCURRED & UNPAID |
| 1. | Kurtzman Carson Consultants LLC | | 139,664 | 139,664 | 713,621 | - |
| 2. | Sidley Austin LLP | | 900,062 | 900,062 | 7,219,151 | 628,987 |
| 3. | Young Conaway Stargatt & Taylor LLP | | - | - | 281,156 | - |
| 4. | FTI Consulting, Inc. | | 368,147 | 368,147 | 4,357,938 | 293,326 |
| 5. | Pachulski Stang Ziehl & Jones LLP | | 1,585,134 | 1,585,134 | 10,562,034 | 1,050,155 |
| 6 | Hayward & Associates PLLC | | 43,024 | 43,024 | 304,307 | 16,465 |
| 7 | Development Specialists, Inc. | | 476,711 | 476,711 | 3,077,065 | - |
| 8 | Foley & Lardner LLP | | - | - | 464,294 | - |
| 9 | Mercer (US) Inc. | | - | - | 170,284 | - |
| 10 | Wilmer Cutler Pickering Hale and Dorr LLP | | 61,768 | 61,768 | 680,411 | - |
| 11 | Meta-e Discovery LLC | | 360,384 | 360,384 | 525,384 | - |
| | TOTAL PAYMENTS TO PROFESSIONALS | | | 3,934,895 | 28,355,644 | 1,988,933 |

[2] Does not include payments to ordinary course professionals.

**POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS**

| | NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POSTPETITION |
|---|---|---|---|---|
| 1. | Crescent TC Investors LP (rent portion only) | 130,364 | 130,364 | - |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | TOTAL | 130,364 | $130,364 | $0 |

**Monthly Operating Report**
ACCRUAL BASIS-7

| CASE NAME: | Highland Capital Management |
| --- | --- |

| CASE NUMBER: | 19-34054 |
| --- | --- |

MONTH:    December 2020

### QUESTIONNAIRE

| | | YES | NO |
| --- | --- | --- | --- |
| 1. | HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | x |
| 2. | HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | | x |
| 3. | ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES, OR LOANS) DUE FROM RELATED PARTIES? | x | |
| 4. | HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | | x |
| 5. | HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | x |
| 6. | ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | x |
| 7. | ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | x |
| 8. | ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | x |
| 9. | ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | x |
| 10. | ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | x |
| 11. | HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | x |
| 12. | ARE ANY WAGE PAYMENTS PAST DUE? | | x |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES," PROVIDE A DETAILED
EXPLANATION OF EACH ITEM. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| 3 | Debtor generates fee income and other receipts from various related parties in normal course, see cash management motion for further discussion. |
| --- | --- |

### INSURANCE

| | | YES | NO |
| --- | --- | --- | --- |
| 1. | ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | x | |
| 2. | ARE ALL PREMIUM PAYMENTS PAID CURRENT? | x | |
| 3. | PLEASE ITEMIZE POLICIES BELOW. | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO," OR IF ANY POLICIES HAVE BEEN
CANCELLED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN EXPLANATION
BELOW.  ATTACH ADDITIONAL SHEETS IF NECESSARY.

| INSTALLMENT PAYMENTS | | | |
| --- | --- | --- | --- |
| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT 63

**Monthly Operating Report**
ACCRUAL BASIS

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |
| JUDGE: | Stacey Jernigan |

# UNITED STATES BANKRUPTCY COURT

## NORTHERN & EASTERN DISTRICTS OF TEXAS

### REGION 6

## MONTHLY OPERATING REPORT

**MONTH ENDING:** _January_ _2021_
MONTH    YEAR

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT (ACCRUAL BASIS-1 THROUGH ACCRUAL BASIS-7) AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE. DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.

RESPONSIBLE PARTY:

_____    Chief Restructuring Officer/ Chief Executive Officer
ORIGINAL SIGNATURE OF RESPONSIBLE PARTY    TITLE

James Seery    3-15-21
PRINTED NAME OF RESPONSIBLE PARTY    DATE

PREPARER:

_____    Chief Financial Officer
ORIGINAL SIGNATURE OF PREPARER    TITLE

David Klos    3/15/21
PRINTED NAME OF PREPARER    DATE

1934054210315000000000001

<div align="right">

**Monthly Operating Report**
ACCRUAL BASIS-1

</div>

| CASE NAME: | Highland Capital Management, LP |
|---|---|
| CASE NUMBER: | 19-12239-CSS |

