PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 266326) *(admitted pro hac vice)*
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Fl.
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward, Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable, Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Plaintiff,<br>v.<br><br>NEXPOINT ADVISORS, L.P.,<br><br>Defendant. | Adv. Proc. No. 21-03005-sgj |

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

**DEBTOR'S OPPOSITION TO MOTION FOR ENTRY OF PROTECTIVE ORDER**

Highland Capital Management, L.P., the above-captioned plaintiff (the "Debtor"), by and through its undersigned counsel, hereby files this opposition (this "Opposition") to the duplicate *Motion for Entry of a Protective Order* (the "Motion") filed by (a) defendant Highland Capital Management Fund Advisors, L.P. ("HCMFA") at Docket No. 42 in Adv. Pro. No. 21-03004, and (b) defendant NexPoint Advisors, L.P. ("NexPoint" and together with HCMFA, the "Defendants") at Docket No. 37 in Adv. Pro. No. 21-03005. In support of this Opposition, the Debtor represents as follows:

## PRELIMINARY STATEMENT

1. Since January 21, 2020, the Debtor, the Official Committee of Unsecured Creditors (the "UCC"), all parties (including each of the Defendants) to the dozens of adversary proceedings and contested matters commenced in the above-referenced bankruptcy case, and all parties-in-interest exchanged documents and information, formally and informally, pursuant to the *Agreed Protective Order in the Bankruptcy Case*, entered by the Court in the main case at Docket No. 382 after notice and a hearing. Defendants now seek further protection, including attempting to (a) interfere with the Debtor's attorney-client relationship, and (b) prevent the UCC and the Office of the United States Trustee from seeing any documents and information that Defendants designate as "confidential."

2. There is no basis to grant the extraordinary relief requested – especially when a protective order acceptable to all parties-in-interest has been in place for over a year and a half. Indeed, other than generalized statements, the Defendants fail to describe any legitimate basis for disturbing the *status quo*. Moreover, the substantive facts relating to the Defendants' primary defenses in the underlying adversary proceedings are already in the public domain and should not be the subject of any protection, regardless of the outcome of the Motion.

3. NexPoint has adopted the "conditions subsequent" defense first cobbled together by James Dondero in the adversary proceeding initiated against him; that defense has been openly addressed in (a) Mr. Dondero's deposition, amended answer, and written responses to discovery, and (b) in court proceedings, including motions for leave to amend pleadings and to withdraw the reference. Consequently, the Protective Order is sufficient to protect NexPoint's interests, and NexPoint should not be permitted to designate anything relating to the "conditions subsequent" defense as "confidential," whether under the existing Protective Order or otherwise.

4. For its part, HCMFA contends that, in May 2019, Frank Waterhouse, then acting as the Chief Financial Officer for both the Debtor and HCMFA, "mistakenly" issued *two* promissory notes in favor of the Debtor in the aggregate amount of $7,400,000. In May 2021, HCMFA moved to amend its answer to assert this defense,[2] relying on the declaration of its in-house counsel, Dennis C. Sauter, Jr. ("Mr. Sauter").[3] In connection with its motion to amend, HCMFA directed the Debtor to speak with Thomas Surgent, the Debtor's current General Counsel, about the matter. The Debtor did so, learned that HCMFA's defense is fabricated and without merit, and promptly and publicly filed substantial documentation relating to HCMFA's "mistake" defense.[4] Thus, again, through (a) Mr. Sauter's declaration, (b) HCMFA's direction that the Debtor speak with Mr. Surgent, and (c) the posting on the docket of voluminous documentation, the facts concerning HCMFA's "mistake" defense are out in the open. Consequently, HCMFA

---

[2] *See Defendant's Motion for Leave to Amend Answer*, Adv. Pro. No. 21-03004, Docket No. 32.

[3] *Declaration of Dennis C. Sauter, Jr.*, Adv. Pro. No. 21-03004, Docket No. 32-1.

[4] *See, e.g.*, *Debtor's Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 25, 2021* (Adv. Pro. No. 21-03004) [Docket No. 35] (the "W&E List") Exhibit Nos. 31-38 (together, the "Rebuttal Documents"). The Rebuttal Documents – as well as other documentary evidence (much of it signed by Mr. Waterhouse, who thereby ratified the validity of the applicable promissory notes) that proves that HCMFA's defense of "mistake" is contrived (*see, e.g.*, W&E List, Exhibit Nos. 28 through 30 and 45 through 65) – have been on the docket and publicly available for more than two months without action by HCMFA.

should not be permitted to designate anything relating to the "mistake" defense as "confidential," whether under the existing Protective Order or otherwise.

5. For these reasons, and for those set forth below, the Motion should be denied.

## THE MOTION SHOULD BE DENIED

6. On January 21, 2020, this Court entered the *Agreed Protective Order in the Bankruptcy Case* [Docket No. 382] (the "Protective Order"). The Protective Order was entered after notice and a hearing. *See Second Amended Notice of Agenda of Matters Scheduled for Hearing on January 21, 2020 at 9:30 AM (Central Time)* [Docket No. 374]. Neither Mr. Dondero not any entity controlled by him (including the Defendants) objected to the Protective Order.

7. For more than a year and a half, the Protective Order has been relied upon by all parties-in-interest in informal discovery and in all contested matters and adversary proceedings. There is no reason why the Protective Order cannot be utilized in these adversary proceedings, notwithstanding the four "problems" Defendants suddenly have with it.

A. The Protective Order Can Be Applied to Defendants' Adversary Proceedings

8. Defendants' first "problem" is that, "on its face," the Protective Order does not apply to adversary proceedings. *See* Motion ¶5(a). This contention is without merit. Indeed, Defendants are the first parties to any of the adversary proceedings to make this assertion. Nevertheless, to address this purported concern, the Debtor offered weeks ago to stipulate that the Protective Order would apply to the adversary proceedings commenced against the Defendants. The Debtor stands by that offer.

