Deborah Deitsch-Perez
State Bar No. 24036072
Michael P. Aigen
State Bar No. 24012196
STINSON LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219
(214) 560-2201 telephone
(214) 560-2203 facsimile

**ATTORNEYS FOR JAMES DONDERO
AND NANCY DONDERO**

Daniel P. Elms
State Bar No. 24002049
GREENBERG TRAURIG, LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
(214) 665-3600 telephone
(214) 665-3601 facsimile

**ATTORNEYS FOR NANCY DONDERO**

Douglas S. Draper, La. Bar No. 5073
Leslie A. Collins, La. Bar No. 14891
Greta M. Brouphy, La. Bar No. 26216
Heller, Draper & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130
Telephone: (504) 299-3300
Fax: (504) 299-3399

**ATTORNEYS FOR THE DUGABOY INVESTMENT TRUST**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | **Case No. 19-34054-SGJ-11** |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | **Chapter 11** |
| | § | |
| Debtor. | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| v. | § | |
| | § | **Adversary No.: 21-03005-sgj** |
| **NEXPOINT ADVISORS, L.P., JAMES DONDERO, NANCY DONDERO, AND THE DUGABOY INVESTMENT TRUST,** | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S FIFTH, SIXTH, AND SEVENTH CLAIMS FOR RELIEF[1]

---

[1] This Motion to Dismiss is being concurrently filed in Adv. Nos. 21-03003, 21-03007, 21-03006, and 21-03005, Case No. 19-34054-sgj11, as Plaintiff's assertions and Amended Complaints against all Defendants are identical in material respects.

## TABLE OF CONTENTS

                                                                                          **Page**

I.   BACKGROUND .................................................................................................... 1

     A.   The Bankruptcy and Rejection of Executory Contracts ......................................... 1

     B.   The Limited Partnership Agreement.................................................................... 2

     C.   The Promissory Notes....................................................................................... 4

     D.   The Adversary Proceedings ............................................................................... 6

II.  STANDARD OF REVIEW ................................................................................... 7

III. ARGUMENTS AND AUTHORITIES.................................................................. 8

     A.   Plaintiff's Fifth Claim for Declaratory Relief Under the LPA Should Be Dismissed
          for Two Reasons. ........................................................................................... 8

          1.   Plaintiff's Fifth Claim Fails Because the Terms of the LPA are so Clear on
               their Face That There is No Actual Controversy between Parties. .............. 8

          2.   Debtor Lacks Standing to Assert a Claim for Declaratory Relief Based Upon
               an Executory Contract It Rejected. ........................................................... 9

     B.   Plaintiff's Sixth Claim of Breach of Fiduciary Duty Against Dugaboy and Nancy
          Dondero Fails for Two Reasons. ...................................................................... 13

          1.   Dugaboy Owes No Fiduciary Duty to Plaintiff as a Consequence of
               Exercising Its Right to Approve Compensation. ...................................... 13

          2.   Nancy Dondero Owes No Fiduciary Duty to Debtor........................15

          3.   Debtor Lacks Standing to Assert a Claim for Breach of Fiduciary Duty
               Based Upon an Executory Contract It Rejected. ...................................... 16

     C.   Plaintiff's Seventh Claim of Aiding and Abetting Breach of Fiduciary Duty against
          Jim and Nancy Dondero Fails for Several Reasons............................................ 17

          1.   Neither Jim nor Nancy Dondero could have Aided and Abetted a Breach of
               Fiduciary Duty because Dugaboy did Not Owe a Fiduciary Duty to Plaintiff.
               ................................................................................................... 17

          2.   Nancy Dondero Cannot Aid and Abet Herself as Dugaboy Trustee Because
               Aiding and Abetting Requires More Than One Actor............................. 18

          3.   Plaintiff does Not Plead the Sufficient Scienter Requirement for Aiding and
               Abetting in its Amended Complaint for Either Jim or Nancy Dondero. .. 21

          4.   Neither Jim nor Nancy Dondero are Liable for Aiding and Abetting Because
               Aiding and Abetting Requires More Than One Single Act. ..................... 23

          5.   Debtor Lacks Standing to Bring an Aiding and Abetting a Breach of
               Fiduciary Duty Claim Based on an Executory Contract It Rejected. ....... 24

IV.  CONCLUSION.................................................................................................. 25

CORE/3522697.0002/169121350.1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agar Corp., Inc. v. Electro Circuits Int'l, LLC*,
  580 S.W.3d 136 (Tex. 2019), *reh'g denied* (Sept. 6, 2019).....................................24

*In re Alongi*,
  272 B.R. 148 (Bankr. D. Md. 2001) ...................................................................11

*Amaysing Techs. Corp. v. Cyberair Communications, Inc.*,
  2005 WL 578972 (Del. Ch. Mar. 3, 2005)..........................................................19

*Ashcroft v. Iqbal*,
  *129 S. Ct. 1937*.......................................................................................................7

*Matter of Austin Dev. Co*,
  19 F.3d 1077 (5th Cir. 1994) ...............................................................................11

*Bell Atlantic Corp v. Twombly*,
  *550 U.S. 544 (2007)* ...................................................................................... *passim*

*Bolick v. Alea Group Holdings, Ltd.*,
  278 F. Supp. 2d 278 (D. Conn. 2003)...................................................................21

*Bond Purchase, L.L.C. v. Patriot Tax Credit Properties, L.P.*,
  746 A.2d 842...............................................................................................1, 13, 14

*Capitaliza-T Sociedad De Responsabilidad Limitada De Capital Variable v.*
  *Wachovia Bank of Delaware Nat. Ass'n*,
  CIV. 10-520 JBS KMW, 2011 WL 864421 (D. Del. Mar. 9, 2011) ................22, 23

*In re Continental Airlines*,
  981 F.2d 1450 (5th Cir. 1993) ..............................................................................11

*Cornell Glasgow, LLC v La Grange Props., LLC*,
  2012 WL 2106945 (Del. Super. Ct. June 6, 2012) ....................................19, 21, 22

*In re Draw Another Circle*,
  602 B.R. 878 (Bankr. D. Del. 2019) ..........................................17, 19, 21, 22, 23

*Dunmore v. Chicago Title Ins. Co.*,
  400 S.W.3d 635 (Tex. App. – Dallas 2013, no pet.)........................................15, 16

*Elliott v. Foufas*,
  *867 F.2d 877 (5th Cir. 1989)* ..................................................................................7

*In re Est. of Conaway*,
2012 WL 524190 (Del. Ch. Feb. 15, 2012) ....................................................................13, 14

*In re Estate of Denman*,
362 S.W.3d 134 (Tex. App. – San Antonio 2011, no pet.).......................................................9

*Feeley v. NHAOCG, LLC*,
62 A.3d 649 (Del. Ch. 2012).................................................................................................14

*Gulf Guaranty Life Ins. Co. v. Conn. Gen. Life Ins. Co.*,
304 F.3d 476 (5th Cir. 2002) ..................................................................................................1

*Jones v. Colorado Cas. Ins. Co.*,
CV 12-1968-PHX-JAT, 2013 WL 4759260 (D. Ariz. Sept. 4, 2013) ...................................20

*Keytrade USA, Inc. v. AIN Temouchent M/V*,
404 F.3d 891 (5th Cir. 2005) ..................................................................................................1

*Lauter v. Citgo Petroleum Corp.*,
CV H-17-2028, 2018 WL 801601 (S.D. Tex. Feb. 8, 2018) .........................................9, 11, 12

*Murphey v. Honeycutt*,
199 S.W.2d 298........................................................................................................................9

*Murphy v. Campbell*,
964 S.W.2d 265 (Tex. 1997)..................................................................................................16

*Muzquiz v. Para Todos, Inc.*,
624 S.W.3d 263 (Tex. App. – El Paso 2021, pet. filed) ..........................................................9

*In re Oracle Corp. Derivative Litig.*,
CV 2017-0337 WL 3410745 (Del. Ch. June 22, 2020)...........................................................19

*Patton v. Simone*,
Civ. A. 90C-JA-29, 1992 WL 183064 (Del. Super. Ct. June 25, 1992) ............................18, 19

*R2 Invs. LDC v. Phillips*,
401 F.3d 638 (5th Cir. 2005)....................................................................................................7

*In re Rural Metro Corp.*,
88 A.3d 54 (Del. Ch. 2014).....................................................................................................17

