Davor Rukavina
Julian P. Vasek
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75202-2790
(214) 855-7500 telephone
(214) 978-4375 facsimile
Email:  drukavina@munsch.com

ATTORNEYS FOR NEXPOINT ADVISORS, L.P.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re: § <br> § <br> HIGHLAND CAPITAL MANAGEMENT, L.P., § <br> § <br> Debtor. § <br> § | Chapter 11 <br><br> Case No. 19-34054-sgj11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., § <br> § <br> Plaintiff, § <br> § <br> vs. § <br> § <br> NEXPOINT ADVISORS, L.P., JAMES § <br> DONDERO, NANCY DONDERO, AND THE § <br> DUGABOY INVESTMENT TRUST, § <br> § <br> Defendants. § | Adversary Proceeding No. <br><br> 21-03005-sgj |

**MOTION OF DEFENDANT NEXPOINT ADVISORS, L.P. TO EXTEND
EXPERT DISCLOSURE AND DISCOVERY DEADLINES**

TO THE HONORABLE STACEY G.C. JERNIGAN, U.S. BANKRUPTCY JUDGE:

COMES NOW NexPoint Advisors, L.P. ("NexPoint"), one of the defendants in the above styled and numbered Adversary Proceeding initiated by Highland Capital Management, L.P. as the plaintiff (the "Debtor"), and files this its *Motion to Extend Expert Disclosure and Discovery Deadlines* (the "Motion"), respectfully stating as follows:

## I. RELIEF REQUESTED

1. By this Motion, NexPoint requests that the Court extend the deadline, in its *Order Approving Stipulation and Agreed Order Governing Discovery and Other Pre-Trial Issues* [docket no. 70] (the "Scheduling Order"), for the designation of experts and service of expert reports, through December 13, 2021, with a corresponding extension of expert discovery. Specifically, NexPoint finds it appropriate and advisable to designate a testifying expert on the standards and duties of care under the parties' Shared Services Agreement (defined below) with respect to Highland's role in NexPoint's alleged failure to make a December 21, 2020 payment on the Note (defined below); specifically, that Highland was responsible for ensuring that NexPoint made this payment. This request is necessitated by recent deposition testimony of key individuals on October 19 and 21, 2021, prior to which NexPoint did not know or reasonably believe that expert testimony on the duties of care would be advisable.

## II. PROCEDURAL BACKGROUND

2. The Debtor initiated this Adversary Proceeding with the filing of its original complaint against NexPoint on January 22, 2021.

3. By this Adversary Proceeding, the Debtor seeks to collect on a promissory note issued by NexPoint to the Debtor on May 31, 2017 in the original principal amount of $30,746,812.33 (the "Note"). The Note is a 30-year note and provides for an annual payment of principal and interest. After prior payments, the Debtor asserts that $23,071,195.03 remains due and owing on the Note.

4. NexPoint has asserted various defenses and affirmative defenses to the Debtor's allegations and causes of action. This Motion concerns one such affirmative defense only, to the effect that the Debtor, through its employees, caused the alleged underlying default.

5. On July 28, 2021, the District Court entered an order adopting this Court's report and recommendation and ordering that the reference for this Adversary Proceeding will be withdrawn once this Court certifies this Adversary Proceeding as being trial ready. As part of the same, the District Court necessarily agreed and ordered that NexPoint has a right to a trial by jury of this Adversary Proceeding.

### III.    FACTS

6. This Motion is supported by the Declaration of Davor Rukavina, attached hereto as incorporated herein (the "Declaration").

7. The Debtor alleges that the Note required NexPoint to make a payment of principal and interest on December 31, 2020, and that NexPoint failed to make this payment. Thus, in January, 2021, the Debtor sent notice that the Note had been accelerated, and the Debtor demanded full and immediate payment.

8. One of NexPoint's affirmative defenses in this Adversary Proceeding concerns that certain *Amended and Restated Shared Services Agreement* (the "Shared Services Agreement") between the Debtor and NexPoint dated January 1, 2018. The Agreement was in place as of December 31, 2020, although the Debtor terminated it later, in 2021. Under the Agreement, the Debtor provided various services to NexPoint, including so-called "back office" services, including treasury, accounting, and payables services. NexPoint has alleged that, pursuant to the Shared Services Agreement, the Debtor was responsible for ensuring that NexPoint made the allegedly required December 31, 2020 payment, although such payment would be made from NexPoint's funds. Indeed, Waterhouse (defined below) testified that it was "reasonable for NexPoint to rely on the debtors' employees to inform NexPoint of an upcoming payment due on the $30 million promissory note." *See* Declaration at Exhibit C, 337:22-338:8.

9. NexPoint asserts that the Debtor failed to do so and, therefore, caused the alleged default, which it now seeks to exploit, and that, but for the Debtor's negligence, the Note would remain in place. NexPoint has always asserted this as an affirmative defense. *See* Docket No. 6. NexPoint's defense, however, was based on its belief that the Debtor and its employees, including Waterhouse, did nothing to facilitate or ensure the payment, as opposed to a conscious decision not to make the payment.

