IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re: § <br> § <br> HIGHLAND CAPITAL MANAGEMENT, L.P., § <br> § <br> Debtor. § <br> § | Chapter 11 <br><br> Case No. 19-34054-sgj11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., § <br> § <br> Plaintiff, § <br> § <br> vs. § <br> § <br> NEXPOINT ADVISORS, L.P., JAMES § <br> DONDERO, NANCY DONDERO, AND THE § <br> DUGABOY INVESTMENT TRUST, § <br> § <br> Defendants. § | Adversary Proceeding No. <br><br> 21-03005-sgj |

## DECLARATION OF DAVOR RUKAVINA

STATE OF TEXAS

COUNTY OF DALLAS

I, Davor Rukavina, hereby state and testify to the following as being true and correct and under penalty of perjury pursuant to the laws of the United States of America:

1. My name is Davor Rukavina. I am over the age of 21, have never been convicted of a felony or crime of moral turpitude, and am otherwise competent to execute this Declaration.

2. I am an attorney duly licensed to practice law in the State of Texas. I am a shareholder at Munsch Hardt Kopf & Harr, P.C. I am the lead attorney for NexPoint Advisors, L.P. ("NexPoint"), one of the defendants in this Adversary Proceeding.

3. At issue in this Adversary Proceeding is a 30-year promissory note executed by NexPoint in the original principal amount of $30,746,812.33 (the "Note"), although the Note had been paid down significantly by the time of the filing of this Adversary Proceeding.

4. Highland Capital Management, L.P. (the "Debtor") alleges that the Note required NexPoint to make a payment of principal and interest on December 31, 2020, and that NexPoint failed to make this payment. Thus, in January, 2021, the Debtor sent notice that the Note had been accelerated and the Debtor demanded full and immediate payment.

5. The parties agreed by written stipulation that they would disclose experts and produce expert reports on or before October 29, 2021, and the Court's scheduling order so requires. NexPoint requests an extension of this deadline. The following is the reason why.

6. One of NexPoint's affirmative defenses in this Adversary Proceeding concerns that certain *Amended and Restated Shared Services Agreement* (the "Agreement") between the Debtor and NexPoint dated January 1, 2018, a copy of which is attached hereto as Exhibit "A." The Agreement was in place as of December 31, 2020, although the Debtor terminated it later in 2021. NexPoint alleges that, under the Agreement, the Debtor provided various services to NexPoint, including so-called "back office" services, including treasury, accounting, and payables services. NexPoint has alleged that, pursuant to the Agreement, the Debtor was responsible for ensuring that NexPoint made the allegedly required December 31, 2020 payment, although such payment would be made from NexPoint's funds. NexPoint therefore asserts that the Debtor failed to do so and, therefore, caused the alleged default, which it now seeks to exploit, and that, but for the Debtor's negligence, the Note would remain in place.

7. The foregoing has always been an affirmative defense of NexPoint in this Adversary Proceeding, including in its amended answer filed on September 1, 2021, a copy of which is attached hereto as Exhibit "B."

8. On October 19, 2021, the Debtor deposed Frank Waterhouse ("Waterhouse"), as did I, in connection with this Adversary Proceeding. Waterhouse was the Debtor's chief financial

officer in December, 2020, and either the treasurer or chief financial officer (either way an officer) of NexPoint in December, 2020.

9.  Among other things, at this deposition, Waterhouse testified that, in early December, 2020, James Dondero ("Dondero"), who at that time controlled NexPoint but did not control the Debtor, instructed Waterhouse not to cause NexPoint to pay any more funds to the Debtor, including, expressly on the Note. A copy of this deposition transcript is attached as Exhibit "C."

10. This testimony was not expected by me or by NexPoint. I had understood that Dondero instructed Waterhouse to make no further payments on the Agreement, because Dondero believed that NexPoint had overpaid by millions of dollars on the Agreement and because that was what Dondero and Waterhouse had been discussing. I had not understood that Waterhouse would testify that Dondero instructed him to also not pay the Note specifically.

