PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § § § | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | § § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § | |
| Plaintiff, | § § | Adversary Proceeding No. |
| vs. | § § | 21-03005-sgj |
| NEXPOINT ADVISORS, L.P., JAMES DONDERO, NANCY DONDERO AND THE DUGABOY INVESTMENT TRUST, | § § § § | |
| Defendants. | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § | |
| Plaintiff, | § § | Adversary Proceeding No. |
| vs. | § § | 21-03006-sgj |
| | § | |

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

| | |
|---|---|
| HIGHLAND CAPITAL MANAGEMENT SERVICES, INC., JAMES DONDERO, NANCY DONDERO, AND THE DUGABOY INVESTMENT TRUST,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§ |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Plaintiff,<br><br>vs.<br><br>HCRE PARTNERS, LLC (N/K/A NEXPOINT REAL ESTATE PARTNERS, LLC), JAMES DONDERO, NANCY DONDERO, AND THE DUGABOY INVESTMENT TRUST,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§  Adversary Proceeding No.<br><br>21-03007-sgj |

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ................................................................... 1

II.  STATEMENT OF FACTS ...................................................................... 4

  A.  The Note ............................................................................... 4

  B.  NexPoint Defaults under the Note and Highland Sues to Collect ...................... 5

  C.  NexPoint Blames Highland for Its Default ........................................... 6

  D.  The Court Enters the Scheduling Order .............................................. 6

  E.  Mr. Waterhouse Testifies that Mr. Dondero Instructed Him Not to Make Any Payments to Highland ................................................................. 7

  F.  Highland's Obligations under the Shared Services Agreement Were Limited to Those "Specifically" Identified Therein ............................................ 8

  G.  The Instant Motion ................................................................... 9

III.  ARGUMENT ................................................................................ 9

  A.  NexPoint's Suggested "Expert Testimony" Is Improper as a Matter of Law .............. 9

  B.  NexPoint Fails to Establish that Good Cause Exists to Modify the Scheduling Order ................................................................................. 10

    1.  NexPoint's Explanation for Failing to Timely Designate an Expert Is Deficient ......................................................................... 12

    2.  NexPoint's Suggested "Expert" Testimony Is Irrelevant ......................... 13

    3.  Allowing the Testimony Would Prejudice Highland ................................ 15

  C.  HCRE's and HCMS's Joinders Have Even Less Merit than the Motion and Should Be Denied .............................................................................. 17

CONCLUSION ..................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Askanase v. Fatjo*,
130 F.3d 657 (5th Cir. 1997) ................................................. 10

*Binh Hoa Le v. Exeter Fin. Corp.*,
3:15-CV-3839-L, 2019 WL 1436375 (N.D. Tex. Mar. 31, 2019)......................... 12, 13, 17, 18

*Charalambopoulos v. Grammer*,
3:14-CV-2424-D, 2017 WL 930819 (N.D. Tex. Mar. 8, 2017) ............................... 14

*Flax v. Quitman County Hosp.*,
*LLC*, 2:09-CV-101-M-D, 2011 WL 3585870 (N.D. Miss. Aug. 16, 2011)............................ 10

*Geiserman v. MacDonald*,
893 F.2d 787 (5th Cir.1990) ......................................................... passim

*Grand Time Corp. v. Watch Factory, Inc.*,
3:08-CV-1770-K, 2009 WL 10678210 (N.D. Tex. Nov. 18, 2009) .................................. 11, 12

*Hanspard v. Otis Elevator Co.*,
CIV.A. 05-1292, 2007 WL 839994 (W.D. La. Jan. 12, 2007) ................................ 10

*Henderson v. Atmos Energy*,
496 F. Supp. 3d 1011 (E.D. La. 2020)...................................................... 16

*Nola Ventures, LLC v. Upshaw Ins. Agency, Inc.*,
CV 12-1026, 2014 WL 12721924 (E.D. La. Nov. 7, 2014) ................................... 15

*Panhandle Advert., LLC v. United Rentals Realty,*
*LLC*, 2:19-CV-189-Z-BR, 2021 WL 1112901 (N.D. Tex. Feb. 12, 2021)........................... 9, 10

*Pipitone v. Biomatrix, Inc.*,
288 F.3d 239 (5th Cir. 2002) ......................................................... 14

*Reliance Ins. Co. v. Louisiana Land & Expl. Co.*,
110 F.3d 253 (5th Cir. 1997) ......................................................... 12, 13, 17

*Rolls-Royce Corp. v. Heros, Inc.*,
CIV.A. 307-CV-0739-D, 2010 WL 184313 (N.D. Tex. Jan. 14, 2010) .................................. 15

