Davor Rukavina
Julian P. Vasek
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75202-2790
(214) 855-7500 telephone
(214) 978-4375 facsimile
Email: drukavina@munsch.com

ATTORNEYS FOR NEXPOINT ADVISORS, L.P.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: § | |
| § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., § | |
| § | Case No. 19-34054-sgj11 |
| Debtor. § | |
| § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., § | |
| § | |
| Plaintiff, § | Adv. No. 21-03005-sgj |
| § | |
| vs. § | Civ. Act. No. 3:21-cv-00880-C |
| § | |
| NEXPOINT ADVISORS, L.P., JAMES § | |
| DONDERO, NANCY DONDERO, AND THE § | |
| DUGABOY INVESTMENT TRUST, § | |
| § | |
| Defendants. § | |

## BRIEF IN SUPPORT OF OBJECTION OF NEXPOINT
## ADVISORS, L.P. TO ORDER DENYING MOTIONS TO EXTEND
## EXPERT DISCLOSURE AND DISCOVERY DEADLINES

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

I.  RELIEF REQUESTED ................................................................................................ 1

II. BACKGROUND .......................................................................................................... 1

    A.  THE ADVERSARY PROCEEDING ................................................................................. 1

    B.  NEXPOINT'S AFFIRMATIVE DEFENSE ........................................................................ 2

    C.  THE EXPERT WITNESS DEADLINES ........................................................................... 4

    D.  THE MOTION AND THE ORDER .................................................................................. 5

    E.  NEXPOINT'S RETENTION OF STEVE PULLY AND HIS EXPERT REPORT ..................... 5

III. ARGUMENTS AND AUTHORITIES ........................................................................ 6

    A.  RECONSIDERATION OF ORDER AS ORDER OF MAGISTRATE JUDGE ......................... 6

    B.  STANDARD APPLICABLE TO THE MOTION ................................................................ 7

        1.  Explanation for Failure to Timely Designate Expert ................................... 7

        2.  The Importance of the Expert .................................................................... 10

        3.  No Potential Prejudice to the Debtor ......................................................... 12

        4.  Availability of Continuance to Avoid Prejudice ........................................ 13

    C.  THE BANKRUPTCY COURT CLEARLY ERRED IN ENTERING THE ORDER ................. 13

IV. CONCLUSION ........................................................................................................... 16

CERTIFICATE OF SERVICE ....................................................................................... 18

## **TABLE OF AUTHORITIES**

### **Cases**

*Adams v. Medtronics Inc.*, 2021 U.S. Dist. LEXIS 47246 (E.D. Tex. 2021) ...............................13

*Baylor Health Care Sys. v. Equitable Plan Servs.*, 955 F. Supp. 2 678 (N.D. Tex. 2013)..............7

*Geiserman v. MacDonald*, 893 F.2d 787 (5th Cir. 1990) ..............................................................10

*Guzman v. Hacienda Records & Recording Studio Inc.*, 808 F.3d 1031 (5th Cir. 2015)............ 6-7

*In re Geert Duizenstraal*, 1997 U.S. Dist. LEXIS 16506 (N.D. Tex. 1997) ...................................6

*In re Schooler*, 725 F.3d 498 (5th Cir. 2013)..................................................................................8

*Marathon Fin. Ins. Inc. RRG v. Ford Motor Co.*, 591 F.3d 458 (5th Cir. 2009)............................7

*Quijano v. United States*, 325 F.3d 564 (5th Cir. 2003) ..........................................................10, 15

*S&W Enters. v. Southtrust Bank of Ala.*, 315 F.3d 533 (5th Cir. 2003) .........................................7

*Streber v. Hunter*, 221 F.3d 701 (5th Cir. 2000)......................................................................10, 15

### **Other**

Fed. R. Civ. P. 16............................................................................................................................7

Fed. R. Civ. P. 54......................................................................................................................6, 13

Fed. R. Civ. P. 72...................................................................................................................1, 6, 14

Local Civ. R. 72.1 ...........................................................................................................................1

