HIGHLAND CAPITAL MANAGEMENT, L.P.,

*Appellee,*

CONSOLIDATED WITH
————————

No. 23-10921
————————

IN THE MATTER OF HIGHLAND CAPITAL MANAGEMENT, L.P.
*Debtor,*

HIGHLAND CAPITAL MANAGEMENT, L.P.,

*Appellee,*

*versus*

NEXPOINT ASSET MANAGEMENT, L.P., *formerly known as*
HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.,

*Appellant.*

————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC Nos. 3:21-CV-1010, 3:21-CV-1378,
3:21-CV-1379, 3:21-CV-3160,
3:21-CV-3162, 3:21-CV-3179,
3:21-CV-3207, 3:21-CV-880,
3:21-CV-881, 3:22-CV-789,
3:21-CV-1010, 3:21-CV-1378,
3:21-CV-1379, 3:21-CV-3160,
3:21-CV-3162, 3:21-CV-3179,
3:21-CV-3207, 3:21-CV-880,

3:21-CV-881, 3:22-CV-789

———————————————————

Before WIENER, ELROD, and WILSON, *Circuit Judges*.

JACQUES L. WIENER, JR., *Circuit Judge*:

Defendant-Appellant James Dondero managed Plaintiff-Appellee Highland Capital Management ("Highland"), an investment fund with several subsidiaries. Highland had a practice of lending its subsidiaries—and Dondero personally—money to meet investment demands. Dondero was effectively on both sides of these promissory notes, acting on behalf of Highland and the relevant subsidiaries. The potential for litigation arising from that arrangement lay dormant until Dondero was removed from Highland during the company's bankruptcy proceedings. Highland, then managed by a court-appointed board, attempted to make good on the promissory notes executed in its favor by the subsidiaries and Dondero (hereafter referred to as "Appellants"). When Appellants refused to pay, Highland brought several adversary actions against them in the bankruptcy court. After consolidation and a joint motion to withdraw the reference, the district court entered judgment in favor of Highland on all claims. We AFFIRM.

I.

Dondero founded Highland, a Dallas-based investment firm, in 1993. He was the general partner of Highland, and his family's trust, Dugaboy Investment Trust, was a part-owner. Dondero served as the trustee of Dugaboy from October 2010 until August 2015, when, after a six-month period when the trust was led by someone else, his sister, Nancy Dondero (hereinafter referred to as "Nancy" for clarity) became the trustee. She remains so today.

Dondero also managed a number of Highland's corporate affiliates, through which it did business, including Highland Capital Management

3

Fund Advisors ("HCMFA"),[1] NexPoint Advisors, Highland Capital Real Estate Partners ("HCRE"),[2] and Highland Capital Management Services ("HCMS"). Highland loaned tens of millions of dollars to these companies and to Dondero through a series of demand and term notes, allegedly to enable them to make investments. Each of the demand notes had identical terms, which provided, *inter alia*, that the "accrued interest and principal of this Note shall be due and payable on demand of the Payee." Each of the term notes was also identical in requiring repayment through thirty annual installments due, one each, on December 31 of each year. As one employee testified, "it's all one big happy family, and whoever needed cash, the cash moved around."

On October 16, 2019, while Dondero was acting as its CEO and President, Highland filed for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. (No. 19-12239 (CSS)). The court appointed a committee and transferred the case to the Dallas Division of the Bankruptcy Court for the Northern District of Texas (No. 19-34054-sgj11). Dondero had a contentious relationship with the committee, which had explored appointing a Chapter 11 trustee because of "its concerns over and distrust of Mr. Dondero, his numerous conflicts of interest, and his history of alleged mismanagement (and perhaps worse)." *See Matter of Highland Cap. Mgmt., L.P.*, 98 F.4th 170, 172 (5th Cir. 2024) ("The bankruptcy provoked a nasty breakup between Highland Capital and . . . Dondero." (internal quotation marks and citation omitted)). Highland (through Dondero) and the committee finally agreed on a settlement whereby Dondero would relinquish control of Highland to an

---

[1] HCMFA is now known as NexPoint Asset Management, L.P.

[2] HCRE is now known as NexPoint Real Estate Partners, L.L.C.

independent board approved by the court. As of January 9, 2020, Dondero was "out."

In conjunction with its Chapter 11 proceedings, on December 3, 2020, Highland—now controlled by the independent board—made demands on the demand notes executed by Dondero, HCMFA, HCMS, and HCRE. Appellants did not reply or make payment. *Id.* Additionally, while each of the Appellants subject to a term note (NexPoint, HCMS, and HCRE) had met its first three annual installment requirements, each failed to make the payments that became due on December 31, 2020. *Id.* Those Appellants made belated payments in January of 2021, after Highland notified them of their defaults.