**Comparative Balance Sheet** [7]
(in thousands)

| | 10/15/2019 | 12/31/2020 [6] | 1/31/2021 |
|---|---|---|---|
| **Assets** | | | |
| Cash and cash equivalents | 2,529 | 12,651 | 10,651 |
| Investments, at fair value [1][8] | 232,620 | 109,211 | 142,976 |
| Equity method investees [3] | 161,819 | 103,174 | 105,293 |
| Management and incentive fee receivable | 2,579 | 2,461 | 2,857 |
| Fixed assets, net | 3,754 | 2,594 | 2,518 |
| Due from affiliates [1] | 151,901 | 152,449 | 152,538 |
| Reserve against notes recievable | | (61,039) | (61,167) |
| Other assets | 11,311 | 8,258 | 8,651 |
| **Total assets** | **$ 566,513** | **$ 329,758** | **$ 364,317** |
| | | | |
| **Liabilities and Partners' Capital** | | | |
| Pre-petition accounts payable [4] | 1,176 | 1,077 | 1,077 |
| Post-petition accounts payable [4] | - | 900 | 3,010 |
| Secured debt: | | | |
| Frontier | 5,195 | 5,195 | 5,195 |
| Jefferies | 30,328 | - | - |
| Accrued expenses and other liabilities [4] | 59,203 | 60,446 | 49,445 |
| Accrued re-organization related fees [5] | - | 5,795 | 8,944 |
| Class 8 general unsecured claims [2] | 73,997 | 73,997 | 267,607 |
| Partners' capital | 396,614 | 182,347 | 29,039 |
| **Total liabilities and partners' capital** | **$ 566,513** | **$ 329,758** | **$ 364,317** |

[1] Includes various notes receivable at carrying value, except note due from Hunter Mountain Investment Trust which is fully reserved against ($61M reserve). Fair value has not been determined with respect to any of the notes.

[2] Beginning 1/31/2021, accrual reflects known settlements with material general unsecured claimholders. Amounts prior to 1/31/2021 reflect uncontested portion of Redeemer claim less appplicable offsets.

[3] Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

[4] Note on accruals: expenses recorded in Accounts Payable and Accrued Expenses and Other Liabilities reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices. For balance sheet dates other than the Petition Date, amounts include both pre-petition and post-petition liabilities.

[5] Beginning December 31st, 2019, Debtor accrued for post-petition re-organization fees based upon an estimate of fees incurred to date.

[6] All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, balances for subsequent months have and will fluctuate.

[7] Does not include Class 9 claims, for which recoveries are not currently expected.

[8] Amount as of 1/31/2021 reflects value of shares of a private fund received pursuant to a global settlement with a claimholder.

<div style="text-align:right">

**Monthly Operating Report**
ACCRUAL BASIS-2

</div>

| CASE NAME: | Highland Capital Management, LP | |
|---|---|---|
| CASE NUMBER: | 19-12239-CSS | |

**Income Statement** [1]
(in thousands)

| | Date | Filing to Year Ended [6] | Month ended [6] | Filing to Year Ended [6] | Month ended [6] | Filing to date [6] |
|---|---|---|---|---|---|---|
| | 10/16/19 - 10/31/19 | 2019 | 12/31/2020 | 2020 | 1/31/2021 | |
| **Revenue:** | | | | | | |
| Management fees | 975 | 4,528 | 1,504 | 24,145 | 1,331 | 25,476 |
| Shared services fees | 283 | 1,588 | 605 | 9,070 | 603 | 9,674 |
| Other income | 99 | 1,582 | 3,022 | 8,395 | 6 | 8,401 |
| **Total operating revenue** | 1,357 | 7,697 | 5,131 | 41,611 | 1,940 | 43,551 |
| **Operating expenses:** | | | | | | |
| Compensation and benefits | 997 | 1,698 | 3,106 | 22,143 | (11,184) [5] | 10,960 |
| Professional services | 256 | 64 | 669 | 3,326 | 135 | 3,461 |
| Investment research and consulting | 10 | 266 | 128 | 1,097 | 2 | 1,099 |
| Marketing and advertising expense | - | 370 | (22) | 441 | - | 441 |
| Depreciation expense | 82 | 244 | 76 | 1,168 | 76 | 1,244 |
| Bad debt expense reserve | - | 8,410 | 128 | 9,968 | 128 | 10,096 |
| Other operating expenses | 201 | 1,265 | 792 | 6,439 | 295 | 6,734 |
| **Total operating expenses** | 1,545 | 12,118 | 4,877 | 44,583 | (10,548) | 34,035 |
| **Operating income/(loss)** | (188) | (4,421) | 255 | (2,972) | 12,488 | 9,516 |
| **Other income/expense:** | | | | | | |
| Interest income | 250 | 1,230 | 456 | 7,058 | 443 | 7,501 |
| Interest expense | (107) | (286) | (22) | (740) | (22) | (762) |
| Reserve against notes receivable | - | (57,963) | - | (57,963) | - | (57,963) |
| Re-org related expenses [2] | - | (5,547) | (6,619) | (39,495) | (2,480) | (41,975) |
| Independent director fees | - | - | (420) | (2,607) | (210) | (2,817) |
| Other income/expense | 32 | 32 | (1) | (171) | (168,396) [6] | (168,567) |
| **Total other income/expense** | 175 | (62,534) | (6,607) | (93,919) | (170,664) | (264,583) |
| Net realized gains/(losses) on investments | 339 | 618 | 896 | (29,134) | (360) | (29,494) |
| Net change in unrealized gains/(losses) of investments [3] | 2,634 | (955) | 8,073 | (28,311) | 4,675 | (23,636) |
| | 2,993 | (337) | 8,969 | (57,445) | 4,315 | (53,130) |
| Net earnings/(losses) from equity method investees [3] | (20) | 14,918 | 10,441 | (63,484) | - | (63,484) |
| **Net income/(loss)** | $ 2,959 | $ (52,374) | $ 13,058 | $ (217,821) | $ (153,861) | $ (371,681) |