B. Defendants Have No Right to Interfere with the Debtor's Attorney-Client Relationships

9. Defendants next take issue with the provision of the Protective Order that excludes as "Confidential" any information that was "lawfully within a party's possession prior to it being furnished to such party in the bankruptcy case." *See* Motion ¶5(b). According to Defendants, this

3

is a "problem" because the Debtor may have confidential information "solely by virtue of the fact that the Plaintiff's in-house counsel once represented the Defendants." *Id*. Defendants offer no evidentiary support for this assertion. Indeed, as the Court is aware, **the Debtor** entered into the shared-services agreements with the Defendants, not any individual in-house compliance officer or attorney. Thus, any confidential information the Debtor may have (if any) was lawfully obtained pursuant to the shared-services agreements to which it was a party; conversely, any confidential information that any compliance officer or in-house attorney may have (if any) was obtained in his capacity as an employee of the Debtor.

10. In any event, as it relates to this particular matter, HCMFA's counsel specifically instructed the Debtor to "talk to Mr. Surgent" about HCMFA's "mistake" defense. Morris Dec. Ex. 1.[5] Consequently, as a matter of contract and ethics, the Debtor has every right to confer with its employees who may have provided services on the Debtor's behalf, and the "problem" is moot because the Debtor has already followed HCMFA's instruction and cannot "unring the bell."[6]

C. <u>The UCC and United States Trustee's Office Should Have Access to Confidential Information</u>

11. Defendants also seek to prevent the UCC and the Office of the United States Trustee (the "<u>UST's Office</u>") from obtaining or reviewing confidential information on the ground

---

[5] "<u>Morris Dec.</u>" refers to the *Declaration of John A Morris in Support of Debtor's Opposition to Motion for Entry of Protective Order* being filed contemporaneously herewith.

[6] Based on recent correspondence, Defendants' attempt to "ring fence" Debtor's in-house counsel here may be their opening salvo in a broader effort to interfere with the Debtor's attorney-client relationships. If nothing else, this attempt and any further efforts are obviously awfully late in the process, coming as they are (a) almost 22 months after the bankruptcy case was commenced; (b) more than 18 months after (i) Mr. Dondero agreed to give the UCC standing to pursue "estate claims," and (ii) the Protective Order was entered; (c) 12 months after the Court entered orders that resolved discovery motions (none of which were appealed) whereby the UCC was given access to all "confidential" information; and (d) almost 6 months after the issue of control over documents and information was addressed as part of the resolution of the Debtor's motion for a mandatory injunction.

that "there is no reason why they should receive confidential information provided in the Adversary Proceeding." Motion ¶5(c).

12. The Debtor is prosecuting the Adversary Proceedings for the benefit of its creditors, for which the UCC serves as their representative. If that were not enough (and it should be), as the Court will recall, the UCC has standing to pursue "estate claims" and even has the right to the Debtor's privileged information. There is no credible dispute that the claims asserted in the underlying adversary proceedings are "estate claims." Defendants offer no basis for shielding information for the statutorily appointed UCC, and the Court should deny this extraordinary request.

13. The Court should also reject Defendants' attempt to prevent the UST's Office from reviewing any information that Defendants deem "confidential" and from otherwise exercising its oversight role. As the record already shows, the SEC conducted an investigation into HCMFA's initial "mistake"[7] such that (a) it is difficult to comprehend a credible argument in favor of confidentiality, and (b) there is a compelling reason why the UST's Office should at least have access to allegedly "confidential" information.

D. Defendants Can Seek to Enforce or Rely on the Protective Order

14. Finally, Defendants contend that they are not entitled to seek to enforce or rely upon the Protective Order because they are "Dondero Parties" (as that term is defined in the Protective Order. Motion 5(d). Defendants are mistaken.

15. Paragraph 17 of the Protective Order states that there are "no third-party beneficiaries to the Order. That provision expressly applies to the "Dondero Parties" (as defined

---

[7] *See* (a) *Declaration of Dennis C. Sauter Jr.*, Adv. Pro. No. 21-03004, Docket No. 32-1 ¶¶24-27; (b) Morris Dec. Ex. 1; and (c) W&E List, Exhibits 33 through 36.

therein), "***unless*** any of the Dondero Parties is asked (formally or informally) to produce or receive Discovery Materials thereby becoming a 'Party'" as defined in the Protective Order. Protective Order ¶17.

16.　Thus, while Defendants are "Dondero Parties," they will have all the rights (and obligations) under the Protective Order because they will be asked to "produce or receive Discovery Materials" and thereby become "Parties" thereunder – especially if they simply agree to the Debtor's offer to expressly have the Protective Order adopted for the Adversary Proceedings.

E.　The Motion Should Be Denied to Avoid Undue Burdens and Inconsistent Rules

17.　While the Debtor contends that the "problems" identified by Defendants are either easily resolved (items A and D above), or are without merit (items B and C above), the Debtor opposes the Motion for an independent reason: granting the Motion could open the floodgates to similar demands by the many other Dondero Parties which will create unnecessary burdens and leave the Debtor, parties-in-interest, and the Court with differing (and perhaps conflicting) provisions, rights, and obligations. Given the number of adversary proceedings and contested matters, consistency is critical – particular after all parties-in-interest have been operating under the same rules for more than a year and a half.

## CONCLUSION

For the reasons set forth herein, the Debtor respectfully requests that the Court deny the Motion and grant such other and further relief as the Court deems just and proper.

Dated: August 9, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
ikharasch@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com
hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*