*In re Rural Metro Corp. Stocholders Litig.*
(Del. Ch. 2014) ...............................................................................................................17, 18

*Russell-Conaway v. Frederick-Conaway*,
2012 WL 4478655, 54 A.3d 257 (Del. 2012) (unpublished)..................................................13

*Strebel v. Wimberly*,
371 S.W.3d 267 (Tex. App. 2012) (summarizing holding of *AON Properties, Inc. v. Riveraine Corp.*, 1999 WL 12739, at *23 (Tex. App. Jan. 14, 1999)) ........................14

*Tigani v. Tigani*,
2021 Del. Ch. LEXIS 60, 2021 WL 1197576 (March 30, 2021) ...........................................15

*In re TOCFHBI, Inc.*,
413 B.R. 523 (Bankr. N.D. Tex. 2009).................................................................................19

*In re USDigital, Inc.*,
443 B.R. 22 (Bankr. D. Del. 2011) ......................................................................................18

*West Fork Advisors LLC v. SunGard Consulting Services, LLC*,
437 S.W.3d 917 (Tex. App.-Dallas 2014) ......................................................................17, 19

*Williams v. Cigna Financial Advisors, Inc.*,
56 F.3d 656 (5th Cir. 1995) ....................................................................................................1

*Young v. Liberty Mut. Group, Inc.*,
CV-12-2302-PHX-JAT, 2013 WL 840618 (D. Ariz. Mar. 6, 2013) .....................................20

**Statutes**

11 U.S.C. § 365(a) ........................................................................................................................10

11 U.S.C. § 365(g)(1) .............................................................................................................10, 11, 12

11 U.S.C. § 365 .............................................................................................................................10

Del. Code Ann. Tit. 6, § 17-107 .....................................................................................................13

Del. Code Ann. Tit. 6, § 17-303(b)(8)(o) .......................................................................................14

Del. Code Ann. Tit. 6, § 17-1101(d).............................................................................................13

Del. Code Ann. Tit. 6, § 17-1102 ...................................................................................................12

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................................................... *passim*

iv

**Other Authorities**

Michael T. Andrew, *Executory Contracts in Bankruptcy: Understanding*
    *"Rejection"*, 59 U.Colo.L.Rev. 845 (1988)..............................................................................11

Restatement (Second) of Torts § 876 (1979)...................................................................17, 18, 19

Restatement (Second) of Torts § 876, comment A. Under the Restatement ................................18

In the alternative to and contingent upon a denial by the Court of Defendants' Motion to Compel Arbitration (which the Court should not deny), Defendants move to dismiss the Fifth, Sixth, and Seventh Claims for Relief in Plaintiff's Amended Complaint for failure to state claims on which this Court could grant relief under Federal Rule of Civil Procedure 12(b)(6), as incorporated into this adversary proceeding through Rule 7012 of the Federal Rules of Bankruptcy Procedure. In filing this Motion to Dismiss, Defendants do not waive any rights to compel arbitration, as set forth in Defendants' Motion to Compel Arbitration.[2] Defendants show in support as follows:

## I.   BACKGROUND

### A.   The Bankruptcy and Rejection of Executory Contracts

1    Highland Capital Management, L.P. ("Plaintiff") filed a voluntary Chapter 11 bankruptcy petition ("Bankruptcy Petition") on October 16, 2019 ("Petition Date") in the United States Bankruptcy Court for the District of Delaware, and venue was subsequently transferred to this Court on December 4, 2019.[3]  On November 24, 2020, Plaintiff filed its Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (the "Plan") along with its Disclosure Statement, which the Court approved on November 24, 2020.[4]

2.    On January 11, 2021, Plaintiff filed its Second Notice of Executory Contracts and Unexpired Leases to be Assumed by the Plaintiff [then, Debtor] Pursuant to the Plan (the

---

[2] *Williams v. Cigna Financial Advisors, Inc.*, 56 F.3d 656 (5th Cir. 1995) (Defendant did not substantially invoke the judicial process and waive its right to arbitration despite removal of action to federal court, filing motion to dismiss, filing motion to stay proceedings, answering plaintiff's complaint, asserting counterclaim, and exchanging discovery); *Keytrade USA, Inc. v. AIN Temouchent M/V*, 404 F.3d 891 (5th Cir. 2005) (Arbitration not waived when defendant filed a 100-plus page motion for summary judgment and a concurrent motion to arbitrate); *Gulf Guaranty Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476 (5th Cir. 2002) (no waiver of arbitration right when the party seeking arbitration did no more than defend itself against the claims made against it).
[3] Order Transferring Venue, Case 19-12239-Css [Doc. 184].
[4] Case No. 19-34054-sgj11 [Doc. 1476]

1

"Assumption Notice").[5]  The Assumption Notice itemized seventy-one (71) executory contracts

to be assumed by the Plaintiff, notably including the Fourth Amended and Restated Agreement of

Limited Partnership of Highland Capital Management, L.P. (the "LPA").  However, on January

21, 2021, the Debtor entered a Withdrawal Notice, rejecting the LPA along with several other

executory contracts,[6] and confirmed on February 1, 2021, that it had withdrawn the LPA from its

list of assumed executory contracts.[7]  On February 22, 2021 (the "Rejection Date"), the Court

confirmed the Plan, causing the rejection of the LPA.[8]

### B.    The Limited Partnership Agreement

3.    James Dondero ("Jim Dondero") is the co-founder of Highland Capital (Plaintiff in

this Adversary Proceeding), and served as its President and CEO until January 9, 2020.[9]  The

Dugaboy Family Trust ("Dugaboy") is one of Debtor's Class A limited partners and holds the

majority of the Debtor's Class A limited partnership interests.  LPA, Exhibit A.  Jim Dondero's

sister Nancy Dondero serves as the Dugaboy Family Trustee.[10]  Jim Dondero is a lifetime

beneficiary of Dugaboy.[11]

4.    Dugaboy's explicit authorization to approve compensation for Jim Dondero - and

thus bind the Partnership - comes specifically from the LPA in § 3.10(a), which provides in

pertinent part:

> (a)    <u>Compensation</u>.    The *General Partner* and any *Affiliate* of the General
> Partner shall receive no compensation from the Partnership for services rendered

---

[5] Case 19-34054-sgj11 [Doc. 1719].
[6] Case 19-34054-sgj11 [Doc. 1791, Schedule A].
[7] Case 19-34054-sgj11 [Doc. 1871].
[8] Case 19-34054-sgj11 [Doc. 1943].
[9] Am. Compl. ¶ 11, Adv. No. 21-03003 [Doc. 79]; Am. Compl. ¶ 12, Adv. No. 21-03007 [Doc. 63]; Am. Compl. ¶ 12, Adv. No. 21-03006 [Doc. 68]; Am. Compl. ¶ 12, Adv. No. 21-03005 [Doc. 63].
[10] Am. Compl. ¶ 13, Adv. No. 21-03003 [Doc. 79]; Am. Compl. ¶ 14, Adv. No. 21-03007 [Doc. 63]; Am. Compl. ¶ 14, Adv. No. 21-03006 [Doc. 68]; Am. Compl. ¶ 14, Adv. No. 21-03005 [Doc. 63].
[11] Am. Compl. ¶ 12, Adv. No. 21-03003 [Doc. 79]; Am. Compl. ¶ 13, Adv. No. 21-03007 [Doc. 63]; Am. Compl. ¶ 13, Adv. No. 21-03006 [Doc. 68]; Am. Compl. ¶ 13, Adv. No. 21-03005 [Doc. 63].

2

pursuant to this Agreement or any other agreements *unless approved by a Majority Interest;* LPA § 3.10(a) (emphasis added).

The LPA defines relevant actors in the Compensation provision as follows:

"*'Majority Interest'* means the owners of more than fifty percent (50%) of the Percentage Interests of Class A Limited Partners."  LPA § 2.1, p.4.

"*'Class A Limited Partners'* means those Partners holding a Class A Limited Partnership Interest, as shown on Exhibit A."  LPA § 2.1, p.2.