10. On October 19, 2021, the Debtor deposed Frank Waterhouse ("Waterhouse"), as did NexPoint, in connection with this Adversary Proceeding. Waterhouse was the Debtor's chief financial officer in December, 2020, and either the treasurer or chief financial officer (either way an officer) of NexPoint in December, 2020. To be clear, Waterhouse was the Debtor's employee, although he provided services to NexPoint as well pursuant to the Shared Services Agreement. Among other things, at this deposition, Waterhouse testified that, in early December, 2020, James Dondero ("Dondero"), who at that time controlled NexPoint but did not control the Debtor, instructed Waterhouse not to cause NexPoint to pay any more funds to the Debtor, including, expressly on the Note.

11. This changed the potential facts as NexPoint understood them to be from ones where the Debtor simply failed utterly to facilitate the payment, as it has always done, to one where the Debtor intentionally, allegedly upon the instructions of Dondero, decided not to facilitate the payment. Assuming the Dondero instruction to be true, this raises the question of whether the Debtor thereafter had any affirmative duty with respect to the alleged instruction.

12. NexPoint did not know that Waterhouse would provide this testimony. NexPoint understood that Dondero instructed Waterhouse to make no further payments on the Shared Services Agreement, because Dondero believed that NexPoint had overpaid by millions of dollars

on the Shared Services Agreement. But NexPoint did not understand that Waterhouse would testify that Dondero instructed him also not to pay the Note.

13. If Dondero told Waterhouse in early December, 2020 not to pay on the Note, then the question becomes whether Waterhouse or the Debtor thereafter "put their heads in the sand" in violation of any affirmative duty or obligation they may have had regarding the matter, such as: to ask Dondero whether they correctly understood him; to ask Dondero whether he meant NexPoint and the Note; to inform Dondero of the potential consequences of a default by potentially accelerating a 30-year promissory note; or to try to dissuade him from his decision. After all, the Debtor was responsible to facilitate the payment, the Debtor had various duties under the Shared Services Agreement, and it was in the Debtor's interest that NexPoint would default, thus creating a conflict of interest.

14. Accordingly, on October 19, 2021, when NexPoint deposed James Seery, NexPoint asked Mr. Seery about section 6.01 of the Shared Services Agreement, labeled "standard of care," which provides that the Debtor and Waterhouse "shall discharge its duties under this Agreement with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with like aims." Mr. Seery testified that he did not believe that this provision of the Shared Services Agreement obligated the Debtor or Waterhouse to do anything further after Dondero allegedly instructed Waterhouse not to pay on the Note.

15. At that time, NexPoint determined that it was appropriate, and would assist the finder of fact, to retain an expert on the "standard of care" provided for in the Shared Services Agreement. This is especially important because this will be a jury trial in the District Court. NexPoint did not believe that it would need to retain such an expert, and it had no reasonable grounds to suspect that it would need such an expert, prior to these depositions.

16. NexPoint moved as promptly as it could thereafter. NexPoint decided to retain an expert on October 22, 2021 and began searching for one on that day. NexPoint located a potential expert, Steven J. Pully, on October 26, 2021, and after conflicts were cleared and terms agreed to, Mr. Pully agreed to serve as NexPoint's expert on October 28, 2021. NexPoint files this motion just one day later, and less than two weeks after Waterhouse's deposition triggered the issue.

17. It goes without saying that neither Pully nor any reasonable expert can possibly review the issues, formulate an opinion, and prepare a report one day after they are retained. Among other things, Pully needs to review all underlying documents and deposition transcripts, some of which have yet to be returned by the court reporters. Accordingly, NexPoint believes that approximately six (6) weeks will be sufficient for Pully to prepare a report. NexPoint submits that the Debtor should have a period of time to then designate a potential rebuttal expert, and a period of time for expert discovery. Such a procedure would be fair for all involved and would constitute a minimal delay to what has already been a rapidly advanced case.

## IV.    ARGUMENT AND AUTHORITIES

18. It is appropriate for an expert to consider the issue of Waterhouse's and the Debtor's duties under the Shared Services Agreement—*i.e.*, "duties under this Agreement with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with like aims,"—as issues such as "prudent person" and "like capacity and familiar with like aims" are appropriate for expert analysis and will assist the finder of fact, especially a jury.

19. Rule 16(b) provides that a deadline in a scheduling order may be modified "for good cause," although there is some uncertainty as to whether this standard applies only after a deadline has passed (which is not the case here). *See* Fed. R. Civ. P. 16(b)(4); *Marathon Fin. Ins.*

*Inc. RRG v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009) ("Federal Rule of Civil Procedure 16(b) governs amendment of pleadings after a scheduling order's deadline to amend has expired").

20. When the issue concerns an "untimely submission of expert reports," the Fifth Circuit has specified the following for factors as guiding the decision: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S&W Enters. v. Southtrust Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003). Again, this test applies to a deadline which has already expired. Logically, therefore, a lesser standard should apply when a party seeks relief prior to the expiration of a deadline, as NexPoint does here.