11. Prior to that deposition, I had never spoken to Waterhouse. Waterhouse presently serves as an officer of NexPoint; however, and unlike every other case I have been involved with, I have not been permitted to discuss with Waterhouse litigation matters. This is because Waterhouse is in litigation with the Debtor on other matters and has separate and independent counsel, Debra Dandeneau and Frances Smith, who would not permit me to speak directly to Waterhouse, which I understood to be a logical and appropriate instruction to protect their client. I did discuss with Ms. Dandeneau what Waterhouse may know about the litigation between the Debtor and my clients, but that primarily focused on defenses that another client of mine, Highland Capital Management Fund Advisors, L.P., has. And I did discuss with Ms. Dandeneau that Dondero told Waterhouse to not make payments, but I understood that to be limited to the Agreement and to not include the Note, since the topic under discussion (as it was told to me)

between Dondero and Waterhouse was the Agreement and overpayments on the Agreement, and not the Note.

12. In sum, prior to October 19, 2021, I did not know that Waterhouse would testify that Dondero told him to not pay on the Note, and I had no reasonable reason to suspect the same. My surprise is evident from the transcript of that deposition, where I asked Waterhouse multiple times whether he was sure that Dondero told him this—so much so that opposing counsel objected multiple times as "asked and answered," and even objected as having been asked and answered "four time." Exhibit "C" at 390-392.

13. Assuming that Waterhouse's testimony on this issue will be accepted by a trier of fact, the question is whether, from NexPoint's perspective, Waterhouse had no further duties to review, confirm, investigate, or to discuss the issue with Dondero. In that respect, section 6.01 of the Agreement, labeled "standard of care," states that the Debtor and Waterhouse "shall discharge its duties under this Agreement with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

14. I deposed Jim Seery on October 21, 2021, and asked him various questions about this provision of the Agreement. Mr. Seery testified to the effect that he did not believe that the Agreement obligated the Debtor or Waterhouse to do anything further after Dondero told Waterhouse to not pay the Note (again, assuming that this was true). I do not have a copy of Mr. Seer's deposition yet.

15. With Mr. Seery testifying that he did not believe that the Agreement required the Debtor or Waterhouse to do anything further if Dondero in fact gave the instruction Waterhouse testified that he did, NexPoint concluded that it needed to retain an expert to review whether the "standard of care" specified in the Agreement compelled the Debtor or Waterhouse to do anything

further after Dondero gave the alleged instruction, such as checking with him to see if they understood him correctly, advising him of the potential serious consequences of a default, trying to dissuade him, or at least asking him once again prior to December 31, 2020 whether the payment should be made.

16. On October 22, 2021, I began searching for a potential expert. On October 26, 2021, I contacted Steven J. Pully about the potential engagement. After clearing conflicts and coming to an agreement, Mr. Pully agreed to the engagement on October 28, 2021. The engagement letter has yet to be finalized and executed, but I have every confidence that it will and the urgency of the matter necessitates this Declaration at this time. I have been extremely diligent in searching for an finding an expert once NexPoint determined that the retention of an expert was appropriate, which did not occur until the Seery deposition on October 21, 2021.

17. Even though NexPoint has retained Mr. Pully as of October 28, 2021, it is not possible for Mr. Pully to formulate an opinion and prepare a report by October 29, 2021. Among other things, various deposition transcripts of important witnesses have yet to be received and reviewed by Mr. Pully, and Mr. Pully has yet to review the underlying documents. Assuming no undue delays with respect to deposition transcripts, Mr. Pully should be able to prepare a report by December 13, 2021.

18. NexPoint therefore seeks an extension of the expert designation and report deadline through December 13, 2021, in order that justice may be done and not for delay or any improper purpose, NexPoint not having designated an expert before due solely to the lack of knowledge that Waterhouse would testify as he did on October 19, 2021 and that Mr. Seery would testify as to his view that the Agreement did not require Waterhouse to do anything thereafter.

I hereby swear under oath and penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

                                                                                                                       _____
                                                                                                                       DAVOR RUKAVINA