*S&W Enters., L.L.C. v. SouthTrust Bank of Alabama, NA*,
315 F.3d 533 (5th Cir. 2003) ......................................................... 12, 17

*Taylor Pipeline Const., Inc. v. Directional Rd. Boring, Inc.*,
438 F. Supp. 2d 696 (E.D. Tex. 2006)...................................................... 10

ii

**<u>Rules</u>**

Fed. R. Civ. P. 16(b)(4)................................................................................................................. 11

**HIGHLAND'S MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO
MOTION OF DEFENDANT NEXPOINT ADVISORS, L.P. TO EXTEND EXPERT
DISCLOSURE AND DISCOVERY DEADLINES**

Highland Capital Management, L.P., the reorganized debtor ("Highland") in the above-captioned chapter 11 case (the "Bankruptcy Case") and the plaintiff in the above-captioned adversary proceeding (the "Adversary Proceeding"), hereby objects (the "Objection") to the *Motion of NexPoint Advisors, L.P. to Extend Expert Disclosure and Discovery Deadlines* [AP Docket No. 86][2] (the "Motion") filed by defendant NexPoint Advisors, L.P. ("NexPoint") and joined by certain defendants in other related adversary proceedings.[3] In support of its Objection, Highland respectfully states as follows:

## I.   PRELIMINARY STATEMENT[4]

1.     NexPoint's Motion to modify the Scheduling Order is without merit and should be denied.

2.     This Adversary Proceeding arises from NexPoint's default under its Note in the original principal amount of $30.7 million. The Note required NexPoint to make Annual Installment payments to Highland on December 31 of each year.

3.     NexPoint blames Highland for its failure to timely make the Annual Installment payment. Initially, NexPoint contended that Highland breached its obligations by negligently failing to make the payment on NexPoint's behalf. Then, Frank Waterhouse, an officer of NexPoint, a current employee of Skyview (the entity that services numerous of Mr. Dondero's

---

[2] Unless specified otherwise, references to "AP Docket No. __" are to the docket entries in NexPoint's Adversary Proceeding, 21-03005.

[3] *See Motion of Highland Capital Management Services, Inc. to Extend Expert Disclosure and Discovery Deadlines*, filed at Docket No. 91 in Adversary Proceeding 21-03006 ("HCMS's Joinder") (incorporating NexPoint's Motion), and *Motion of HCRE Partners, LLC to Extend Expert Disclosure and Discovery Deadlines*, filed at Docket No. 86 in Adversary Proceeding 21-03007 ("HCRE's Joinder", and together with HCMS's Joinder, the "Joinders," and collectively with the Motion, the "Motions") (incorporating NexPoint's Motion).

[4] Capitalized terms used but not defined in this Preliminary Statement shall have the meanings ascribed thereto below.

businesses), and Highland's former Chief Financial Officer, testified in his deposition that NexPoint failed to make the Annual Installment payment because Mr. Dondero instructed him in December 2020 not to make *any* payments to Highland from *any* of the entities that Mr. Dondero controlled.

4.      NexPoint contends that, in light of this testimony, an expert is necessary to testify regarding whether Highland violated an "affirmative duty or obligation" it owed to NexPoint under Section 6.01 of the Shared Services Agreement to effectuate the payment on behalf of NexPoint, despite Mr. Dondero's instructions to the contrary.   According to NexPoint:

> [T]he question becomes whether Waterhouse or the Debtor 'put their head in the sand' in violation of any affirmative duty or obligation they may have had regarding the matter, such as; to ask Dondero whether they correctly understood him; to ask Dondero whether he meant NexPoint or the Note; to inform Dondero of the potential consequences of a default by potentially accelerating a 30-year promissory note; or to try to dissuade him from his decision.

Motion ¶ 13.

5.      NexPoint's Motion to extend the expert disclosure and discovery deadlines in order to retain a testifying expert on Highland's duties of care under the Shared Services Agreement is without merit.

6.      NexPoint's suggested expert testimony is improper because it concerns "the standards and duties of care under the parties' Shared Services Agreement" and otherwise seeks to interpret that Agreement for the Court.  It is black-letter law that the determination of the existence and scope of contractual and other legal duties are improper subjects of expert opinion because they constitute legal conclusions that fall within the exclusive province of the Court.