COMES NOW NexPoint Advisors, L.P. ("NexPoint"), one of the defendants in the above styled and numbered Adversary Proceeding initiated by Highland Capital Management, L.P. as the plaintiff (the "Debtor"), and files this its *Brief* (the "Brief") in support of its *Objection to Order Denying Motions to Extend Expert Disclosure and Discovery Deadlines* (the "Objection"), respectfully stating as follows:

## I.    RELIEF REQUESTED

1.      By the Objection, and pursuant to Federal Rule of Civil Procedure 72(a) and Local Civil Rule 72.1, NexPoint seeks the District Court's review of the Bankruptcy Court's *Order Denying Motions to Extend Expert Disclosure and Discovery Deadlines* (the "Order"). NexPoint submits that, in denying NexPoint leave to extend the expert disclosure and discovery deadlines, the Order is clearly erroneous and contrary to law and should, therefore, be reconsidered and reversed by the District Court.

## II.    BACKGROUND

### A.    THE ADVERSARY PROCEEDING

2.      The Debtor was a debtor and is now a reorganized debtor in a Chapter 11 case pending before the Bankruptcy Court.

3.      The Debtor initiated this Adversary Proceeding with the filing of its original complaint against NexPoint on January 22, 2021.

4.      By this Adversary Proceeding, the Debtor seeks to collect on a promissory note issued by NexPoint to the Debtor on May 31, 2017 in the original principal amount of $30,746,812.33 (the "Note"). APP 008 ¶ 21.[1]  The Note is a 30-year note and provides for an

---

[1]      "APP" refers to the *Appendix in Support of Objection of NexPoint Advisors, L.P. to Order Denying Motions to Extend Expert Disclosure and Discovery Deadlines*, which is being filed contemporaneously herewith.

annual payment of principal and interest. APP 008 ¶ 22. After prior payments, the Debtor asserts that $23,071,195.03 remains due and owing on the Note. APP 010 ¶ 31.

5.     On July 28, 2021, the District Court entered an order adopting this Court's report and recommendation and ordering that the reference for this Adversary Proceeding will be withdrawn once the Bankruptcy Court certifies this Adversary Proceeding as being trial ready. APP 002. As part of the same, the District Court necessarily agreed and ordered that NexPoint has a right to a trial by jury of this Adversary Proceeding.

6.     Although not clear, it appears that the Bankruptcy Court is acting in the capacity of a magistrate judge, as the Bankruptcy Court itself appears to have concluded, although there is no order so specifying. APP 775 n.1; APP 776 n.5 Accordingly, in order not to waive its rights, NexPoint filed the Objection.

**B.     NEXPOINT'S AFFIRMATIVE DEFENSE**

7.     The Debtor alleges that the Note required NexPoint to make a payment of principal and interest on December 31, 2020, and that NexPoint failed to make this payment. APP 009 ¶ 26. Thus, in January 2021, the Debtor sent notice that the Note had been accelerated, and the Debtor demanded full and immediate payment. APP 009 ¶ 27.

8.     One of NexPoint's affirmative defenses in this Adversary Proceeding concerns that certain *Amended and Restated Shared Services Agreement* (the "Shared Services Agreement") between the Debtor and NexPoint dated January 1, 2018. APP 086 ¶ 80; APP 105. The Shared Services Agreement was in place as of December 31, 2020, although the Debtor terminated it later, in 2021. APP 462 at 2–9. Under the Shared Services Agreement, the Debtor provided various services to NexPoint, including so-called "back office" services, including treasury, accounting, and payables services. APP 462 at 13–APP 464 at 9. NexPoint has alleged that, pursuant to the

Shared Services Agreement, the Debtor was responsible for ensuring that NexPoint made the allegedly required December 31, 2020 payment, although such payment would be made from NexPoint's funds. Indeed, Waterhouse (defined below) testified that it was "reasonable for NexPoint to rely on the debtors' employees to inform NexPoint of an upcoming payment due on the $30 million promissory note." APP 473 at 22–APP 474 at 8.