The Highland board filed a reorganization plan with the bankruptcy court on January 22, 2021. Part of the board's plan rested on the assumption that "[a]ll demand notes are collected in the year 2021." All Appellants were made aware of Highland's reorganization plan before it became effective on August 11, 2021. Although they contested certain aspects of the plan, Appellants did not take issue with the assumption that Highland would recover on all notes that it was owed. *See In re Highland Cap.*, 48 F.4th at 439.

On January 22, 2021, Highland filed five adversary actions in the bankruptcy court, one each against Dondero (No. 21-3003), HCMFA (No. 21-3004), NexPoint (No. 21-3005), HCMS (No. 21-3006), and HCRE (No. 21-3007) (collectively, the "Main Notes Litigation," consolidated as No. 21-3003-sgj in the bankruptcy court). It sought enforcement of sixteen promissory notes executed in favor of Highland, with more than $60 million of unpaid principal and interest alleged to be due and owing. On November 9, 2021, Highland filed a second action against HCMFA that was specifically focused on the two pre-2019 notes issued by HCMFA in favor of Highland ("Second HCMFA Action," No. 21-3082-sgj in the bankruptcy court).

Highland moved for summary judgment in both cases, which were eventually consolidated into one before the district court (No. 21-881). After a joint motion to withdraw the reference, the bankruptcy court acted "essentially as a magistrate judge for the District Court prior to trial," and recommended that both of the motions for summary judgment be granted. The district court adopted the report and recommendations and entered judgment against all Appellants.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019) (citation omitted). We review orders granting summary judgment de novo, applying the same standards as the district court. *Miller v. Michaels Stores, Inc.*, 98 F.4th 211, 215–16 (5th Cir. 2024). "As a general rule, the admissibility of evidence on a motion for summary judgment is subject to the same rules that govern the admissibility of evidence at trial." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 175–76 (5th Cir. 1990) (footnote omitted), *abrogated on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994). Evidentiary determinations are reviewed for abuse of discretion. *Id.* at 176.

"Ordinarily, suits on promissory notes provide fit grist for the summary judgment mill." *Resol. Tr. Corp. v. Starkey*, 41 F.3d 1018, 1023 (5th Cir. 1995) (internal quotation marks and citation omitted). Under Texas law, to prevail on summary judgment in these types of cases, the movant must establish that (1) the note exists, (2) the non-movant signed the note, (3) the movant was the legal holder of the note, and (4) there was a balance due and owing on the note. *Id.* (citation omitted); *see also Zentech, Inc. v. Gunter*, 606

23-10911
c/w No. 23-10921

S. W. 3d 847, 852 (Tex. App.–Houston [14th Dist.] 2020, pet. denied). If the movant makes out a prima facie case, the burden shifts to the nonmovant to demonstrate the existence of a genuine dispute of material fact precluding summary judgment. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

III.

Highland established its prima facie case by showing that the notes were valid, due, and owing. The notes were (1) provided to Price Waterhouse Cooper ("PwC"), Highland's auditor; (2) included in all of Highland's financial statements, books, and records; (3) carried as assets on Highland's balance sheet with values equal to their accrued and unpaid principal and interest; and (4) incorporated into all of Highland's bankruptcy filings. Appellants, however, raise a series of defenses that they say preclude summary judgment.

A.

Appellants first assert that they entered into oral agreements with Highland whereby the notes would be forgiven if specific conditions subsequent occurred.[3] They say the parties agreed that if Highland's interest in three portfolio companies—Trussway, Cornerstone, MGM—was sold for greater than cost or on a basis outside of Dondero's control, the debts would be forgiven. Dugaboy purportedly entered into these agreements on behalf of

---

[3] In the Main Notes Litigation, all Appellants *except* for HCMFA raised the oral agreement defense. This is likely because the original defense stated that the alleged agreements were entered into "sometime between December of the year in which each note was made and February of the following year." But the relevant notes were executed by HCMFA in May 2019 and Highland filed for bankruptcy in October 2019—so the agreements pertaining to those notes would not have yet existed. In the Second HCMFA Action, pertaining to the pre-2019 notes, HCMFA did assert the oral agreement defense.