(1) Note on accruals: expenses recorded in the Income Statement reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.

(2) Debtor funded various retainers totaling $790K prior to the petition date, which were entirely expensed as of the petition date.

(3) Mark to market gains (losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

(4) All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, operating results will change as these entries are made.

(5) Reflects the termination of the 2003 Bonus Plan.

(6) Reflects known settlements with material general unsecured claimholders.

**Monthly Operating Report**
ACCRUAL BASIS-3A

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| CASH RECEIPTS AND DISBURSEMENTS | FILING TO YEAR END 2019 | QUARTER 1 2020 | QUARTER 2 2020 | QUARTER 3 2020 | QUARTER 4 2020 | JANUARY 2021 |
|---|---|---|---|---|---|---|
| 1. CASH - BEGINNING OF MONTH | 2,554,230 | $ 9,501,409 | $ 12,532,467 | $ 14,993,872 | $ 5,887,813 | $ 12,650,505 |
| RECEIPTS FROM OPERATIONS | | | | | | |
| 2. OTHER OPERATING RECEIPTS | $ 1,862,757 | $ 1,379,338 | $ 2,983,221 | $ 2,259,736 | $ 2,786,320 | $ 452,540 |
| 3. MANAGEMENT FEES AND OTHER RELATED RECEIPTS | 3,156,742 | $ 7,555,297 | $ 6,179,437 | $ 5,575,680 | $ 6,972,357 | $ 1,104,574 |
| COLLECTION OF ACCOUNTS RECEIVABLE | | | | | | |
| 4. PREPETITION | $ 3,593,108 | $ 76,569 | $ 3,727 | $ - | $ 197,173 | $ - |
| 5. POSTPETITION ¹ | $ - | $ - | $ - | $ - | $ - | $ - |
| 6. TOTAL OPERATING RECEIPTS | 8,612,608 | $ 9,011,204 | $ 9,166,385 | $ 7,835,415 | $ 9,955,850 | $ 1,557,114 |
| NON-OPERATING RECEIPTS | | | | | | |
| 7. THIRD PARTY FUND ACTUAL/EXPECTED DISTRIBUTIONS | 423,468 | $ 18,992,786 | $ 797,571 | $ 610,254 | $ 2,034,200 | $ 500,842 |
| 8. DIVS, PAYDOWNS, MISC FROM INVESTMENT ASSETS | 1,338,069 | $ 477,479 | $ 74,376 | $ 5,311 | $ 2,989,760 | $ 905 |
| 9. OTHER (ATTACH LIST) | 3,390,286 | $ 1,407,103 | $ 10,010,000 | $ 8,817,099 | $ 7,075,476 | $ 2,759,150 |
| 10. TOTAL NON-OPERATING RECEIPTS | 5,151,822 | $ 20,877,369 | $ 10,881,947 | $ 9,432,664 | $ 12,099,436 | $ 3,260,896 |
| 11. TOTAL RECEIPTS | 13,764,430 | $ 29,888,573 | $ 20,048,331 | $ 17,268,080 | $ 22,055,287 | $ 4,818,010 |
| 12. TOTAL CASH AVAILABLE | | | | $ 32,261,951 | $ 27,943,100 | $ 17,468,515 |
| OPERATING DISBURSEMENTS | | | | | | |
| 13. PAYROLL, BENEFITS, AND TAXES + EXP REIMB | 3,776,446 | $ 8,825,042 | $ 4,886,314 | $ 8,806,880 | $ 4,280,805 | $ 1,612,847 |