**Exhibit A** reflects "The Dugaboy Investment Trust" as a Class A Limited Partner owning 74.4426% of the Class A Limited Partnership Interests.  LPA, Exhibit A, line 5.[12]

Based on the Compensation provision and definitions, Dugaboy clearly had the right to approve compensation for the General Partner and its Affiliates.  The General Partner entitled to compensation here is Strand Advisors, Inc.  The LPA Preamble states in pertinent part:

"This [LPA] is entered…by and among Strand Advisors, Inc., a Delaware Corporation (*"Strand"*), as General Partner, the Limited Partners party hereto, and any Person hereinafter admitted as a Limited Partner.  LPA Preamble, p.1.

The LPA goes on to articulate Affiliates (of Strand):

"*'Affiliate'* means any Person that directly or indirectly controls, is controlled by, or is under common control with the Person in question.  As used in this definition, the term *'control'* means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through ownership of voting securities, by contract or otherwise."  LPA § 2.1, p.2.

"*'Person'* means an individual or a corporation, partnership, trust, estate, unincorporated organization, association, or other entity."  LPA § 2.1, p.5.

It is undisputed that Jim Dondero was an Affiliate of Strand under the LPA's definition.  It is also undisputed that he controlled Highland Capital Real Estate Partners ("HCRE"), Nexpoint Advisors, L.P. ("Nexpoint"), and Highland Capital Management Services, Inc. ("HCMS").[13]

Thus, Jim Dondero was entitled to compensation approved by Dugaboy pursuant to the LPA.

---

[12] See attached, LPA Exhibit A.
[13] Am. Compl. ¶ 2, Adv. No. 21-03007 [Doc. 63]; Am. Compl. ¶ 2, Adv. No. 21-03006 [Doc. 68]; Am. Compl. ¶ 2, Adv. No. 21-03005 [Doc. 63].

CORE/3522697.0002/169121350.1

C.    **The Promissory Notes**

5.    Over the last several years, multiple promissory notes were executed in favor of the Plaintiff to different entities and individuals, which obligations became subject to potential forgiveness as compensation for Jim Dondero that, under the LPA, Dugaboy was charged with approving:

Notes to Jim Dondero (the "Dondero Notes"):

    1.    A note for $3,825,000, executed on February 2, 2018, payable on demand.
    2.    A note for $2,500,000, executed on August 1, 2018, payable on demand.
    3.    A note for $2,500,000, executed on August 13, 2018, payable on demand.[14]

Notes to HCRE (the "HCRE Notes"):

    1.    A note for $100,000, executed on November 27, 2013, payable on demand.
    2.    A note for $2,500,000, executed on October 12, 2017, payable on demand.
    3.    A note for $750,000, executed on October 15, 2018, payable on demand.
    4.    A note for $900,000, executed on September 25, 2019, payable on demand.
    5.    A term note for $6,059,831, executed on May 31, 2017, payable in thirty (30) equal annual installment payments, each due on the 31st day of December each calendar year.[15]

Notes to HCMS (the "HCMS Notes"):

    1.    A note for $150,000, executed on March 28, 2018, payable on demand.
    2.    A note for $200,000, executed on June 25, 2018, payable on demand.
    3.    A note for $400,000, executed on May 29, 2019, payable on demand.
    4.    A note for $150,000, executed on June 26, 2019, payable on demand.[16]

Note to Nexpoint (the "Nexpoint Note"):

    1.    A term note for $30,746,812.33, executed on May 31, 2017, payable in thirty (30) equal annual installment payments, each due on the 31st day of December each calendar year.[17]

---

[14] Am. Compl. ¶¶ 20-22, Adv. No. 21-03003, Case No. 19-34054-sgj11 [Doc. 79].
[15] Am. Compl. ¶¶ 21-24, Adv. No. 21-03007, Case No. 19-34054-sgj11 [Doc. 63]; According to its Amended Complaint, Plaintiff alleges in ¶ 63 that it has suffered damages under the note "in the amount of at least $5,012,260.96, as of December 11, 2020," but in ¶ 64 that it has suffered damages "in the amount of at least $6,145,466.84 as of January 8, 2021, plus an amount equal to all accrued but unpaid interest from that date..."
[16] Am. Compl. ¶¶ 21-24, Adv. No. 21-03006, Case No. 19-34054-sgj11 [Doc. 68].
[17] Am. Compl. ¶ 21, Adv. No. 21-03005, Case No. 19-34054-sgj11 [Doc. 63]; Plaintiff alleges in ¶ 31 that "as of January 15, 2021, the total outstanding principal and accrued but unpaid interest due under the Note was $23,071,195.03," and claims the same amount as damages in ¶ 48.

4

6.      Jim Dondero entered into agreement (the "Subsequent Agreements," or as Plaintiff refers to them, the "Alleged Agreements") with Nancy Dondero (acting for Dugaboy as its Trustee) that Plaintiff would not demand collection of the Notes unless events had occurred that made fulfillment of conditions subsequent impossible.[18]   However, annual term loan payments and annual interest payments on the demand notes were to be (and were) made.[19]

7.      On December 3, 2020, after the bankruptcy Petition Date, Plaintiff demanded payment from Jim Dondero, HCRE, and HCMS on their respective demand notes due by December 11, 2020.[20]  On January 7, 2021, Plaintiff made a demand on the Nexpoint term note, claiming that "[t]he amount due and payable on the Note as of January 8, 2021 is $24,471,804.98," and a demand on the HCRE term note, claiming that "[t]he amount due and payable on the Note as of January 8, 2021 is $6,145,466.84."[21] Plaintiff has refused to recognize the Subsequent Agreement, calling it a "fiction."[22]   Other than annual term and interest payments and some voluntary prepayments on the term notes, Defendants have not paid the Notes.[23]

---

[18] Am. Answer ¶ 40, Adv. No. 21-03003 [Doc. 16]; Am. Answer ¶ 58, Adv. No. 21-03007 [Doc. 34]; Am. Answer ¶ 56, Adv. No. 21-03006 [Doc. 34]; Am. Answer ¶ 42, Adv. No. 21-03005 [Doc. 50].

[19] *E.g.,* Am. Compl. ¶ 21,27, Adv. No. 21-03005 [Doc. 63], showing the original principal of the note being $30,746,812.33, but Plaintiff only demanding $24,471,804.98 in its demand letter; *E.g.,* Am. Compl. ¶ 37,63,64, Adv. No. 21-03007 [Doc. 63], showing the original principal of the note being $6,059,831, but Plaintiff alleging it was damaged in the amount of at least $5,012,260.96 as of December 11, 2020, but also in the next paragraph inconsistently alleging it was damaged in the amount of at least $6,145,466.84.

[20] Am. Compl. ¶ 26, Adv. No. 21-03003 [Doc. 79]; Am. Compl. ¶ 28, Adv. No. 21-03007 [Doc. 63]; Am. Compl. ¶ 28, Adv. No. 21-03006 [Doc. 68].

[21] Am. Compl. ¶ 27, Adv. No. 21-03005 [Doc. 63]; Am. Compl. ¶43, Adv. No. 21-03007 [Doc. 63].

[22] Am. Compl. ¶ 3, Adv. No. 21-03003 [Doc. 79]; Am. Compl. ¶ 3, Adv. No. 21-03007 [Doc. 63]; Am. Compl. ¶ 3, Adv. No. 21-03006 [Doc. 68]; Am. Compl. ¶ 3, Adv. No. 21-03005 [Doc. 63].

[23] With respect to the Nexpoint term loans, due to a mistake, the 2020 end-of-year payment was late and the notes should be deemed current, Am. Ans. ¶ 40,41, Adv. Pro. 21-03005 [Doc. 50]; Am. Compl. ¶ 28, Adv. No. 21-03005 [Doc. 55-2], acknowledging payment of $1,406,111.92.