21. Applying these or any factors:

(i) this Adversary Proceeding is only some nine (9) months old and the parties have moved very quickly, with all discovery almost over;

(ii) if this Motion is granted, all discovery in this Adversary Proceeding will have been completed by the end of 2021, still less than one (1) year after filing;

(iii) the reason for the need to extend the deadline is the most logical reason that most frequently appears—that discovery has necessitated some previously unexpected action—which is one of the purposes of discovery;

(iv) NexPoint's failure to previously designate an expert was due solely to not having the benefit of Waterhouse's and Seery's recent deposition testimony, and is not the result of any delay or lack of diligence, as evidenced by the fact that NexPoint did already and timely designate two other experts on other issues (*i.e.* NexPoint did not sit on its responsibility to consider retaining experts);

(v) the matter is important because the duties of care as specified in the Shared Services Agreement are terms of art necessitating an expert analysis, especially before a jury, and the matter goes to the heart of NexPoint's affirmative defense, and is necessitated by Waterhouse's testimony and not any prior action or inaction of NexPoint;

(vi) there is no prejudice to the Debtor, which will have sufficient time to retain a rebuttal expert and take expert discovery (*i.e.* no witnesses or documents have been lost); and

 (vii) a continuance is easily available to avoid any prejudice to the Debtor—indeed, there is no need for a continuance even as the Adversary Proceeding has yet to be certified as trial ready and it is likely that the District Court will not schedule the Adversary Proceeding for trial for some time.

22. NexPoint submits that this Motion cannot come as a surprise to the Debtor. NexPoint has asserted its affirmative defense since the beginning. The only difference now is that, instead of a wholesale disregard of any duty to facilitate the Note payment, the issue has evolved to whether the Debtor or Waterhouse had any affirmative duty to act after the alleged instruction from Dondero. As it can be presumed that Waterhouse previously informed the Debtor or its counsel of this alleged instruction (as he apparently informed other employees at the Debtor), the Debtor likely knew what Waterhouse's testimony would be well before NexPoint learned of that testimony. It is reasonable to conclude that the Debtor knew or should have known that the "standard of care" under the Shared Services Agreement would then become a material issue.

23. Accordingly, "good cause" to amend the Scheduling Order exists, if that higher standard even applies, and approving such amendment will not prejudice the Debtor and will instead serve the interests of justice.

## V. <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, NexPoint respectfully requests that the Court enter an order: (i) granting this Motion; (ii) modifying the Scheduling Order to extend the deadline to designate experts and serve expert reports through December 13, 2021; (iii) modifying the Scheduling Order accordingly for the potential designation of rebuttal experts and service of rebuttal expert reports, and extending expert discovery; and (iv) granting NexPoint such other and further relief as may be proper.

RESPECTFULLY SUBMITTED this 29th day of October, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
    Davor Rukavina
    State Bar No. 24030781
    Julian P. Vasek.
    State Bar No. 24070790
    500 N. Akard Street, Suite 3800
    Dallas, Texas 75202-2790
    Telephone: (214) 855-7500
    Facsimile: (214) 978-4375
    Email:  drukavina@munsch.com
    Email: jvasek@munsch.com

**ATTORNEYS FOR NEXPOINT ADVISORS, L.P.**

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that, on October 28, 2021, he conferred with counsel for the Debtor, John Morris, and the Debtor opposes the relief requested herein.

    /s/ Davor Rukavina
    Davor Rukavina

# **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on October 29, 2021, a true and correct copy of the foregoing document, including the exhibit thereto, was served on the following recipients via the Court's CM/ECF system:

Zachery Z. Annable on behalf of Plaintiff Highland Capital Management, L.P.
zannable@haywardfirm.com

Bryan C. Assink on behalf of Defendant James Dondero
bryan.assink@bondsellis.com

Greta M. Brouphy on behalf of Defendant The Dugaboy Investment Trust
gbrouphy@hellerdraper.com, dhepting@hellerdraper.com;vgamble@hellerdraper.com

Leslie A. Collins on behalf of Defendant The Dugaboy Investment Trust
lcollins@hellerdraper.com

Deborah Rose Deitsch-Perez on behalf of Defendant James Dondero
deborah.deitschperez@stinson.com, patricia.tomasky@stinson.com;kinga.mccoy@stinson.com

Deborah Rose Deitsch-Perez on behalf of Defendant Nancy Dondero
deborah.deitschperez@stinson.com, patricia.tomasky@stinson.com;kinga.mccoy@stinson.com

Douglas S. Draper on behalf of Defendant The Dugaboy Investment Trust
ddraper@hellerdraper.com,
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Melissa S. Hayward on behalf of Plaintiff Highland Capital Management, L.P.
MHayward@HaywardFirm.com, mholmes@HaywardFirm.com

Juliana Hoffman on behalf of Creditor Committee Official Committee of Unsecured Creditors
jhoffman@sidley.com, txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com

Paige Holden Montgomery on behalf of Creditor Committee Official Committee of Unsecured Creditors
pmontgomery@sidley.com, txefilingnotice@sidley.com;paige-montgomery-7756@ecf.pacerpro.com;crognes@sidley.com;ebromagen@sidley.com;efilingnotice@sidley.com

/s/ Davor Rukavina
Davor Rukavina