7.      Even if that were not the case (and it is), NexPoint fails to satisfy its burden of demonstrating "good cause" to modify the Scheduling Order under Rule 16(b) for three independent reasons.  *First*, as set forth below, the Motion is untimely.  *Second*, the suggested expert testimony is irrelevant because it would not assist a factfinder in determining any technical

or complex issues in this case.  By its plain terms, the Shared Services Agreement does not impose an affirmative duty on—or even authorize—Highland to effectuate payments on behalf of NexPoint without authorization from a NexPoint Representative.  NexPoint's reliance on Section 6.01 as the source of Highland's alleged duties is thus misguided, as that provision applies only to duties specifically set forth under the Agreement.[5]  ***Finally***, allowance of the expert testimony at this late juncture would substantially prejudice Highland, with such prejudice being exacerbated (and not cured) by a continuance.  If the Motion is granted, Highland will be forced to expend significant resources addressing NexPoint's latest theories of its defense, including through additional discovery and motion practice.  It will also cause a further delay of the trial on the merits, thereby impeding Highland's ultimate recovery under the Note, all at the expense of Highland's creditors.

8.     Separately, as ill-conceived as the Motion is, the Joinders raise considerable questions of good faith, because neither Highland Management Services, Inc. ("HCMS") nor HCRE Partners, LLC ("HCRE") even alleges that it is a party to a shared services agreement (let alone the Shared Services Agreement submitted with the Motion), nor can it.  The Motion seeks to "designate a testifying expert on the standards and duties of care under the parties' Shared Services Agreement," but the Joinders offer no explanation for why such expert testimony would have any relevance to them since they are not parties to ***any*** shared services agreement.

9.     For the reasons set forth herein, Highland respectfully requests that the Court deny the Motion in all respects.

---

[5] NexPoint offers no explanation for why Highland's alleged obligations under the Shared Services Agreement supersede Mr. Waterhouse's fiduciary duties to NexPoint.  If anyone had a duty to ask Mr. Dondero "Are you sure?" or "Do you know what you're doing" (an absurd concept on its own), it was surely Mr. Waterhouse—not in his capacity as a Highland employee—but in his capacity as an officer of, and a fiduciary to, NexPoint.

## II.       STATEMENT OF FACTS

**A.       The Note**

10.       On May 31, 2017, James Dondero ("Mr. Dondero") signed a 30-year term note on behalf of NexPoint and in favor of Highland (the "Note").  Morris Dec.[6] Exhibit 1.

11.       The Note consolidated NexPoint's obligations under five Prior Notes (as that term is defined in the Note) and was for an original principal amount of $30,746,812.33.  *See* Morris Dec. Exhibit 1, Ex. A.  Highland received no consideration for consolidating the five demand notes into a single 30-year term note.

12.       NexPoint and Mr. Dondero knew that NexPoint was required to pay Highland in Annual Installments, because it was spelled out plainly in the Note:

> 2.1       Annual Payment Dates.  During the term of this Note, [NexPoint] shall pay the outstanding principal amount of the Note (and all unpaid accrued interest through the date of each payment) in thirty (30) equal annual payments (the "Annual Installments") until the Note is paid in full.  ***[NexPoint] shall pay the Annual Installment on the 31st day of December of each calendar year during the term of this Note***, commencing on the first such date to occur after the date of execution of this Note.

Morris Dec. Exhibit 1 § 2.1 (emphasis added).

13.       NexPoint and Mr. Dondero also knew the consequences of failing to timely make the required Annual Installment payments, because they were also spelled out plainly in the Note:

> 4.       Acceleration Upon Default.  ***Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof [i.e., Highland]***, without notice, demand presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, ***mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable*** and subject to those remedies of the holder hereof [i.e., Highland].

*Id*. § 4 (emphases added).

---

[6] References to "Morris Dec. __" are to the *Declaration of John Morris in Support of Objection to Motion of Defendant NexPoint Advisors, L.P. to Extend Expert Disclosures and Discovery Deadlines* being filed concurrently herewith.

14.    Finally, Mr. Dondero expressly agreed on behalf of NexPoint to waive any notice of default or acceleration:

> 5.    <u>Waiver</u>.  [NexPoint] hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration, and all other notices of any kind hereunder.

*Id*. § 5.

15.    Thus, based on the plain terms of the Note executed by Mr. Dondero on NexPoint's behalf at a time when Mr. Dondero indisputably controlled both entities, NexPoint agreed (a) to make Annual Installment payments to Highland on December 31 of each year; (b) that Highland would have the unilateral right upon a default to accelerate all unpaid principal and interest due under the Note without notice or demand; and (c) to waive, among other things, a grace period, notice of nonpayment, notice of intent to accelerate, and "all other notices of any kind hereunder."

**B.    <u>NexPoint Defaults under the Note and Highland Sues to Collect</u>**

16.    NexPoint does not dispute that it failed to make the Annual Installment payment due under the Note on December 31, 2020 in the amount of $1,406,111.92.