9. NexPoint asserts that the Debtor failed to do so and, therefore, caused the alleged default, which it now seeks to exploit, and that, but for the Debtor's negligence, the Note would remain in place, unaccelerated. NexPoint has always asserted this as an affirmative defense. *See* Defendant's Original Answer, Docket No. 6. NexPoint's defense, however, was based on its belief that the Debtor and its employees, including Waterhouse, did nothing to facilitate or ensure the payment, as opposed to a conscious decision not to make the payment. In other words, until NexPoint deposed Mr. Waterhouse, NexPoint believed that the Debtor simply forgot to facilitate the December 31, 2020 payment of the Note as it had done in the past and as NexPoint was relying on the Debtor to do again (using NexPoint's funds of course).

10. On October 19, 2021, the Debtor deposed Frank Waterhouse ("Waterhouse"), as did NexPoint, in connection with this Adversary Proceeding. Waterhouse was the Debtor's chief financial officer in December, 2020, and either the treasurer or chief financial officer (either way an officer) of NexPoint in December, 2020. APP 155 at 3–6; APP 463 at 3–8; APP 549 ¶ 25. To be clear, Waterhouse was the Debtor's employee, although he provided services to NexPoint as well pursuant to the Shared Services Agreement. Among other things, at this deposition, Waterhouse testified that, in early December, 2020, James Dondero ("Dondero"), who at that time controlled NexPoint but did not control the Debtor, instructed Waterhouse not to cause NexPoint

to pay any more funds to the Debtor, including, expressly on the Note.  APP 526 at 4–APP 528 at 17.

11.    This changed the potential facts as NexPoint understood them from a situation where the Debtor simply failed utterly to facilitate the payment, as it has always done, to one where the Debtor intentionally, allegedly upon the instructions of Dondero, decided not to facilitate the payment.  Assuming the Dondero instruction to be true, this raises the question of whether the Debtor thereafter had any affirmative duty with respect to the alleged instruction.

## C.    THE EXPERT WITNESS DEADLINES

12.    NexPoint did not know that Waterhouse would provide this testimony.  APP 791 ¶ 12. NexPoint understood that Dondero instructed Waterhouse to make no further payments on the Shared Services Agreement, because Dondero believed that NexPoint had overpaid by millions of dollars on the Shared Services Agreement.  But NexPoint did not understand that Waterhouse would testify that Dondero instructed him also not to pay the Note.

13.    If Dondero told Waterhouse in early December 2020 not to pay on the Note, then the question becomes whether Waterhouse or the Debtor thereafter "put their heads in the sand" in violation of any affirmative duty or obligation they may have had regarding the matter, such as: to ask Dondero whether they correctly understood him; to ask Dondero whether he meant NexPoint and the Note; to inform Dondero of the potential consequences of a default by potentially accelerating a 30-year promissory note; or to try to dissuade him from his decision.  After all, the Debtor was responsible to facilitate the payment, the Debtor had various duties under the Shared Services Agreement, and it was in the Debtor's interest that NexPoint would default, thus creating a conflict of interest.

14. At that time, NexPoint determined that it was appropriate, and would assist the finder of fact, to retain an expert on the "standard of care" provided for in the Shared Services Agreement. This is especially important because this will be a jury trial in the District Court. NexPoint did not believe that it would need to retain such an expert, and it had no reasonable grounds to suspect that it would need such an expert, prior to these depositions.

15. On September 6, 2021, the Bankruptcy Court entered a scheduling order that provided for a deadline of October 29, 2021 for the parties to designate experts and provide expert disclosures.

D.     **THE MOTION AND THE ORDER**

16. On October 29, 2021, NexPoint filed its *Motion to Extend Expert Disclosure and Discovery Deadlines* (the "Motion"). APP 089. The Debtor objected, APP 534, and NexPoint filed a reply brief. APP 786.

17. The Bankruptcy Court held a hearing on the Motion on December 13, 2021. At the conclusion of the hearing, the Bankruptcy Court orally denied the Motion and stated its reasons for such denial on the record. APP 889–891.