Case 21-10911 Document 1135724 Page 7 Date 11/22/24 Page 7 of 21
Case 3:21-cv-00881-X    Document 226    Filed 11/05/24    Page 7 of 21    PageID 70834

23-10911
c/w No. 23-10921

Highland, and Dondero did so on behalf of each of the Appellants. Therefore, when Dondero was the trustee of Dugaboy, he entered into these oral agreements with himself. When his sister Nancy became the trustee, she was the one who entered into the agreements on behalf of Highland, with Dondero acting on behalf of Appellants. No one other than Dondero and Nancy knew about these alleged oral agreements. Dondero testified that the agreements were intended to be compensation for him as the chief executive of Highland, a "common practice" at the firm.

The only evidence that Appellants offer to show the existence of a genuinely disputed material fact about whether there was an agreement to forgive these notes is declarations and depositions by the Donderos.[4] The fact that this testimony is self-serving is not, in and of itself, sufficient to defeat summary judgment. *See United States v. Stein*, 881 F.3d 853, 859 (11th Cir. 2018) (en banc) ("[T]he self-serving and/or uncorroborated nature of an affidavit cannot prevent it from creating an issue of material fact."); *McClendon v. United States*, 892 F.3d 775, 785 (5th Cir. 2018) (adopting *Stein*'s reasoning in a tax case). However, coupled with their lack of detail and internal inconsistencies, we hold that these statements are insufficient to "lead a rational jury to find for [Appellants]," as required to successfully oppose summary judgment. *See BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996) (citation omitted). As the Supreme Court has explained, judgment is warranted when, as here, "the evidence is merely colorable[] or is not

---

[4] It is unclear whether the district court *excluded* the Dondero declarations, or merely found that they did not establish a dispute of fact. If the district court excluded the declarations from consideration entirely under the sham-affidavit rule, that would be an evidentiary determination which we would review for abuse of discretion. *See Lavespere*, 910 F.2d at 176. If it held that the declarations were not sufficient to establish a dispute of fact, then de novo review would apply. To be safe, we apply the more stringent level of review.

significantly probative." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (internal citations omitted).

The Dondero declarations are "not the type of significant probative evidence required to defeat summary judgment." *Lawrence*, 276 F.3d at 197 (internal quotation marks and citation omitted). They differ with respect to such vital information as who entered into the alleged agreements and when. For example, Dondero declared—and his Answer pled[5]— that the alleged agreements were entered into some ten to twelve months after each of the pre-2019 notes was issued by HCMFA. But that same declaration incorporated by reference two documents which state that the agreements to forgive the loans were made contemporaneously with the issuance of the notes, and were intended to be an option for compensation from the get-go. This further contrasts with an earlier interrogatory in which Dondero claimed that the only thing of value that Dondero received in exchange for these notes was the funds—not the potential for compensation via forgiveness. The evidence is thus inconsistent as to the date and intent of the agreements. Appellants have not "explain[ed] the contradiction[s] or attempt[ed] to resolve the disparit[ies]." *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999).

The proffered evidence also contradicts itself as to whether it was Dondero or Nancy who entered into the agreements about the pre-2019 notes on behalf of Appellants. Dondero's Answer states that Nancy, as Dugaboy trustee, did so on HCMFA's behalf. But after Nancy testified that she could not have entered into the alleged agreement in 2014 since she was not yet the trustee of Dugaboy, Dondero filed another declaration in which he suddenly

---

[5] "A party cannot present evidence contradicting admissions made in his pleadings for the purposes of defeating a summary judgment motion." *Jonibach Mgmt. Tr. v. Wartburg Enters., Inc.*, 136 F. Supp. 3d 792, 821 n.29 (S.D. Tex. 2015) (citing *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 107–08 (5th Cir. 1987)).

remembered that he was the one who entered into the 2014 agreement. As the district court pointed out, Appellants have "not sought leave to amend [their] Answer[s] in this Action, even though Mr. Dondero's declaration clearly contradicts the factual contentions in the Answer[s] as to who allegedly entered into the 2014 Alleged Oral Agreement." Because facts admitted in pleadings "are no longer at issue," the declarations contesting these facts are not probative of a factual dispute. *Davis*, 823 F.2d at 108 (citation omitted).

The evidence is not only inconsistent as to who acted on behalf of Appellants in agreeing to forgive the loans; it is also contradictory as to the *parties* to the agreement. Dondero testified that the 2016 agreement was between Highland and HCMFA. But Nancy's declaration states that that agreement was "between [Highland] and Jim Dondero." The only two people who Appellants claim know anything about that agreement, then, disagree as to who exactly entered into it, and on whose behalf.