| 14. SINGAPORE SERVICE FEES | $ 95,118 | $ 58,129 | $ 2,965 | $ - | $ 10,547 | $ - |
| 15. HCM LATIN AMERICA | $ 200,000 | $ 100,000 | $ - | $ - | $ - | $ - |
| 16. THIRD PARTY FUND CAPITAL CALL OBLIGATION | 1,426,987 | $ 7,812,469 | $ 3,087,163 | $ 979,631 | $ 1,741,089 | $ 909,478 |
| 17. UTILITIES | $ - | $ - | $ - | $ - | $ - | $ - |
| 18. INSURANCE | $ - | $ 533,940 | $ 376,376 | $ 163,400 | $ - | $ - |
| 19. INVENTORY PURCHASES | $ - | $ - | $ - | $ - | $ - | $ - |
| 20. VEHICLE EXPENSES | $ - | $ - | $ - | $ - | $ - | $ - |
| 21. TRAVEL | $ - | $ - | $ - | $ - | $ - | $ - |
| 22. ENTERTAINMENT | $ - | $ - | $ - | $ - | $ - | $ - |
| 23. REPAIRS & MAINTENANCE | $ - | $ - | $ - | $ - | $ - | $ - |
| 24. SUPPLIES | $ - | $ - | $ - | $ - | $ - | $ - |
| 25. ADVERTISING | $ - | $ - | $ - | $ - | $ - | $ - |
| 26. OTHER (ATTACH LIST) | 1,318,700 | $ 3,283,898 | $ 3,195,054 | $ 3,633,331 | $ 2,604,301 | $ 1,386,246 |
| 27. TOTAL OPERATING DISBURSEMENTS | $ 6,817,251 | $ 20,613,478 | $ 11,547,870 | $ 13,583,243 | $ 8,636,743 | $ 3,908,571 |
| REORGANIZATION EXPENSES | | | | | | |
| 28. PROFESSIONAL FEES | $ - | $ 5,460,546 | $ 5,572,032 | $ 11,551,682 | $ 5,775,852 | $ 2,698,968 |
| 29. U.S. TRUSTEE FEES | $ - | $ 68,173 | $ 167,025 | $ 277,924 | $ 250,000 | $ - |
| 30. OTHER (ATTACH LIST) | $ - | $ 715,317 | $ 300,000 | $ 961,289 | $ 630,000 | $ 210,000 |
| 31. TOTAL REORGANIZATION EXPENSES | $ - | $ 6,244,037 | $ 6,039,057 | $ 12,790,896 | $ 6,655,852 | $ 2,908,968 |
| 32. TOTAL DISBURSEMENTS | 6,817,251 | $ 26,857,515 | $ 17,586,927 | $ 26,374,138 | $ 15,292,594 | $ 6,817,539 |
| 33. NET CASH FLOW | 6,947,179 | $ 3,031,058 | $ 2,461,404 | $ (9,106,059) | $ 6,762,692 | $ (1,999,529) |
| 34. CASH - END OF MONTH | 9,501,409 | $ 12,532,467 | $ 14,993,872 | $ 5,887,813 | $ 12,650,505 | $ 10,650,976 |

1   All postpetition receipts are included in line 3, Management Fees and Other Related Receipts.

Monthly Operating Report
ACCRUAL BASIS-3B

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

### OPERATING RECEIPTS - OTHER

| Date | Amount | Type |
|---|---|---|
| 1/14/2021 | 1,406,111.92 | Nexpoint Advisors LP loan payment |
| 1/21/2021 | 201,994.38 | HCRE loan payment |
| 1/21/2021 | 463,816.71 | HCRE loan payment |
| 1/21/2021 | 181,227 | HCMSI loan payment |
| 1/29/2021 | 506,000 | Ohio State Life Insurance - duplicate receipt returned 2/1/2021 |
| | 2,759,149.84 | |