D.      **The Adversary Proceedings**

8.      On January 22, 2021, Plaintiff initiated Adversary Proceedings against Jim Dondero, HCRE, HCMS, and Nexpoint for breach of contract and turnover of property.[24]  On August 17, 2021, Plaintiff filed Amended Complaints against each Defendant alleging additional claims against Jim Dondero and new claims against Dugaboy and Nancy Dondero. Defendants each filed Amended Answers asserting several affirmative defenses, including that the Subsequent Agreements preclude the respective claims.[25]

9.      In the Fifth Claim of each Amended Complaint,[26] Plaintiff asks the Court to declare (a) that limited partners, including but not limited to Dugaboy, have no right or authority to take part in the control (within the meaning of the Delaware Act) of the Partnership's business, transact any business in the Partnership's name, or have the power to sign documents for or otherwise bind the Partnership other than as specifically provided in the LPA, (b) that neither Dugaboy nor Nancy Dondero was  authorized under the LPA to enter into the Subsequent Agreement on behalf of the Partnership, (c) that neither Dugaboy nor Nancy Dondero otherwise had the right or authority to enter into the Subsequent Agreement on behalf of the Partnership, and (d) the Subsequent Agreement is null and void.[27]

10.     In the Sixth Claim of each Amended Complaint,[28] Plaintiff alleges that if Dugaboy, as a limited partner under the LPA, or Nancy Dondero, as the representative of Dugaboy, had the

---

[24] Am. Compl. ¶ 33, Adv. No. 21-03003 [Doc. 79]; Am. Compl. ¶ 47, Adv. No. 21-03007 [Doc. 63]; Am. Compl. ¶ 45, Adv. No. 21-03006 [Doc. 68]; Am. Compl. ¶ 33, Adv. No. 21-03005 [Doc. 63].
[25] Am. Answer ¶ 40, Adv. No. 21-03003 [Doc. 16]; Am. Answer ¶ 58, Adv. No. 21-03007 [Doc. 34]; Am. Answer ¶ 56, Adv. No. 21-03006 [Doc. 34]; Am. Answer ¶ 42, Adv. No. 21-03005 [Doc. 50].
[26] Nancy Dondero is a Defendant on Counts V, VI, and VII in Adv. No. 21-03005, Adv. No. 21-3006, and Adv. No. 21-3007.  Nancy Dondero is a Defendant only on Count VII in Adv. No. 21-03003.
[27] Am. Compl. ¶ 72(a-d), Adv. No. 21-03003 [Doc. 79]; Am. Compl. ¶ 86(a-d), Adv. No. 21-03007 [Doc. 63], Plaintiff alleges against Dugaboy and Nancy Dondero; Am. Compl. ¶ 84(a-d), Adv. No. 21-03006 [Doc. 68]; Am. Compl. ¶ 70(a-d), Adv. No. 21-03005 [Doc. 63].
[28] *See* note 26, *supra.*

authority to enter into the Subsequent Agreement on behalf of [Plaintiff], then Dugaboy incurred a fiduciary duty of care, and breached said duty by entering into the Subsequent Agreement.[29]

11.     In the Seventh Claim of each Amended Complaint, Plaintiff alleges that Jim and Nancy Dondero were aware that Dugaboy would have fiduciary duties owed to the Plaintiff if acting to bind the Plaintiff per the authorization in the LPA, and aided and abetted Dugaboy's breach of its fiduciary duties by knowingly participating in the authorization of the Subsequent Agreement.[30]

## II.   **STANDARD OF REVIEW**

12.     An asserted cause of action must be dismissed when the complaint fails to state a claim. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the complaint must meet two criteria: (1) it must assert a plausible claim, and (2) it must set forth sufficient factual allegations to support the claim. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, at 1949-50 (citing *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007)). Thus, either a "lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory" requires dismissal. Id. The plaintiff must allege specific facts and not conclusory allegations. *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989). A court may not strain to find inferences favorable to the plaintiff or accept conclusory allegations, unwarranted deduction, or legal conclusion. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005).

13.     To satisfy *Twombly* and Iqbal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*, *Twombly,* at 570. A claim has facial plausibility when the plaintiff pleads enough factual content that allows the court

---

[29] Am. Compl. ¶ 75, Adv. No. 21-03003 [Doc. 79]; Am. Compl. ¶ 89, Adv. No. 21-03007 [Doc. 63]; Am. Compl. ¶ 87, Adv. No. 21-03006 [Doc. 68]; Am. Compl. ¶ 73, Adv. No. 21-03005 [Doc. 63].
[30] Am. Compl. ¶ 79, Adv. No. 21-03003 [Doc. 79]; Am. Compl. ¶ 93, Adv. No. 21-03007 [Doc. 63]; Am. Compl. ¶ 91, Adv. No. 21-03006 [Doc. 68]; Am. Compl. ¶ 77, Adv. No. 21-03005 [Doc. 63].

to draw the reasonable inference that the defendant is liable under the alleged claim. *Id*. at 556.

Even if a court decides that the factual allegations are entitled to an assumption of truth, however,

the facts must also "plausibly suggest an entitlement to relief." *Id., Iqbal,* at 1951.

## III. ARGUMENTS AND AUTHORITIES

### A. Plaintiff's Fifth Claim for Declaratory Relief Under the LPA Should Be Dismissed for Two Reasons.

#### 1. Plaintiff's Fifth Claim Fails Because the Terms of the LPA are so Clear on their Face That There is No Actual Controversy between Parties.

14. Plaintiff's claim presents no "actual controversy" because the provisions of the

LPA clearly allow Dugaboy to bind the Partnership by approving compensation and there is no

controversy that could require a declaration by this Court.

15. Plaintiff argues that Dugaboy was not authorized to enter into the Subsequent

Agreement regarding Jim Dondero's compensation, nor was it authorized to bind the Partnership.[31]

Plaintiff further attached the LPA as "Exhibit 5" to its Amended Complaints and referenced this

Court to § 4.2, which states:

> Management of Business. No Limited Partner shall take part in the control (within the meaning of the Delaware Act) of the Partnership's business, transact any business in the Partnership's name, or have the power to sign documents for or otherwise bind the Partnership *other than as specifically set forth in this Agreement*.[32] (emphasis added).

16. Contrary to Plaintiff's argument, the LPA explicitly authorizes Dugaboy as the

Majority Interest to approve compensation for Jim Dondero as previously articulated in this

Motion. Approving compensation inherently binds the Partnership in that it exchanges money on

behalf of the Partnership for services rendered. Because it is so expressly provided for in the LPA,

---

[31] *Id.*

[32] Am. Compl. ¶ 43, Adv. No. 21-03003 [Doc. 79]; Am. Compl. ¶ 55, Adv. No. 21-03007 [Doc. 63]; Am. Compl. ¶ 53, Adv. No. 21-03006 [Doc. 68]; Am. Compl. ¶ 27, Adv. No. 21-03005 [Doc. 63].

Plaintiff's contention that Dugaboy could not act to bind the Partnership through compensation agreements amounts to Plaintiff's misinterpretation of the LPA as opposed to an "actual controversy" in need of declaratory relief. This claim is nothing more than Plaintiff's attempt at an end-around to avoid proving the merits of its breach of fiduciary duty claims and essentially asks this Court for an advisory opinion to help Plaintiff do so. Under *Twombly*, Plaintiff's claim for declaratory relief should be dismissed pursuant to Rule 12(b)(6).

### 2. Debtor Lacks Standing to Assert a Claim for Declaratory Relief Based Upon an Executory Contract It Rejected.

17.     There is no authority for "allowing a debtor's estate or a successor-in-interest such as the [creditor's committee or litigation trustee] to pursue claims for post-petition breaches of a rejected contract. Because rejection is an affirmative declaration by the debtor that the estate will not take on the obligations of a prepetition contract made by the debtor, [Plaintiff-Debtor's] rejection of the [LPA] not only relieved the estate of its post-petition performance obligations, but also relieved the estate of its ability to assert claims for post-petition breaches thereof." *Lauter v. Citgo Petroleum Corp.*, CV H-17-2028, 2018 WL 801601, at *15 (S.D. Tex. Feb. 8, 2018). As explained below, as a result, not only does this preclude Debtor's claims for breach of fiduciary duty (see sections B.2., C.5. *infra*), it also precludes Debtor's attempt to obtain declaratory relief.

18.     Plaintiff seeks declaratory relief against Dugaboy and Nancy Dondero to determine if either of them were authorized to enter into the Subsequent Agreement under the LPA.[33] Although most causes of action accrue when an injury results from a wrongful act, a cause of action for declaratory relief differs in that it does not accrue until there is an actual controversy between the parties. *In re Estate of Denman*, 362 S.W.3d 134, 144 (Tex. App. -- San Antonio

---

[33] Am. Compl. ¶ 72(a-d), Adv. No. 21-03003 [Doc. 79]; Am. Compl. ¶ 86(a-d), Adv. No. 21-03007 [Doc. 63]; Am. Compl. ¶ 84(a-d), Adv. No. 21-03006 [Doc. 68]; Am. Compl. ¶ 70(a-d), Adv. No. 21-03005 [Doc. 63].