17.    By letter dated January 7, 2021, in an exercise of its unambiguous and unconditional rights under the Note, Highland demanded that NexPoint immediately pay all unpaid principal and interest then due under the Note (the "<u>Demand Letter</u>").  Morris Dec. Exhibit 2.  The Demand Letter stated:

> Because of Maker's failure to pay, the Note is in default.  Pursuant to Section 4 of the Note, all principal, interest, and any other amounts due on the Note are immediately due and payable.  The amount due and payable on the Note as of January 8, 2021 is $24,471,804.98; however, interest continues to accrue under the Note.
>
> The Note is in default, and payment is due immediately.

*Id*.

18.     On January 22, 2021, after NexPoint failed to meet its obligations under the Note, Highland commenced this Adversary Proceeding.  [AP Docket No. 1].

## C.     <u>NexPoint Blames Highland for Its Default</u>

19.     On March 1, 2021, NexPoint filed its *Original Answer* asserting, among other things, that "[p]ursuant to that certain Shared Services Agreement, [Highland] was responsible for making payments on behalf of [NexPoint] under the note" such that any "alleged default" was caused by Highland's own negligence and breach of contract (the "<u>Original Defense</u>"). *Defendant's Original Answer* [AP Docket No. 6] (the "<u>Original Answer</u>") ¶¶ 39-41.

20.     On August 9, 2021, NexPoint filed its *First Amended Answer*, which did not substantively alter its Original Defense.  [AP Docket No. 50] (the "<u>Amended Answer</u>") ¶¶ 39-41.

21.     On September 1, 2021, after Highland amended its Complaint, NexPoint filed its *Answer to Amended Complaint* [AP Docket No. 64] (the "<u>Final Answer</u>").  The Final Answer did not substantively alter NexPoint's Original Defense.  *See id.* ¶¶ 80-82.

22.     Thus, at all times prior to filing the Motion, NexPoint contended that its failure to timely make the Annual Installment due on December 31, 2020 was caused by Highland's own alleged negligence and breach of the Shared Services Agreement.

## D.     <u>The Court Enters the Scheduling Order</u>

23.     On September 6, 2021, the Court entered the *Order Approving Stipulation and Agreed Order Governing Discovery and Other Pre-Trial Issues* [AP Docket No. 70] (the "<u>Scheduling Order</u>").

24.     The Scheduling Order provides, in pertinent part, that "expert designations and disclosures of all opinions, and the bases therefor, will be made by October 29, 2021, and experts will be deposed between October 29, 2021 and November 8, 2021."  Scheduling Order ¶ 3.

E.  **Mr. Waterhouse Testifies that Mr. Dondero Instructed Him Not to
    Make Any Payments to Highland**

25.    In December 2020, Frank Waterhouse ("Mr. Waterhouse") wore multiple hats that

Mr. Dondero gave to him, including: (a) Chief Financial Officer of Highland; (b) Treasurer of

NexPoint; (c) Treasurer of HCMS; (d) Treasurer of Highland Capital Management Fund Advisors,

L.P. ("HCMFA", and together with NexPoint, the "Advisors"); and (e) Principal Executive Officer

of certain funds managed by the Advisors.  *See* Morris Dec. Exhibit 3 at 24:2-25; 35:8-22; 120:7-

12; 327:3-8.

26.    At a recent deposition, Mr. Waterhouse testified that NexPoint did not make the

Annual Installment payment due on December 31, 2020 because Mr. Dondero had instructed him

in December 2020 not to cause any payments to be made to Highland.  Mr. Waterhouse also

testified that he never followed up with Mr. Dondero or reminded him that the payment was

coming due at the end of the month.  *See* Morris Dec. Exhibit 3 at 390:4-392:17.

27.    Mr. Dondero testified that he was unaware of anyone ever instructing or authorizing

Highland to make the Annual Installment payment due under the Note on NexPoint's behalf.

Morris Dec. Exhibit 4 at 462:16-463:9.  Mr. Waterhouse concurred and confirmed that Highland's

employees were not authorized to make the Annual Installment payment due at the end of the year

without prior approval:

>    Q:  Do you know if anybody ever instructed Highland's employees to make the
>    payment that was due by NexPoint at the end of the year?
>
>    A:  Did anyone instruct Highland's employees to make that payment?
>
>    Q:  Correct.
>
>    A:  Anyone – not that I'm aware.
>
>    Q:  . . . [Were] any of Highland's employees authorized to effectuate the payment
>    on behalf of NexPoint that was due at the end of the year without getting approval
>    from either you or Mr. Dondero?