18. The Bankruptcy Court entered the Order on December 21, 2021. APP 894.

E.     **NEXPOINT'S RETENTION OF STEVE PULLY AND HIS EXPERT REPORT**

19. NexPoint filed its Motion as soon as it could after learning of Waterhouse's testimony, and it filed its Motion before the deadline to designate an expert expired. However, NexPoint's expert was not able to prepare his report before that deadline expired. Nevertheless, to demonstrate NexPoint's speed and that there would be no delays to this Adversary Proceeding, NexPoint filed on the docket of this Adversary Proceeding its designation of Steve Pully as its

expert, together with Mr. Pully's completed expert report, on December 10, 2021. APP 830. Thus, by the time of the hearing on the Motion, NexPoint's expert had already completed his report.

## III.   ARGUMENTS AND AUTHORITIES

### A.   RECONSIDERATION OF ORDER AS ORDER OF MAGISTRATE JUDGE

20.   The Bankruptcy Court is not a magistrate judge. The District Court's order on NexPoint's motion for the withdrawal of the reference provides that the Bankruptcy Court shall consider all pretrial matters, but does not state that the Bankruptcy Court shall do so as a magistrate subject to the rules applicable to magistrate judges. NexPoint therefore submits that the District Court may reconsider, modify, or reverse the Order and grant the Motion *de novo* as it could do with respect to any of its own pretrial orders under Rule 54(b), and NexPoint hereby seeks such review and reconsideration.

21.   However, because the issue is uncertain, and because the Bankruptcy Court appears to understand that it is acting in the capacity of a magistrate judge, NexPoint also seeks the District Court's review of the Order under Rule 72(a). In this respect, the Federal Rules of Bankruptcy Procedure do not incorporate Rule 72, even though they incorporate most of the Federal Rules of Civil Procedure into an adversary proceeding such as this one. If Rule 72(a) applies, then the standard for reconsidering the Order is that the Order is "clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a).

22.   Because the Order is not dispositive, the "clearly erroneous" standard applies. *See, e.g., In re Geert Duizenstraal*, 1997 U.S. Dist. LEXIS 16506 a *3-*4 (N.D. Tex. 1997). Under this standard, an order is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Guzman v. Hacienda Records & Recording Studio Inc.*, 808 F.3d 1031,

1036 (5th Cir. 2015). *Accord Baylor Health Care Sys. v. Equitable Plan Servs.*, 955 F. Supp. 2

678, 689 (N.D. Tex. 2013).

**B.** **STANDARD APPLICABLE TO THE MOTION**

23.     Rule 16(b) provides that a deadline in a scheduling order may be modified "for

good cause," although there is some uncertainty as to whether this standard applies only after a

deadline has passed (which is not the case here). *See* Fed. R. Civ. P. 16(b)(4); *Marathon Fin. Ins.*

*Inc. RRG v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009) ("Federal Rule of Civil Procedure

16(b) governs amendment of pleadings after a scheduling order's deadline to amend has expired").

24.     When the issue concerns an "untimely submission of expert reports," the Fifth

Circuit has specified the following four factors as guiding the decision: "(1) the explanation for

the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential

prejudice in allowing the amendment; and (4) the availability of a continuance to cure such

prejudice." *S&W Enters. v. Southtrust Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003). Again,

this test applies to a deadline which has already expired. Logically, therefore, a lesser standard

should apply when a party seeks relief prior to the expiration of a deadline, as NexPoint does here.

**1.** **Explanation for Failure to Timely Designate Expert**

25.     The explanation for the requested extension of the expert deadlines was simply that

the parties deposed Waterhouse on October 19, 2021, and it was not until that deposition that

NexPoint knew or could reasonably have known that Waterhouse would testify that he was

affirmatively instructed not to make the December 31, 2020 payment on the Note. APP 092 ¶ 12;

APP 791 ¶ 11. This testimony directly contradicted Dondero's recollection that he made no such

instruction. Since NexPoint relied on Dondero's recollection and had no reasonable grounds to

believe that Waterhouse would testify differently, there was no reason for NexPoint to retain an

expert prior to the October 19, 2021 deposition of Waterhouse. In this respect, discovery worked as it should have and NexPoint should not be penalized for the natural evolution of this lawsuit.