It is true that "every discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980) (citation omitted). But a court may decide that there are so many inconsistencies that the testimony does not need to be put before a jury. *See id.* (citation omitted) (distinguishing between testimony that is "not a paradigm of cogency or persuasiveness" and testimony that is a "transparent sham"). Although Appellants characterize Dondero's later statements as an "elaboration" and "clarification" of his earlier declarations and pleadings, the level of contradiction here is a polar binary. *See id.* (citation omitted) (citing a case granting summary judgment where the affidavit testimony "departs so markedly from the prior deposition of defendants' key witness, . . . as to brand as bogus the factual issues sought to be raised"); *cf. Winzer v. Kaufman County*, 916 F.3d 464, 473 (5th Cir. 2019) (explaining that an affidavit that "supplements, rather than

Case 20-080223-st0911 Doc 246cumFileent 113052/24 Page 10d 1 Date 714e 6:331505/2024sc Main
Case 3:21-cv-00881-X    Document 20ent FilePage 001 24 21    Page 10 of 21    PageID 70837

23-10911
c/w No. 23-10921

contradicts, an earlier statement" is competent evidence (internal quotation marks and citation omitted)). Who entered into the agreements, on behalf of whom, and when? These contradictions go to the heart of the oral-agreement defense. Because the only evidence Appellants rely on for this defense is internally inconsistent with respect to these key details, it is "not the type of significant probative evidence required to defeat summary judgment." *Lawrence*, 276 F.3d at 197 (internal quotation marks and citation omitted).

When we have found a party's single affidavit sufficient to preclude summary judgment, the evidence is much more specific and consistent. For example, in *Lester v. Wells Fargo Bank, N.A.*, a case relied on by Appellants, we held that a single self-serving affidavit established a genuine dispute of material fact because "the veracity of [the non-movant's] allegations would be difficult to prove any other way, and there are few material factual details omitted." 805 F. App'x 288, 292–93 (5th Cir. 2020) (quorum opinion). Here, if the agreements existed, it should be easy to prove through other means: For example, someone would have written them down or told auditors about them, and they would be reflected in Highland's books and bankruptcy filings. Yet none of this occurred. Further, the Donderos' declarations were not the kind of fact-heavy testimony that suggests "veracity" per *Lester*. There were holes and contradictions and questions left unanswered. To find this testimony insufficient to defeat summary judgment is consistent with this court's decision in *Lester*.

Appellants further rely on *LegacyRG, Inc. v. Harter* for their contention that discrediting a defendant's affidavit on summary judgment is an improper credibility determination. 705 F. App'x 223, 240 (5th Cir. 2017) (per curiam). But in that case, the court wrongly credited one party's affidavit over the other's. That is not the case here; this is not a situation when the nonmovant's statement is "rejected merely because it is not supported by the movant's . . . divergent statements." *Heinsohn v. Carabin & Shaw, P.C.*,

832 F.3d 224, 245 (5th Cir. 2016). The Donderos' statements about the alleged oral agreements are not supported by *their own* divergent statements. No reasonable juror would believe them, meaning that the issue is not "genuine" for the purposes of summary judgment. *See Anderson*, 477 U.S. at 248; *see also Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) ("The mere possibility of a factual dispute is not enough." (internal quotation marks and citation omitted)).

To be clear, we are not entirely excluding the Dondero declarations from consideration under the sham-affidavit doctrine. *See Hacienda Recs., L.P. v. Ramos*, 718 F. App'x 223, 235 (5th Cir. 2018) (per curiam). We are instead holding that, because of their internal inconsistencies about the contract formation itself and lack of detail, these unsubstantiated statements are "not the type of significant probative evidence required to defeat summary judgment." *Lawrence*, 276 F.3d at 197 (internal quotation marks and citation omitted); *see also Cooper Cameron Corp. v. U.S. Dep't of Labor*, 280 F.3d 539, 550 (5th Cir. 2002) ("[A party] cannot meet its [summary judgment] burden with an internally inconsistent, self-contradictory affidavit."). The oral-agreement defense is entirely unsupported. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) (holding that nonmovants cannot satisfy their burdens in opposing summary judgment with unsubstantiated assertions only); *Little*, 37 F.3d at 1075 (holding that a nonmovant's summary judgment burden is not satisfied with "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence" (internal quotation marks and citations omitted)). The purpose of summary judgment is to prevent factually unsupported claims and defenses from going to trial "with the attendant unwarranted consumption of public and private resources." *Celotex*, 477 U.S. at 327. Granting judgment in favor of Highland serves this purpose.