### OPERATING DISBURSMENTS - OTHER

| Date | Amount | Vendor |
|---|---|---|
| 1/4/2021 | 39,231 | Third Party Consultant |
| 1/4/2021 | 164,584 | Crescent TC Investors LP |
| 1/6/2021 | 6,182 | Level 3 Communic |
| 1/8/2021 | 10,326 | Carey Olsen |
| 1/8/2021 | 204 | Ace Parking Lot 3749 |
| 1/8/2021 | 233 | UPS Small Package |
| 1/8/2021 | 630 | CDW Direct LLC |
| 1/8/2021 | 2,824 | Third Party Consultant |
| 1/8/2021 | 5,111 | ICE Data Pricing Ref Data LLC |
| 1/8/2021 | 8,901 | CCH Incorporated |
| 1/8/2021 | 33,760 | Houlihan Lokey Financial Advisors |
| 1/8/2021 | 61,082 | Moody's Analytics, Inc. |
| 1/8/2021 | 25.00 | East West bank charge |
| 1/11/2021 | 129,752 | Robert Half International, Inc. |
| 1/15/2021 | 300 | Pitney Bowes Bank Inc- Reserve Acct |
| 1/15/2021 | 6,133 | Third Party Consultant |
| 1/19/2021 | 121,975 | STATE COMPTRLR TEXNET |
| 1/20/2021 | 498 | ANALYSIS ACTIVITY FOR 12/20 |
| 1/20/2021 | 2,168 | Zayo group |
| 1/22/2021 | 46,288 | AAA/American Arbitration Assoc |
| 1/22/2021 | 207,480 | Hunton Andrews Kurth LLP Operating |
| 1/22/2021 | 138 | AT&T |
| 1/22/2021 | 252 | UPS Small Package |
| 1/22/2021 | 483 | Prostar Services Inc. |
| 1/22/2021 | 1,209 | OPTIONS PRICE REPORTING AUTHORITY |
| 1/22/2021 | 1,761 | Oak Cliff Office Supply & Printing |
| 1/22/2021 | 2,047 | NYSE Market (DE), Inc. |
| 1/22/2021 | 2,168 | Compass Group USA dba Canteen |
| 1/22/2021 | 2,466 | Thomson Reuters West |
| 1/22/2021 | 2,845 | Dawn US Holdings LLC |
| 1/22/2021 | 4,060 | Concur Technologies Inc |
| 1/22/2021 | 5,885 | ABM |
| 1/22/2021 | 6,118 | Willis Towers Watson Insurance Svcs |
| 1/22/2021 | 11,693 | Flexential Colorado Corp |
| 1/22/2021 | 18,042 | Siepe Software LLC |
| 1/22/2021 | 29,758 | Centroid Systems, Inc. |
| 1/22/2021 | 35,200 | Intex Solutions, Inc. |
| 1/22/2021 | 120,412 | Robert Half International, Inc. |
| 1/25/2021 | 62,311 | Carey Olsen |
| 1/27/2021 | 2 | KAUFMAN CO TAX |
| 1/27/2021 | 10,066 | Carey Olsen |
| 1/27/2021 | 11,586 | KAUFMAN CO TAX W |
| 1/29/2021 | 33,955 | Visa Card Payment |
| 1/29/2021 | 5,047 | Liberty Life Assurance Co of Boston |
| 1/29/2021 | 11,000 | Third Party Consultant |
| 1/29/2021 | 37,615 | HE Asante |
| 1/29/2021 | 122,442 | HE Peoria Place |
| | 1,386,246 | |

### REORGANIZATION EXPENSES - OTHER

| Date | Amount | Description |
|---|---|---|
| 1/4/2021 | 30,000 | Dubel & Associates, L.L.C. |
| 1/4/2021 | 150,000 | J.P. Seery & Co. LLC |
| 1/4/2021 | 30,000 | Nelms and Associates |
| | 210,000 | |

**Monthly Operating Report**
ACCRUAL BASIS-4

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| MGMT FEE RECEIVABLE AGING [2] | | October [3] | November [3] | December [3] | January [3] |
|---|---|---|---|---|---|
| 1. | 0-30 | $4,703,241 | $902,434 | $2,460,863 | $2,857,175 |
| 2. | 31-60 | | | | |
| 3. | 61-90 | | | | |
| 4. | 91+ | | | | |
| 5. | TOTAL MGMT FEE RECEIVABLE | $ 4,703,241 | $ 902,434 | $ 2,460,863 | $ 2,857,175 |
| 6. | AMOUNT CONSIDERED UNCOLLECTIBLE | | | | |
| 7. | MGMT FEE RECEIVABLE (NET) | $ 4,703,241 | $ 902,434 | $ 2,460,863 | $ 2,857,175 |

| AGING OF POSTPETITION TAXES AND PAYABLES | | | MONTH: | January 2021 | |
|---|---|---|---|---|---|
| TAXES PAYABLE | 0-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS | TOTAL |
| 1. FEDERAL | | | | | $0 |
| 2. STATE | | | | | $0 |
| 3. LOCAL | | | | | $0 |
| 4. OTHER (ATTACH LIST) | | | | | $0 |
| 5. TOTAL TAXES PAYABLE | $0 | $0 | $0 | $0 | $0 |