2011, no pet.); *Murphey v. Honeycutt*, 199 S.W.2d 298, 299 (holding that declaratory judgment action accrued in a will construction case at the time when an heir committed an act indicating she was operating against the will, not when the will was executed years prior to the heir's act); *Muzquiz v. Para Todos, Inc.*, 624 S.W.3d 263, 278 (Tex. App. – El Paso 2021, pet. filed) (holding that in a lease dispute, the actual controversy did not arise-- and the claim did not accrue- when the lease was entered into by the parties, but rather when plaintiff challenged the lease terms at a later date).

19.     Here, Plaintiff's declaratory relief claim accrued (if at all) when Jim Dondero asserted the Subsequent Agreement as an affirmative defense.  Plaintiff alleges that the actual controversy here is whether or not Dugaboy or Nancy Dondero had authority to enter into the Subsequent Agreement under the rejected LPA.  Plaintiff specifically pleads that "[a] bona fide, actual, present dispute exists between the [Plaintiff] and Dugaboy concerning whether Dugaboy was authorized to enter into the Alleged Agreement on the [Plaintiff]'s behalf….[and a] judgment declaring the parties' respective rights and obligations will resolve their dispute."[34]  Plaintiff did not allege anywhere in its Original Complaint that a dispute regarding Dugaboy's authority to enter the  Subsequent Agreement required declaratory relief.  Only after Defendants filed their Amended Answers did Plaintiff seek such relief in its Amended Complaint.[35]  Therefore, this cause of action for declaratory relief accrued when Plaintiff received Defendant's Amended Answers after the bankruptcy began, as that is when facts came into existence that created an actual controversy under the LPA.

20.     Section 365 of Title 11 of the United States Code (the "Bankruptcy Code") governs the inclusion and exclusion of executory contracts in bankruptcy.  Section 365 vests the power to

---

[34] *Id.*
[35] *Id.*

reject or assume any of the Debtor's executory contracts in the trustee, subject to the court's approval. 11 U.S.C. § 365(a). A debtor's rejection of an executory contract constitutes a breach of such contract immediately before the date of the filing of the [bankruptcy] petition. 11 U.S.C. § 365(g)(1). In this case, Plaintiff's act of rejection resulted in a material breach of the LPA that relates back to October 15, 2019 (the "Breach Date") pursuant to the Bankruptcy Code. *See* 11 U.S.C. § 365(g)(1).

21. "Rejection is an affirmative declaration that the estate will not take on the obligations of a pre-petition contract made by the debtor" and "places the obligation to perform outside of the bankruptcy administration." *Lauter*, at *13, citing *Matter of Austin Dev. Co*, 19 F.3d 1077, 1082-83 (5th Cir. 1994); *In re Continental Airlines*, 981 F.2d 1450, 1459 (5th Cir. 1993). "[R]ejection does not change the substantive rights of the parties to the contract, but merely means the bankruptcy estate itself will not become a party to it." *In re Alongi*, 272 B.R. 148, 153 (Bankr. D. Md. 2001) (citing M. Andrew, *Executory Contracts in Bankruptcy: Understanding "Rejection"*, 59 U.Colo.L.Rev. 845 (1988)). As noted above, rejection not only relieves the estate of post-[bankruptcy]petition performance obligations, but also of its ability to assert claims for post-petition breaches thereof. *Lauter,* at *15.

22. The court in *Lauter* looked to the reasoning of Fifth Circuit opinions examining the effects of plaintiffs rejecting executory contracts under § 365. In *In re Continental*, the court reasoned in part that, under § 365, "An agreement cannot 'exist' for one purpose yet take on a 'nonexistent' quality which works for the advantage of one party or the other" when a debtor-plaintiff sought to avoid paying airline pilots under an executory contract it rejected, attempting to treat the contract as terminated. *Id.* at 1460. Likewise, the court in *Matter of Austin* reasoned that a rejection of a lease under § 365 did not terminate the lease, but moved the rights of the parties

11

affected "outside of the bankruptcy court's realm because after rejection, the debtor's estate is no longer involved in the leasehold transaction." *Id.* at 1083.

23.     Following the Fifth Circuit's application of § 365 in cases such as *In re Continental* and *Matter of Austin*, the court in *Lauter* addressed the impact of a debtor-plaintiff's attempt to pursue post-petition claims against a defendant whose executory contract had been rejected. The court held that just as in any other contract dispute, a prior material breach by a counterparty relieved the aggrieved party of the duty to perform and deprived the breaching party of the ability to make claims for breach after its own breach. *Id.* at *12-13, 15.  After a thorough discussion of § 365, the court ultimately found that the plaintiff lacked standing to pursue claims resulting from a post-petition breach of an executory contract, holding that "the court has not found any authority allowing a debtor's estate . . . to pursue claims for post-petition breaches of a rejected contract." *Id.* at *15.

24.     Here, Plaintiff asks this Court to interpret and, in effect, determine a breach of the same LPA it rejected and breached prior to the bankruptcy petition date.  The LPA was rejected on February 22, 2021 and thus deemed materially breached on October 15, 2019 under § 365(g)(1). Because this cause of action accrued after both rejection and the relation-back breach provision of § 365, Plaintiff's Fifth Claim for declaratory relief amounts to a post-petition claim arising from a rejected executory contract, which the court in *Lauter* held a Debtor lacks standing to assert in a bankruptcy proceeding.  Therefore, this claim should be dismissed pursuant to *Twombly* and Rule 12(b)(6).

CORE/3522697.0002/169121350.1

**B.** **Plaintiff's Sixth Claim of Breach of Fiduciary Duty Against Dugaboy and Nancy Dondero Fails for Two Reasons.**

      **1.** **Dugaboy Owes No Fiduciary Duty to Plaintiff as a Consequence of Exercising Its Right to Approve Compensation.**

25.    Plaintiff alleges that "if Dugaboy, as a limited partner, had the authority to enter into the Alleged Agreement…then Dugaboy would owe the [Plaintiff] a fiduciary duty."[36] The LPA in this case is governed by the Delaware Revised Uniform Limited Partnership Act (the "DRULPA") except as specifically provided for in the LPA. LPA §§ 1.1,1.2; *see also* Del. Code Ann. Tit. 6, § 17-1102. The DRULPA allows partnership agreements to expand, restrict, or eliminate fiduciary and other legal or equitable duties, provided it may not eliminate the implied contractual duty of good faith and fair dealing. Del. Code Ann. Tit. 6, § 17-1101(d). The DRULPA also specifically permits a partnership agreement to provide the rules for how partners may transact with the partnership. Del. Code Ann. Tit. 6, § 17-107.

26.    In Delaware, a limited partner does not owe a fiduciary duty as a consequence of exercising a right of the limited partner under the partnership agreement. *Bond Purchase, L.L.C. v. Patriot Tax Credit Properties, L.P.*, 746 A.2d 842, 864 (Del. Ch. 1999); *In re Est. of Conaway*, 2012 WL 524190, at *3 (Del. Ch. Feb. 15, 2012), *aff'd sub nom. Russell-Conaway v. Frederick-Conaway*, 2012 WL 4478655, 54 A.3d 257 (Del. 2012) (unpublished).

27.    In *Bond Purchase*, a limited partner exercised its right under the limited partnership agreement to obtain records of the owners of the partnership for the purpose of making a tender offer for additional interests in the partnership. Although the other partners claimed this request for records was a breach of a fiduciary duty, the court held that "in the absence of any provision in the partnership agreement engrafting duties onto [the limited partner]," "[the limited partner]

---

[36] Am. Compl. ¶ 75, Adv. No. 21-03003 [Doc. 79]; Am. Compl. ¶ 89, Adv. No. 21-03007 [Doc. 63]; Am. Compl. ¶ 87, Adv. No. 21-03006 [Doc. 68]; Am. Compl. ¶ 73, Adv. No. 21-03005 [Doc. 63].

owes no fiduciary duties," and allowed the limited partner access to the records it sought under the partnership agreement. *Id.* at 864.

28.     In *In re Est. of Conaway*, a limited partner withheld consent to transfer another partner's interest as he was allowed to under the limited partnership agreement. The receiving party alleged a breach of the non-consenting limited partner's fiduciary duty. The court held that where the limited partner "merely exercised his contracted-for rights under the terms of the [limited partnership agreement]," the limited partner breached no fiduciary duty, assuming there even was one. *Id.* at *3.