A:  They had the – they had the ability to make the payment, but they didn't – you know, that – that payment needed to be approved.

Morris Dec. Exhibit 3 at 381:21-382:16.

**F.**     **Highland's Obligations under the Shared Services Agreement Were Limited to Those "Specifically" Identified Therein**

28.     NexPoint and Highland entered into that certain *Amended and Restated Shared Services Agreement* effective as of January 1, 2018 (the "SSA").  Rukavina Dec., Exhibit A.[7]

29.     Article II of the SSA required Highland to provide "assistance and advice" with respect to certain specified services.  Highland is unaware of any provision in the SSA—and NexPoint cites to none—that authorized Highland to control NexPoint's bank accounts or required Highland to effectuate payments on behalf of NexPoint without receiving instruction or direction from an authorized representative of NexPoint.

30.     In fact, Article II of the SSA expressly provided that "for the avoidance of doubt . . . [Highland] shall ***not*** provide any advice to [NexPoint] or perform any duties on behalf of [NexPoint], other than the back- and middle office services contemplated herein, with respect to (a) the general management of [NexPoint], its business or activities . . . ."  SSA at § 2.02 (emphasis added).

31.     To emphasize the point further, the SSA expressly curtailed Highland's authority to act on NexPoint's behalf:

Section 2.06  Authority.  [Highland's] scope of assistance and advice hereunder is *limited to the services specifically provided for in this Agreement.  [Highland] shall not assume or be deemed to assume any rights or obligations of [NexPoint] under any other document or agreement to which NexPoint is a party*. . . . [Highland] shall not have any duties or obligations to [NexPoint] unless those duties and obligations are specifically provided for in this Agreement (or in any amendment, modification or novation hereto or hereof to which [NexPoint] is a party.

---

[7] References to "Rukavina Dec. __" are to the *Declaration of Davor Rukavina* [AP Docket No. 86-1] attached to the Motion.

*Id*. § 2.06 (emphasis added).

32.     There can be no credible dispute that (a) the Note is a "document or agreement to which NexPoint is a party," and that (b) the making of the Annual Installment payments were "obligations of" NexPoint under the Note.

## G.     **The Instant Motion**

33.     Apparently stunned by Mr. Waterhouse's testimony, NexPoint now seeks to extend the expert disclosure and discovery deadlines set forth in the Scheduling Order so it can obtain expert testimony regarding Highland's legal duties under Section 6.01 of the Shared Services Agreement.  Specifically, NexPoint proposes to retain an expert to testify "on the standards and duties of care under the parties' Shared Services Agreement . . . with respect to Highland's role in NexPoint's alleged failure to make a December 21, 2020 payment on the Note (defined below); specifically, that Highland was responsible for ensuring that NexPoint made this payment." Motion ¶ 1.

## III.     **ARGUMENT**

## A.     **NexPoint's Suggested "Expert Testimony" Is Improper as a Matter of Law**

34.     NexPoint's suggested expert testimony is improper as a matter of law because it amounts to a legal conclusion.

35.     A party may not offer an expert opinion on the scope of a party's "legal duty" because such testimony amounts to a legal conclusion.  *See Panhandle Adver., LLC v. United Rentals Realty, LLC*, 2:19-CV-189-Z-BR, 2021 WL 1112901, at *5 (N.D. Tex. Feb. 12, 2021); *Flax v. Quitman County Hosp., LLC*, 2:09-CV-101-M-D, 2011 WL 3585870, at *5 (N.D. Miss. Aug. 16, 2011).

36.     NexPoint's suggested expert testimony relates to Highland's "duties of care under the parties' [SSA]" and, specifically, whether "Highland was responsible" under the SSA for

"ensuring that NexPoint made" its Annual Installment payment under its Note. Motion ¶¶ 1, 18. This is precisely the type of expert testimony that courts preclude because it constitutes a legal conclusion. *See Panhandle*, 2021 WL 1112901 at *5 (granting plaintiff's motion to exclude expert testimony "as to his opinions regarding the legal duties Defendant owed Plaintiff under the lease at issue" because "opinions on the duties owed by the defendants and whether they fulfilled those duties were legal conclusions and not the proper subject for expert testimony"); *Flax*, 2011 WL 3585870 at *5 (prohibiting expert testimony "on the issue of *law* of whether a duty of care was owed") (emphasis in original); *Hanspard v. Otis Elevator Co.*, CIV.A. 05-1292, 2007 WL 839994, at *2 (W.D. La. Jan. 12, 2007) (granting plaintiff's motion *in limine* to exclude expert testimony where "an opinion as to the scope of [party's] contractual duties" constitutes a legal conclusion); *Taylor Pipeline Const., Inc. v. Directional Rd. Boring, Inc.*, 438 F. Supp. 2d 696, 706 (E.D. Tex. 2006) (finding expert testimony improper where it "opines as to the duties" owed by parties because "they amount to conclusions of law").