26. Prior to this deposition, NexPoint believed that the Debtor had utterly failed to discharge its duties under the Shared Services Agreement by not facilitating the payment on the Note. This did not call for an expert. But, once Waterhouse testified that Dondero instructed him not to make the payment, the issue fundamentally changed. This important distinction has been aptly explained by the Fifth Circuit in a case where the issue was whether a trustee breached his duties:

> Finders of fact are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence consisting of direct statements by witnesses or proof of circumstances from which inferences can fairly be drawn. Accordingly, we have explained that, as a general rule, expert testimony is not needed in many if not most cases. Moreover, although expert testimony may be necessary in a professional negligence case to establish the standard of care for the industry, an exception applies in instances of negligence that are a matter of common knowledge comprehensible to laymen.
>
> Although Liberty Mutual contends that expert testimony was required in this case, Lamesa suggests that inasmuch as the Trustee failed to act in the face of obvious danger posed by Mrs. Schooler's ready access to the bankruptcy estate's assets, and in the face of repeated warnings and inquiries by a concerned creditor, a layperson could discern that the standard of care was not met in this case.
>
> We agree with Lamesa that, under the facts of this case, expert testimony was not required to establish that the Trustee breached her duties. While the precise course of action the Trustee should have taken may be subject to reasonable debate, it requires no technical or expert knowledge to recognize that she affirmatively should have undertaken *some* form of action to acquire for the bankruptcy estate the assets to which it was entitled. As the bankruptcy court explained, by doing nothing, the Trustee ignored basic human nature.

*In re Schooler*, 725 F.3d 498, 514-15 (5th Cir. 2013) (internal citations and quotations omitted)

27. Thus, it was only after the Waterhouse deposition that NexPoint learned that, if the jury believes Waterhouse, the issue of the Debtor's standard of care under the Shared Services Agreement becomes much more complicated, thereby necessitating an expert on that standard of

care. Nor is the Debtor free of blame with respect to the timing of when NexPoint learned of Waterhouse's testimony. On May 11, 2021, the Debtor served its amended responses to NexPoint's discovery. APP 813. In those, the Debtor answered the following interrogatory:

**INTERROGATORY NO. 2:**

If the Debtor contends that it was not responsible for causing payments to be made under the Note on NexPoint's behalf pursuant to the Shared Services Agreement, explain the legal and factual basis for such contention.

**RESPONSE TO INTERROGATORY NO. 2:**

The Debtor objects to Interrogatory No. 2 on the ground that it seeks a legal conclusion or legal analysis. Subject to its objection, the Shared Services Agreement did not provide that the Debtor was responsible for causing payments to be made under the Note. The Debtor further states that after the Debtor sent NexPoint the Default Letters, NexPoint did not contend that the Debtor was required to make payments under the Note on NexPoint's behalf. The Debtor's personnel caused the January Payment to be processed upon instruction from NexPoint.

APP 819.

28. Even though NexPoint asked the Debtor to explain, factually, why the Debtor was not responsible for causing payments to be made, rather than including in its answer that Dondero gave Waterhouse the alleged instruction, the Debtor merely answered that the contract did not impose this responsibility on the Debtor. Yet, the Debtor's answer to the following request for production strongly suggests that the Debtor knew of the alleged instruction, which it did not include it in the interrogatory answer:

**REQUEST FOR PRODUCTION NO. 1:**

All Communications pursuant to which any director, officer, or employee of the Debtor was advised or instructed not to make the December Payment or to cause the December Payment to be made.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

> Subject to the General Objections, the Debtor is unaware of any documents responsive to Request for Production No. 1. <u>Any Communications responsive to Request for Production No. 1 were verbal</u>.

APP 822 (emphasis added).

29.     The Debtor could and should have stated what these verbal communications were in May, 2021. Instead, NexPoint was forced to wait until Waterhouse's deposition to learn of the alleged verbal communication. Alternatively, the Debtor too did not know ahead of time how Mr. Waterhouse would answer, but then it can hardly accuse NexPoint of any delay.

## 2.     <u>The Importance of the Expert</u>

30.     This is a jury trial where the issues concern the Debtor's standard of care under the Shared Services Agreement. "Expert testimony is generally <u>required</u> to prove the applicable standard of care." *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003) (emphasis added); *Streber v. Hunter*, 221 F.3d 701, 724 (5th Cir. 2000) ("Breach of the standard of care must generally be proven by expert testimony"). [E]xpert testimony is <u>necessary</u> to establish the standard of care . . . Similarly, breach of a fiduciary duty or a conflict of interest <u>requires</u> proof of expert testimony." *Geiserman v. MacDonald*, 893 F.2d 787, 793-94 (5th Cir. 1990) (internal quotations removed) (emphasis added).