Case 23-10911  Doc 246  Filed 11/05/24  Entered 11/22/24 16:33:55  Desc Main
Case 3:21-cv-00881-X  Document 20  Filed 12/24/21  Page 12 of 21  PageID 70839

23-10911
c/w No. 23-10921

We further note that, even if the alleged oral agreements did exist, they would likely be unenforceable for lack of consideration. Appellants assert that the consideration given to Highland in exchange for forgiving the loans was (1) Dondero's forbearance from increasing his own base compensation, and (2) his incentive to increase the value of the portfolio companies in efforts to sell the companies above cost. There is no evidence that Highland knew or understood either of these alleged reasons for entering into the agreement. It is true that giving up a preexisting legal right, like the right to compensation, can constitute valid consideration. *See Bryant v. Cady*, 445 S. W. 3d 815, 820 (Tex. App.–Texarkana 2014, pet. denied) ("A promisee suffers a legal 'detriment' when, in return for a promise, the promisee surrenders a legal right that the promisee otherwise would have been entitled to exercise."). But just because loan forgiveness was allegedly part of Dondero's compensation does not mean that he would forgo any additional compensation outside of the agreements, which did not contain any formal relinquishment of claims. *Cf. City of New Orleans v. BellSouth Telecomms., Inc.*, 690 F.3d 312, 328 (5th Cir. 2012) (affirming that a settlement agreement was the "exclusive method" under which the plaintiff could receive compensation, since giving up further rights to additional compensation was expressly noted in the agreement). Even if the oral agreements did exist, then, they would be unenforceable. The notes remain due and owing, and summary judgment was proper.

### B.

HCMFA raises two unique defenses to contract formation in the Main Notes Litigation and on appeal. First, it asserts that Frank Waterhouse, HCMFA's Treasurer, either did not sign the 2019 notes or did so without authority. Second, it maintains that the creation of these notes was the result of a mutual mistake involving compensation for an alleged error made by Highland. We are not persuaded by either argument.

13

23-10911
c/w No. 23-10921

1.

HCMFA first contends that Waterhouse did not actually sign the 2019 notes executed by HCMFA in favor of Highland, meaning that they are not valid. The notes do bear Waterhouse's signature. The signature appears to be a .jpg image, which was affixed by Accounting Manager Kristin Hendrix.[6] Waterhouse testified that his electronic signature was "used from time to time." Hendrix swore that, although she could not specifically recall Waterhouse authorizing her to use his signature on those two notes, she would not "have done that without authority and approval."

Failure to recall a particular event but testifying as to the usual course of dealing is not significantly probative of a fact issue. *See Anderson*, 477 U.S. at 248; *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) ("[S]ummary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." (citation omitted)). Specifically, a plaintiff's inability to remember signing a particular contract is insufficient to raise a material dispute as to the validity of the agreement. *Batiste v. Island Recs., Inc.*, 179 F.3d 217, 223 (5th Cir. 1999). Therefore, Waterhouse's and Hendrix's testimony does not create a factual dispute about whether the notes were duly signed under Texas law and, without more, does not rebut Highland's prima facie case.

Next, HCMFA submits that Waterhouse was not authorized to sign the notes, also rendering them invalid. The district court found that

---

[6] After learning this from Hendrix's deposition, HCMFA filed a motion with the bankruptcy court to amend its answer and assert this defense, alleging that Highland had breached its discovery obligations by failing to produce the metadata for the notes as requested. The bankruptcy court denied that motion, and the district court affirmed. HCMFA "incorporates its objection to the District Court's decision overruling [its] objection" in its appeal. The district court acted within its discretion in determining that amendment would have been futile. *See Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

23-10911
c/w No. 23-10921

Waterhouse had both actual and apparent authority to bind HCMFA in that way. *Actual* authority is that which "a principal intentionally confers upon an agent or intentionally allows the agent to believe himself to possess." *Polland & Cook v. Lehmann*, 832 S. W. 2d 729, 738 (Tex. App.–Houston [1st Dist.] 1992, writ denied). *Apparent* authority arises when "a principal either knowingly permit[s] an agent to hold himself out as having authority or show[s] such a lack of ordinary care as to clothe an agent with indicia of authority." *Coffey v. Fort Wayne Pools, Inc.*, 24 F. Supp. 2d 671, 680 (N.D. Tex. 1998) (citing *NationsBank N.A. v. Dilling*, 922 S. W. 2d 950, 952–53 (Tex. 1996)).