| 6. ACCOUNTS PAYABLE | $816,156 | $1,840,699 | $4,880 | $348,093 | $3,009,827 |
|---|---|---|---|---|---|

| STATUS OF POSTPETITION TAXES [1] | | | MONTH: | January 2021 | |
|---|---|---|---|---|---|
| FEDERAL | BEGINNING TAX LIABILITY | AMOUNT WITHHELD AND/ OR ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY |
| 1. WITHHOLDING | | | | $0 |
| 2. FICA-EMPLOYEE | | | | $0 |
| 3. FICA-EMPLOYER | | | | $0 |
| 4. UNEMPLOYMENT | | | | $0 |
| 5. INCOME | | | | $0 |
| 6. OTHER (ATTACH LIST) | | | | $0 |
| 7. TOTAL FEDERAL TAXES | $0 | $0 | $0 | $0 |
| STATE AND LOCAL | | | | |
| 8. WITHHOLDING | | | | $0 |
| 9. SALES | | | | $0 |
| 10. EXCISE | | | | $0 |
| 11. UNEMPLOYMENT | | | | $0 |
| 12. REAL PROPERTY | $0 | $0 | $0 | $0 |
| 13. PERSONAL PROPERTY | | | | $0 |
| 14. OTHER (ATTACH LIST) | | | | $0 |
| 15. TOTAL STATE & LOCAL | $0 | $0 | $0 | $0 |
| 16. TOTAL TAXES | $0 | $0 | $0 | $0 |

1   The Debtor funds all state and federal employment taxes to Paylocity, who files all required federal and state related employment reports and withholdings.
2   Aging based on when management fee is due and payable.
3   All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process.

**Monthly Operating Report**
ACCRUAL BASIS-5

| CASE NAME: | Highland Capital Management |
| --- | --- |
| CASE NUMBER: | 19-34054 |

MONTH: January 2021

| BANK RECONCILIATIONS | | Account #1 | Account #2 | Account #3 | Account #4 [2] | Account #5 | Account #6 | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| A. | BANK: | East West Bank | East West Bank | Maxim Group | Jefferies LLC | Nexbank | East West Bank | TOTAL |
| B. | ACCOUNT NUMBER: | x4686 | x4693 | x1885 | x0932 | x5891 | x5848 | |
| C. | PURPOSE (TYPE): | Operating | Insurance | Brokerage | Brokerage | CD | Prepaid Card | |
| 1. | BALANCE PER BANK STATEMENT [1] | $ 10,265,008 | $ 147,422 | $ 30 | $ - | $ 138,448 | $ 100,068 | $ 10,650,976 |
| 2. | ADD: TOTAL DEPOSITS NOT CREDITED | | | | | | | $ - |
| 3. | SUBTRACT: OUTSTANDING CHECKS | | | | | | | $ - |
| 4. | OTHER RECONCILING ITEMS | | | | | | | $ - |
| 5. | MONTH END BALANCE PER BOOKS | $ 10,265,008 | $ 147,422 | $ 30 | $ - | $ 138,448 | $ 100,068 | $ 10,650,976 |
| 6. | NUMBER OF LAST CHECK WRITTEN | 100510 | n/a | n/a | n/a | n/a | n/a | |

| INVESTMENT ACCOUNTS | | | | | |
| --- | --- | --- | --- | --- | --- |
| BANK, ACCOUNT NAME & NUMBER | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | | CURRENT VALUE |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |
| 11. | TOTAL INVESTMENTS | | | $0 | $0 |

| CASH | | |
| --- | --- | --- |
| 12. | CURRENCY ON HAND | $0 |
| 13. | TOTAL CASH - END OF MONTH | $ 10,650,976 |

1 Account x6342 is now closed.
2 Account x0932 does not reflect any balances held in money market funds

**Monthly Operating Report**
ACCRUAL BASIS-6

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

MONTH: _____ January 2021 _____

PAYMENTS TO INSIDERS AND PROFESSIONALS

| | | INSIDERS | | |
|---|---|---|---|---|
| | NAME | TYPE OF PAYMENT | AMOUNT PAID | TOTAL PAID POST PETITION |
| 1 | Frank Waterhouse | Salary | $33,333 | $493,750 |
| 2 | Frank Waterhouse | Expense Reimbursement | $417 | $7,405 |
| 3 | Scott Ellington | Salary + Unused Vacation | $92,223 | $635,973 |
| 4 | Scott Ellington | Expense Reimbursement | $0 | $9,327 |
| 5 | James Dondero | Salary | $0 | $129,972 |
| 6 | James Dondero | Expense Reimbursement | $0 | $16,918 |
| 7 | Thomas Surgent | Salary | $33,333 | $516,667 |
| 8 | Thomas Surgent | Expense Reimbursement | $488 | $10,908 |
| 9 | Trey Parker | Salary | $0 | $131,250 |
| 10 | Trey Parker | Expense Reimbursement | $0 | $6,212 |
| | TOTAL PAYMENTS TO INSIDERS | | $159,795 | $1,958,381 |