29.     Just as the limited partners in *Bond Purchase* and *In re Est. of Conaway*, Dugaboy was merely exercising its right to approve compensation pursuant to the LPA when it entered into the Subsequent Agreement. LPA § 3.10(a); § 2.1. Therefore, Dugaboy owes no fiduciary duty to the Plaintiff as a consequence of simply exercising its right under the LPA. While a limited partner who takes on an active role in the management of the entity may thereby assume fiduciary duties, *Feeley v. NHAOCG, LLC,* 62 A.3d 649, 662 (Del. Ch. 2012) (citing cases); *Bond Purchase* at 863-64, merely engaging in actions delegated to the limited partner in the partnership agreement does not constitute participating in the control of a business so as to trigger the assumption of fiduciary duties. Del. Code Ann. Tit. 6, § 17-303(b)(8)(o).

30.     Texas has similarly held that "a limited partner does not participate in the control of the business" by taking certain actions listed in the statutes, and such "actions complained of by the plaintiff did not amount to the types of control that could give rise to a duty to the other limited partners." *Strebel v. Wimberly,* 371 S.W.3d 267, 280 (Tex. App. 2012) (summarizing holding of *AON Properties, Inc. v. Riveraine Corp.*, 1999 WL 12739, at *23 (Tex. App. Jan. 14, 1999)).

31.     Here, Dugaboy did not participate in the control of the business because it was taking actions explicitly extended to it in the LPA by approving compensation under § 3.10(a). LPA § 3.10(a); § 2.1.  Since the LPA explicitly gives Dugaboy the right to approve such compensation, and Dugaboy was not participating in the control of the business, Dugaboy does not owe a fiduciary duty to Plaintiff.  Dugaboy cannot breach a fiduciary duty it does not owe. Further, Nancy Dondero as Trustee owes no fiduciary duty to Plaintiff independently from what Dugaboy owes, as Dugaboy is her principal.  Like Dugaboy, Nancy Dondero cannot breach a fiduciary duty she does not owe.  Under *Twombly*, Plaintiff's claim for breach of fiduciary duty against Dugaboy and Nancy Dondero should be dismissed pursuant to Rule 12(b)(6).

### 2.     Nancy Dondero Owes No Fiduciary Duty to Debtor.

32.     Under Delaware law, a trustee's fiduciary duties of care and loyalty flow to the trust and the beneficiar(ies) of the trust. *Tigani v. Tigani*, 2021 Del. Ch. LEXIS 60, *1, 2021 WL 1197576 (March 30, 2021). A trustee is prohibited from considering her own interests and "all consideration of the interests of third persons." *Id*. at * 38.

33.     Plaintiff claims that if Dugaboy had the authority to enter into the Subsequent Agreement, then Ms. Dondero would then somehow owe a fiduciary duty directly to Plaintiff.  The Amended Complaint does not allege any facts as to why or how such a fiduciary duty would appear, and there is no legal authority to support such a conclusion. As discussed above, not even Dugaboy owed a fiduciary duty to Plaintiff in determining compensation, as Dugaboy was expressly authorized to do under § 3.10(a) of the LPA. Nancy Dondero, individually, is even further removed from owing any duty to Plaintiff, much less a fiduciary duty.  Plaintiff cannot create a legal duty simply by claiming one exists, and its breach of fiduciary duty claim against Nancy Dondero should be dismissed under *Twombly* and Rule 12(b)(6).

3. **Debtor Lacks Standing to Assert a Claim for Breach of Fiduciary Duty Based Upon an Executory Contract It Rejected.**

34. Plaintiff's Sixth Claim is also barred for the same reasons that discussed in Section A.2 *supra*, and similarly relies on the fact that this cause of action accrued after the LPA was breached on October 15, 2019. In this case, Plaintiff suffered no legal injury – and no cause of action accrued - until the notes were not paid on demand by December 11, 2020.

35. Generally, "a cause of action accrues…when facts come into existence that authorize a claimant to seek judicial remedy." *Dunmore v. Chicago Title Ins. Co.*, 400 S.W.3d 635, 640 (Tex. App. – Dallas 2013, no pet.) (citing cases). "Breach of fiduciary duty claims generally accrue when the claimant knows or in the exercise of ordinary diligence should know of the wrongful act *and* resulting injury." *Dunmore,* at 641 (emphasis added). Further, "[t]he general rule governing when a claim accrues…is the 'legal injury rule,' which provides that a claim accrues 'when a wrongful act causes some legal injury, even if that fact of injury is not discovered until later, and even if all damages have not yet occurred.'" *Id.* (citing *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997)). "[A] legal injury [is] an injury giving cause of action by reason of its being an invasion of a Plaintiff's right…be the damage however slight." *Murphy*, at 270. Although the discussion of when a claim accrues in Texas generally involves application of the discovery rule (which is not applicable to these facts), the concept of "legal injury" is still the cornerstone of an accrual analysis.

36. Here, Plaintiff alleges that Dugaboy and Nancy Dondero breached a fiduciary duty when it entered into the Subsequent Agreement.[37] The alleged wrongful act was the Subsequent Agreement itself which Plaintiff alleges breached a fiduciary duty. However, Plaintiff suffered no

---

[37] Am. Compl. ¶ 75, Adv. No. 21-03003 [Doc. 79]; Am. Compl. ¶ 89, Adv. No. 21-03007 [Doc. 63]; Am. Compl. ¶ 87, Adv. No. 21-03006 [Doc. 68]; Am. Compl. ¶ 73, Adv. No. 21-03005 [Doc. 63].

CORE/3522697.0002/169121350.1

legal injury from the Subsequent Agreement until Defendant did not pay the Notes when demanded (if it even suffered one at all). The Subsequent Agreement simply made the Notes potentially forgivable upon conditions subsequent, which could not have impacted the alleged value of the Notes until the conditions occurred. As a result, the cause of action did not accrue until December 11, 2020, after the Petition Date. Debtor's rejection of the LPA, the alleged source of the fiduciary duties allegedly breached,[38] therefore bars pursuit of the Plaintiff's Sixth Claim for the same reasons set forth in Section A.2 *supra*.

  **C.**  **Plaintiff's Seventh Claim of Aiding and Abetting Breach of Fiduciary Duty against Jim and Nancy Dondero Fails for Several Reasons.**

    1.  **Neither Jim nor Nancy Dondero could have Aided and Abetted a Breach of Fiduciary Duty because Dugaboy did Not Owe a Fiduciary Duty to Plaintiff**.

  37.  Plaintiff claims that Jim and Nancy Dondero aided and abetted Dugaboy's alleged breach of fiduciary duty by entering into the Subsequent Agreement. However, aiding and abetting is a fundamentally dependent claim that can only succeed if there is a valid underlying breach of fiduciary duty claim. *In re Draw Another Circle*, 602 B.R. 878, 904 (Bankr. D. Del. 2019) (citing Restatement (Second) of Torts § 876 for the proposition "the derivative nature of an aiding and abetting claim will exist only with the success of the breach of fiduciary duty claim"); *West Fork Advisors LLC v. SunGard Consulting Services, LLC*, 437 S.W.3d 917, 921 (Tex. App.-Dallas 2014) (citing Restatement (Second) of Torts § 876(b) (1979)). As previously discussed in Section B.1., Dugaboy did not owe any fiduciary duty to Plaintiff that could have been breached. Therefore, Plaintiff's derivative claim of aiding and abetting against both Jim and Nancy Dondero is legally impossible and should be dismissed under *Twombly* and Rule 12(b)(6).

---

[38] Am. Compl. ¶ 72(a-d), Adv. No. 21-03003 [Doc. 79]; Am. Compl. ¶ 86(a-d), Adv. No. 21-03007 [Doc. 63]; Am. Compl. ¶ 84(a-d), Adv. No. 21-03006 [Doc. 68]; Am. Compl. ¶ 70(a-d), Adv. No. 21-03005 [Doc. 63].

## 2. Nancy Dondero Cannot Aid and Abet Herself as Dugaboy Trustee Because Aiding and Abetting Requires More Than One Actor.