37.     The question of whether Highland owed or breached any legal duties is an issue for the trier of fact to decide. *See Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) (affirming lower court's preclusion of expert testimony regarding whether officers and directors "fulfilled their fiduciary duties to the Company … is a legal opinion and inadmissible. Whether the officers and directors breached their fiduciary duties is an issue for the trier of fact to decide. It is not for [the expert] to tell the trier of fact what to decide").

38.     Accordingly, NexPoint's suggested expert testimony on Highland's duties under the SSA is improper as a matter of law, and the Motion should be denied on this basis alone.

**B.     NexPoint Fails to Establish that Good Cause Exists to Modify the Scheduling Order**

39.     NexPoint fails to satisfy its burden of demonstrating good cause to modify the Scheduling Order.

10

40.    Under Rule 16(b) of the Federal Rules of Civil Procedure, a scheduling order may be modified only for "good cause." FED. R. CIV. P. 16(b)(4).  Courts consider four factors in determining whether "good cause" is shown: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir.1990).  These are the same four factors used to determine whether to exclude expert testimony under Rule 37(c)(1) of the Federal Rules of Civil Procedure.  *See Grand Time Corp. v. Watch Factory, Inc.*, 3:08-CV-1770-K, 2009 WL 10678210, at *2 (N.D. Tex. Nov. 18, 2009).   Ultimately, "the good cause standard requires the 'party seeking relief to show that the deadlines [could not] reasonably [have been] met despite the diligence of the party needing the extension.'" *Binh Hoa Le v. Exeter Fin. Corp.*, 3:15-CV-3839-L, 2019 WL 1436375, at *14 (N.D. Tex. Mar. 31, 2019) (quoting *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)).

41.    "Under Rule 16(b), the movant has the burden of showing good cause to modify a scheduling order." *Grand Time*, 2009 WL 10678210 at *3.  Whether to modify a scheduling order is within the court's broad discretion.  *See Geiserman*, 893 F.2d at 790 ("[O]ur court gives the trial court broad discretion to preserve the integrity and purpose of the pretrial order") (internal quotations omitted); *Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997).  Moreover, "a trial court's decision to exclude evidence as a means of enforcing a pretrial order must not be disturbed absent a clear abuse of discretion." *Geiserman*, 893 F.2d at 790.

42.    Each of the four factors weighs in favor of denying modification of the Scheduling Order.

1. **NexPoint's Explanation for Failing to Timely Designate an Expert Is Deficient**

43.     NexPoint's explanation for its failure to timely designate an expert is disingenuous. NexPoint contends that, *inter alia*, its failure to previously designate an expert was "due solely to not having the benefit of Waterhouse's and Seery's recent deposition testimony," and that expert testimony is now "necessitated by Waterhouse's testimony and not any prior action or inaction of NexPoint Motion." Motion ¶ 21.  NexPoint seeks to modify the Scheduling Order simply because the deposition of one of its witnesses did not go well.  This is plainly improper under Rule 16(b). *See Reliance*, 110 F.3d at 257 (affirming lower court's denial of party's request to supplement expert report where "[movant] asked for an opportunity to avoid the deadline for its expert report merely because the deposition of its expert witness did not go well," noting that "[d]istrict judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case").

44.     Moreover, NexPoint filed its Original Answer nine (9) months ago and its Original Defense was expressly based on the SSA.  [AP Docket No. 6 ¶¶ 39-41].  Given the testimony of Mr. Dondero (which could not have been unexpected) and Mr. Waterhouse that NexPoint never authorized or instructed Highland to make the Annual Installment payment due on December 31, 2020, *see* Section II.E, *supra*, NexPoint has always had the burden of proving that Highland owed a duty under the SSA, yet it never offered expert opinions on the topic.  If NexPoint wanted to offer "expert testimony" concerning Highland's duties under the SSA, it had nine months to do so, and Mr. Waterhouse's testimony, expected or not, does nothing to change that.  *See Geiserman*, 893 F.2d at 792 (finding party failed to provide a "valid reason that would justify excusing him from the deadlines imposed by the lower court," noting "[t]he claimed importance of expert testimony underscores the need for [party] to have timely designated his expert witness," and "[t]he importance of such proposed testimony cannot singularly override the enforcement of local rules

12

and scheduling orders"). NexPoint's conclusory statements regarding the need for expert testimony are insufficient under Rule 16(b). *See Binh Hoa*, 2019 WL 1436375 at *20 (finding "vague and conclusory statements regarding the need for additional information or facts do not adequately explain [party's] failure to meet the expert deadline in the Scheduling Order").