31.     The Shared Services Agreement, in place during November and December, 2020 (when Dondero allegedly gave Waterhouse the instruction), provides as follows:

> Section 6.01. <u>Standard of Care</u>. Except as otherwise expressly provided herein, each Covered Person shall discharge its duties under this Agreement with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. To the extent not inconsistent with the foregoing, each Covered Person shall follow its customary standards, policies, and procedures in performing its duties hereunder.

APP 115.

32.     "Covered Person" includes the "Staff and Services Provider," *i.e.* the Debtor, and its managers, directors, officers, and shareholders.   APP 106.   There can be no dispute that section 6.01 applied to the Debtor itself, and to Waterhouse.

33.     The Shared Services Agreement identifies at least three services that the Debtor was required to provide that are directly on point:

> (a)     *Back- and Middle Office*.  Assistance and advice with respect to back- and middle-office functions including, but not limited to . . . finance and accounting, <u>payments</u>, operation, book keeping, cash management . . . accounts payable . . .
>
> (k)     *Ancillary Services*.   Assistance and advice on all things ancillary or incidental to the foregoing.
>
> (l)     *Other*.   Assistance and advice relating to such other back- and middle-office services in connection with the day-to-day business of [NexPoint] as [NexPoint] and [the Debtor] may from time to time agree.

APP 107–109 (emphasis added).

34.     The Shared Services Agreement also sets forth the standard of care that the Debtor was to provide to NexPoint in discharging the Debtor's duties under the Shared Services Agreement:

> the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

APP 115 § 6.01

35.     Assistance and advice—again, *advice*—with respect to "payments" is expressly included.  And, should there be any doubt, the Debtor's own Chief Financial Officer at the time confirmed that it was "reasonable for NexPoint to rely on the debtors' employees to inform NexPoint of an upcoming payment due on the $30 million promissory note."   APP 473 at 22–APP 474 at 8.  The question therefore is, assuming that Dondero instructed Waterhouse not to

make the payment on the Note, whether Waterhouse thereafter doing nothing to clarify and ensure that he correctly understood Dondero, or to advise Dondero of the potential consequences of non-payment, or to seek to dissuade Dondero from his instruction, comported with "the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

36. This is appropriate for an expert to review because a lay juror is not likely to resolve these questions from personal experience or common sense. Thus, extending the expert discovery deadline is important for NexPoint to fully present its defense and for the jury to be able to discharge its duties in resolving the defense.

### 3. No Potential Prejudice to the Debtor

37. Granting the Motion would not work any prejudice on the Debtor. NexPoint filed its expert report on December 10, 2021, and only a short additional time would be needed for the Debtor to depose that expert and potentially retain a rebuttal expert. Trial of this Adversary Proceeding is not set and, on December 17, 2021, the Debtor filed its motion for summary judgment, the hearing on which will not be until March 8, 2022. The Bankruptcy Court will then provide a report and recommendation on that motion, subject to *de novo* review by the District Court, which will likely take weeks if not months to resolve. Thus, granting the Motion would not have delayed the ultimate trial of this Adversary Proceeding at all.

38. With respect to the Debtor's argument that it will be prejudiced by potentially having to expend funds to retain a rebuttal expert, NexPoint's first response is that, if the Debtor prevails on its claims under the Note, it will seek to recover its fees and costs from NexPoint. Second, and perhaps more importantly, having to incur costs for an expert in a $24 million lawsuit,

where the Debtor has always known of NexPoint's affirmative defense and very likely knew of Waterhouse's testimony before (as there were two other employees, David Klos and Kristin Hendrix, who are still employees of the Debtor, who testified at deposition that Waterhouse told them of Dondero's alleged instruction at approximately the same time the instruction was allegedly given), is not legally cognizable prejudice any more than it would be in any case:

> any additional costs incurred from an extension would not be unreasonable. Here, Plaintiffs seek an extension so they can offer an expert witness for their products liability claims. Defendants have been aware of these claims since this case's inception. Because expert witnesses are crucial for Plaintiffs' prima facie case, Defendants have known they would need to prepare rebuttal evidence since this case began on October 14, 2019. These facts do not present an instance in which a party adds an additional claim, or introduces an eleventh-hour witness, to foist additional litigation costs without warning.