At the time that the notes were signed, Waterhouse was Treasurer of HCMFA, which, per the company's signed Incumbency Certificate, authorized him to "execute any and all agreements on behalf of the General Partner [of HCMFA]." Such authorization is a clear grant of actual authority, not limited by the size of the agreement as alleged by HCMFA.[7] HCMFA contends further that Waterhouse knew that he did not have the authority to bind HCMFA to loans of this size without Dondero's approval—and he cannot have had actual authority if he knew subjectively that he lacked it. Waterhouse did testify that he would have needed Dondero's approval for Highland to lend that amount of money. But, Waterhouse believed that he did have that approval: Dondero was the one to direct him to transfer the money

---

[7] Appellants further argue that the Incumbency Certificate cannot confer actual authority because it is not a "corporate governance document." They cite no support for that proposition. Any "written or spoken words or conduct by the principal to the agent" can create actual authority. *Cameron Cnty. Sav. Ass'n v. Stewart Title Guar. Co.*, 819 S. W. 2d 600, 603 (Tex. App.–Corpus Christi 1991, writ denied). This includes incumbency certificates. *See, e.g.*, *Krishnan v. JPMorgan Chase Bank, N.A.*, Civ. No. 4:15-CV-00632-RC-KPJ, 2018 WL 7138385, at *4 (E.D. Tex. Dec. 18, 2018) (relying on certificate to determine authorization to execute documents).

Case 23-10911   Doc 246   Filed 11/05/24   Entered 11/05/24 16:33:05   Desc Main
Case 3:21-cv-00881-X   Document 221   Filed 05/24   Page 15 of 21   PageID 70842

23-10911
c/w No. 23-10921

from Highland to HCMFA. There is nothing in the record to suggest that
Waterhouse knew that he was acting outside the scope of his authority.

HCMFA's arguments regarding Waterhouse's signature and author-
ization of the 2019 notes do not preclude summary judgment.

2.

HCMFA asserts alternatively that Dondero did not intend for the $7.4
million transferred from Highland to HCMFA in 2019 to be a loan, but rather
compensation for an error made by Highland that allegedly caused HCMFA
harm. In March 2019, Highland made an error in calculating the net asset
value ("NAV") of securities that a fund managed by HCMFA held in a par-
ticular portfolio. With the help of the SEC, Highland and HCMFA deter-
mined that the losses to the fund from the NAV error amounted to approxi-
mately $7.5 million, which HCMFA paid to its client. Appellants assert that
Highland then accepted responsibility for having caused the error and com-
pensated HCMFA in that amount through two transfers in May 2019. Don-
dero testified that he instructed Waterhouse to transfer those funds, but not
that they should be drawn up as loans. HCMFA asserts that Highland's in-
terpretation of the transfer was a mistake: "[W]hen [Highland]'s account-
ants saw large transfers from [Highland] to [HCMFA], they simply assumed
the transfers were loans and, pursuant to their historical practice . . . docu-
mented the transfers as loans." And this was reasonable, as it was the stand-
ard practice when "transferring funds to one of [Dondero's] affiliates that it
should always be booked as a loan."

HCMFA must bear the burden of proving mutual mistake. *See
Castrellon v. Ocwen Loan Servicing, L.L.C.*, 721 F. App'x 346, 349 (5th Cir.
2018) (citing Texas law). A mutual mistake of fact occurs when "the parties
to an agreement have a common intention, but the written contract does not
reflect the intention of the parties due to a mutual mistake." *Okon v. MBank,*

*N.A.*, 706 S. W. 2d 673, 675 (Tex. App.–Dallas 1986, writ ref'd n.r.e.). "In
order for the affirmative defense of mutual mistake to be sustained on sum-
mary judgment, the defendant must raise fact issues showing that both par-
ties were acting under the same misunderstanding of the same material fact."
*Id.* "In determining the intent of the parties to a written contract, a court may
consider 'the conduct of the parties and the information available to them at
the time of signing' in addition to the written agreement itself." *Whitney
Nat'l Bank v. Med. Plaza Surgical Ctr. L.L.P.*, No. H-06 1492, 2007 WL
3145798, at *6 (S.D. Tex. Oct. 25, 2007) (quoting *Williams v. Glash*, 789 S.
W. 2d 261, 264 (Tex. 1990)). "The question of mutual mistake is determined
not by self-serving subjective statements of the parties' intent, which would
necessitate trial to a jury in all such cases, but rather solely by objective cir-
cumstances surrounding execution of the [contract.]" *Williams*, 789 S. W. 2d
at 264.