| | | PROFESSIONALS[2] | | | |
|---|---|---|---|---|---|
| | NAME | DATE OF MONTHLY FEE APPLICATION | AMOUNT APPROVED | AMOUNT PAID | TOTAL PAID TO DATE | TOTAL INCURRED & UNPAID |
| 1. | Kurtzman Carson Consultants LLC | | 75,183 | 75,183 | 788,804 | 239,926 |
| 2. | Sidley Austin LLP | | 778,408 | 778,408 | 7,997,559 | 849,950 |
| 3. | Young Conaway Stargatt & Taylor LLP | | | | 281,156 | - |
| 4. | FTI Consulting, Inc. | | 378,880 | 378,880 | 4,736,818 | 441,178 |
| 5. | Pachulski Stang Ziehl & Jones LLP | | 1,285,238 | 1,285,238 | 11,847,271 | 3,645,666 |
| 6. | Hayward & Associates PLLC | | 16,465 | 16,465 | 320,772 | - |
| 7. | Development Specialists, Inc. | | | | 3,077,065 | 756,820 |
| 8. | Foley & Lardner LLP | | 164,795 | 164,795 | 629,088 | - |
| 9. | Mercer (US) Inc. | | | | 170,284 | - |
| 10 | Wilmer Cutler Pickering Hale and Dorr LLP | | | | 680,411 | - |
| 11 | Meta-e Discovery LLC | | | | 525,384 | - |
| | TOTAL PAYMENTS TO PROFESSIONALS | | | 2,698,968 | 31,054,612 | 5,933,540 |

2 Does not include payments to ordinary course professionals.

POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS

| | NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POSTPETITION |
|---|---|---|---|---|
| 1. | Crescent TC Investors LP (rent portion only) | 130,364 | 130,364 | - |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | TOTAL | 130,364 | $130,364 | $0 |

<div align="right">

**Monthly Operating Report**
ACCRUAL BASIS-7

</div>

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

MONTH: _____ January 2021 _____

| QUESTIONNAIRE | | YES | NO |
|---|---|---|---|
| 1. | HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | x |
| 2. | HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | | x |
| 3. | ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES, OR LOANS) DUE FROM RELATED PARTIES? | x | |
| 4. | HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | | x |
| 5. | HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | x |
| 6. | ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | x |
| 7. | ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | x |
| 8. | ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | x |
| 9. | ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | x |
| 10. | ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | x |
| 11. | HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | x |
| 12. | ARE ANY WAGE PAYMENTS PAST DUE? | | x |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES," PROVIDE A DETAILED EXPLANATION OF EACH ITEM. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| 3 | Debtor generates fee income and other receipts from various related parties in normal course, see cash management motion for further discussion. |
|---|---|

| INSURANCE | | YES | NO |
|---|---|---|---|
| 1. | ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | x | |
| 2. | ARE ALL PREMIUM PAYMENTS PAID CURRENT? | x | |
| 3. | PLEASE ITEMIZE POLICIES BELOW. | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO," OR IF ANY POLICIES HAVE BEEN CANCELLED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN EXPLANATION BELOW. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| INSTALLMENT PAYMENTS | | | |
|---|---|---|---|
| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT 64

**January 2021 Due From Affiliates**

| | | |
|---|---|---:|
| 14585-DUE FROM HUNTER MOUNTAIN INVESTMENT TRUST | $ | 59,480,100 |
| 14532-DUE FROM NEXPOINT ADVISORS | | 23,034,644 |
| 14750-LONG TERM NOTES RECEIVABLE | | 18,286,268 |
| 14531-DUE FROM HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS | | 10,635,564 |
| 14533-DUE FROM HCRE PARTNERS | | 10,604,952 |
| 14565-DUE FROM OTHER - TAX LOANS | | 8,929,625 |
| 14530-DUE FROM HIGHLAND CAPITAL MANAGEMENT SERVICES | | 7,518,692 |
| 14536-DUE FROM SELECT | | 4,818,153 |
| 14595-DUE FROM HIGHLAND CAPITAL KOREA | | 3,832,358 |
| 14590-DUE FROM OTHER AFFILIATE | | 2,651,256 |
| 14010-CASH INTEREST RECEIVABLE | | 1,111,875 |
| 14140-SHARED SVCS FEE RECVBL - PYXIS | | 894,280 |
| 14146-SHARED SVCS FEE RECVBL - NEXPOINT | | 336,000 |
| 14149-SHARED SVCS FEE RECVBL - NREA | | 160,000 |
| 14137-SHARED SVCS FEE RECVBL - OSLI | | 122,000 |
| 14580-DUE FROM NEXBANK | | 80,000 |
| 14142-SHARED SVCS FEE RECVBL - HCLOH | | 31,179 |
| 14535-DUE FROM HERA | | 10,676 |
| **Total Due From Affiliates** | $ | **152,537,622** |