38.     Even if Dugaboy owed and breached a fiduciary duty to Plaintiff (which it did not),
it is legally impossible for Nancy Dondero to have aided and abetted Dugaboy's alleged breach of
fiduciary duty by authorizing the Subsequent Agreement as she was acting as Dugaboy in her
trustee status.   Because there are limited cases on point, an analysis under the Restatement
(Second) of Torts § 876 (1979) is compelling because Delaware courts routinely look to the
Restatement to fill lacunae in the law.  *In re Rural Metro Corp.*, 88 A.3d 54, 98 (Del. Ch. 2014),
decision clarified on denial of reargument sub nom. *In re Rural Metro Corp. Stocholders Litig.*
(Del. Ch. 2014) (applying the Restatement to an aiding and abetting breach of fiduciary duty
analysis).  "The Delaware Supreme Court often relies on the Restatement (Second) of Torts." *Id.*
at 98.  Comparison to cases in other jurisdictions construing law similar to Delaware law is also
instructive.

39.     The Restatement (Second) § 876 provides: "For harm resulting to a third person
from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert
with *the other* or pursuant to a common design with him, or (b) knows that *the other's* conduct
constitutes a breach of duty and gives substantial assistance or encouragement to the other so to
conduct himself, or (c) gives substantial assistance to *the other* in accomplishing a tortious result
and his own conduct, separately considered, constitutes a breach of duty to the third person."
Restatement (Second) of Torts § 876 (1979), adopted in Delaware by *Patton v. Simone*, Civ. A.
90C-JA-29, 1992 WL 183064 (Del. Super. Ct. June 25, 1992) (emphasis added).   Under the
Restatement (Second), people act "in concert" with each other when they act "in accordance with
an agreement to cooperate in a particular line of conduct or to accomplish a particular result."
Restatement (Second) of Torts § 876, comment A.   Under the Restatement (Second), Nancy

Dondero could not have conceivably acted "in accordance with an agreement" with herself in her Trustee capacity, as she is a singular individual.

40.     Delaware has not directly addressed the issue of whether one can aid and abet one's self, but it has applied the Restatement (Second) when analyzing aiding and abetting a breach of fiduciary duty claims, which requires a plaintiff to prove: (1) the existence of a fiduciary relationship, (2) breach of the fiduciary's duty, (3) defendant, who is not a fiduciary, knowingly participated in the breach, and (4) damages to the plaintiff as the result of the <u>concerted action</u> of the fiduciary and the non-fiduciary.  *In re USDigital, Inc.*, 443 B.R. 22, 46 (Bankr. D. Del. 2011) (citing elements of aiding and abetting breach of fiduciary duty in Delaware and holding that a director defendant cannot have aided and abetted the same fiduciary duty he allegedly breached in a previous count); *In re Draw,* at 904 (applying Restatement (Second) to the knowing participation element); *Patton,* at *8 (applying Restatement (Second) to aiding and abetting analysis); *In re Oracle Corp. Derivative Litig.*, 2020 WL 3410745, at *11 (Del. Ch. June 22, 2020) (applying the Restatement (Second) to knowing participation in aiding and abetting analysis and acknowledging that § 876 has been cited with approval in Delaware in ).  Again, because Plaintiff is alleging that Nancy Dondero aided and abetted Dugaboy (which was acting through Nancy Dondero), the requirement of a second actor is not met because Nancy Dondero cannot act in concert with herself.

41.     Analogously, officers and agents cannot aid and abet their principal or each other in the commission of a tort.  *Cornell Glasgow, LLC v La Grange Props., LLC*, 2012 WL 2106945, at *11 (Del. Super. Ct. June 6, 2012); *Amaysing Techs. Corp. v. Cyberair Communications, Inc.,* 2005 WL 578972, at *7 (Del. Ch. Mar. 3, 2005) ("It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy.  A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts

of the corporation."). Application of this law to the present circumstances further compels the conclusion that Nancy Dondero cannot aid and abet herself. Texas also has looked to the Restatement (Second) of Torts § 876 for guidance regarding its aiding and abetting doctrine, which states that "[i]t is settled as the law of [the State of Texas] that where a <u>third party</u> knowingly participates in the breach of duty of a fiduciary, such <u>third party</u> becomes a joint tortfeasor with [that] fiduciary and is liable as such." *In re TOCFHBI, Inc.*, 413 B.R. 523, 534 (Bankr. N.D. Tex. 2009) (citing *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565, 574, 160 S.W.2d (1942)) (emphasis added, citing elements); *W. Fork Advisors, LLC v. SunGuard Consulting Services, LLC*, 437 S.W.3d 917, 921 (Tex. App. – Dallas 2014, pet. denied) (looking to Restatement (Second) regarding aiding and abetting analysis). Although also having sparse law regarding whether one can aid and abet one's own self, Texas law still requires a third party in order to prove aiding and abetting a breach of fiduciary duty. For the same reasons mentioned above, Nancy simply cannot aid and abet her own actions as Dugaboy Trustee.

42. Arizona courts have more directly held that under the Restatement (Second), "when [Plaintiffs] fail to allege [agent] took any actions in [their] individual capacity 'in concert' with the actions giving rise to the breach of fiduciary duty claim against [insurance company], [plaintiff's] aiding and abetting claim against [agent] will be dismissed." *Young v. Liberty Mut. Group, Inc.,* CV-12-2302-PHX-JAT, 2013 WL 840618, at *4 (D. Ariz. Mar. 6, 2013).[39] In *Young,* the Court reasoned that "…it does not follow that [agent] must have committed the separate tort of aiding and abetting merely because he was the agent through which [insurance company] breached its duty." *Id.* at *4. The Court dismissed the claim on the agent's 12(b)(6) motion.

---

[39] In *Young,* Plaintiff sued both Liberty Mutual for breach of fiduciary duty, and her personal insurance agent for aiding and abetting said breach. Because Plaintiff failed to allege [agent] took any actions in his individual capacity "in concert" with the actions giving rise to Plaintiff's claim against Liberty Mutual, the aiding and abetting claim was dismissed upon 12(b)(6) motion.

Further, in *Jones v. Colorado Cas. Ins. Co.*, the same Court dismissed a similar claim upon another insurance agent's 12(b)(6) motion, agreeing with the agent's assertion that "one cannot aid and abet one's self."  *Jones v. Colorado Cas. Ins. Co.*, CV 12-1968-PHX-JAT, 2013 WL 4759260, at *3 (D. Ariz. Sept. 4, 2013) (dismissing a claim against an insurance agent for aiding and abetting the insurance company's breach of fiduciary duty, determining that in order for there to be harm to a third person, there must be at least two tortfeasors).  Just as the insurance agents could not aid and abet themselves as representatives for the insurance companies, Nancy Dondero could not have aided and abetted herself in her capacity as Dugaboy Trustee.

43.     Connecticut takes a similar approach in holding that aiding and abetting means to help or compel *another* to act, and that an alleged tortfeasor cannot aid or abet himself, and doing so would yield "circular results."  *Bolick v. Alea Group Holdings, Ltd.,* 278 F. Supp. 2d 278, 282 (D. Conn. 2003) (dismissing aiding and abetting claim).[40] Because Nancy Dondero was acting as Dugaboy in the conduct about which Debtoer complains, she is not a "third party" to an act. It is impossible for Nancy Dondero to aid and abet her own self - as most distinctly stated in *Cornell Glasgow, LLC* and *Bolick* - because aiding and abetting requires the concerted action and scienter of more than one person.  Therefore, Plaintiff's Seventh Claim should be dismissed under *Twombly* and Rule 12(b)(6).

> **3.     Plaintiff does Not Plead the Sufficient Scienter Requirement for Aiding and Abetting in its Amended Complaint for Either Jim or Nancy Dondero.**

44.     In addition to the above infirmities, Plaintiff fails to allege the necessary scienter required to show aiding and abetting for both Jim and Nancy Dondero.   Delaware courts

---

[40] *Bolick* addressed an employment discrimination case where Plaintiff sued her supervisor for both harassment and aiding and abetting that same harassment.  The Court held that to hold the supervisor liable for his wrongful behavior and also aiding and abetting that wrongful behavior is illogical and would yield circular results. Court used dictionary to reference "abettor" as someone who encourages an offender.

acknowledge that an aiding and abetting analysis largely comes down to what constitutes "knowing participation." *In re Draw*, at 904. The aider and abettor must act "knowingly, intentionally, or with reckless indifference…that is, with an illicit state of mind." *Id.* The Plaintiff must allege specific facts that show Defendants had "actual knowledge" that their conduct intentionally aided and abetted a breach, not simply that they "knew or should have known." *Id.* (citing *Capitaliza-T Sociedad De Responsabilidad Limitada De Capital Variable v. Wachovia Bank of Delaware Nat. Ass'n*, CIV. 10-520 JBS KMW, 2011 WL 864421, at *5 (D. Del. Mar. 9, 2011)).