45. Accordingly, the first factor strongly favors denial of the Motion.

## 2. **NexPoint's Suggested "Expert" Testimony Is Irrelevant**

46. The second factor—the importance of the suggested expert testimony— weighs heavily in favor of denying modification of the Scheduling Order.

47. In addition to being improper, the suggested expert testimony is also irrelevant. To be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Charalambopoulos v. Grammer*, 3:14-CV-2424-D, 2017 WL 930819, at *9 (N.D. Tex. Mar. 8, 2017) (quoting *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002)).

48. NexPoint contends that its suggested expert testimony is "important because the duties of care as specified in the [SSA] are terms of art necessitating an expert analysis." Motion ¶ 21. NexPoint's reliance on Section 6.01 in support of its Motion is misplaced.

49. By its express terms, Section 6.01 does not impose a duty on Highland to make or effectuate Annual Installment payments on NexPoint's behalf without authorization from a representative of NexPoint. Rather, Section 6.01 sets forth a "standard of care" that applies *only* with respect to the discharge of "duties under this Agreement."[8] In fact, to remove all doubt, the

---

[8] Notably, and notwithstanding the "standard of care" set forth in Section 6.01, the SSA provides Highland with considerable exculpation and indemnification protections that alone defeat NexPoint's Original Defense. For example, NexPoint agreed not to hold Highland liable for any acts or omissions unless it is determined by a court of competent jurisdiction to "be the result of gross negligence or to constitute fraud or willful misconduct." Rukavina Dec., Exhibit A § 6.02. NexPoint also agreed to indemnify Highland "from and against any and all claims and causes of action" for, among other things, "negligence." *Id.* § 6.03.

SSA emphasizes multiple times that Highland had *no* duties or obligations except with respect to those "specifically" identified therein. *See* Rukavina Dec., Exhibit A §§ 2.02, 2.06. NexPoint does not and cannot identify any provision in the SSA that imposes a duty on Highland to make Annual Installment payments on NexPoint's behalf without direction from an authorized NexPoint representative. *See* Original Answer ¶¶ 39-41 (no SSA provision cited); Amended Answer ¶¶ 39-41 (no SSA provision cited); Final Answer ¶¶ 80-82 (no SSA provision cited); Motion, generally (citing only to Section 6.01).

50.     Thus, based on the plain terms of the SSA and NexPoint's own pleadings, expert testimony regarding Highland's alleged "duties" is irrelevant. *See Geiserman*, 893 F.2d at 791 (affirming lower court's refusal to modify scheduling order, noting that expert testimony "is not critical" if the issue at hand is "obvious to a layperson or established as a matter of law"); *Rolls-Royce Corp. v. Heros, Inc.*, CIV.A. 307-CV-0739-D, 2010 WL 184313, at *6 (N.D. Tex. Jan. 14, 2010) ("Testimony is irrelevant [] when an expert offers a conclusion based on assumptions unsupported by the facts of the case").

51.     Moreover, the suggested expert testimony will not help the factfinder understand a complex fact in issue. Contrary to NexPoint's representations, this Adversary Proceeding does not involve complicated or technical issues. The issues in this Adversary proceeding are whether NexPoint defaulted on its Note and whether NexPoint can prove that Highland's alleged "negligence" or "breach of contract" caused such default. Final Answer ¶¶ 80-82. These issues are well within a fact-finder's understanding and are not the type which would necessitate an expert. *See Nola Ventures, LLC v. Upshaw Ins. Agency, Inc.*, CV 12-1026, 2014 WL 12721924, at *10 (E.D. La. Nov. 7, 2014), *on reconsideration,* CIV.A. 12-1026, 2014 WL 6090584 (E.D. La. Nov. 13, 2014) (excluding expert testimony where, "[d]espite Plaintiffs' arguments to the contrary, this case is not about the complicated inner workings of the insurance industry. It is about whether

an insurance agent misrepresented the type of coverage that Plaintiffs believed they were purchasing, and whether Defendants owed a heightened duty of care to Plaintiffs. Nothing in [expert's] report or proposed testimony will help the jury to understand a fact in issue that is not within the common understanding of a lay juror"); *Henderson v. Atmos Energy*, 496 F. Supp. 3d 1011, 1017 (E.D. La. 2020) (excluding expert testimony as irrelevant and unnecessary where "it is one based in common sense").