*Adams v. Medtronics Inc.*, 2021 U.S. Dist. LEXIS 47246 at *12 (E.D. Tex. 2021).

### 4. <u>Availability of Continuance to Avoid Prejudice</u>

39. As this Adversary Proceeding is not set for trial, as it will not be set for trial until it is certified as trial ready by the Bankruptcy Court, and as it will not be certified as trial ready until after the Debtor's motion for summary judgment is adjudicated, there is no need for a continuance and this factor is not relevant to the ultimate issue. As discussed above, granting the Motion would not cause any delay in the ultimate adjudication of this Adversary Proceeding.

### C. <u>THE BANKRUPTCY COURT CLEARLY ERRED IN ENTERING THE ORDER</u>

40. As noted, NexPoint submits that the District Court can and should review the Motion and Order under Rule 54(b) *de novo* by considering the underlying evidence, arguments, and opposition. This is especially the case because the District Court will try this Adversary Proceeding to a jury, and the District Court should control what evidence is presented to the jury.

41.    If, however, the District Court applies Rule 72(a), then NexPoint submits that the District Court should reconsider the Order and grant the Motion because the Bankruptcy Court's denial of the Motion was clearly erroneous.

42.    In this respect, the Bankruptcy Court concluded that, because NexPoint had always asserted its affirmative defense that the Debtor caused the alleged default:

> I do not think the sudden statement of Frank Waterhouse suddenly is a game-changer that creates some new need for an expert. So, therefore, looking at the factors, I don't think the explanation here to extend the deadlines has merit.

APP 890 at 19–23.

43.    This was clearly erroneous.  The only evidence submitted was that NexPoint did not learn of Waterhouse's testimony until he was deposed, and that NexPoint did not have a reasonable ability to learn of that testimony beforehand.  No evidence to the contrary was presented.  And, the Bankruptcy Court failed to take into account the Debtor's failure to fully answer NexPoint's interrogatory, which asked for any facts as to why the Debtor did not facilitate or make the payment on the Note.

44.    The Bankruptcy Court also concluded that there was no importance to the amended schedule:

> And I do not think an expert can testify about contractual duties and attempt to interpret its provisions. That is the job of the Court, and I think it is improper subject matter for an expert.

> I don't buy into any notion that this is terribly unique territory or exotic. I mean, it was a contract. Shared services agreements are not all that unique, shall we say? It's not a device that is used solely in the investment advisor fund world.  It's in the corporate world generally.  Courts see these in all kinds of cases.  So, again, I don't think contract interpretation needs an expert here or should have an expert here.

> And just because experts are sometimes -- often, I should say -- appropriate in legal malpractice or medical malpractice or other kinds of tort cases where duties might be needing of elaboration, here, the contract spells out the duties, and I just don't think any of those cases argued are applicable.

APP 891 at 3–19.

45.     Here, the Bankruptcy Court not only clearly erred; it erred as a matter of law. NexPoint's expert was not being asked to interpret the contract or tell the jury what the contract says. Rather, he was only being asked to opine on whether the Debtor's failure comported with the standard of care actually set forth in the contract:

> the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

APP 115 § 6.01.

46.     Opining on whether the Debtor acted with the care, skill, prudence, and diligence under the circumstances as a prudent person in a like situation would have is a question of fact. It is not a legal interpretation of a contract. Again, the Fifth Circuit holds that "[e]xpert testimony is generally <u>required</u> to prove the applicable standard of care." *Quijano*, 325 F.3d at 567) (emphasis added); *Streber*, 221 F.3d at 724 ("Breach of the standard of care must generally be proven by expert testimony"). Clearly, therefore, as expert testimony on this issue is potentially required, it cannot invade the province of the Court to determine what the applicable standard of care is.