Once again, essentially the only evidence that supports this defense is
Dondero's own testimony. This is precisely the type of "self-serving subjec-
tive statement[]" that Texas law finds unreliable in this context. *See id.* Even
if this evidence is considered to be competent, it merely establishes High-
land's own assumption regarding the transfer, without suggesting that
HCMFA "mutually held the mistake" at the time of contracting. *See Al
Asher & Sons, Inc. v. Foreman Elec. Serv. Co., Inc.*, MO:19-CV-173-DC, 2021
WL 2772808, at *9 (W.D. Tex. Apr. 28, 2021). There is no evidence in the
summary judgment record on which a reasonable juror could rely in finding
that HCMFA believed the payment to be compensation rather than a loan.
Instead, the evidence suggests the opposite. *See Whitney Nat'l Bank*, 2007
WL 3145798, at *7 (finding no mutual mistake where there was evidence of
the other party's own intention regarding the agreement). HCMFA told its
board that it caused the error itself, without ever mentioning Highland.
HCMFA admits that it received $5 million in insurance proceeds to cover

23-10911
c/w No. 23-10921

the error and paid $2.4 million out of pocket. But it now claims that Highland "compensated" HCMFA in the full amount of $7.4 million, despite already receiving $5 million from insurance. HCMFA never told its insurance carrier that Highland was at fault or that Highland would compensate HCMFA for the error. *Id.* There is no evidence (1) that HCMFA ever accused Highland of causing the error or requested compensation, or (2) that Highland accepted responsibility and agreed to pay. There was nothing in HCMFA's books to suggest that the payment from Highland was intended to be compensation rather than a loan.

Dondero's testimony is insufficient to establish a dispute of material fact as to the purpose of the transfer from Highland to HCMFA, because it is directly contradicted by all of the above. *See Lawrence*, 276 F.3d at 197 (citation omitted). The district court did not err in granting summary judgment in favor of Highland on HCMFA's two 2019 notes.

## C.

Appellants raise the defense of prepayment on two of the term notes executed in favor of Highland. They assert that NexPoint and HCMS prepaid on these notes earlier in the year, meaning that they did not default when they failed to make their annual payments on December 31, 2020. is undisputed that these Appellants had the right to make prepayments, and that they did in fact do so. Section 3 of the term notes states: "Prepayment Allowed; Renegotiation Discretionary. Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note." But it goes on to state: "Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof." Thus, when NexPoint and HCMS paid on the loans earlier in 2020, Highland was meant to apply those amounts to accrued interest and principal, not to hold the payments in reserve for over a year to satisfy Appellants' future obligations.

Highland generally followed those terms. The notes required that, as of December 31 of each year, the accrued interest on the loan be $0. NexPoint met this requirement in 2017, 2018, and 2019, regardless of whether prepayments were made during those years. Such pre-litigation behavior shows that NexPoint understood that the notes required it to pay all accrued interest by the date on their term notes, regardless of prepayments and how they were applied. As Highland points out, "the parties gave effect to the Term Notes' unambiguous terms prior to the commencement of litigation." "The unrefuted evidence proves that . . . the Term Note Obligors *always* paid their Annual Installment payment by December 31 *regardless* of how many millions they 'prepaid' during the prior calendar year." Thus, Appellants' argument that Highland "never once declared the Term Notes to be in default in years prior when Appellants made prepayments until 2020" is inapposite—they were not in default before that time.

NexPoint knew that it was required to pay all unaccrued interest and 1/30th of the outstanding principal amount of its term note, but it did not do so. Its knowledge is underscored by the fact that the 2020 annual installment was included in a thirteen-week forecast provided by Highland to Waterhouse, NexPoint's Treasurer. Further, the amortization schedule showed that Highland had not saved NexPoint's prepayments (not made for at least thirteen months) to apply to its December 31, 2020 required payment.[8] NexPoint and HCMS did make payments in January of 2021, seemingly attempting to "cure" their defaults after being advised of them by Highland. But the notes did not provide for a legal right to cure default. Objective evidence

---

[8] As Appellants point out, prepayments made by NexPoint on December 5, 2017 and May 9, 2018, were applied to future interest. These two exceptions are insufficient to engender NexPoint's reliance, especially given the fact that NexPoint subjectively knew that its 2020 payment was due.

shows that both Appellants understood that they were required to make a payment on December 31, 2020, but did not do so.[9] No reasonable juror could find in favor of Appellants on the issue of prepayment. *See Anderson*, 477 U.S. at 248.