# EXHIBIT 65

**Loan Summary**

| HCMLP to HCMSI (GL 14530) - Outstanding Loans | Date | Principal Amount |
|---|---|---|
| HCMSI Restructure | 5/31/2017 | 6,572,061 |
| HCMSI #46 | 3/26/2018 | 158,777 |
| HCMSI #47 | 6/25/2018 | 212,403 |
| HCMSI #48 | 5/29/2019 | 409,586 |
| HCMSI #49 | 6/26/2019 | 153,565 |
| BW Salary Recievable | 12/31/2019 | 12,301 |
| | Sub-total | 7,518,692 |
| | | |
| **Total HCMSI Debt to HCM Outstanding** | | **7,518,692** |
| Total HCMSI Debt per GL | | 7,518,692 |
| | | |
| | Reconciled Total | 7,518,692 |
| | Unreconciled Difference | - |

| HCMLP to HCMFA (GL 14531) - Outstanding Loans | Date | Principal Amount |
|---|---|---|
| HCMFA #2 | 2/26/2014 | 2,092,825 |
| HCMFA #5 | 2/26/2016 | 965,395 |
| HCMFA #6 | 5/2/2019 | 2,457,517 |
| HCMFA #7 | 5/3/2019 | 5,119,827 |
| | Sub-total | 10,635,564 |
| | | |
| Total HCMFA Debt to HCM Outstanding | | **10,635,564** |
| Total HCMFA Debt per GL | | 10,635,564 |
| | | |
| | Reconciled Total | 10,635,564.44 |
| | Unreconciled Difference | - |

| HCMLP to NexPoint Advisors (GL 14532) - Outstanding Loans | Date | Principal Amount |
|---|---|---|
| NexPoint Restructure | 5/31/2017 | 23,034,644 |
| | Sub-total | 23,034,644 |
| | | |
| Total NexPoint Debt to HCM Outstanding | | **23,034,644** |
| Total NexPoint Debt per GL | | 23,034,644 |
| | | |
| | Reconciled Total | 23,034,644 |
| | Unreconciled Difference | 0.00 |

| HCMLP to HCRE (GL 14533) - Outstanding Loans | Date | Principal Amount |
|---|---|---|
| HCRE #9 | 11/27/2013 | - |
| HCRE Restructure | 5/31/2017 | 5,829,776 |
| HCRE #10 | 10/12/2017 | 3,149,919 |
| HCRE #11 | 10/15/2018 | 874,978 |
| HCRE #12 | 9/25/2019 | 750,279 |
| | Sub-total | 10,604,952 |
| | | |
| Total HCRE Debt to HCM Outstanding | | **10,604,952** |
| Total HCRE Debt per GL | | 10,604,952 |
| | | |
| | Reconciling Items Compound Interest | - |
| | | |
| | Reconciled Total | 10,604,951.61 |
| | Unreconciled Difference | 0.01 |

| HCMLP Partner Tax Loans (GL 14565) - Outstanding Loans | Date | Principal Amount |
|---|---|---|
| Dondero #4 | 2/2/2018 | 3,687,270 |
| Dondero #5 | 8/1/2018 | 2,619,929 |
| Dondero #6 | 8/13/2018 | 2,622,426 |
| | Sub-total | 8,929,625 |
| | | |
| Total Partner Debt to HCM Outstanding | | **8,929,625** |
| Total Partner Debt per GL | | 8,929,625 |
| Reconciling Items | | |
| | Reconciled Total | 8,929,624.74 |
| | Unreconciled Difference | - |

| Get Good Loan (GL 14750) - Outstanding Loans | Date | Principal Amount |
|---|---|---|
| Dugaboy Restructure | 5/31/2017 | 18,286,268 |
| | Sub-total | 18,286,268 |
| | | |
| Total Partner Debt to HCM Outstanding | | **18,286,268** |
| Total Partner Debt per GL | | 18,286,268 |
| Reconciling Items | | |
| | Reconciled Total | 18,286,268.16 |
| | Unreconciled Difference | - |