45.     In *In re Draw*, a Chapter 11 trustee filed an amended adversary complaint against several members of the company's board of directors, asserting breach of fiduciary duties and aiding and abetting breaches of fiduciary duties. On the defendant's 12(b)(6) motion, the court held that plaintiff's amended complaint failed to allege specific facts showing actual knowledge that [Director] was liable for aiding and abetting, and that plaintiff simply alleged [Director] "knew or should have known" his conduct aided and abetted the breach. *Id.* at 904. The court subsequently dismissed plaintiff's aiding and abetting claims against that particular director.

46.     In *Capitaliza-T*, defendant moved to dismiss plaintiff's amended complaint under Rule 12(b)(6), citing that it did not contain sufficient factual allegations regarding defendant's knowledge of breach of fiduciary duty. The court applied the Delaware rule that "at a minimum, the complaint [must] alleged circumstantial facts suggesting that the defendant had knowledge of the specific principal violation." *Id.* at *5 (citing *Brug v. Enstar Group, Inc.*, 755 F.Supp. 1247, 1256 (D. Del. 1991)). The court held that although plaintiff's amended compliant contained circumstantial allegations against defendant for aiding and abetting, it was not enough to allege

CORE/3522697.0002/169121350.1

that defendants "had knowledge of the underlying…breach of fiduciary duty" to survive a 12(b)(6) motion.  *Capitaliza-T,* at *7.

47.     In this case, Plaintiff simply alleges that "[the Donderos] were aware that Dugaboy would have fiduciary duties to the Debtor if it acted to bind the Debtor," and "[t]he Donderos aided and abetted Dugaboy's breach of its fiduciary duties…by knowingly participating in the authorization of the…Alleged Agreement."[41]  In its Amended Complaint, Plaintiff references only factors that could be circumstantial at best when describing it's Third Claim for relief against Jim Dondero, but never clearly articulates the required specific facts that show "actual knowledge" that he was overtly acting to substantially assist Dugaboy in breaching a fiduciary duty as required by *In re Draw* and *Capitaliza-T*.[42]  Further, Plaintiff makes no specific factual allegations against Nancy Dondero, other than she "[was] aware" of Dugaboy's fiduciary duties, and that she aided and abetted the breach.  Neither claims against Jim nor Nancy Dondero rise to the standard of articulation discussed in *In re Draw* and *Capitaliza-T*.  Therefore, Plaintiff's Seventh Claim should be dismissed under *Twombly* and Rule 12(b)(6).

### 4.     Neither Jim nor Nancy Dondero are Liable for Aiding and Abetting Because Aiding and Abetting Requires More Than One Single Act.

48.     As discussed in Section C.3 *supra*, the test for stating an aiding and abetting claim is stringent and focuses of proof of scienter that a party knew it was aiding another party in committing tortious conduct.  *In re Draw*, at 904.  This would require Plaintiff to show (1) a primary act by Dugaboy (via Nancy) that breached a fiduciary duty (which it cannot), and (2) a

---

[41]Am. Compl. ¶¶ 78,79, Adv. No. 21-03003 [Doc. 79]; Am. Compl. ¶¶ 92,93, Adv. No. 21-03007 [Doc. 63]; Am. Compl. ¶¶ 90,91, Adv. No. 21-03006 [Doc. 68]; Am. Compl. ¶¶ 71,72, Adv. No. 21-03005 [Doc. 63].

[42] Am. Compl. ¶¶ 3,36,38,39,40,41, Adv. No. 21-03003 [Doc. 73-2]; Am. Compl. ¶¶ 3,50,51,52,53, Adv. No. 21-03007 [Doc. 55-2]; Am. Compl. ¶¶ 3,48,49,50,51, Adv. No. 21-03006 [Doc. 60-2]; Am. Compl. ¶¶ 3,35,36,37,38,39, Adv. No. 21-03005 [Doc. 55-2].

secondary act by each of Jim and Nancy Dondero that shows scienter and knowing participation in subverting a fiduciary duty.

49.     Plaintiff cannot show concerted action here on behalf of Jim or Nancy Dondero, because the only singular act that occurred was Dugaboy approving the compensation under the LPA.  Plaintiff alleges no other separate act by Nancy Dondero that would have been "in concert" with or "knowingly participating" in anything, as she was acting as the Dugaboy Trustee (discussed above in Section C.2.).  Further, Plaintiff shows no other separate act or proof of scienter that Jim Dondero specifically set out to knowingly aid Dugaboy in tortious conduct under *In re Draw*, since Dugaboy engaged in no such conduct.  Therefore, Plaintiff's Seventh Claim fails *Twombly* and must be dismissed under Rule 12(b)(6).

> **5.     Debtor Lacks Standing to Bring an Aiding and Abetting a Breach of Fiduciary Duty Claim Based on an Executory Contract It Rejected.**

50.     The analysis here is the same as in Argument III.A.2. and B.2, *supra*.  Plaintiff argues that Jim and Nancy Dondero aided and abetted Dugaboy's alleged breach of fiduciary duty by authorizing the Subsequent Agreement, which Plaintiff alleges may have violated the LPA.[43] A cause of action for a derivative claim such as aiding and abetting shares accrual and limitations periods with the underlying tort of breach of fiduciary duty.  *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 144 (Tex. 2019), *reh'g denied*, (Sept. 6, 2019).  "Because a civil conspiracy claim is derivative of an underlying tort, the claim accrues when the underlying tor accrues." *Id*. at 145.  Here, because Plaintiff's aiding and abetting claims derive from the alleged breach of fiduciary duty claim, the claims share accrual dates.

---

[43] Am. Compl. ¶¶ 78,79, Adv. No. 21-03003 [Doc. 79]; Am. Compl. ¶¶ 92,93, Adv. No. 21-03007 [Doc. 63]; Am. Compl. ¶¶ 90,91, Adv. No. 21-03006 [Doc. 68]; Am. Compl. ¶¶ 71,72, Adv. No. 21-03005 [Doc. 63].

51.     Again, Plaintiff was not injured until Jim Dondero did not pay the Notes.  This claim did not accrue until December 11, 2020, and is also predicated on allegations that the Subsequent Agreement violates fiduciary duties arising out of the rejected LPA.  Once again, Plaintiff is attempting to bring a post-petition claim under the LPA it rejected.  Therefore, Plaintiff's Seventh Claim must be dismissed under *Twombly* and Rule 12(b)(6).

## IV.   CONCLUSION

Dugaboy, Jim Dondero, and Nancy Dondero therefore respectfully request this Court dismiss Plaintiff's Fifth, Sixth, and Seventh Amended Claims in its Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

Dated: September 1, 2021

Respectfully submitted,

*/s/Deborah Deitsch-Perez*
Deborah Deitsch-Perez
State Bar No. 24036072
Michael P. Aigen
State Bar No. 24012196
STINSON LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219
(214) 560-2201 telephone
(214) 560-2203 facsimile
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

ATTORNEYS FOR DEFENDANTS JAMES DONDERO
AND NANCY DONDERO

*/s/Daniel P. Elms*
Daniel P. Elms
State Bar No. 24002049
GREENBERG TRAURIG, LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
(214) 665-3600 telephone
(214) 665-3601 facsimile
Email: elmsd@gtlaw.com

ATTORNEYS FOR DEFENDANT NANCY DONDERO

*/s/Douglas S. Draper*
Douglas S. Draper, La. Bar No. 5073
Leslie A. Collins, La. Bar No. 14891
Greta M. Brouphy, La. Bar No. 26216
Heller, Draper & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130
Telephone: (504) 299-3300
Fax: (504) 299-3399
Email: ddraper@hellerdraper.com
Email: lcollins@hellerdraper.com
Email: gbrouphy@hellerdraper.com

**ATTORNEYS FOR DEFENDANT THE DUGABOY INVESTMENT TRUST**

CORE/3522697.0002/169121350.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on September 1, 2021, a true and correct copy of this document was served via the Court's CM/ECF system on counsel for the Plaintiff.

*/s/Deborah Deitsch-Perez*
Deborah Deitsch-Perez

CORE/3522697.0002/169121350.1