52.    At all relevant times, Mr. Waterhouse was an officer and a fiduciary of NexPoint, serving as its Treasurer. If anyone had an obligation to ask Mr. Dondero if he wanted to reconsider his instructions, it was Mr. Waterhouse in the first instance—not in his capacity as an employee of Highland, but as an officer and fiduciary of the obligor, NexPoint. Whether Mr. Dondero or Mr. Waterhouse is telling the truth is an interesting issue, but the Court need not resolve their dispute because it would only be relevant if the SSA imposed a duty on Highland to effectuate the Annual Installment payment without ever receiving any direction or instruction from a duly authorized representative of NexPoint. And, as Mr. Waterhouse testified, the SSA imposes no such duty.

53.    Accordingly, the suggested expert testimony is irrelevant, and the Motion should be denied on this basis.

### 3.    Allowing the Testimony Would Prejudice Highland

54.    The third and fourth factors also weigh in favor of denying the Motion.

55.    Allowing the suggested expert testimony would prejudice Highland because Highland would need to expend additional resources responding to NexPoint's latest theory of its defense by way of: (i) retaining a rebuttal expert; (ii) deposing NexPoint's expert; or (iii) moving to strike the expert testimony. *See Geiserman*, 893 F.2d at 791 (affirming lower court's striking of untimely witness designation and preclusion of expert testimony where delay of "a couple

weeks in designating the expert witness" would have "disrupted the court's discovery scheduling and the opponent's preparation," and resulted in "expense that would result from an extended discovery schedule for [movant's] failure to adhere to deadlines," noting that "the trial court has latitude to control discovery abuses and cure prejudice by excluding improperly designated evidence"); *Binh Hoa*, 2019 WL 1436375 at *20 ("It would [] be patently unfair to allow Plaintiff to supplement and amend his expert report this late in the case without: (1) allowing Defendants to amend their expert designations and provide an expert report to address the matters in Plaintiff's amended and supplemental expert reports, (2) giving Defendants an opportunity to depose Plaintiff's expert regarding his most recent opinion . . .").

56.    A continuance would not cure this prejudice because the trial on the merits of the underlying action would be unnecessarily delayed.  This would ultimately delay Highland's potential recovery under the Note and distributions to creditors under Highland's Plan.  *See S&W Enters.*, 315 F.3d at 537 (affirming lower court's denial of untimely submission of expert report where defendant would be forced to conduct additional discovery in response to movant's new materials, noting that "while a continuance could be granted for additional discovery . . . a continuance would unnecessarily delay the trial"); *Reliance*, 110 F.3d at 257-58 (affirming lower court's denial to modify scheduling order to add expert testimony where court found "[t]o allow plaintiff to add more material now and create essentially a new report would prejudice the defendants, who would then have to get an expert to address these last-minute conclusions, and thus disrupt the trial date in this case") (internal quotations omitted); *Geiserman*, 893 F.2d at 791 (finding that while attorney "could have conducted new discovery and redeposed witnesses under a continuance in response to the untimely designation, this would have resulted in additional delay and increased the expense of defending the lawsuit"); *Binh Hoa*, 2019 WL 1436375 at *20 ("Ordering another continuance would only serve to reward Plaintiff for his dilatory conduct and

failure to comply with court-ordered deadlines and this district's Local Civil Rules and result in additional delay and expense. Regardless, it is not incumbent on the court to award litigants for failing to develop their cases").  A simple collection action like the Adversary Proceeding should not be continually extended simply because the defendant is unsatisfied with its defenses and the evidence adduced in discovery.

57.     For these additional reasons, NexPoint fails to demonstrate good cause to excuse it from the deadlines set forth in the Scheduling Order.  Accordingly, the Motion should be denied.

**C.      HCRE's and HCMS's Joinders Have Even Less Merit than the Motion and Should Be Denied**

58.     The Joinders are even more frivolous than the Motion.  In addition to the reasons set forth above, neither HCMS nor HCRE was ever a party to any shared services agreement with Highland, let alone the SSA that is the foundation of the Motion.  Accordingly, the Joinders are without merit and should be summarily denied by the Court.

**CONCLUSION**

For the foregoing reasons, Highland respectfully requests that the Court (i) deny the Motions and (ii) grant such other and further relief as the Court deems just and proper.

Dated: December 1, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:      jpomerantz@pszjlaw.com
             jmorris@pszjlaw.com
             gdemo@pszjlaw.com
             hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
E-mail:     MHayward@HaywardFirm.com
            ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*