47.     The Bankruptcy Court also found prejudice in denying the Motion:

> Prejudice, I do think there is potential prejudice in allowing an extension of this deadline. It will be costly, add a layer of expense and delay to this litigation, when I don't think it would be admissible at trial ultimately.

APP 891 at 20–23.

48.     This finding is likewise clearly erroneous and erroneous as a matter of law. The Bankruptcy Court based its finding of prejudice on its view that the expert testimony may not be admissible. As noted above, this is wrong: *Dabuert* issues aside, expert testimony on whether a standard of care has been complied with is absolutely admissible and may be required. The Bankruptcy Court's overall finding of prejudice cannot be separated from this wrong sub-finding.

And, on the issue of cost, as noted above the Debtor will have a claim for any increased fees and expenses if it prevails at trial and such increased fees and expenses—ordinary incidents of high-stakes litigation—are not by themselves legally cognizable prejudice any more than they are in any case.

## IV. <u>CONCLUSION</u>

49.     The District Court will conduct the jury trial in this case, and the District Court should control what evidence the jury will weigh.  In the end, the trial here will be about the truth, the facts, and the equities.  A scheduling order should not be used to prevent that result.  Here, the delay is not the fault of NexPoint, since NexPoint did not know what Waterhouse would say until he was deposed.  Any delay is the fault of the Debtor in not fully answering NexPoint's discovery. The expert is important because, if the jury believes Waterhouse, then NexPoint should have the ability to demonstrate that the Debtor nevertheless breached its duties to NexPoint in causing the alleged default on the Note; something on which expert testimony is certainly appropriate, if not required.  And, there is no real prejudice to the Debtor, certainly not by way of any delay in the ultimate adjudication of this case.  In the end, while schedules and scheduling orders are important, they should not be used to prejudice an otherwise viable issue or tactically benefit a litigant. NexPoint therefore prays that the District Court reverse the Order and grant the Motion.

RESPECTFULLY SUBMITTED this the 5th day of January, 2022.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
    Davor Rukavina
    State Bar No. 24030781
    Julian P. Vasek.
    State Bar No. 24070790
    500 N. Akard Street, Suite 3800
    Dallas, Texas 75202-2790
    Telephone: (214) 855-7500
    Facsimile: (214) 978-4375
    Email: drukavina@munsch.com
    Email: jvasek@munsch.com

**ATTORNEYS FOR NEXPOINT ADVISORS, L.P.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on January 5, 2022, a true and correct copy of the foregoing document, including any exhibit(s) thereto, was served on the following recipients via the Court's CM/ECF system:

Case Admin Sup     txnb_appeals@txnb.uscourts.gov

Bryan Christopher Assink       bryan.assink@bondsellis.com

Clay M Taylor       clay.taylor@bondsellis.com

Daniel P Elms       elmsd@gtlaw.com, guerrak@gtlaw.com

Davor Rukavina       drukavina@munsch.com

Deborah Rose Deitsch-Perez       deborah.deitsch-perez@stinson.com, kinga.mccoy@stinson.com, patricia.tomasky@stinson.com

Douglas Draper       ddraper@hellerdraper.com, dhepting@hellerdraper.com, gbrouphy@hellerdraper.com, vgamble@hellerdraper.com

Gregory V Demo       gdemo@pszjlaw.com, hwinograd@pszjlaw.com, jfried@pszjlaw.com, lsc@pszjlaw.com

Jeffrey N Pomerantz       jpomerantz@pszjlaw.com

John A Morris       jmorris@pszjlaw.com, hwinograd@pszjlaw.com, lsc@pszjlaw.com

Julian Preston Vasek       jvasek@munsch.com

Leslie A Collins       lcollins@hellerdraper.com, dhepting@hellerdraper.com

Michael P Aigen       michael.aigen@stinson.com, stephanie.gratt@stinson.com

Stacey G Jernigan       sgj_settings@txnb.uscourts.gov, anna_saucier@txnb.uscourts.gov

Zachery Z. Annable       zannable@haywardfirm.com, zannable@franklinhayward.com

/s/ Davor Rukavina
Davor Rukavina