## D.

Finally, NexPoint contends that Highland caused it to default on its term note on December 31, 2020, because it was Highland's responsibility to make the payment, which it failed to do. A Shared Services Agreement ("SSA") between NexPoint and Highland provided that Highland would manage "back- and middle-office" tasks for NexPoint.[10] Per the SSA, those tasks included "investment research, trade desk services, . . . finance and accounting, payments, operations, book keeping, cash management . . . accounts payable, [and] accounts receivable." NexPoint asserts that Highland had made NexPoint's term note payments in 2017, 2018, and 2019, without

---

[9] Appellants complain that the district court did not cite evidence about the HCMS note, relying only on evidence about NexPoint. This is incorrect. The R&R also independently cited the Dondero deposition where he was asked about HCMS and its prepayments. And the court had access to a second Klos Declaration, which clarified his opinion about HCMS. No. 23-1003 (N.D. Tex. Bankr.), ECF No. 166 at 4. Accordingly, the district court had enough evidence to determine that there was no genuine dispute of material fact as to the effect of the prepayments on either note.

[10] NexPoint's Answer raised as an affirmative defense that "[Highland] was responsible for making payments on behalf of [NexPoint] under that note. Any alleged default under the note was the result of [Highland's] own negligence, misconduct, breach of contract, etc." Appellants' briefing argues that the same applies to HCMS and HCRE. But unlike that of NexPoint, HCMS and HCRE's Answers do not specifically allege that it was Highland's job to make NexPoint's payments. Regardless, though, as the district court pointed out, there was no evidence that these defendants had SSAs with Highland. Appellants claim that they had SSAs "established by oral agreement and course of conduct." They again cite only a Dondero declaration in support. Why would there be a written SSA between Highland and NexPoint, but not between it and HCMS or HCRE? Appellants do not explain.

Case 23-10911 Doc 246 Filed 11/05/24 Entered 11/28/24 16:33:05 Desc Main
Case 3:21-cv-00881-X    Document 223    Filed 12/20/21    Page 20 of 21    PageID 70847

23-10911
c/w No. 23-10921

being prompted, "lead[ing] any reasonable person to believe" that it would
do the same in 2020. The record evidence that it cites for this proposition is
(1) the NexPoint term note's amortization schedule, and (2) a declaration
from Dondero. The amortization schedule does not show *who* made the pay-
ments on behalf of NexPoint. And, as it does for the oral-agreement defense,
Dondero's affidavit contradicts other evidence on this point. The declaration
states that "[Highland] made the NexPoint Term Note payments . . . on De-
cember 31 of 2017, 2018, and 2019, without any specific authorization or per-
mission" but, in fact, no payments were made on the note on any of those
particular dates. In fact, Dondero himself elsewhere (within the context of
prepayment) highlighted that Highland accepted those annual payments ear-
lier in the year. A party "cannot meet its [summary judgment] burden with
an internally inconsistent, self-contradictory affidavit." *Cooper Cameron*, 280
F.3d at 550. Such evidence does not establish a *genuine* issue of fact. *See An-
derson*, 477 U.S. at 248.

A dispute of fact is genuine when the evidence would allow a reason-
able juror to find in favor of the nonmovant. *Id.* Dondero's declaration would
not allow a reasonable juror to find that it was Highland's responsibility to
make NexPoint's payments in 2020. First, as Highland points out, the bank-
ruptcy court approved a settlement in 2020, removing Highland from Don-
dero's control and placing it in the hands of a court-appointed committee.
Thus, there can be no "course of conduct" that reasonably predicted what
would happen in 2020, as this was the first time that Dondero was not in con-
trol when an annual installment payment became due. Second, Waterhouse
testified that no one at Highland was "authorized to effectuate . . . payment
on behalf of NexPoint" without approval. And, in December of 2020, not
only did no one at Highland have specific approval to make that payment, but
Dondero explicitly told Waterhouse that the payment should not be made,
and Waterhouse advised Hendrix of the same. Appellants' argument, then,

is that because Highland had made NexPoint's payments in the past, it was reasonable for NexPoint to rely on them to do the same in 2020, despite the fact that an Appellant (Dondero, as CEO of Highland) told the Treasurer of Highland who told the Assistant Controller of Highland *not* to make the payment. It is not as though that was happening "behind closed doors"; the person responsible for making the payments on behalf of NexPoint was the same person who was notified that Highland should not make the payment. Appellants are blaming Highland for failing to do something that they expressly told them not to do. In the context of the record as a whole, no reasonable juror could find that it was Highland's responsibility to make NexPoint's payments and thereby return a verdict in favor of Appellants. *See Anderson*, 477 U.S. at 248.

## IV.

Highland presented a prima facie case of promissory note default, and Appellants failed to "set forth specific facts showing that there is a genuine issue for trial." *See Lawrence*, 276 F.3d at 197 (internal quotation marks and citation omitted). Therefore, the district court did not err in granting summary judgment in favor of Highland.

AFFIRMED.